**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |
| | Hearing Date: TBD[2] <br> Hearing Time: TBD <br> Hearing Location: TBD |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) ESTABLISHING NOTIFICATION AND HEARING PROCEDURES FOR CERTAIN
TRANSFERS OF AND DECLARATIONS OF WORTHLESSNESS WITH RESPECT TO
COMMON STOCK OF 23ANDME HOLDING CO. AGAINST DEBTORS
AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**[3]

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Proposed Orders")[4], (a) establishing notification and hearing procedures for certain transfers of and declarations of worthlessness with

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3] Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this motion.

[4] Copies of the Proposed Orders will be made available on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

respect to 23andMe Holding Co.'s existing common stock or any Beneficial Ownership[5] therein (any such record or Beneficial Ownership, the "Common Stock") as detailed in **Exhibit** 1 to each of the Interim Order and the Final Order (collectively, the "Procedures"), (b) directing that any purchase, sale, or transfer of, or declaration of worthlessness with respect to Beneficial Ownership of Common stock, in violation of the Procedures shall be null and void *ab initio*, and (c) granting related relief. In addition, the Debtors request that the Court schedule a final hearing to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2.  The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[5] "Beneficial Ownership" will be determined in accordance with the applicable rules of section 382 of the Internal Revenue Code (the "IRC"), and the Treasury Regulations thereunder (the "Treasury Regulations") (other than Treasury Regulations section 1.382-2T(h)(2)(i)(A)) and includes direct, indirect, and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity, and (5) to the extent set forth in Treasury Regulations section 1.382-4, a holder would be considered to beneficially own equity securities that such holder has an Option (as defined herein) to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

For the avoidance of doubt, the definition of Common Stock shall not include record or Beneficial Ownership in any securities to be issued in connection with a chapter 11 plan of reorganization of the Debtors.

2

4.  The bases for the relief requested herein are sections 362 and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

5.  23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[6] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome. The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports. Further, through its Lemonaid Health telehealth platform, the Company operates as a national online doctor's office that provides medical care, pharmacy fulfillment, and laboratory testing services.

6.  On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8.  A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day

---

[6] Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

3

Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[7]

**The Tax Attributes**

9. Generally, a company generates net operating losses ("NOLs") if operating expenses it has incurred exceed the revenues it has earned during a single tax year. A company may apply, or "carry forward," NOLs to reduce future tax payments in a tax year or years after the year in which the NOLs were generated (subject to certain conditions discussed below). NOLs arising in taxable years beginning before January 1, 2018, may be used to offset up to 100 percent of taxable income for a taxable year and NOLs arising in taxable years beginning after December 31, 2017, may be used to offset up to 80 percent of taxable income for a taxable year. *See* Internal Revenue Code of 1986, as amended ("IRC"), § 172. Other Tax Attributes have other sources. While NOLs are the most ubiquitous tax attributes, companies can also generate a variety of other tax attributes, including general business credits, research and development credit carryforwards, unused minimum tax credits, foreign tax credits, and capital loss carryforwards, as the case may be.

10. The Debtors believe that, as of March 31, 2024, they had federal NOL carryovers in the amount of approximately $1,100,000,000 and a federal tax asset basis (other than cash) of approximately $74 million (such asset basis, together with NOLs and certain other tax attributes, the "Tax Attributes"), and expect to incur additional NOL carryovers through 2025. These NOLs and certain other Tax Attributes provide the potential for material future tax savings or other tax structuring possibilities in these chapter 11 cases. The Tax Attributes may be of significant value

---

[7] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

4

to the Debtors and their estates because the Debtors can generally carry forward their Tax Attributes to offset their future taxable income, thereby reducing their future aggregate tax obligations. In addition, such Tax Attributes may generally be utilized by the Debtors to offset any taxable income generated by transactions consummated during these chapter 11 cases (including with respect to any taxable disposition of some or all of the Debtor's assets). Accordingly, the value of the Tax Attributes will inure to the benefit of all of the Debtors' stakeholders.

11. As discussed below, a company's Tax Attributes can become subject to significant limitations under sections 382 and 383 of the IRC if an "ownership change" occurs. The purpose of the relief requested herein is to minimize the risk that an "ownership change" occurs before the conclusion of these chapter 11 cases. In so doing, the Debtors intend to maximize the value of their estates by limiting tax liabilities generated during or as a result of the actions taken during these chapter 11 cases. Debtor 23andMe Holding Co. as two classes of common stock: (a) the Class A common stock is publicly traded on the National Association of Security Dealers Automated Quotations ("NASDAQ") (the "Class A Common Stock") and (b) the Class B common stock is not listed on any stock exchange nor traded on any public market (the "Class B Common Stock"). The rights of the holders of Class A Common Stock and Class B Common Stock are identical, except that holders of Class A Common Stock are entitled to one vote per share and holders of Class B Common Stock are entitled to ten votes per share. Each share of Class B Common Stock is convertible into one share of Class A Common Stock any time at the option of the holder and is automatically converted into one share of Class A Common Stock upon transfer (except for certain permitted transfers). As of the Petition Date, the Debtor has three shareholders who own more than five percent of 23andMe Holding, Co.'s Common Stock.

5

12. The relief requested herein is intended to preserve the value of the Tax Attributes to maximize the value of the Debtors' estates for the benefit of all stakeholders. Absent this relief, there is a risk a premature limitation of the Tax Attributes occurs and adversely affects the value of the Debtors' estates.

I. **An "Ownership Change" May Negatively Impact the Debtors' Utilization of the Tax Attributes**

13. Sections 382 and 383 of the IRC limit the amount of certain Tax Attributes that a corporation can use to offset its taxable income if the corporation undergoes an "ownership change."[8] Pursuant to section 382 of the IRC, generally, an "ownership change" occurs when the percentage, by value, of a corporation's equity held or beneficially owned by one or more persons holding five percent or more of the stock (in certain cases, taking into account Options to acquire such stock) has increased by more than 50 percentage points over the lowest percentage of equity owned by such shareholders at any time during the preceding three-year period or since the last ownership change (an "Ownership Change").

14. An Ownership Change can also occur as a result of a "worthless stock deduction" claimed by any "50-percent shareholder." A 50-percent shareholder is any person (or group of people that is treated as a single entity under the applicable rules) that owned 50% or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed. IRC § 382(g)(4)(D). If the 50-percent shareholder still owns the corporation's stock at the end of the taxable year, sections 382 and 383 of the IRC essentially treat the person as newly purchasing the stock on the

---

[8] As discussed in further detail below, upon an "ownership change," section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses" and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits." IRC §§ 382(a), 383(a).

first day of the next taxable year. For example, if a person with 50.1% of a corporation's stock claims a worthless stock deduction on its tax return for 2024 but does not sell such stock that year, that person is treated as (a) not having owned the stock at the end of 2024 and (b) having purchased the stock on January 1, 2025. That deemed purchase would cause an ownership change in 2025, because the 50-percent shareholder would be deemed to have a more than 50 percentage point increase in its stock ownership. Notably, while the seminal case of *Official Comm. Of Unsecured Creditors* v. *PSS S.S. Co., Inc.* (*In re Prudential Lines, Inc.*), 928 F.2d 565 (2d Cir. 1991), is generally relied upon to support equity trading motions in general, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

15. If an Ownership Change occurs, section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses," and section 383 of the IRC limits the amount of a corporation's future tax liability that may be offset by its "excess credits," in each case, to an annual amount based on the fair market value of all stock of the corporation immediately prior to the Ownership Change multiplied by the long-term tax-exempt rate that applies to the month of the Ownership Change.[9] IRC §§ 382(b), 383(a). Pre-change losses and excess credits subject to limitation under section 382 and 383 of the IRC include the Debtors' NOLs, certain other Tax Attributes, and any net unrealized built-in loss (as defined in section 382(h)(3) of the IRC). Certain tax losses arising upon the disposition of assets after an ownership change occurs can be subject to section 382 limitations if the corporation has "net unrealized built-in losses."

---

[9] The applicable long-term tax exempt rate changes from month-to-month. For ownership changes occurring in March 2025, the applicable long-term tax rate is 3.67%.

7

16. Once a Tax Attribute is limited under section 382 or 383 of the IRC, its use is limited forever. Thus, certain transfers of Common Stock effected before the effective date of the Debtors' emergence from chapter 11 protection could trigger an Ownership Change, thereby endangering the Debtors' ability to utilize the Tax Attributes and damaging the value of the Debtors' estates. Likewise, if a 50-percent shareholder of 23andMe Holding, Co. were, for federal, state, or local tax purposes, to treat Common Stock as having become worthless prior to the Debtors' emergence from chapter 11 protection, such a claim could trigger an Ownership Change under section 382(g)(4)(D) of the IRC or corresponding provisions of state or local tax law, thus causing an adverse effect on the Debtors' ability to use the Tax Attributes.

17. To preserve and maximize the value of the Tax Attributes, the Debtors seek limited relief that will enable them to establish Procedures to closely monitor certain transfers of Beneficial Ownership of Common Stock and claims of certain worthless stock deductions so as to be in a position to act expeditiously to prevent such transfers or claims of worthless stock deductions, if necessary, with the purpose of preserving the Tax Attributes. By establishing and implementing such Procedures, the Debtors will be in a position to object to transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock that could result in an Ownership Change that would threaten their ability to preserve the value of their Tax Attributes for the benefit of the estates.

18. Such a restriction would protect the Debtors' ability to use the Tax Attributes during the pendency of these chapter 11 cases. In the event a pre-effective date Ownership Change has occurred, the resulting limitation on the Debtors' Tax Attributes primarily depends on the value of the outstanding stock of 23andMe Holding Co. at such time, and thus, becomes increasingly severe as the value of such stock declines.

8

19. Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value. Specifically, the Interim Order and Final Order will affect only (a) holders of the equivalent of Beneficial Ownership of 4.5 percent or more of outstanding Common Stock, (b) parties who are interested in purchasing sufficient Common Stock to result in such party becoming a holder of the equivalent of 4.5 percent or more of outstanding Common Stock, and (c) any "50-percent shareholder" seeking to claim a worthless stock deduction.

20. Aside from preserving the value of the Tax Attributes during the pendency of these cases, it also may be important for the Debtors to take steps to preserve the value of such Tax Attributes upon the effectiveness of a chapter 11 plan.

**II.    Proposed Procedures for Transfers of Beneficial Ownership of Common Stock, or Declarations of Worthlessness with Respect to Beneficial Ownership of Common Stock**

21. The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to, certain transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock to ensure preservation of the Tax Attributes. The Procedures, which are fully set forth in **Exhibit 1** to each of the Interim Order and Final Order, are summarized below for illustrative purposes only.[10]

*Procedures for Transfers of Beneficial Ownership of Common Stock*

   a. Any person or Entity (as defined in the Procedures) that, at any time on or after the Petition Date, has Beneficial Ownership (defined below) of at least 4.5 percent of the Common Stock (a "Substantial Shareholder") must file with the Court, and serve upon the Declaration Notice Parties (as defined in the Procedures), a declaration of such status, substantially in the form of **Exhibit 1A** attached to the Procedures (each, a "Declaration of Status as a Substantial Shareholder"), on or before the later of (i) 20 business days after the date of the Notice of Interim Order

---

[10] Capitalized terms used in this section but not otherwise defined herein have the meanings ascribed to them in the Procedures. To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

9

        (as defined herein) and (ii) ten calendar days after becoming a Substantial Shareholder; *provided* that, for the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Shareholder even if no Declaration of Status as a Substantial Shareholder has been filed.

b. At least 20 business days prior to effectuating any transfer of Beneficial Ownership of Common Stock and/or Options that would (i) increase or decrease the amount of Common Stock as to which a Substantial Shareholder has Beneficial Ownership or (ii) result in a person or Entity becoming or ceasing to be a Substantial Shareholder (including by actual or deemed exercise of any Option to acquire Common Stock), the parties to such transaction must file with the Court and serve upon the Declaration Notice Parties an advance written declaration of the intended transfer of Common Stock, substantially in the form of **Exhibit 1B** attached to the Procedures (each, a "Declaration of Intent to Accumulate Common Stock") or of **Exhibit 1C** attached to the Procedures (each, a Declaration of Intent to Transfer Common Stock," and together with the Declaration of Intent to Accumulate Common Stock, each, a "Declaration of Proposed Transfer").

    i. The Debtors shall have 15 business days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such person or Entity an objection to the proposed transaction on the grounds that such transaction might adversely affect the Debtors' ability to utilize their Tax Attributes.

    ii. If the Debtors file an objection, the proposed transaction will remain ineffective unless such objection is withdrawn by the Debtors or such transaction is approved by a final and non-appealable order of the Court.

    iii. If the Debtors do not object within such 15-business day period, the proposed transaction may proceed solely as set forth in the Declaration of Proposed Transfer. Further transactions within the scope of the Procedures must be the subject of additional notices in accordance with the Procedures, with an additional 15-business day waiting period for each Declaration of Proposed Transfer.

***Procedures for Declarations of Worthlessness of the Common Stock***

a. Any person or Entity that currently is or becomes a "50-percent shareholder" (within the meaning of section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations thereunder) (a "50% Shareholder") must file with the Court and serve upon the Declaration Notice Parties a notice of such status, substantially in the form of **Exhibit 1D** attached to the Procedures (each, a "Declaration of Status as a 50% Shareholder"), on or before the later of (i) 30 calendar days after the date of the Notice of Interim Order and (ii) 10 calendar days after becoming a 50% Shareholder; *provided* that, for the avoidance of doubt, the other procedures set

10

        forth herein shall apply to any 50% Shareholder even if no Declaration of Status as a 50% Shareholder has been filed.

  b.    Prior to filing any federal, state, or local tax return, or any amendment to such a return, claiming any deduction for worthlessness of the Common Stock for a tax year ending before the earlier of the Debtors' emergence from chapter 11 protection, such 50% Shareholder must file with the Court and serve upon the Declaration Notice Parties an advance written notice substantially in the form of **Exhibit 1E** attached to the Procedures (a "Declaration of Intent to Claim a Worthless Stock Deduction").

      i.    The Debtors shall have 15 business days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50% Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes.

      ii.    During such 15 business day period, or any future period if the Debtors file an objection, the 50% Shareholder shall not claim, or cause or be claimed, the proposed worthless stock deduction to which the Declaration of Intent to Claim a Worthless Stock Deduction relates unless such objection is withdrawn by the Debtors or the proposed worthless stock deduction is approved by a final and non-appealable order of the Court.

      iii.    If the Debtors do not object within such 15-business day period, the subsequent filing of the tax return or amendment with such claim will be permitted solely as set forth in the Declaration of Intent to Claim a Worthless Stock Deduction. Additional tax returns or amendments within the scope of this section must be the subject of additional notices as set forth herein, with an additional 15-business day waiting period.

*Notice Procedures*

  a.    The Debtors will serve notice of the Interim Order and the Final Order, substantially in the form attached as **Exhibit 1F** to the Procedures attached to the Interim Order (the "Notice of Interim Order" and, as the Notice of Interim Order may be modified to reflect that the Final Order has been entered, the "Notice of Final Order"), as applicable, and the Procedures upon all Notice Parties (as defined in the Procedures) and all banks, brokers, intermediaries, or mailing agents (collectively, the "Nominees") that hold Common Stock in "street name" for the beneficial holders no later than three business days after entry of the Interim Order or Final Order, as applicable.

  b.    Upon receipt of the Notice of Interim Order or Notice of Final Order, as applicable, all Nominees of Common Stock shall serve the applicable notice upon parties on behalf of which they directly hold record ownership, with correlative instructions

          to serve notices, sequentially, to reach the beneficial level, by no later than five business days after being served with notice.  Additionally, any entity or broker or agent acting on such entity's or individual's behalf who sells Common Stock to another entity shall be required to serve a copy of the Notice of Interim Order or Notice of Final Order, as applicable, on such purchaser of such Common Stock or any broker or agent acting on such purchaser's behalf.

    c.    To the extent confidential information is required in any declaration described in the Procedures, such confidential information may be filed and served in redacted form; *provided* that any such declarations served on the Debtors shall not be in redacted form.  The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except to the extent (i) necessary to respond to a petition or objection filed with the Court, (ii) otherwise required by law, or (iii) that the information contained therein is already public; *provided* that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such declarations strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order.  If reference to confidential information is necessary to respond to a petitioner's objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

    d.    The Debtors may waive, in writing, any and all restrictions, stays, and notification Procedures contained in the Notice of Interim Order or Notice of Final Order.

### Basis for Relief

22.    Section 541 of the Bankruptcy Code provides that property of a debtor's estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.  The Tax Attributes are property of the Debtors' estates.  *See In re Russell*, 927 F.2d 413, 417 (8th Cir. 1991) ("The property interest at issue here is . . . the right to carry forward the NOLs); *Official Comm. Of Unsecured Creditors* v. *PSS S.S. Co., Inc.* (*In re Prudential Lines, Inc.*), 107 B.R. 832, 839 (Bankr. S.D.N.Y. 1989) ("[D]ebtor's potential ability to utilize NOLs is property of an estate."), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2d Cir. 1991), *cert. denied*, 502 U.S. 821 (1991); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'" (quoting Prudential Lines, 928 F.2d at 572) (alteration in original)); *Gibson* v. *United States* (*In re*

12

*Russell*), 927 F.2d 413, 417 (8th Cir. 1991) (concluding that the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate). Section 362(a)(3) of the Bankruptcy Code, moreover, stays "any act [of an entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, any act of a holder of a debtor's equity securities that causes the termination or limits use of the NOLs violates the automatic stay. *In re Prudential Lines Inc.,* 928 F.2d at 573 (holding that the debtors' NOLs were property of the debtors' estates and protected by the automatic stay).

23. Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates. Under sections 382 and 383 of the IRC, certain transfers of, or declarations of worthlessness with respect to, Beneficial Ownership of Common Stock prior to the consummation of a chapter 11 plan could limit the Debtors' ability to use the Tax Attributes. The Tax Attributes described above may provide the potential for material future tax savings or other potential tax structuring opportunities in these chapter 11 cases. The termination or limitation of the Tax Attributes could be materially detrimental to all parties in interest. Thus, granting the relief requested herein will preserve the Debtors' flexibility in operating the Debtors' business during the pendency of these chapter 11 cases and implementing a transaction that makes full and efficient use of the Tax Attributes and maximizes the value of the Debtors' estates.

24. Additionally, the Procedures do not bar all transfers of, or declarations of worthlessness with respect to, Beneficial Ownership of Common Stock. The Debtors seek to establish procedures only to monitor the types of transactions that would pose a serious risk under the ownership change test pursuant to sections 382 and 383 of the IRC and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of

13

worthlessness could jeopardize the Debtors' utilization of the Tax Attributes.  Because of the Tax Attributes' importance to the Debtors' restructuring, and thus all parties in interest, the benefits of implementing the Procedures outweigh subjecting a limited number of transfers to the Procedures.

25.  The Debtors submit that the circumstances of these chapter 11 cases warrant granting the requested relief, and that doing so is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest, and therefore should be granted.  Accordingly, the Debtors respectfully request that the Court authorize the relief requested.

### Immediate Relief Is Necessary

26.  Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable harm."  For the reasons discussed herein and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring efforts.  The relief requested herein is necessary for the Debtors to operate their business in the ordinary course and preserve the value of their estates for the benefit of stakeholders.  Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003 has been satisfied.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

27.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this motion is necessary for the Debtors to operate their business without interruption and to preserve value for

their estates through these chapter 11 cases.  Accordingly, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### **Reservation of Rights**

28.  Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

15

**Notice**

29. The Debtors will provide notice of this motion to the following parties: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d) the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the United States Attorney's Office for the Eastern District of Missouri; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Federal Trade Commission; (i) the state attorneys general in all 50 states; (j) regulatory agencies having a regulatory or statutory interest in these cases; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this motion and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Rules"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

30. A copy of this motion is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: March 24, 2025
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:  (314) 854-8600
Facsimile:  (314) 854-8660
Email:  thr@carmodymacdonald.com
        nrw@carmodymacdonald.com
        jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:  pbasta@paulweiss.com
        chopkins@paulweiss.com
        jchoi@paulweiss.com
        ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*