UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-40976<br><br>(Joint Administration Requested)<br><br>Hearing Date:  TBD[2]<br>Hearing Time:  TBD<br>Hearing Location:  TBD |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO HONOR AND
INCUR OBLIGATIONS RELATED TO NON-DEBTOR PROFESSIONAL
MEDICAL CORPORATIONS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**[3]

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Proposed Orders")[4] (a) authorizing the Debtors to honor, pay, or otherwise satisfy any prepetition and postpetition obligations incurred in relation to the non-Debtor Professional Medical Corporations and (b) granting related relief. In

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]  The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3]  Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this motion.

[4]  Copies of the Proposed Orders will be made available on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

addition, the Debtors request that the Court schedule a final hearing to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5. 23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[5] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome. The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports. Further, through its Lemonaid Health telehealth platform, the Company operates as a national online doctor's office that provides medical care, pharmacy fulfillment, and laboratory testing services.

---

[5] Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

6. On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8. A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[6]

## The Professional Medical Corporations and PMC MSAs

9. As described in the First Day Declaration, the Debtors operate Lemonaid Health, an on-demand platform providing online access to medical care and pharmacy fulfillment services. Through Lemonaid Health, patients can access one of the Debtors' affiliated licensed healthcare professionals for medical consultation and treatment for common conditions, telehealth consultations for certain 23andMe genetic reports, and pharmacy fulfillment services if a prescription is warranted. In providing telehealth services that include professional medical consultations, the Debtors maintain relationships with various non-Debtor affiliated professional

---

[6] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

medical corporations ("Professional Medical Corporations" or "PMCs") that are owned exclusively by licensed physicians (the "PMC Physicians") and engage licensed healthcare professionals to provide consultation services.

10. Because the Debtors operate their telehealth business nationwide, they are subject to a variety of state laws that limit the ownership of medical practices to licensed professionals and prohibit corporate ownership of medical practices. To comply with these laws, other regulatory requirements, and contractual arrangements, the Debtors utilize a structure pursuant to which the Debtors contract with and provide various management and administrative services to the PMCs that, in turn, provide medical services to patients through the Lemonaid Health platform. This structure provides the Debtors with certain control over the non-clinical business management and administrative functions of the Professional Medical Corporations, allowing the PMC Physicians to focus on providing high-quality medical services to patients rather than managing the non-clinical aspects of the Professional Medical Corporations. In these arrangements, the PMC Physicians and other medical professionals are employed directly by the PMCs.

11. As of the Petition Date, the Debtors provide management and administrative services to four PMCs.[7] The Debtors derive tens of millions of dollars in total annual revenue for the PMCs after elimination of intercompany transactions.

---

[7] The PMCs include: LMND Medical Group, Inc., A Professional Corporation (California); LMND Medical Group Professional Corporation (New Jersey); LMND Medical Group, a Professional Corporation (Kansas); and LMND Medical Group, a Professional Corporation (Texas). The PMCs are listed on the Organizational Chart included in the First Day Declaration.

4

A.   **The PMC Contracts**

12.   The Debtors' relationships with the Professional Medical Corporations are governed by contract.[8] Specifically, the Debtor entities provide management and other services pursuant to management services agreements entered into with the Professional Medical Corporations (the "PMC MSAs"). The PMC MSAs are exclusive arrangements and the PMCs were established specifically to provide medical services through Lemonaid Health.

13.   The management services provided by the Debtors pursuant to the PMC MSAs typically include, but are not limited to: (a) managing billing and collection; (b) granting licenses allowing the Professional Medical Corporations to use the Debtors' intellectual property, telehealth platform, and patient management system; (c) arranging for the purchase of medical equipment and supplies; (d) assisting with recruiting and managing personnel; (e) disbursing funds for vendor invoices and payroll for PMC Physicians and related medical professionals; (f) protecting confidential patient information; (g) assisting with medical licensing; (h) supporting the implementation of policies and procedures, accounting and budgeting, contract negotiations, general legal services and litigation management, tax support, marketing and advertising needs, and other day-to-day administrative needs. Additionally, under the PMC MSAs, certain of the Debtors provide indemnities to the Professional Medical Corporations and their respective officers, directors, shareholders, employees, and agents for losses related to any acts or omissions of the Debtors and their employees to the extent not paid or covered by insurance.

14.   The Debtors have various ongoing obligations and incur certain costs under the PMC MSAs (the "PMC Operating Costs"). For instance, the Debtors maintain general liability

---

[8] While Lemonaid Health, Inc. is the Debtor-counterparty to the these contracts, the services contemplated therein are also furnished by Debtor 23andMe, Inc. pursuant to an MSA subcontracting agreement between Debtors 23andMe, Inc. and Lemonaid Health, Inc.

5

insurance for liabilities arising from the Debtors' obligations under the PMC MSAs. The Debtors may also be required, pursuant to the PMC MSAs, to pay certain tax obligations and vendor payables on behalf of the Professional Medical Corporations. Additionally, the Debtors may collect and deposit a Professional Medical Corporation's accounts receivable into the Debtors' accounts, so long as the funds remain in the PMC's name through accrual on the PMC's accounting records.

15. The Debtors are seeking authority to pay certain of the PMC Operating Costs pursuant to the Taxes Motion,[9] Insurance Motion,[10] Vendors Motion,[11] and Wages Motion,[12] as applicable. The Debtors also request authority, pursuant to the Cash Management Motion,[13] to utilize the existing cash management system to account for any such PMC Operating Costs in the ordinary course of business. For the avoidance of doubt, the relief that the Debtors seek through this motion is not duplicative to the relief sought in such motions and is limited to accrued and

---

[9] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Taxes and Fees and (II) Granting Related Relief* (the "Taxes Motion"), filed substantially contemporaneously herewith.

[10] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Continue Prepetition Insurance Policies and Pay All Prepetition Obligations in Respect Thereof and (II) Granting Related Relief* (the "Insurance Motion"), filed substantially contemporaneously herewith.

[11] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of (A) Certain Critical Vendors, (B) Lien Claimants, (C) 503(b)(9) Claimants, and (D) Foreign Vendors, (II) Granting Administrative Expense Priority to and Authorizing the Payment of Outstanding Orders, and (III) Granting Related Relief* (the "Vendors Motion"), filed substantially contemporaneously herewith.

[12] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Prepetition Employee Wages and Benefits and (B) Continue Employee Benefits Programs and Pay Related Obligations and (II) Granting Related Relief* (the "Wages Motion"), filed substantially contemporaneously herewith.

[13] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing (A) Continued Use of Cash Management System, (B) Maintenance of Bank Accounts and Business Forms, (C) Performance of Intercompany Transactions, and (D) Certain Prepetition Obligations to be Honored; (II) Granting Administrative Expense Priority to Postpetition Intercompany Claims Against the Debtors; (III) Waiving Strict Compliance with 11 U.S.C. § 345(b) and Certain Operating Guidelines, as Applicable; and (IV) Granting Related Relief* (the "Cash Management Motion"), filed substantially contemporaneously herewith.

outstanding PMC Operating Costs, if any, that are not otherwise covered in the orders approving such motions.

16. In addition to the PMC Operating Costs, the Debtors are also required, pursuant to the PMC MSAs, to pay the Professional Medical Corporations' legal expenses and indemnify the Professional Medical Corporations from certain losses, including losses caused by the Debtors' provision of the management services, to the extent applicable (the "PMC Indemnity and Legal Expense Obligations").  The Debtors do not believe that, as of the Petition Date, any prepetition amounts are due and payable on account of the PMC Indemnity and Legal Expense Obligations. Notwithstanding, the Debtors seek the authority to pay prepetition PMC Indemnity and Legal Expense Obligations and continue to honor any PMC Indemnity and Legal Expense Obligations in the ordinary course of business during these chapter 11 cases.

17. The Debtors' continued operation of Lemonaid Health is dependent on their ability to continue to provide management and administrative services to Professional Medical Corporations.  The inability to maintain the existing relationships with the PMC Physicians and Professional Medical Corporations would greatly inhibit the Debtors' ability to support the PMC Physicians in providing high-quality care to their patients.  The Debtors are likely to lose their critical relationships with the PMC Physicians if the Debtors are unable to satisfy their obligations to both the PMC Physicians and the Professional Medical Corporations under the PMC MSAs.  In particular, the Debtors' obligations to make certain payments to or on behalf of the Professional Medical Corporations pursuant to the PMC MSAs throughout the duration of these chapter 11 cases is critical to maintaining the Debtors' relationships with the PMC Physicians, who are vital to the Debtors' telehealth business.  Even short-term interruptions to the Debtors' performance under the PMC MSAs could cause PMC Physicians to end their relationships with the Debtors,

7

which would threaten the Debtors' ability to continue operating Lemonaid Health, to the detriment of all of their stakeholders.

18.  As of the Petition Date, the Debtors believe that no prepetition amounts are due and payable under the PMC MSAs, separate from the amounts the Debtors seek to honor under the Taxes Motion, Insurance Motion, Vendors Motion, Wages Motion, and Cash Management Motion, as applicable. Out of an abundance of caution, however, the Debtors seek authority to honor any PMC Operating Costs (only to the extent not covered by separate order of this Court) and PMC Indemnity and Legal Expense Obligations. Moreover, the Debtors believe that entry of the Proposed Order will assure the PMC Physicians and Professional Medical Corporations of the Debtors' ability to perform all obligations under the PMC MSAs in the ordinary course of business notwithstanding the commencement of these chapter 11 cases.

## Basis for Relief

**A.  Payment of Prepetition Obligations in Connection with the PMC MSAs as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment and Is Necessary to Protect and Preserve the Estates**

19.  Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.[14]

---

[14] Because the Debtors engage in transactions related to the PMC MSAs on a regular basis, the Debtors believe that such transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy

8

20. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. at 499.

21. Section 105(a) of the Bankruptcy Code and the "doctrine of necessity" permit the bankruptcy court to exercise its broad grant of equitable powers to authorize the payment of prepetition obligations when "such payments are necessary to the continued operation of the Debtor." *See, e.g.*, *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) (citing *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (holding that debtors may pay prepetition claims that are essential to continued operation of business)); *Bird* v. *Crown Convenience* (*In re NWFX, Inc.*), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern . . ."); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) (explaining that courts have long justified the payment of certain pre-petition creditors under the "doctrine of necessity" when "payment of those claims was necessary to keep the debtor in business," and "was necessary to effectuate a successful reorganization . . ."). This flexible approach is particularly critical where prepetition creditors—here, the PMC Physicians and Professional Medical Corporations—are vital to the survival of the debtor's business. *See In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (stating that a bankruptcy court may rely on section 105(a) to authorize payment of prepetition

---

Code and thus do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis. The continued performance of the ordinary course transactions in connection with the PMC MSAs is integral to ensuring the Debtors' ability to operate their business as debtors in possession and maximize the value of their estates.

9

claims "where such payment is necessary to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately") (internal quotations omitted).

22. The above-referenced sections of the Bankruptcy Code empower the Court to authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g.*, *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims of certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate.").

23. The Debtors' ability to honor any prepetition obligations and perform existing obligations to the PMC Physicians and Professional Medical Corporations is necessary to their continued and interrupted operations during these chapter 11 cases. The Debtors' continued relationships with the PMC Physicians and Professional Medical Corporations are at the core of the Debtors' telehealth business, and any interruption to the Debtors' ability to continue meeting their obligations to such parties would jeopardize the Debtors' ability to successfully restructure through these chapter 11 cases and the PMC Physicians' ability to provide high-quality patient care. The Debtors' estates and their creditors will benefit through the Debtors' continued ability to honor their obligations to the Professional Medical Corporations and preserve Lemonaid Health through the pendency of these cases. The Debtors submit that the circumstances of these chapter 11 cases warrant granting the requested relief, and that doing so is necessary and appropriate under the circumstances.

10

**Processing of Checks and Electronic Funds Transfers Should Be Authorized**

24.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize the Debtors' banks and other financial institutions (the "Banks") to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the Debtors' representations with respect to whether any check or transfer issued made by the Debtors before the Petition Date should be honored pursuant to this motion (such Banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this motion are dishonored or rejected by the Banks.

**Immediate Relief Is Necessary**

25.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable harm."  For the reasons discussed herein and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring efforts.  The relief requested herein is necessary for the Debtors to operate their business in the ordinary course and preserve the value of their estates for the benefit of stakeholders.  Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003 has been satisfied.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

26. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates through these chapter 11 cases.  Accordingly, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

27. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the

relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

28. The Debtors will provide notice of this motion to the following parties: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d) the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the Professional Medical Corporations; (f) the United States Attorney's Office for the Eastern District of Missouri; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the Federal Trade Commission; (j) the state attorneys general in all 50 states; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this motion and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Rules"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

29. A copy of this motion is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders and grant such other relief as the Court deems appropriate under the circumstances.

Dated: March 24, 2025  
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
/s/ *Thomas H. Riske*
Thomas H Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:     (314) 854-8600
Facsimile:      (314) 854-8660
Email:            thr@carmodymacdonald.com
                     nrw@carmodymacdonald.com
                     jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 373-3000
Facsimile:      (212) 757-3990
Email:            pbasta@paulweiss.com
                     chopkins@paulweiss.com
                     jchoi@paulweiss.com
                     ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*