## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |
| | Hearing Date:  TBD[2] |
| | Hearing Time:  TBD |
| | Hearing Location:  TBD |

**DEBTORS' APPLICATION FOR APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT AND ADMINISTRATIVE ADVISOR EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application (the "Application"):

**Relief Requested[3]**

1.      The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Proposed Orders")[4] authorizing the appointment of Kroll Restructuring Administration LLC ("Kroll") as (a) claims and noticing agent (the "Claims and Noticing Agent") and (b) administrative advisor (the "Administrative Advisor") in these chapter 11 cases, effective as of the Petition Date.  In support of this

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]     The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3]     Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Application.

[4]     Copies of the Proposed Orders will be made available on the Debtors' case information website at: https://restructuring.ra.kroll.com/23andMe.

Application, the Debtors submit the Declaration of Benjamin Steele, Managing Director at Kroll (the "Steele Declaration"), attached hereto as **Exhibit A**.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors consent to a final order with respect to this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 105(a) and 327(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014 and 2016 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Rules").

**Background**

5.      23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[5] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome.  The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports.  Further, through its Lemonaid Health telehealth platform,

---

[5]      Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

2

the Company operates as a national online doctor's office that provides medical care and pharmacy fulfillment services.

6.        On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.        The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith.   No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8.        A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[6]

### Basis for Relief Requested

9.        Section 156(c) of title 28 of the United States Code provides the following:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

---

[6]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

10.     Moreover, section 327(a) of the Bankruptcy Code provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

11.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

12.     The Debtors' selection of Kroll to act as the Claims and Noticing Agent and Administrative Advisor is appropriate under the circumstances and in the best interests of the Debtors' estates.  The Debtors submit, based on all engagement proposals obtained and reviewed from other claims and noticing agents, that Kroll's rates are competitive and reasonable given Kroll's quality of services and expertise.  The terms of Kroll's retention are set forth in the engagement agreement attached hereto as **Exhibit B** (the "Engagement Agreement").

13.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be millions of persons and entities to be noticed and that many of these parties will file claims.  Given the number of anticipated claimants, the Debtors submit that the appointment of a claims and noticing agent and administrative advisor will provide the most effective and efficient means of administering claims and soliciting and tabulating votes (as applicable), and is in the best interests of both the Debtors' estates and their creditors.  Further, the Debtors submit that the appointment of a claims and noticing agent and administrative

4

advisor will relieve the Debtors and/or the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri (the "Clerk of the Court") of the significant administrative burdens associated with the foregoing.

**Kroll's Qualifications**

14.     Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.   Kroll's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.   Kroll's professionals have acted as official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in various districts nationwide.   Kroll's active and former cases include, among others:   *Biora Therapeutics, Inc.*, No. 24-12849 (BLS) (Bankr. D. Del.); *Oya Renewables Development LLC*, No. 24-12574 (KBO) (Bankr. D. Del.); *Franchise Group, Inc.*, No. 24-12480 (JTD) (Bankr. D. Del.); *Exactech, Inc.*, No. 24-12441 (LSS) (Bankr. D. Del.); *FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del); *Acorda Therapeutics, Inc.*, No. 24-22284 (DSJ) (Bankr. S.D.N.Y.); *GOL Linhas Aéreas Inteligentes S.A.*, No. 24-10118 (MG) (Bankr. S.D.N.Y.); *SVB Financial Group*, No. 23-10367 (MG) (Bankr. S.D.N.Y.); *Party City Holdco Inc.*, No. 24-90621 (ARP) (Bankr. S.D. Tex.); *H.Food Holdings, LLC*, No. 24-90586 (ARP) (Bankr. S.D. Tex.); *Presperse Corporation*, No. 24-18921 (MBK) (Bankr. D.N.J.); and *Vobev, LLC*, No. 24-26346 (JTM) (Bankr. D. Utah).

15.     Kroll has also served as claims and noticing agent and/or administrative advisor on multiple occasions in this district.   *See, e.g.*, *In re Foresight Energy LP*, No. 20-41308 (Bankr. E.D. Mo.); *In re Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo.); *In re Payless Holdings LLC*, No. 17-42267 (Bankr. E.D. Mo.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161-659 (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr.

E.D. Mo.); *In re Arch Coal, Inc*., No. 16-40120 (Bankr. E.D. Mo.). Accordingly, the Debtors submit that appointing Kroll as the Claims and Noticing Agent and Administrative Advisor is appropriate in these chapter 11 cases.

<u>**Services to Be Provided**</u>

16.    This Application pertains to the work to be performed by Kroll under 11 U.S.C. § 327(a) and under the Clerk of the Court's delegation of duties permitted by 28 U.S.C. § 156(c). Under the Engagement Agreement, Kroll will perform the following services as the Claims and Noticing Agent pursuant to 28 U.S.C. § 156(c):[7]

   a.    **General Administrative Duties**

   (a)    maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>"), listing the Debtors' known creditors and the amounts owed thereto;

   (b)    maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010;

   (c)    assist in the Debtors' preparation of a single, consolidated list of all the Debtors' creditors (the "<u>Creditor Matrix</u>") in electronic format;

   (d)    identify and correct any incomplete or incorrect addresses in any mailing or service lists;

   (e)    monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

   (f)    assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website to be established and maintained by Kroll

---

[7]    If any of the services described herein conflict with the terms of any order of the Court establishing a claims bar date, such order shall control.

at https://restructuring.ra.kroll.com/23andMe and/or call center; and

(g)    comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements.

**b.    Claims Functions**

(a)    maintain a post office box or address for receiving claims and returned mail, and process all mail received;

(b)    process all proofs of claim received, including those received by the Clerk of the Court or filed through the CM/ECF system or the Electronic Proof of Claim (ePOC) Program on the Court's website, within five business days of receipt; electronically file with the Clerk of the Court all proofs of claim that Kroll has received or will receive, noting the claim number assigned by the Court, within five business days of receipt; and reconcile Kroll's records with the Court for all claims received to date for each case; *provided*, that if the time deadline cannot be met due to volume or unforeseen circumstances, Kroll shall promptly notify the Clerk of the Court;

(c)    relocate, by messenger or overnight delivery to the offices of Kroll, all of the proofs of claim mailed or hand-delivered to the Clerk of the Court, not less than weekly;

(d)    except as otherwise ordered by the Court, maintain a duplicate claims register on behalf of each Debtor (collectively, the "Claims Register") and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the address for payment, if different from the notice address, (v) the amount asserted, (vi) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), and (vii) any disposition of the claim;

(e)    ensure that the Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Kroll;

(f)    implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(g)    record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(h)  within seven days of notice to Kroll of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Register as of the date immediately before the close of the cases;

(i)  with prior approval of the Clerk of the Court, at the close of these chapter 11 cases, address the destruction of proofs of claim as instructed by the Clerk of the Court; and

(j)  upon receipt of proofs of claim not otherwise filed with the Clerk of the Court, file claims in the Court's Claim Register by the end of the week following the week of receipt (or by the end of the second week following the week of receipt during the two weeks preceding and following any bar set by the Court), noting the claim number assigned by the Court; and, upon completion of the docketing of claims processed with the Court, reconcile Kroll's records with those of the Court for all claims received to date for each case; *provided that* the foregoing does not apply to proofs of claim filed in connection with claims arising from or relating to the Cyber Security Incident; *provided, further, that* if the time deadline cannot be met due to volume or unforeseen circumstances, Kroll shall promptly notify the Clerk of the Court.

## c.  Noticing Functions

(a)  assist the Debtors with the preparation and distribution of all required notices and documents in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including:  (i) notice of the meeting of creditors under section 341 of the Bankruptcy Code; (ii) notice of any claims bar date, (iii) notice of any proposed sale of the Debtors' assets, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of any plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors, the Court, or the Clerk of the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)  serve the notice of the commencement of these cases and the initial meeting of the creditors under section 341 of the Bankruptcy Code using the current Official Form 309F notice as modified by the Court.  Kroll shall obtain this form notice from the Clerk of the Court and shall not modify the form notice it receives from the Clerk of the Court without the Clerk of the Court's consent.  Any

claims bar date notice must be approved by the Court and the Clerk of the Court prior to being issued by Kroll;

(c)    furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Clerk of the Court and the Court;

(d)    for all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk of the Court a certificate of service no later than 24 hours after service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(e)    if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk of the Court immediately upon notice to Kroll of entry of the order converting the cases; and

(f)    30 days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Kroll as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases.

17.    Moreover, the Debtors seek to retain Kroll, pursuant to 11 U.S.C. § 327(a), to perform the following as Administrative Advisor:

(a)    assist the Debtors with plan-solicitation services including, as applicable: (i) balloting, (ii) distribution of applicable solicitation materials, (iii) tabulation and calculation of votes, (iv) determining, with respect to each ballot cast, its timeliness and its compliance with the Bankruptcy Code, Bankruptcy Rules, and procedures ordered by this Court, (v) preparing an official ballot certification and testifying, if necessary, in support of the ballot tabulation results, and (vi) in connection with the foregoing services, processing requests for documents from parties in interest, including, if applicable, brokerage firms, bank back-offices, and institutional holders;

(b)    assist with the preparation of the Debtors' Schedules, and gather data in conjunction therewith;

(c)    provide a confidential data room, if requested;

(d)    manage and coordinate any distributions pursuant to a chapter 11 plan; and

(e)    provide such processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, but not included pursuant to 156(c) of title 28 of the United States Code, that may be requested from time to time by the Debtors, the Court, or the Clerk of the Court.

## Professional Compensation

18.    The Debtors respectfully request that the undisputed fees and expenses incurred by Kroll in the performance of the above-referenced services provided pursuant to 28 U.S.C. § 156(c) be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business pursuant to the Engagement Agreement without further application to or order of the Court. Kroll agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

19.    For the above-referenced services provided pursuant to section 327(a) of the Bankruptcy Code, Kroll will seek compensation in accordance with, and will file interim and final fee applications for allowance of its compensation and expenses pursuant to, sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the applicable Guidelines (as defined below).

20.    Prior to the Petition Date, the Debtors provided Kroll with a total advance in the amount of $100,000, as well as an advance replenishment of $20,000. Except as stated in this paragraph, Kroll has not received any payments from the Debtors in the 90 days prior to the

Petition Date.  Kroll seeks to first apply the advance to all prepetition invoices, and thereafter to have the advance replenished to the original advance amount, and thereafter to hold the advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

21.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Kroll's gross negligence, willful misconduct, or fraud or as otherwise provided in the Engagement Agreement or Proposed Orders.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent and administrative advisor in these chapter 11 cases.

### Efforts to Avoid Duplication of Services

22.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as bankruptcy counsel; (b) Carmody MacDonald P.C., as bankruptcy co-counsel; (c) Alvarez & Marsal North America, LLC, to provide a Chief Restructuring Officer and certain additional personnel to the Debtors; (d) Moelis & Company LLC as investment banker; (e) Deloitte Tax LLP, as turnaround and restructuring tax advisor; (f) Goodwin Procter LLP, as counsel to the Special Committee of the Board of Directors, and (g) Lewis Rice LLC, as co-counsel to the Special Committee of the Board of Directors.  The Debtors do not believe that the services to be performed by Kroll on behalf of the Debtors will be duplicative of services provided by these additional professionals. The Debtors and Kroll are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of

Kroll's retention as claims and noticing agent and administrative advisor. The Debtors understand that Kroll will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

### Disinterestedness

23. Kroll has reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Steele Declaration, Kroll has represented that it neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be employed.

24. To the best of the Debtors' knowledge, Kroll is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), as Kroll represents in the Steele Declaration, among other things, that:

     (a)     Kroll is not a creditor of the Debtors;

     (b)     Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

     (c)     by accepting employment in these chapter 11 cases, Kroll waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

     (d)     in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

     (e)     Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

     (f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon

which it is to be engaged;

(g)     in its capacity as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk of the Court's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk of the Court's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c) (the "Guidelines"); and

(j)     none of the services provided by Kroll as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases shall be at the expense of the Clerk of the Court's office.

25.     Given the large number of parties in interest in these chapter 11 cases, and despite the efforts to identify and disclose Kroll's relationships with parties in interest in these chapter 11 cases, Kroll is unable to state with certainty that every connection has been disclosed in the Steele Declaration.   Kroll has informed the Debtors that it will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

26.     To the extent that there is any inconsistency between this Application, the Proposed Orders, and the Engagement Agreement, the Proposed Orders shall govern.   In the event of any inconsistency between the Proposed Orders and any order of the Court establishing a claims bar date, such order establishing a claims bar date shall govern.

## **Immediate Relief Is Necessary**

27.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable harm."   For the reasons discussed herein and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of

their operations and that any delay in granting the Application could hinder the Debtors' operations and cause irreparable harm.  Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would imperil the Debtors' restructuring efforts.  The appointment of Kroll as claims and noticing agent and administrative advisor is necessary for the successful administration and execution of these chapter 11 cases.  Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003 has been satisfied.

**<u>Notice</u>**

28.     The Debtors will provide notice of this Application to the following parties: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d)  the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the United States Attorney's Office for the Eastern District of Missouri; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Federal Trade Commission; (i) the state attorneys general in all 50 states; and  (j) any  party  that  has  requested  notice  pursuant  to  Bankruptcy  Rule  2002 (collectively, the "<u>Notice Parties</u>").  Notice of this Application and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Local Rules.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

29.     A     copy     of     this     Application     is     available     on     (a)     PACER     at https://pacer.uscourts.gov/, and (b) the website maintained by the Debtors' proposed claims and noticing     agent,     Kroll     Restructuring     Administration     LLC,     at https://restructuring.ra.kroll.com/23andMe.

*[Remainder of page intentionally left blank]*

14

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders and such other relief as the Court deems appropriate under the circumstances.

Dated:    March 24, 2025                          Respectfully submitted,
          St. Louis, Missouri


                                        23ANDME HOLDING CO.
                                        (for itself and on behalf of each of its affiliated
                                        Debtors)


                                        */s/ Guy Chayoun*
                                        Name: Guy Chayoun
                                        Title:   Vice President, Interim General Counsel,
                                                 Corporate Secretary
                                                 23andMe Holding Co.

## Exhibit A

**Steele Declaration**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF BENJAMIN STEELE IN SUPPORT OF DEBTORS' APPLICATION FOR APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT AND ADMINISTRATIVE ADVISOR EFFECTIVE AS OF THE PETITION DATE**

I, Benjamin Steele, do hereby declare, under penalty of perjury, that:

1.      I am a Managing Director of Kroll Restructuring Administration LLC ("Kroll"), a chapter 11 administrative services firm whose headquarters are located at 1 World Trade Center, 31st Floor, New York, NY 10007.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn in as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the *Debtors' Application for Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent and Administrative Advisor Effective as of the Petition Date*, which was filed substantially contemporaneously herewith (the "Application").[2]

3.      Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Kroll's professionals have acted as official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in various districts nationwide.  Kroll's active and former cases include, among others:  *Biora Therapeutics, Inc.*, No. 24-12849 (BLS) (Bankr. D. Del.); *Oya Renewables Development LLC*, No. 24-12574 (KBO) (Bankr. D. Del.); *Franchise Group, Inc.*, No. 24-12480 (JTD) (Bankr. D. Del.); *Exactech, Inc.*, No. 24-12441 (LSS) (Bankr. D. Del.); *FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del); *Acorda Therapeutics, Inc.*, No. 24-22284 (DSJ) (Bankr. S.D.N.Y.); *GOL Linhas Aéreas Inteligentes S.A.*, No. 24-10118 (MG) (Bankr. S.D.N.Y.); *SVB Financial Group*, No. 23-10367 (MG) (Bankr. S.D.N.Y.); *Party City Holdco Inc.*, No. 24-90621 (ARP) (Bankr. S.D. Tex.); *H.Food Holdings, LLC*, No. 24-90586 (ARP) (Bankr. S.D. Tex.); *Presperse Corporation*, No. 24-18921 (MBK) (Bankr. D.N.J.); and *Vobev, LLC*, No. 24-26346 (JTM) (Bankr. D. Utah).

4.      Kroll has also served as claims and noticing agent and/or administrative advisor on multiple occasions in this district.  *See, e.g.*, *In re Foresight Energy LP*, No. 20-41308 (Bankr. E.D. Mo.); *In re Payless Holdings LLC*, No. 19-40883 (Bankr. E.D. Mo.); *In re Payless Holdings LLC*, No. 17-42267 (Bankr. E.D. Mo.); *In re Abengoa Bioenergy US Holding, LLC*, No. 16-41161-659 (Bankr. E.D. Mo.); *In re Noranda Aluminum, Inc.*, No. 16-10083-399 (Bankr. E.D. Mo.); *In re Arch Coal, Inc.*, No. 16-40120 (Bankr. E.D. Mo.).

5.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Kroll will perform, at the request of the Clerk of the Court, the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.  Moreover, Kroll will perform such services pursuant to 11 U.S.C. § 327(a) as specified in the Application and

Engagement Agreement.  In performing such services, Kroll will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit B** to the Application.

6.      Kroll represents, among other things, the following:

(a)      Kroll is not a creditor of the Debtors;

(b)      Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(c)      by accepting employment in these chapter 11 cases, Kroll waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)      in its capacity as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)      Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases;

(f)      Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)      in its capacity as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases, Kroll will not intentionally misrepresent any fact to any person;

(h)      Kroll shall be under the supervision and control of the Clerk of the Court's office with respect to the receipt and recordation of claims and claim transfers;

(i)      Kroll will comply with all requests of the Clerk of the Court's office and the Guidelines; and

(j)      none of the services provided by Kroll as Claims and Noticing Agent and Administrative Advisor in these chapter 11 cases shall be at the expense of the Clerk of the Court's office.

7.      In accordance with 11 U.S.C. § 327(a) and Bankruptcy Rule 2014, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "Potential Parties in Interest") in these chapter 11 cases.  The list of Potential Parties in

Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, directors and officers of the Debtors, significant stockholders, contract counterparties, landlords, vendors, insurers, utilities, governmental authorities, the United States Trustee and persons employed in the office of the United States Trustee, and other parties.  The results of the conflict check were compiled and reviewed by Kroll professionals under my supervision.  At this time, and as set forth in further detail herein, Kroll is not aware of any connection that would present a disqualifying conflict of interest.  Should Kroll discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to promptly file a supplemental declaration.

8.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Kroll nor any of its professionals has any adverse connection to the Debtors, their creditors, or other relevant parties.  However, Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

9.      Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman & Sterling LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; KPMG LLP ("KPMG"); PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc.; and Kurtzman Carson Consultants LLC.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while

employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed.

10.     Kroll hereby discloses the following connections, which Kroll believes do not present an interest adverse to the Debtors and are disclosed solely out of an abundance of caution:

(a)     Jordan Searles, a Director at Kroll, was previously an audit associate at KPMG, which is identified as a vendor on the list of Potential Parties in Interest.  Mr. Searles left KPMG in 2014.  Mr. Searles did not work on any matters involving the Debtors during his time at KPMG.  Mr. Searles' brother, Adam Searles, is a Partner at AlixPartners, LLC, one of the Debtors' vendors; and

(b)     Certain Kroll employees have been customers of the Debtors, but to the best of my knowledge, no Kroll employees have participated in any legal proceedings against the Debtors.

11.     Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent").  Kroll Parent is the world's premier provider of services and digital products related to governance, risk, and transparency.  Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent.  As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is adverse to the Debtors' estates or any class of creditors or security holders.

12.     Kroll has represented and will continue to represent clients in matters unrelated to these chapter 11 cases.  In addition, Kroll and its personnel have had and will continue to have relationships personally or in the ordinary course of its business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' chapter 11 cases.  Kroll may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or do not have any direct connection with, these chapter 11 cases or the Debtors.

13.     Kroll and its personnel, in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Kroll or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to these chapter 11 cases.

14.     Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll.

15.     As a general matter, in the infrequent case when a Kroll partner or employee may, directly or indirectly, own a debt or equity security of a company which may become or becomes a debtor or a debtor affiliate, such ownership would be substantially less than one percent of any such debtor or debtor affiliate.  Additionally, from time to time, Kroll partners or employees may personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds. and other types of investment funds (the "Investment Funds"), through which such individuals may indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates.  Any partner or employee who has made any such investment does not manage or otherwise control such Investment Fund.  The Investment Funds are managed by third parties, and Kroll partners or employees that may invest in the particular Investment Fund have no influence, discretion, or control over the Investment Fund's decision to buy, sell, or vote any particular debt or equity securities comprising the particular Investment Fund and, in certain instances, partners or employees may not be aware of the particular debt or equity securities comprising the particular Investment Fund.

16.     Based on the foregoing, I believe that Kroll is a "disinterested person" as that term

is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees holds or represents any interest adverse to the Debtors' estates with respect to any matter upon which Kroll is to be engaged.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:   March 24, 2025
   St. Louis, Missouri

          _/s/ Benjamin Steele_
          Name: Benjamin Steele
          Title:   Managing Director
              Kroll Restructuring Administration LLC

## **<u>Exhibit B</u>**

**Engagement Agreement**



**Kroll Restructuring Administration LLC Engagement Agreement**

This Agreement is entered into as of February 14, 2025 between Kroll Restructuring Administration LLC ("***Kroll***") and 23andMe Holding Co. (together with its affiliates and subsidiaries, the "***Company***").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1. Services**

    (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "***Services***").

    (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "***Company Parties***") with respect to providing Services hereunder. The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

**2. Rates, Expenses and Payment**

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "***Rate Structure***"); provided, however that Kroll will provide a discount of 20% off the attached hourly rates. The Company agrees to pay for reasonable and documented out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services. The Company may request separate Services or all of the Services.

    (c) Kroll will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

    (d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice. The

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e)   The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f)   The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g)   Upon execution of this Agreement, the Company shall pay Kroll $25,000 in accordance with Invoice Number 3850-ADV and an additional $75,000 (collectively, with the $25,000 payment, the "Advance") reasonably promptly after receipt of an invoice reflecting this amount from Kroll.  Kroll may use the Advance against unpaid fees and expenses hereunder.  Kroll may use the Advance against all prepetition fees and expenses, which Advance then shall be replenished immediately by the Company to the amount of the original Advance; thereafter, Kroll may hold such amount to apply against unpaid fees and expenses hereunder.

(h)   Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If any annual increase to the hourly rates therein represents an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

**3.   Retention in Bankruptcy Case**

(a)   If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b)   If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4.   Confidentiality**

(a)   The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b)   If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



## 5.  Property Rights

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

## 6.  Bank Accounts

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that such accounts or other financial products are provided to the Company, pursuant to Kroll's agreement(s) with financial institutions, Kroll may receive fees and other compensation from such institutions.

## 7.  Term and Termination

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence, willful misconduct or fraud of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b)  If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d)  If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

## 8.  No Representations or Warranties

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 9.  Indemnification

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and



against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, reasonable and documented counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence, willful misconduct or fraud.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence, willful misconduct or fraud, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss. In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder. In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "***SOFAs and Schedules***"). Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Kroll by the Company, including 23andMe Information (as defined below), may be retained by Kroll until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client. The Company agrees to initiate and maintain backup files that



would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials, including 23andMe Information (as defined below), shall comply with any applicable court orders and rules or clerk's office instructions.

(e) After the Company commences a case pursuant to the Bankruptcy Code, Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

**12. <u>Privacy and Security</u>**

(a) *Scope*. This section applies to any information, data, personally identifiable information, files and any content or materials, in any format, relating to an individual that is provided by or on behalf of the Company or obtained by Kroll in connection with the performance by Kroll of its obligations under the agreement ("***23andMe Information***"), which is processed by Kroll or any third parties appointed by Kroll to process 23andMe Information, including subcontractors (such third parties, "***Subprocessors***"). For clarity, 23andMe Information includes all personally identifiable information of and/or relating to the Company and its affiliates of individuals, including that of personnel, users, customers, or other individuals. For the purposes of this agreement, "processing" shall mean any operations performed on 23andMe Information, whether automated or not, including collection, storage, disclosure, manipulation, and deletion. The Company and Kroll shall ensure that an appropriately qualified representative, by position or title, is responsible for overseeing the transmission, receipt, and handling of 23andMe Information, receiving all notices, and handling all administrative matters relating to such information.

(b) *Compliance*. Kroll shall comply (and cause its Subprocessors to comply) with this agreement and all applicable laws, rules and regulations in connection with such entity's processing of 23andMe Information.  Kroll shall only process 23andMe Information to the extent necessary to perform the Services hereunder.

(c) *Privacy and Security Controls*. Kroll will implement and maintain (and shall cause its Subprocessors to implement and maintain) administrative, physical, and technical safeguards, that are no less rigorous than accepted industry practice, to protect 23andMe Information from unauthorized access, use, disclosure, modification or destruction, or interference (each a "***Security Incident***"), and notify Kroll in the event of any such Security Incident.  Such safeguards shall include without limitation appropriate technological and organizational measures designed to meet the following objectives: (i) physical controls to protect access to processing facilities; (ii) technological controls to protect access and input to data processing systems; (iii) technological controls to segregate and protect 23andMe Information within data processing systems; (iv) technological controls to protect Company information during transmission and at rest; (v) process controls to ensure appropriate incident response, disaster recovery and business continuity protocols are in place; and (vii) process controls to ensure that the controls set forth in this subsection are audited and evaluated annually.

(d) *Breach and Notification*. Upon Kroll's or its Subprocessors' discovery of a suspected or actual Security Incident, Kroll shall provide written notification of the Security Incident to the Company with a copy of such notification to privacy@23andme.com.  Kroll shall (and shall



cause its Subcontractors to) reasonably cooperate with the Company to: (i) determine the scope and severity of any such loss or unauthorized access; (ii) immediately implement remediation measures; and (iii) give notice to individuals whose personal information is the subject of such unauthorized access, to the extent required by law, regulation or court order.

### 13. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

### 14. <u>Force Majeure</u>

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

### 15. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 16. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

### 17. <u>Integration; Severability; Modifications; Assignment</u>

    (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

    (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

    (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.



**18. Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**19. Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|  |  |
|---|---|
| If to Kroll: | Kroll Restructuring Administration LLC<br>1 World Trade Center, 31st Floor<br>New York, NY 10007<br>Attn:  Legal Department<br>Tel:  212-257-5450<br>Email:  Legal@kbs.kroll.com |
| If to the Company: | 23andMe Holding Co.<br>223 N. Mathilda Avenue<br>Sunnyvale, CA, 94086[2]<br>Attn:  Guy Chayoun<br>Tel:  862-777-4104<br>Email:  guyc@23andme.com |
| With a copy to: | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Attn:  Grace C. Hotz<br>Tel:  212-373-3539<br>Email:  ghotz@paulweiss.com |

*[Signature page follows]*

---

[2]    The Company reserves the right to update their mailing address at any time.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By:  Christina Pullo
Title: Managing Director

**23andMe Holding Co.**

By:  Joseph Selsavage
Title:  Chief Financial Officer and Accounting Officer

8



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claims and Noticing Rates | |
| --- | --- |
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes data, including proofs of claim, ballots and return mail, and executes outgoing mailings with adherence to strict quality control standards. | $35 - $60 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requirements and administers complicated variable data mailings. | $50 - $135 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing claims objections and transfers.<br><br>The Senior Consultant directs the data collection process for the master mailing list, oversees all mailings, performs quality control checks on claim and other data processes, and generates claim and other reports. | $75 - $205 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the engagement and oversees all aspects of the bankruptcy administration, including managing the internal client service team and coordinating among case professionals. | $215 - $265 |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

### Solicitation, Balloting and Tabulation

### Statements of Financial Affairs/Schedules of Assets and Liabilities

| TITLE | HOURLY RATE |
| --- | --- |
| Solicitation Consultant; SOFA/Schedule Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications.<br><br>The SOFA/Schedule Consultant directs the data collection process for the SOFAs and Schedules and prepares the official forms. | $235 |
| Solicitation Director; SOFA/Schedule Director<br>The Director of Solicitation is the lead client service contact in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes.<br><br>The SOFA/Schedule Director works closely with the company and advisors to oversee all aspects of collecting SOFA/Schedule data and preparing the official forms. | $275 |

### Managing Directors and Experts

| TITLE | HOURLY RATE |
| --- | --- |
| Managing Director<br><br>Kroll Restructuring Administration's Managing Directors are expert witnesses or former restructuring professionals averaging more than 15 years of experience across hundreds or thousands of bankruptcy and other engagements. | $300 |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.

Partnership.

Expertise.

Innovation.

| Printing & Noticing Services | |
|---|---|
| Printing | $0.12 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | No charge |
| Proof of Claim Acknowledgment Card | No charge |
| Envelopes | Varies by Size |
| **Newspaper and Legal Notice Publishing** | |
| Coordinate and publish legal notices | Available on request |
| **Case Website** | |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |

**About Kroll**

Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106



**RATES**

Quality.
Partnership.
Expertise.
Innovation.

| Virtual Data Rooms | Available on request |
|---|---|
| **Electronic Data Collection Platform** | |
| Electronic claim filing, ballot submission and complex data collection platform | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Payment issuance (check, wire, ACH, digital) and/or Form 1099 | $3.00 per check plus postage/ $5.00 per wire |
| W-9 solicitation and maintenance of EIN/TIN database | Standard rates |

**About Kroll**
Kroll provides proprietary data, technology and insights to help our clients stay ahead of complex demands related to risk, governance and growth. Our solutions deliver a powerful competitive advantage, enabling faster, smarter and more sustainable decisions. With 5,000 experts around the world, we create value and impact for our clients and communities. To learn more, visit www.kroll.com.

© 2024 Kroll, LLC. All rights reserved. KR21035106