**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |
| | Hearing Date: TBD[2]<br>Hearing Time: TBD<br>Hearing Location: TBD |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO CONTINUE PREPETITION
INSURANCE POLICIES AND PAY ALL PREPETITION OBLIGATIONS IN
RESPECT THEREOF AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**[3]

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Proposed Orders")[4] (a) authorizing the Debtors to (i) continue to maintain and administer their prepetition Insurance Program and revise, extend, renew, supplement, or change Policies thereunder, as needed, and (ii) pay or honor

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3] Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this motion.

[4] Copies of the Proposed Orders will be made available on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

obligations arising under or in connection with their Insurance Program, including prepetition obligations arising in the ordinary course of business, if any; and (b) granting related relief.[5]

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5. 23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[6] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome. The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports. Further, through its Lemonaid Health telehealth platform, the Company operates

---

[5] Nothing in this motion should be construed as an assumption or rejection of any executory contract or unexpired lease between the Debtors and any other party. The Debtors reserve their rights to contest the amount claimed to be due by any person or entity.

[6] Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

2

as a national online doctor's office that provides medical care, pharmacy fulfillment, and laboratory testing services.

6. On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8. A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[7]

## Insurance Program Background

9. In the ordinary course of business, the Debtors maintain a comprehensive insurance program (the "Insurance Program") consisting of approximately 34 insurance policies (each, a "Policy" and, collectively, the "Policies") that are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). The Policies vary in amounts and types of coverage in accordance with prudent business practices, state and local laws governing the

---

[7] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

jurisdictions in which the Company operates, and various contractual obligations. The Policies provide coverage for, among other things, losses related to the Company's property, automobiles, crime, cargo and stock throughput, cyber and technology liability, directors' and officers' liability (including tail coverage), employers' liability, medical malpractice, workers' compensation, and various other property-related and general liabilities. The Debtors' Policies as of the Petition Date are listed in the schedule attached hereto as **Exhibit A** (the "Insurance Schedule").[8] For each Policy, the Insurance Schedule includes or otherwise identifies, among other things: (a) the corresponding Insurance Carriers, (b) the policy number, and (c) the policy term.

10. The Debtors' ability to continue and, as applicable, renew, modify, or supplement existing Policies is essential to the preservation of the value of the Debtors' business, property, and assets during the chapter 11 cases. Moreover, in many instances, insurance coverage is required by the various regulations, laws, and contracts that govern the Debtors' commercial activities,[9] including (a) section 1112(b)(4)(C) of the Bankruptcy Code, which provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" constitutes "cause" for mandatory conversion or dismissal of a chapter 11 case, and (b) the requirement by the Office of the United States Trustee for Region 13 that a debtor maintain adequate coverage

---

[8] The descriptions of the Policies set forth in this motion and on **Exhibit A** are representative only and are not intended to restrict the Debtors from changing carriers or programs, or adding different types of insurance, in the reasonable exercise of the Debtors' discretion. The actual terms of the Policies and related agreements will govern in the event of any inconsistency with the descriptions in this motion. The Debtors request authority to honor and renew Policies regardless of whether the Debtors have inadvertently failed to include a particular Policy on **Exhibit A**, and any such omitted Policy is hereby included in the defined term "Policies" as used herein and in the Proposed Order. In addition to the Policies listed on **Exhibit A**, the Debtors maintain numerous insurance policies with respect to, among other things, employee health, disability, and life insurance benefits. These programs are described, and relief is requested with respect to such programs, in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Certain Prepetition Employee Wages and Benefits and (B) Continue Employee Benefits Programs and Pay Related Obligations and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

[9] Such contracts include the management, administrative services, and licensing agreements between the Debtors and their affiliated non-Debtor professional entities that provide medical services to patients through the Debtors' telehealth platform, as described further in the First Day Declaration.

4

given the circumstances of its chapter 11 case. *See* 11 U.S.C. § 1112(b)(4)(C); *Operating Guidelines for Chapter 11 Cases*, Office of the United States Trustee for Region 13 (the "U.S. Trustee Operating Guidelines").

11. A description of the Insurance Program and the Debtors' obligations thereunder is set forth below.

**A.     Premium Payments**

12. In the ordinary course of business, the Debtors pay all premium obligations associated with their Policies (the "Premiums"). Most Policies have a one-year Policy period and renew annually in either May, June, July, or December. The Debtors prepay the entire amount of their annual Premiums through their Broker (as defined below) at the beginning of the applicable Policy period. For the 2023-24 and 2024-25 Policy periods, the Debtors paid an average of $5.29 million in Premiums per year.

13. As of the Petition Date, the Debtors do not believe that they owe any prepetition amounts to any Broker or Insurance Carrier on account of Premiums. Out of an abundance of caution, however, the Debtors seek authority to continue the Insurance Program in the ordinary course of business and revise, extend, renew, supplement, or change such Policies, as needed, and to pay prepetition Premiums in respect of the Policies, if any.

**B.     Retention and Deductibles**

14. Pursuant to the Insurance Program, the Debtors may be required to pay various retention amounts (each a "Retention", and collectively, the "Retentions") or deductibles (each, a "Deductible" and, collectively, the "Deductibles"), depending upon the type of claims and Policy involved. Generally, if a claim is made under a Policy that uses Retentions, the Debtors must make payments in the first instance up to the limit of the Retentions and, once the Debtors have made

5

such payments, the applicable Insurance Carrier is obligated to cover any remaining costs. Additionally, if a claim is made against the Policies that is subject to a Deductible, the Insurance Carriers and third-party administrators may pay claimants and then invoice the Debtors for claims paid within any Deductible.

15. As of the Petition Date, the Debtors are not aware of any prepetition obligations owed to the Insurance Carriers relating to any Retention or Deductible. Out of an abundance of caution, however, the Debtors nonetheless seek authority to satisfy any such prepetition obligations relating to the Deductibles or the Retentions, and to continue to honor their obligations under the Policies as they come due in the ordinary course of business on a postpetition basis.

**C.     Broker Fees**

16. The Debtors employ Woodruff-Sawyer & Co. and/or certain of their affiliates and subsidiaries as their insurance broker (the "Broker") to assist the Debtors with the procurement and negotiation of the Policies. The Broker receives compensation (the "Broker Fees") for their services through commissions from insurers. The Debtors customarily pay the Broker Fees as a component of their total annual Premium payments.

17. As of the Petition Date, the Debtors do not owe any outstanding Broker Fees. Out of an abundance of caution, however, the Debtors seek authority to pay prepetition amounts in respect of the Broker Fees, if any, and to continue the Insurance Program in the ordinary course of business consistent with historical practice.

**D.     Insurance Policy Audits**

18. Certain of the Debtors' Policies are subject to regular audits (the "Insurance Policy Audits"), which may result in an adjustment of the Premiums owed on account thereof. As of the Petition Date, the Debtors are not aware of any additional amounts owed on account of the

6

Insurance Policy Audits. Out of an abundance of caution, however, the Debtors seek the authority to honor any amounts owed on account of any Insurance Policy Audits, including prepetition amounts, in the ordinary course of business.

## Basis for Relief

**A. Continuation of the Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines**

19. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the U.S. Trustee Operating Guidelines. Given this backdrop, the Debtors believe it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, to maintain and continue to make all payments required under their Policies and have the authority to supplement, amend, extend, renew, or replace their Policies as needed in their business judgment, without further order of the Court.

**B. Payments to Maintain the Insurance Program are Warranted Under Sections 105(a) and 363 of the Bankruptcy Code and are in the Best Interests of the Debtors' Estates**

20. The Bankruptcy Code authorizes the Debtors to continue their prepetition practices with respect to their Insurance Program, including all payments on account of the Policies and to Brokers as such practices are in the ordinary course of the Debtors' business. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to

7

authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.[10]

21. Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the pre-plan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. at 499.

22. Section 105(a) of the Bankruptcy Code and the "doctrine of necessity" permit the bankruptcy court to exercise its broad grant of equitable powers to authorize the payment of prepetition obligations when "such payments are necessary to the continued operation of the Debtor." *See, e.g.*, *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001) (citing *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (holding that debtors may pay prepetition claims that are essential to continued operation of business)); *Bird* v. *Crown Convenience* (*In re NWFX, Inc.*), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern . . ."); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) (explaining that courts have long justified the payment

---

[10] Because the Debtors engage in transactions related to the Insurance Program on a regular basis and such transactions are common among enterprises similar to the Debtors, the Debtors believe that such transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and thus do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis. The continued performance of the ordinary course transactions in connection with the Debtors' Insurance Program is integral to ensuring the Debtors' ability to operate their business as debtors in possession and maximize the value of their estates.

8

of certain pre-petition creditors under the "doctrine of necessity" when "payment of those claims was necessary to keep the debtor in business," and "was necessary to effectuate a successful reorganization . . .").

23. The above-referenced sections of the Bankruptcy Code empower the Court to authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g.*, *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims of certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re CoServ, L.L.C.*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the pre-petition claim in aid of preservation or enhancement of the estate.").

24. The Debtors are unaware of any prepetition obligations arising from the Policies. Out of an abundance of caution, however, and in light of the importance of maintaining insurance coverage with respect to their business activities, the Debtors believe that it is in the best interest of their estates to maintain the Policies and to pay any prepetition obligations necessary to do so, as well as to revise, extend, supplement, or change insurance coverage, as necessary, pursuant to section 363(b)(1) of the Bankruptcy Code. If the Policies lapse, or if certain of the Insurance Carriers cancel the Policies or otherwise refuse to continue doing business with the Debtors on account of unpaid premiums, the Debtors' estates could be exposed to significant liabilities. The loss of any insurance coverage would impose considerable administrative and financial burdens on the Debtors, requiring the Debtors' management to expend significant attention to resources to secure replacement coverage at a critical juncture in these chapter 11 cases and, possibly, rendering the Debtors non-compliant with the U.S. Trustee's requirement that debtors maintain insurance

9

coverage during these chapter 11 cases. The Debtors therefore seek the continuation of their Insurance Program. The Debtors believe that the substantial benefit conferred on the Debtors' estates—and ultimately their creditors—by the Insurance Program's enhancement of the Debtors' going-concern business value warrants authorizing the Debtors to honor such Insurance Program.

25. For the foregoing reasons, the Debtors submit that the circumstances of these chapter 11 cases warrant granting the requested relief, and that doing so is in the best interests of the Debtors, their estates, their creditors, and their stakeholders, and therefore should be granted. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to maintain their Insurance Program and pay prepetition claims, if any, arising thereunder, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

**Processing of Checks and Electronic Funds Transfers Should Be Authorized**

26. In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize the Debtors' banks and other financial institutions (the "Banks") to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the Debtors' representations with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this motion are dishonored or rejected by the Banks.

**Immediate Relief Is Necessary**

27. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable

10

harm." For the reasons discussed herein and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring efforts. The relief requested herein is necessary for the Debtors to operate their business in the ordinary course and preserve the value of their estates for the benefit of stakeholders. Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003 has been satisfied.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

28. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates through these chapter 11 cases. Accordingly, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

29. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular

11

claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

30.     The Debtors will provide notice of this motion to the following parties:  (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d) the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the Insurance Carriers; (f) the Broker; (g) the United States Attorney's Office for the Eastern District of Missouri; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the Federal Trade Commission; (k) the state attorneys general in all 50 states; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively,

the "Notice Parties").  Notice of this motion and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Rules").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

31. A copy of this motion is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders and grant such other relief as the Court deems appropriate under the circumstances.

Dated: March 24, 2025  
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:   (314) 854-8600
Facsimile:   (314) 854-8660
Email:       thr@carmodymacdonald.com
             nrw@carmodymacdonald.com
             jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:   (212) 373-3000
Facsimile:   (212) 757-3990
Email:       pbasta@paulweiss.com
             chopkins@paulweiss.com
             jchoi@paulweiss.com
             ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Insurance Policies**

| Type of Insurance | Carrier | Policy Number | Policy Term Date |
|---|---|---|---|
| Auto - Commercial | Federal Insurance Company | 73602283 | 07/01/2024 - 07/01/2025 |
| Cargo | Lloyds of London - Falvey | MCFAL90000246 | 07/01/2024 - 07/01/2025 |
| Crime | Beazley Insurance Company | V32364240301 | 07/01/2024 - 07/01/2025 |
| Cyber Liability - Excess | Homeland Insurance Company of New York | 7200019130000 | 05/01/2024 - 05/01/2025 |
| D&O - Public | National Union Fire Ins Co Pittsburgh, PA | 011735605 | 06/16/2023 - 07/01/2025 |
| D&O Excess - Public | Berkley Insurance Company | BPRO8094901 | 06/16/2023 - 07/01/2025 |
| D&O Excess - Public | Continental Casualty Company | 652347042 | 06/16/2023 - 07/01/2025 |
| D&O Excess - Public | Allied World Specialty Insurance Company | 03138799 | 06/16/2023 - 07/01/2025 |
| D&O Excess - Public | XL Specialty Insurance Company | ELU19060223 | 06/16/2023 - 07/01/2025 |
| D&O Excess - Public | Hudson Insurance Company | HN03037601061623 | 06/16/2023 - 07/01/2025 |
| D&O Excess Side A DIC - Public | Axis Insurance Company | P00100052287303 | 06/16/2023 - 07/01/2025 |
| D&O Excess Side A DIC - Public | Allied World Specialty Insurance Company | 03129255 | 06/16/2023 - 07/01/2025 |
| D&O Excess Side A DIC - Public | Endurance Assurance Corporation (Sompo) | ADL30007968302 | 06/16/2023 - 07/01/2025 |
| D&O Excess Side A DIC - Public | Old Republic Insurance Company | ORPRO12105085 | 07/01/2024 - 07/01/2025 |
| D&O Independent Directors - Public | National Union Fire Ins Co Pittsburgh, PA | 018240341 | 10/28/2024 - 07/01/2025 |
| D&O Independent Directors - Public | XL Specialty Insurance Company | ELU20062124 | 10/28/2024 - 07/01/2025 |
| D&O Independent Directors - Public | Berkley Insurance Company | BPRO8121721 | 10/28/2024 - 07/01/2025 |
| D&O Independent Directors - Public | Twin City Fire Insurance Company | 57DA070093624 | 10/28/2024 - 07/01/2025 |
| E&O/Cyber Liability | Lloyds of London | B1510CY2400013 | 05/01/2024 - 05/01/2025 |
| E&O/Cyber Liability - Excess | Houston Casualty Company | 14MG24A16424 | 05/01/2024 - 05/01/2025 |
| E&O/Cyber Liability - Excess | Lloyds of London | TCIAX24HH86 | 05/01/2024 - 05/01/2025 |
| E&O/Cyber Liability - Excess | Arch Specialty Insurance Company | C4LPE044020CYBER2024 | 05/01/2024 - 05/01/2025 |
| E&O/Cyber Liability - Excess | Lloyds of London | B1510CY2400014 | 05/01/2024 - 05/01/2025 |
| Employment Practices Liability | Continental Casualty Company | 652522230 | 07/01/2024 - 07/01/2025 |
| Fiduciary Liability | Federal Insurance Company | J06016091 | 07/01/2024 - 07/01/2025 |
| Medical Malpractice Liability | Lloyds of London - Beazley | W2DE57240401 | 07/01/2024 - 07/01/2025 |
| Package - Commercial | Federal Insurance Company | 36053971 | 07/01/2024 - 07/01/2025 |
| Products Liability | Gemini Insurance Company | GL1243911 | 07/01/2024 - 07/01/2025 |

| Type of Insurance | Carrier | Policy Number | Policy Term Date |
|---|---|---|---|
| Products Liability - Excess | Federal Insurance Company | 93643559 | 07/01/2024 - 07/01/2025 |
| Professional Liability | Lloyds of London - Hiscox | MEO457375621(ERP) | 12/31/2022 - 12/31/2025 |
| Professional Liability | Lloyds of London - Hiscox | MEO532633424 | 07/01/2024 - 07/01/2025 |
| Special Contingency | Great American Insurance Company | UKA302315924 | 07/01/2024 - 07/01/2027 |
| Umbrella - Commercial | Federal Insurance Company | 78186788 | 07/01/2024 - 07/01/2025 |
| Workers Comp | Travelers Prop Casualty Co of America | UB3N50008724I6G | 07/01/2024 - 07/01/2025 |