**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-40976<br><br>(Joint Administration Requested)<br><br><br>Hearing Date: TBD[2]<br>Hearing Time: TBD<br>Hearing Location: TBD |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR
DISCONTINUING UTILITY SERVICES, (II) DEEMING UTILITY COMPANIES TO
HAVE ADEQUATE ASSURANCE OF FUTURE PAYMENT, (III) ESTABLISHING
PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT, AND
(IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**[3]

1. The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Proposed Orders")[4] (a) prohibiting the Debtors' utility service providers from altering, refusing, or discontinuing utility services on

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3] Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this motion.

[4] Copies of the Proposed Orders will be made available on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

account of unpaid prepetition invoices, (b) deeming the Debtors' utility service providers to have adequate assurance of future performance, (c) establishing procedures for determining additional adequate assurance of future payment and authorizing the Debtors to provide adequate assurance of future payment to the Debtors' utility service providers, and (d) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2.       The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors consent to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Missouri (the "Local Rules").

**Background**

5.	23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[5] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome.  The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports.  Further, through its Lemonaid Health telehealth platform, the Company operates as a national online doctor's office that provides medical care, pharmacy fulfillment, and laboratory testing services.

6.	On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.	The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8.	A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[6]

---

[5] Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

[6] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

**The Utility Services and Utility Companies**

9. In the ordinary course of operation of their businesses, the Debtors obtain electricity, natural gas, and other similar utility services (collectively, the "Utility Services") from various utility companies (the "Utility Companies").[7] A non-exclusive list of Utility Companies and their affiliates that provide Utility Services to the Debtors as of the Petition Date is attached as **Exhibit A** (the "Utility Service List").[8] While there is seasonal fluctuation, on average, the Debtors have historically spent approximately $156,121 per month on their Utility Services.[9]

10. At some of the Debtors' locations, certain Utility Services are billed directly to the Debtors' landlords (the "Landlords") and passed through to the Debtors as part of the Debtors' lease payments in accordance with the applicable lease agreements. The relief requested herein does not include those Utility Companies that indirectly supply services through the applicable Landlords.

11. In general, the Debtors have established a good payment history with virtually all of the Utility Companies and have made payments on a regular and timely basis. To the best of the Debtors' knowledge, there are no material defaults or arrearages of any significance with

---

[7] Section 366 of the Bankruptcy Code applies to entities that provide services that are traditionally provided by "utilities," including services that cannot be readily obtained or replaced elsewhere or which constitute a monopoly with respect to the service provided. *See In re One Stop Realtour Place, Inc.*, 268 B.R. 430 (Bankr. E.D. Pa. 2001) (mobile phone service provider was a utility); *In re Good Time Charlie's Ltd.*, 25 B.R. 226 (Bankr. E.D. Pa. 1982) (landlord was a utility because it was the sole source of electrical supply to debtor-tenant).

[8] The Debtors have endeavored to identify all of the Utility Companies and list them on **Exhibit A** hereto. However, inadvertent omissions may have occurred, and the omission from **Exhibit A** hereto of any entity providing Utility Services to the Debtors shall not be construed as an admission, waiver, acknowledgement, or consent that section 366 of the Bankruptcy Code does not apply to such entity. In addition, the Debtors reserve the right to assert that any of the entities now or hereafter included on the Utility Service List are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code.

[9] The Debtors' historical spend includes utility services provided in respect of certain leased properties (the "Lease Rejection Properties") for which the corresponding leases Debtors are seeking relief from the Court to terminate pursuant to the *Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of Certain Executory Contracts and Unexpired Leases and (B) Abandonment of Certain Personal Property, if Any, Each Effective as of the Petition Date and (II) Granting Related Relief*, filed contemporaneously herewith. The Debtors' historical spend excluding utility services in respect of the Lease Rejection Properties is approximately $3,506 per month.

respect to the Debtors' undisputed Utility Services invoices, other than payment interruptions that may be caused by the commencement of the chapter 11 cases.

I. **Proposed Adequate Assurance of Payment**

12. The Debtors intend to pay when due all undisputed postpetition charges for Utility Services. The Debtors expect their available cash will be more than sufficient to pay for the Debtors' postpetition use of the Utility Services. Nonetheless, and to provide the Utility Companies with additional assurance of payment pursuant to section 366 of the Bankruptcy Code, the Debtors propose to deposit a sum of $1,753 (the "Adequate Assurance Deposit"), equal to 50% of the Debtors' estimated monthly cost of the Utility Services,[10] into a newly created segregated bank account within 20 days of the Petition Date (the "Adequate Assurance Deposit Account"). The Debtors will hold the Adequate Assurance Deposit in the Adequate Assurance Deposit Account for the duration of these chapter 11 cases, and the deposit may be applied to any postpetition defaults in payment to the Utility Companies. No creditor of any of the Debtors shall have any interest in or lien on the Adequate Assurance Deposit or the Adequate Assurance Deposit Account. Currently, none of the Debtors' Utility Companies are holding any security deposits.

13. The Debtors propose that the Adequate Assurance Deposit Account be maintained until the earlier of (a) entry of an order of the Court authorizing or directing the return of the Adequate Assurance Deposit to the Debtors and (b) the effective date of any chapter 11 plan in the Debtors' chapter 11 cases. In addition, the Debtors seek authority to reduce the Adequate Assurance Deposit to the extent that it includes an amount on account of a Utility Company that the Debtors subsequently determine should be removed from the Utility Services List.

---

[10] The Adequate Assurance Deposit excludes Utility Services associated with the Lease Rejection Properties.

5

14. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in accordance with their prepetition practice (collectively, the "Proposed Adequate Assurance"), provides adequate assurance of payment as required by section 366 of the Bankruptcy Code.

**II.    The Adequate Assurance Procedures**

15. The Debtors believe that no other or further assurance of payment is necessary. If, however, a Utility Company believes that additional or alternative assurance of payment is necessary, however, the Debtors submit that the Utility Company must request such additional or alternative assurance of payment by the procedures described below (the "Adequate Assurance Procedures"):

> (a) If an amount relating to Utility Services provided postpetition by a Utility Company is unpaid, and remains unpaid beyond any applicable grace period, such Utility Company may request a disbursement from the Adequate Assurance Deposit Account by giving notice to (i) the Debtors, 870 Market Street, Room 415, San Francisco, CA 94102 (Attn: Legal Department (email: legal@23andme.com)); (ii) the Office of the United States Trustee, 111 South 10th Street, Suite 6.353, St. Louis, Missouri 63102; and (iii) proposed co-counsel to the Debtors (1) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Christopher Hopkins, Jessica Choi and Grace Hotz (emails: chopkins@paulweiss.com, jchoi@paulweiss.com and ghotz@paulweiss.com)) and (2) Carmody MacDonald P.C., 120 S. Central Avenue, Suite 1800, St. Louis, Missouri 63105 (Attn: Thomas Riske and Nathan Wallace (emails: thr@carmodymacdonald.com and nrw@carmodymacdonald.com)) (collectively, the "Notice Parties"). The Debtors will honor such request within 20 days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Company to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Company receives a disbursement from the Adequate Assurance Deposit Account, the Debtors will replenish the Adequate Assurance Deposit Account in the amount so disbursed.
>
> (b) If a Utility Company is not satisfied with the Proposed Adequate Assurance and seeks additional assurance of payment in the form of a deposit, letter of credit, prepayment, or otherwise, it must serve a request

6

(an "Additional Assurance Request") upon the Notice Parties within 21 days after the Petition Date.

(c) Each Additional Assurance Request must (i) be made in writing; (ii) set forth all location(s) for which Utility Services are provided and the relevant account number(s); (iii) include a summary of the Debtors' payment history relevant to the affected account(s); (iv) describe any deposits or other security currently held by the requesting Utility Company; and (v) identify and explain the basis of the Utility Company's proposed adequate assurance requirement under section 366(c)(2) of the Bankruptcy Code;

(d) Upon the Notice Parties' receipt of an Additional Assurance Request at the addresses set forth in subparagraph (a) above, the Debtors shall promptly negotiate with such Utility Company to resolve such Utility Company's Additional Assurance Request;

(e) If the Debtors determine that a timely received Additional Assurance Request is not reasonable and are unable to reach an alternative resolution with the applicable Utility Company (each, an "Adequate Assurance Dispute"), the Debtors shall, upon reasonable notice, schedule the matter for the next regularly scheduled omnibus hearing to determine the adequacy of assurance of payment pursuant to section 366(c)(3) of the Bankruptcy Code (a "Determination Hearing");

(f) Pending resolution of any such Adequate Assurance Dispute, any such Utility Company shall be prohibited from altering, refusing, or discontinuing service to the Debtors on account of unpaid charges for prepetition services, the filing of the chapter 11 cases, or any objection to the adequacy of the Proposed Adequate Assurance;

(g) The Debtors may, in their discretion, resolve any Adequate Assurance Dispute by mutual agreement with the requesting Utility Company without further notice to the Court or any other party-in-interest and may, in connection with any such agreement, provide a Utility Company with additional adequate assurance of future payment, including, but not limited to, a cash deposit, prepayment, letter of credit, or other forms of security, without further order of the Court to the extent the Debtors believe that such additional assurance is reasonable in the exercise of their business judgment and the Debtors may, by mutual agreement with the objecting Utility Company and without further order of the Court, reduce the Adequate Assurance Deposit by an amount not exceeding the requesting Utility Company's estimated two-week utility expense; and

(h) The portion of the Adequate Assurance Deposit attributable to each Utility Company may be returned to the Debtors, without further order of the Court, on the earlier of (i) the reconciliation and payment by the Debtors of the Utility Company's final invoice following the Debtors' termination of

7

Utility Services from such Utility Company, *provided* that such Utility Company does not dispute that it has been paid in full for post-petition services and (ii) the effective date of any chapter 11 plan in these chapter 11 cases.

### III. Modifications to the Utility Services List

16. It is possible that, despite the Debtors' diligent efforts, certain Utility Companies have not yet been identified by the Debtors or included on the Utility Service List (each, an "Additional Utility Company" and, collectively, the "Additional Utility Companies"). Promptly upon the discovery of an Additional Utility Company, the Debtors propose that they will increase the Adequate Assurance Deposit by an amount equal to approximately 50% of the Estimated Utility Expense for each Additional Utility Company, unless such Additional Utility Company agrees in writing to a lesser amount or is paid in advance for Utility Services. In exchange, the Debtors request that the Court provide that the Additional Utility Companies be subject to the terms of the Interim Order and any Final Order, including the Adequate Assurance Procedures.

17. It is possible that during the course of these chapter 11 cases, the Debtors may cease doing business in the ordinary course with certain Utilities for which funds have been contributed to the Adequate Assurance Deposit (each, a "Closed Account" and collectively, the "Closed Accounts"). The Debtors seek authority in such circumstances to decrease the amount of the Adequate Assurance Deposit by withdrawing from the Adequate Assurance Deposit Account the amount deposited with respect to such Closed Account, solely to the extent no known dispute regarding postpetition payments exists.

18. The Debtors submit that the relief requested in this motion strikes a fair balance between protecting the rights of the Utility Companies, the rights of the Debtors under the Bankruptcy Code, and the need for the Debtors to continue to receive, for the benefit of their

8

estates, the Utility Services upon which their business depends. The Debtors do not believe that the Utility Companies will be prejudiced by the Proposed Adequate Assurance, the requirement to provide the Debtors with uninterrupted access to Utility Services, or the procedures for resolving objections to the Proposed Adequate Assurance.

**IV.     Prohibition on Altering, Refusing, or Discontinuing Services**

19.     Pending the entry of the Proposed Orders and a resolution of any Additional Assurance Request, objection, or Determination Hearing, if any, the Debtors request that the Utility Companies, including the Additional Utility Companies, be prohibited from (a) discriminating against the Debtors, (b) altering, refusing, or discontinuing service to the Debtors, or (c) requiring payment of a deposit or receipt or any other security for continued service other than the Adequate Assurance Deposit, as a result of the Debtors' bankruptcy filings or any outstanding prepetition invoices.

## Basis for Relief

20.     The Utility Services are essential to operation of the Debtors' businesses and will continue to be necessary during these chapter 11 cases. The termination or cessation (even if only temporary) of Utility Services because of payment defaults related to prepetition Utility Services would result in a significant disruption to the Debtors' business operations. Such disruptions could result in substantial and irreparable harm to the Debtors and would impair the Debtors' efforts to preserve and maximize the value of their estates during these chapter 11 cases. It is therefore critical that the Utility Services continue uninterrupted.

21.     Section 366 of the Bankruptcy Code provides that, in a chapter 11 case, during the initial 30 days after the commencement of the case, utilities may not alter, refuse or discontinue service to, or discriminate against, a debtor solely on the basis of the commencement of its case or the existence of prepetition debts owed by the debtor. After the 30 day period, however, under

9

section 366(c) of the Bankruptcy Code, utilities may discontinue service to a debtor if the debtor does not provide "adequate assurance of future performance" of its postpetition obligations in a form that is satisfactory to the utility, subject to the Court's ability to modify the amount of adequate assurance.  *See* 11 U.S.C. § 366(c)(2).

22. While the form of Adequate Assurance may be limited to the types of security enumerated in subsection 366(c)(1)(A) of the Bankruptcy Code,[11] the determination of the amount of adequate assurance is within the discretion of the Court.  It is well established that the requirement that a utility receive adequate assurance of payment does not require a guarantee of payment.  *See In re Alipat, Inc.*, 36 B.R. 274, 278 (Bankr. E.D. Mo. 1984) (recognizing that adequate assurance of payment does not require absolute guarantee of payment); *In re Great Atl. & Pac. Tea Co., Inc.*, 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (citing *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002); *In re Crystal Cathedral Ministries*, 454 B.R. 124, 131 (C.D. Cal. 2011); *In re Circuit City Stores*, 2009 WL 484553, at *4 (Bankr. E.D. Va. Jan. 14, 2009); *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not . . . absolute assurance.  The key to achieving the balance required by § 366 is not to confuse adequate assurance with adequate protection, which must be provided to a creditor under 11 U.S.C. § 361).

23. When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to determine whether the Utility Company will be subject to an unreasonable risk of nonpayment.  *See Mass. Elec. Co.* v. *Keydata Corp.* (*In re Keydata Corp.*), 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr.

---

[11]  This section of the Bankruptcy Code provides that "assurance of payment" may be in the form of a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or another form of security that is mutually agreed upon by the utility and the debtor. 11 U.S.C. § 366(c)(1)(A).

10

E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). Courts have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts must "focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn. Cent. Tramp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"); *In re Buffets Holdings, Inc.*, 2009 WL 453112, at *1 (D. Del. Feb. 24, 2009) (recognizing the bankruptcy court's approval of an approximately 50% deposit). Accordingly, demands by a utility provider for a guarantee of payment should be refused when the debtor's specific circumstances already afford adequate assurance of payment.

24. Here, the Utility Companies are adequately assured against the risk of nonpayment for future services. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provides assurance of the Debtors' payment of their future obligations. Moreover, termination of any Utility Services could result in the Debtors' inability to operate their business to the detriment of their stakeholders. *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

25. Courts are permitted to fashion reasonable procedures, such as the Debtors' proposed Adequate Assurance Procedures, to implement the protections afforded under section

11

366 of the Bankruptcy Code. *See, e.g., In re Circuit City Stores Inc.*, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order."). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in a disorganized manner at a critical period in their efforts to reorganize." *Id*. Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id*. at *5–6. The Utility Companies still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id*. at *6. However, the Adequate Assurance Procedures will avoid a disorganized process whereby each Utility Company could make a last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id*. at *5.

26. Without the protections afforded by the Adequate Assurance Procedures, the Debtors could be forced to address ad hoc requests by Utility Companies in a disorganized manner in the initial, critical stages of their restructuring process, when their efforts should be focused on stabilizing their operations and maximizing value for all of their stakeholders. The orderly process contemplated by the Adequate Assurance Procedures is necessary for a smooth transition by the Debtors into chapter 11 and will aid in their restructuring efforts. Moreover, the Adequate Assurance Procedures will establish a fair process that will ensure all parties act in good faith.

27. The Court also possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate

Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366. Accordingly, the Debtors submit that the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

28.     Accordingly, for all the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

### Processing of Checks and Electronic Funds Transfers Should Be Authorized

29.     In connection with the foregoing, the Debtors respectfully request that the Court (a) authorize the Debtors' banks and other financial institutions (the "Banks") to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Banks may rely on the Debtors' representations with respect to whether any check or transfer issued made by the Debtors before the Petition Date should be honored pursuant to this motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this motion are dishonored or rejected by the Banks.

### Immediate Relief Is Necessary

30.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable harm." For the reasons discussed herein and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Failure to obtain the requested relief during the first 21 days of these

13

chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring efforts. The relief requested herein is necessary for the Debtors to operate their business in the ordinary course and preserve the value of their estates for the benefit of stakeholders. Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003 has been satisfied.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

31. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates through these chapter 11 cases. Accordingly, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

32. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity,

14

priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### Notice

33. The Debtors will provide notice of this motion to the following parties:  (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d) the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the Utility Companies listed on **Exhibit A**,[12] (f) the United States Attorney's Office for the Eastern District of Missouri; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i)  the Federal Trade Commission; (j) the state attorneys general in all 50 states; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of this motion and any order entered hereon will

---

[12] The Debtors will also provide notice of this motion to Utility Companies who have provided Utility Services associated with the Lease Rejection Properties.

15

be served in accordance with rule 9013-3(A)(1) of the Local Rules.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

34.    A copy of this motion is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders and grant such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: March 24, 2025<br>St. Louis, Missouri | Respectfully submitted,<br><br>**Carmody MacDonald P.C.**<br>*/s/ Thomas H. Riske*<br>Thomas H. Riske #61838MO<br>Nathan R. Wallace #74890MO<br>Jackson J. Gilkey #73716MO<br>120 S. Central Avenue, Suite 1800<br>St. Louis, Missouri 63105<br>Telephone:  (314) 854-8600<br>Facsimile:  (314) 854-8660<br>Email:  thr@carmodymacdonald.com<br>           nrw@carmodymacdonald.com<br>           jjg@carmodymacdonald.com<br><br>- and -<br><br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>Paul M. Basta (*pro hac vice* pending)<br>Christopher Hopkins (*pro hac vice* pending)<br>Jessica I. Choi (*pro hac vice* pending)<br>Grace C. Hotz (*pro hac vice* pending)<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Telephone:  (212) 373-3000<br>Facsimile:  (212) 757-3990<br>Email:  pbasta@paulweiss.com<br>           chopkins@paulweiss.com<br>           jchoi@paulweiss.com<br>           ghotz@paulweiss.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |

**Exhibit A**

**Utility Service List**

| Utility Company | Address | Account Number(s) | Service(s) | Monthly Average | Proposed Adequate Assurance |
|---|---|---|---|---|---|
| Allied Services, LLC | 12976 ST. CHARLES ROCK ROAD BRIDGETON, MO 63044 UNITED STATES | 3-0346-046283 | Waste Management | $372 | $186 |
| Ameren Missouri | 1901 CHOUTEAU AVE ST. LOUIS, MO 63103 UNITED STATES | 9370004488 | Electricity | $1,846 | $923 |
| AT&T | 208 S. AKARD ST. DALLAS, TX 75202 UNITED STATES | 313507839 | Telecommunications | $1,101 | $551 |
| Spire Marketing | DRAWER 2 ST. LOUIS, MO 63171 UNITED STATES | 7895478929 | Natural Gas | $187 | $93 |