## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |
| | Hearing Date: TBD[2] |
| | Hearing Time: TBD |
| | Hearing Location: TBD |

## DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors")
respectfully state as follows in support of this application (the "Application"):

### Relief Requested[3]

1.      The Debtors seek entry of interim and final orders (the "Proposed Orders")[4]
authorizing the retention and employment of Moelis & Company LLC ("Moelis") as the Debtors'
investment banker with respect to these chapter 11 cases, effective as of the Petition Date (as
defined below).  In support of this Application, the Debtors rely upon the declaration of Barak

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]   The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3]   Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Application.

[4]   Copies of the Proposed Orders will be made available on the Debtors' case information website at: https://restructuring.ra.kroll.com/23andMe.

Klein, Co-Head of U.S. Capital Structure Advisory & a Managing Director at Moelis (the "Klein Declaration"), attached hereto as **Exhibit B**.  In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

2.       The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors consent to a final order with respect to this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The bases for the relief requested herein are sections 327(a), and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014 and 2016 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Bankruptcy Local Rules").

## Background

5.       23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[5] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome.  The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic

---

[5]       Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

health reports.  Further, through its Lemonaid Health telehealth platform, the Company operates as a national online doctor's office that provides medical care and pharmacy fulfillment services.

6.      On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8.      A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[6]

### Moelis' Qualifications

9.      Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has

---

[6]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

approximately 1,100 employees with offices in North America, South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.  Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  In addition, Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous bankruptcy cases, including: *In re American Tire Distributors, Inc.*, Case No. 24-12391 (CTG) (Bankr. D. Del. Dec. 17, 2024); *In re Tupperware Brands Corporation*, Case No. 24-12156 (BLS) (Bankr. D. Del Nov. 18, 2024); *In re Blink Holdings, Inc.*, Case No. 24-11686 (JKS) (Bankr. D. Del. Sept. 9, 2024); *In re SunPower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 5, 2024); *In re Impel Pharmaceuticals*, Case No. 23-80016 (Bankr. N.D. Tex. Jan. 1, 2024); *In re Orbital Infrastructure Group, Inc.*, No. 23-90763 (CML) (Bankr. S.D. Tex. Aug. 23, 2023); *In re Proterra Inc.*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 7, 2023); *In re MLCJR LLC*, No. 23-90324 (CML) (Bankr. S.D. Tex. July 10, 2023); *In re Diamond Sports Group, LLC*, No. 23-90116 (CML) (Bankr. S.D. Tex. June 13, 2023); *In re Party City Holdco Inc.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re BlockFi Inc.*, Case No. 22-19361 (Bankr. D.N.J. Feb. 16, 2023); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re TPC Grp. Inc.*, No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Alpha Media Holdings LLC*, Case No. 21-30209 (KRH) (Bankr. E.D. Va. Mar. 11, 2021); *In re*

*Knotel, Inc*., No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. June 14, 2020); *In re Internap Tech. Sols. Inc*., No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Whiting Petroleum Corp.*, No. 20- 32021 (DRJ) (Bankr. S.D. Tex. May 9, 2020); *In re Rentpath Holdings, Inc*., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020).

10. The Debtors have selected Moelis as their investment banker based upon, among other things: (a) the Debtors' need to retain a skilled investment banker and financial advisor to provide advice with respect to the Debtors' restructuring activities; (b) Moelis' extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases such as these; and (c) Moelis' extensive knowledge of the Debtors, as described below.  In light of the size and complexity of these chapter 11 cases, Moelis' resources, capabilities and experience are crucial to the resolution of these cases.  An experienced investment banker and financial advisor, such as Moelis, fulfills a critical service that complements the services provided by the Debtors' other professionals.  For these reasons, the Debtors require the services of a capable and experienced investment banker and financial advisor such as Moelis.

11. Moelis has been engaged by the Debtors to provide financial advisory and investment banking advice since January 2025, to explore a potential balance sheet restructuring in parallel to the ongoing sale and marketing efforts.  As a result of its work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, financial affairs, operations, and capital structure.  Having worked with the Debtors' management and other advisors, Moelis has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.

Accordingly, the Debtors believe Moelis is well-qualified to represent them in a cost-effective, efficient, and timely manner, and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors, and all parties in interest.

### Services to be Provided

12.     In January 2025, Moelis commenced its engagement with the Debtors and the Special Committee of the Board of Directors of the Debtors (the "Special Committee") to provide financial advisory and investment banking advice in connection with the Debtors' proposed Restructuring and/or Capital Transaction, each as defined in the engagement letter by and between the Debtors and Moelis, dated as of January 10, 2025 (together with an attached related amendment to such engagement letter dated March 23, 2025, the "Engagement Letter").   The terms and conditions of the Engagement Letter were the result of significant discussions and negotiations between Moelis and the Debtors, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.   Pursuant to the Engagement Letter, Moelis has agreed to perform the following services, as requested, for the Debtors (the "Services"):[7]

  a.     assist the Debtors and Special Committee in reviewing the Company's strategic alternatives;

  b.     assist the Debtors and Special Committee in reviewing and analyzing the Company's results of operations, financial condition and business plan;

  c.     assist the Debtors and Special Committee in reviewing and analyzing any potential Sale Transaction, Asset Transaction, Restructuring or Capital Transaction;

  d.     assist the Debtors and Special Committee in negotiating any Sale Transaction, Asset Transaction, Restructuring or Capital Transaction;

---

[7]     The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects.  In the event of any inconsistency between the summary of services as set forth herein and the Engagement Letter, the Engagement Letter will control. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

e.       advise the Debtors and Special Committee on the terms of securities the Company offers in any potential Capital Transaction;

f.       advise the Debtors and Special Committee on its preparation of an information memorandum for a potential Sale Transaction, Asset Transaction or Capital Transaction (each, an "Information Memo");

g.       assist the Debtors and Special Committee in identifying and contacting potential Acquirers or purchasers of a Capital Transaction ("Purchasers") that the Debtors and Special Committee deem appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties or businesses that is acceptable to the Debtors and Special Committee, subject to customary business confidentiality agreements; and

h.       provide such other financial advisory and investment banking services in connection with a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction as Moelis, the Debtors and the Special Committee may mutually agree upon.

## **Professional Compensation**

13.    Moelis' decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

14.    Moelis does not typically charge for its services on an hourly basis. Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom in the investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

15.     As set forth more fully in the Engagement Letter, Moelis and the Debtors have

agreed on the following terms of compensation and expense reimbursement (the "Fee Structure")[8]:

Retainer Fee

(i) Promptly after execution of this agreement, a retainer fee of $1,000,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against (a) the Sale Transaction Fee (as defined below) for a Sale Transaction that is part of a Bankruptcy Case or (b) the Restructuring Fee (as defined below), subject to the Offset Cap (as defined below) in the case of the Restructuring Fee. For the avoidance of doubt, the Retainer Fee shall not be offset against a Sale Transaction Fee for a Sale Transaction that occurs outside of a Bankruptcy Case.

Monthly Fee

(ii) During the term of this agreement beginning upon the date set forth in the following sentence, a fee of $175,000 per month (the "Monthly Fee"), payable in advance of each month. The Debtors will pay the first Monthly Fee beginning the earlier of: (i) February 26, 2025 or (ii) the date of a Chapter 11 filing by or against the Debtors or any of its subsidiaries, and all subsequent Monthly Fees prior to each monthly anniversary of the date of the first Monthly Fee. Whether or not a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement after the date of the first Monthly Fee. 50% of each Monthly Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee or the Restructuring Fee (each as defined below), subject to the Offset Cap (as defined in the Engagement Letter) in the case of the Restructuring Fee.

Opinion Fee

(iii) An opinion fee (the "Opinion Fee") equal to $1,000,000. The Opinion Fee is payable promptly upon Moelis having rendered an Opinion at the request of the Debtors or Special Committee, regardless of the conclusion Moelis reaches in the Opinion.

Sale Transaction Fee

(iv) At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $3,500,000 (subject to applicable offsets). The Sale Transaction Fee shall be payable whether the Sale Transaction is consummated outside of, or in connection with, a Bankruptcy Case.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code or in connection with the acquisition of assets under a Plan,

---

[8]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Engagement Letter.

such Sale Transaction shall trigger a Sale Transaction Fee, and any resulting or subsequent Restructuring involving the Debtors shall trigger a Restructuring Fee. The Sale Transaction Fee (prior to any offset for any Asset Transaction Fees previously paid) shall be offset, to the extent previously paid, against the Restructuring Fee, subject to the Offset Cap (as defined in the Engagement Letter). For the avoidance of doubt, Moelis shall only be entitled to earn a single Sale Transaction Fee.

Asset Transaction Fee

(v) At the closing of an Asset Transaction, a fee (the "Asset Transaction Fee") equal to 5.0% of the aggregate gross proceeds received or to be received, directly or indirectly, by the Debtors and its subsidiaries in connection with such Asset Transaction at the closing of such Asset Transaction or within six (6) months thereafter; provided, that the aggregate Asset Transaction Fees hereunder shall not exceed $2,500,000. For the avoidance of doubt, the parties agree that (a) an Asset Transaction Fee shall be payable only with respect to any upfront payments or any installment payments made within six (6) months of closing of the Asset Transaction, and (b) no Asset Transaction Fee will be payable with respect to any milestone, contingent, royalty or other future payments related to an Asset Transaction. Any amounts paid into escrow shall be deemed paid at closing. The Debtors will pay a separate Asset Transaction Fee in respect of each Asset Transaction in the event that more than one Asset Transaction occurs. Any Asset Transaction Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee.

Restructuring Fee

(vi) Upon the occurrence of a Restructuring, a fee (the "Restructuring Fee") of $3,000,000 (subject to applicable offsets). Notwithstanding anything to the contrary herein, in no event shall the collective amount of previously paid Retainer Fees, Monthly Fees and Sale Transaction Fees offset against the Restructuring Fee exceed $2,000,000 (the "Offset Cap"). The Restructuring Fee shall be offset, to the extent previously paid, against any subsequent Sale Transaction Fee. For the avoidance of doubt, Moelis shall only be entitled to earn a single Restructuring Fee pursuant to this agreement.

Capital Transaction Fee

(vii) At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

(A) 5.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests (collectively, "Equity Interests") (including, for purposes of this clause (A) but

9

subject to the below paragraph regarding timing of payment, unfunded binding commitments); plus

(B) 3.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries with respect to debt obligations for borrowed money (whether secured or unsecured) raised in the Capital Transaction that are convertible into Equity Interests (including, for purposes of this clause (B) but subject to the below paragraph regarding timing of payment, unfunded binding commitments); plus

(C) 2.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries with respect to junior or unsecured debt obligations for borrowed money raised in the Capital Transaction (including, for the purpose of this clause (C), unfunded binding commitments); plus

(D) 1.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries with respect to secured debt obligations for borrowed money raised in the Capital Transaction (including the aggregate gross amount of any debtor-in-possession financing raised in connection with a Bankruptcy Case ("DIP Capital")) (including, for the purpose of this clause (D), unfunded binding commitments); provided, that the Capital Transaction Fee for any DIP Capital raised shall be subject to a minimum fee of $500,000.

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.

Notwithstanding the foregoing, (i) if the Debtors completes a Capital Transaction with Anne Wojcicki and/or any of her affiliates pursuant to which the Debtors raises capital through the issuance of Equity Interests (other than preferred stock or convertible debt) (a "Specified Capital Transaction") and, prior to or within nine (9) months of such Specified Capital Transaction, Anne Wojcicki and/or any of her affiliates and the Debtors execute a definitive agreement for a Sale Transaction that is not part of a Bankruptcy Case, the Capital Transaction Fee for the Specified Capital Transaction shall be offset, to the extent previously paid, against the Sale Transaction Fee or (ii) if any party executes a definitive agreement with the Debtors for a Sale Transaction that is not part of a Bankruptcy Case, and such definitive agreement provides for the completion of a Capital Transaction by such party prior to the consummation of the Sale Transaction (a "Pre-Funding Capital Transaction"), the Capital Transaction Fee for the Pre-Funding Capital Transaction shall be offset, to the extent previously paid, against the Sale Transaction Fee.

16.     If, at any time after the expiration or termination of the Engagement Letter and prior to the end of the Tail Period (as defined below), the Company (i) consummates any Sale Transaction, Restructuring, Capital Transaction or Asset Transaction or (ii) enters into a definitive

agreement or a Plan is filed regarding any Sale Transaction, Asset Transaction or Capital Transaction and a Sale Transaction, Asset Transaction or Capital Transaction is subsequently consummated in connection therewith (in the case of a Capital Transaction or Asset Transaction that is not part of a Bankruptcy Case, with a Covered Person (as defined below)) then the Debtors (or their bankruptcy estates) shall pay Moelis the applicable fee(s) specified in the Engagement Letter immediately in accordance with the terms of the Engagement Letter. The "Tail Period" shall end 12 months following the expiration or termination of the Engagement Letter; provided, however, that this paragraph shall terminate and be of no further effect following (a) the closing of a Sale Transaction that is not part of a Bankruptcy Case or (b) the consummation of all Transactions contemplated to occur pursuant to an effective chapter 11 Plan of the Company.[9]

17.     In addition to any fees payable to Moelis, the Debtors agreed to reimburse Moelis, whether or not the Debtors consummate a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction, for all of its reasonable and documented expenses as they are incurred in performing services pursuant to the Engagement Letter, including the costs of Moelis' legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code), provided, however, that the Company will not be obligated to reimburse Moelis for amounts under this paragraph (other than outside legal costs and expenses to the extent reasonably incurred and documented) that exceed $75,000 in the aggregate without the Debtors' consent, which consent shall not be unreasonably withheld, conditioned or delayed. The foregoing cap will not apply to Annex A to the Engagement Letter. In connection therewith, the Debtors

---

[9] "Covered Person" means any person (and its affiliates) who Moelis or the Company contacted or had discussions with during the term of this engagement with respect to a potential Transaction. Following termination of this agreement, Moelis shall promptly provide a list of Covered Persons known to Moelis.

have agreed to pay Moelis a $25,000 expense advance, the unused portion of which Moelis will return to the Debtors following termination of the Engagement Letter.

18.     The Debtors understand that Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

19.     However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, the Debtors respectfully request that Moelis' restructuring professionals who advise or provide professional services to or on behalf of the Debtors only be required to maintain records (in summary format) of the Services rendered for the Debtors, including summary descriptions of those Services, the approximate time expended in providing those Services in hourly increments, and the identity of the restructuring professionals who provided those Services, consistent with its ordinary practice. Moelis will present such records to the Court in its fee application(s).

20.     Moreover, the Debtors respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that Moelis not be required to provide or conform to any schedule

of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

21.    Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its Services in these chapter 11 cases.  In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own application, both interim and final.  Any such attorney invoices and time records will be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

22.    The Debtors believe that the Fee Structure is reasonable, consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  The Debtors also believe that the Fee Structure reflects a proper balance between a fixed, monthly fee and contingency amounts, which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Engagement Letter.  The Fee Structure is consistent with Moelis' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  After discussions and arm's-length negotiations, the Debtors believe that the Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

13

23.     Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which has and will be required by the Debtors during the term of Moelis' engagement, were all important factors to the Debtors in agreeing to the Fee Structure.  The Debtors believe that the ultimate benefit of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services.  The Debtors and Moelis have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

24.     During the 90-day period prior to the Petition Date, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter.  Specifically, according to the Debtors' books and records, the Debtors paid Moelis (a) Monthly Fees in the amount of $175,000, (b) Retainer Fee of $1,000,000, (c) Expense Advance in the amount of $25,000 and (d) reimbursement of expenses in the amount of $117,566.12.

**Indemnification Provisions**

25.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and exculpate any and all Moelis Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including the annexes thereto (such provisions, collectively, the "Indemnification Provisions").  As set forth more fully therein, under the Indemnification Provisions, if any Moelis Person

14

becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Moelis Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing the Engagement Letter, as they are incurred.  The Debtors will also indemnify and hold harmless any Moelis Person from and against, and the Debtors each agree that no Moelis Person shall have any liability to the Debtors or their affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Debtors' actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein, or (ii) related to or arising out of oral or written statements of omissions made or information provided by the Debtors or their agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Debtors to any purchaser or seller of a security in any transaction contemplated by the Engagement Letter), or (B) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder or any other services or advance the Debtors request any Moelis Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith, willful misconduct, or gross negligence of such Moelis Person.[10]

---

[10]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in **Annex A** to the Engagement Letter, the terms of the Engagement Letter shall control.

26.     These Indemnification Provisions were negotiated at arm's length and in good faith between the Debtors and Moelis.  The Debtors believe that the Indemnification Provisions reflect the customary qualifications and limits on such terms for investment banking engagements both out of court and in chapter 11 cases in this district and other jurisdictions and respectfully submit that the Indemnification Provisions are reasonable.  Accordingly, the Debtors believe that the proposed modifications to the Indemnification Provisions are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

### Efforts to Avoid Duplication of Services

27.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as bankruptcy counsel; (b) Carmody MacDonald P.C. as bankruptcy co-counsel; (c) Alvarez & Marsal North America, LLC, as financial advisor; (d) Deloitte Tax LLP, as turnaround and restructuring tax advisor; (d) Kroll Restructuring Administration LLC, as claims and noticing agent and administrative advisor; (e) Goodwin Procter LLP, as counsel to the Special Committee of the Board of Directors, and (f) Lewis Rice LLC, as co-counsel to the Special Committee of the Board of Directors.  The Debtors do not believe that the services to be performed by Moelis on behalf of the Debtors will be duplicative of services provided by these additional professionals.  The Debtors and Moelis are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker.  The Debtors understand that Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

**Moelis' Disinterestedness**

28.     Moelis has reviewed the list of parties in interest provided by the Debtors.  To the best of Moelis' knowledge, information and belief as of the date hereof, and except to the extent disclosed herein or in the Klein Declaration, Moelis: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or related parties except as disclosed in the Klein Declaration.

29.     Given the large number of parties in interest in these chapter 11 cases, and despite the efforts to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Klein Declaration.  Moelis has informed the Debtors that it will make continued inquiries following the filing of this Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

30.     The Debtors are informed that Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

**Basis for Relief Requested**

**I.      The Debtors Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code**

31.     The Debtors seek approval of the retention and employment of Moelis pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the

17

estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying

out its duties.  11 U.S.C. § 327(a).

32.    In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that

debtors "with the court's approval, may employ or authorize the employment of a professional

person under section 327 . . . on any reasonable terms and conditions of employment, including

on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

11 U.S.C. § 328(a).  Accordingly, section 328 permits the compensation of professionals, including

investment bankers, on more flexible terms that reflect the nature of their services and market

conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson*

*Lufkin & Jenrette Sec. Corp.* v. *Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done. That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the court
> award to professional consultants "reasonable compensation" based
> on relevant factors of time and comparable costs, etc. Under present
> § 328 the professional may avoid that uncertainty by obtaining court
> approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

33.    The Court's approval of the Debtors' retention of Moelis in accordance with the

terms and conditions of the Engagement Letter is warranted.  As discussed above and in the  Klein

Declaration, Moelis satisfies the disinterestedness standard in section 327(a) of the Bankruptcy

Code.  Moelis advised the Debtors for a considerable period of time prior to the commencement

of these chapter 11 cases and has already committed significant time and effort assisting the

Debtors with their efforts to negotiate with their creditors and other stakeholders.  Moelis is needed

postpetition to continue to assist with negotiations, as necessary, to provide expert advice, and to enable the Debtors to discharge their duties as debtors and debtors in possession.

34.     Given the numerous issues that Moelis may be required to address in the performance of its services for the Debtors pursuant to the Engagement Letter, Moelis' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Moelis' services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code. Indeed, the Debtors believe that the Fee Structure appropriately reflects: (a) the nature and scope of services to be provided by Moelis; (b) Moelis' substantial experience with respect to investment banking and financial advisory services; and (c) the fee structures typically utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis, in bankruptcy or otherwise.

35.     As set forth above, and notwithstanding approval of Moelis' Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court, with certain limited modifications as set forth herein. Furthermore, the Debtors propose that their obligation to pay any fee, expense or indemnity to Moelis or a Moelis Person not be subject to any reduction by way of setoff, recoupment or counterclaim.

19

36.     Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  It is not the general practice of investment banking firms like Moelis to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, Moelis' restructuring professionals, when formally retained in chapter 11 cases, and when required by Local Bankruptcy Rules, do, and in these chapter 11 cases, will, keep summary time records in hourly increments describing their daily activities and the identity of the professionals who performed such tasks. Accordingly, the Debtors hereby request modification of the requirements under the Bankruptcy Local Rules and any other applicable procedures and orders of the Court.

37.     Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases.  *See, e.g.*, *In re Mobileum, Inc*., Case No. 24-90414 (Bankr. S.D. Tex. Aug. 26, 2024); *In re Steward Health Care System LLC*, Case No. 24-90213 (Bankr. S.D. Tex. June 12, 2024); *In re Curo Group Holdings Corp.*, Case No. 24-90165 (Bankr. S.D. Tex. June 7, 2024); *In re ConvergeOne Holdings, Inc*., Case No. 24-90194 (Bankr. S.D. Tex. May 10, 2024); *In re Audacy, Inc.,* Case No. 24-90004 (Bankr. S.D. Tex. Feb. 20, 2024); *In re Orbital Infrastructure Group, Inc.*, No. 23-90763 (CML) (Bankr. S.D. Tex. Aug. 23, 2023); *In re Party City Holdco* Inc., Case No. 23-9005 (Bankr. S.D. Tex. Feb. 21, 2023).

38.     The Debtors also believe that employment of Moelis effective as of the Petition Date is warranted under the circumstances of these chapter 11 cases.  Moelis has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated transactions. *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)).

## II.     The Indemnification Provisions Are Appropriate

39.     The indemnification, exculpation, contribution and reimbursement provisions in the Engagement Letter (the "Indemnification Provisions") were fully negotiated between the Debtors and Moelis.  The Debtors and Moelis believe that the Indemnification Provisions are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases.  *See, e.g.*, *In re Zachry Holdings, Inc*., Case No. 24-90377 (MI) (Bankr. S.D. Tex. Oct. 15, 2024); *In re DRF Logistics, LLC*, Case No. 24-90447 (CML) (Bankr. S.D. Tex. Oct. 3, 2024); *In re Mobileum, Inc*., Case No. 24-90414 (Bankr. S.D. Tex. Aug. 26, 2024); *In re Steward Health Care System LLC*, Case No. 24-90213 (Bankr. S.D. Tex. June 12, 2024); *In re Curo Group Holdings Corp.*, Case No. 24-90165 (Bankr. S.D. Tex. June 7, 2024); *In re ConvergeOne Holdings, Inc*., Case No. 24-90194 (Bankr. S.D. Tex. May 10, 2024); *In re Audacy, Inc.,* Case No. 24-90004 (Bankr. S.D. Tex. Feb. 20, 2024); *In re Anagram Holdings, LLC*, Case No. 23-90901 (Bankr. S.D. Tex. Dec. 15, 2023); *In re Barretts Minerals Inc*., Case No. 23-90794 (Bankr. S.D. Tex. Nov. 21, 2023); *In re Orbital Infrastructure Group, Inc.*, No. 23-90763 (CML) (Bankr. S.D. Tex. Aug. 23, 2023); *In re Party City Holdco Inc*., Case No. 23-90005 (Bankr. S.D. Tex. Feb. 21, 2023).

40.     Accordingly, the Debtors respectfully submit that the terms of the modified Indemnification Provisions are reasonable and customary and should be approved in these chapter 11 cases.

## III.    The Retention of Moelis Is Critical to the Debtors' Chapter 11 Efforts

41.     The Debtors submit that the retention of Moelis is in the best interests of all parties in interest in these chapter 11 cases.  Moelis has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in

chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States. Moelis is a preeminent investment banking and financial advisory firm that is intimately familiar with the Debtors' businesses. Denial of the relief requested herein will deprive the Debtors of the assistance of Moelis' uniquely qualified professionals who have served them since January 2025 and have continued to assist them following the Petition Date. Indeed, if the Debtors were forced to engage a new investment banker who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Moelis' engagement, such change would mandate the commitment of significant resources to educate a replacement, causing significant delay and increased cost. As discussed above, based on services performed to date, Moelis has been integral to preparing the Debtors for these chapter 11 cases.

42.     In light of the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## **Notice**

43.     The Debtors will provide notice of this Application to the following parties: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d)  the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the United States Attorney's Office for the Eastern District of Missouri; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Federal Trade Commission; (i) the state attorneys general in all 50 states; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of

this Application and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Bankruptcy Local Rules. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

44.    A copy of this Application is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of the page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders

and grant such other relief as the Court deems appropriate under the circumstances.

Dated: March 24, 2025                    Respectfully submitted,

                                         23ANDME HOLDING CO.
                                         (for itself and on behalf of each of its affiliated
                                         Debtors)

                                         */s/ Guy Chayoun*
                                         Name: Guy Chayoun
                                         Title:   Vice President, Interim General Counsel,
                                                  Corporate Secretary
                                                  23andMe Holding Co.

## <u>Exhibit A</u>

**Engagement Letter**

# Moelis

March 23, 2025

<u>CONFIDENTIAL</u>

Special Committee of the Board of Directors
23andMe Holding Co.
223 N. Mathilda Avenue
Sunnyvale, California 94086

Attention: 23andMe Holding Co. Special Committee Directors Andre Fernandez, Jim Frankola and Mark Jensen

Andre, Jim, Mark:

This agreement amends and restates in its entirety that certain engagement letter agreement, dated January 10, 2025, by and between the Special Committee of the Board of Directors (the "<u>Special Committee</u>") of 23andMe Holding Co. (the "<u>Company</u>"), the Company and Moelis & Company LLC ("<u>Moelis</u>") and confirms that (i) since January 10, 2025, the Special Committee engaged Moelis to act as the Special Committee's financial advisor, capital markets advisor and investment banker in connection with a review of the Company's strategic alternatives, including a potential Sale Transaction, Asset Transaction, Restructuring or Capital Transaction (each as defined below) if the Special Committee determines to pursue the same and (ii) as of the date hereof, the Special Committee and the Company have engaged Moelis to act as the Special Committee's and the Company's financial advisor, capital markets advisor and investment banker in connection with any potential Sale Transaction, Asset Transaction, Restructuring or Capital Transaction. The parties hereto agree that Moelis may take direction from the Special Committee or counsel to the Company, in each case, acting on behalf of the Company.

"<u>Sale Transaction</u>" means (a) the sale of all or a majority of the issued and outstanding equity securities of the Company to any person not controlled by or under common control with the Company or any of its subsidiaries (including a creditor) (an "<u>Acquirer</u>"), (b) the merger or combination of the Company with an Acquirer pursuant to which the Company's equityholders immediately prior to such transaction own less than 50% of the equity of the surviving entity of such transaction or its parent entity, or (c) an Acquirer's acquisition of all or a majority of the assets, properties or business of the Company or any of its subsidiaries on a consolidated basis (which the parties agree includes, without limitation, the Company's PGS assets), including pursuant to a credit bid.

"<u>Asset Transaction</u>" means an Acquirer's acquisition of any business unit, division or specified discrete assets of the Company or its subsidiaries, whether by asset or equity sale, merger or other business combination, that, in each case, (i) Moelis was asked to sell by the Special Committee during the term of this agreement (which the parties agree includes Lemonaid and the Company's therapeutics assets) and (ii) does not constitute, individually or together with all related transactions, a Sale Transaction hereunder.

"<u>Restructuring</u>" means the occurrence of any of the following: (i) the effective date a plan of reorganization or liquidation (a "Plan")  in connection with a case (a "<u>Bankruptcy Case</u>") commenced by or against the Company or any of its subsidiaries under title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (ii) the dismissal of a Bankruptcy Case, or (iii) the conversion of a Bankruptcy Case under title 11 of the Bankruptcy Code to a Bankruptcy Case under title 7 of the Bankruptcy Code; provided, however, that the dismissal of an involuntary Bankruptcy Case filed against the Company or any of its subsidiaries prior to the bankruptcy court's entry of an order for relief in such case will not be a "Restructuring."

"<u>Capital Transaction</u>" means a transaction in which the Company (or any of its subsidiaries) raises capital through the issuance of (a) secured or unsecured debt for borrowed money (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests; provided that in no event shall a Capital Transaction include (in each case of clauses (a) through (d)) (i) any inter-company debt among the Company and its subsidiaries or the issuance of securities by any subsidiary of the Company to the Company or any other subsidiary of the Company, (ii) any registered public offering of securities, including, without limitation,

# Moelis

any "at the market offering" as defined in Rule 415 promulgated under the Securities Act of 1933, as amended (the "Securities Act"), (iii) any grant of equity awards by the Company or the issuance of shares of common stock upon the exercise, vesting or settlement of any equity award whether outstanding as of, or issued after, January 10, 2025, or (iv) the issuance of any debt or equity pursuant to contracts of the Company or any of its subsidiaries in existence as of January 10, 2025.

A Capital Transaction may be undertaken by the Company or by a subsidiary to be formed or designated to carry out a Capital Transaction on behalf of the Company.  The Company shall cause any subsidiary used to effectuate a Capital Transaction (a "Transaction Co") to execute a joinder to this agreement in a form reasonably acceptable to Moelis and the Special Committee within 5 business days of identifying such subsidiary as a Transaction Co. The obligations of the Company under this agreement and a Transaction Co pursuant to such joinder shall be several and joint.

A "Transaction" means either a Sale Transaction, an Asset Transaction, a Restructuring and/or a Capital Transaction, as the context requires.  For the avoidance of doubt, under no circumstances shall a reverse stock split or other similar transaction constitute a Transaction hereunder.

    1.  As part of our engagement, Moelis will if appropriate and requested by the Special Committee:

(a)  assist the Company and the Special Committee in reviewing the Company's strategic alternatives;

(b)  assist the Company and the Special Committee in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(c)  assist the Company and the Special Committee in reviewing and analyzing any potential Sale Transaction, Asset Transaction, Restructuring or Capital Transaction;

(d)  assist the Company and the Special Committee in negotiating any Sale Transaction, Asset Transaction, Restructuring or Capital Transaction;

(e)  advise the Company and the Special Committee on the terms of securities the Company offers in any potential Capital Transaction;

(f)  advise the Company and the Special Committee on its preparation of an information memorandum for a potential Sale Transaction, Asset Transaction or Capital Transaction (each, an "Information Memo");

(g)  assist the Company and the Special Committee in identifying and contacting potential Acquirers or purchasers of a Capital Transaction ("Purchasers") that the Company and the Special Committee deems appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company and the Special Committee, subject to customary business confidentiality agreements; and

(h)  provide such other financial advisory and investment banking services in connection with a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction as Moelis, the Company and the Special Committee may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best-efforts basis. Moelis' obligations under this agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2

# Moelis

If requested by the Special Committee and appropriate, Moelis will undertake an investigation and analysis to enable it to render an opinion (the "Opinion") to the Special Committee (solely in its capacity as such) addressing the fairness, from a financial point of view, to the Company or the holders of the Company's common stock (other than certain affiliates of the Company) of the consideration to be received by the Company or such holders of the Company's common stock, as applicable, in a proposed Sale Transaction (or, if the Sale Transaction involves an exchange of securities, the exchange ratio). The nature and scope of Moelis' investigation and analysis, as well as the scope, form and substance of any such Opinion, shall be such as Moelis deems appropriate.  If requested by the Special Committee, the Opinion shall be delivered in written form.

　　　　2.　(a) As compensation for our services hereunder, the Company agrees to pay Moelis the following non-refundable cash fees:

Retainer Fee

(i)　　Promptly after initial execution of this agreement, a retainer fee of $1,000,000 (the "Retainer Fee"), with respect to which Moelis hereby confirms receipt of payment. The Retainer Fee shall be offset, to the extent previously paid, against (a) the Sale Transaction Fee (as defined below) for a Sale Transaction that is part of a Bankruptcy Case or (b) the Restructuring Fee (as defined below), subject to the Offset Cap (as defined below) in the case of the Restructuring Fee.  For the avoidance of doubt, the Retainer Fee shall not be offset against a Sale Transaction Fee for a Sale Transaction that occurs outside of a Bankruptcy Case.

Monthly Fee

(ii)　　During the term of this agreement beginning upon the date set forth in the following sentence, a fee of $175,000 per month (the "Monthly Fee"), payable in advance of each month.  The Company will pay the first Monthly Fee beginning the earlier of: (i) February 26, 2025 or (ii) the date of a Chapter 11 filing by or against the Company or any of its subsidiaries, and all subsequent Monthly Fees prior to each monthly anniversary of the date of the first Monthly Fee. Whether or not a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement after the date of the first Monthly Fee.  50% of each Monthly Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee or the Restructuring Fee (each as defined below), subject to the Offset Cap (as defined below) in the case of the Restructuring Fee.

Opinion Fee

(iii)　　An opinion fee (the "Opinion Fee") equal to $1,000,000. The Opinion Fee is payable promptly upon Moelis having rendered an Opinion at the request of the Special Committee, regardless of the conclusion Moelis reaches in the Opinion.

Sale Transaction Fee

(iv)　　At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $3,500,000 (subject to applicable offsets).  The Sale Transaction Fee shall be payable whether the Sale Transaction is consummated outside of, or in connection with, a Bankruptcy Case.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code or in connection with the acquisition of assets under a Plan, such Sale Transaction shall trigger a Sale Transaction Fee, and any resulting or subsequent Restructuring involving the Company shall trigger a Restructuring Fee. The Sale Transaction Fee (prior to any offset for any Asset Transaction Fees previously paid) shall be offset, to the extent previously paid, against the Restructuring Fee, subject to the Offset Cap (as defined below). For the avoidance of doubt, Moelis shall only be entitled to earn a single Sale Transaction Fee.

3

# Moelis

<u>Asset Transaction Fee</u>

(v)    At the closing of an Asset Transaction, a fee (the "<u>Asset Transaction Fee</u>") equal to 5.0% of the aggregate gross proceeds received or to be received, directly or indirectly, by the Company and its subsidiaries in connection with such Asset Transaction at the closing of such Asset Transaction or within six (6) months thereafter; provided, that the aggregate Asset Transaction Fees hereunder shall not exceed $2,500,000. For the avoidance of doubt, the parties agree that (a) an Asset Transaction Fee shall be payable only with respect to any upfront payments or any installment payments made within six (6) months of closing of the Asset Transaction, and (b) no Asset Transaction Fee will be payable with respect to any milestone, contingent, royalty or other future payments related to an Asset Transaction.  Any amounts paid into escrow shall be deemed paid at closing. The Company will pay a separate Asset Transaction Fee in respect of each Asset Transaction in the event that more than one Asset Transaction occurs.  Any Asset Transaction Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee.

<u>Restructuring Fee</u>

(vi)    Upon the occurrence of a Restructuring, a fee (the "<u>Restructuring Fee</u>") of $3,000,000 (subject to applicable offsets).  Notwithstanding anything to the contrary herein, in no event shall the collective amount of previously paid Retainer Fees, Monthly Fees and Sale Transaction Fees offset against the Restructuring Fee exceed $2,000,000 (the "Offset Cap").  The Restructuring Fee shall be offset, to the extent previously paid, against any subsequent Sale Transaction Fee. For the avoidance of doubt, Moelis shall only be entitled to earn a single Restructuring Fee pursuant to this agreement.

<u>Capital Transaction Fee</u>

(vii)    At the closing of a Capital Transaction, a non-refundable cash fee (the "<u>Capital Transaction Fee</u>") of:

(A) 5.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Company and its subsidiaries in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests (collectively, "<u>Equity Interests</u>") (including, for purposes of this clause (A) but subject to the below paragraph regarding timing of payment, unfunded binding commitments); plus

(B) 3.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Company and its subsidiaries with respect to debt obligations for borrowed money (whether secured or unsecured) raised in the Capital Transaction that are convertible into Equity Interests (including, for purposes of this clause (B) but subject to the below paragraph regarding timing of payment, unfunded binding commitments); plus

(C) 2.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Company and its subsidiaries with respect to junior or unsecured debt obligations for borrowed money raised in the Capital Transaction (including, for the purpose of this clause (C), unfunded binding commitments); plus

(D) 1.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Company and its subsidiaries with respect to secured debt obligations for borrowed money raised in the Capital Transaction (including the aggregate gross amount of any debtor-in-possession financing raised in connection with a Bankruptcy Case ("<u>DIP Capital</u>")) (including, for the purpose of this clause (D), unfunded binding commitments); provided, that the Capital Transaction Fee for any DIP Capital raised shall be subject to a minimum fee of $500,000.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.

ACTIVE/134525323.9

# Moelis

Notwithstanding anything to the contrary herein, for purposes of Sections 2(a)(vii)(A) and 2(a)(vii)(B), the portion of the Capital Transaction Fee attributable to gross proceeds of capital raised in any Capital Transaction that is not completed within a Bankruptcy Case that are unfunded as of the initial closing and subject to conditions with respect to the Company's receipt of such amounts shall be payable to Moelis as and when such amounts are received, directly or indirectly, by the Company.

Notwithstanding the foregoing, (i) if the Company completes a Capital Transaction with Anne Wojcicki and/or any of her affiliates pursuant to which the Company raises capital through the issuance of Equity Interests (other than preferred stock or convertible debt) (a "Specified Capital Transaction") and, prior to or within nine (9) months of such Specified Capital Transaction, Anne Wojcicki and/or any of her affiliates and the Company execute a definitive agreement for a Sale Transaction that is not part of a Bankruptcy Case, the Capital Transaction Fee for the Specified Capital Transaction shall be offset, to the extent previously paid, against the Sale Transaction Fee or (ii) if any party executes a definitive agreement with the Company for a Sale Transaction that is not part of a Bankruptcy Case, and such definitive agreement provides for the completion of a Capital Transaction by such party prior to the consummation of the Sale Transaction (a "Pre-Funding Capital Transaction"), the Capital Transaction Fee for the Pre-Funding Capital Transaction shall be offset, to the extent previously paid, against the Sale Transaction Fee.

The fees set forth in Section 2(a)(iv), (v), (vi) and (vii) shall be referred to herein as the "Transaction Fees". The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof; provided that, notwithstanding anything to the contrary contained in this agreement, the parties agree that in no event shall the aggregate amount of Sale Transaction Fees, Asset Transaction Fees and Restructuring Fees payable to Moelis under this agreement exceed $4,500,000.

In connection with a Transaction intended to be consummated in connection with a pre-packaged or pre-arranged Plan, 50% of the applicable Transaction Fee(s) shall be earned upon the execution of a definitive agreement with respect to such Plan and the remaining 50% of the applicable Transaction Fee shall be earned upon the effective date of such Plan; provided that if the Plan contemplating such Transaction(s) does not become effective, then Moelis shall credit the applicable Transaction Fee(s) against any future Transaction Fee that becomes due and payable upon the closing of another Transaction.

If, at any time after the expiration or termination of this agreement and prior to the end of the Tail Period (as defined below), the Company (i) consummates any Sale Transaction, Restructuring, Capital Transaction or Asset Transaction or (ii) enters into a definitive agreement or a Plan is filed regarding any Sale Transaction, Asset Transaction or Capital Transaction and a Sale Transaction, Asset Transaction or Capital Transaction is subsequently consummated in connection therewith (in the case of a Capital Transaction or Asset Transaction that is not part of a Bankruptcy Case, with a Covered Person (as defined below)) then the Company (or its bankruptcy estates) shall pay Moelis the applicable fee(s) specified in Section 2(a) above immediately in accordance with Section 2(a) above. The "Tail Period" shall end 12 months following the expiration or termination of this agreement; provided, however, that this paragraph shall terminate and be of no further effect following (a) the closing of a Sale Transaction that is not part of a Bankruptcy Case or (b) the consummation of all Transactions contemplated to occur pursuant to an effective chapter 11 Plan of the Company.

"Covered Person" means any person (and its affiliates) who Moelis or the Company contacted or had discussions with during the term of this engagement with respect to a potential Transaction. Following termination of this agreement, Moelis shall promptly provide a list of Covered Persons known to Moelis.

Notwithstanding anything to the contrary contained herein, if: (A) Moelis unilaterally terminates its engagement hereunder in writing; or (B) (i) the Special Committee provides written notice to Moelis that it is terminating Moelis' engagement due to the bad faith, willful misconduct or gross negligence of Moelis in the performance of its services hereunder, (ii) such bad faith, willful misconduct or gross negligence is not promptly cured (if such cure is possible) by Moelis in a manner reasonably acceptable to the Special Committee, and (iii) the Special Committee obtains a judicial determination that Moelis acted with bad faith, willful misconduct or gross negligence in the performance of its services hereunder, then no Transaction Fee shall be paid or payable hereunder.

5

# Moelis

Notwithstanding anything to the contrary contained herein, if during the Tail Period, the Special Committee or the Company requests that Moelis reinstate the terms of this agreement (without any modification) and perform the services identified herein as a prerequisite to receiving fees contemplated by Section 2(a) above that have not become payable at the time of such request for reinstatement, and Moelis does not accept such reinstatement within ten business days of such request or declines such reinstatement, then Moelis shall not be entitled to receive any such fees that have not already become payable at the time of such request for reinstatement.

(b)  Whether or not the Company consummates a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction, the Company will reimburse Moelis for all of its reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement, including the reasonable and documented costs of its legal counsel; provided, however, that the Company will not be obligated to reimburse Moelis for amounts under this paragraph (other than outside legal costs and expenses to the extent reasonably incurred and documented) that exceed $75,000 in the aggregate without the Special Committee's consent, which consent shall not be unreasonably withheld, conditioned or delayed. The foregoing cap will not apply to *Annex A*. In connection therewith, the Company shall pay Moelis upon initial execution of this agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall promptly return to the Company following termination of this agreement. Moelis agrees to provide the Company with reasonable supporting documentation for its expenses at the Company's or Special Committee's request or at the Bankruptcy Court's direction. At the Company's or Special Committee's request, Moelis shall provide an update as to the current outstanding amount of reimbursable expenses as of the date of such request.

(c)  The Company's obligation to pay any fees or expenses set forth herein or to pay any amounts under *Annex A* hereto are not subject to any reduction by way of setoff, recoupment or counterclaim. All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account set forth on *Schedule 1.*

(d)  Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it. Moreover, the actual time and effort required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Special Committee will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Special Committee and the Company.

3.  If a Bankruptcy Case is commenced during the term of this agreement:

(a)  The Special Committee and the Company will use their reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's financial adviser under this agreement pursuant to section 327(a), and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case.  The retention application and any order authorizing Moelis' retention must be acceptable to Moelis.  Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all reasonable and documented expenses that Moelis incurred prior to commencement in accordance with this agreement.

(b)  Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 327(a) and section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case. If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code and Bankruptcy Rules, and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

# Moelis

(c)  Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex A* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d)  The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (from the Special Committee, the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.  The Company or the Special Committee will furnish Moelis with all information concerning the Company and, to the extent available to the Company or the Special Committee, the Acquirer as Moelis reasonably deems applicable (collectively, the "Information") to execute this engagement and will provide Moelis with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer.  To the best of the Company or the Special Committee's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company or the Special Committee will advise Moelis promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company or the Special Committee's knowledge, the Acquirer that occurs during the term of this agreement. In performing our services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. Moelis is not evaluating the solvency of any party under applicable laws relating to bankruptcy, insolvency or similar matters. Moelis will be entitled to assume that financial forecasts and projections the Company, the Special Committee or any Acquirer makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby. The Special Committee authorizes Moelis to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction that have been previously approved by the Special Committee. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

Moelis will keep Information concerning the Company provided to Moelis in connection with this agreement confidential pursuant to the Confidentiality Agreement between the Company and Moelis, dated November 27, 2024 (the "Confidentiality Agreement"), throughout the term of this agreement and for one year following the expiration or termination hereof; provided that, during the term of this agreement, Moelis may provide such Information to prospective Transaction parties at the direction of the Special Committee as contemplated by this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Sale Transaction, Restructuring, Asset Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

7

# Moelis

At the closing of a Capital Transaction involving the issuance of securities by the Company pursuant to an exemption from registration other than Section 1145 of the Bankruptcy Code, (i) the Company shall be deemed to make all the representations and warranties to Moelis that the Company has made to the purchasers in such Capital Transaction as set forth in the definitive agreement between the Company and such purchasers, (ii) to the extent that Company counsel shall deliver an opinion to the purchasers in such Capital Transaction to the effect that the Capital Transaction was exempt from registration under the Securities Act, such opinion also shall provide that Moelis may rely on such opinion and a copy of such opinion shall be provided to Moelis, (iii) the Company shall use its reasonable efforts to deliver to Moelis from each purchaser of securities for Moelis' express benefit a big boy representation in substantially the form of *Annex B* and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request.

5.    The Company and the Special Committee will not disclose, summarize or refer to any of Moelis' advice or Opinion or the terms of this agreement publicly or to any third party without the prior written consent of Moelis except as described below. In the event disclosure is required by applicable law, rule, regulation, subpoena, court order or other legal or regulatory process, the Company will provide Moelis with reasonable advance notice if legally permissible and permit Moelis to comment on the form and content of the disclosure. To the extent required by applicable U.S. federal securities laws or state corporate laws, Moelis consents to the inclusion of the text of an Opinion in any proxy statement, registration statement or other document the Company is required to file (and, in each case, in which the Opinion is required to be included) with the U.S. Securities and Exchange Commission in connection with the Transaction or required to distribute to stockholders in connection with the Transaction, provided that (i) such Opinion will be reproduced in full and (ii) Moelis and its counsel will have approved any reference to Moelis or any summary of, or other description of, the Opinion or related analysis in advance of any such filing or distribution. In addition, the Special Committee and the Company shall be entitled to use and disclose the Opinion in connection with the defense of any claim, action or proceeding related to a Sale Transaction to which the Opinion relates.

Moelis may, at our option and expense (i) after public announcement by the Company of any Transaction or (ii) following a public announcement or public confirmation by the Company or Company public filing relating to a potential Transaction, announce or disclose publicly Moelis' role in such Transaction or potential Transaction for marketing purposes, including, without limitation, on Moelis' website, using publicly available information and/or stating in customary 'tombstone' format that Moelis has acted or is acting as financial advisor and/or investment banker, as applicable, to the Special Committee in connection with such Transaction or potential Transaction.  If requested by Moelis, the Company shall include a mutually acceptable reference to Moelis in any public announcement of any Transaction.

6.    Moelis is an independent contractor with the contractual obligations described herein owing solely to the Special Committee. The parties agree that Moelis is not acting as an agent or fiduciary of the Special Committee, the Company or any other party, and the Special Committee and the Company agree to not make any claims against Moelis based on an agency or fiduciary relationship. It is understood that Moelis shall have no authority to commit the Company or the Special Committee to any Transaction and Moelis shall not contact any potential counterparty to a Transaction without the authorization of the Special Committee.

The Company and Moelis agree to the indemnity and other provisions set forth in *Annex A*. Other than the Moelis Persons, there are no third-party beneficiaries of this agreement. The obligations hereunder of the entities comprising the Company shall be joint and several.

7.    Either the Special Committee or Moelis may terminate this agreement upon written notice thereof to the other party. In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) *Annex A*, the last paragraph of Section 2(a) and Sections 3 through 9 of this agreement, and the Confidentiality Agreement shall remain in full force and effect after the completion, termination or expiration of this agreement.

8.    Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise. Moelis and its affiliates may have interests that differ from the interests of the Company. Moelis

8

# Moelis

and its affiliates have no duty to disclose to any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses. Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement. Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities. Prior to the initial signing of this agreement, Moelis provided the Special Committee with a disclosure letter setting forth any engagements, during the three-year period prior to the date thereof, with Anne Wojcicki, The Anne Wojcicki Foundation, ABeeC 2.0, LLC, and The Anne Wojcicki Revocable Trust u/a/d 9/2/09, as Amended and Restated (the "Wojcicki Parties"), in accordance with and based upon Moelis' customary conflicts-related clearance procedures.  Until the expiration or termination of this agreement, Moelis shall not accept any engagement with a Wojcicki Party. Upon the Special Committee's request, Moelis will provide the Special Committee with a disclosure letter setting forth any engagements, during the three-year period prior to the date of this agreement, with any other parties identified by the Special Committee, in accordance with and based upon Moelis' customary conflicts-related clearance procedures, taking into account and subject to pre-existing confidentiality obligations. Until the expiration or termination of this agreement, Moelis shall not be engaged to provide financial advisory, capital market or investment banking services or any financing to any other potential counterparty to a Transaction in connection with such Transaction.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act. Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

9.    This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement (together with the Confidentiality Agreement and that certain letter agreement by and between the Company and Moelis dated December 9, 2024 (the "Indemnity Letter"), which shall apply to the matters described therein arising prior to the date of this agreement) embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by the Special Committee, the Company and Moelis. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. This agreement shall be binding upon the Company and Moelis and its and our respective successors and permitted assigns. MOELIS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

ACTIVE/134525323.9

# Moelis

Moelis is delighted to accept this engagement and looks forward to working with the Special Committee. Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____
    Name:  Barak Klein
    Title:  Managing Director

Agreed to as of the date first written above:

23ANDME HOLDING CO.

By: _____
    Name:   Joe Selsavage
    Title:
            Chief Financial Officer

SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF 23ANDME HOLDING CO.

By: _____
    Name: Jim Frankola
    Title: Chairman

10

# Moelis

Moelis is delighted to accept this engagement and looks forward to working with the Special Committee. Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

    Name:  Barak Klein
    Title:  Managing Director


Agreed to as of the date first written above:

23ANDME HOLDING CO.


By: _____
    Name:
    Title:

SPECIAL COMMITTEE OF THE BOARD OF DIRECTORS OF 23ANDME HOLDING CO.

By: *Jim Frankola*
    EC1ACFF7BF5949B...
    Name: Jim Frankola
    Title: Chairman

10

# Moelis

**ANNEX A**

The Company will indemnify and hold harmless Moelis, its affiliates and any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Moelis Persons") from and against any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to or arising out of the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the matters contemplated in the agreement, or (B) otherwise arising out of, related to or in connection with the agreement, the matters contemplated in the agreement, or Moelis' performance of the agreement (or any other services or advice the Special Committee requests Moelis to provide) in each case, including prior to the date of the agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted from the bad faith, willful misconduct or gross negligence of any Moelis Person. To the extent it is subsequently finally judicially determined that any Losses resulted from the bad faith, willful misconduct or gross negligence of a Moelis Person, Moelis shall repay the amount of such Losses previously paid to the Moelis Persons by the Company pursuant to this ***Annex A***.

The Company agrees that no Moelis Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for any Losses (A)(i) related to or arising out of the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the matters contemplated in the agreement, (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the matters contemplated in the agreement, or (B) otherwise arising out of, related to or in connection with the agreement, the matters contemplated in the agreement or Moelis' performance of the agreement (or any other services or advice the Special Committee requests Moelis to provide) in each case, including prior to the date of the agreement, except that clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted from the bad faith, willful misconduct or gross negligence of any Moelis Person.

If such indemnification or limitation on liability is for any reason not available or is insufficient to hold a Moelis Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by the Moelis Persons, on the other hand, with respect to the agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company, on the one hand, and of the Moelis Persons, on the other hand, and any other equitable considerations; provided, however, that, to the extent permitted by applicable law, in no event shall the Moelis Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and the Moelis Persons, on the other hand, with respect to the agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s) contemplated by the agreement, whether or not consummated, bears to (ii) the fees actually received by Moelis in connection with this agreement. For the avoidance of doubt, in no event will the Company have any contribution obligations under this paragraph with respect to Losses that have been finally judicially determined to have resulted from the bad faith, willful misconduct or gross negligence of a Moelis Person.

The Company will not, without Moelis' prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any actual or threatened action, claim, suit, investigation or proceeding (an "Action") (or participate in or facilitate a Settlement of any Action) in respect of which indemnification or contribution is or may be sought hereunder (whether or not a Moelis Person is a party thereto) unless such Settlement includes a release of each Moelis Person from any Losses arising out of such Action. The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of a Moelis Person without such Moelis Person's prior written

A-1

# Moelis

consent. No Moelis Person seeking indemnification or contribution under the agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action. The Company's obligations set forth in this ***Annex A*** shall be in addition to any rights that any Moelis Person may have at common law or otherwise.

Moelis will promptly notify the Company of receipt of actual notice of commencement of an Action against a Moelis Person with respect to which indemnity is sought hereunder if the Company is not a party to such Action, provided that the failure to so notify the Company will not relieve the Company from any liability that the Company may have on account of this indemnity or otherwise, except to the extent the Company shall not have otherwise learned of such Action and such failure results in the loss of material defenses or otherwise materially prejudices the Company's rights with respect to such Action.  The Company shall have the right to assume the defense of any such Action, including the employment of counsel reasonably satisfactory to Moelis (which response to such employment of counsel shall not be unreasonably withheld or delayed by Moelis).  Moelis shall have the right to employ separate counsel in any such Action and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of Moelis, unless (i) the Company shall have failed promptly to assume the defense thereof and employ counsel as provided above or (ii) the named parties to any such Action (including impleaded parties) include a Moelis Person and the Company, and Moelis shall have been advised by counsel that there may be one or more legal defenses available to such Moelis Person that are different from or in addition to those available to the Company, provided that the Company shall not in any event be responsible hereunder for the fees and expenses of more than one firm of separate counsel for all Moelis Persons in connection with any Action in the same jurisdiction or group of related Actions, in addition to one firm of local counsel in each jurisdiction in which any such Action or group of related Actions is taking place.

In the event that any Moelis Person becomes involved in any capacity in any Action arising out of, related to or in connection with the agreement or any matter referred to in the agreement (including, without limitation, related matters prior to the date of the agreement), the Company will reimburse such Moelis Person for the reasonable and documented out-of-pocket costs and expenses (including reasonable counsel fees) of investigating, preparing for and responding to such Action or enforcing the agreement (including, without limitation, each of the provisions of this ***Annex A***), as they are incurred; provided that to the extent it is subsequently finally judicially determined that such costs and expenses resulted from the bad faith, willful misconduct or gross negligence of a Moelis Person, Moelis shall repay such costs and expenses previously reimbursed by the Company.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

2

# Moelis

## ANNEX B

**Big Boy Representation**

The undersigned Purchaser represents and warrants that (i) the Purchaser is an accredited investor with extensive expertise and experience in financial and business matters and in evaluating companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase in the Capital Transaction.

ACTIVE/134525323.9

# Moelis

## <u>SCHEDULE 1</u>

Wire Instructions:
Beneficiary Account: Moelis & Company LLC
Routing Number: ███████
Account Number: ██████
International SWIFT Code: ████████

City National Bank
525 S. Flower Street
24th Floor
Los Angeles, CA 90071

ACTIVE/134525323.9

## **Exhibit B**

**Klein Declaration**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.,*[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF BARAK KLEIN IN SUPPORT OF THE DEBTORS'
APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING
THE RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER FOR
THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

I, Barak Klein, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am a Managing Director at the investment banking firm of Moelis & Company

LLC ("Moelis").  I am duly authorized to make this declaration (the "Declaration") on behalf of

Moelis and submit this Declaration in accordance with sections 327(a) and 328(a) of title 11 of the

United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and rules 2014(a) and 5002

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in connection with the

application (the "Application") of the above-captioned debtors (collectively, the "Debtors"),

seeking an order approving the retention of Moelis as investment banker pursuant to sections

327(a) and 328(a) of the Bankruptcy Code and effective as of the Petition Date.[2]  The facts set

forth in this Declaration are based upon my personal knowledge, upon information and belief, or

upon client matter records kept in the ordinary course of business that were reviewed either by me

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]     Capitalized terms used but not otherwise defined herein have the meanings given to them in the Application.

or other employees of Moelis under my supervision and direction.  If called and sworn as a witness, I could and would testify competently to the facts set forth herein.

### Moelis' Qualifications

2.        Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 1,100 employees with offices in North America, South America, Europe, the Middle East, and Asia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.  Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: *In re American Tire Distributors, Inc.*, Case No. 24-12391 (CTG) (Bankr. D. Del. Dec. 17, 2024); *In re Tupperware Brands Corporation*, Case No. 24-12156 (BLS) (Bankr. D. Del Nov. 18, 2024); *In re Blink Holdings, Inc.*, Case No. 24-11686 (JKS) (Bankr. D. Del. Sept. 9, 2024); *In re SunPower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 5, 2024); *In re Impel Pharmaceuticals*, Case No. 23-80016 (Bankr. N.D. Tex. Jan. 1, 2024); *In re Orbital Infrastructure Group, Inc.*, No. 23-90763 (CML) (Bankr. S.D. Tex. Aug. 23, 2023); *In re Proterra Inc.*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 7, 2023); *In re MLCJR LLC*, No. 23-90324 (CML) (Bankr. S.D. Tex. July

10, 2023); *In re Diamond Sports Group, LLC*, No. 23-90116 (CML) (Bankr. S.D. Tex. June 13, 2023); *In re Party City Holdco Inc*., No. 23-90005 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023); *In re BlockFi Inc.,* Case No. 22-19361 (Bankr. D.N.J. Feb. 16, 2023); *In re Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex. July 26, 2022); *In re TPC Grp. Inc*., No. 22-10493 (CTG) (Bankr. D. Del. June 30, 2022); *In re MD Helicopters, Inc*., No. 22-10263 (KBO) (Bankr. D. Del. May 6, 2022); *In re Brazos Elec. Power*, No. 21-30725 (DRJ) (Bankr. S.D. Tex. Mar. 1, 2021); *In re Alpha Media Holdings LLC*, Case No. 21-30209 (KRH) (Bankr. E.D. Va. Mar. 11, 2021); *In re Knotel, Inc*., No. 21-10146 (MFW) (Bankr. D. Del. Jan. 31, 2021); *In re CBL & Assocs. Props., Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 30, 2020); *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS) (Bankr. D. Del. June 14, 2020); *In re Internap Tech. Sols. Inc*., No. 20-22393 (RDD) (Bankr. S.D.N.Y. May 5, 2020); *In re Whiting Petroleum Corp.*, No. 20- 32021 (DRJ) (Bankr. S.D. Tex. May 9, 2020); *In re Rentpath Holdings, Inc*., No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020).

3.    Moelis has been advising the Debtors and their Special Committee on strategic and restructuring initiatives to address the Debtors' financial challenges since November 2024.  In January 2025, Moelis, the Debtors and their Special Committee entered into an initial  engagement letter, whereby Moelis agreed to provide investment banking advice in connection with the Debtors' contemplated Transactions as defined therein. On March 23, 2025, Moelis and the Debtors entered into the Engagement Letter, whereby Moelis agreed to continue to provide investment banking advice in connection with the Debtors' contemplated Transactions (in each case, as defined in the Engagement Letter).

4.    Moelis has provided valuable services to the Debtors in connection with the Debtors' preparation for these chapter 11 cases, including: (a) assisting the Debtors in reviewing

and analyzing potential restructuring alternatives, and/or capital transactions; (b) advising and assisting the Debtors in negotiations with the goal of reaching a consensual restructuring transaction; and (c) meeting with the Debtors and the Debtors' stakeholders, as appropriate, to discuss the various proposed restructuring transactions.

5.      As a result of its work with the Debtors, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, financial affairs, operations, capital structure, and other material information.  Having worked with the Debtors' management and other advisors, Moelis has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases.  Accordingly, I believe Moelis is well-qualified to represent the Debtors in a cost-effective, efficient, and timely manner, and I submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors, and all parties in interest.

## Services to be Provided

6.      The terms and conditions of the Engagement Letter were the result of significant discussions and negotiations between Moelis and the Debtors, and they reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Subject to further order of this Court, and as more fully set forth in the Engagement Letter, in consideration for the compensation contemplated therein, Moelis has and will perform the following services (the "Services"), as requested, for the Debtors:[3]

    a.      assist the Debtors and Special Committee in reviewing the Company's strategic alternatives;

---

[3]     The summary of the Engagement Letter in this Declaration is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used and not otherwise defined in this Declaration shall have the meanings ascribed to them in the Engagement Letter.

      b.      assist the Debtors and Special Committee in reviewing and analyzing the Company's results of operations, financial condition and business plan;

      c.      assist the Debtors and Special Committee in reviewing and analyzing any potential Sale Transaction, Asset Transaction, Restructuring or Capital Transaction;

      d.      assist the Debtors and Special Committee in negotiating any Sale Transaction, Asset Transaction, Restructuring or Capital Transaction;

      e.      advise the Debtors and Special Committee on the terms of securities the Company offers in any potential Capital Transaction;

      f.      advise the Debtors and Special Committee on its preparation of an information memorandum for a potential Sale Transaction, Asset Transaction or Capital Transaction (each, an "<u>Information Memo</u>");

      g.      assist the Debtors and Special Committee in identifying and contacting potential Acquirers or purchasers of a Capital Transaction ("<u>Purchasers</u>") that the Debtors and Special Committee deem appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties or businesses that is acceptable to the Debtors and Special Committee, subject to customary business confidentiality agreements; and

      h.      provide such other financial advisory and investment banking services in connection with a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction as Moelis, the Debtors and the Special Committee may mutually agree upon.

7.     I believe these professional services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code. If the Debtors request that Moelis perform services not contemplated by the Engagement Letter, Moelis and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval. I believe that the employment of Moelis is important to enabling the Debtors to execute their duties as debtors in possession and to effectuate their reorganization efforts.

5

**Professional Compensation**

8.      Moelis' decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices, as set forth in the Engagement Letter.

9.      Moelis does not typically charge for its services on an hourly basis.  Instead, it customarily charges a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction.  The Engagement Letter follows this custom in the investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to Moelis.

10.      In consideration of the services to be provided by Moelis, and as set forth more fully in the Engagement Letter, Moelis and the Debtors have agreed on the following terms of compensation and expense reimbursement (the "Fee Structure")[4]:

Retainer Fee

(i) Promptly after execution of this agreement, a retainer fee of $1,000,000 (the "Retainer Fee"). The Retainer Fee shall be offset, to the extent previously paid, against (a) the Sale Transaction Fee (as defined below) for a Sale Transaction that is part of a Bankruptcy Case or (b) the Restructuring Fee (as defined below), subject to the Offset Cap (as defined in the Engagement Letter) in the case of the Restructuring Fee. For the avoidance of doubt, the Retainer Fee shall not be offset against a Sale Transaction Fee for a Sale Transaction that occurs outside of a Bankruptcy Case.

Monthly Fee

(ii) During the term of this agreement beginning upon the date set forth in the following sentence, a fee of $175,000 per month (the "Monthly Fee"), payable in advance of each month. The Debtors will pay the first Monthly Fee beginning the

---

[4]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Engagement Letter.

earlier of: (i) February 26, 2025 or (ii) the date of a Chapter 11 filing by or against the Debtors or any of its subsidiaries, and all subsequent Monthly Fees prior to each monthly anniversary of the date of the first Monthly Fee. Whether or not a Sale Transaction, Asset Transaction, Restructuring or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement after the date of the first Monthly Fee. 50% of each Monthly Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee or the Restructuring Fee (each as defined below), subject to the Offset Cap (as defined in the Engagement Letter) in the case of the Restructuring Fee.

Opinion Fee

(iii) An opinion fee (the "Opinion Fee") equal to $1,000,000. The Opinion Fee is payable promptly upon Moelis having rendered an Opinion at the request of the Debtors or Special Committee, regardless of the conclusion Moelis reaches in the Opinion.

Sale Transaction Fee

(iv) At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of $3,500,000 (subject to applicable offsets). The Sale Transaction Fee shall be payable whether the Sale Transaction is consummated outside of, or in connection with, a Bankruptcy Case.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code or in connection with the acquisition of assets under a Plan, such Sale Transaction shall trigger a Sale Transaction Fee, and any resulting or subsequent Restructuring involving the Debtors shall trigger a Restructuring Fee. The Sale Transaction Fee (prior to any offset for any Asset Transaction Fees previously paid) shall be offset, to the extent previously paid, against the Restructuring Fee, subject to the Offset Cap (as defined in the Engagement Letter). For the avoidance of doubt, Moelis shall only be entitled to earn a single Sale Transaction Fee.

Asset Transaction Fee

(v) At the closing of an Asset Transaction, a fee (the "Asset Transaction Fee") equal to 5.0% of the aggregate gross proceeds received or to be received, directly or indirectly, by the Debtors and its subsidiaries in connection with such Asset Transaction at the closing of such Asset Transaction or within six (6) months thereafter; provided, that the aggregate Asset Transaction Fees hereunder shall not exceed $2,500,000. For the avoidance of doubt, the parties agree that (a) an Asset Transaction Fee shall be payable only with respect to any upfront payments or any installment payments made within six (6) months of closing of the Asset Transaction, and (b) no Asset Transaction Fee will be payable with respect to any milestone, contingent, royalty or other future payments related to an Asset Transaction. Any amounts paid into escrow shall be deemed paid at closing. The

7

Debtors will pay a separate Asset Transaction Fee in respect of each Asset Transaction in the event that more than one Asset Transaction occurs. Any Asset Transaction Fee shall be offset, to the extent previously paid, against the Sale Transaction Fee.

Restructuring Fee

(vi) Upon the occurrence of a Restructuring, a fee (the "Restructuring Fee") of $3,000,000 (subject to applicable offsets). Notwithstanding anything to the contrary herein, in no event shall the collective amount of previously paid Retainer Fees, Monthly Fees and Sale Transaction Fees offset against the Restructuring Fee exceed $2,000,000 (the "Offset Cap"). The Restructuring Fee shall be offset, to the extent previously paid, against any subsequent Sale Transaction Fee. For the avoidance of doubt, Moelis shall only be entitled to earn a single Restructuring Fee pursuant to this agreement.

Capital Transaction Fee

(vii) At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

(A) 5.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests (collectively, "Equity Interests") (including, for purposes of this clause (A) but subject to the below paragraph regarding timing of payment, unfunded binding commitments); plus

(B) 3.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries with respect to debt obligations for borrowed money (whether secured or unsecured) raised in the Capital Transaction that are convertible into Equity Interests (including, for purposes of this clause (B) but subject to the below paragraph regarding timing of payment, unfunded binding commitments); plus

(C) 2.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries with respect to junior or unsecured debt obligations for borrowed money raised in the Capital Transaction (including, for the purpose of this clause (C), unfunded binding commitments); plus

(D) 1.0% of the aggregate gross proceeds received (or to be received), directly or indirectly, by the Debtors and their subsidiaries with respect to secured debt obligations for borrowed money raised in the Capital Transaction (including the aggregate gross amount of any debtor-in-possession financing raised in connection with a Bankruptcy Case ("DIP Capital")) (including, for the purpose of this clause (D), unfunded binding commitments); provided, that the Capital Transaction Fee for any DIP Capital raised shall be subject to a minimum fee of $500,000.

8

The Debtors will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.

Notwithstanding the foregoing, (i) if the Debtors completes a Capital Transaction with Anne Wojcicki and/or any of her affiliates pursuant to which the Debtors raises capital through the issuance of Equity Interests (other than preferred stock or convertible debt) (a "Specified Capital Transaction") and, prior to or within nine (9) months of such Specified Capital Transaction, Anne Wojcicki and/or any of her affiliates and the Debtors execute a definitive agreement for a Sale Transaction that is not part of a Bankruptcy Case, the Capital Transaction Fee for the Specified Capital Transaction shall be offset, to the extent previously paid, against the Sale Transaction Fee or (ii) if any party executes a definitive agreement with the Debtors for a Sale Transaction that is not part of a Bankruptcy Case, and such definitive agreement provides for the completion of a Capital Transaction by such party prior to the consummation of the Sale Transaction (a "Pre-Funding Capital Transaction"), the Capital Transaction Fee for the Pre-Funding Capital Transaction shall be offset, to the extent previously paid, against the Sale Transaction Fee.

If, at any time after the expiration or termination of the Engagement Letter and prior to the end of the Tail Period (as defined below), the Company (i) consummates any Sale Transaction, Restructuring, Capital Transaction or Asset Transaction or (ii) enters into a definitive agreement or a Plan is filed regarding any Sale Transaction, Asset Transaction or Capital Transaction and a Sale Transaction, Asset Transaction or Capital Transaction is subsequently consummated in connection therewith (in the case of a Capital Transaction or Asset Transaction that is not part of a Bankruptcy Case, with a Covered Person (as defined below)) then the Debtors (or their bankruptcy estates) shall pay Moelis the applicable fee(s) specified in the Engagement Letter immediately in accordance with the terms of the Engagement Letter. The "Tail Period" shall end 12 months following the expiration or termination of the Engagement Letter; provided, however, that this paragraph shall terminate and be of no further effect following (a) the closing of a Sale Transaction that is not part of a Bankruptcy Case or (b) the consummation of all Transactions contemplated to occur pursuant to an effective chapter 11 Plan of the Company.[5]

11.    If, at any time after the expiration or termination of the Engagement Letter and prior to the end of the Tail Period (as defined below), the Company (i) consummates any Sale Transaction, Restructuring, Capital Transaction or Asset Transaction or (ii) enters into a definitive agreement or a Plan is filed regarding any Sale Transaction, Asset Transaction or Capital

---

[5] "Covered Person" means any person (and its affiliates) who Moelis or the Company contacted or had discussions with during the term of this engagement with respect to a potential Transaction. Following termination of this agreement, Moelis shall promptly provide a list of Covered Persons known to Moelis.

Transaction and a Sale Transaction, Asset Transaction or Capital Transaction is subsequently

consummated in connection therewith (in the case of a Capital Transaction or Asset Transaction

that is not part of a Bankruptcy Case, with a Covered Person (as defined below)) then the Debtors

(or their bankruptcy estates) shall pay Moelis the applicable fee(s) specified in the Engagement

Letter immediately in accordance with the terms of the Engagement Letter. The "Tail Period" shall

end 12 months following the expiration or termination of the Engagement Letter; provided,

however, that this paragraph shall terminate and be of no further effect following (a) the closing

of a Sale Transaction that is not part of a Bankruptcy Case or (b) the consummation of all

Transactions contemplated to occur pursuant to an effective chapter 11 Plan of the Company.[6]

12.    In addition to any fees payable to Moelis, the Debtors agreed to reimburse

Moelis, whether or not the Debtors consummate a Sale Transaction, Asset Transaction,

Restructuring or Capital Transaction, for all of its reasonable and documented expenses as they

are incurred in performing services pursuant to the Engagement Letter, including the costs of

Moelis' legal counsel (without the need for such legal counsel to be retained as a professional in

these chapter 11 cases and without regard to whether such legal counsel's services satisfy section

330(a)(3)(C) of the Bankruptcy Code), provided, however, that the Company will not be obligated

to reimburse Moelis for amounts under this paragraph (other than outside legal costs and expenses

to the extent reasonably incurred and documented) that exceed $75,000 in the aggregate without

the Debtors' consent, which consent shall not be unreasonably withheld, conditioned or delayed.

The foregoing cap will not apply to Annex A to the Engagement Letter. In connection therewith,

---

[6] "Covered Person" means any person (and its affiliates) who Moelis or the Company contacted or had discussions with during the term of this engagement with respect to a potential Transaction. Following termination of this agreement, Moelis shall promptly provide a list of Covered Persons known to Moelis.

the Debtors have agreed to pay Moelis a $25,000 expense advance, the unused portion of which Moelis will return to the Debtors following termination of the Engagement Letter.

13.     Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

14.     However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, I respectfully request that only Moelis' professionals who advise or provide professional services to or on behalf of the Debtors be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services in hourly increments and the identity of the professionals who provided those services, consistent with its ordinary practice.  Moelis will present such records to the Court in its fee application(s).

15.     Moreover, I respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that we not be required to provide or conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required to submit more detailed time records for its

11

professionals by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules or other applicable procedures and orders of the Court, I respectfully request that this Court waive such requirements.

16.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.  In the event that Moelis seeks reimbursement for attorneys' fees during the term of these chapter 11 cases, Moelis will include the applicable invoices and supporting time records from such attorneys in Moelis' own application, both interim and final.  Such invoices and time records will be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

17.     I believe the Fee Structure is reasonable, consistent with, and typical of compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings.  I also believe that the Fee Structure reflects a proper balance between a fixed, monthly fee, and a contingency amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Engagement Letter.  The Fee Structure is consistent with Moelis' normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  After discussions and arm's-length negotiations with the Debtors, I believe that the Fee Structure is reasonable, market based and designed to compensate Moelis fairly for its work.

18.     I understand that Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which has and will be required by the Debtors during the term of Moelis' engagement, were all important factors in determining the Fee Structure.  I believe that the ultimate benefit of Moelis' services cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services.  Moelis and the Debtors have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and its professionals in connection with these chapter 11 cases and in light of the fact that (a) such commitment may foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

19.     During the 90-day period prior to the Petition Date, the Debtors paid in the ordinary course certain fees and expense reimbursements due under the Engagement Letter.  Specifically, according to the Debtors' books and records, the Debtors paid Moelis (a) Monthly Fees in the amount of $175,000, (b) Retainer Fee in the amount of $1,000,000, (c) Expense Advance in the amount of $25,000, and (d) reimbursement of expenses in the amount of $117,566.12.

## Indemnification Provisions

20.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to indemnify and exculpate any and all Moelis Persons (as defined in the Engagement Letter), and pay certain contributions and reimbursements to, Moelis in accordance with the terms and conditions set forth in the Engagement Letter, including the annexes thereto (such provisions, collectively, the "Indemnification Provisions").

13

21.    As set forth more fully therein, under the Indemnification Provisions, if any Moelis Person becomes involved in an becomes involved in any capacity in any Action (as defined in the Engagement Letter), the Debtors will reimburse such Moelis Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing the Engagement Letter, as they are incurred.  The Debtors will also indemnify and hold harmless any Moelis Person from and against, and the Debtors each agree that no Moelis Person shall have any liability to the Debtors or their affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Debtors' actions or omissions (or the actions or omissions of the Debtors' officers, directors, employees and agents other than Moelis) in connection with the Engagement Letter or the matters referred to therein, or (ii) related to or arising out of oral or written statements of omissions made or information provided by the Debtors or its agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Debtors to any purchaser or seller of a security in any transaction contemplated by the Engagement Letter), or (B) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder or any other services or advance the Debtors request any Moelis Person to provide (in each case, including prior to the date of the Engagement Letter), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from bad faith, willful misconduct, or gross negligence of such Moelis Person.[7]

---

[7]    To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Annex A to the Engagement Letter, the terms of the Engagement Letter shall control.

22.     I believe that the Indemnification Provisions are customary and reasonable terms of consideration for investment bankers such as Moelis in connection with in court and out of court restructuring activities.  Moelis negotiated the Engagement Letter, including the Indemnification Provisions, with the Debtors in good faith and at arm's length.

### Efforts to Avoid Duplication of Services

23.     Moelis understands that the Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as bankruptcy counsel; (b) Carmody MacDonald P.C. as bankruptcy co-counsel; (c) Alvarez & Marsal North America, LLC, as financial advisor; (d) Deloitte Tax LLP, as turnaround and restructuring tax advisor; (e) Kroll Restructuring Administration LLC, as claims and noticing agent and administrative advisor; (e) Goodwin Procter LLP, as counsel to the Special Committee of the Board of Directors, and (f) Lewis Rice LLC, as co-counsel to the Special Committee of the Board of Directors.  Moelis is mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of Moelis' retention as investment banker.   Moelis will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

### Moelis' Disinterestedness

24.     Moelis has undertaken to determine whether it has any conflicts or other relationships that might cause it not to be eligible for employment by the Debtors in these cases.  Specifically, Moelis obtained from the Debtors the names of individuals and entities that may be parties in interest in these cases.  Moelis then (a) researched its internal records to determine whether Moelis has any connections with the Debtors and the parties listed on **Schedule 1** attached

hereto (the "Potential Parties in Interest"), and (b) issued a general inquiry to certain of its officers with respect to the Debtors and certain Potential Parties in Interest.

25.     Based on the foregoing inquiry, other than in connection with this engagement and as otherwise disclosed herein, Moelis has no relationships or connections with the Debtors of which I am aware.  In particular, to the best of my knowledge, information and belief, neither I, Moelis, nor any of its professionals:

        a.  is a creditor, equity security holder or insider of the Debtors;

        b.  is or has been within three years before the Petition Date, a director, officer or employee of the Debtors; or

        c.  has any interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

26.     Accordingly, I believe Moelis is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors or their estates.

27.     Neither I nor any of the Moelis professionals who will provide services for the Debtors is related to any Judge of this Court, the U.S. Trustee, or any person employed in the office of the U.S. Trustee assigned to these chapter 11 cases.

28.     To the extent that I have been able to ascertain to date that Moelis has been engaged within the last three years or is currently engaged by any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on **Schedule 2** attached hereto.  **Schedule 2** also sets forth certain other relationships Moelis has with certain Potential Parties in Interest.  In addition to the facts disclosed on **Schedule 2**, Moelis may in the future be engaged by parties that are or may become parties in interest in these cases.  As these cases progress, new parties may become parties in interest in these cases and similarly,

Moelis may have been engaged, may be currently engaged, and may in the future be engaged by such new parties in interest in matters unrelated to these chapter 11 cases.

29.     Also, Moelis may have engaged or had mutual clients with, may currently engage or have mutual clients with, and may in the future engage or have mutual clients with certain law firms, financial advisors, accounting firms, and other professionals that are Potential Parties in Interest or may become parties in interest, all in matters unrelated to these cases.  In addition, Moelis may have also been engaged by, be currently engaged by, or in the future be engaged by persons who are creditors or shareholders of the Debtors, otherwise have a business relationship with the Debtors, or who are competitors or customers of the Debtors.  Potential Parties in Interest, persons that may become parties in interest in these cases, and persons that have business relationships with the Debtors, are competitors of the Debtors, or that are customers of the Debtors may be: (a) parties in interest in other bankruptcy cases where Moelis is acting as investment banker or financial advisor to the debtors or to other parties in interest therein; or (b) may be affiliates of or creditors of persons who Moelis may have been engaged, is currently engaged, or may in the future be engaged by.  In the ordinary course of its business, Moelis may also purchase services or products from Potential Parties in Interest and other persons that are or may become parties in interest in these chapter 11 cases.

30.     Given the large number of parties in interest in these chapter 11 cases, despite the efforts described above to identify and disclose Moelis' relationships with parties in interest in these chapter 11 cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed.  In particular, among other things, Moelis may have relationships with persons who are beneficial owners of parties in interest and persons whose beneficial owners include parties in interest or persons who otherwise have relationships with

17

parties in interest. Moreover, Moelis' employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in these cases, and/or persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors. Continued inquiry will be made following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

31.     Moelis Asset Management ("MAM") is an asset management holding company that is controlled by Kenneth Moelis, who also controls Moelis. MAM holds interests in various funds, including private equity, credit investments, direct lending and collateralized loan obligations funds. These funds may hold investment positions in various entities from time-to-time, some of which may be parties in interest in these chapter 11 cases. MAM and its subsidiaries are operated in separate legal and operating entities from Moelis and its financial advisory affiliates. MAM and its subsidiaries are separated from Moelis and its financial advisory affiliates by a compliance information barrier that prevents (a) an employee of Moelis and its financial advisory affiliates from disclosing non-public information concerning the Debtors or these cases to any employee of MAM or its subsidiaries, and (b) an employee of MAM or its subsidiaries from disclosing non-public information concerning an investment of a MAM subsidiary to an employee of Moelis or its financial advisory affiliates. No employees of MAM or its subsidiaries will work on these cases, and employees of Moelis working on these cases have no involvement in the investment decisions of MAM's subsidiaries. Based on the business separation and compliance information barriers referred to above, I do not believe that the investment activities of MAM's subsidiaries constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

18

32.     To the best of my knowledge, information, and belief, some of Moelis' present and future employees may have, or may in the future have, personal investments in funds or other investment vehicles over whose investment decisions such employees have no input or control. Such entities may have made, or may in the future make, investments in the claims or securities of the Debtors, or those of their creditors or other parties in interest in these chapter 11 cases.

33.     Moelis will not share any compensation to be paid by the Debtors in connection with services to be performed after the Petition Date with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code. In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the investment banking and financial advisory services offered by Moelis' regular employees to Moelis' clients.  Upon Moelis' engagement on a particular assignment, one such senior advisor may be assigned to assist the other Moelis professionals for such engagement.  Such advisor acts under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment.  The fees and expenses of such senior advisor are paid solely by Moelis.

[*Remainder of the page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  March 24, 2025

/s/ Barak Klein
Barak Klein
Co-Head of U.S. Capital Structure Advisory & Managing Director
Moelis & Company LLC

20

## <u>Schedule 1</u>

## **Potential Parties in Interest List[1]**

1. (FINANCIAL ADVISOR TO) POTENTIAL BUYER
   - JPMORGAN SECURITIES LLC
   - TD COWEN
2. (LEGAL COUNSEL TO) POTENTIAL BUYER
   - ROPES & GRAY LLC
   - SKADDEN, ARPS, SLATE, MEAEGHER & FLOM LLP
3. BANKRUPTCY JUDGES/STAFF
   - CATHERINE NORWOOD
   - CHICQUITA GREENE-HESTER
   - CHIEF JUDGE BONNIE L. CLAIR
   - COURTNEY KIRBIS
   - HAYLEY KOONTZ
   - JUDGE BRIAN C. WALSH
   - JUDGE KATHY A. SURRATT-STATES
   - KAILA SPIVEY
   - TAYLOR ROWLAND
4. BANKRUPTCY PROFESSIONALS - RETAINED
   - ALVAREZ AND MARSAL NORTH AMERICA, LLC
   - CARMODY MACDONALD P.C.
   - DELOITTE TAX LLP
   - GOODWIN PROCTER LLP
   - KROLL RESTRUCTURING ADMINISTRATION LLC
   - LEWIS RICE LLC
   - MOELIS & COMPANY LLC
   - PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
5. BANKS/LENDER/UCC LIEN PARTIES/ADMINISTRATIVE AGENTS
   - CARDINAL HEALTH 110 LLC, "AS AGENT"
   - JPMORGAN CHASE BANK N.A.
   - JPMORGAN CHASE BANK N.A. - TORONTO BRANCH
   - SMITH DRUG COMPANY-DIVISION OF JM SMITH CORP.
   - U.S. BANK EQUIPMENT FINANCE
   - U.S. BANK NATIONAL ASSOCIATION
6. COUNSEL REPRESENTING CYBER SECURITY INCIDENT CLAIMANTS
   - ARON LAW FIRM
   - AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ PLLC

---

[1]    This list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose. As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible. Accordingly, a party that otherwise may fall under multiple categories is likely to be listed under only one category.

- BARNOW & ASSOCIATES P.C.
- BERMAN TOBACCO
- BONI, ZACK & SNYDER LLC
- BOTTINI & BOTTINI, INC.
- BRADLEY/GROMBACHER LLP
- CLARKSON LAW FIRM
- CLAYEO C. ARNOLD,  PROFESSIONAL LAW CORP.
- COLE & VAN NOTE
- COTCHETT PITRE & MCCARTHY LLP
- CUNEO GILBERT & LADUCA
- DU VERNET STEWART
- EDELSBERG LAW, P.A.
- EMPLOYEE JUSTICE LEGAL GROUP, PC
- FALLS LAW GROUP
- FEDERMAN & SHERWOOD
- FREED KANNER LONDON & MILLEN LLC
- GLANCY PRONGAY & MURRAY LLP
- GUSTAFSON GLUEK  PLLC
- HERMAN JONES LLP
- KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
- KAPLAN FOX & KILSHEIMER LLP
- KAZEROUNI LAW GROUP
- KLEINE PC
- KOPELITZ OSTROW FERGUSON WEISELBERG GILBERT
- KP LAW LTD. (UK)
- LABATON KELLER
- LAUKAITIS LAW LLC
- LAW OFFICE OF COURTNEY WEINER PLLC
- LAW OFFICES OF PAUL WHALEN, PC
- LEVI & KORSINSKY
- LEVIN SEDRAN & BERMAN LLP
- LEXINGTON LAW GROUP, LLP
- LIEFF CABRASER HEIMANN & BERNSTEIN AND ROBBINS GELLER
- LOCKRIDGE GRINDAL NAUEN P.L.L.P.
- LOFTUS & EISENBERG, LTD.
- LONGMAN LAW, P.C.
- LYNCH CARPENTER LLP
- MASON LLP
- MCSHANE & BRADY, LLC
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
- NEAL & HARWELL
- PIERCE GORE LAW FIRM
- POTTER HANDY LLP

- POULIN | WILLEY | ANASTOPOULO, LLC
- REESE LLP
- ROBBINS GELLER RUDMAN & DOWD, LLP
- SALTZ, MONGELUZZI & BENDESKY, PC
- SCHUBERT JONCKHEER & KOLBE LLP
- SCOTT+SCOTT ATTORNEYS AT LAW LLP
- SROURIAN LAW FIRM, P.C.
- THE GRANT LAW FIRM, PLLC
- THE MEHDI FIRM LLP
- TOSTRUD LAW GROUP PC
- TYCKO & ZAVAREEI
- TYCKO & ZAVAREEI, LLP
- WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
- WUCETICH & KOROVILAS LLP
- YANNI LAW
- ZINNS LAW, LLC

7. CUSTOMERS
- ABBVIE INC.
- AMAZON
- AMAZON : AMAZON CA
- AMAZON : AMAZON UK
- AMAZON : WOOT
- CARDINAL HEALTH, INC.
- COREWEAVE, INC.
- GLAXOSMITHKLINE & GLAXOSMITHKLINE LLC
- GSK
- MICHAEL J FOX FOUNDATION : MJFF PD
- MYHERITAGE
- SANOFI US SERVICES INC.
- WALMART.COM

8. DEBTORS
- 23 AND ME
- 23ANDME HOLDING CO.
- 23ANDME INC.
- 23ANDME PHARMACY HOLDINGS, INC.
- LEMONAID COMMUNITY PHARMACY
- LEMONAID HEALTH INC.
- LEMONAID PHARMACY HOLDINGS, INC.
- LPHARM CS LLC
- LPHARM INS LLC
- LPHARM RX LLC
- LPRXONE, LLC
- LPRXTHREE LLC
- LPRXTWO, LLC

3

**9.** DIRECTOR/OFFICER
- ANDRE FERNANDEZ
- AVI FACTOR
- ELAND SIDDLE
- GUY CHAYOUN
- JIM FRANKOLA
- JOE SELSAVAGE
- MARK JENSEN
- THOMAS WALPER

**10.** INSURANCE
- AIG FINANCIAL LINES CLAIMS
- ALLIED WORLD SPECIALTY INSURANCE COMPANY
- ARCH SPECIALTY INSURANCE COMPANY
- AXIS INSURANCE
- BEAZLEY USA SERVICES, INC
- BERKLEY LIFE SCIENCES
- BERKLEY PROFESSIONAL LIABILTY
- CHUBB GROUP
- CHUBB GROUP OF INSURANCE CO
- CNA CLAIMS REPORTING
- COMMERCIAL MANAGEMENT LIABILITY
- GREAT AMERICAN INSURANCE COMPANY
- HCC GLOBAL FINANCIAL PRODUCTS, LLC.
- HISCOX USA
- HUDSON INSURANCE COMPANY
- LLOYD'S AMERICA, INC.
- OLD REPUBLIC PROFESSIONAL LIABILITY, INC.
- RESILIENCE CYBER INSURANCE SOLUTIONS
- THE HARTFORD FINANCIAL LINES
- THE TRAVELERS COMPANIES, INC.
- TRIUM CYBER US SERVICES, INC.
- WOODRUFF SAWYER
- XL PROFESSIONAL INSURANCE

**11.** KNOWN AFFILIATES - JV
- LMND CA
- LMND KS
- LMND NJ
- LMND TX

**12.** LANDLORDS/ SUBTENANTS
- KR OP TECH, LLC
- OYSTER POINT TECH CENTER LLC, A DELEWARE LIMITED LIABILITY COMPANY

**13.** LETTER OF CREDIT- BENEFICIARY
- 221 N MATHILDA, LLC, A DELEWARE LIMITED LIABILITY COMPANY

4

- PAYPAL, INC.

**14.** LITIGATION
- ADRIANE FARMER
- ALEX VELARDE
- ALEXANDRA HOFFMAN
- ALMEIDA LAW GROUP LLC
- ALYSON HU
- ANDEZ JONES
- ANTOINETTE POWELL
- BONNIE EDEN
- BRANDON MOLINA
- BRIANA DUBE
- BRIANNA SORENSEN
- CAMIE PICHA
- CAROLINE GREENBERG
- CAROLYN ROCK
- CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP
- CHRISTINA SHAW
- CHRISTOPHER DU VERNET CARLIN MCGOOGAN DUVERNET STEWART, BARRISTERS AND SOLICITERS
- CLAIRE PADDY
- DAVID MELVIN
- DAVID TULCHINSKY
- DHAMAN GILL
- EDELSON PC
- ELAINE FRALIX
- ERIK STANFORD
- FALLS LAW GROUP
- HARIS MIRZA
- HAROLD GARRETT
- HAROLD VELEZ
- JOHN DIAZ
- JULIE MACMILLAN
- KATHY VASQUEZ
- KATIANNE NAVARRO
- KELLER ROHRBACK L.L.P.
- KERRY LAMONS
- KND COMPLEX LITIGATION
- KP LAW LIMITED
- KRISTEN RIVERS
- LABATON KELLER SUCHAROW LLP
- LAQUISHA SMITH
- LEENA YOUSEFI YLAW GROUP
- LEVI + KORSINSKY LLP

5

- LUIS VALLADARES
- MARJORIE MORGENSTERN
- MATTHEW A. SMITH
- MATTHEW MARDEN
- MAX ALPERSTEIN
- MCGUIRE LAW, P.C.
- MELANIE BERMAN
- MELISSA RYAN
- MICHAEL SCHUTZ
- MICHELE BACUS
- MICHELLE ANDRIZZI
- MICHELLE IGOE
- MIGLIACCIO & RATHOD LLP
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLC
- MONICA SANTANA
- NEIL BENEDICT
- NICHOLAS FURIA
- NICHOLE FRIEND
- PATRICK CAPSTICK
- POLINA IOFFE
- POTTER HANDY, LLP
- RICHARD ROE
- RUDY K. THOMPSON
- SARAH CANTU
- STEPHEN L. SEIKEL
- STEVE SIEGEL HANSON LLP
- THOMAS VICKERY
- TRACY SCOTT
- TRISHA WILKUS
- TYRELL BROWN

**15.** POTENTIAL BUYER
- NEW MOUNTAIN CAPITAL, LLC

**16.** REGULATORS
- AGENCIA ESPAÑOLA DE PROTECCIÓN DE DATOS
- BUREAU OF CONSUMER PROTECTION
- FEDERAL TRADE COMMISSION
- OFFICE OF ATTORNEY GENERAL TODD ROKITA
- OFFICE OF THE ATTORNEY GENERAL - CONNECTICUT
- OFFICE OF THE PRIVACY COMMISSIONER OF CANADA
- UNITED KINGDOM INFORMATION COMMISSIONER'S OFFICE

**17.** SIGNIFICANT EQUITY HOLDERS
- ABEEC 2.0, LLC
- ANNE WOJCICKI
- ZENTREE INVESTMENTS LIMITED

6

**18.** U.S. TRUSTEE OFFICE
- PAUL RANDOLPH

**19.** VENDORS
- ACCO ENGINEERED SYSTEMS
- AGANITHA AI INC.
- ALIXPARTNERS, LLC
- ALLIED UNIVERSAL SECURITY SERVICES
- ALOM TECHNOLOGIES CORPORATION
- AMAZON WEB SERVICES
- ANDRE JOHN FERNANDEZ
- BDO USA LLP
- BLUE SHIELD OF CALIFORNIA
- BRAINTREE
- CATALENT CTS SINGAPORE PRIVATE LIMITED
- CDW DIRECT LLC
- CLOUDFLARE, INC.
- COALITION FOR GENETIC DATA PROTECTION INC.
- CONSULTING, JW LLC
- CONVERGE TECHNOLOGY SOLUTIONS US, LLC
- DECHERT LLP
- DELOITTE & TOUCHE LLP
- DELOITTE CONSULTING LLP
- DELTA DENTAL OF CALIFORNIA
- DNA GENOTEK INC.
- EGON ZEHNDER INTERNATIONAL, INC
- FEDEX CORP
- FOLK DEVILS LLC
- FOODA, INC.
- FULGENT THERAPEUTICS, LLC
- GLAXOSMITHKLINE INTELLECTUAL PROPERTY LTD.
- GOODWIN PROCTER LLP
- GOOGLE, INC. - ADWORDS
- GREENBERG TRAURIG LLP
- HEALTHLINE MEDIA INC
- IHEARTMEDIA + ENTERTAINMENT
- ILLUMINA, INC.
- INTEGRAL RX
- JELLYFISH US LIMITED
- KAISER FOUNDATION HEALTH PLAN NORTHERN CA
- KATIE COURIC MEDIA, LLC
- KILROY REALTY, LP
- KPMG LLP
- L.E.K. CONSULTING LLC
- LIFEBIT BIOTECH LIMITED

7

- MARK E. JENSEN
- MEDPACE INC.
- META PLATFORMS, INC.
- METROPOLITAN LIFE INSURANCE COMPANY
- MOELIS & COMPANY, LLC
- MORGAN, LEWIS & BOCKIUS LLP
- MOVIANTO
- NATIONAL GENETICS INSTITUTE
- PACIFIC GAS AND ELECTRIC COMPANY
- PARTNERIZE
- PETER M LEFKOWITZ
- POWER DIGITAL MARKETING, INC.
- PRECISION FOR MEDICINE, INC.
- PRITI PATEL CONSULTING LLC
- RAIN THE GROWTH AGENCY
- RIGHT SIDE UP LLC
- SALESFORCE.COM
- SANTA CLARA COUNTY TAX COLLECTOR
- SCALE STRATEGY OPERATIONS LLC
- SCG GROVE 221, LLC
- STEADYMD, INC.
- SUREFOX NORTH AMERICAN
- TANGO CARD, INC.
- TATARI, INC.
- TCWGLOBAL (WMBE PAYROLLING INC.)
- TELUS INTERNATIONAL SERVICES LIMITED
- UNUM LIFE INSURANCE COMPANY OF AMERICA
- VENTANA MEDICAL SYSTEMS, INC.
- WILSON SONSINI GOODRICH & ROSATI, PROFESSIONAL CORPORATION
- WOODRUFF-SAWYER & CO.
- WOOT SERVICES LLC
- WORLD ARCHIVES
- WUXI BIOLOGICS (HONG KONG) LIMITED
- ZENDESK, INC

<u>**Schedule 2**</u>

**Relationship with Potential Parties in Interest**

Moelis (and its financial advisory affiliates) has been engaged within the last three years or is currently engaged by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these cases (including where the Potential Party in Interest was only a member of an official or an ad hoc creditor committee or an equity committee):

**(FINANCIAL ADVISOR TO) POTENTIAL BUYER**
JPMORGAN SECURITIES LLC

**BANKS/LENDER/UCC LIEN PARTIES/ADMINISTRATIVE AGENTS**
JPMORGAN CHASE BANK N.A.
JPMORGAN CHASE BANK N.A. - TORONTO BRANCH
U.S. BANK EQUIPMENT FINANCE
U.S. BANK NATIONAL ASSOCIATION

**CUSTOMERS**
GLAXOSMITHKLINE & GLAXOSMITHKLINE LLC
GSK

**POTENTIAL BUYER**
NEW MOUNTAIN CAPITAL, LLC

**VENDORS**
BLUE SHIELD OF CALIFORNIA
IHEARTMEDIA + ENTERTAINMENT
METROPOLITAN LIFE INSURANCE COMPANY