**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |
|  | Hearing Date:  TBD[2]<br>Hearing Time:  TBD<br>Hearing Location:  TBD |

**DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING THE RETENTION AND EMPLOYMENT OF PAUL, WEISS,
RIFKIND, WHARTON & GARRISON LLP AS ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application (the "Application"):

**Relief Requested**[3]

1.      The Debtors seek entry of an interim order (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Proposed Orders")[4] authorizing the retention and employment of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss" or

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]      The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3]      Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Application.

[4]      A copy of the Proposed Orders will be made available on the Debtors' case information website at: https://restructuring.ra.kroll.com/23andMe.

the "Firm") as attorneys for the Debtors, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Paul, Weiss engagement agreement dated as of January 10, 2025, attached as **Exhibit C** (the "Engagement Letter").  In support of this Application, the Debtors rely upon (a) the declaration of Christopher Hopkins (the "Hopkins Declaration"), a partner at Paul, Weiss, attached hereto as **Exhibit A**, and (b) the declaration of Guy Chayoun, the Debtors' Vice President, Interim General Counsel, and Corporate Secretary (the "Chayoun Declaration"), attached hereto as **Exhibit B**.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors consent to entry of a final order with respect to this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014 and 2016 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Rules").

**<u>Background</u>**

5.      23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[5] the "<u>Company</u>") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome.  The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports.  Further, through its Lemonaid Health telehealth platform, the Company operates as a national online doctor's office that provides medical care, pharmacy fulfillment, and laboratory testing services.

6.      On March 23, 2025 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8.      A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed substantially contemporaneously herewith and incorporated herein by reference.[6]

---

[5]   Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

[6]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

## Paul, Weiss's Qualifications

9.      The Debtors seek to retain Paul, Weiss because of Paul, Weiss's recognized expertise and extensive experience and knowledge in matters involving debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.  Paul, Weiss is a full-service law firm with a national and international presence and has experience and expertise in every major substantive area of legal practice.  Paul, Weiss has been extensively involved in major chapter 11 cases and has represented debtors in many such cases, including, among others: *In re Party City Holdco Inc.*, No. 24-90621 (CML) (Bankr. S.D. Tex. Dec. 21, 2024); *In re Enviva Inc.*, No. 24-10453 (BFK) (Bankr. E.D. Va. Mar. 12, 2024); *In re Hornblower Holdings LLC*, No. 24-90061 (MI) (Bankr. S.D. Tex. Feb. 21, 2024); *In re National Cinemedia, LLC*, No. 23-90291 (DRJ) (Bankr. S.D. Tex. Apr. 11, 2023); *In re Diamond Sports Group, LLC*, No. 23-90116 (CML) (Bankr. S.D. Tex. Mar. 14, 2023); *In re Proterra Inc*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 7, 2023); *In re Ryze Renewables II, LLC*, No. 23-10298 (BLS) (Bankr. D. Del. Mar. 9, 2023); *In re Party City Holdco Inc.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Jan. 17, 2023); *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. June 15, 2022); *In re Foresight Energy LP*, No. 20-41308 (Bankr. E.D. Mo. Mar. 10, 2020); and *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo. Feb. 8, 2016).

10.      The Debtors retained Paul, Weiss in December 2024 to assist the Debtors in their efforts to resolve outstanding liabilities related to the Cyber Security Incident and, if necessary, prepare the Debtors to file and effectuate these chapter 11 cases.  In this role, Paul, Weiss has gained significant institutional knowledge of the Debtors' business and affairs and with many of the legal issues that may arise during these chapter 11 cases.

11.     For the foregoing reasons, the Debtors believe that Paul, Weiss is specially situated and well-qualified to represent them in these chapter 11 cases in an efficient and effective manner. Accordingly, the Debtors believe that the retention of Paul, Weiss is necessary and in the best interests of the Debtors, their estates, and creditors.

### Services to Be Provided

12.     Given the Debtors' liquidity position and the nature of these chapter 11 cases, Paul, Weiss expects to work with Carmody MacDonald P.C. ("Carmody MacDonald"), proposed bankruptcy co-counsel, to ensure the Debtors are afforded effective and efficient legal representation throughout these chapter 11 cases.  Carmody MacDonald will take a significant role in these chapter 11 cases, including day-to-day administration, stakeholder engagement, and other routine matters while Paul, Weiss focuses on the sale process, engagement with claimants related to the Cyber Security Incident, and other strategic matters.  Consistent with the Engagement Letter, the Debtors request the retention and employment of Paul, Weiss to render the following legal services:

(a)     providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business and management of their properties;

(b)     attending meetings and negotiating with representatives of creditors and other parties in interest and advising and consulting on the conduct of these chapter 11 cases, including the legal and administrative requirements of operating in chapter 11;

(c)     taking action necessary to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

(d)     preparing and prosecuting on behalf of the Debtors all motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

> (e)     advising and assisting the Debtors with the marketing and sale process for their assets and financing and transactional matters, as such may arise during the chapter 11 cases;
>
> (f)     advising and assisting the Debtors with financing and transactional matters that may arise during these chapter 11 cases;
>
> (g)     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documentation related thereto;
>
> (h)     appearing in Court and protecting the interests of the Debtors before the Court;
>
> (i)     advising the Debtors regarding tax matters; and
>
> (j)     performing all other legal services for the Debtors that may be necessary and proper in these chapter 11 cases.

**<u>Professional Compensation</u>**

13.     The professional services of Paul, Weiss are necessary to ensure that all matters related to the Debtors' chapter 11 cases are handled in a diligent and expeditious manner.  Paul, Weiss practices in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.  Paul, Weiss has advised the Debtors that, subject to this Court's allowance of compensation and reimbursement of expenses in accordance with applicable general orders and fee guidelines of the Court, sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other orders of the Court, it will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered, and for reimbursement of all costs and expenses incurred in connection with these chapter 11 cases, as set forth in the Hopkins Declaration filed concurrently herewith.

14.     The hourly rates set forth in the Hopkins Declaration are the Firm's standard hourly rates and are in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered.  These rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses, and are revised on an annual basis.  The current standard hourly rates for Paul, Weiss's attorneys and paralegals range from $2,245 to $2,595 for partners, $1,995 for counsel, $705 to $1,695 for associates and staff attorneys, and $175 to $560 for paraprofessionals.  These rates are subject to periodic adjustment to reflect economic and other conditions.[7]  Paul, Weiss (a) provided an initial $250,000 credit to account for time spent by Paul, Weiss attorneys familiarizing themselves with the Debtors' agreements and history at the outset of the engagement and (b) agreed to a flat fee of $400,000 for services rendered in the period from February 24, 2025, through March 2, 2025.  Otherwise, Paul, Weiss has not agreed to any variations from the Firm's standard billing arrangements.

15.     The following attorneys will have primary responsibility for representing the Debtors in these chapter 11 cases:

---

[7]     Paul, Weiss, like other law firms, typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (a) ordinary step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "Step Increase") and (b)  periodic rate increases with respect to each level of seniority.  The Step Increases do not constitute "rate increases" (as the term is used in the Fee Guidelines (as defined in the Hopkins Declaration)).

7

| **Name** | **Year Admitted to the Bar** | **Current Hourly Rate** |
|---|---|---|
| Paul M. Basta (Partner) | 1993 | $2,595 |
| Christopher Hopkins (Partner) | 2014 | $2,350 |
| Jessica I. Choi (Associate) | 2018 | $1,695 |
| Grace C. Hotz (Associate) | 2019 | $1,695 |
| Lauren Castillo (Associate) | 2023 | $1,470 |
| Justin Simms (Associate) | 2025 | $975 |
| Elizabeth Gonzalez (Law Clerk, Not Yet Admitted) | Not Yet Admitted | $975 |

Other Paul, Weiss lawyers will be consulted and may appear on behalf of the Debtors in these chapter 11 cases, as necessary.

16.    In addition, Paul, Weiss customarily charges its clients for various costs and expenses incurred, including, among other things, certain telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses approved by the client such as secretarial and other overtime.

**Compensation Received by Paul, Weiss from the Debtors**

17.    Paul, Weiss initially received a retainer from the Debtors in the amount of $750,000.00 on January 16, 2025.  The Debtors increased the retainer in the following amounts, resulting in Paul, Weiss receiving an aggregate retainer amount of $4,937,577.61:

(a)    $472,992.25 – Received January 30, 2025;
(b)    $489,504.92 – Received February 14, 2025;
(c)    $522,359.50 – Received February 21, 2025;
(d)    $443,249.95 – Received February 27, 2025;
(e)    $556,385.71 – Received March 5, 2025;
(f)    $485,337.02 – Received March 12, 2025;
(g)    $517,748.26 – Received March 19, 2025; and
(h)    $700,000.00 – Received March 20, 2025.

Paul, Weiss is in the process of reconciling its prepetition fees and expenses and intends to apply such amounts against the retainer.  The Firm expects that the remaining retainer balance will be less than $500,000.00.  Other than as set forth herein, Paul, Weiss did not receive any other payments from the Debtors in connection with this matter during the 90 days immediately preceding the Petition Date.

18.    Pursuant to Bankruptcy Rule 2016(b), and as set forth in the Hopkins Declaration, Paul, Weiss has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, counsel, associates, and contract attorneys, and other personnel associated with Paul, Weiss or (b) any compensation another person or party has received.

**Efforts to Avoid Duplication of Services**

19.    By separate application, the Debtors have asked or will ask the Court to approve the retention of (a) Carmody MacDonald, as bankruptcy co-counsel to the Debtors, (b) Alvarez & Marsal North America, LLC, to provide a Chief Restructuring Officer and certain additional personnel to the Debtors, (c) Moelis & Company LLC, as investment banker to the Debtors, (d) Deloitte Tax LLP, as turnaround and restructuring tax advisor, (e) Kroll Restructuring Administration LLC, as claims and noticing agent and administrative advisor, (f) Goodwin Procter LLP, as counsel to the Special Committee of the Board of Directors, and (g) Lewis Rice LLC, as

co-counsel to the Special Committee of the Board of Directors (collectively, the "Chapter 11 Professionals").

20.    The Debtors may also file applications to employ additional professionals.  Paul, Weiss will work closely with the Chapter 11 Professionals retained by the Debtors to delineate their respective duties to prevent duplication of services to the furthest extent possible.  It is anticipated that the coordination of efforts of these professionals will greatly aid in the efficient and effective administration of these chapter 11 cases.  Specifically, the retention of Carmody MacDonald as co-counsel to the Debtors will allow for an efficient division of work related to the chapter 11 cases, preventing duplicative efforts and resulting in cost-savings to the Debtors' estates.

### Paul, Weiss's Disinterestedness

21.    To the best of the Debtors' knowledge, as set forth in the Hopkins Declaration, (a) Paul, Weiss is "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (b) neither Paul, Weiss nor any of the partners, counsel, associates, or paralegals of Paul, Weiss have any connection with or hold or represent an interest adverse to any of the Debtors, their affiliates, or their estates, except as may be disclosed in the Hopkins Declaration.  If any new relevant facts or relationships are discovered, Paul, Weiss will use reasonable efforts to identify such developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### Supporting Authority

22.    The Debtors seek retention of Paul, Weiss as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or

represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

Bankruptcy Rule 2014(a) requires that an application for retention include:

[S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

23.     The Debtors submit that for all the reasons stated above and in the Hopkins Declaration and the Chayoun Declaration, the retention and employment of Paul, Weiss as counsel to the Debtors is necessary and in the best interests of the Debtors and their estates and complies with the requirements of section 327(a) of the Bankruptcy Code.  Further, as stated in the Hopkins Declaration, Paul, Weiss is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as specifically disclosed in the Hopkins Declaration.

**<u>Immediate Relief Is Necessary</u>**

24.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable harm."  For the reasons discussed herein and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the Application could hinder the Debtors' operations and cause

11

irreparable harm. Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring efforts. The retention and employment of Paul, Weiss as attorneys for the Debtors are necessary for the Debtors to operate their business in the ordinary course and preserve the value of their estates for the benefit of stakeholders. Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003 has been satisfied.

**Notice**

25.     The Debtors will provide notice of this Application to the following parties: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d) the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the United States Attorney's Office for the Eastern District of Missouri; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Federal Trade Commission; (i) the state attorneys general in all 50 states; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Application and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Local Rules. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

26.     A copy of this Application is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders and grant such other relief as the Court deems appropriate under the circumstances.

Dated: March 24, 2025
St. Louis, Missouri

Respectfully submitted,

23ANDME HOLDING CO.
(for itself and on behalf of each of its affiliated Debtors)

*/s/ Guy Chayoun*
Name:   Guy Chayoun
Title:    Vice President, Interim General Counsel, Corporate Secretary
            23andMe Holding Co.

## Exhibit A

**Hopkins Declaration**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF CHRISTOPHER HOPKINS IN SUPPORT OF THE
DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING THE RETENTION AND EMPLOYMENT OF PAUL, WEISS,
RIFKIND, WHARTON & GARRISON LLP AS ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

I, Christopher Hopkins, do hereby declare, under penalty of perjury, that:

1.      I am a partner in the law firm of Paul, Weiss Rifkind, Wharton & Garrison LLP

("Paul, Weiss" or the "Firm"), an international law firm with its principal offices at 1285 Avenue

of the Americas, New York, New York 10019.   I am the lead attorney from Paul, Weiss working

on the above-captioned chapter 11 cases.  I am a member in good standing of the Bar of the State

of New York and I have been admitted to practice in the United States District Court for the

Southern District of New York.

2.      I submit this declaration (this "Declaration") in support of the *Debtors' Application*

*for Entry of Interim and Final Orders Authorizing the Retention and Employment of Paul, Weiss,*

*Rifkind, Wharton & Garrison LLP as Attorneys for the Debtors and Debtors in Possession*

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address
for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

*Effective as of the Petition Date* (the "Application").[2]  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.  To the extent any information disclosed herein requires amendment or modification upon Paul, Weiss's completion of further review, or as additional party in interest information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

### Paul, Weiss's Qualifications

3.      These chapter 11 cases are complex and will require counsel with expansive experience and knowledge in, among other areas, the fields of debtors' and creditors' rights, litigation, tax, employee compensation and benefits, and finance.  Paul, Weiss is a full-service law firm with a national and international presence and has experience and expertise in every major substantive area of legal practice.  Paul, Weiss has been extensively involved in major chapter 11 cases and has represented debtors in many such cases, including, among others:  *In re Party City Holdco Inc.*, No. 24-90621 (CML) (Bankr. S.D. Tex. Dec. 21, 2024); *In re Enviva Inc.*, No. 24-10453 (BFK) (Bankr. E.D. Va. Mar. 12, 2024); *In re Hornblower Holdings LLC*, No. 24-90061 (MI) (Bankr. S.D. Tex. Feb. 21, 2024); *In re National Cinemedia, LLC*, No. 23-90291 (DRJ) (Bankr. S.D. Tex. Apr. 11, 2023); *In re Diamond Sports Group, LLC*, No. 23-90116 (CML) (Bankr. S.D. Tex. Mar. 14, 2023); *In re Proterra Inc*, No. 23-11120 (BLS) (Bankr. D. Del. Aug. 7, 2023); *In re Ryze Renewables II, LLC*, No. 23-10298 (BLS) (Bankr. D. Del. Mar. 9, 2023); *In re Party City Holdco Inc.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Jan. 17, 2023); *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. June 15, 2022); *In re Foresight Energy LP*, No. 20-41308 (Bankr. E.D. Mo. Mar. 10, 2020); and *In re Noranda Aluminum, Inc.*, No. 16-10083 (BSS) (Bankr. E.D. Mo. Feb. 8, 2016).

---

[2]      Capitalized terms used, but not otherwise defined herein, have the meaning ascribed to them in the Application.

4.      The Debtors retained Paul, Weiss in December 2024 to assist the Debtors in their efforts to resolve outstanding liabilities related to the Cyber Security Incident and, if necessary, prepare the Debtors to file and effectuate these chapter 11 cases.  In this role, Paul, Weiss has gained significant institutional knowledge of the Debtors' business and affairs and with many of the legal issues that may arise during these chapter 11 cases.

5.      For the foregoing reasons, I believe that Paul, Weiss is specially situated and well-qualified to represent the Debtors in these chapter 11 cases in an efficient manner. Accordingly, I understand that the Debtors believe that the retention of Paul, Weiss is necessary and in the best interests of the Debtors, their estates, and creditors.

**Services to be Rendered; Compensation Arrangements**

6.      Given the Debtors' liquidity position and the nature of these chapter 11 cases, Paul, Weiss expects to work with Carmody MacDonald P.C. ("Carmody MacDonald"), proposed bankruptcy co-counsel, to ensure the Debtors are afforded effective and efficient legal representation throughout these chapter 11 cases.  Carmody MacDonald will take a significant role in these chapter 11 cases, including day-to-day administration, stakeholder engagement, and other routine matters while Paul, Weiss focuses on the sale process, engagement with claimants related to the Cyber Security Incident, and other strategic matters.  Consistent with the Engagement Letter, the Debtors have requested that Paul, Weiss render services including, but not limited to, the following:

(a)      providing legal advice with respect to the Debtors' powers and duties as debtors in possession in the continued operation of their business and management of their properties;

(b)      attending meetings and negotiating with representatives of creditors and other parties in interest and advising and consulting on the conduct of these chapter 11 cases, including the legal and administrative requirements of operating in chapter 11;

3

(c)     taking action necessary to protect and preserve the Debtors' estates, including the prosecution of actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

(d)     preparing and prosecuting on behalf of the Debtors all motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(e)     advising and assisting the Debtors with the marketing and sale process for their assets and financing and transactional matters, as such may arise during the chapter 11 cases;

(f)     advising and assisting the Debtors with financing and transactional matters that may arise during these chapter 11 cases;

(g)     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documentation related thereto;

(h)     appearing in Court and protecting the interests of the Debtors before the Court;

(i)     advising the Debtors regarding tax matters; and

(j)     performing all other legal services for the Debtors that may be necessary and proper in these chapter 11 cases.

7.      Subject to the Court's approval, Paul, Weiss will charge the Debtors for its legal services on an hourly basis in accordance with its ordinary and customary rates for matters of this type in effect on the date such services are rendered and for reimbursement of its actual, necessary expenses and other charges incurred by the Firm.  Typically, in the normal course of business, Paul, Weiss revises its hourly rates annually, and most recently increased its hourly rates effective October 1, 2024.  The current standard hourly rates for Paul, Weiss's attorneys and paralegals range from $2,245 to $2,595 for partners, $1,995 for counsel, $705 to $1,695 for associates and

staff attorneys, and $175.00 to $560.00 for paraprofessionals.   These rates are subject to periodic adjustment to reflect economic and other conditions.  Paul, Weiss (a) provided an initial $250,000 credit to account for time spent by Paul, Weiss attorneys familiarizing themselves with the Debtors' agreements and history and (b) agreed to a flat fee of $400,000 for services rendered in the period from February 24, 2025, through March 2, 2025.  Otherwise, Paul, Weiss has not agreed to any other variations from the Firm's standard billing arrangements.  The following attorneys will have primary responsibility for representing the Debtors:

| Name | Year Admitted to the Bar | Current Hourly Rate |
|---|---|---|
| Paul M. Basta (Partner) | 1993 | $2,595 |
| Christopher Hopkins (Partner) | 2014 | $2,350 |
| Jessica I. Choi (Associate) | 2018 | $1,695 |
| Grace C. Hotz (Associate) | 2019 | $1,695 |
| Lauren Castillo (Associate) | 2023 | $1,470 |
| Justin Simms (Associate) | 2025 | $975 |
| Elizabeth Gonzalez (Law Clerk, Not Yet Admitted) | Not Yet Admitted | $975 |

Other Paul, Weiss lawyers will be consulted and may appear on behalf of the Debtors in these chapter 11 cases, as necessary.  None of the professionals included in this engagement vary their rate based on the geographic location of these chapter 11 cases.

8.      The hourly rates set forth above are the Firm's standard hourly rates for work of this nature.  Paul, Weiss practices in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

5

Paul, Weiss's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Additionally, it is the Firm's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case, subject to any modification to such policies that Paul, Weiss may be required to make to comply with the applicable general orders of this Court and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "Fee Guidelines"), sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any further order of the Court. The expenses charged to clients include, among other things, certain telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, charges for mailing supplies (including, without limitation, envelopes and labels) provided by the Firm to outside copying services for use in mass mailings, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses, approved by the client, such as secretarial and other overtime. The Firm will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients. The Firm believes that it is fairer to charge these expenses to the clients incurring them rather than to increase the hourly rates and spread the expenses among all clients.

9.      Paul, Weiss has advised the Debtors that it intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges, costs, and expenses incurred in these chapter 11 cases. No promises have been received by Paul, Weiss, or any member, counsel or associate of Paul, Weiss, as to payment or compensation

in connection with these chapter 11 cases other than in accordance with Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Fee Guidelines.  Further, Paul, Weiss has no agreement with any other entity to share compensation received by Paul, Weiss or any such entity.

10.     Per the terms of the Engagement Letter, the Debtors paid $750,000.00 to Paul, Weiss as an initial advance payment retainer.  The Debtors subsequently increased the retainer, resulting in Paul, Weiss receiving an aggregate retainer amount of $4,937,577.61, as more fully set forth below:

| | |
|---|---|
| (a) | $472,992.25 – Received January 30, 2025; |
| (b) | $489,504.92 – Received February 14, 2025; |
| (c) | $522,359.50 – Received February 21, 2025; |
| (d) | $443,249.95 – Received February 27, 2025; |
| (e) | $556,385.71 – Received March 5, 2025; |
| (f) | $485,337.02 – Received March 12, 2025; |
| (g) | $517,748.26 – Received March 19, 2025; and |
| (h) | $700,000.00 – Received March 20, 2025. |

11.     Other than as set forth herein, Paul, Weiss did not receive any other payments from the Debtors in connection with this matter during the 90 days immediately preceding the Petition Date.  To the extent Paul, Weiss continues to have outstanding prepetition fees and expenses in excess of the retainer balance, Paul, Weiss waives such excess fees and expenses.

12.     Paul, Weiss is willing to act on the Debtors' behalf at its normal and customary rates for matters of this type, together with reimbursement of all costs and expenses incurred by Paul, Weiss in connection with these chapter 11 cases and the Debtors have proposed to pay Paul, Weiss at such rates and to reimburse it for such costs and expenses in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and guidelines and orders of the Court.

7

### Paul, Weiss's Disinterestedness

13.    To confirm that Paul, Weiss did not have any conflicts or other relationships that might preclude its representation of the Debtors with respect to the matters upon which it is being employed, I caused Paul, Weiss attorneys under my supervision to conduct a review of potential connections and relationships between Paul, Weiss and parties in interest in these chapter 11 cases within the following categories (as provided to Paul, Weiss by the Debtors, and as set forth in **Schedule 1** attached hereto) (the "Potential Parties in Interest"):

    (a)    Bankruptcy Judges and Staff (Eastern District of Missouri);

    (b)    Bankruptcy Professionals (Retained);

    (c)    Banks, Lenders, UCC Lien Parties, and Administrative Agents;

    (d)    Counsel Representing Cyber Security Incident Claimants;

    (e)    Customers;

    (f)    Debtors;

    (g)    Directors and Officers;

    (h)    Insurers;

    (i)    Known Non-Debtor Affiliates;

    (j)    Landlords and Subtenants;

    (k)    Letter of Credit (Beneficiary);

    (l)    Letter of Credit (Issuer);

    (m)    Litigation Parties;

    (n)    Potential Buyer;

    (o)    Financial Advisor to Potential Buyer;

    (p)    Legal Counsel to Potential Buyer;

    (q)    Significant Equity Holders;

(r)     Taxing Authorities & Governmental and Regulatory Agencies;

(s)     Top 30 Creditors;[3]

(t)     U.S. Trustee Office;

(u)     Utilities; and

(v)     Vendors (Top 85% of Accounts Payable).

14.     Paul, Weiss has searched its electronic database for its connections to the Potential Parties in Interest.  The records upon which this investigation is based are maintained by Paul, Weiss in the ordinary course of business and are believed to be accurate.  To the extent that I become aware hereafter that any such records or other information contained herein is not accurate, I will promptly apprise the Court.

15.     Based upon a review of the foregoing information, neither I, Paul, Weiss, nor any member of, counsel to, or associate of Paul, Weiss represents any entity other than the Debtors in connection with these chapter 11 cases.  In addition, to the best of my knowledge after due inquiry, neither I, Paul, Weiss, nor any member of, counsel to, or associate of the Firm represents any party in interest in these chapter 11 cases in matters related to these chapter 11 cases.

16.     Paul, Weiss, and the partners, counsel, and associates of Paul, Weiss, presently represent, may have represented in the past, and may represent in the future, entities (or affiliates of entities) that are claimants of and/or interest holders in the Debtors, and/or are parties in interest in these chapter 11 cases, in matters unrelated to these chapter 11 cases.  To the best of my knowledge, all such parties are listed on **Schedule 2** attached hereto (the "Disclosure Schedule").[4]

---

[3]     The Debtors finalized the Top 30 Creditors list immediately prior to the Petition Date.  The proposed professionals have not yet completed full conflicts searches for each of the parties on such list, but will finalize such searches and make subsequent disclosures, if necessary, prior to the final hearing on the Application.

[4]     As referenced in the Disclosure Schedule, the term "current client" means an entity listed as a client in Paul, Weiss's conflicts search system where that matter is reported as open.  As referenced in the Disclosure Schedule, the term "former client" means any entity listed as a client in the Paul, Weiss conflicts search system where the

Based on my review of the Disclosure Schedule, to the best of my knowledge, Paul, Weiss does not hold or represent an interest adverse to the estates as a result of its representation of parties in interest in matters that are unrelated to these chapter 11 cases. Pursuant to section 327(c) of the Bankruptcy Code, Paul, Weiss is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in matters that are wholly unrelated to the Debtors or these chapter 11 cases. Except as specifically disclosed herein, Paul, Weiss has not represented, does not represent, and will not represent any entities listed on the Disclosure Schedule in matters directly related to the Debtors or these chapter 11 cases.

17.     The Disclosure Schedule identifies, among others, certain financial institutions and landlords that are creditors of the Debtors. Paul, Weiss is a general purpose law firm that provides a full range of corporate, litigation, real estate, tax, and bankruptcy services. Accordingly, Paul, Weiss acts as regular outside counsel in a variety of matters to its clients, which have included or may currently or in the future include such parties. As noted above, Paul, Weiss will not represent any such parties in any matter relating to the chapter 11 cases or in connection with the Debtors. As such, I do not believe that Paul, Weiss's current or prior representations of such entities or their affiliates preclude Paul, Weiss from being a disinterested party under the Bankruptcy Code.

18.     In particular, as disclosed is the Disclosure Schedule, Paul, Weiss represents, and in the past has represented (a) Amazon.com, Inc. and/or its affiliates (collectively, "Amazon") and (b) Google, Inc. and/or its affiliates (collectively, "Google") in a variety of matters unrelated to

---

matter is reported as closed. Whether an actual client relationship exists can only be determined by reference to the documents governing Paul, Weiss's representation rather than its potential listing in Paul, Weiss's conflicts search system. The list on **Schedule 2**, generated by the conflicts search system, is therefore over-inclusive for disclosure purposes.

the chapter 11 cases. During the period covering the last twelve months ending February 28, 2025, total fee receipts for matters in which Paul, Weiss represented Amazon and Google represented, in each case, more than one percent of Paul, Weiss's fee receipts for such period.

19.     However, as noted above, Paul, Weiss has not represented, does not represent, and Paul, Weiss will not represent Amazon, Google, or their respective affiliates in connection with any matters related to the Debtors or the chapter 11 cases. As such, I do not believe that Paul, Weiss's current or prior representation of Amazon, Google, or their respective affiliates preclude Paul, Weiss from being a disinterested party under the Bankruptcy Code.

20.     In addition, of the parties listed on the Disclosure Schedule, Paul, Weiss previously or currently represents GlaxoSmithKline LLC and/or its affiliates, a current customer, vendor, and equityholder of the Debtors. All prior and current Paul, Weiss representations of GlaxoSmithKline LLC and/or its affiliates have been in matters unrelated to the Debtors or these chapter 11 cases and will not represent any such parties in connection with any matter in these chapter 11 cases.

21.     To the best of my knowledge and insofar as I have been able to ascertain, except as set forth herein or on **Schedule 2** attached hereto, neither Paul, Weiss nor any of its partners, counsel, or associates has any connection with the Debtors or their affiliates, the Debtors' creditors, any party in interest, or their respective attorneys or accountants, any person employed in the Office of the United States Trustee for Region 13, any bankruptcy judges currently serving on the United States Bankruptcy Court for the Eastern District of Missouri, or any clerk, deputy, or personnel working in the Bankruptcy Court, except that to the extent any partner, counsel or associate may have (a) appeared in the past and may appear in the future in cases where one or more of such parties may be involved or (b) represented or may represent one or more of such parties in interest in matters unrelated to these chapter 11 cases.

11

22.     From time to time, Paul, Weiss partners, counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, and other types of investment vehicles (each an "Investment Fund" and together, the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors, often without Paul, Weiss' knowledge.  Each Paul, Weiss person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  The Investment Fund is generally operated as a blind pool, meaning that the Paul, Weiss persons do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales when making an investment in the Investment Fund.  Paul, Weiss therefore does not believe that any such investments present a conflict of interest.

23.     In light of the extensive number of the Debtors' creditors and parties in interest and because definitive lists of all such creditors and other parties have not yet been obtained, neither I nor the Firm are able to conclusively identify all potential relationships at this time, and we reserve the right to supplement this disclosure as, and to the extent, additional relationships come to our attention.  To the extent that I become aware of any additional relationships that may be relevant to Paul, Weiss's representation of the Debtors, I will promptly file a supplemental declaration.

24.     By separate application, the Debtors have asked or will ask the Court to approve the retention of (a) Carmody MacDonald P.C., as bankruptcy co-counsel to the Debtors, (b) Alvarez & Marsal North America, LLC, to provide a Chief Restructuring Officer and certain additional personnel to the Debtors, (c) Moelis & Company LLC, as investment banker to the Debtors, (d) Deloitte Tax LLP, as turnaround and restructuring tax advisor, (e) Kroll Restructuring

Administration LLC, as claims and noticing agent and administrative advisor, (f) Goodwin Procter LLP, as counsel to the Special Committee of the Board of Directors, and (g) Lewis Rice LLC, as co-counsel to the Special Committee of the Board of Directors (collectively, the "Chapter 11 Professionals").

25.     Paul, Weiss has been working with the Chapter 11 Professionals in connection with preparations for the filing of these chapter 11 cases, and may have in the past worked for or against the Chapter 11 Professionals in matters wholly unrelated to these chapter 11 cases.

26.     Based upon my review of all of Paul, Weiss's connections in these chapter 11 cases, I submit that Paul, Weiss is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that the Firm, its partners, counsel and associates:

> (a)     are not creditors, equity security holders, or insiders of the Debtors;
>
> (b)     are not and were not investment bankers for any outstanding security of the Debtors;
>
> (c)     have not been, within three years before the Petition Date, (i) investment bankers for a security of the Debtors or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and
>
> (d)     are not and were not, within two years before the Petition Date, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.[5]

27.     Except as set forth above, to the best of my knowledge and insofar as I have been able to ascertain, neither Paul, Weiss nor any of its partners, counsel, or associates holds or represents any interest adverse to the Debtors or their estates in the matters upon which it is to be engaged.

---

[5]     Out of an abundance of caution, Paul, Weiss hereby discloses that one of its first-year associate attorneys previously served as a legal extern to the Debtors from August 5, 2023, to November 1, 2023, while in law school. Paul, Weiss has established a screen between such attorney and the attorneys representing the Debtors, and such attorney will not participate in Paul, Weiss' representation of the Debtors.

**<u>Coordination with Other Professionals</u>**

28.     As described above, the Debtors have submitted, or intend to submit, separate applications to retain the Chapter 11 Professionals.  Paul, Weiss will work closely with all such professionals, in conjunction with the Debtors' management, to carefully monitor and coordinate the efforts of all such professionals and will delineate their respective duties so as to prevent duplication of services whenever possible.

**<u>Attorney Statement Pursuant to Fee Guidelines</u>**

29.     The following is provided in response to the request for additional information set forth in Paragraph D.1 of the Fee Guidelines.

**Question:**   **Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?**

Response:   Paul, Weiss (a) provided an initial $250,000 credit to account for time spent by Paul, Weiss attorneys familiarizing themselves with the Debtors' agreements and history and (b) agreed to a flat fee of $400,000 for services rendered in the period from February 24, 2025, through March 2, 2025.  Otherwise, Paul, Weiss has not agreed to any variations from the Firm's standard billing arrangements.

**Question:**   **Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?**

Response:   No.

**Question:**   **If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments or discounts offered during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.**

Response:   Paul, Weiss's rates for timekeepers for its prepetition engagement on this matter were, at all times (with the exception of the one-week flat fee arrangement discussed above), $2,245 to $2,595 for partners, $1,995 for counsel, $705 to $1,695 for associates and staff attorneys, and $175 to $560 for paraprofessionals.

**Question:**   **Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?**

14

Response:   Yes, from the Petition Date through September 23, 2025.  In accordance with the U.S. Trustee Guidelines, the budget may be amended as necessary to reflect changed or unanticipated developments.

30.     The foregoing constitutes the statement of Paul, Weiss pursuant to sections 327(a), 329, and 504 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b), and Local Rules 2014 and 2016.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: March 24, 2025

_/s/  Christopher Hopkins_
Name: Christopher Hopkins
Title:   Partner
Paul, Weiss, Rifkind, Wharton & Garrison LLP

16

## **Schedule 1**

**Potential Parties in Interest List**

## POTENTIAL PARTIES IN INTEREST[1]

1.  (FINANCIAL ADVISOR TO) POTENTIAL BUYER
    - JPMORGAN SECURITIES LLC
    - TD COWEN
2.  (LEGAL COUNSEL TO) POTENTIAL BUYER
    - ROPES & GRAY LLC
    - SKADDEN, ARPS, SLATE, MEAEGHER & FLOM LLP
3.  BANKRUPTCY JUDGES/STAFF
    - CATHERINE NORWOOD
    - CHICQUITA GREENE-HESTER
    - CHIEF JUDGE BONNIE L. CLAIR
    - COURTNEY KIRBIS
    - HAYLEY KOONTZ
    - JUDGE BRIAN C. WALSH
    - JUDGE KATHY A. SURRATT-STATES
    - KAILA SPIVEY
    - TAYLOR ROWLAND
4.  BANKRUPTCY PROFESSIONALS - RETAINED
    - ALVAREZ AND MARSAL NORTH AMERICA, LLC
    - CARMODY MACDONALD P.C.
    - DELOITTE TAX LLP
    - GOODWIN PROCTER LLP
    - KROLL RESTRUCTURING ADMINISTRATION LLC
    - LEWIS RICE LLC
    - MOELIS & COMPANY LLC
    - PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
5.  BANKS/LENDER/UCC LIEN PARTIES/ADMINISTRATIVE AGENTS
    - CARDINAL HEALTH 110 LLC, "AS AGENT"
    - JPMORGAN CHASE BANK N.A.
    - JPMORGAN CHASE BANK N.A. - TORONTO BRANCH
    - SMITH DRUG COMPANY-DIVISION OF JM SMITH CORP.
    - U.S. BANK EQUIPMENT FINANCE
    - U.S. BANK NATIONAL ASSOCIATION
6.  COUNSEL REPRESENTING CYBER SECURITY INCIDENT CLAIMANTS
    - ARON LAW FIRM
    - AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ PLLC
    - BARNOW & ASSOCIATES P.C.
    - BERMAN TOBACCO

---

[1]    This list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that otherwise may fall under multiple categories is likely to be listed under only one category.

- BONI, ZACK & SNYDER LLC
- BOTTINI & BOTTINI, INC.
- BRADLEY/GROMBACHER LLP
- CLARKSON LAW FIRM
- CLAYEO C. ARNOLD,  PROFESSIONAL LAW CORP.
- COLE & VAN NOTE
- COTCHETT PITRE & MCCARTHY LLP
- CUNEO GILBERT & LADUCA
- DU VERNET STEWART
- EDELSBERG LAW, P.A.
- EMPLOYEE JUSTICE LEGAL GROUP, PC
- FALLS LAW GROUP
- FEDERMAN & SHERWOOD
- FREED KANNER LONDON & MILLEN LLC
- GLANCY PRONGAY & MURRAY LLP
- GUSTAFSON GLUEK  PLLC
- HERMAN JONES LLP
- KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
- KAPLAN FOX & KILSHEIMER LLP
- KAZEROUNI LAW GROUP
- KLEINE PC
- KOPELITZ OSTROW FERGUSON WEISELBERG GILBERT
- KP LAW LTD. (UK)
- LABATON KELLER
- LAUKAITIS LAW LLC
- LAW OFFICE OF COURTNEY WEINER PLLC
- LAW OFFICES OF PAUL WHALEN, PC
- LEVI & KORSINSKY
- LEVIN SEDRAN & BERMAN LLP
- LEXINGTON LAW GROUP, LLP
- LIEFF CABRASER HEIMANN & BERNSTEIN AND ROBBINS GELLER
- LOCKRIDGE GRINDAL NAUEN P.L.L.P.
- LOFTUS & EISENBERG, LTD.
- LONGMAN LAW, P.C.
- LYNCH CARPENTER LLP
- MASON LLP
- MCSHANE & BRADY, LLC
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
- NEAL & HARWELL
- PIERCE GORE LAW FIRM
- POTTER HANDY LLP
- POULIN | WILLEY | ANASTOPOULO, LLC
- REESE LLP

3

- ROBBINS GELLER RUDMAN & DOWD, LLP
- SALTZ, MONGELUZZI & BENDESKY, PC
- SCHUBERT JONCKHEER & KOLBE LLP
- SCOTT+SCOTT ATTORNEYS AT LAW LLP
- SROURIAN LAW FIRM, P.C.
- THE GRANT LAW FIRM, PLLC
- THE MEHDI FIRM LLP
- TOSTRUD LAW GROUP PC
- TYCKO & ZAVAREEI
- TYCKO & ZAVAREEI, LLP
- WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
- WUCETICH & KOROVILAS LLP
- YANNI LAW
- ZINNS LAW, LLC

7. CUSTOMERS
- ABBVIE INC.
- AMAZON
- AMAZON : AMAZON CA
- AMAZON : AMAZON UK
- AMAZON : WOOT
- CARDINAL HEALTH, INC.
- COREWEAVE, INC.
- GLAXOSMITHKLINE & GLAXOSMITHKLINE LLC
- GSK
- MICHAEL J FOX FOUNDATION : MJFF PD
- MYHERITAGE
- SANOFI US SERVICES INC.
- WALMART.COM

8. DEBTORS
- 23 AND ME
- 23ANDME HOLDING CO.
- 23ANDME INC.
- 23ANDME PHARMACY HOLDINGS, INC.
- LEMONAID COMMUNITY PHARMACY
- LEMONAID HEALTH INC.
- LEMONAID PHARMACY HOLDINGS, INC.
- LPHARM CS LLC
- LPHARM INS LLC
- LPHARM RX LLC
- LPRXONE, LLC
- LPRXTHREE LLC
- LPRXTWO, LLC

9. DIRECTOR/OFFICER
- ANDRE FERNANDEZ

- AVI FACTOR
- ELAND SIDDLE
- GUY CHAYOUN
- JIM FRANKOLA
- JOE SELSAVAGE
- MARK JENSEN
- THOMAS WALPER

**10.** INSURANCE
- AIG FINANCIAL LINES CLAIMS
- ALLIED WORLD SPECIALTY INSURANCE COMPANY
- ARCH SPECIALTY INSURANCE COMPANY
- AXIS INSURANCE
- BEAZLEY USA SERVICES, INC
- BERKLEY LIFE SCIENCES
- BERKLEY PROFESSIONAL LIABILTY
- CHUBB GROUP
- CHUBB GROUP OF INSURANCE CO
- CNA CLAIMS REPORTING
- COMMERCIAL MANAGEMENT LIABILITY
- GREAT AMERICAN INSURANCE COMPANY
- HCC GLOBAL FINANCIAL PRODUCTS, LLC.
- HISCOX USA
- HUDSON INSURANCE COMPANY
- LLOYD'S AMERICA, INC.
- OLD REPUBLIC PROFESSIONAL LIABILITY, INC.
- RESILIENCE CYBER INSURANCE SOLUTIONS
- THE HARTFORD FINANCIAL LINES
- THE TRAVELERS COMPANIES, INC.
- TRIUM CYBER US SERVICES, INC.
- WOODRUFF SAWYER
- XL PROFESSIONAL INSURANCE

**11.** KNOWN AFFILIATES - JV
- LMND CA
- LMND KS
- LMND NJ
- LMND TX

**12.** LANDLORDS/ SUBTENANTS
- KR OP TECH, LLC
- OYSTER POINT TECH CENTER LLC, A DELEWARE LIMITED LIABILITY COMPANY

**13.** LETTER OF CREDIT- BENEFICIARY
- 221 N MATHILDA, LLC, A DELEWARE LIMITED LIABILITY COMPANY
- PAYPAL, INC.

**14.** LITIGATION

- ADRIANE FARMER
- ALEX VELARDE
- ALEXANDRA HOFFMAN
- ALMEIDA LAW GROUP LLC
- ALYSON HU
- ANDEZ JONES
- ANTOINETTE POWELL
- BONNIE EDEN
- BRANDON MOLINA
- BRIANA DUBE
- BRIANNA SORENSEN
- CAMIE PICHA
- CAROLINE GREENBERG
- CAROLYN ROCK
- CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP
- CHRISTINA SHAW
- CHRISTOPHER DU VERNET CARLIN MCGOOGAN DUVERNET STEWART, BARRISTERS AND SOLICITERS
- CLAIRE PADDY
- DAVID MELVIN
- DAVID TULCHINSKY
- DHAMAN GILL
- EDELSON PC
- ELAINE FRALIX
- ERIK STANFORD
- FALLS LAW GROUP
- HARIS MIRZA
- HAROLD GARRETT
- HAROLD VELEZ
- JOHN DIAZ
- JULIE MACMILLAN
- KATHY VASQUEZ
- KATIANNE NAVARRO
- KELLER ROHRBACK L.L.P.
- KERRY LAMONS
- KND COMPLEX LITIGATION
- KP LAW LIMITED
- KRISTEN RIVERS
- LABATON KELLER SUCHAROW LLP
- LAQUISHA SMITH
- LEENA YOUSEFI YLAW GROUP
- LEVI + KORSINSKY LLP
- LUIS VALLADARES
- MARJORIE MORGENSTERN

- MATTHEW A. SMITH
- MATTHEW MARDEN
- MAX ALPERSTEIN
- MCGUIRE LAW, P.C.
- MELANIE BERMAN
- MELISSA RYAN
- MICHAEL SCHUTZ
- MICHELE BACUS
- MICHELLE ANDRIZZI
- MICHELLE IGOE
- MIGLIACCIO & RATHOD LLP
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLC
- MONICA SANTANA
- NEIL BENEDICT
- NICHOLAS FURIA
- NICHOLE FRIEND
- PATRICK CAPSTICK
- POLINA IOFFE
- POTTER HANDY, LLP
- RICHARD ROE
- RUDY K. THOMPSON
- SARAH CANTU
- STEPHEN L. SEIKEL
- STEVE SIEGEL HANSON LLP
- THOMAS VICKERY
- TRACY SCOTT
- TRISHA WILKUS
- TYRELL BROWN

**15.** POTENTIAL BUYER
- NEW MOUNTAIN CAPITAL, LLC

**16.** REGULATORS
- AGENCIA ESPAÑOLA DE PROTECCIÓN DE DATOS
- BUREAU OF CONSUMER PROTECTION
- FEDERAL TRADE COMMISSION
- OFFICE OF ATTORNEY GENERAL TODD ROKITA
- OFFICE OF THE ATTORNEY GENERAL - CONNECTICUT
- OFFICE OF THE PRIVACY COMMISSIONER OF CANADA
- UNITED KINGDOM INFORMATION COMMISSIONER'S OFFICE

**17.** SIGNIFICANT EQUITY HOLDERS
- ABEEC 2.0, LLC
- ANNE WOJCICKI
- ZENTREE INVESTMENTS LIMITED

**18.** U.S. TRUSTEE OFFICE
- PAUL RANDOLPH

**19.** VENDORS (TOP 85% OF ACCOUNTS PAYABLE)

- ACCO ENGINEERED SYSTEMS
- AGANITHA AI INC.
- ALIXPARTNERS, LLC
- ALLIED UNIVERSAL SECURITY SERVICES
- ALOM TECHNOLOGIES CORPORATION
- AMAZON WEB SERVICES
- ANDRE JOHN FERNANDEZ
- BDO USA LLP
- BLUE SHIELD OF CALIFORNIA
- BRAINTREE
- CATALENT CTS SINGAPORE PRIVATE LIMITED
- CDW DIRECT LLC
- CLOUDFLARE, INC.
- COALITION FOR GENETIC DATA PROTECTION INC.
- CONSULTING, JW LLC
- CONVERGE TECHNOLOGY SOLUTIONS US, LLC
- DECHERT LLP
- DELOITTE & TOUCHE LLP
- DELOITTE CONSULTING LLP
- DELTA DENTAL OF CALIFORNIA
- DNA GENOTEK INC.
- EGON ZEHNDER INTERNATIONAL, INC
- FEDEX CORP
- FOLK DEVILS LLC
- FOODA, INC.
- FULGENT THERAPEUTICS, LLC
- GLAXOSMITHKLINE INTELLECTUAL PROPERTY LTD.
- GOODWIN PROCTER LLP
- GOOGLE, INC. - ADWORDS
- GREENBERG TRAURIG LLP
- HEALTHLINE MEDIA INC
- IHEARTMEDIA + ENTERTAINMENT
- ILLUMINA, INC.
- INTEGRAL RX
- JELLYFISH US LIMITED
- KAISER FOUNDATION HEALTH PLAN NORTHERN CA
- KATIE COURIC MEDIA, LLC
- KILROY REALTY, LP
- KPMG LLP
- L.E.K. CONSULTING LLC
- LIFEBIT BIOTECH LIMITED
- MARK E. JENSEN
- MEDPACE INC.

- META PLATFORMS, INC.
- METROPOLITAN LIFE INSURANCE COMPANY
- MOELIS & COMPANY, LLC
- MORGAN, LEWIS & BOCKIUS LLP
- MOVIANTO
- NATIONAL GENETICS INSTITUTE
- PACIFIC GAS AND ELECTRIC COMPANY
- PARTNERIZE
- PETER M LEFKOWITZ
- POWER DIGITAL MARKETING, INC.
- PRECISION FOR MEDICINE, INC.
- PRITI PATEL CONSULTING LLC
- RAIN THE GROWTH AGENCY
- RIGHT SIDE UP LLC
- SALESFORCE.COM
- SANTA CLARA COUNTY TAX COLLECTOR
- SCALE STRATEGY OPERATIONS LLC
- SCG GROVE 221, LLC
- STEADYMD, INC.
- SUREFOX NORTH AMERICAN
- TANGO CARD, INC.
- TATARI, INC.
- TCWGLOBAL (WMBE PAYROLLING INC.)
- TELUS INTERNATIONAL SERVICES LIMITED
- UNUM LIFE INSURANCE COMPANY OF AMERICA
- VENTANA MEDICAL SYSTEMS, INC.
- WILSON SONSINI GOODRICH & ROSATI, PROFESSIONAL CORPORATION
- WOODRUFF-SAWYER & CO.
- WOOT SERVICES LLC
- WORLD ARCHIVES
- WUXI BIOLOGICS (HONG KONG) LIMITED
- ZENDESK, INC

## <u>Schedule 2</u>

**Disclosure Schedule**

| MATCHED ENTITY | RELATIONSHIP TO DEBTORS | RELATIONSHIP TO PAUL, WEISS[1] |
|---|---|---|
| 23andMe[2] | Debtor | Current Client |
| ABBVIE INC. | Customer | Current Client |
| AIG Financial Lines Claims | Insurance | Subsidiary or Affiliate of a Current Client |
| Allied Universal Security Services | Vendor | Current Client |
| Alvarez and Marsal North America, LLC | Bankruptcy Professional – Retained | Subsidiary or Affiliate of a Current Client |
| Amazon | Customer | Current Client |
| Amazon Web Services | Vendor | Current Client |
| Amazon: Amazon UK | Customer | Subsidiary or Affiliate of a Current Client |
| Amazon: CA | Customer | Current Client |
| Amazon: Woot | Customer | Subsidiary or Affiliate of a Current Client |
| AT&T | Utility | Current Client |
| Braintree | Vendor | Subsidiary or Affiliate of a Current Client |
| Catalent CTS Singapore Private Limited | Vendor | Subsidiary or Affiliate of a Former Client |
| Chubb Group | Insurance | Former Client |
| Chubb Group of Insurance | Insurance | Former Client |
| CNA Claims Reporting | Insurance | Subsidiary or Affiliate of a Current Client |
| Converge Technology Solutions US, LLC | Vendor | Subsidiary or Affiliate of a Current Client |
| DC Office of Tax and Rev. | Taxing Authority/Governmental/Regulatory Agency | Subsidiary or Affiliate of a Current Client |

---

[1]   The term "Current Client" means an entity listed as a client, or related to a client, in Paul, Weiss's conflicts search system where that matter is reported as open. The term "Former Client" means any entity listed as a client, or related to a client, in the Paul, Weiss conflicts search system where the matter is reported as closed within the last three (3) years. Whether an actual client relationship exists can only be determined by reference to the documents governing Paul, Weiss's representation rather than its potential listing in Paul, Weiss's conflicts search system. The following table of entities, generated by the conflicts search system, is overinclusive for disclosure purposes.

[2]   Any Debtors, non-Debtor Affiliates, and Significant Equity Holders enumerated in the Parties in Interest List are not included in this Disclosure Schedule since they are not a client or former client of Paul, Weiss. However, each may be characterized as Subsidiaries or Affiliates of a Current Client, 23andMe, Holding Co.

| Deloitte & Touche LLP | Vendor | Former Client |
|---|---|---|
| Deloitte Consulting LLP | Vendor | Subsidiary or Affiliate of a Former Client |
| Deloitte Tax LLP | Bankruptcy Professional – Retained | Subsidiary or Affiliate of a Former Client |
| Glaxosmithkline Intellectual Property Ltd. | Vendor | Subsidiary or Affiliate of a Current Client |
| Glaxosmithkline LLC | Significant Equity Holder; Customer | Current Client |
| Google, Inc. – Adwords | Vendor | Subsidiary or Affiliate of a Current Client |
| GSK | Customer | Current Client |
| JP Morgan Chase | Bank/Lender/UCC Lien Party/Administrative Agent; Letter of Credit - Issuer | Current Client |
| JP Morgan Chase – Toronto Branch | Bank/Lender/UCC Lien Party/Administrative Agent | Current Client |
| JPMorgan Securities LLC | Financial Advisor to Potential Buyer | Current Client |
| Kaiser Foundation Health Plan Northern CA | Vendor | Subsidiary or Affiliate of a Current Client |
| Kate Couric Media. LLC | Vendor | Subsidiary or Affiliate of a Current Client |
| Kroll Restructuring Administration LLC | Bankruptcy Professional - Retained | Former Client |
| Meta Platforms, Inc. | Vendor | Current Client |
| Moelis & Company, LLC | Bankruptcy Professional – Retained; Vendor | Current Client |
| New Mountain Capital, LLC | Potential Buyer | Current Client |
| New York State Department of Health | Taxing Authority/Governmental/Regulatory Agency | Subsidiary or Affiliate of a Current Client |
| New York State Education Department | Taxing Authority/Governmental/Regulatory Agency | Subsidiary or Affiliate of a Current Client |
| NYS Dept of Taxation & Finance | Taxing Authority/Governmental/Regulatory Agency | Subsidiary or Affiliate of a Current Client |

| OK State Department of Health Consumer Health Service | Taxing Authority/Governmental/Regulatory Agency | Subsidiary or Affiliate of a Former Client |
|---|---|---|
| Oklahoma State Dept. of Health | Taxing Authority/Governmental/Regulatory Agency | Subsidiary or Affiliate of a Former Client |
| Oklahoma Tax Commission | Taxing Authority/Governmental/Regulatory Agency | Current Client |
| PayPal | Letter of Credit – Beneficiary | Current Client |
| Republic Services | Utility | Former Client |
| Salesforce.com | Vendor | Subsidiary or Affiliate of a Current Client |
| Sanofi US Services | Customer | Subsidiary or Affiliate of a Current Client |
| Spire Marketing | Utility | Subsidiary or Affiliate of a Former Client |
| Tango Card, Inc. | Vendor | Subsidiary or Affiliate of a Current Client |
| TD Cowen | Financial Advisor to Potential Buyer | Subsidiary or Affiliate of a Current Client |
| Telus International Services Limited | Vendor | Subsidiary or Affiliate of a Current Client |
| Ventana Medical Systems, Inc. | Vendor | Subsidiary or Affiliate of a Current Client |
| Walmart.com | Customer | Subsidiary or Affiliate of a Current Client |
| Woot Services LLC | Vendor | Subsidiary or Affiliate of a Current Client |
| XL Professional Insurance | Insurance | Subsidiary or Affiliate of a Former Client |
| Zayo Group LLC | Utility | Subsidiary or Affiliate of a Current Client |

**<u>Exhibit B</u>**

**Chayoun Declaration**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF GUY CHAYOUN IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING**
**THE RETENTION AND EMPLOYMENT OF PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP AS ATTORNEYS FOR THE DEBTORS EFFECTIVE AS OF THE**
**PETITION DATE**

I, Guy Chayoun, do hereby declare, under penalty of perjury, that:

1.      I serve as the Vice President, Interim General Counsel, and Corporate Secretary of 23andMe Holding Co.

2.      I submit this declaration (the "Declaration") in support of the *Debtors' Application for Entry of Interim and Final Orders Authorizing the Retention and Employment of Paul, Weiss, Rifkind, Wharton & Garrison LLP as Attorneys for the Debtors and Debtors in Possession Effective as of the Petition Date* (the "Application").[2]  This Declaration is provided pursuant to Paragraph D.2 of the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in*

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]     Capitalized terms used herein, but not otherwise define, have the meaning ascribed to them in the Application.

*Larger Chapter 11 Cases*, effective November 1, 2013 (the "Fee Guidelines").   Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein.

## Selection of Paul, Weiss

3.      The Debtors recognize that a review and assessment process is necessary when selecting and managing chapter 11 counsel to ensure their bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.  To that end, the Debtors assessed potential counsel based on their experience and expertise in the relevant legal issues and in similar proceedings, and considering multiple firms to serve as potential counsel for the Debtors in the chapter 11 cases.

4.      The Debtors ultimately retained Paul, Weiss for the role of lead restructuring counsel in light of, among other reasons, Paul, Weiss's extensive experience representing debtors and creditors in chapter 11 and out-of-court restructurings.  In the period leading up to the Petition Date, Paul, Weiss has become intimately familiar with the Debtors' capital structure and operations, as well as with the key creditors and other stakeholders in these chapter 11 cases. Therefore, I believe that Paul, Weiss is well-qualified and well-situated to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## Rate Structure and Cost Supervision

5.      In connection with the filing of these chapter 11 cases, the Debtors and Paul, Weiss have agreed upon rates in accordance with Paul, Weiss's customary rates.  Paul, Weiss has confirmed to the Debtors that the Firm does not vary its billing rates or the material terms of an engagement depending on whether such engagement is a bankruptcy or a non-bankruptcy engagement.  Paul, Weiss has further advised the Debtors that its current customary U.S. hourly rates are $2,245 to $2,595 per hour for partners; $1,995 per hour for counsel; $705 to $1,695 per

hour for staff attorneys and associates; and $175 to $560 per hour for paraprofessionals.  It is my understanding that Paul, Weiss typically reviews and adjusts its billing rates annually to ensure that its rates are comparable to the billing rates of its peer firms.  To the extent that there is any disparity in such rates, however, I nevertheless believe that Paul, Weiss's retention by the Debtors is warranted in these chapter 11 cases.

6.      The Debtors understand that Paul, Weiss's fees and expenses will be subject to periodic review on a monthly, interim, and final basis during the pendency of these chapter 11 cases by various third parties, including the Court, and that such fees and expenses will be subject to the terms of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of this Court governing the procedures for approval of compensation of professionals retained in these chapter 11 cases, as applicable.

7.      I recognize that it is the Debtors' responsibility to closely monitor the billing practices of their counsel to ensure the fees and expenses paid by the estates remain consistent with the Debtors' expectations and the exigencies of these chapter 11 cases.  The Debtors will continue to review the statements that Paul, Weiss regularly submits and amend the budget and staffing plans periodically, as the chapter 11 cases develop.  Moreover, Paul, Weiss has informed me that the Debtors will be provided with the opportunity to review all invoices and request adjustments to such invoices to the extent that the Debtors determine that such adjustments are necessary and appropriate, and that such requests will be carefully considered by Paul, Weiss.  As they did prepetition, the Debtors will continue to diligently review counsel fees and expenses and, together with Paul, Weiss, amend such invoices as necessary.

8.      For the reasons set forth above, the Debtors believe that Paul, Weiss's employment is necessary and in the best interests of the Debtors and their estates.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated: March 24, 2025

/s/ Guy Chayoun
Name: Guy Chayoun
Title:   Vice President, Interim General Counsel,
         Corporate Secretary
         23andMe Holding Co.

**<u>Exhibit C</u>**

**Engagement Letter**

P A U L ,   W E I S S ,   R I F K I N D ,   W H A R T O N   &   G A R R I S O N   LLP

| | |
|---|---|
| 1285 AVENUE OF THE AMERICAS<br>NEW YORK, NEW YORK 10019-6064<br><br>TELEPHONE (212) 373-3000 | BEIJING<br>BRUSSELS<br>HONG KONG<br>LONDON<br>LOS ANGELES |

SAN FRANCISCO
TOKYO
TORONTO
WASHINGTON, DC
WILMINGTON

DIRECT DIAL: (212) 373-3334
EMAIL: CHOPKINS@PAULWEISS.COM

January 10, 2025

23andMe Holding Co.
223 North Mathilda Avenue
Sunnyvale, California  94086

<u>Attention</u>:  Guy Chayoun, Esq.
        Vice President, Interim General Counsel and Corporate Secretary

Re:  Engagement as Counsel

Dear Guy:

        I am pleased and grateful that 23andMe Holding Co. ("you," "Client," or "Company") has retained this firm as its counsel to assist the Company with assessing, and potentially implementing, strategic alternatives.  We are very excited at the opportunity to work with you and your colleagues on this matter.

        I write to confirm our acceptance of your engagement of us as counsel and to provide you with certain information concerning our practices and policies on fees, billing, collection, conflicts, and other material terms of our engagement.  The rules governing our professional obligations require that we establish at the outset a common understanding about the terms and conditions of our employment.  We began work on the matter, and our engagement is effective, as of December 19, 2024.  Our agreement to represent the Company in connection with this engagement is contingent upon the Company's payment to us of an advance payment retainer in the amount of $750,000.  The Company will pay all of our fees and costs for all of the representations referenced in this letter.  As discussed with you, we will apply a one-time credit of $250,000 against our fees and expenses incurred on this matter in connection with our onboarding and initial assessment of the Company's situation.

        Notwithstanding the second paragraph of Section 14 below, we agree not to reference you in any marketing materials without your prior consent.

Doc#: US1:24515369v1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

2

## TERMS OF ENGAGEMENT

The following terms and conditions apply to our engagement as your counsel:

**1.    Scope of Representation and Client Relationship  —**  We agree to provide you with legal services, as requested by you from time to time, which in our professional judgment are reasonably necessary and appropriate in connection with the matter described above.  At this time, our engagement is limited to the matter described above, though we would be pleased to consider representing you in such other matters as you may request.  The terms and conditions of our engagement in any such other matter will be those set forth in this letter unless we otherwise mutually agree in writing.  In all matters in which we represent you, we will provide services of a strictly legal nature, and it is understood that you will not be relying on us for business, investment, or accounting advice, nor to assess or vouch for the creditworthiness of any third person.

Unless we otherwise agree or our representation of you otherwise requires, our engagement is solely with the individuals or entities specifically identified as clients in this letter. By entering into this agreement, we are not agreeing to represent any other individuals or entities not named as clients herein, including any parent company, subsidiary, affiliated corporations or businesses, or any of your shareholders, members, general or limited partners, individual officers, directors, employees or agents.

If you are acquired or otherwise subjected to a change in control after execution of this agreement, we will not be deemed to represent the acquiror, other controlling affiliate, or affiliates thereof, unless contemplated hereby, or unless we separately agree in writing or are required by law to do so.

The question of whether our fees are covered by some third-party agreement (including an insurance policy) is not within the scope of our representation, unless you specifically request us to consider that question.

**2.    Retainer  —**  Our agreement to represent the Company in connection with this engagement is contingent upon the Company's payment to us of an advance payment retainer in the amount described above.  In addition, the Company agrees to provide one or more additional advance payment retainers as necessary, so as to ensure that the amount of any advance payment retainers remain at or above our estimated fees and expenses.  We may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred.  The Company understands and acknowledges that any advance payment retainers are earned by us upon receipt, any advance payment retainers become our property upon receipt, the Company no longer has a property or any other interest in any advance payment retainers upon our receipt, any advance payment retainers will be placed in our general account and will not be held in a client trust, escrow or similar account, and the Company will not earn any interest on any advance payment retainers.  The purpose of the advance payment retainer is to ensure that we do not become a creditor of the Company and will not be

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

3

disqualified from representing the Company in any liquidation, reorganization or similar proceeding, including in any case under Title 11 of the United States Code.  The advance payment retainer is not a security deposit or security retainer.  Notwithstanding payment of the advance payment retainers, the Company shall remain liable to us for all amounts owed to us pursuant to the terms of this engagement letter.  At the conclusion of this engagement, if the amount of any advance payment retainers held by us are in excess of the amount of our outstanding and estimated fees, expenses and costs, we will pay to the Company an amount equal to the amount by which any advance payment retainers exceed such fees, expenses and costs.

3.      **Fees for Legal Services** — Our fees for legal services are based on our assessment of the reasonable value of our services.  To assist us in determining that value, we assign hourly rates to each of our lawyers and legal assistants, and require each to maintain a record of the time spent and the services rendered on a particular matter.  Time is recorded in tenths of an hour, which is the minimum we charge for any service.  Our hourly rates, which are based on seniority, currently range from $2,245 to $2,595 per hour for partners; $1,995 per hour for counsel; $705 to $1,695 per hour for staff attorneys and associates; and $175 to $560 per hour for legal assistants.  From time to time, we reassess these rates to account for increases in our costs, augmentation of the experience and ability of our legal personnel and other factors, and thus our current rates may change (and be thereafter applied to all unbilled time) during our representation of you.  In addition to hourly rates, we may also take account of the types of services involved; the size, scope, complexity, and time limitations of the matter; the results obtained; and other relevant circumstances, including any factors that you may wish to call to our attention. We are prepared, consistent with these principles, to adapt our valuation of services in advance of undertaking the representation to address any special needs you may raise with us.

For purposes of negotiating and finalizing our fee arrangements, you agree that we are acting on our own behalf in arm's-length discussions with you.  During these discussions, and for purposes of this engagement, we are not acting as your lawyer or fiduciary representative.  You have the right to consult with other counsel before executing this agreement.

4.      **Disbursements & Other Charges** — We are committed to serving you with the most effective and cost-efficient support systems reasonably required as an incident to our legal services, and to this end we allocate charges for such systems in accordance with the extent of usage by individual clients, which are billed in addition to our fee for legal services.  We provide certain services (or incur costs) in-house for which we charge an amount calculated in an effort fairly to reflect the equipment, personnel and overhead costs to us of providing the services to you.  We obtain other services (or incur other costs) from outside vendors or suppliers for which we charge only the amount billed to us by the vendor or supplier. We may forward the invoices from these outside sources directly to you, in which event you will be responsible to pay the invoices in accordance with their terms.  Otherwise, our statements will separately bill you for these disbursements and other charges.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

4

In the event we are required during or after our representation to respond to a subpoena or other formal request from a third party relating to services we have performed for you, you agree to reimburse us for our time and expense incurred in responding to such request.

5.      **Billing** — We want our clients to be satisfied with both the quality of our services and the reasonablness of our bills, and we earnestly invite you to discuss with us any questions or comments you may have about any of our fees and charges or the format of our bills. Our practice is to bill on a monthly basis for the fees, disbursements, and related charges incurred in the preceding month, except that, in certain transactions, we may mutually agree that some or all of the billing will be done on some other basis. While we make every effort to include all disbursements in the statements for the period in which they were incurred, some costs (especially telephone or outside vendor expenses) are not available at the time of billing and must therefore be included in a later statement. Our statements are due and owing upon receipt, and payment in full is due within 30 days of receipt or, in transactions involving a closing, at such closing. Interest may become payable on any bills outstanding for more than thirty (30) days. In the event that some or all of our fees might be subject to payment by some third party (e.g., an insurance company), we regard our client as responsible for the payment of our fees and, absent a specific agreement to the contrary, we will not look to the third party for payment. We first apply all payments we receive from you to our oldest outstanding statement.

6.      **Managing Costs** — We are sensitive to the need to manage and, when possible, to predict legal costs. We are happy to work with you to estimate our likely fees and expenses in connection with our services. You understand, however, that any estimate of projected fees is necessarily only an inexact approximation based on assumptions that may prove unfounded in the unique circumstances of each matter, and that such estimates are not intended as either a maximum or a minimum fee for our legal services.

7.      **Outside Experts and Consultants** — In the course of our representation it may be appropriate, with your advance approval, to retain persons of special training or expertise to assist in the rendition of legal services (e.g., accountants, economists, investigators). Owing to privileges that may apply to services that an attorney requests from a third party, it will often be advisable for this firm to assume responsibility for hiring such experts. Notwithstanding that the contractual relationship may be with this firm, however, you agree that you will bear the responsibility directly to pay the invoices for the fees and expenses incurred by these persons.

When working with your other legal, financial and accounting advisors on this matter, the scope of our responsibilities will be limited to those matters that you and we agree are appropriate, and such other advisors will be engaged by you and not by us unless contemplated hereby or separately agreed in writing. To avoid the risk of any misunderstandings in respect of the scope of our responsibilities, it is important that you provide us with clear and timely instructions. Similarly, if at any time you are unsure of whether we or one of your other advisors is focusing on a particular issue or concern, please contact us immediately to clarify our respective roles and responsibilities.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

5

      **8.**    **Confidentiality** — For our relationship to succeed, it is essential for the Client to provide us with all factual information reasonably relevant and material to the subject matter of our representation.  We regard the lawyer's duty to preserve the confidences and secrets of a client with the utmost seriousness.  In instances in which we represent a corporation, partnership, or other legal entity, our attorney-client relationship is with, and this duty of confidentiality is owed only to, the entity, and not to the entity's parent or subsidiary corporations nor its shareholders, officers, directors, founders, managers, employees or partners, unless you instruct us or our representation of you requires otherwise.  As a result, the confidences and secrets we obtain in the course of such representations belong to and may be waived by the organization we represent, and not by the employees, officers, or directors of the organization.  Of course, in the absence of a conflict, we are free to represent these other persons, but should not be deemed to do so without our express agreement to that effect.

      **9.**    **Conflicts of Interest** — We wish to avoid any circumstance in which you would regard our representation of another client to be inconsistent with our duties to and understandings with you.  Unless we have told you otherwise, we do not now represent another client in the specific matter in which you have retained us.

      Because we represent many clients, including clients in your industry or related industries, in a wide variety of matters around the world, it is possible that, while we represent you in this matter, we will be asked to represent clients in other matters in which the interests of such other clients are adverse to your interests or which relate to the same or similar matters you are pursuing and for which we may need your informed consent under the rules of professional conduct for lawyers. Those other matters can include, for example, negotiations, mergers, acquisitions, financings, work-outs, bankruptcy proceedings, litigation and other dispute resolution matters, and administrative or regulatory proceedings.

      Subject to the other terms of this section 9, we agree that we will not undertake any such representation without your consent if (1) the subject of that representation is substantially related to the specific matter(s) in which we then represent you or (2) the other representation is a litigation matter, unless the litigation matter is in the context of a restructuring.[1]  If such representation is not substantially related to the specific matter(s) in which we then represent you and is not a litigation matter as set forth above, however, then you hereby agree that we will be free to undertake such representation, provided that the other client

---

[1]    As used herein, "restructuring" means matters: (i) arising in, arising under, or relating to the Bankruptcy Code (or analogous state or foreign statute); (ii) concerning a financing, refinancing, recapitalization, restructuring, or out-of-court workout of equity or debt or any merger, sale, acquisition, or other transaction in connection with any of the foregoing; (iii) involving companies potentially in financial distress; and (iv) litigation related to any of the foregoing.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

6

has consented to our continued representation of you (including by having entered into a letter agreement with us similar to this letter agreement).

Your consent means that this firm could represent another client adverse to you in another matter, such as a transaction or restructuring matter, so long as that matter is not substantially related to the matter(s) in which we then represent you.  Your consent also means that the firm could represent, in a separate matter not involving you, another client whom you may be adverse to in the matter(s) in which we represent you.

You further agree that we may represent another client in a matter that is substantially related to a matter in which we formerly represented you and in which your interests are adverse to the interests of the other client, even if we continue to represent you in unrelated matters, provided that:  (1) the lawyers who formerly represented you in the prior substantially related matter do not represent the other client in such matter and (2) the lawyers who do represent the other client in such matter are unable to access confidential information from the prior matter in which we represented you.

Your agreement regarding potential conflicts as set forth herein represents your acknowledgement that such representations are foreseeable to you and effects a waiver of your right, if any, to object to our representation in matters that are not then substantially related to our representation of you or to move to disqualify us or to claim that our representation otherwise breaches any obligation we owe to you in such matters.  While there may be potential risks to you inherent in such adverse representations, we will only take on such representations if we determine that we can continue to satisfy our professional obligations to you, including by appropriately safeguarding your confidential information in the course of such representations, and providing you with competent and diligent representation in the matters in which we represent you.

Because we represent a number of venture capital, leveraged buy-out and other private equity, mezzanine and hedge fund investors, as well as other potential acquirers and financing sources, from time to time more than one of our clients participate as bidders, buyers or financing sources in an auction or other opportunity to buy or invest in the assets or securities of a third party, provide financing or other competitive transaction (a "Transaction").  In such case, we establish appropriate screening procedures to ensure that there is no disclosure of confidential information concerning the Transaction from the team of lawyers representing one client to the separate team of lawyers representing another client, or to such other client (other than the fact that we are or may be representing one or more other potential acquirers).  You hereby agree that, in the event that you seek representation by us in such a Transaction, you waive prospectively any conflict of interest or other objection that would preclude our representation of another client or other clients in the same Transaction, so long as we establish appropriate screening procedures to prevent disclosure of confidential information concerning our representation of you, and assign a separate team of lawyers to assist you.  In such circumstances, we will not (i) disclose to you the identities of any other such client (except with the consent of such client), (ii) advise any other such client of your identity as a competing

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

bidder in such Transaction (except with your consent), or (iii) be obligated to advise you that we have undertaken representation of any such other client. For the avoidance of doubt, we confirm that we shall not represent any such other client in any litigation, arbitration or other dispute resolution procedure adverse to you that may arise out of such Transaction.

Moreover, in the course of representing you, and in order fully to satisfy our professional obligations, we may from time to time need to consult with lawyers, including lawyers in this firm, responsible for advising the firm on legal and ethical issues, including issues that may implicate your interests. You acknowledge and agree that the firm is free to consult with its own counsel, including internal counsel, on such matters without your consent and that such consultations are privileged and confidential to us. You specifically waive any conflict of interest based on such consultations.

We also inform you that certain entities owned by some of our current or former lawyers and senior staff have investments in funds or companies that may, directly or indirectly, be affiliated with you, hold investments in your debt or equity securities, be adverse to you, or conduct commercial transactions with you. These investment entities are passive and have no management or control rights in such funds or companies. Please let us know if you have any questions or concerns regarding our passive holdings.

You have considered the pros and cons of waiving conflicts of interests and recognize the inherent uncertainty about the array of potential matters and clients we might take on, but nonetheless have decided that, to secure our services instead of another firm's, it is in your interest to waive conflicts of interest as described above. Since we understand that you are experienced in retaining legal services, we are relying upon your agreement to the foregoing in undertaking this representation. We urge you to ask us any questions concerning this consent and encourage you to seek advice from independent legal advisors before we undertake to represent you.

**10.    Termination** — We hope and trust that our relationship with you will be a long and fruitful one. Nevertheless, you are free to terminate our representation of you at any time by written notice unless judicial approval is required for us to withdraw, in which event we agree not to oppose such withdrawal. Subject always to the applicable rules of professional conduct and any applicable rule of court, we may terminate this agreement at any time, including if you deliberately disregard the terms of this agreement, such as by failing to pay statements when due, or if, in our professional judgment, we are unable to continue the representation consistent with our ethical obligations. Notwithstanding any such termination, you remain liable to pay all fees and charges incurred up to the date of termination. Upon completion of the matter to which this engagement letter applies, or the earlier termination of the representation, our attorney-client relationship will end unless we agree to continue the representation on other matters. Subject to any applicable rules of court and/or rules of professional conduct, we have sole discretion to determine when our work on a matter is completed and thus the representation is terminated. Once a matter is completed, we shall have no continuing obligation to advise you

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

8

on any matter unless we otherwise agree in writing.  Once a matter is completed, unless we are doing other work for you, you will become a former client for purposes of the conflicts rules.

      **11.**    **Data Protection** — In providing legal services to you and in conducting our business, we may receive from you, store, and use information and documents which consist of or contain "personal data" or "special category personal data" about you and/or your shareholders, officers, directors, founders, managers, employees, partners, clients, business associates or others.  Such information or similar information that is defined as "personal information," "sensitive personal information," or "sensitive data" under applicable data privacy or data protection laws, including, but not limited to, the UK Data Protection Act of 2018, Regulation (EU) 2016/679 (the "GDPR") and the California Consumer Privacy Act ("CCPA") may be protected under such laws.  We may process personal data in order (i) to carry out work for you, (ii) to share data with third parties, including other professional advisors, in connection with our work for you, and (iii) to comply with applicable laws and regulations.

      We will process personal data in line with our privacy notice (which can be found at www.paulweiss.com/notices/privacy-policy).  If you provide us with personal data, you warrant that you have obtained all necessary consents or otherwise determined that you have a lawful basis to transfer the data under the UK Data Protection Act of 2018, the CCPA, the GDPR and other applicable data privacy laws.  Where relevant under applicable law, Paul, Weiss and you shall be separate data controllers or businesses, except in specific circumstances where Paul, Weiss receives relevant instructions from you and acts as a processor or service provider.  Where Paul, Weiss is to receive any personal data outside of the European Economic Area under this engagement letter, and applicable law requires, the parties will execute any necessary agreements (including, where necessary, the EU Standard Contractual Clauses or UK International Data Transfer Agreement).

      **12.**    **Information Management and Email Encryption** — We will maintain and manage all information and documents related to our representation of you in our offices, on our computing devices and systems, and/or using third-party service providers.  We evaluate such third-party service providers, including "cloud" services, to ensure appropriate service agreements and technical and organizational controls are in place to help protect the confidentiality, integrity, availability, and security of such information.  To the extent that you require we use any other external system for communication or for storage, management, or transfer of information, you bear the responsibility for conducting such evaluations.

      While our email systems are configured to attempt encryption, additional setup is often required to ensure automated enforced encryption between our email systems. At your request we can work with you to configure the systems accordingly.

      **13.**    **Records Management and Retention** — The paper and electronic records we maintain related to our representation of you will include documents such as legal pleadings, transactional documents, substantive correspondence and other documents reasonably necessary to our representation of you in the matter (the "Client File").  The Client File is your

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

9

property.  The records may also include internal firm documents prepared for the purpose of
facilitating performance of our legal services in the form of research memoranda, outlines,
emails, handwritten notes and mark-ups of documents, as well as new matter intake forms and
internal conflicts checking records.  These records are our property.  At the close of a specific
matter, at your written request, we will return to you your original documents, if any, related to
the matter.  At your written request, any remaining records in the Client File will be returned to
you at your expense.  You agree that we may make physical or electronic copies if we choose at
our own expense.  You agree and understand that any materials left with us after the engagement
has terminated may be retained or destroyed at our discretion without further notice to you and in
a manner which preserves the confidential and secret nature of their contents.  We will retain
documents relating to this representation only as long as required by law or our legal hold
policies, or as we otherwise determine is appropriate.

      **14.**    **Legal Updates, Publications and Events** — You agree that we may
contact you with legal updates or other publications which we believe may be useful to you (for
example, with details of relevant changes in law).  In addition, you agree that we may send you
invitations to events such as client seminars on various legal topics.  We may contact you for
these purposes by email, mail or telephone (as appropriate).  If you prefer not to be contacted for
these purposes, please email us at privacy@paulweiss.com.

      In connection with our marketing materials describing our law practice and
providing examples of matters we handle, you agree that we can identify you as a client and
include factual summaries of publicly known matters we handled for you, so long as those
materials do not disclose confidential or sensitive information under applicable ethical rules.

      **15.**    **Governing Law** — Any controversy, dispute or claim arising out of this
engagement shall be governed by and interpreted in accordance with the laws of the State of
New York, without regard to conflict of law provisions that might provide for the application of
the law of any other jurisdiction.

      **16.**    **Binding Confidential Arbitration and Waiver of Jury Trial** — Any
claim or controversy arising out of this engagement—including, without limitation, disputes over
legal fees, expenses, or services provided pursuant to the agreement, claims for professional
malpractice or conflicts of interest, or disputes relating to the interpretation or enforceability of
the agreement—shall be determined exclusively by final, binding, and confidential arbitration, in
lieu of any right you may otherwise have to arbitrate under Part 137 of the Rules of New York's
Chief Administrative Judge.  The arbitration shall be conducted through JAMS.  The dispute
shall be heard by a single arbitrator who served as a federal judge in the Southern District of
New York or the Eastern District of New York for at least five years.  Each party shall be
entitled to depose a maximum of six fact witnesses, in addition to any expert witnesses.  All
depositions shall be limited to six hours per witness.

      No party may seek to confirm, vacate, or enforce the arbitration decision in any
forum, except in the event that a party fails to pay when due any amounts awarded in the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.

10

arbitration, in which case the party seeking to confirm or enforce the award shall be entitled to do so in a court of competent jurisdiction in the City, County, and State of New York. No party may disclose the substance or results of the arbitration, except as required by law or regulation.

Each party shall bear its own costs, including attorneys' and other professional fees in connection with the arbitration, except that the costs payable to the arbitrator and JAMS shall be shared equally among the parties. The arbitrator shall not award any party costs, attorneys' fees or other professional fees, or punitive or other special damages.

By agreeing to arbitration, you irrevocably and unconditionally, to the fullest extent permitted by applicable law, waive any right to trial by jury in such action. You certify that you have considered the implications of this waiver of jury trial, make the waiver knowingly and voluntarily, and have not been induced to do so by the Firm's acceptance of this engagement.

**17.    Entire Agreement** — These terms set out the entire agreement between you and us concerning our provision of legal services. Any modifications of or amendments to these terms must be in writing and agreed by both parties.

**18.    Severability** — If any provision of this engagement letter or any portion thereof, or the application of any such provision or portion thereof, is held invalid, illegal, void or unenforceable in any respect by a court of competent jurisdiction or administrative authority, such invalidity, illegality or unenforceability will not affect any other provision hereof or the remaining portion thereof, and the validity of the entire engagement letter as a whole shall not be affected thereby.

\*   \*   \*

Our goal is to serve you in an effective and efficient way, and we welcome your views on how we may best do so. We encourage you to discuss with us any questions you might have concerning these matters. Please signify your acceptance of the foregoing Terms of Engagement by signing the enclosed copy of this letter and returning it to me. Please note that your instructing us or continuing to instruct us on the matter discussed above will constitute your full acceptance of the terms set out above.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

23andMe Holding Co.                                                                                11

       Again, we are all pleased at the chance to work on this matter and look forward to a successful outcome.

                Sincerely,

                */s/ Christopher J. Hopkins*

                Christopher J. Hopkins
                Partner

AGREED:

**23andMe Holding Co.**

By: _Guy Chayoun_ _____
     655C44B56D9F475...

Name:  Guy Chayoun
Title:  Vice President, Interim General Counsel and Corporate Secretary