**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |
| | Hearing Date:  TBD[2] |
| | Hearing Time:  TBD |
| | Hearing Location:  TBD |

**DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF
ALVAREZ & MARSAL NORTH AMERICA, LLC AND (II) DESIGNATING
MATTHEW E. KVARDA AS CHIEF RESTRUCTURING OFFICER OF THE
DEBTORS AND CERTAIN ADDITIONAL PERSONNEL, IN EACH CASE,
EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this application (the "Application"):

**Relief Requested**[3]

1.      The Debtors seek entry of interim and final orders (the "Proposed Orders")[4]

(a) authorizing the retention and employment of Alvarez & Marsal North America, LLC ("A&M")

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andme.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]   The Debtors will file a notice stating the date, time, and location of the first day hearing once this information becomes available.

[3]   Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Application.

[4]   Copies of the Proposed Orders will be made available on the Debtors' case information website at: https://restructuring.ra.kroll.com/23andMe.

and (b) designating Matthew E. Kvarda as Chief Restructuring Officer (a "<u>CRO</u>") and certain additional employees of A&M and its professional service provider affiliates (all of which are wholly-owned by its parent company and employees) (the "<u>Additional Personnel</u>" and, together with the CRO, the "<u>Engagement Personnel</u>") as necessary to assist the CRO in the execution of the duties set forth more fully herein, in each case, effective as of the Petition Date.  In support of this Application, the Debtors rely upon the declaration of Matthew E. Kvarda (the "<u>Kvarda Declaration</u>"), a Managing Director at A&M, attached hereto as **<u>Exhibit B</u>**.

<u>**Jurisdiction and Venue**</u>

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors consent to a final order with respect to this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 2014 and 2016 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "<u>Local Rules</u>").

**Background**

5.      23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[5] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome.  The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports.  Further, through its Lemonaid Health telehealth platform, the Company operates as a national online doctor's office that provides medical care and pharmacy fulfillment services.

6.      On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) substantially contemporaneously herewith.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated at this time.

8.      A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed substantially contemporaneously herewith and incorporated herein by reference.[6]

---

[5]     Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

[6]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

### The Retention of A&M

9.    In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates.  The Engagement Personnel are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

10.    The Engagement Personnel specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.  A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts and business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

11.    A&M has provided interim management services in a number of large and mid-size bankruptcy restructurings such as: *In re Numbers Holdings, Inc.* No. 24-10719 (JKS) (Bankr. D. Del. May 8, 2024); *In re* Red Lobster Management LLC No.6:24-bk-02486-GER (Bankr. M.D. Fl. June 14, 2024); . *In re SiO2 Medical Products, Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Jun. 6, 2023); *In re Ryze Renewables II, LLC*, No. 23-10289 (BLS) (Bankr. D. Del. Apr. 11, 2023); *In re AIG Financial Products Corp.*, No. 22-11209 (MFW) (Bankr. D. Del. Jan. 19, 2023); *In re Packable Holdings, LLC f/k/a Entourage Commerce, LLC*, No. 22-10797 (CTG) (Bankr. D. Del. Oct. 11, 2022); *In re GT Real Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del. Jul. 18, 2022); *In re Quorum Health Corp.*, Case No. 20-10766 (KBO) (Bankr. D. Del. May 6, 2020); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Nov. 4, 2019); *In re Kona Grill Inc.*, No.

19-10953 (CSS) (Bankr. D. Del. May 28, 2019); *In re RM Holdco LLC*, No. 18-11795 (MFW) (Bankr. D. Del. Sept. 6, 2018); *In re Gibson Brands, Inc.*, No. 18-11025 (CSS) (Bankr. D. Del. Aug. 8, 2018); *In re EBH Topco LLC*, No. 18-11212 (BLS) (Bankr. D. Del. June 26, 2018); *In re Payless Holdings LLC,* No. 17-42267-659 (Bankr. E.D Mo. May 16, 2017); *In re M&G USA Corp.*, No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017).

12.     Mr. Kvarda is a Managing Director at A&M.  Mr. Kvarda received his bachelor of arts from the University of California at San Diego and a Masters in Business Administration from the University of California at Los Angeles.  Mr. Kvarda is also a Certified Insolvency and Restructuring Advisor.  Mr. Kvarda has over thirty years of distressed company advisory experience, and his primary areas of focus include formulating and evaluating strategic business plans and developing cash and liquidity forecasting and monitoring programs.

13.     Mr. Kvarda has advised clients in numerous complex chapter 11 cases, including Revlon, Inc., Penn Virginia Corp., Oakwood Homes Corporation, Denbury Resources Inc., Las Vegas Monorail Company, People's Choice Home Loan, Inc., and 155 East Tropicana LLC, a/k/a Hooters Hotel and Casino, among others.  Mr. Kvarda previously served as the Chief Restructuring Officer during the chapter 11 cases of People's Choice Home Loan, Inc. and has also served as Chief Restructuring Officer in non-public situations.  Mr. Kvarda has also served as interim Chief Financial Officer of distressed and non-distressed companies in both in-court chapter 11 proceedings and out-of-court restructurings, including Revlon, Inc., TEAM, Inc., and Jacuzzi Brands Corp.  As set forth in the foregoing, Mr. Kvarda has substantial knowledge and experience advising large companies and assisting financially distressed organizations with stabilizing their financial condition, developing business plans, and assessing restructuring alternatives.

14.    In addition, A&M and Mr. Kvarda are intimately familiar with the Debtors' businesses, financial affairs, and capital structure.  Since A&M's initial engagement by the Company on January 28, 2025, the Engagement Personnel have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases.  Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors, their operations and the unique circumstances of these cases.  For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases.  Accordingly, the Debtors submit that the retention of A&M and the designation of Matthew E. Kvarda as Chief Restructuring Officer on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## Scope of Services

15.    Subject to approval by the Court, the Debtors propose to retain A&M to provide Mr. Kvarda as Chief Restructuring Officer and to provide the Additional Personnel on the terms and conditions set forth in the engagement letter, dated March 21, 2025 which superseded the previously executed engagement letter, dated January 28, 2025, attached hereto as **Exhibit A** (the "Engagement Letter")[7], except as otherwise explicitly set forth herein or in any order granting this Application.

---

[7]    The summaries of the Engagement Letter (and indemnification agreement attached thereto) contained in this Application are provided for purposes of convenience only.  In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control unless otherwise set forth herein.  Capitalized terms used in such summaries but not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

16.      Among other things, the Engagement Personnel will support the Debtors with respect to:

(a)      assistance in evaluation of the Company's current business plan and in preparation of a revised operating plan and cash flow forecast and presentation of such plan and forecast to the Company's Board of Directors (the "Board") and its creditors;

(b)      assistance in the development and management of a 13-week cash flow forecast;

(c)      the identification (and implementation) of cost reduction and operations improvement opportunities;

(d)       assisting the CFO and other Company engaged professionals in developing for the special committee of the Board's (the "Special Committee") review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business lines;

(e)      assistance in financing issues including assistance in preparation of reports and liaison with creditors;

(f)      assistance in contingency planning, including, if needed, assisting the Company in preparing for a potential chapter 11 bankruptcy filing;

(g)      report to the Board as desired or directed by the Responsible Officer; and

(h)      other activities as are approved by you, the Responsible Officer or the Board and agreed to by A&M.

17.      In addition, it is foreseeable that a Foreign Representative file, on behalf of the Debtors, an application to the Supreme Court of British Columbia (the "Canadian Court") for ancillary recognition proceedings under Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C.-36, as amended, of Canada (the "Recognition Proceedings"). At the request of the Debtors, a subsidiary of A&M, Alvarez & Marsal Canada Inc. ("A&M Canada") has agreed to perform the role of Information Officer in the Recognition Proceedings, if appointed as such by

the Canadian Court.  As Information Officer, once appointed, A&M Canada will report to the Canadian Court from time to time (including at the hearing of the initial application) on the status of the chapter 11 proceeding, the proposed restructuring of the Debtors, the orders from the United States sought to be recognized and given effect to by the Canadian Court, and any other information that may be material to the Canadian Court.  A&M Canada agreed to perform the Information Officer role based on the understanding that the Debtors' Canadian interests align with the Debtors' interests more generally.  Accordingly, A&M's role as Information Officer, and its preparation for such role, do not result in A&M Canada representing an interest adverse to the Debtors.

18.     The Debtors submit that the foregoing services are necessary to enable the Debtors to maximize the value of their estates and successfully complete their restructuring.

### A&M's Disinterestedness

19.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the declaration attached annexed hereto as **Exhibit B** (the "Kvarda Declaration"), A&M: (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the United States Trustee; and (ii) does not hold any interest adverse to the Debtors' estates.

20.     Although the Debtors submit that the retention of A&M is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Kvarda Declaration, which discloses, among other things, any relationship that A&M, Kvarda or any individual member of the Additional Personnel has with the Debtors, their significant creditors, or other significant parties in interest known to A&M.  Based upon the Kvarda Declaration, the Debtors submit that A&M is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

21.     In addition, as set forth in the Kvarda Declaration, if any new material facts or relationships are discovered or arise during the pendency of these chapter 11 cases, A&M will provide the Court with a supplemental declaration.

**Terms of Retention**

A.     **Compensation**

22.     In accordance with the terms of the Engagement Letter, A&M will be paid by the Debtors for the services of the Engagement Personnel at their customary hourly billing rates.  The current hourly billing rates for the CRO and Additional Personnel, based on the position held by such Additional Personnel at A&M, are subject to the following ranges:

| | |
|---|---|
| Managing Directors | $1,100 - $1,575 |
| Directors | $850 - $1,100 |
| Associates | $625 - $825 |
| Analysts | $450 - $600 |

Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

23.     In addition to the aforementioned hourly compensation, in connection with these chapter 11 cases, the Engagement Letter provides that A&M is entitled to a completion fee in the amount of $750,000 (the "Completion Fee") payable upon the earlier of (x) the consummation of a chapter 11 plan of reorganization and (y) the sale, transfer or other disposition of all or a substantial portion of the assets or equity of the Debtors in one or more transactions.

24.     In addition to compensation for professional services rendered by Engagement Personnel, A&M will seek reimbursement for reasonable out-of-pocket expenses incurred in connection with these chapter 11 cases, including, but not limited to travel, lodging, meals, messenger charges, and wireless charges.  A&M will not charge the flat rate of four percent of

professional fees agreed to in the Engagement Letter during these chapter 11 cases. All fees and expenses due to A&M will be billed on a weekly basis or, at A&M's discretion, more frequently.

**B.      Indemnification**

25.      As a material part of the consideration for which the Engagement Personnel have agreed to provide the services described herein, pursuant to the Engagement Letter (including the indemnification agreement attached to and made a part of the Engagement Letter (the "Indemnification Agreement")), the Debtors have agreed to (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification it extends to its officers and directors and to cover such Engagement Personnel under the Debtors' director and officer liability policy and (b) indemnify and hold harmless A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") under certain circumstances.[8] The rights to indemnification shall survive the termination of these chapter 11 cases or any cases into which they may be converted.

26.      The Debtors believe the indemnity provisions are reasonable terms and conditions of A&M's engagement and were, along with all terms of the Engagement Letter, negotiated by the

---

[8]      The Indemnification Agreement generally provides that the Debtors will indemnify and hold harmless A&M and the other Indemnified Parties (as defined in the Indemnification Agreement) against any and all losses, claims, damages, liabilities, penalties, obligations, and expenses, including the costs for counsel and others in investigating, preparing, or defending any action or claim caused by, relating to, based upon, or arising out of the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Engagement Letter. Notwithstanding the terms of the Indemnification Agreement, the Debtors and A&M have agreed, subject to the Court's approval of this Application, that in no event shall an Indemnified Party be indemnified or receive contribution or other payment under the Indemnification Agreement if the Debtors, their estates or the statutory committee of unsecured creditors appointed in these chapter 11 cases assert a claim against an Indemnified Party and the Court determines by final order that such claim arose out of the bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Party.

Debtors and A&M at arm's-length and in good faith.   A&M and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to A&M and for comparable engagements, both in and out of court.  The Debtors respectfully submit that the indemnification provisions contained in the Indemnification Agreement, viewed in conjunction with the other terms of A&M's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require A&M's services to successfully reorganize.

**Fees and Reporting**

27.     If the Court approves the relief requested herein, A&M will be retained to provide the Debtors with the Engagement Personnel and Mr. Kvarda will be designated as the Debtors' Chief Restructuring Officer pursuant to section 363 of the Bankruptcy Code.  Because A&M is not being employed as a professional under section 327 of the Code, A&M will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, A&M will file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on at least a quarterly basis.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed.  In addition A&M will file with the Court and provide the U.S. Trustee and all official committees a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and tasks filled by all Engagement Personnel involved in this matter. The Staffing Report (and A&M's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

28.     A&M received $500,000 as a retainer in connection with preparing for and conducting the filing of these chapter 11 cases, as described in the Engagement Letter.  In the 90

11

days prior to the Petition Date, A&M received retainers and payments totaling $2,228,968 in the aggregate for services performed for the Debtors. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date.

29.     A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first report filed regarding compensation earned and expenses incurred. The unapplied residual retainer, which is estimated to total approximately $500,000, will be segregated by A&M in a separate non-interest bearing account which may hold other A&M and A&M affiliate client retainers, and will be held until the end of these chapter 11 cases and applied to A&M's finally approved fees in these proceedings, unless an alternate arrangement is agreed to by the Company.

30.     Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Engagement Letter are reasonable.

**Dispute Resolution Procedures**

31.     The Debtors and A&M have agreed, subject to the Court's approval of this Application, that notwithstanding the Engagement Letter: (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by the Engagement Personnel to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of A&M, shall be brought in this Court or the United States District Court for the Eastern District of Missouri (the "District Court") (if the reference is withdrawn); (b) A&M, the Debtors, and any and all

successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such courts do not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions, or lawsuits; (c) A&M and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if this Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, A&M and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures (as set forth in **Exhibit C** attached hereto); and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.  By this Application, the Debtors seek approval of this agreement by the Court.  Further, A&M and the Debtors have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention, or otherwise to the jurisdiction and venue of this Court or the District Court (if the reference is withdrawn) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application or the services provided hereunder.

### **Applicable Authority**

32.     The Debtors seek approval of the employment of A&M pursuant to section 363 of the Bankruptcy Code, effective as of the Petition Date.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."  11 U.S.C. § 363(b)(1).  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

33.     Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See*, *e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

34.     The retention of A&M and its professionals is a sound exercise of the Debtors' business judgment. Mr. Kvarda has extensive experience as a senior officer and as an advisor for many companies facing financial distress.  The Debtors believe that the Engagement Personnel will provide services that benefit the Debtors' estates and creditors.  In light of the foregoing, the Debtors believe that the retention of A&M is appropriate and in the best interests of the Debtors and their estates and creditors.

35.     The retention of interim corporate officers and other temporary employees, therefore, is proper under section 363 of the Bankruptcy Code.  Bankruptcy courts have authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions.  *See, e.g.*, *In re Numbers Holdings, Inc.* No. 24-10719 (JKS) (Bankr. D. Del. May 8, 2024); *In re* Red Lobster Management LLC No.6:24-bk-02486-GER (Bankr. M.D. Fla. June 14, 2024); *In re SiO2 Medical Products, Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Jun. 6, 2023); *In re Ryze Renewables II, LLC*, No. 23-10289 (BLS) (Bankr. D. Del. Apr. 11, 2023); *In re AIG Financial Products Corp.*,

No. 22-11209 (MFW) (Bankr. D. Del. Jan. 19, 2023); *In re Packable Holdings, LLC f/k/a Entourage Commerce, LLC*, No. 22-10797 (CTG) (Bankr. D. Del. Oct. 11, 2022); *In re GT Real Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del. Jul. 18, 2022); *In re Quorum Health Corp.*, Case No. 20-10766 (KBO) (Bankr. D. Del. May 6, 2020); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Nov. 4, 2019); *In re Kona Grill Inc.*, No. 19-10953 (CSS) (Bankr. D. Del. May 28, 2019); *In re RM Holdco LLC*, No. 18-11795 (MFW) (Bankr. D. Del. Sept. 6, 2018); *In re Gibson Brands, Inc.*, No. 18-11025 (CSS) (Bankr. D. Del. Aug. 8, 2018); *In re EBH Topco LLC*, No. 18-11212 (BLS) (Bankr. D. Del. June 26, 2018); *In re Payless Holdings LLC,* No. 17-42267-659 (Bankr. E.D. Mo. May 16, 2017); *In re M&G USA Corp.*, No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017).

36.     Based upon the foregoing, the Debtors submit that the retention of A&M, and the designation of Matthew E. Kvarda as Chief Restructuring Officer on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest, and should be granted in these chapter 11 cases.

### Immediate Relief Is Necessary

37.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable harm."  For the reasons discussed herein and in the First Day Declaration, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the Application could hinder the Debtors' operations and cause irreparable harm.  Failure to obtain the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring efforts.  The retention and employment of A&M and the designation of

Matthew E. Kvarda as Chief Restructuring Officer of the Debtors are necessary for the Debtors to operate their business in the ordinary course and preserve the value of their estates for the benefit of stakeholders. Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003 has been satisfied.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

38.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the retention and employment of A&M and the designation of Matthew E. Kvarda as Chief Restructuring Officer of the Debtors is necessary for the Debtors to operate their business without interruption and to preserve value for their estates through these chapter 11 cases. Accordingly, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

39.     The Debtors will provide notice of this Application to the following parties: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d) the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the United States Attorney's Office for the Eastern District of Missouri; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Federal Trade Commission; (i) the state attorneys general in all 50 states; and (j) any party that has

16

requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of

this Application and any order entered hereon will be served in accordance with rule 9013-3(A)(1)

of the Bankruptcy Local Rules.  The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be given.

40.    A copy of this Application is available on (a) PACER at https://pacer.uscourts.gov/,

and (b) the website maintained by the Debtors' proposed claims and noticing agent, Kroll

Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders

and grant such other relief as the Court deems appropriate under the circumstances.

Dated: March 24, 2025                    Respectfully submitted,

                                                 23ANDME HOLDING CO.
                                                 (for itself and on behalf of each of its affiliated
                                                 Debtors)

                                                 */s/ Guy Chayoun*
                                                 Name: Guy Chayoun
                                               Title:  Vice President, Interim General Counsel,
                                                         Corporate Secretary
                                                         23andMe Holding Co.

**<u>Exhibit A</u>**

**Engagement Letter**

Docusign Envelope ID: 6E063283-3EAD-4CE4-A084-018D1E88B3AC

March 21, 2025

23andMe Holding Co.
870 Market Street, Room 415
San Francisco, CA 94102
Attn: Joe Selsavage
Chief Financial Officer


Dear Joe:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and 23andMe Holding Co. and its subsidiaries and their respective assigns and successors (the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Company and A&M (the "Agreement") and the prior agreement between A&M and Company dated January 28, 2025 (the "Prior Advisory Services Agreement") will be immediately terminated with no further action necessary to effect such termination. Notwithstanding the foregoing, all obligations for payment of fees and expenses, indemnity, confidentiality, non-solicitation, exculpatory provisions and any other provisions which survive in accordance with the terms of the Prior Advisory Services Agreement will survive such termination.

1.   Description of Services

    (a)   Officers. In connection with this engagement, A&M shall make available to the Company:

        (i)   Matthew Kvarda to serve as the Chief Restructuring Officer (the "CRO"); and

        (ii)   Upon the mutual agreement of A&M and the Company, A&M will provide additional employees of A&M and/or its affiliates and wholly-owned subsidiaries ("Additional Personnel") as required (collectively, with the CRO, the "Engagement Personnel"), to assist the CRO in the execution of the duties set forth more fully herein.

    (b)   Duties.

        (i)   The Engagement Personnel in cooperation with the Chief Financial Officer (the "CFO") or other applicable officers of the Company, shall perform a financial review of the Company, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Company to its creditors, including without limitation its short and long-term projected cash flows and operating performance;

23andMe Holding Co.
March 21, 2025

> (ii)     The Engagement Personnel shall assist in the identification (and implementation) of cost reduction and operations improvement opportunities;
>
> (iii)    The Engagement Personnel shall assist the CFO and other Company engaged professionals in developing for the special committee of the Board's (the "Special Committee") review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business lines;
>
> (iv)     The CRO shall serve as the principal contact with the Company's creditors with respect to the Company's financial and operational matters; and
>
> (v)      The Engagement Personnel shall perform such other services as requested or directed by the Special Committee or other Company personnel as authorized by the Special Committee and agreed to by A&M that is not duplicative of work others are performing for the Company.

(c)   The Engagement Personnel shall report to the Special Committee of the Board and, at the request of the Special Committee of the Board, will make recommendations to and consult with the board of directors of the Company (the "Board") and Special Committee of the Board.

(d)   The Engagement Personnel will continue to be employed, by A&M and, while rendering services to the Company, will continue to work with other personnel at A&M in connection with unrelated matters that will not unduly interfere with the services rendered by the Engagement Personnel pursuant to this Agreement.   With respect to the Company, however, the Engagement Personnel shall operate under the direction of the Special Committee and A&M shall have no liability to the Company for any acts or omissions of the Engagement Personnel related to the performance or non-performance of services at the direction of the Special Committee (other than for any acts or omissions that are finally determined to constitute A&M's gross negligence, willful misconduct, or fraud) and consistent with the requirements of the Engagement and this Agreement.

(e)   In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates and subsidiaries as Engagement Personnel.  Such affiliates and subsidiaries are wholly owned by A&M's parent company and employees.

(f)   In addition, it is foreseeable that a Foreign Representative will file on behalf of the Company, an application to the Supreme Court of British Columbia (the "Canadian Court") for ancillary recognition proceedings under Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C.-36, as amended, of

-2-

Canada (the "Recognition Proceedings"). A&M's subsidiary, Alvarez & Marsal Canada Inc. ("A&M Canada") has agreed to perform the role Information Officer in the Recognition Proceedings, if appointed as such by the Canadian Court. As Information Officer, once appointed, A&M Canada will report to the Canadian Court from time to time (including at the hearing of the initial application) on the status of the Chapter 11 proceeding, the proposed restructuring of the Company, the US Orders sought to be recognized and given effect by the Canadian Court, and any other information that may be material to the Canadian Court.

2. <u>Information Provided by Company and Forward Looking Statements</u>. The Company shall use all reasonable efforts to: (i) provide the Engagement Personnel with access to management and other representatives of the Company; and (ii) furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that Engagement Personnel reasonably request in connection with the services to be provided to the Company. The Engagement Personnel shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by Engagement Personnel in connection with the services performed for the Company. The Company acknowledges and agrees that the Engagement Personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M and Engagement Personnel are under no obligation to update data submitted to them or to review any other areas unless specifically requested by the Special Committee to do so.

You understand that the services to be rendered by the Engagement Personnel may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections. In addition, Engagement Personnel will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3. <u>Limitation of Duties</u>. Neither A&M, nor the Engagement Personnel make any representations or guarantees that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company, (ii) any restructuring proposal or strategic alternative presented to the Company's management, the Board, or the Special Committee will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company, or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, neither A&M nor the Engagement Personnel assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction. The Engagement Personnel shall

23andMe Holding Co.
March 21, 2025

be responsible for implementation only of the restructuring proposal or alternative approved by the Board or the Special Committee, as applicable, and only to the extent and in the manner authorized and directed by the Board or the Special Committee, as applicable.

4.  <u>Compensation</u>.

(a)  A&M will receive fees for the services of the Engagement Personnel based on the following hourly rates:

| | |
|---|---|
| Managing Directors | $1,100 - 1,575 |
| Directors | 850 - 1,100 |
| Associates | 625 - 825 |
| Analysts | 450 - 600 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

(b)  In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, meals, messenger and wireless charges. A&M also charges a flat rate of 4% of professional fees to cover otherwise unbilled items such as telephone and conferencing charges, computer use, technology and software license fees, research subscriptions and other internal services. All fees and expenses will be billed on a weekly basis or, at A&M's discretion, more frequently. Invoices are payable upon receipt.

(c)  Pursuant to the Prior Advisory Services Agreement, A&M received a retainer in the amount of $500,000 which the Company directs A&M to hold as a retainer under this Agreement (the "<u>Retainer</u>"). The Retainer shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder. The Retainer will be held in a segregated non-interest-bearing account (which may hold other A&M and A&M affiliate client retainers), separate from the general account to which A&M will direct payment of ongoing fees and expenses. Absent your agreement to the contrary, A&M may only draw on the Retainer (or a portion thereof) in order to apply to undisputed portions of invoices that are due and payable or other amounts due under this Agreement or as the Company may otherwise agree and Company will be informed of such application of the Retainer. If a Retainer is to be increased or decreased, the foregoing shall apply.

(d)  In addition to the hourly compensation, A&M will be entitled to incentive compensation in the amount of $750,000.00 (the "<u>Completion Fee</u>") payable upon the earlier of (x) the consummation of a Chapter 11 plan of reorganization; and (y) the sale, transfer, or other disposition of all or a

-4-

23andMe Holding Co.
March 21, 2025

substantial portion of the assets or equity of the Company in one or more transactions.

5.   <u>Termination</u>.

(a)   This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party; provided, that if such written notice is provided by A&M for any reason other than Good Reason, as defined below, such notice shall not become effective on the date that is thirty days after the date such written notice is delivered to the Company.

(b)   A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists ("<u>Good Reason</u>").

(c)   On termination of the Agreement, any undisputed portions of fees and expenses due to A&M shall be remitted promptly (including fees and expenses that accrued prior to but are invoiced subsequent to such termination) and A&M shall promptly return any excess amounts held on Retainer to the Company.

(d)   If the Company terminates this Agreement without "Cause" or if A&M terminates this Agreement for Good Reason, A&M shall also be entitled to receive the Completion Fee upon the occurrence of the event specified in Section 4(d) if such event occurs within 1 year of the termination. "<u>Cause</u>" shall mean gross negligence, willful default or fraud by A&M.

(e)   The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.   <u>No Audit</u>.  Company acknowledges and agrees that A&M and Engagement Personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7.   <u>No Third Party Beneficiary</u>.  The Company acknowledges that all advice (written or oral) provided by A&M and the Engagement Personnel to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board, Special Committee, and management) in considering the matters to which this engagement relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.

-5-

23andMe Holding Co.
March 21, 2025

8.      <u>Conflicts</u>.  A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware.   Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "<u>Firm</u>") that serves clients on an international basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to, or have business associations with, other entities or people which had or have or may have relationships with the Company, including creditors of the Company.  The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained; provided that A&M will not represent the interests of any such entities or individuals in connection with the Company's restructuring efforts. Each of the entities comprising the definition of Company (each, a "<u>Company Entity</u>") acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them  hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company Entity. Each Company Entity represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9.      <u>Confidentiality/Non-Solicitation</u>.

A&M and Engagement Personnel shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or applicable law; or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is, or becomes, public other than as a result of a breach of this provision.  The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until two (2) years subsequent to the termination of this engagement, it will not solicit, recruit, hire or otherwise engage any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("<u>Solicited Person</u>").  Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engage any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the Company equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee.  The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if the Company breaches this provision.  The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.

10.     <u>Indemnification/Limitations on Liability</u>.   The Company shall indemnify the Engagement Personnel acting as officers (the "<u>Indemnified Professionals</u>") to the same extent as the most favorable indemnification it extends to its officers or directors,

Docusign Envelope ID: 6E063283-3EAD-4CE4-A084-018D1E88B3AC

23andMe Holding Co.
March 21, 2025

whether under the Company's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Indemnified Professionals. The Indemnified Professionals shall be expressly covered as officers under the Company's existing director and officer liability insurance policy(ies) and such coverage shall be primary to any insurance or indemnification made available to the Indemnified Professionals by A&M or resulting from the Indemnified Professionals' employment with A&M. Prior to the effective date of this engagement and as a condition of A&M accepting this engagement, the Company shall make such policy(ies) and all amendments thereto available to A&M for review and approval. The Company shall also maintain such insurance coverage for the Indemnified Professionals for a period of not less than six years following the date of the termination of the Indemnified Professionals' services hereunder. Company shall furnish evidence of any subsequent renewals of the applicable policy(ies) and shall give thirty (30) days' prior written notice to A&M of cancellation, non-renewal, or material change in coverage, scope, or amount of such director and officer liability policy. The provisions of this section are in the nature of contractual obligations and no change in applicable law or the Company's charter, bylaws or other organizational documents or policies shall affect the Indemnified Professionals' rights hereunder. The attached indemnity and limitation on liability provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall remain in full force and effect.

11.   Joint and Several Liability

Each Company Entity hereby acknowledges and agrees that they are each jointly and severally liable to A&M and its affiliates for all of the Company's representations, warranties, covenants, liabilities and obligations set forth in the Agreement. Any beneficiary of this agreement may seek to enforce any of its rights and remedies hereunder against any or all Company Entities in any order at any time in its sole discretion.

12.   Privacy and Data Protection. In the provision of Services under this Agreement, A&M may Process certain Company Personal Data. Capitalized terms used herein but not otherwise defined in the Agreement or in paragraph (b), below, shall have the meanings ascribed in paragraph (e), below.

(a)  Mutual Obligations. A&M and Company shall each comply with Data Protection Laws applicable to their respective Processing of Company Personal Data.

(b)  A&M Obligations. (i) A&M shall Process Company Personal Data on behalf of Company as reasonably necessary to providing the Services, which Company acknowledges consist of the services as described in the Agreement. (ii) A&M shall implement and maintain appropriate physical, technical, and organizational safeguards reasonably designed to protect the confidentiality and security of Company Personal Data, and to protect Company Personal Data against a Personal Data Breach. (iii) For purposes of this clause (iii), the terms "consumer", "business", "business purpose", "commercial purpose", "sell", and "share" shall

23andMe Holding Co.
March 21, 2025

have the meanings ascribed under the California Consumer Protection Act of 2018, as amended by the California Privacy Rights Act of 2020 ("CCPA") and, where applicable, other relevant Data Protection Laws. A&M shall not: (A) sell or share Company Personal Data; (B) retain, use, or disclose Company Personal Data for any purpose other than for providing the Services; (C) retain, use, or disclose Company Personal Data for a commercial purpose other than for providing the Services, or as otherwise permitted under Data Protection Laws; (D) retain, use, or disclose Company Personal Data outside of the direct business relationship between Company and A&M, except as otherwise permitted under Data Protection Laws; or (E) combine Company Personal Data it receives from, or on behalf of, Company with Personal Data that it receives from, or on behalf of, another person or persons, or collects from its own interaction with the consumer, except as otherwise provided under Data Protection Laws. A&M shall provide the same level of privacy protection to Company Personal Data as required of businesses under applicable Data Protection Laws and will notify Company if it determines that it can no longer meet its obligations under applicable Data Protection Laws. A&M and Company shall promptly notify and reasonably assist the other if it receives a request from a consumer seeking to exercise individual rights (e.g., access, deletion) with respect to Company Personal Data, including by providing all information necessary to enable the other to comply with the request. Company shall have the right to take reasonable and appropriate steps to ensure that A&M Processes Company Personal Data in a manner that is consistent with Company's obligations under applicable Data Protection Laws; specifically, Company shall have the right to monitor A&M's compliance with its privacy and data protection obligations herein through written questionnaires once every 12 months. Company shall have the right, upon no less than ten (10) business days' written notice, to request documentation from A&M demonstrating A&M's compliance with its privacy and data protection obligations herein, and to take other reasonable and appropriate steps to stop and remediate any unauthorized use of Company Personal Data by A&M. (iv) Notwithstanding anything in this paragraph (b) to the contrary, Company acknowledges and agrees: (A) A&M may disclose Company Personal Data to A&M's affiliates to assist A&M in Processing Company Personal Data as reasonably necessary to providing the Services; (B) A&M has Company's general authorization for the engagement of sub-processors to assist A&M in Processing Company Personal Data as reasonably necessary to providing the Services; provided, each sub-processor shall be subject to written agreement that complies with applicable Data Protection Law and is no less protective than as set forth herein; and (C) where reasonably necessary to provide the Services or as instructed by Company, A&M may disclose Company Personal Data to Company's other advisors, constituents, and/or counterparties in the matter for which Company engaged A&M to provide the Services.

(c)   Company Obligations. (i) Company confirms that it has established all rights (including, where relevant, providing a privacy notice and obtaining any necessary consents) necessary under applicable Data Protection Laws for A&M to provide the Services under the Agreement. (ii) Company shall not do or permit anything to be done, through any act or omission, in providing or making available to A&M any Company Personal Data, that would cause A&M or any of its affiliates to contravene or incur any liability under any Data Protection Laws. (iii) If Company's transfer of Company Personal Data to A&M would be prohibited by the EU General Data Protection Regulation 2016/679 of the European Parliament and of the Council ("GDPR") or other Data Protection Laws in the absence of an adequacy decision, standard contractual clauses, or other permitted transfer mechanism,

-8-

23andMe Holding Co.
March 21, 2025

Company shall be responsible for ensuring that appropriate safeguards are in place including, where applicable, by entering into standard contractual clauses with A&M. (iv) Company shall use its reasonable efforts, where practicable, to limit the Personal Data that it provides or makes available to A&M to information that is necessary and relevant for A&M's performance of the Services, including by removing and/or de-identifying datasets, and to notify A&M in advance regarding categories, types and volume of Personal Data that it will provide or make available so that the parties can implement appropriate data transmission, handling and storage safeguards. (v) If Company is a covered entity or business associate as defined under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Company shall not disclose protected health information (PHI) or electronic protected health information (ePHI) to A&M (in its own capacity as a business associate) unless and until the parties have entered into a mutually acceptable HIPAA business associate agreement, which will supersede this Privacy and Data Protection Provision with respect to such PHI/ePHI.

(d)  Deidentified Data.  To the extent A&M is permitted under the Agreement to deidentify, anonymize and/or aggregate Company Personal Data ("Deidentified Data"), Company acknowledges that A&M undertakes such actions in connection with and for the purpose of performing the Services, and Deidentified Data shall not be considered Company Personal Data.

(e)  Definitions.  (i) "Data Protection Laws" means all laws, rules and regulations pertaining to the privacy and security of Personal Data, including but not limited to CCPA and GDPR; (ii) "Personal Data" means all "personal data", "personal information", "personally identifiable information", "special categories of data", "sensitive personal information", and similarly defined terms under Data Protection Laws; (iii) "Company Personal Data" means any Personal Data that Company provides or makes available to A&M, or that A&M collects directly from individuals, in connection with A&M's performance of the Services (but excluding contact details about Company's personnel that A&M processes to manage the business relationship with Company); (iv) "Process" has the meaning under applicable Data Protection Laws, and in all events means to collect, access, analyze, use, store, transfer (including by remote access), or disclose by transmission; and (v) "Personal Data Breach" has the meaning under applicable Data Protection Laws, and in all events means any breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data.

13.   Miscellaneous.  This Agreement (together with the attached indemnity provisions), and all claims, proceedings or causes of action (whether in contract, tort or statute) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement or the services provided hereunder (the "Related Matters"), shall be governed by, and enforced in accordance with, the internal laws of the State of New York, including its statutes of limitations, without regard to principles of conflict of law that would defer to the laws of another jurisdiction.

The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any Related Matters.  The Company and A&M agree, to the extent permitted by applicable law,

-9-

23andMe Holding Co.
March 21, 2025

that any action with respect to any Related Matters shall be brought and adjudicated exclusively in the United States District Court for the Southern District of New York or, if such court lacks jurisdiction, in the New York state courts with jurisdiction over New York, New York; that those courts shall have exclusive jurisdiction over any Related Matters; to submit to the personal jurisdiction of such courts; and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue in any legal proceeding.

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee. This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M. The Company agrees that A&M may aggregate information provided by or on behalf of the Company during this engagement with information provided by or on behalf of others and use and disclose that information in de-identified form as part of research and advice, including, without limitation, benchmarking services. Notwithstanding anything herein to the contrary, A&M may reference or list the Company's name and/or logo and/or a general description of the services in A&M's marketing materials, including, without limitation, on A&M's website.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _Matthew Kvarda_
Matthew Kvarda
Managing Director

Accepted and agreed:

23andMe Holding Co.
on behalf of itself and its subsidiaries

By: _Joe Selsavage_
Joe Selsavage, Chief Financial Officer

-10-

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated March [9], 2025 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement"), by and between Alvarez & Marsal North America, LLC ("A&M") and 23andMe Holding Co. together with its subsidiaries and their respective assigns and successors (jointly and severally, the "Company"), for services to be rendered to the Company by A&M.

A.     The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.     These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit,

23andMe Holding Co.
March 21, 2025

duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.     If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.     In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with

-12-

23andMe Holding Co.
March 21, 2025

respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court. The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.


23andMe Holding Co.                          ALVAREZ & MARSAL NORTH
on behalf of itself and its subsidiaries     AMERICA, LLC

By: _____                  By: _____
Name: Joe Selsavage                          Name: Matthew Kvarda
Title:  Chief Financial Officer              Title:  Managing Director

**<u>Exhibit B</u>**

**Kvarda Declaration**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF MATTHEW E. KVARDA IN SUPPORT**
**OF THE DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF**
**ALVAREZ & MARSAL NORTH AMERICA, LLC AND (II) DESIGNATING**
**MATTHEW E. KVARDA AS CHIEF RESTRUCTURING OFFICER OF THE**
**DEBTORS AND CERTAIN ADDITIONAL PERSONNEL, IN EACH CASE,**
**EFFECTIVE AS OF THE PETITION DATE**

I, Matthew E. Kvarda, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1.      I am a Managing Director with Alvarez & Marsal North America, LLC (together with employees of its professional service provider affiliates (all of which are wholly-owned by its parent company and employees), and its wholly-owned subsidiaries and independent contractors, "A&M"), a restructuring advisory services firm with numerous offices throughout the country.  I submit this declaration (the "Declaration") on behalf of A&M in connection with the application (the "Application") of the above-captioned debtors (collectively, the "Debtors") for entry of interim and final orders (a) authorizing the employment and retention of A&M and (b) designating Matthew E. Kvarda as Chief Restructuring Officer of the Debtors and certain

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

Additional Personnel, in each case, effective as of the Petition Date,[2] on the terms and conditions

set forth in the Application and the Engagement Letter dated March 21, 2025, which superseded

the previously executed engagement letter dated January 28, 2025 and attached to the Application

as <u>Exhibit A</u> effective as of Petition Date.  Except as otherwise noted, I have personal knowledge

of the matters set forth herein.[3]

**<u>Disinterestedness and Eligibility</u>**

2.     A&M together with its affiliates (the "<u>Firm</u>") utilizes certain procedures (the "<u>Firm</u>

<u>Procedures</u>") to determine its relationships, if any, to parties that may have a connection to any of

the Debtors in the chapter 11 cases.  In implementing the Firm Procedures, the following actions

were taken to identify parties that may have connections to the Debtors and to determine the Firm's

relationship with such parties:

> (a)     A&M requested and obtained from the Debtors extensive lists of interested parties and significant creditors (the "<u>Potential Parties in Interest</u>").[4]   The list of Potential Parties in Interest which A&M reviewed is annexed hereto as <u>Schedule A</u>.  The Potential Parties in Interest reviewed include, among others, Bankruptcy Judges and Staff (Eastern District of Missouri), Bankruptcy Professionals (Retained), Banks, Lenders, UCC Lien Parties, and Administrative Agents, Counsel Representing Cyber Security Incident Claimants, Customers, Debtors, Directors and Officers, Insurance, Known Non-Debtor Affiliates, Landlords and Subtenants, Letter of Credit (Beneficiary), Letter of Credit (Issuer), Litigation, Potential Buyer, Financial Advisor to Potential Buyer, Legal Counsel to Potential Buyer, Significant Equity Holders, Taxing Authorities and Governmental and Regulatory Agencies, the U.S. Trustee Officer, Utilities, and Vendors.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Application.

[3]   Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at A&M and are based on information provided by such professionals.

[4]   As may be necessary, A&M will supplement this Declaration if it becomes aware of a relationship that may adversely affect A&M's retention in these cases or would otherwise require disclosure.

2

(b)    A&M then compared the names of each of the Potential Parties in Interest to the names in the master electronic database of the Firm's current and former clients (the "Client Database"). The Client Database generally includes the name of each client of A&M, the name of each party who is or was known to be adverse to such client of the Firm in connection with the matter in which the Firm is representing such client, the name of each party that has, or has had, a substantial role with regard to the subject matter of the Firm's retention, and the names of Engagement Personnel who are or were primarily responsible for matters for such clients.

(c)    An email was issued to all Firm professionals requesting disclosure of information regarding:  (i) any known personal connections between the respondent and/or the Firm on the one hand, and either the Potential Parties in Interest or the Debtors, on the other hand;[5] (ii) any known connection or representation by the respondent and/or the Firm of any of the Potential Parties in Interest in matters relating to the Debtors; and (iii) any other conflict or reason why the Firm may be unable to represent the Debtors.

(d)    Known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.  These connections are listed in Schedule B annexed hereto.

3.    As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, A&M:

(a)    is not a creditor of the Debtors (including by reason of unpaid fees for prepetition services)[6] or an equity security holder of the Debtors (except certain Firm employees may own de minimis amounts

---

[5]    In reviewing its records and the relationships of its professionals, A&M did not seek information as to whether any Firm personnel or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain A&M personnel have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtors or any other party in interest, or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact A&M's disinterestedness or otherwise give rise to a finding that A&M holds or represents an interest adverse to the Debtors' estates. It is also noted that in the course of our review it came to A&M's attention that A&M personnel hold de minimis investments, representing not more than 0.01% of the equity interests in the related entity, in various parties in interest, including but not limited to Abbvie Inc., Amazon, Cardinal Health, Inc., FedEx Corp, Google, Inc., JPMorgan Chase Bank N.A., Lloyd's America, Inc., Meta Platforms, Inc., Pacific Gas & Electric Company, PG&E Corporation, PayPal Inc., Unum Life Insurance Company of America, Walmart.com.

[6]    *See* paragraph 11 below.

3

                      representing not more than 0.01% of the equity interests in the related entity);

(b)     is not and has not been, within two years before the date of the filing of the petition, a director, officer (other than by virtue of A&M employees serving in the roles as Engagement Personnel (prepetition and postpetition) as described in the Application), or an employee of the Debtors; and

(c)     does not have any interest materially adverse to the interests of the Debtors' estates, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

4.       As can be expected with respect to any international professional services firm such as the Firm, the Firm provides services to many clients with interests in the Debtors' chapter 11 cases.  To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtors' chapter 11 cases.

5.       In addition to the relationships disclosed on Schedule B, I note the following:

(a)     JPMorgan Chase Bank, N.A., together with certain of its affiliates (collectively, "JPMC") and TD Bank, N.A., together with certain of its affiliates (collectively, "TD Bank") are Potential Parties in Interest.  Under a credit facility (the "Credit Facility") to A&M's parent company Alvarez & Marsal Holdings, LLC ("A&M Holdings"): JPMC is a lender and the syndication agent; and TD Bank is a participating lender and documentation agent.  JPMC, and TD Bank receive certain customary and negotiated fees and reimbursement of expenses in connection with their roles under the Credit Facility.

(b)     Alvarez & Marsal Inc. ("A&M Inc."), an entity controlled by Bryan Marsal and Antonio Alvarez II, is the majority owner of A&M Holdings.  A&M Holdings is the sole owner of A&M.  Messer's Marsal and Alvarez comprise the Board of Managers of A&M Holdings and two of the Board of Managers of A&M.   Messer's Marsal and Alvarez, together with A&M Inc., indirectly control a significant interest in the general partner of A&M Capital which consists of various funds (the "A&M Capital Funds").  Also, certain A&M employees have invested in limited partnership interests in the A&M Capital Funds and, indirectly, their general partners and, from time to time, A&M and/or its professional service provider affiliates provide services to the A&M Capital Funds.   The

4

investments of the A&M Capital Funds are private equity investments in companies (all of whom are unrelated to the Debtors and these chapter 11 cases except as otherwise set forth herein).

(c)     A&M Capital owns a minority interest in Allied Universal Security Services, a Potential Party in Interest and vendor to the Debtors.

(d)     Prior to the Petition Date, A&M's affiliate, Alvarez & Marsal Valuation Services, LLC ("A&M VS") provided certain valuation services to the Debtors pursuant to separate engagement agreements between the Debtors and A&M VS.  Those services included (i) from 2016-2019, 409A valuations (ii) in 2021, an assessment as to the fair value of the Debtors' public and private placement warrants, and (iii) in 2012-2015, valuations of certain acquired assets.

(e)     In 2019, A&M VS was engaged by Yuri Milner to provide valuation and consulting for tax reporting purposes related to an investment in 23andMe, Inc.

6.     Further, as part of its diverse practice, the Firm appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  Further, A&M has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of which may be involved in these proceedings.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests adverse to the Debtors in matters upon which the Firm is to be employed, and none are in connection with these cases.

7.     If any new material relevant facts or relationships are discovered or arise, A&M will promptly file a supplemental declaration.

**Compensation**

8.      Subject to Court approval of the Application and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules for the United States Bankruptcy Court for the Eastern District of Missouri. A&M's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application.  These hourly rates are adjusted annually.  In addition, A&M would be entitled to the Completion Fee payable upon the earlier of (x) the consummation of a chapter 11 plan of reorganization and (y) the sale, transfer or other disposition of all or a substantial portion of the assets or equity of the Debtors in one or more transactions.

9.      To the best of my knowledge, (i) no commitments have been made or received by A&M with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) A&M has no agreement with any other entity to share with such entity any compensation received by A&M in connection with these chapter 11 cases.

**Efforts to Avoid Duplication of Services**

10.     The Debtors have applied, or expect to apply, to the Court to retain additional professionals, including: (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as bankruptcy counsel; (b) Carmody MacDonald P.C., as bankruptcy co-counsel; (c) Moelis & Company LLC, as investment banker; (d) Deloitte Tax LLP, as turnaround and restructuring tax advisor; (e) Kroll Restructuring Administration LLC, as claims and noticing agent and administrative advisor; (e) Goodwin Procter LLP, as counsel to the Special Committee of the Board of Directors, and (f) Lewis Rice LLC, as co-counsel to the Special Committee of the Board of Directors.  The Debtors do not believe that the services to be performed by A&M on behalf of the Debtors will be

6

duplicative of services provided by these additional professionals.  The Debtors and A&M are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is minimal duplication of effort as a result of A&M's retention as investment banker.  The Debtors understand that A&M will use its reasonable efforts to work cooperatively with the Debtors' other professionals to integrate any respective work performed by those professionals on behalf of the Debtors.

By reason of the foregoing, I believe A&M is eligible for retention by the Debtors pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

Dated:  March 24, 2025

/s/ *Matthew E. Kvarda*
Matthew E. Kvarda
Managing Director
Alvarez & Marsal North America, LLC

8

## Schedule A

**List of Potential Parties in Interest**

**POTENTIAL PARTIES IN INTEREST**[1]

1.  (FINANCIAL ADVISOR TO) POTENTIAL BUYER
    - JPMORGAN SECURITIES LLC
    - TD COWEN
2.  (LEGAL COUNSEL TO) POTENTIAL BUYER
    - ROPES & GRAY LLC
    - SKADDEN, ARPS, SLATE, MEAEGHER & FLOM LLP
3.  BANKRUPTCY JUDGES/STAFF
    - CATHERINE NORWOOD
    - CHICQUITA GREENE-HESTER
    - CHIEF JUDGE BONNIE L. CLAIR
    - COURTNEY KIRBIS
    - HAYLEY KOONTZ
    - JUDGE BRIAN C. WALSH
    - JUDGE KATHY A. SURRATT-STATES
    - KAILA SPIVEY
    - TAYLOR ROWLAND
4.  BANKRUPTCY PROFESSIONALS - RETAINED
    - ALVAREZ AND MARSAL NORTH AMERICA, LLC
    - CARMODY MACDONALD P.C.
    - DELOITTE TAX LLP
    - GOODWIN PROCTER LLP
    - KROLL RESTRUCTURING ADMINISTRATION LLC
    - LEWIS RICE LLC
    - MOELIS & COMPANY LLC
    - PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
5.  BANKS/LENDER/UCC LIEN PARTIES/ADMINISTRATIVE AGENTS
    - CARDINAL HEALTH 110 LLC, "AS AGENT"
    - JPMORGAN CHASE BANK N.A.
    - JPMORGAN CHASE BANK N.A. - TORONTO BRANCH
    - SMITH DRUG COMPANY-DIVISION OF JM SMITH CORP.
    - U.S. BANK EQUIPMENT FINANCE
    - U.S. BANK NATIONAL ASSOCIATION
6.  COUNSEL REPRESENTING CYBER SECURITY INCIDENT CLAIMANTS
    - ARON LAW FIRM
    - AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ PLLC
    - BARNOW & ASSOCIATES P.C.
    - BERMAN TOBACCO

---

[1]  This list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose. As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible. Accordingly, a party that otherwise may fall under multiple categories is likely to be listed under only one category.

- BONI, ZACK & SNYDER LLC
- BOTTINI & BOTTINI, INC.
- BRADLEY/GROMBACHER LLP
- CLARKSON LAW FIRM
- CLAYEO C. ARNOLD,  PROFESSIONAL LAW CORP.
- COLE & VAN NOTE
- COTCHETT PITRE & MCCARTHY LLP
- CUNEO GILBERT & LADUCA
- DU VERNET STEWART
- EDELSBERG LAW, P.A.
- EMPLOYEE JUSTICE LEGAL GROUP, PC
- FALLS LAW GROUP
- FEDERMAN & SHERWOOD
- FREED KANNER LONDON & MILLEN LLC
- GLANCY PRONGAY & MURRAY LLP
- GUSTAFSON GLUEK  PLLC
- HERMAN JONES LLP
- KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
- KAPLAN FOX & KILSHEIMER LLP
- KAZEROUNI LAW GROUP
- KLEINE PC
- KOPELITZ OSTROW FERGUSON WEISELBERG GILBERT
- KP LAW LTD. (UK)
- LABATON KELLER
- LAUKAITIS LAW LLC
- LAW OFFICE OF COURTNEY WEINER PLLC
- LAW OFFICES OF PAUL WHALEN, PC
- LEVI & KORSINSKY
- LEVIN SEDRAN & BERMAN LLP
- LEXINGTON LAW GROUP, LLP
- LIEFF CABRASER HEIMANN & BERNSTEIN AND ROBBINS GELLER
- LOCKRIDGE GRINDAL NAUEN P.L.L.P.
- LOFTUS & EISENBERG, LTD.
- LONGMAN LAW, P.C.
- LYNCH CARPENTER LLP
- MASON LLP
- MCSHANE & BRADY, LLC
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
- NEAL & HARWELL
- PIERCE GORE LAW FIRM
- POTTER HANDY LLP
- POULIN | WILLEY | ANASTOPOULO, LLC
- REESE LLP

- ROBBINS GELLER RUDMAN & DOWD, LLP
- SALTZ, MONGELUZZI & BENDESKY, PC
- SCHUBERT JONCKHEER & KOLBE LLP
- SCOTT+SCOTT ATTORNEYS AT LAW LLP
- SROURIAN LAW FIRM, P.C.
- THE GRANT LAW FIRM, PLLC
- THE MEHDI FIRM LLP
- TOSTRUD LAW GROUP PC
- TYCKO & ZAVAREEI
- TYCKO & ZAVAREEI, LLP
- WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
- WUCETICH & KOROVILAS LLP
- YANNI LAW
- ZINNS LAW, LLC

7. CUSTOMERS
   - ABBVIE INC.
   - AMAZON
   - AMAZON : AMAZON CA
   - AMAZON : AMAZON UK
   - AMAZON : WOOT
   - CARDINAL HEALTH, INC.
   - COREWEAVE, INC.
   - GLAXOSMITHKLINE & GLAXOSMITHKLINE LLC
   - GSK
   - MICHAEL J FOX FOUNDATION : MJFF PD
   - MYHERITAGE
   - SANOFI US SERVICES INC.
   - WALMART.COM

8. DEBTORS
   - 23 AND ME
   - 23ANDME HOLDING CO.
   - 23ANDME INC.
   - 23ANDME PHARMACY HOLDINGS, INC.
   - LEMONAID COMMUNITY PHARMACY
   - LEMONAID HEALTH INC.
   - LEMONAID PHARMACY HOLDINGS, INC.
   - LPHARM CS LLC
   - LPHARM INS LLC
   - LPHARM RX LLC
   - LPRXONE, LLC
   - LPRXTHREE LLC
   - LPRXTWO, LLC

9. DIRECTOR/OFFICER
   - ANDRE FERNANDEZ

4

- AVI FACTOR
- ELAND SIDDLE
- GUY CHAYOUN
- JIM FRANKOLA
- JOE SELSAVAGE
- MARK JENSEN
- THOMAS WALPER

**10.** INSURANCE
- AIG FINANCIAL LINES CLAIMS
- ALLIED WORLD SPECIALTY INSURANCE COMPANY
- ARCH SPECIALTY INSURANCE COMPANY
- AXIS INSURANCE
- BEAZLEY USA SERVICES, INC
- BERKLEY LIFE SCIENCES
- BERKLEY PROFESSIONAL LIABILTY
- CHUBB GROUP
- CHUBB GROUP OF INSURANCE CO
- CNA CLAIMS REPORTING
- COMMERCIAL MANAGEMENT LIABILITY
- GREAT AMERICAN INSURANCE COMPANY
- HCC GLOBAL FINANCIAL PRODUCTS, LLC.
- HISCOX USA
- HUDSON INSURANCE COMPANY
- LLOYD'S AMERICA, INC.
- OLD REPUBLIC PROFESSIONAL LIABILITY, INC.
- RESILIENCE CYBER INSURANCE SOLUTIONS
- THE HARTFORD FINANCIAL LINES
- THE TRAVELERS COMPANIES, INC.
- TRIUM CYBER US SERVICES, INC.
- WOODRUFF SAWYER
- XL PROFESSIONAL INSURANCE

**11.** KNOWN AFFILIATES - JV
- LMND CA
- LMND KS
- LMND NJ
- LMND TX

**12.** LANDLORDS/ SUBTENANTS
- KR OP TECH, LLC
- OYSTER POINT TECH CENTER LLC, A DELEWARE LIMITED LIABILITY COMPANY

**13.** LETTER OF CREDIT- BENEFICIARY
- 221 N MATHILDA, LLC, A DELEWARE LIMITED LIABILITY COMPANY
- PAYPAL, INC.

**14.** LITIGATION

- ADRIANE FARMER
- ALEX VELARDE
- ALEXANDRA HOFFMAN
- ALMEIDA LAW GROUP LLC
- ALYSON HU
- ANDEZ JONES
- ANTOINETTE POWELL
- BONNIE EDEN
- BRANDON MOLINA
- BRIANA DUBE
- BRIANNA SORENSEN
- CAMIE PICHA
- CAROLINE GREENBERG
- CAROLYN ROCK
- CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP
- CHRISTINA SHAW
- CHRISTOPHER DU VERNET CARLIN MCGOOGAN DUVERNET STEWART, BARRISTERS AND SOLICITERS
- CLAIRE PADDY
- DAVID MELVIN
- DAVID TULCHINSKY
- DHAMAN GILL
- EDELSON PC
- ELAINE FRALIX
- ERIK STANFORD
- FALLS LAW GROUP
- HARIS MIRZA
- HAROLD GARRETT
- HAROLD VELEZ
- JOHN DIAZ
- JULIE MACMILLAN
- KATHY VASQUEZ
- KATIANNE NAVARRO
- KELLER ROHRBACK L.L.P.
- KERRY LAMONS
- KND COMPLEX LITIGATION
- KP LAW LIMITED
- KRISTEN RIVERS
- LABATON KELLER SUCHAROW LLP
- LAQUISHA SMITH
- LEENA YOUSEFI YLAW GROUP
- LEVI + KORSINSKY LLP
- LUIS VALLADARES
- MARJORIE MORGENSTERN

6

- MATTHEW A. SMITH
- MATTHEW MARDEN
- MAX ALPERSTEIN
- MCGUIRE LAW, P.C.
- MELANIE BERMAN
- MELISSA RYAN
- MICHAEL SCHUTZ
- MICHELE BACUS
- MICHELLE ANDRIZZI
- MICHELLE IGOE
- MIGLIACCIO & RATHOD LLP
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLC
- MONICA SANTANA
- NEIL BENEDICT
- NICHOLAS FURIA
- NICHOLE FRIEND
- PATRICK CAPSTICK
- POLINA IOFFE
- POTTER HANDY, LLP
- RICHARD ROE
- RUDY K. THOMPSON
- SARAH CANTU
- STEPHEN L. SEIKEL
- STEVE SIEGEL HANSON LLP
- THOMAS VICKERY
- TRACY SCOTT
- TRISHA WILKUS
- TYRELL BROWN

**15.** POTENTIAL BUYER
- NEW MOUNTAIN CAPITAL, LLC

**16.** REGULATORS
- AGENCIA ESPAÑOLA DE PROTECCIÓN DE DATOS
- BUREAU OF CONSUMER PROTECTION
- FEDERAL TRADE COMMISSION
- OFFICE OF ATTORNEY GENERAL TODD ROKITA
- OFFICE OF THE ATTORNEY GENERAL - CONNECTICUT
- OFFICE OF THE PRIVACY COMMISSIONER OF CANADA
- UNITED KINGDOM INFORMATION COMMISSIONER'S OFFICE

**17.** SIGNIFICANT EQUITY HOLDERS
- ABEEC 2.0, LLC
- ANNE WOJCICKI
- ZENTREE INVESTMENTS LIMITED

**18.** U.S. TRUSTEE OFFICE
- PAUL RANDOLPH

**19.** VENDORS (TOP 85% OF ACCOUNTS PAYABLE)
- ACCO ENGINEERED SYSTEMS
- AGANITHA AI INC.
- ALIXPARTNERS, LLC
- ALLIED UNIVERSAL SECURITY SERVICES
- ALOM TECHNOLOGIES CORPORATION
- AMAZON WEB SERVICES
- ANDRE JOHN FERNANDEZ
- BDO USA LLP
- BLUE SHIELD OF CALIFORNIA
- BRAINTREE
- CATALENT CTS SINGAPORE PRIVATE LIMITED
- CDW DIRECT LLC
- CLOUDFLARE, INC.
- COALITION FOR GENETIC DATA PROTECTION INC.
- CONSULTING, JW LLC
- CONVERGE TECHNOLOGY SOLUTIONS US, LLC
- DECHERT LLP
- DELOITTE & TOUCHE LLP
- DELOITTE CONSULTING LLP
- DELTA DENTAL OF CALIFORNIA
- DNA GENOTEK INC.
- EGON ZEHNDER INTERNATIONAL, INC
- FEDEX CORP
- FOLK DEVILS LLC
- FOODA, INC.
- FULGENT THERAPEUTICS, LLC
- GLAXOSMITHKLINE INTELLECTUAL PROPERTY LTD.
- GOODWIN PROCTER LLP
- GOOGLE, INC. - ADWORDS
- GREENBERG TRAURIG LLP
- HEALTHLINE MEDIA INC
- IHEARTMEDIA + ENTERTAINMENT
- ILLUMINA, INC.
- INTEGRAL RX
- JELLYFISH US LIMITED
- KAISER FOUNDATION HEALTH PLAN NORTHERN CA
- KATIE COURIC MEDIA, LLC
- KILROY REALTY, LP
- KPMG LLP
- L.E.K. CONSULTING LLC
- LIFEBIT BIOTECH LIMITED
- MARK E. JENSEN
- MEDPACE INC.

- META PLATFORMS, INC.
- METROPOLITAN LIFE INSURANCE COMPANY
- MOELIS & COMPANY, LLC
- MORGAN, LEWIS & BOCKIUS LLP
- MOVIANTO
- NATIONAL GENETICS INSTITUTE
- PACIFIC GAS AND ELECTRIC COMPANY
- PARTNERIZE
- PETER M LEFKOWITZ
- POWER DIGITAL MARKETING, INC.
- PRECISION FOR MEDICINE, INC.
- PRITI PATEL CONSULTING LLC
- RAIN THE GROWTH AGENCY
- RIGHT SIDE UP LLC
- SALESFORCE.COM
- SANTA CLARA COUNTY TAX COLLECTOR
- SCALE STRATEGY OPERATIONS LLC
- SCG GROVE 221, LLC
- STEADYMD, INC.
- SUREFOX NORTH AMERICAN
- TANGO CARD, INC.
- TATARI, INC.
- TCWGLOBAL (WMBE PAYROLLING INC.)
- TELUS INTERNATIONAL SERVICES LIMITED
- UNUM LIFE INSURANCE COMPANY OF AMERICA
- VENTANA MEDICAL SYSTEMS, INC.
- WILSON SONSINI GOODRICH & ROSATI, PROFESSIONAL CORPORATION
- WOODRUFF-SAWYER & CO.
- WOOT SERVICES LLC
- WORLD ARCHIVES
- WUXI BIOLOGICS (HONG KONG) LIMITED
- ZENDESK, INC

## **Schedule B**

**Potential Connections or Related Parties**

23andMe

**Current and Former Clients of A&M and/or its Affiliates** [1]

Abbvie Inc.
AIG Financial Lines Claims
Allied Universal Security Services
Amazon: Amazon CA
Arch Specialty Insurance Company
Axis Insurance
BDO USA LLP
Beazley USA Services, Inc.
Blue Shield of California
Catalent CTS Singapore Private Limited
Cardinal Health, Inc.
Chubb Group
Dechert LLP
Deloitte & Touche LLP
FedEx Corp
Glaxosmithkline & Glaxosmithkline LLC
Google, Inc. - AdWords
Great American Insurance Company
Greenberg Traurig LLP
HCC Global Financial Products, LLC
Hiscox USA
Hudson Insurance Company
iHeartMedia + Entertainment
JPMorgan Chase Bank N.A.
Kaiser Foundation Health Plan Northern CA
KPMG LLP
Lemonaid Health Inc.
Lloyd's America
Meta Platforms, Inc.
Metropolitan Life Insurance Company
Moelis & Company LLC
MyHeritage
Old Republic Professional Liability, Inc.
Pacific Gas & Electric Company, PG&E
    Corporation
PayPal Inc.
Salesforce.com

Sanofi
Skadden, Arps, Slate, Meagher & Flom LLP
Tatari, Inc.
TD Cowen
Telus International Services Limited
The Travelers Companies, Inc.
U.S. Bank Equipment Finance
Unum Life Insurance Company of America
Walmart.com
Wuxi Biologics (Hong Kong) Limited
Zendesk, Inc.

**Significant Equity Holders of Current and Former A&M Clients** [2]

ABEEC 2.0, LLC
AIG Financial Lines Claims
AlixPartners, LLC
Allied Universal Security Services
Amazon: Amazon CA
Blue Shield of California
Converge Technology Solutions US, LLC
Google, Inc. - AdWords
Hiscox USA
Hudson Insurance Company
Illumina Inc.
JPMorgan Chase Bank N.A.
Kaiser Foundation Health Plan Northern CA
KPMG LLP
Lloyd's America
Metropolitan Life Insurance Company
Michael J Fox Foundation: MJFF PD
Moelis & Company LLC
Old Republic Professional Liability, Inc.
PayPal Inc.
Salesforce.com
Sanofi
TD Cowen
Telus International Services Limited

---

[1] A&M and/or an affiliate is currently providing or has previously provided certain consulting or interim management services to these parties or their affiliates (or, with respect to those parties that are investment funds or trusts, to their portfolio or asset managers or their affiliates) in wholly unrelated matters.

[2] These parties or their affiliates (or, with respect to those parties that are investment funds or trusts, their portfolio or asset managers or other funds or trusts managed by such managers) are significant equity holders of clients or former clients of A&M or its affiliates in wholly unrelated matters.

1

**23andMe**

The Travelers Companies, Inc.
U.S. Bank Equipment Finance
Walmart.com

**Professionals & Advisors**[3]
AlixPartners, LLC
BDO USA LLP
Berman Tobacco
Cardinal Health, Inc.
Carmody MacDonald P.C.
Cotchett Pitre & McCarthy, LLP
Dechert LLP
Deloitte & Touche LLP
Egon Zehnder International Inc.
FedEx Corp
Goodwin Procter LLP
Great American Insurance Company
Greenberg Traurig LLP
JPMorgan Chase Bank N.A.
Keller Rohrback L.L.P.
KPMG LLP
Labaton Keller Sucharow LLP
L.E.K. Consulting LLC
Lieff Cabraser Heimann & Bernstein
Levin Sedran & Berman LLP
Lewis Rice LLC
McGuire Law, P.C.
Metropolitan Life Insurance Company
Milberg Coleman Bryson Phillips Grossman
   Plc
Moelis & Company LLC
Morgan, Lewis & Bockius LLP
Paul, Weiss, Rifkind, Wharton & Garrison
   LLP
Reevemark LLC
Right Side Up LLC

Robbins Geller Rudman & Dowd LLP
Ropes & Gray LLC
Scott+Scott Attorneys at Law LLP
Skadden, Arps, Slate, Meagher & Flom LLP
Stueve Siegel Hanson LLP
TD Cowen
Tycko & Zavareei LLP

**Significant Joint Venture Partners**[4]
JPMorgan Chase Bank N.A.
Metropolitan Life Insurance Company

**Board Members/Officers/Employees**[5]
Fernandez, Andre John
Jensen, Mark

**A&M Vendors**[6]
AIG Financial Lines Claims
Amazon: Amazon CA
BDO USA LLP
CDW Direct, LLC
Chubb Group
Egon Zehnder International Inc.
FedEx Corp
Goodwin Procter LLP
Google, Inc. – AdWords
Greenberg Traurig LLP
Jellyfish US Limited
JPMorgan Chase Bank N.A.
Kaiser Foundation Health Plan Northern CA
KPMG LLP
Lloyd's America, Inc.
Metropolitan Life Insurance Company
Morgan, Lewis & Bockius LLP

---

[3] These professionals have represented clients in matters where A&M was also an advisor (or provided interim management services) to the same client. In certain cases, these professionals may have engaged A&M on behalf of such client.

[4] These parties or their affiliates are significant joint venture partners of other clients or former clients of A&M or its affiliates in wholly unrelated matters.

[5] These parties or their affiliates are or were board members. officers or members of management of other clients or former clients of A&M or their affiliates in wholly unrelated matters.

[6] These parties or their affiliates provide or have provided products, goods and/or services (including but not limited to legal representation) to A&M and/or its affiliates

**23andMe**

Paul, Weiss, Rifkind, Wharton & Garrison
  LLP
Salesforce.com
Skadden, Arps, Slate, Meagher & Flom LLP
Tango Card,Inc
Telus International Services Limited
The Travelers Companies, Inc.

## **Exhibit C**

**Dispute Resolution Procedures**

The following procedures shall be used to resolve any controversy or claim (a "<u>Dispute</u>") as provided in this agreement. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

## **Mediation**

A dispute shall be submitted to mediation by written notice to the other party or parties. Through the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations.  The mediator will be selected by agreement of the parties.  If the parties cannot agree on a mediator, a mediator will be designated by the American Arbitration Association ("<u>AAA</u>") or JAMS/Endispute at the request of a party.  Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties.  The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.  The mediation will be treated as a settlement discussion and therefore will be confidential.  The mediator may not testify for either party in any later proceeding relating to the dispute.  No recording or transcript shall be made of the mediation proceedings.

Each party will bear its own costs in the mediation.  The fees and expenses of the mediator will be shared equally by the parties.

## **Arbitration**

If a dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration and judgment on the award rendered

by the arbitration may be entered in any court having jurisdiction thereof.  The arbitration will be conducted in accordance with the procedures in this document and the Arbitration Rules for Professional Accounting and Related Services Disputes of the AAA ("AAA Rules").