# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**23ANDME HOLDING CO.,** *et al.*,[1]<br><br>Debtors. | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered)<br><br>Hearing Date: March 26, 2025<br>Hearing Time: 12:00 p.m.<br><br>Related Doc. 15 |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF (A) CERTAIN CRITICAL VENDORS, (B) LIEN CLAIMANTS, (C) 503(B)(9) CLAIMANTS, AND (D) FOREIGN VENDORS, (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO AND AUTHORIZING THE PAYMENT OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing, but not directing, the Debtors to pay in the ordinary course of business prepetition claims held by certain (i) Critical Vendors, (ii) Lien Claimants, (iii) 503(b)(9) Claimants, and (iv) Foreign Vendors, (b) granting administrative expense priority status to certain Outstanding Orders and authorizing the payment of such obligations in the ordinary course of business, and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri; and this Court having found that this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED on an interim basis as set forth herein.

2. The Debtors are authorized, but not directed, in their sole discretion, to pay Vendor Obligations in an aggregate amount not to exceed $5,813,000 on an interim basis. Nothing herein shall prejudice the Debtors' ability to seek a further order from this Court authorizing the Debtors to exceed the aggregate amounts of any category as set forth herein during the interim period.

3. The Debtors are authorized, but not directed, to pay, in the Debtors' sole election, certain claims arising in connection with Outstanding Orders in the ordinary course of business, and such undisputed obligations shall be granted administrative expense priority status in

accordance with section 503(b)(1)(A); *provided* that nothing in this Interim Order shall determine the pre-Petition Date or post-Petition status of goods in transit as of the Petition Date.

4. The Debtors are authorized, but not directed, in their sole discretion, to require that, as a condition to receiving any payment under this Interim Order, a Vendor Claimant maintain or apply, as applicable, Customary Trade Terms. The Debtors may require more favorable trade terms with any Vendor Claimant as a condition to payment of any prepetition claim. Regardless of whether a Trade Agreement has been executed or if the parties have agreed in writing that Customary Trade Terms are a condition to payment, if a Vendor Claimant, after receiving a payment under this Interim Order, ceases to provide Customary Trade Terms, then the Debtors may, in their discretion and without further order of the Court: (a) declare such payment to be an improper postpetition transfer on account of a prepetition claim, and therefore, deem such payment to be immediately recoverable by the Debtors in cash upon request; (b) upon recovery by the Debtors, reinstate any prepetition claim of such party as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, at the Debtors' election, recharacterize and apply any payment made pursuant to this Interim Order to such outstanding postpetition balance and require such supplier or vendor to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

5. Any party that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the extent so paid, Vendor Obligations of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets, and properties.

6. The form of Trade Agreement, substantially in the form attached hereto as **Exhibit A**, is approved in its entirety. The Debtors are authorized to enter into any such Trade Agreements, as such form may be modified by the Debtors in their reasonable business judgment, on a final basis.

7. Notwithstanding anything to the contrary contained in the Motion or herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to and in accordance with any orders, as applicable, authorizing or approving any postpetition debtor-in-possession financing or use of cash collateral for the Debtors (such orders, the "<u>DIP Order</u>") and any budget in connection with any such postpetition debtor-in-possession financing or use of cash collateral authorized therein. To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

8. Except as expressly set forth in this Interim Order, nothing in this Interim Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim, except with respect to the Outstanding Orders; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any

other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.

9. The Debtors shall maintain a matrix summarizing amounts paid, subject to the terms and conditions of this Interim Order, including the following information:  (a) the names of payee; (b) the amount of payment; (c) the category or type of payment as further described and classified in the Motion; (d) the Debtor or Debtors that made the payment; and (e) the payment date (the "Critical Vendor Matrix").  The Debtors shall provide a copy of the Critical Vendor Matrix to the U.S. Trustee every thirty days beginning upon the entry of this Interim Order and to any committee appointed in these chapter 11 cases upon their request; *provided* that such recipients shall keep the Critical Vendor Matrix strictly confidential and not disseminate it to other parties.

10. The Banks are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests, automated clearing house transfers, and other payment orders drawn or issued by the Debtors under this Interim Order, whether presented or issued before or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution.  Such Banks and financial institutions are authorized to rely on representations of the Debtors as to which checks, electronic funds transfer requests, and payment orders are authorized to be paid pursuant to this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

11. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any amounts owed in connection with the relief granted herein.

12. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

13. Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

14. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

16. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

17. No later than two business days after the date of this Interim Order, the Debtors shall serve on the Notice Parties (a) a copy of the Interim Order and (b) a notice scheduling a final hearing on the Motion, on April 22, 2025, at 1:30 p.m. (prevailing Central Time), and shall file a certificate of service no later than 24 hours after service. If no objections to entry of a final order on the Motion are timely received, the Court may enter such final order without need for the final hearing.

Dated: March 28, 2025  
St. Louis, Missouri  
cjs

Brian C. Walsh  
United States Bankruptcy Judge

**Order Prepared By:**

**Carmody MacDonald P.C.**
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:    (314) 854-8600
Facsimile:    (314) 854-8660
Email:        thr@carmodymacdonald.com
              nrw@carmodymacdonald.com
              jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
Email:        pbasta@paulweiss.com
              chopkins@paulweiss.com
              jchoi@paulweiss.com
              ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Exhibit A

**Form Trade Agreement**

> **THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

### TRADE AGREEMENT

23andMe Holding Co., on behalf of itself and its subsidiaries (collectively, the "Company"), on the one hand, and the supplier identified in the signature block below (the "Supplier"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of the latest date in the signature blocks below.

### Recitals

**WHEREAS,** on March 23, 2025 (the "Petition Date"), 23andMe Holding Co. and its debtor subsidiaries and non-debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court").

**WHEREAS**, on [●], 2025, the Court entered its *Interim Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Certain Critical Vendors, (B) Lien Claimants, (C) 503(b)(9) Claimants, and (D) Foreign Vendors, (II) Granting Administrative Expense Priority to and Authorizing the Payment of Outstanding Orders, and (III) Granting Related Relief* (the "Trade Claimant Order") [Docket No. [●]] authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain suppliers, including the Supplier, subject to the terms and conditions set forth therein.[1]

**WHEREAS**, prior to the Petition Date, the Supplier delivered goods to the Company and/or performed services for the Company, and the Company paid the Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

**WHEREAS,** the Company and the Supplier (each a "Party" and, collectively, the "Parties") agree to the following terms as a condition of payment on account of certain prepetition claims the Supplier may hold against the Company.

### Agreement

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Trade Claimant Order.

1. Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. Supplier Payment. The Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to the Supplier is $[  ] (the "Agreed Supplier Claim"). Following execution of this Trade Agreement, the Company shall pay the Supplier $[  ] on account of its Agreed Supplier Claim (the "Supplier Payment") (without interest, penalties, or other charges), as such invoices become due and payable, which such Supplier Payments shall reduce the agreed amount of the Agreed Supplier Claim dollar for dollar.

3. Agreement to Supply.

   a. The Supplier shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from the Supplier (to the extent the Company seeks such services), for the duration of the Debtors' chapter 11 cases based on the following terms (the "Customary Trade Terms"): those trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 12 months prior to the Petition Date, or are otherwise acceptable to the Company in light of customary industry practices, except for any partial payments or other payments (or assurances) the Company made with respect to any unfinished product. "Duration of the Debtors' chapter 11 cases" means the earlier of: (i) the effective date of a chapter 11 plan in the Company's chapter 11 cases; (ii) the closing of a sale of all or a material portion of the Company's assets pursuant to Bankruptcy Code section 363 that results in a cessation of the Company's business operations; or (iii) the liquidation of the Company or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

   b. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed to in writing by the Parties.

   c. The Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

   d. The Supplier shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business pursuant to the Customary Trade Terms.

   e. The Supplier shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which they provide services to the Debtors for the duration of the Debtors' chapter 11 cases.

4. Other Matters.

   a. The Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding

administrative claims the Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. The Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect (the "Supplier Payment").  The Supplier Payment will be made concurrently with payment of other outstanding administrative claims as provided in a confirmed plan.

   b.  The Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

   c.  The Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Supplier by the Company arising from prepetition agreements or transactions.  Furthermore, if the Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, the Supplier will promptly take all necessary actions to remove such liens.

  5.  Breach.

   a.  If the Supplier fails to satisfy its undisputed obligations arising under this Trade Agreement (a "Supplier Breach"), upon written notice to the Supplier, the Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to the Supplier from the Company.

   b.  If the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.  The Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company.  Accordingly, the Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief.  The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement.  The Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

  6.  Notice.

If to the Supplier, then to the person and address identified in the signature block hereto.

If to the Company:
23andMe Holding Co.
870 Market Street, Room 415, San Francisco, CA 94102
Attn: Legal Department
E-mail: Legal@23andme.com

-and-

If to Proposed Co-Counsel to the Debtors:

Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, New York 10019
Facsimile: (212) 757-3990
Attn:       Christopher Hopkins, Jessica Choi, Grace Hotz
E-mail:    chopkins@paulweiss.com
           jchoi@paulweiss.com
           ghotz@paulweiss.com

7. Representations and Acknowledgements. The Parties agree, acknowledge and represent that:

a. the Parties have reviewed the terms and provisions of the Trade Claimant Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Trade Claimant Order;

b. any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Trade Claimant Order;

c. if the Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Trade Claimant Order, the Bankruptcy Code, or applicable law; and

d. upon any disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from the Supplier to the Company, until a ruling of the Court is obtained adjudicating any such dispute.

8. Confidentiality. In addition to any other obligations of confidentiality between the Supplier and Company, the Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); *provided* that if any party seeks to compel the Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or the Supplier intends to disclose any or all of the Confidential Information, the

Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further* that if such remedy is not obtained, the Supplier shall furnish only such information as the Supplier is legally required to provide.

9. Miscellaneous.

a. The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b. This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties. Moreover, the Supplier agrees to vote all claims now or hereafter beneficially owned by Supplier in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Supplier Claim that is materially consistent with this Agreement.

c. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d. This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e. The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

f. This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature Page Follows*]

AGREED AND ACCEPTED AS OF THE LATEST DATE SET FORTH BELOW:

**23ANDME HOLDING CO.**  **[SUPPLIER]**
(on behalf of itself and its subsidiaries)

_____  _____
By: [●]  By:
Title: [●]  Title:
 Address:

Date:  Date: