**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**23ANDME HOLDING CO.,** *et al.*,[1]<br><br>Debtors. | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered)<br><br>Hearing Date: March 26, 2025<br>Hearing Time: 12:00 p.m.<br><br>Related Doc. 30 |

**ORDER (I) APPROVING BIDDING**
**PROCEDURES FOR THE SALE OF THE DEBTORS'**
**ASSETS, (II) SCHEDULING CERTAIN DATES AND DEADLINES**
**WITH RESPECT THERETO, (III) APPROVING THE FORM AND**
**MANNER OF THE NOTICE THEREOF, (IV) APPROVING PROCEDURES**
**REGARDING ENTRY INTO STALKING HORSE AGREEMENT(S), IF ANY,**
**(V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION**
**AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) APPROVING**
**PROCEDURES FOR THE SALE, TRANSFER, OR ABANDONMENT**
**OF DE MINIMIS ASSETS, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the Debtors for entry of an order (this "<u>Order</u>")

(a) approving the Bidding Procedures in substantially the form attached as **<u>Exhibit 1</u>** hereto to

govern any sale of all or substantially all of the Company Assets or some combination thereof,

(b) scheduling the Auction, the Sale Hearing, and the objection deadline for the Sale Hearing,

(c) approving the form and manner of notice of the Sale Notice in substantially the form attached

as **<u>Exhibit 2</u>** hereto, (d) authorizing the Debtors, in their reasonable business judgment, to (i) select

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the
      website of the Debtors' proposed claims and noticing agent at
      https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of
      these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion
      or the Bidding Procedures, as applicable.

one or more Stalking Horse Bidders and enter into a Stalking Horse Agreement and (ii) provide certain bid protections in connection therewith, subject to notice and an opportunity to object; (e) approving Assumption and Assignment Procedures and the form and manner of the Cure Notice in substantially the form attached as **Exhibit 3** hereto; (f) authorizing the Sale of the Company Assets free and clear of claims, interests, and encumbrances; (g) approving (i) the De Minimis Asset Sale Procedures and the form and manner of the De Minimis Asset Sale Notice attached hereto as **Exhibit 4** and (ii) the Abandonment Procedures and the form and manner of the Abandonment Notice attached hereto as **Exhibit 5**; and (h) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the Swift Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri; and this Court having found that this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing, if any, establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:

1. The Debtors have articulated good and sufficient reasons for this Court to authorize and approve the Bidding Procedures attached hereto as **Exhibit 1**, which are fair, reasonable, appropriate under the circumstances, and designed to maximize value for the benefit of the Debtors' estates. The Debtors have demonstrated and proven to the satisfaction of this Court that the Bidding Procedures are reasonable and appropriate. The Bidding Procedures balance the Debtors' interests in emerging efficiently from these chapter 11 cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.

2. The Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, including the date, time, and place of the Auction (if one is held), the Bidding Procedures, and certain dates and deadlines related thereto, and no other or further notice of the Auction shall be required.

3. The Assumption and Assignment Procedures provided for herein are fair, reasonable, and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code. The Cure Notice attached hereto as **Exhibit 3** is consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, appropriate and reasonably calculated to provide each Non-Debtor Counterparty with proper notice of the potential assumption and assignment of any Contract, the proposed Cure Amount, and the Assumption and Assignment Procedures.

4. The Debtors have articulated good and sufficient reasons for this Court to authorize and approve the De Minimis Asset Sale Procedures and the Abandonment Procedures, which are

fair, reasonable, appropriate under the circumstances, and designed to maximize value for the benefit of the Debtors' estates. The Debtors have demonstrated and proven to the satisfaction of this Court that the De Minimis Asset Sale Procedures and the Abandonment Procedures are reasonable and appropriate. The De Minimis Asset Sale Notice and the Abandonment Notice attached hereto as **Exhibit 4** and **Exhibit 5**, respectively, are reasonably calculated to provide all interested parties with timely and proper notice of any De Minimis Asset Sale or abandonment of any De Minimis Assets and no other or further notice of such sale or abandonment shall be required.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED IN PART as set forth herein. The Court will consider the remaining relief requested in the Motion at the Sale Hearing.

2.      All objections to the Motion or the relief provided herein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

<u>**Important Dates and Deadlines**</u>

3.      The following dates and deadlines are hereby approved, subject to the right of the Debtors to modify the following dates so long as notice is given in accordance with the terms of the Bidding Procedures:

| Action | Description | Deadline |
|---|---|---|
| Non-Binding Indication of Interest Deadline ("<u>IOI Deadline</u>") | The deadline by which any party interested in purchasing the Company Assets must submit a non-binding indication of interest. | April 13, 2025 at 4:00 p.m. (prevailing Central Time) Petition Date + 21 days |
| Stalking Horse Deadline | The deadline by which the Debtors may choose one or more Stalking Horse Bidder(s). | April 25, 2025 |

| Action | Description | Deadline |
|---|---|---|
| Stalking Horse Notice Deadline | The deadline by which the Debtors must file a Stalking Horse Notice. | Within two business days after entry into a Stalking Horse Agreement |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures. | May 7, 2025 at 4:00 p.m. (prevailing Central Time) |
| Determination of Qualified Bids | The deadline by which the Debtors will determine which Bids are Qualified Bids and notify each Potential bidder in writing whether such Potential bidder is a Qualified Bidder. | May 9, 2025 |
| Auction (if necessary) | The date and time of the Auction, which will be held at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York, 10019. | May 14, 2025 at 9:00 a.m. (prevailing Central Time) |
| Notice of Successful Bidder | Within two business days following closing of the Auction, the Debtors will file on the docket a notice identifying the Successful Bidder, identifying the applicable Successful Bidder, Company Assets, and key terms of the agreement. | Within two business days following closing of the Auction (if any) |
| Deadline to File and Serve Cure Notices | The deadline by which the Debtors must file and serve Cure Notices to counterparties to Contracts to be assumed and assigned in connection with the Sale(s). | May 19, 2025 |
| Sale Objection Deadline; Cure/Assignment Objection Deadline | The deadline by which objections to the Successful Bidder(s) and Sale(s), if any, or to the assumption and assignment of any Contracts in connection with the Sale(s) must be filed with the Court. | June 10, 2025 at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | The hearing, if any, before the Court to consider approval of the Successful Bid(s), pursuant to which the Debtors and the Successful Bidder(s) consummate the Sale(s). | June 17, 2025 at 9:00 a.m. (prevailing Central Time) |

**The Bidding Procedures**

4.      The Bidding Procedures are fully incorporated and approved in their entirety.  All dates and deadlines set forth in the Bidding Procedures are hereby established, subject to the terms of the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of the Company Assets.  The Debtors are authorized to solicit bids and conduct the Auction, if necessary, on the terms set forth in the Bidding Procedures.  Any party desiring to bid for all, substantially all, or a portion of the Company Assets shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

5.      Each bidder participating at the Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale, as set forth in the Bidding Procedures.

6.      The Debtors may:  (a) determine which Qualified Bid is the highest or otherwise best offer for the Company Assets; (b) reject at any time before entry of an order of the Court approving the Successful Bid, any bid that, in the discretion of the Debtors, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors; and (c) at or before the conclusion of the Auction, may impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates.

7.      The Bidding Procedures and the notice thereof provide all parties in interest with notice of, and the opportunity to participate in, any potential Sale and/or Auction.

**The Stalking Horse and Bid Protections**

8.      Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, to select one or more bidders to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement with such Stalking Horse Bidder.

9.      If the Debtors enter into a Stalking Horse Agreement with one or more Stalking Horse Bidders, within two business days of entry (the "Stalking Horse Notice Deadline"), the Debtors shall file a notice with the Court that (a) sets forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) sets forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (c) states whether the Stalking Horse Bidder has any connections to the Debtors other than those that arise from the Stalking Horse Bid; (d) specifies any proposed Bid Protections (including the amount and calculation thereof); (e) attaches the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; (f) specifies the Company Assets included in the Stalking Horse Bid; and (g) sets forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections (the "Stalking Horse Notice").

10.      If there are no objections to the Stalking Horse Notice within five days of filing with the Court (the "Notice Period"), or seven days after the appointment of an official committee of unsecured creditors, if later, the Debtors may submit an order to the Court that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing.  If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

11.      Upon entry of the order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, the Debtors are authorized to incur and pay

(a) the Breakup Fee and (b) the Expense Reimbursement to each Stalking Horse Bidder that has not submitted a Credit Bid, in an aggregate amount not to exceed three percent of the proposed Purchase Price.  Unless the Court orders otherwise, no person or entity, other than any Stalking Horse Bidder (if any), shall be entitled to receive Bid Protections, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for such Bidding Procedures or any fee of any nature in connection with such bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### **Assumption and Assignment Procedures**

12.     The form of Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is approved.

13.     The following Assumption and Assignment Procedures shall govern the assumption and assignment of any Contracts in connection with the Sale, and any objections related thereto:

     a.  **Cure Notice**. No later than seven days before the Cure/Assignment Objection Deadline, the Debtors shall file with this Court and serve the Cure Notice on each Non-Debtor Counterparty to each Contract (the "Cure Notice Service Date").

     b.  **Content of Cure Notice**.  The Cure Notice served on each Non-Debtor Counterparty shall: (a) identify the applicable Contract(s) that may be assumed and assigned in connection with the Sale, including the name of the Non-Debtor Counterparty to each such Contract; (b) state the Cure Amount(s), if any, that the Debtors believe are necessary to assume such Contract(s) pursuant to section 365 of the Bankruptcy Code; (c) include a statement that the assumption and assignment of such Contract is neither required nor guaranteed; (d) inform such Non-Debtor Counterparty of the Cure/Assignment Objection Deadline; and (f) state the date of the Sale Hearing and note the possibility of adjournment.  Service of a Cure Notice does not (i) constitute, and shall not be deemed, an admission that a particular Contract is an executory contract or unexpired lease of property, or (ii) confirm that the Debtors are required to assume and/or assign such Contract.

     c.  **Objections**.  Objections, if any, to the proposed assumption, assignment, cure, and/or adequate assurance and the procedures relating thereto (a "Cure/Assignment Objection"), must: (a) be in writing; (b) state with specificity the nature of such objection, including the amount of Cure Amount in dispute; and

(c) be filed with this Court no later than **4:00 p.m. (prevailing Central Time) on June 10, 2025** (the "<u>Cure/Assignment Objection Deadline</u>").

d. **<u>Supplemental Cure Notice</u>**.  If the Debtors at any time after the Cure Notice Service Date, (a) identify additional Contracts that may be assumed and assigned to the Successful Bidder, (b) remove any Contracts from the list attached to the Cure Notice, and/or (c) modify the previously stated Cure Amount associated with any Contract that requires modification, the Debtors will promptly file with this Court and serve a supplemental Cure Notice (a "<u>Supplemental Cure Notice</u>") on each Non-Debtor Counterparty affected by the Supplemental Cure Notice.  Each Supplemental Cure Notice shall include the same information with respect to listed Contracts as was included in the Cure Notice.  Any Non-Debtor Counterparty listed on a Supplemental Cure Notice may file a Supplemental Cure/Assignment Objection only if such objection is to the proposed assumption and assignment of the applicable Contract or the proposed Cure Amount, if any.  All Supplemental Cure/Assignment Objections must: (a) be in writing; (b) state with specificity the nature of such objection, including the amount of the Cure Amount in dispute; and (c) be filed with the Court and properly served on the Notice Parties so as to be received no later than the date that is the later of (i) the Cure/Assignment Objection Deadline and (ii) seven days following the date of service of such Supplemental Cure Notice, which date will be set forth in the Supplemental Cure Notice (the "<u>Supplemental Cure/Assignment Objection Deadline</u>").

e. **<u>Dispute Resolution</u>**.  If a Non-Debtor Counterparty files an objection satisfying the requirements of these Assumption and Assignment Procedures that is not consensually resolved by the Sale Hearing, such unresolved objection will be considered at the Sale Hearing, an expedited hearing sought by the Debtors, or such later date as determined by the Court.  Upon entry of an order by the Court resolving such Cure/Assignment Objection, the assignment, if approved by the Court, shall be deemed effective as of the closing of the Sale.  If any Cure/Assignment Objection or Supplemental Cure/Assignment Objection cannot be resolved by the parties, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure/Assignment Objection after notice and a hearing.  If a Cure/Assignment Objection or Supplemental Cure/Assignment Objection is not satisfactorily resolved, the Successful Bidder or the Debtors, as applicable, may determine that such Contract should be rejected and not assigned, in which case the Successful Bidder or the Debtors, as applicable, will not be responsible for any Cure Amounts in respect of such Contract.

f. The Debtors' assumption and/or assignment of a Contract is subject to approval by this Court and consummation of the Sale.  Absent entry of a Sale Order approving the assumption and/or assignment of the Contract and consummation of the Sale, the Contract shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

14. If a Non-Debtor Counterparty does not file and serve a Cure/Assignment Objection or Supplemental Cure/Assignment Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Amount, (a) the Cure Amount, if any, set forth in the Cure Notice (or Supplemental Cure Notice, as applicable) shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (b) the Non-Debtor Counterparty will be deemed to have consented to the assumption and assignment, as applicable, of the Contract and the Cure Amount, if any, and will be forever barred from objecting to the assumption and assignment of such Contract and rights thereunder, including the Cure Amount, if any, and from asserting any other claims related to such Contract against the Debtors or the Successful Bidder, or the property of any of them.

15. Any objections to the Successful Bidder's proposed form of adequate assurance of future performance must be filed by the Cure/Assignment Objection Deadline or Supplemental Cure/Assignment Objection Deadline, as applicable, and such objections will be resolved at the Sale Hearing, Supplemental Cure/Assignment Hearing, or such later date as determined by the Court, as applicable. The Debtors may, with the consent of the Successful Bidder, adjourn the resolution of any such objection to a later hearing. For the avoidance of doubt, the inclusion of a Contract on the Cure Notice or Supplemental Cure Notice shall not obligate the Debtors to assume and assign any such Contract or obligate the Successful Bidder to take assignment of any such Contract. The Successful Bidder shall determine whether to take assignment of any Contracts pursuant to the terms of the applicable purchase agreement.

16. The inclusion of a Contract on the Cure Notice and/or Supplemental Cure Notice will not (a) obligate the Debtors to assume any Contract listed thereon or obligate the Successful Bidder to take assignment of such Contract or (b) constitute any admission or agreement of the

Debtors that such Contract is an executory contract or unexpired lease.  Only those Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement), approved in connection with the Sale, will be assumed and assigned to the Successful Bidder.

### Notice Procedures

17.    The Sale Notice in the form attached hereto as **Exhibit 2** is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service or publication of the Sale Notice.

18.    No later than three business days or as soon as reasonably practicable after entry of this Order, the Debtors will serve the Sale Notice on the Sale Notice Parties.

19.    No later than five business days or as soon as reasonably practicable after entry of this Order and subject to applicable submission deadlines, the Debtors will cause a form of the Sale Notice to be published, on one occasion, in the *Wall Street Journal* or another national publication, and post the Sale Notice, this Order, and the Bidding Procedures on the website of Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent.

20.    No other or further notice of the Sale, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required.  Service and publication of the Sale Notice as set forth herein is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006 and to otherwise comply in all respects with any other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

21.     Two business days, or as soon as reasonably practicable, following conclusion of the Auction, if any, the Debtors shall file a notice on this Court's docket identifying the Successful Bidder(s) and any applicable Backup Bidder(s).

## De Minimis Asset Sale Procedures

22.     The De Minimis Asset Sale Procedures are hereby approved in their entirety, and the Debtors are authorized to sell estate property in accordance with the De Minimis Asset Sale Procedures.  Notwithstanding anything to the contrary in the Motion or the De Minimis Asset Sale Procedures, the Debtors shall provide parties with at least 21 days' notice and an opportunity to object to any proposed De Minimis Asset Sale of personality identifiable information or genetic information.

23.     The De Minimis Asset Sale Notice substantially in the form attached hereto as **Exhibit 4** is hereby authorized and approved, and the Debtors are authorized to make non-substantive or immaterial changes to the De Minimis Asset Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service of the De Minimis Asset Sale Notice.

24.     Service of the De Minimis Asset Sale Notice is sufficient notice of the sale or transfer of such De Minimis Assets.

25.     Notwithstanding anything to the contrary set forth in a sale or transfer agreement, all purchasers of the De Minimis Assets are deemed to understand and agree that the Debtors are conveying their rights to the applicable De Minimis Assets as is, without warranties or representations of any kind, whether express or implied.

26.     Pursuant to section 363(f) of the Bankruptcy Code, any property sold pursuant to the De Minimis Asset Sale Procedures shall be sold free and clear of any and all liens, mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations,

consensual liens, judicial liens, statutory liens, judgments, encumbrances, or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, "Liens and Claims"), and such Liens and Claims shall attach to the proceeds of the sale of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately prior to the closing of the applicable sale.

27.     The absence of an objection to the relief requested in the Motion combined with the absence of a timely objection to the sale of property by a holder of a Lien or Claim that has received a De Minimis Asset Notice in accordance with the terms of this Order shall be determined to be "consent" to such sale within the meaning of section 363(f)(2).

28.     Each and every federal, state, and local government agency or department is hereby directed to accept any and all documents and instruments necessary or appropriate to consummate the disposition of property pursuant to the De Minimis Asset Sale Procedures.  The register or recorder of deeds (or other similar recording agency) is hereby directed to accept and include a certified copy of this Order along with any other appropriate conveyance documents used to record and index the transfer of any property in the appropriate public records.

29.     In the absence of objection, sales of property consummated pursuant to the De Minimis Asset Sale Procedures shall be deemed arm's-length transactions entitled to the protections of section 363(m) of the Bankruptcy Code.

**Abandonment Procedures**

30.     The Abandonment Procedures are hereby approved in their entirety, and the Debtors are authorized to abandon personal property in accordance with the Abandonment Procedures.  Notwithstanding anything to the contrary in the Motion or the Abandonment Procedures, the Debtors shall provide parties with at least 21 days' notice and an opportunity to

object to any proposed abandonment of personality identifiable information or genetic information.

31.     The Abandonment Notice substantially in the form attached hereto as **Exhibit 4** is hereby authorized and approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Abandonment Notice or to fill in missing information, in each case to the extent not inconsistent with this Order, prior to service of the Abandonment Notice.

32.     Service of the Abandonment Notice is sufficient notice of the abandonment of the property subject to such notice.

33.     With respect to any property abandoned under the Abandonment Procedures, the applicable party to which such property is abandoned shall have the right to dispose of such property.  Parties' rights, if any, to file claims for the costs of disposal of such property are fully reserved, as are the rights of any party in interest to object to such claims.

34.     Nothing in this Order shall be deemed to allow Debtors to abandon personal property in violation of any applicable state or federal laws or regulations, including but not limited to environmental laws and regulations.

## Other Relief Granted

35.     Absent a subsequent order of this Court to the contrary, this Order shall be binding in all respects upon any trustees, examiners, "responsible persons," or other fiduciaries appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code.

36.     Except as expressly set forth in this Order, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in

the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.

37.     Notwithstanding anything to the contrary in this Order, the Bidding Procedures, or the Assumption and Assignment Procedures, the Debtors may extend in their discretion, or seek an extension from this Court, the deadlines set forth in this Order or the Bidding Procedures, including, but not limited to, the IOI Deadline and the Bid Deadline.

38.     All persons or entities (whether or not a Qualified Bidder) that participate in the bidding process for the Sale will be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

39.     In the event of any conflict between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

40.     Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

41.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

42.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

43.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

44.     No later than two business days after the date of this Order, the Debtors shall serve on the Notice Parties a copy of the Order and shall file a certificate of service no later than 24 hours after service.

Dated:  March 28, 2025
St. Louis, Missouri
cjs

_____
Brian C. Walsh
United States Bankruptcy Judge

**Order Prepared By:**

**Carmody MacDonald P.C.**
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:      (314) 854-8600
Facsimile:      (314) 854-8660
Email:          thr@carmodymacdonald.com
                nrw@carmodymacdonald.com
                jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: pbasta@paulweiss.com
chopkins@paulweiss.com
jchoi@paulweiss.com
ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **Exhibit 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Jointly Administered) |
| | Related Docket Nos. 30 & __ |

**<u>BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS</u>**

On March 23, 2025, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Eastern District of Missouri (the "<u>Court</u>").

On [_____], 2025, the Court entered that certain *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Docket No. __] (the "<u>Bidding Procedures Order</u>"), which approved, among other things, (a) the following procedures (the "<u>Bidding Procedures</u>") pursuant to which the Debtors are authorized to solicit and pursue a sale (a "<u>Sale</u>") of all or any portion of the Debtors' assets (the "<u>Company Assets</u>") under section 363 of the Bankruptcy Code, (b) the scheduling of a hearing to approve the Sale of the Company Assets, or a portion thereof, free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, and (c) procedures in connection with the assumption and assignment of any executory contracts or unexpired leases (each, a "<u>Contract</u>") the Debtors seek to have assumed and assigned in connection with a Sale. ***All interested bidders should carefully read the Bidding Procedures Order and these Bidding Procedures in their entirety***.[2]

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice*

> **Copies of the Bidding Procedures Order or other documents related thereto are available upon request to Kroll Restructuring Administration LLC by calling (888) 367-7556 (U.S. and Canada) or (646) 891-5055 (International) or visiting the Debtors' restructuring website at https://restructuring.ra.kroll.com/23andMe.**
>
> **All due diligence requests must be directed to Moelis & Company LLC at Project_Chrome_2025_EXT@Moelis.com.**

## I. OVERVIEW

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing process and, if necessary, an auction (an "Auction") for a Sale of the Company Assets.

The Debtors will consider bids (each, a "Bid") for the purchase of all or any portion of the Company Assets to the person or entity making the most value maximizing Bid through the process outlined in these Bidding Procedures.

The Debtors reserve the right to modify these Bidding Procedures, including to extend the deadlines and modify the requirements set forth herein or impose additional terms and conditions at any time, if they determine, in their reasonable business judgment, that doing so will best promote the goals of the bidding process, including during an Auction.

## II. KEY SALE PROCESS DATES

These Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtors and to submit competing bids for the Company Assets. The Debtors shall assist interested parties in conducting their respective due diligence investigations and shall accept Bids until **May 7, 2025, at 4:00 p.m. (prevailing Central Time)** (the "Bid Deadline"). The other key dates for the marketing process are as follows:[3]

| Action | Description | Deadline |
|---|---|---|
| Non-Binding Indication of Interest Deadline ("IOI Deadline") | The deadline by which any party interested in purchasing the Company Assets must submit a non-binding indication of interest. | April 13, 2025 at 4:00 p.m. (prevailing Central Time)<br><br>Petition Date + 21 days |

_Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of the Debtors' Assets Free and Clear of Claims, Interests, and Encumbrances, (VII) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VIII) Granting Related Relief_ [Docket No. __], as applicable.

[3] These dates are subject to extension or adjournment as provided for herein.

| Action | Description | Deadline |
|---|---|---|
| Stalking Horse Deadline | The deadline by which the Debtors may choose one or more Stalking Horse Bidder(s). | April 25, 2025 |
| Stalking Horse Notice Deadline | The deadline by which the Debtors must file a Stalking Horse Notice. | Within two business days after entry into a Stalking Horse Agreement |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures. | May 7, 2025 at 4:00 p.m. (prevailing Central Time) |
| Determination of Qualified Bids | The deadline by which the Debtors will determine which Bids are Qualified Bids and notify each Potential bidder in writing whether such Potential bidder is a Qualified Bidder. | May 9, 2025 |
| Auction (if necessary) | The date and time of the Auction, which will be held at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York, 10019. | May 14, 2025 at 9:00 a.m. (prevailing Central Time) |
| Notice of Successful Bidder | Within two business days following closing of the Auction, the Debtors will file on the docket a notice identifying the Successful Bidder, identifying the applicable Successful Bidder, Company Assets, and key terms of the agreement. | Within two business days following closing of the Auction (if any) |
| Deadline to File and Serve Cure Notices | The deadline by which the Debtors must file and serve Cure Notices to counterparties to Contracts to be assumed and assigned in connection with the Sale(s). | May 19, 2025 |
| Sale Objection Deadline; Cure/Assignment Objection Deadline | The deadline by which objections to the Successful Bidder(s) and Sale(s), if any, or to the assumption and assignment of any Contracts in connection with the Sale(s) must be filed with the Court. | June 10, 2025 at 4:00 p.m. (prevailing Central Time) |
| Sale Hearing | The hearing, if any, before the Court to consider approval of the Successful Bid(s), pursuant to which the Debtors and the | June 17, 2025 at 9:00 a.m. (prevailing Central Time) |

| Action | Description | Deadline |
|---|---|---|
|  | Successful Bidder(s) consummate the Sale(s). |  |

## III.     PUBLIC ANNOUNCEMENT OF AUCTION

Within three business days after entry of the Bidding Procedures Order (or as soon thereafter as reasonably practicable), the Debtors shall serve on the Sale Notice Parties a notice of the Auction and Sale (the "Sale Notice"). In addition, within five business days after entry of the Bidding Procedures Order (or as soon thereafter as reasonably practicable), the Debtors shall (a) publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in *The Wall Street Journal* to provide notice to any other potential interested parties and (b) post the Sale Notice, the Bidding Procedures Order (as entered), and the Bidding Procedures on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

## IV.     BIDDING PROCESS

### A.  Submissions to the Debtors.

These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for any combination of the Company Assets. The Debtors, in consultation with their advisors, the lender under the Debtors' postpetition financing facility (the "DIP Lender"), and any statutory committee appointed in these chapter 11 cases (the "Committee" and together with the DIP Lender and their respective advisors, the "Consultation Parties" and each, a "Consultation Party"), will consider any Bid for all or any portion of the Company Assets including, among other possibilities, multiple Bids from multiple bidders (including multiple Bids submitted by the same bidder).

### B.  Stalking Horse Bidder and Bid Protections.

At any time until April 25, 2025, the Debtors are authorized, but not obligated, in an exercise of their business judgment and in consultation with the Consultation Parties, to: (i) select one or more Qualified Bidders to act as Stalking Horse Bidders; (ii) enter into a Stalking Horse Agreement with each Stalking Horse Bidder so selected; and (iii) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, (a) provide a breakup fee (the "Breakup Fee") and (b) agree to reimburse the reasonable and documented out of pocket fees and expenses (the "Expense Reimbursement" and, together with the Breakup Fee, the "Bid Protections"), not to exceed three percent of the purchase price with respect to the foregoing clauses (a) and (b) in the aggregate.

No later than two business days after entry into a Stalking Horse Agreement, the Debtors shall file a notice and proposed form of order with the Court that (i) sets forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) sets forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iii) states whether the Stalking Horse Bidder has any connections to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specifies any proposed Bid Protections (including the amount and calculation thereof); (v) attaches the Stalking Horse Agreement, including all exhibits, schedules, and attachments thereto; (vi) specifies the Company Assets included in the Stalking Horse Bid and (vii) sets forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections (the "Stalking Horse Notice").

If there are no objections to the Stalking Horse Notice within five days of filing with the Court (the "Notice Period"), or seven days after the appointment of an official committee of unsecured creditors, if later, the Debtors may submit an order to the Court that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for a further hearing. If a party files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

Upon entry of the order approving the designation of a Stalking Horse Bidder and Stalking Horse Agreement, the Debtors are authorized to incur and pay the Bid Protections to the Stalking Horse Bidder(s) in accordance with the terms of such order and the Stalking Horse Agreement. After designating the Stalking Horse Bidders, if any, and designating other Qualified Bidders, if any, the Debtors may then hold an Auction for the applicable Company Assets.

**C. Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale (a "Potential Bidder") must deliver the following to the Debtors (unless waived by the Debtors in their reasonable business judgment):

i.      an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), if not already executed;

ii.     a statement of what portion of the Company Assets that the Potential Bidder intends to acquire;

iii.    sufficient information, as determined by the Debtors and their advisors, demonstrating that the interested party (a) has the financial wherewithal to consummate the Sale and (b) intends to access the Data Room (as defined below) for a purpose consistent with these Bidding Procedures; and

iv.     any other evidence the Debtors may reasonably request to evaluate the person's or entity's fitness to participate in the bidding process or ability to timely acquire the Company Assets.

**D.  Non-Binding Indications of Interest.**

Any party interested in purchasing the Company Assets shall submit a non-binding indication of interest (an "Indication of Interest") on or before April 13, 2025, at 4:00 p.m. (prevailing Central Time) (as may be extended without notice or hearing by the Debtors, the "IOI Deadline").  The Indication of Interest should (i) identify whether the party is interested in acquiring all or substantially all of the assets, (ii) set forth a proposed purchase price for the proposed transaction, including by identifying separately any cash and non-cash components of the proposed transaction consideration, which non-cash components shall be limited only to assumption of liabilities and/or credit bids, and (iii) identify any proposed conditions to closing the transaction.

Indications of Interest should be submitted to the Debtors by the IOI Deadline.  Note that submitting an Indication of Interest by the IOI Deadline does not obligate the submitting party to submit a formal bid or to participate in the sale process and does not exempt the submitting party from also having to submit a Qualified Bid by the Bid Deadline to participate in the Auction, each as defined below.

All Indications of Interest must be received via email so as to be **actually received** by the IOI Deadline—on or before **4:00 p.m. (prevailing Central Time) on April 13, 2025, 2025** by:

a.    Debtors' Counsel.  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Paul Basta (pbasta@paulweiss.com); Christopher Hopkins (chopkins@paulweiss.com); Jessica I. Choi (jchoi@paulweiss.com); and Grace C. Hotz (ghotz@paulweiss.com).

b.    Debtors' Co-Counsel. Carmody MacDonald P.C., 120 S. Central Avenue, Suite 1800 St. Louis, Missouri 63105, Attn: Thomas H. Riske (thr@carmodymacdonald.com); Nathan R. Wallace (nrw@carmodymacdonald.com); and Jackson J. Gilkey (jjg@carmodymacdonald.com).

c.    Debtors' Investment Banker.  Moelis & Company LLC, 399 Park Ave., 4th Floor, New York, New York 10022 at Project_Chrome_2025_EXT@Moelis.com.

The Debtors shall provide the Consultation Parties with copies of all Indications of Interest received by the Debtors; *provided* that the Consultation Parties agree to treat such Indications of Interest and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the potential bidder.

**E.  Due Diligence.**

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room (the "Data Room") and to receive additional non-public information regarding the Debtors.  **Only Potential Bidders that enter into a Confidentiality**

**Agreement with the Debtors will be permitted to conduct any due diligence that includes confidential information.** The Debtors will use commercially reasonable efforts to provide due diligence information to any such Potential Bidder, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtors shall post confidential information concerning the Company Assets to the Data Room which will be made available to Potential Bidders. Unless extended by the Debtors in their reasonable business judgment, each Potential Bidder's due diligence period will end on the applicable Bid Deadline, after which the Debtors shall have no obligation to furnish any due diligence information.

The Debtors need not furnish any confidential information relating to the Company Assets, liabilities of the Debtors, or any Sale to any person or entity except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement and requested by such Potential Bidder. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide (or elect to withdraw access to) due diligence information to any Potential Bidder who, at such time and in the Debtors' reasonable business judgment, has not established (or there is otherwise a reasonable basis to doubt) that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale. If a Potential Bidder no longer intends in good faith to, or lacks the capacity to, consummate a Sale, such Potential Bidder shall promptly notify the Debtors through email notice.

The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder, including a Potential Bidder the Debtors determine is (or is affiliated with) a competitor or supplier of the Debtors, or is otherwise an entity to which the disclosure of sensitive or competitive information, in the Debtors' reasonable business judgment, may risk unduly placing the Debtors at a competitive disadvantage or subject them to regulatory scrutiny. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any entity that is not determined to be a Potential Bidder.

***All due diligence requests are to be sent to the Debtors through email notice.***

      1.    <u>Communications with Potential Bidders</u>.

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive communications related to Bids or the Sale between or amongst Potential Bidders shall be conducted exclusively through the Debtors and the Debtors' advisors. Communications between and amongst Potential Bidders or the Consultation Parties and Potential Bidders is expressly prohibited unless the Debtors expressly consent in writing to such communication; *provided* that, if such consent is given, a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion).

      2.    <u>Due Diligence of Potential Bidders</u>.

Each Potential Bidder shall comply with any reasonable requests of the Debtors or their advisors for additional information or due diligence access regarding qualification as a Potential Bidder or Qualified Bidder, the terms of the Potential Bidder's Bid, or the ability of the Potential

Bidder to acquire the applicable Company Assets. Failure by a Potential Bidder to comply with such reasonable requests may be a basis for the Debtors to determine that such bidder is no longer a Potential Bidder or that any bid made by such Potential Bidder is not a Qualified Bid (a "<u>Non-Qualifying Bid</u>").

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. Each recipient of confidential information agrees to use, and to instruct its advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with these chapter 11 cases, in each case in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtors and the Debtors' advisors may disclose confidential information: (a) with the prior written consent of such Potential Bidder; (b) to the applicable Potential Bidder; (c) in accordance with these Bidding Procedures; and (d) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular Potential Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

*The Debtors encourage all Potential Bidders interested in participating in these marketing processes to promptly notify the Debtors and their advisors of such interest. Such Potential Bidders should describe, in as much specificity and as soon as practically feasible, the scope of Company Assets that are envisioned to be encompassed by any Bid that such Potential Bidders expect to submit.*

## F. Qualified Bidders.

1.      A "<u>Qualified Bidder</u>" is a Potential Bidder who satisfies the following requirements (unless waived by the Debtors in their reasonable business judgment): (a) the Potential Bidder has demonstrated the financial capability to consummate the applicable Sale (as determined by the Debtors in consultation with the Consultation Parties); (b) the Potential Bidder's Bid is a Qualified Bid; and (c) the Debtors have determined, in consultation with the Consultation Parties, the Potential Bidder should be considered a Qualified Bidder. Within two business days after the Bid Deadline, the Debtors' advisors will notify each Potential Bidder whether such Potential Bidder is a Qualified Bidder. Any Stalking Horse Bidder shall be deemed a Qualified Bidder for all purposes under these Bidding Procedures.

2.      If any Potential Bidder is determined by the Debtors, in consultation with the Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Potential Bidder's Deposit, if any, and all accumulated interest thereon, if any, within five business days of the Bid Deadline.

3.      For the avoidance of doubt, the Debtors expressly reserve the right to notify a Potential Bidder that its Bid is a Non-Qualifying Bid and permit such Potential Bidder to revise or supplement a Non-Qualifying Bid to make it a Qualified Bid.

4.      Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, if any, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the determination by, and written consent of, the Debtors in their sole discretion (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that, for the avoidance of doubt, any Qualified Bid may be improved at the Auction, if any, as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures, and the Debtors expressly reserve the right to request additional diligence information and assurances necessary to assess and ensure continued compliance (including additional information, assurances, or commitments regarding the applicable Qualified Bidder's financial capability to consummate the transactions contemplated by such improved Qualified Bid).

## G. Bid Requirements.

A Bid by a Potential Bidder that is submitted in writing by the Bid Deadline and satisfies each of the following requirements (the "Bid Requirements"), as determined by the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, shall constitute a "Qualified Bid."  Any Stalking Horse Bid shall be deemed a Qualified Bid for all purposes under these Bidding Procedures at all times.  The Debtors shall provide the Consultation Parties with copies of all Bids received by the Debtors; *provided* that the Consultation Parties agree to treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.

1.      Documentation.  Each Bid must be accompanied by (a) an executed purchase agreement (a "Purchase Agreement"), based either on (i) the form asset purchase agreement that the Debtors will make available in the Data Room no later than ten days prior to the Bid Deadline or (ii) the Stalking Horse Agreement if there is a Stalking Horse Bidder, in each case, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, (b) a redline of such Purchase Agreement marked to reflect any amendments and modifications from the form purchase agreement or Stalking Horse Agreement, as applicable, which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures, and (c) a copy of the execution version of the Purchase Agreement in Microsoft Word or similar software (the "Qualified Bid Document").  Each such Purchase Agreement must provide for payment in cash at closing of the Bid Protections to the Stalking Horse Bidder, if any.

2.    <u>Purchase Price</u>.  Each Bid must clearly (a) set forth the consideration to be provided for the applicable Company Assets (the "<u>Purchase Price</u>"), (b) identify separately any cash and non-cash components, which non-cash components shall be limited only to credit-bids and assumed liabilities, and (c) indicate the allocation of the Purchase Price among the applicable Company Assets.  The Purchase Price should be a single point value in U.S. Dollars for the applicable Company Assets on a cash-free, debt-free basis.  Any Bid for substantially all of the Company Assets must also include a statement as to whether the Bid is conditioned on purchasing all Company Assets or whether the Qualified Bid should be viewed as a separate Bid for one or more Company Assets.  The Debtors reserve the right to ask any Qualified Bidder to allocate the value ascribed to the Bid for any particular Company Asset and to inquire about any significant assumptions on which such valuations are based.

3.    <u>Deposit</u>.  Each Bid must be accompanied by a cash deposit in the amount equal to ten percent of the aggregate Purchase Price of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtors (the "<u>Deposit</u>").

4.    <u>Terms; Specify Acquired Assets and Assumed Liabilities</u>.  Each Bid must identify the Company Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale.

5.    <u>Committed Financing</u>.  If a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtors (in consultation with the Consultation Parties), that demonstrates that the Qualified Bidder has:  (a) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (b) adequate working capital financing or resources to finance going concern operations for the applicable Company Assets and the proposed transactions.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors, in consultation with the Consultation Parties.

6.    <u>Contingencies; No Financing or Diligence Outs</u>.  A Bid shall not be conditioned on obtaining, or the sufficiency of, financing or any internal approval, or on the outcome or review of due diligence.

7.    <u>Identity</u>.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation.  Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtors, or any entity affiliated with any current or former officer, director, or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid, including any employment or compensation arrangements being negotiated or agreed to between the Qualified Bidder and any employee of the Debtors.  Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers of the Debtors be associated with any Bid (including any Overbid (as defined below) at the Auction).  Each Bid must also include contact information for the specific persons and counsel whom the Debtors' advisors should contact regarding such Bid.  All information disclosed pursuant to this paragraph shall be made available by the Debtors to the Consultation Parties, if any, promptly upon the Debtors' receipt thereof but in any event no later than one business day following the Bid Deadline.

8.    <u>Adequate Assurance of Future Performance</u>.  Each Bid must (a) reasonably identify any executory contracts and unexpired leases of the Debtors to be assumed or assumed and assigned in connection with the Sale, (b) provide for the payment of all cure costs related to such executory contracts and unexpired leases by the Qualified Bidder, and (c) demonstrate, in the Debtors' reasonable business judgment, that the Qualified Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases.

9.    <u>Binding and Irrevocable</u>.  A Qualified Bidder's Bid for the applicable Company Assets shall be irrevocable unless and until the Debtors notify such Qualified Bidder that such Bid has not been approved as a Successful Bid or a Backup Bid (each as defined below) at the Sale Hearing.

10.    <u>Backup Bid</u>.  Each Bid shall provide that the Qualified Bidder will serve as a Backup Bidder if the Qualified Bidder's Bid is the next highest or best bid with respect to the applicable Company Assets.

11.    <u>Expenses; Disclaimer of Fees</u>.  Each Bid (other than the Stalking Horse Bid(s), if any (solely to the extent set forth in the Stalking Horse Agreement(s)) must disclaim any right to receive a fee analogous to a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation.  For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidders, if any, and, in that case, solely to the extent set forth in the Stalking Horse Agreement(s)) will be permitted to request at any time, whether as part of an Auction, if any, or otherwise, a breakup fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

12.    <u>Authorization</u>.  A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to submit the Bid and consummate the proposed transaction; *provided* that, if the bidder is an entity specially formed for the purpose of effectuating the proposed transaction, then the bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the submission of the Bid and consummation of the proposed transaction by the parent company or sponsor of such bidder.

13.     <u>Employee Obligations</u>.   Each Bid must indicate whether the Qualified Bidder intends to hire all employees of the Debtors.  If the Qualified Bidder does not intend to hire all employees of the Debtors, the Qualified Bidder must include a description of the Qualified Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees who are employed primarily in connection with the applicable Company Assets, and a description of any contemplated incentive plan, if applicable.

14.     <u>As-Is, Where-Is</u>.   Each Bid must include a written acknowledgment and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all due diligence regarding the Company Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or such assets in making its Bid; and (c) did not and will not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the applicable Company Assets or the completeness of any information provided in connection therewith or at an Auction, except those expressly stated in the Qualified Bidder's Purchase Agreement.

15.     <u>Acknowledgment of Compliance with Bidding Procedures, Bankruptcy Code, and Non-Bankruptcy Law</u>.  Each Bid must acknowledge that it has complied, and will continue to comply, in all respects with these Bidding Procedures (including, after the conclusion of any Auction, not to submit a Bid or seek to reopen the Auction), the Bankruptcy Code, and any applicable law.

16.     <u>Privacy Policies</u>.  The Qualified Bidder must comply in all respects with the Debtors' consumer privacy practices, which do not restrict the transfer of personally identifiable information of the Debtors' customers in connection with a bankruptcy, merger, acquisition, reorganization, or sale of assets, and each Bid must contain a statement acknowledging such compliance.

17.     <u>No Collusion</u>.  The Qualified Bidder must (a) acknowledge in writing that it has not engaged in any collusion with respect to any Bids or the Sale and (b) agree not to engage in any collusion with respect to the Bids, the Auction, or the Sale.

18.     <u>Confidentiality</u>.  By submitting a Bid, each Qualified Bidder agrees to treat such Bid (including any modifications, subsequent Bids, or Overbids) and any related information thereto as confidential and shall not publicly disclose such information without the written consent of the Debtors until the earlier of (a) the date that is one year following the Bid Deadline and (b) entry of an order by the Court requiring such disclosure.

19.    <u>Government Approvals and Time Frame for Closing</u>.  Each Bid must (a) include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors, of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals; and (b) set forth an estimated timeframe for (i) obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale and (ii) the Qualified Bidder's expected date of closing the Sale, which must be reasonably likely to be consummated, if selected, within a timeframe acceptable to the Debtors, in consultation with the Consultation Parties.

20.    <u>Consent to Jurisdiction</u>.  By submitting a Bid, each Qualified Bidder agrees, and shall be deemed to have agreed, to submit to the jurisdiction of the Court and waives any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing, as applicable.

21.    <u>Bid Deadlines</u>.  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** by the Bid Deadline—on or before **4:00 p.m. (prevailing Central Time) on May 7, 2025,** by:

a.    <u>Debtors' Counsel</u>.  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Paul Basta (pbasta@paulweiss.com); Christopher Hopkins (chopkins@paulweiss.com); Jessica I. Choi (jchoi@paulweiss.com); and Grace C. Hotz (ghotz@paulweiss.com).

b.    <u>Debtors' Co-Counsel</u>. Carmody MacDonald P.C., 120 S. Central Avenue, Suite 1800 St. Louis, Missouri 63105, Attn: Thomas H. Riske (thr@carmodymacdonald.com); Nathan R. Wallace (nrw@carmodymacdonald.com); and Jackson J. Gilkey (jjg@carmodymacdonald.com).

c.    <u>Debtors' Investment Banker</u>.  Moelis & Company LLC, 399 Park Ave., 4th Floor, New York, New York 10022 at Project_Chrome_2025_EXT@Moelis.com.

*provided*, *however*, that the Debtors reserve the right to reschedule or waive the Bid Deadline and related marketing process deadlines and hearing dates in their sole discretion.

**H.  Right to Credit Bid.**

At the Auction, if any, any Qualified Bidder who has a valid and perfected lien on any assets of the Debtors' estates (a "<u>Secured Creditor</u>") shall be permitted to submit a credit bid for all or a portion of the assets subject to such lien, up to the amount of such Secured Creditor's undisputed claims (a "<u>Credit Bid</u>"), to the extent permitted under section 363(k) of the Bankruptcy Code, as it relates to the Company Assets; *provided*, *however*, that any Secured Creditor that intends to participate in the Auction with a Bid that includes a Credit Bid shall, as a condition to

such participation, (a) notify the Debtors at least two business days prior to the applicable Bid Deadline that it intends to submit a Credit Bid, (b) provide all documentation requested by the Debtors to establish the lien, claims, and encumbered assets that will be the subject of the Secured Creditor's potential Credit Bid, and (c) notwithstanding the foregoing, such Secured Creditor shall not be a Consultation Party hereunder.

## I.   Evaluation of Qualified Bids.

The Debtors shall evaluate all Qualified Bids and identify the Qualified Bid that is, in the Debtors' judgment, in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid(s) for the applicable Company Assets being sold at the Auction (the "Baseline Bid(s)"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid(s) to each Qualified Bidder at or prior the Auction.

When determining the highest or otherwise best Qualified Bid(s) and selecting the Baseline Bid(s) and the Successful Bid(s), as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate (collectively, the "Bid Assessment Criteria"):

1.    the number, type, and nature of any changes to the form of Purchase Agreement or Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the type and amount of assets sought and obligations to be assumed in the Qualified Bid;

2.    the amount and nature of the total consideration, including the assumption of liabilities;

3.    the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof;

4.    the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents;

5.    any regulatory requirements applicable to the Sale;

6.    the tax consequences of such Qualified Bid;

7.    the impact on employees, including the number of employees proposed to be transferred;

8.    the assumption of liabilities, including obligations under contracts and leases;

9.    the cure amounts to be paid; and

10.   the terms and conditions of a transition services agreement.

**J.  No Qualified Bids.**

If (a) the Debtors have entered into one or more Stalking Horse Agreements, such Stalking Horse Agreements have been approved pursuant to the Bidding Procedures Order, and no Qualified Bids other than the Stalking Horse Bids are received in accordance with these Bidding Procedures or (b) only one Qualified Bid is received, then the Debtors may cancel the Auction.  In such scenarios, the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may designate the Stalking Horse Bid(s) or the only Qualified Bid as the Successful Bid for such Company Assets and pursue entry of the orders approving a Sale of the Company Assets to the Stalking Horse Bidder(s) (pursuant to the Stalking Horse Agreement(s)) or to the Qualified Bidder.

If the Auction is cancelled, the Debtors shall promptly file a notice of cancellation of the Auction and designation of the Stalking Horse Bid or only Qualified Bid as the Successful Bid with the Court.

**K.  Auction.**

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Company Assets or portion of Company Assets by the Bid Deadline, the Debtors shall conduct an Auction to determine the Successful Bidder (and Backup Bidder, as applicable) in their business judgment with respect to such Company Assets or portion of Company Assets in accordance with the procedures set forth herein.

The Auction, if necessary, shall take place on **May 14, 2025 at 9:00 a.m. (prevailing Central Time)** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York, 10019, or by remote video, or such other date, time, and/or location as selected by the Debtors in consultation with the Consultation Parties.  If the Auction is rescheduled, the Debtors will file a notice with the Court disclosing the new date, time, and/or location, as applicable.

      1.    <u>The Debtors Shall Conduct the Auction</u>.

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the material terms of the Baseline Bid(s) for the Company Assets.  The Debtors shall maintain a written transcript of the Auction and all Bids made and announced at the Auction, including the Baseline Bid(s), all applicable Overbids, and the Successful Bid.

Only (a) Qualified Bidders and their legal and financial advisors, (b) the members of and advisors to any Committee, and (c) the DIP Lender and its advisors shall be entitled to attend the Auction.  The Qualified Bidders shall appear at the Auction for which they are Qualified Bidders in person and may speak or bid themselves or through duly authorized representatives.  Only Qualified Bidders shall be entitled to bid at the Auction.

The Debtors explicitly reserve the right, in their business judgment and after consultation with the Consultation Parties, to exercise their discretion in conducting the Auction, including determining whether to adjourn the Auction to facilitate separate discussions between any Qualified Bidders and the Debtors, as applicable.

2.      <u>Terms of Overbids</u>.

"<u>Overbid</u>" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s).  Each applicable Overbid must comply with the following conditions:

a.   **Minimum Overbid Increment.**  The Overbid(s) for the Company Assets shall provide for total consideration with a value that exceeds the value of the consideration under the Baseline Bid(s) by an incremental amount that is not less than an amount to be announced at or before the commencement of the Auction (as applicable, the "<u>Minimum Overbid Increment</u>"), and successive Overbids shall be higher than the Prevailing Highest Bid (as defined below) by at least the Minimum Overbid Increment.  The Debtors reserve the right to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction.  Additional consideration in excess of the amount set forth in the respective Baseline Bid or Prevailing Highest Bid may include: (i) cash; (ii) assumption of liability, which shall be ascribed a value by the Debtors, in determining whether the Minimum Overbid Increment has been met; and (iii) in the case of a Bid by a Secured Creditor, a credit bid on a Secured Creditor's collateral of up to the full amount of such Secured Creditor's allowed secured claim pursuant to section 363(k) of the Bankruptcy Code.

b.   **Conclusion of Each Overbid Round.**  Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

c.   **Overbid Alterations.**  An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid so long as, after giving effect to the same, the terms of the Overbid are no less favorable to the Debtors' estates than any prior Bid or Overbid of such Qualified Bidder, as determined in the Debtors' reasonable business judgment after consultation with the Consultation Parties, and shall otherwise comply with the terms of these Bidding Procedures.

d.   **Announcing Highest Bid.**  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified in the applicable Overbid round an Overbid (or combination of Overbids) as being higher or otherwise better than in the Overbid round, the Baseline Bid plus the Minimum Overbid Increment, or in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest

Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

3.    <u>Consideration of Overbids</u>**.**

The Debtors reserve the right, in their reasonable business judgment and after consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things: (a) facilitate discussions between and amongst the Debtors, the Qualified Bidders, and the Consultation Parties, as appropriate; (b) allow Qualified Bidders to consider how they wish to proceed; and (c) provide Qualified Bidders the opportunity to provide the Debtors and the Consultation Parties with such additional evidence as the Debtors, in their reasonable business judgment after consultation with the Consultation Parties, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

4.    <u>Closing the Auction</u>.

The Auction shall continue until there is one Bid (or a combination of Bids) for the Company Assets to be sold at the Auction that the Debtors determine, in their reasonable business judgment and after consultation with the Consultation Parties, to be the highest or otherwise best Bid (or Bids) for the Company Assets. Such Bid(s) shall be declared the "<u>Successful Bid(s)</u>" and such Qualified Bidder(s), the "<u>Successful Bidder(s)</u>," at which point the Auction will be closed. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

The Successful Bidder shall, within one business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtors after consulting with the Consultation Parties.

As soon as reasonably practicable after closing the Auction, and in any event not less than two business days following closing of the Auction, the Debtors shall cause a notice of Successful Bid and Successful Bidder to be filed with the Court, identifying the Successful Bidder, the Company Assets to be purchased in the Sale, and the key terms of the agreement.

If any Qualified Bid is modified before, during, or after an Auction, the Debtors reserve the right to require that such Qualified Bidder adjust its deposit so that it equals ten percent of the aggregate cash portion of the Purchase Price.

The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, if any, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

5.      No Collusion; Good-Faith *Bona Fide* Offer**.**

Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction that (a) it has not engaged in any collusion with respect to the bidding and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (c) it agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

**L.  Backup Bidder.**

The next-highest or otherwise second-best Bid for the applicable Company Assets, as determined by the Debtors in the exercise of their reasonable business judgment (in consultation with the Consultation Parties) (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder") for such assets, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction, if any, at the same time the Debtors announce the identity of the Successful Bidder.  The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the transaction with the applicable Successful Bidder.  The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder.

The Backup Bidder shall, within one business day after the conclusion of the Auction, submit to the Debtors fully executed revised documentation memorializing the terms of the Backup Bid.  The Backup Bid may not be assigned to any party without the consent of the Debtors.

All Qualified Bids (other than the Successful Bid(s) and the Backup Bid(s)) shall be deemed rejected by the Debtors on and as of the date of approval of the Successful Bid and Backup Bid by the Court.

**M. Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures, in their reasonable business judgment and after consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, if any, additional customary terms and conditions on the Sale of the Company Assets, including: (1) extending the deadlines set forth in these Bidding Procedures; (2) adjourning the Auction, including at the Auction, and/or the Sale Hearing, including in open court, with the notice described herein; (3) modifying the Bidding Procedures and/or adding procedural rules or methods of bidding that are reasonably necessary or advisable under the circumstances for conducting the Auction; (4) canceling the Auction; (5) waiving or imposing additional terms and conditions set forth herein with respect to Potential Bidders; and (6) rejecting any or all Bids.

**N.  Approval of Sale Transactions.**

A hearing to consider the approval of a Sale to the Successful Bidder and the approval of the corresponding Backup Bid, if any (the "Sale Hearing"), will take place before the Honorable Judge Walsh at the Court, 111 South 10th St., 5th Floor, St. Louis, Missouri, 63102 on **June 17, 2025 at 9:00 a.m. (prevailing Central Time)** (unless adjourned or canceled in accordance with these Bidding Procedures).

**The Sale Hearing may be adjourned or continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such adjournment or continuance will be required to be provided to any party (including any Stalking Horse Bidder).**

At the Sale Hearing, the Debtors, in consultation with their advisors, shall present the Successful Bid and any Backup Bid to the Court for approval.  The Sale Order submitted at the Sale Hearing shall provide that:  (1) if the Successful Bid is not consummated, the Debtors may file a notice with the Court designating the applicable Backup Bidder, if any, as the applicable Successful Bidder, and such Backup Bidder, if any, shall be deemed the Successful Bidder for all purposes; and (2) the Debtors will be authorized, but not required, to consummate all transactions contemplated by the applicable Backup Bid, once so designated as the Successful Bid, without further order of the Court or notice to any party.

**O.  Return of Deposits.**

The Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court; *provided*, *however*, the Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited toward the Purchase Price set forth in the Successful Bid, in either case as set forth in these Bidding Procedures. The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five business days after the Sale Hearing.  The Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than three business days after the closing of the Sale with the Successful Bidder.  Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.  If the Successful Bidder (or Backup Bidder, as applicable) timely closes on its transaction, its Deposit shall be credited towards the applicable purchase price.  If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a sale transaction because of a breach or failure to perform on the part of the Successful Bidder (or Backup Bidder, if applicable), the Debtors will not have any obligation to return the Deposit deposited by the Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Debtors as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform without prejudice to any claims, rights, or remedies of the Debtors or their estates for additional damages.

**P. Fiduciary Out.**

Nothing in these Bidding Procedures or any document filed with or entered by the Court in connection therewith shall restrain the board of directors, board of managers, or such similar governing body (including any special committee thereof) of any of the Debtors from taking any action or refraining from taking any action to the extent that such board of directors, board of managers, or such similar governing body (including any special committee thereof) determines, based on the written advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures, the Bidding Procedures Order, or any document filed with or entered by the Court in connection therewith, through the date of the Auction (if held), nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, managers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Company Assets (each, an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity with respect to Alternative Proposals; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

**Exhibit 2**

**Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Jointly Administered) |
| | Related Docket Nos. 30 & __ |

## <u>NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' ASSETS</u>

**PLEASE TAKE NOTICE** that, on **[●]**, the United States Bankruptcy Court for the Eastern District of Missouri (the "<u>Court</u>") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Docket No. __] (the "<u>Bidding Procedures Order</u>"),[2] authorizing the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") to conduct an auction (the "<u>Auction</u>"), if any, to select the party or parties to purchase all or substantially all of the Debtors' assets (the "<u>Company Assets</u>" and, such transaction, the "<u>Sale</u>"). The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "<u>Bidding Procedures</u>"). ***All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.***

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]  Capitalized terms used but not defined have the meanings ascribed to them in the Bidding Procedures Order, the Bidding Procedures, or the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of the Debtors' Assets Free and Clear of Claims, Interests, and Encumbrances, (VII) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VIII) Granting Related Relief* [Docket No. 30] (the "<u>Motion</u>"), as applicable.

PLEASE TAKE FURTHER NOTICE that the **Bid Deadline is May 7**, **2025, at 4:00 p.m. (prevailing Central Time)** and that any person or entity who wishes to participate in the Auction, if any, must comply with the participation requirements, bid requirements, and other requirements set forth in the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that (a) any person or entity who wishes to participate in the Auction must comply in all respects with the Debtors' consumer privacy practices, which do not restrict the transfer of personally identifiable information of the Debtors' customers in connection with a bankruptcy, merger, acquisition, reorganization, or sale of assets, (b) each Bid must contain a statement acknowledging such compliance, and (c) each Bid must acknowledge that it has complied, and will continue to comply, in all respects with the Bidding Procedures, the Bankruptcy Code, and any applicable law, among other requirements.

PLEASE TAKE FURTHER NOTICE that the Debtors, if necessary, intend to conduct the Auction, if any, at which they will consider proposals submitted to them and their advisors, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, on **May 14, 2025 at 9:00 a.m. (prevailing Central Time)** at the offices of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, or by remote video, or such other date and time location as selected by the Debtors in consultation with any Committee and timely communicated to all entities entitled to attend the Auction.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve the right to modify the Bidding Procedures, in their reasonable business judgment in accordance with the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that **June 17, 2025 at 9:00 a.m. (prevailing Central Time),** or as soon thereafter as the Debtors may be heard, shall be the date and time for the hearing at which the Bankruptcy Court will consider approval of the Sale **(**the "Sale Hearing"**)**.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Sale (the "Sale Objections") shall be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri, set forth the name of the objecting party, the nature and amount of any claims or interests held or asserted against the Debtors' estate or properties, the basis for the objection, and the specific grounds therefore, and be filed and served upon the following so that such objections are received by **June 10, 2025 at 4:00 p.m. (prevailing Central Time)** (the "Sale Objection Deadline") by: (a) counsel for the Debtors, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn. Christopher Hopkins (chopkins@paulweiss.com); Jessica Choi (jchoi@paulweiss.com); and Grace C. Hotz (ghotz@paulweiss.com)), and (ii) Carmody MacDonald P.C., 120 S. Central Avenue, Suite 1800 St. Louis, Missouri 63105 (Attn: Thomas H. Riske (thr@carmodymacdonald.com); Nathan R. Wallace (nrw@carmodymacdonald.com); and Jackson J. Gilkey (jjg@carmodymacdonald.com)); (b) the Office of the United States Trustee for the Eastern District of Missouri, 111 South 10th Street, Suite 6.353, St. Louis, Missouri 63102 (Attn: Carole Ryczek (Carole.Ryczek@usdoj.gov) and Paul A. Randolph Paul.A.Randolph@usdoj.gov)); and (c) the Sale Notice Parties (as defined in the Motion).

PLEASE TAKE FURTHER NOTICE that this notice is subject to the full terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, and the

Debtors urge parties in interest to review such documents in their entirety. Copies of the Motion, the Stalking Horse Agreement(s), if any, the Bidding Procedures, and the Bidding Procedures Order, in addition to any related documents that may be filed, may be obtained by accessing (a) the website of the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe, for no charge, or (b) the Court's internet site: https://www.moeb.uscourts.gov/, for a fee, through an account obtained from the PACER website at http://pacer.psc.uscourts.gov.

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY FILE AND SERVE AN OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE COMPANY ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AFFECTED THEREUNDER.**

Dated: [●]
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:    (314) 854-8600
Facsimile:    (314) 854-8660
Email:    thr@carmodymacdonald.com
    nrw@carmodymacdonald.com
    jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
Email:    pbasta@paulweiss.com
    chopkins@paulweiss.com
    jchoi@paulweiss.com
    ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors
in Possession*

## **Exhibit 3**

**Cure Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Jointly Administered) |
| | Related Docket Nos. 30 & __ |

**NOTICE OF (I) POTENTIAL ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES AND (II) PROPOSED CURE AMOUNTS**

You are receiving this notice (this "Notice") because you may be a counterparty to a contract or lease with one or more of the Debtors (as defined below) as set forth on **Appendix A** hereto.  Please read this notice carefully as your rights may be affected by the transactions described herein.[2]

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On [●] 2025, the United States Bankruptcy Court for the Eastern District of Missouri (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Docket No. __] (the "Bidding Procedures Order"),[3] authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction"), if any, to select the party or parties to purchase all or substantially all of the Debtors' assets (the "Company Assets" and, such transaction, the "Sale").  The Auction will be

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]     This Notice is being sent to counterparties to contracts and leases that may be executory contracts and unexpired leases.  This notice is not an admission by the Debtors that any such contract or lease is executory or unexpired.

[3]     Capitalized terms used but not defined have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "<u>Bidding Procedures</u>").

2.    Pursuant to the Bidding Procedures Order, the Debtors **may** assume and assign to the Successful Bidder the executory contract(s) or unexpired lease(s) listed on **Appendix A** attached hereto (each, a "<u>Contract</u>") to which you are a counterparty.  The Debtors have conducted a review of their books and records and have determined that the cure amounts required to be paid pursuant to Bankruptcy Code section 365(b) in respect of such Contract(s) (the "<u>Cure Amount</u>") are as set forth on **Appendix A** attached hereto.  **If you disagree with the proposed Cure Amount, object to the proposed assumption and assignment of the Contract(s) to the Successful Bidder, or object to the Successful Bidder's ability to provide adequate assurance of future performance with respect to any Contract(s), you must file an objection (a "<u>Cure/Assignment Objection</u>") stating with specificity the nature of your objection, with the Court no later than 4:00 p.m. (prevailing Central Time) on June 10, 2025 (the "<u>Cure/Assignment Objection Deadline</u>")**.

3.    If no objection to (a) the Cure Amount, (b) the proposed assumption and assignment of any Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure/Assignment Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Amount as determined by the Debtors is correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Amount under the proposed assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance.

4.    Any objection to the proposed assumption and assignment of a Contract or related Cure Amount in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

5.    Notwithstanding anything herein, the mere listing of any Contract on the Cure Notice does not require or guarantee that such Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Contracts are reserved.  Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Contract as either rejected or assumed in connection with the Sale.

6.    Nothing herein (a) alters in any way the prepetition nature of any Contract or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Contract, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of a counterparty to any Contract against the Debtors that may arise under such Contract.

7.     This notice is subject to the full terms and conditions of the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors urge parties in interest to review such documents in their entirety.  Copies of the Stalking Horse Agreement(s), if any, the Bidding Procedures, and the Bidding Procedures Order, in addition to any related documents that have been or may be filed, may be obtained by accessing (a) the website of the Debtors' notice and claims agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe for no charge, or (b) the Court's internet site: https://www.moeb.uscourts.gov/, for a fee, through an account obtained from the PACER website at http://pacer.psc.uscourts.gov.  The documents also may be obtained from the Debtors' claims and notice agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of Page Intentionally Left Blank*]

Dated: [●], 2025
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:     (314) 854-8600
Facsimile:     (314) 854-8660
Email:          thr@carmodymacdonald.com
                nrw@carmodymacdonald.com
                jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 373-3000
Facsimile:     (212) 757-3990
Email:          pbasta@paulweiss.com
                chopkins@paulweiss.com
                jchoi@paulweiss.com
                ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

APPENDIX A TO CURE NOTICE

| Counterparty Name | Contract/Lease | Cure Amount |
| --- | --- | --- |

**<u>Exhibit 4</u>**

**De Minimis Asset Sale Notice**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Jointly Administered) |
|  | Related Docket Nos. 30 & __ |

NOTICE OF DE MINIMIS ASSET SALE

On [●], 2025, the United States Bankruptcy Court for the Eastern District of Missouri (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] attached hereto as Exhibit A, by which the Court approved procedures by which the Debtors are authorized to sell or transfer certain assets with an aggregate purchase price equal to or less than $2,000,000 (the "De Minimis Assets").

**PLEASE TAKE NOTICE** that, pursuant to the Bidding Procedures Order, the Debtors propose to sell the De Minimis Assets as set forth and described on Exhibit B attached hereto (the "De Minimis Sale Assets"). Exhibit B identifies, for each De Minimis Sale Asset: (a) the De Minimis Sale Assets and their location, (b) the De Minimis Asset Purchaser its relationship, if any, to the Debtors, (c) the purchase price and other material economic terms and conditions of the sale, (d) the identity of any party asserting a lien, claim, interest, or encumbrance on any De Minimis

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of the Debtors' Assets Free and Clear of Claims, Interests, and Encumbrances, (VII) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VIII) Granting Related Relief* [Docket No. 30] (the "Motion").

Sale Asset, any such lien, claim, interest, or encumbrance attaching to the proceeds of the sale described in <u>Exhibit B</u>, and (e) other relevant information.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed sale of any De Minimis Sale Assets  (each, an "<u>Objection</u>") must be filed and served so that such objection is filed with the Court and **<u>actually received</u>** by **4:00 p.m. (prevailing Central Time) on _____** (the "<u>De Minimis Sale Objection Deadline</u>").

**PLEASE TAKE FURTHER NOTICE** that, absent a timely filed objection to this De Minimis Asset Sale Notice, the Debtors are authorized to immediately consummate the De Minimis Asset Sale described in <u>Exhibit B</u> without further notice, hearing, or order of this Court.

**PLEASE TAKE FURTHER NOTICE** that, if you object to the De Minimis Asset Sale, the Debtors may not consummate the De Minimis Asset Sale unless you withdraw the objection, you resolve the objection with the Debtors, this Court specifically approves the De Minimis Asset Sale by further order, or your objection is overruled.

**PLEASE TAKE FURTHER NOTICE** that, if you object to the De Minimis Asset Sale, and you do not withdraw your objection or resolve your objection with the Debtors, the Debtors shall file a notice of hearing to contest your objection with the Court.

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE DE MINIMIS SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE DISPOSITION OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN SUCH OTHER AGREEMENT WITH THE DE MINIMIS ASSET PURCHASER.**

PLEASE TAKE FURTHER NOTICE that copies of the Bidding Procedures Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 367-7556 (U.S. and Canada) or (646) 891-5055 (International); (b) by visiting the website maintained in these chapter 11 cases at <u>https://restructuring.ra.kroll.com/23andMe</u>; or (c) for a fee via PACER by visiting <u>http://pacer.psc.uscourts.gov</u>.

Dated: [●], 2025
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:      (314) 854-8600
Facsimile:      (314) 854-8660
Email:          thr@carmodymacdonald.com
                nrw@carmodymacdonald.com
                jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990
Email:          pbasta@paulweiss.com
                chopkins@paulweiss.com
                jchoi@paulweiss.com
                ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

## **<u>Exhibit A</u>**

**Bidding Procedures Order**

## Exhibit B

**De Minimis Asset Sale List**

| De Minimis Asset(s) | Encumbrances on De Minimis Asset(s) | De Minimis Asset Purchaser | Relationship of De Minimis Asset Purchaser to Debtors (if any) | Price | Conditions of De Minimis Asset Sale | Sale Effective Date | Identity of any Party Asserting Encumbrance on De Minimis Asset(s) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

## **Exhibit 5**

**Abandonment Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976 |
| Debtors. | (Jointly Administered) |
| | Related Docket Nos. 30 & __ |

**NOTICE OF ABANDONMENT OF ASSETS**

On [●], 2025, the United States Bankruptcy Court for the Eastern District of Missouri (the "Court") entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[2] attached hereto as Exhibit A, by which the Court approved procedures by which the Debtors are authorized to abandon certain of their assets.

**PLEASE TAKE NOTICE** that, pursuant to the Bidding Procedures Order, the Debtors have determined, in the reasonable exercise of their business judgment, to abandon the property set forth and described on Exhibit B attached hereto (the "Abandoned Assets").  Exhibit B identifies, for each De Minimis Sale Asset: (a) the Abandoned Assets and their location, (b) a summary of the reasons for abandoning such property, and (c) the entity to whom the Abandoned Assets are proposed to be abandoned, if any.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]   All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of the Debtors' Assets Free and Clear of Claims, Interests, and Encumbrances, (VII) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VIII) Granting Related Relief* [Docket No. 30] (the "Motion").

PLEASE TAKE FURTHER NOTICE that any objection to the proposed abandonment of any Abandoned Assets  (each, an "Objection") must be filed and served so that such objection is filed with the Court and **actually received** by **4:00 p.m. (prevailing Central Time) on** _____ (the "Abandonment Objection Deadline").

PLEASE TAKE FURTHER NOTICE that, absent a timely filed objection to this Abandonment Notice, the Debtors are authorized to immediately abandon the Abandoned Assets described in Exhibit B without further notice, hearing, or order of this Court.

PLEASE TAKE FURTHER NOTICE that, if you object to the abandonment of the Abandoned Assets, the Debtors may not abandon such assets unless you withdraw the objection, you resolve the objection with the Debtors, the Court specifically approves the abandonment by further order, or your objection is overruled.

PLEASE TAKE FURTHER NOTICE that, if you object to the Abandonment Sale, and you do not withdraw your objection or resolve your objection with the Debtors, the Debtors shall file a notice of hearing to contest your objection with the Court.

## CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE ABANDONMENT ON OR BEFORE THE ABANDONMENT OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ABANDONMENT.**

PLEASE TAKE FURTHER NOTICE that copies of the Bidding Procedures Order, as well as all related exhibits, are available: (a) upon request to Kroll Restructuring Administration LLC (the claims, noticing, and solicitation agent retained in these chapter 11 cases) by calling (888) 367-7556 (U.S. and Canada) or (646) 891-5055 (International); (b) by visiting the website maintained in these chapter 11 cases at https://restructuring.ra.kroll.com/23andMe; or (c) for a fee via PACER by visiting http://pacer.psc.uscourts.gov.

Dated: [●], 2025
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:      (314) 854-8600
Facsimile:      (314) 854-8660
Email:          thr@carmodymacdonald.com
                nrw@carmodymacdonald.com
                jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Christopher Hopkins (*pro hac vice* pending)
Jessica I. Choi (*pro hac vice* pending)
Grace C. Hotz (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990
Email:          pbasta@paulweiss.com
                chopkins@paulweiss.com
                jchoi@paulweiss.com
                ghotz@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

## Exhibit A

**Bidding Procedures Order**

### Exhibit B

**Abandoned Assets**

| Abandoned Assets | Location of Abandoned Assets | Reasons for Abandonment | Entity to Whom the Abandoned Assets is Proposed to be Abandoned |
|---|---|---|---|
|  |  |  |  |