**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976-357 |
| Debtors. | (Jointly Administered) |
| | Hearing Date:  April 29, 2025<br>Hearing Time:  1:30 p.m. CDT<br>Hearing Location:  Courtroom 5 North<br>Objection Deadline: April 22, 2025 at 4:00 p.m. CDT |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPOINTING AN
INDEPENDENT CUSTOMER DATA REPRESENTATIVE AND
(II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion:

**Relief Requested**

1. By this motion, the Debtors seek entry of an order (the "Proposed Order")[2] (a) authorizing the appointment of an independent Customer Data Representative pursuant to the CDR Protocol (each as defined below) in these chapter 11 cases and (b) granting related relief.

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are:  23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595).  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] A copy of the Proposed Order will be made available on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

**Jurisdiction and Venue**

2.  The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors consent to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

**Background**

5.  23andMe Holding Co. (collectively with its Debtor subsidiaries and non-Debtor affiliates,[3] the "Company") is a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome. The Company pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports. Further, through its Lemonaid Health telehealth platform, the Company operates as a national online doctor's office that provides medical care, pharmacy fulfillment, and laboratory testing services.

6.  On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

---

[3] Non-Debtor affiliates exclude any controlling shareholder of 23andMe Holding Co.

2

7. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). On April 3, 2025, the Office of the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

8. A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration").

9. On March 28, 2025, the Court approved the *Bidding Procedures for the Sale of the Debtors' Assets* (the "Bidding Procedures").[4] Under the Bidding Procedures, any potential bidder "must comply in all respects with the Debtors' consumer privacy practices, which do not restrict the transfer of personally identifiable information of the Debtors' customers in connection with a bankruptcy, merger, acquisition, reorganization, or sale of assets, and each Bid must contain a statement acknowledging such compliance" to become a Qualified Bidder[5] in the sales process. *See* Bidding Procedures, Section G (Bid Requirements) ¶ 16 (Privacy Policies).

---

[4] *See Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), if Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Docket No. 125], Exhibit 1 (Bidding Procedures).

[5] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration or the Bidding Procedures.

3

**The Customer Data Representative**

10. Since its founding, the Debtors have prioritized the privacy and security of their customers' personally identifiable information[6] and genetic data (collectively, the "Customer Data"). This core principle is embedded in the Debtors' prepetition privacy statement (the "Privacy Statement") and terms of service (the "Terms of Service" and, together with the Privacy Statement, the "Policies") that collectively govern, among other things, how the Debtors store and process Customer Data. The Debtors remain committed to being responsible stewards of their Customer Data in these cases. Specifically, the Debtors (a) have not modified or otherwise sought to amend the terms of their existing Policies, (b) have required that any Potential Bidder must agree to comply with the Policies and applicable law with respect to the treatment of Customer Data in connection with any Sale, and (c) have not changed the way they store or process Customer Data.[7]

11. The Policies expressly permit the sale or transfer of Customer Data in certain transactions, including in the event of a bankruptcy filing or asset sale. In relevant part, the Privacy Statement provides "[i]f we are involved in a bankruptcy, merger, acquisition, reorganization, or sale of assets, your Personal Information may be accessed, sold or transferred as part of that transaction and this Privacy Statement will apply to your Personal Information as transferred to the new entity." *See* Privacy Statement, 23andMe, (Mar. 14, 2025) https://www.23andme.com./legal/privacy/full-version/.

12. The Debtors submit that because their prepetition Policies remain in place, and because the Bidding Procedures require that Qualified Bidders comply with these Policies, the

---

[6] For the avoidance of doubt, "personally identifiable information" as used herein shall include "personal information" as defined under applicable privacy laws.

[7] Any transaction involving the transfer of customer data will also be subject to notice and oversight and approval by the Court and customary regulatory approvals.

appointment of a consumer privacy ombudsman as contemplated under sections 332 and 363(b)(1) of the Bankruptcy Code (a "CPO") is not required in these chapter 11 cases. Section 363(b)(1) provides that a CPO is only required if "the debtor . . . discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case." 11 U.S.C. § 363(b)(1). Here, the Policies expressly permit such a transfer to unaffiliated third parties in connection with a bankruptcy or asset sale. Additionally, any Qualified Bidder must agree to take Customer Data subject to the Debtors' Policies under the Bidding Procedures. Accordingly, the statutory predicate for appointing a CPO is not met.

13. Notwithstanding that a CPO is not required in these cases, the Debtors recognize that the treatment of Customer Data—including in connection with a potential Sale—is an issue of paramount importance to its customers, regulators, and other stakeholders. As a result, the Debtors have determined in their business judgment to appoint a disinterested, independent representative (a "Customer Data Representative" or "CDR") to provide, among other things, an objective assessment of (a) whether any proposed Sale involving the transfer of Customer Data complies with the Policies and applicable data privacy laws and (b) any impacts on the security of Customer Data resulting from any such transaction pursuant to the CDR Protocol as defined and further set forth below.

14. The Debtors have identified multiple potential candidates to act as the Customer Data Representative. Given the Committee was only recently appointed, the Debtors intend to consult with the Committee and the U.S. Trustee before designating a proposed Customer Data Representative. The Debtors will file a notice at least five days before the objection deadline for this Motion (the "CDR Notice") that will disclose (a) the proposed Customer Data

5

Representative, including a declaration from the proposed individual setting forth his or her qualifications and that such individual is disinterested in these cases and (b) the proposed compensation arrangement for such individual (the "CDR Compensation"), which costs shall be borne by the Debtors' estates.

15. The Debtors therefore respectfully request entry of an order appointing a Customer Data Representative pursuant to the CDR Protocol, as defined and on the terms set forth below and in the Proposed Order.[8]

**A.    CDR Protocol**

16. The Debtors propose that the Customer Data Representative shall perform the following duties in accordance with the terms set forth below (the "CDR Protocol").

17. *Review of Policies and Security Controls*.  The Debtors request that the Customer Data Representative conduct a review of the Debtors' (a) existing Policies, (b) cyber security infrastructure, and (c) other relevant information related to the security of the Customer Data.

18. *Consultation Party in Sale Process.*  With respect to data privacy and cyber security issues relating to the treatment of Customer Data in connection with any potential Sale, the Debtors request that the Customer Data Representative be deemed a Consultation Party as defined and contemplated under the Bidding Procedures for the purposes set forth in this CDR Protocol.  In this capacity, the Customer Data Representative shall, among other things, (a) identify any potential issues arising from the treatment of Customer Data in any potential Sale and make recommendations to the Debtors on how to address any such issues, and (b) evaluate the cyber security capabilities and data storage infrastructure of any Successful Bidder and

---

[8] The Debtors discussed the relief requested with the U.S. Trustee ahead of the filing. Although those discussions did not result in the U.S. Trustee supporting the requested relief, the Debtors intend to continue discussions with the U.S. Trustee ahead of the hearing on the motion to resolve any issues.

6

provide the Debtors with a recommendation as to whether such capabilities and infrastructure adequately protect Customer Data.

19.     *Final Report.*  The Customer Data Representative will prepare a report (the "CDR Report") analyzing any proposed transaction providing for the transfer of Customer Data, which shall be filed on the Court's docket at least five days prior to the Sale Objection Deadline applicable to any such sale.  This CDR Report will address whether the proposed transfer of Customer Data to a Successful Bidder (a) complies with the Debtors' Policies, (b) will result in a material change in the security of Customer Data, based upon a comparison of the Debtors' cyber security infrastructure with any Successful Bidder's cyber security infrastructure, and (c) is reasonable under the circumstances after balancing, on the one hand, the interests of the Debtors' customers with respect to the treatment and management of Customer Data against the Debtors' fiduciary obligation to maximize the value of their respective estates, on the other.  If the proposed Sale is deemed unreasonable by the Customer Data Representative, the Customer Data Representative will submit, as part of the CDR Report, recommendations as to potential alternatives or modifications that would mitigate potential adverse impacts on the security of Customer Data arising from the proposed transfer in connection with any potential Sale.  The Customer Data Representative will regularly consult with the Debtors solely as to (a) confirm the accuracy of, or address any questions related to, the Debtors' Policies and their cyber security capabilities and data storage infrastructure or (b) facilitate discussions between the Customer Data Representative and any Successful Bidder to address any factual issues or concerns related to such Successful Bidder's treatment of Customer Data, cyber security capabilities, or data storage infrastructure, and will provide to the Debtors and the Committee a draft of the Final

7

Report at least seven days prior to filing the Final Report on the Court's docket. If necessary, the Customer Data Representative will be available to testify at the Sale Hearing.

20. *Coordination with Key Stakeholders*. The Customer Data Representative, together with representatives of the Debtors, shall provide the U.S. Trustee, the Committee, and other key stakeholders (as determined by the Debtors in their reasonable discretion), reasonable access to the Customer Data Representative throughout these cases and ahead of the filing of the CDR Report.

21. *Other Material Terms*:

| TERM | RESPONSIBILITIES OF THE CUSTOMER DATA REPRESENTATIVE |
|---|---|
| **Disinterestedness** | The Customer Data Representative will be "disinterested" as that term is defined in section 101(14) of the Bankruptcy Code and remain disinterested throughout the pendency of these chapter 11 cases. If any new relevant facts or relationships are discovered subsequent to their appointment, the Customer Data Representative shall promptly notify the Debtors of any such developments. |
| **Exculpation** | From the Court's entry of the Proposed Order through the closing of any Sale, and to the greatest extent allowed by applicable law, the Customer Data Representative and any personnel employed by the Customer Data Representative to assist the Customer Data Representative with its duties and obligations arising under the Proposed Order will be exculpated from, and will not have or incur liability for, any claim, cause of action, obligation, suit, judgment, damage, demand, loss, or liability for any claim related to any act or omission in connection with, relating to, or arising out of, their services in these chapter 11 cases in accordance with the CDR Protocol (the "Exculpation Provision"). The foregoing shall not apply to claims related to any act or omission that is determined by a final order to have constituted gross negligence, fraud, or willful misconduct. |

8

| TERM | RESPONSIBILITIES OF THE CUSTOMER DATA REPRESENTATIVE |
|---|---|
| **Confidentiality** | Any personally identifiable information obtained by the Customer Data Representative in its capacity as such during these chapter 11 cases will be kept confidential and will not be disclosed by the Customer Data Representative. For the avoidance of doubt, personally identifiable information will include, but not be limited to, all Customer Data obtained by the Customer Data Representative in connection with these chapter 11 cases. Additionally, the Debtors request that all materials produced by or communications from the Customer Data Representative, other than the filed CDR Report, shall (a) be strictly confidential, (b) remain confidential, and (c) be protected from disclosure to any person or party and/or to any court or governmental agency, absent the express written consent of the Debtors (collectively, the "Confidentiality Provision"). |

**Basis for Relief**

**A.    The Appointment of a Consumer Privacy Ombudsman Is Not Required in These Chapter 11 Cases**

22.    Pursuant to Section 101(41A) of the Bankruptcy Code, "personally identifiable information" includes (a) an individual's name, residence address, email address, telephone number, social security number, or credit card number; or (b) if identified in connection with one or more of the items of information in (a), (i) an individual's birth date, or (ii) any other information that, if disclosed, would result in contacting or identifying such individual physically or electronically.  The appointment of a Consumer Privacy Ombudsman is required only when a debtor seeks to sell or transfer personally identifiable information in contravention of the debtor's privacy policy (a) that the debtor has disclosed to an individual, (b) that prohibits the transfer of personally identifiable information, and (c) that is in effect on the date of the commencement of the case.  *See* 11 U.S.C. § 363(b)(1)(A).

9

23. As discussed above, the Policies explicitly permit the transfer of personally identifiable information (*i.e.*, the Customer Data) to an unaffiliated third-party as part of a broader transaction. As a precondition to using the Debtors' services or products, the Debtors' customers must consent to the Debtors' Policies, including the provision that allows for the transfer of Customer Data in connection with a sale of the Debtors' assets. The Debtors' existing Policies were implemented prepetition, remain unchanged postpetition, and are prominently posted on the Debtors' website.

24. Because any sale or transfer of personally identifiable information comports with the Debtors' Policies regarding the transfer of such information, and because any customer of the Debtors must have agreed to the Policies as a condition of transacting with the Debtors, the appointment of a Consumer Privacy Ombudsman in accordance with sections 332 or 363(b)(1) of the Bankruptcy Code is not required with respect to any Sale of Customer Data or similar transaction in these chapter 11 cases. *See, e.g.*, *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (Bankr. D. Del. July 19, 2016) [Docket No. 2552] (finding that because the contemplated asset transfer complied with the Debtors' privacy policy, the appointment of a consumer privacy ombudsman was not required); *In re Bed Bath Beyond Inc.*, No. 23-13359 (Bankr. D. N.J. July 11, 2023) [Docket No. 1314] (finding that the appointment of a consumer privacy ombudsman was not required because the proposed sale complied with the terms of the Debtors' policy regarding the transfer of personally identifiable information as of the Petition Date); *In re Gordmans Stores, Inc.*, No. 17-80304 (Bankr. D. Neb. Apr. 10, 2017) [Docket No. 334] ("[t]he Transactions do not require the appointment of a consumer privacy ombudsman with respect to personally identifiable information . . . because the Transactions are consistent with the Debtors' privacy policy.").

10

**B.      The Appointment of a Customer Data Representative Is a Sound Exercise of the Debtors' Business Judgment and Should Be Approved**

25.     Although a consumer privacy ombudsman is not required in these chapter 11 cases, the Debtors seek the appointment of a neutral, independent, and disinterested Customer Data Representative given the importance of protecting Customer Data, the need for any Sale to close as soon as possible after the Sale Hearing, and the privacy and security-related concerns raised by various stakeholders, regulators, and other parties in interest in these chapter 11 cases. The appointment of a Consumer Data Representative early in the Debtors' sale process in these chapter 11 cases will ensure that Customer Data is treated appropriately in connection with any potential Sale.

26.     Section 363(b)(1) of the Bankruptcy Code permits a Debtor to use, sell, or lease property of the estate outside of the ordinary course of business after a notice and hearing, unless a debtor's privacy policy prohibits the transfer of personally identifiable information to non-debtors and such policy is in effect on the petition date. *See* 11 U.S.C. § 363(b)(1). In approving a transaction conducted pursuant to section 363(b)(1), courts apply the business judgment standard. *See, e.g.*, *In re Patriot Coal Corp.*, 492 B.R. 518, 530-31 (Bankr. E.D.Mo. 2013) (citing *In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012)); *In re Borders Group, Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011). For a debtor to have satisfied the business judgment standard, "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business." *In re ASARCO LLC*, 441 B.R. 813, 823 (Bankr. S.D.Tex. 2010) ("Approval of § 363(b) transactions requires that the bankruptcy court find that the debtor justify the proposed transaction . . . [by] some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal quotations omitted).

11

27. Here, the appointment of a Customer Data Representative in connection with the Debtors' sale process is an appropriate use of the Debtors' business judgment. Notwithstanding that the Bankruptcy Code does not require the appointment of a CPO, the Debtors have determined in their business judgment to appoint a disinterested, independent Customer Data Representative to objectively assess (a) whether any proposed sale transaction involving the transfer of Customer Data complies with the Policies and applicable data privacy laws, and (b) any resulting impact on the Customer Data pursuant to the CDR Protocol. The Debtors believe that appointing a Customer Data Representative will encourage customers' confidence in the security of Customer Data, facilitate the closing of any proposed sale transaction on a timely basis, and ultimately maximize value for all stakeholders.

28. Moreover, section 105(a) of the Bankruptcy Code and the "doctrine of necessity" permit the bankruptcy court to exercise its broad grant of equitable powers to authorize actions that "are necessary to the continued operation of the Debtor." *See, e.g.*, *In re Wehrenberg, Inc.*, 260 B.R. 468, 469 (Bankr. E.D. Mo. 2001); *Bird* v. *Crown Convenience* (*In re NWFX, Inc.*), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy, however, is that equitable principles govern . . ."); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) (explaining that courts have long justified actions under the "doctrine of necessity" when those actions were "necessary to keep the debtor in business," and "was necessary to effectuate a successful reorganization . . ."). Thus, Section 105(a) empowers the Court to authorize the appointment of a Customer Data Representative when such appointment will preserve the going-concern value of the debtor's estate, as is the case here. *See In re CoServ, L.L.C.*, 273 B.R. at 497 (holding that section 105(a) authorizes actions to aid in preservation or enhancement of a Debtor's estate).

29. Here, authorizing the Debtors to appoint a Customer Data Representative during the pendency of these chapter 11 cases will help preserve the value of the Debtors' estates. The Debtors' ability to reassure their customers of the privacy and security of their data has always been, and remains, a core principle of the Debtors' business strategy. The Debtors therefore seek to reinforce their continued commitment to transparency and their sound stewardship of Customer Data through the voluntary appointment of a Customer Data Representative.

30. In addition, the Debtors believe that the appointment of a Customer Data Representative will increase the likelihood of a Sale closing on an expedited basis. The Customer Data Representative, in its capacity as a Consultation Party, will be able to identify and advise the Debtors on potential privacy or security related issues arising from the treatment of Customer Data as part of any potential Sale, such that the Debtors will be able to address such issues on a real-time basis throughout the sale process or otherwise incorporate the privacy and security-related considerations as part of the Debtors' evaluation of Bids received. Most importantly, the appointment of a Customer Data Representative will help reassure stakeholders that any potential Sale adequately addresses the treatment of their Customer Data.

31. For the foregoing reasons, the Debtors submit that the circumstances of these chapter 11 cases warrant granting the requested relief, and that doing so is in the best interests of the Debtors, their estates, their creditors, and their stakeholders, and therefore should be granted. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to appoint a Customer Data Representative pursuant to sections 363 and 105(a) of the Bankruptcy Code.

**Reservation of Rights**

32. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or

validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

33.     The Debtors will provide notice of this motion to the following parties:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (d) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (e)

14

counsel to the lender under the Debtors' proposed postpetition financing facility; (f) the United States Attorney's Office for the Eastern District of Missouri; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the Federal Trade Commission; (j) the state attorneys general in all 50 states; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of this motion and any order entered hereon will be served in accordance with Local Rule 9013-3(A)(1).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

34. A copy of this motion is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other relief as the Court deems appropriate under the circumstances.

Dated: April 7, 2025  
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
/s/ *Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 854-8600
Facsimile: (314) 854-8660
Email: thr@carmodymacdonald.com
nrw@carmodymacdonald.com
jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: pbasta@paulweiss.com
chopkins@paulweiss.com
jchoi@paulweiss.com
ghotz@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*