# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# ST. LOUIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| 23ANDMEHOLDING CO., *et al.*, | ) | Case No. 25-40976 |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| The State of Missouri, ex rel. Attorney General Andrew Bailey | ) ) | Hon. Brian C. Walsh |
| Movant | ) ) | U.S. Bankruptcy Judge |
| v. | ) ) | |
| 23ANDME HOLDING CO., *et al.*,[1] | ) ) | **Response Deadline:** April 29, 2025 **Hearing Date:** April 29, 2025 |
| Respondents. | ) ) | **Hearing Time:** 1:30 p.m. (CST) **Hearing Location:** |
| | ) ) ) ) | Thomas F. Eagleton U.S. Courthouse 111 S. 10th Street Courtroom 5 North St. Louis, MO 63102 |

## MISSOURI ATTORNEY GENERAL'S MOTION FOR APPOINTMENT OF A CONSUMER PRIVACY OMBUDSMAN UNDER 11U.S.C. §§105(a), 332, and 365(b)(1) AND NOTICE OF HEARING

**WARNING: THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE BY APRIL 29, 2025.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. THE DATE IS SET OUT ABOVE. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is:  870 Market Street, Room 415, San Francisco, CA 94102.

**COMES NOW**, the State of Missouri, at the relation of Attorney General Andrew Bailey ("Missouri"), and hereby files this *Motion for Order Appointing a Consumer Privacy Ombudsman* ("CPO") *under 11 U.S.C. §§105(a), 332 and 365(b)(1) and Notice of Hearing* (the "Motion"). In support of the Motion, Missouri states as follows:

## I.  INTRODUCTION

In a first-of-its-kind case, 23andMe Holding Co. ("23andMe") and its debtor affiliates ("Debtors") seek the Court's permission to sell off assets that include the data of millions of Americans. This data is not just ordinary personally identifiable information ("PII"), but also extraordinarily sensitive genetic data that may include consumers' biological samples, genomes, medical records, and individualized diagnoses and treatments based on that genetic data.

As has already been highlighted to the Court in filings by the United States Trustee[2] and the State of Texas,[3] the highly sensitive nature of this data, the importance of safeguarding it, and the unique nature of this case cannot be overstated. The data at issue is protected by not only Missouri law governing the disclosure of genetic information specifically, but also relevant consumer protection laws that may restrict the disclosure of PII generally. The appointment of a proactive Consumer Privacy Ombudsman who is knowledgeable in these matters is necessary to ensure the careful and robust consideration that these complex and important issues deserve.

## II.  JURISDICTION AND VENUE

1.  United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the

---

[2] Dkt. No. 195 "*United States Trustee's (I) Motion for Appointment of Consumer Privacy Ombudsman or, in the Alternative, Appointment of an Examiner and (II) Objection to Debtors' Motion for Appointment of Independent Customer Data Representative*" is incorporated by reference herein.
[3] Dkt. No. 181 "*Motion for Order Appointing a Consumer Privacy Ombudsman Under 11 U.S.C. §§ 105(a), 332, and 363(b)(1) and Notice of Hearing*" is incorporated by reference herein.

Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Court has the authority to enter a final order with respect to the Motion.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the requested relief are sections 105(a), 332, and 363(b)(1) of the Bankruptcy Code, rules 6004(g), 7004, 9006(d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's Local Rules of Bankruptcy Procedure (the "Local Rules").

### III. RELEVANT BACKGROUND

4. 23andMe specializes in the collection and monetization of human genetic data. Through its telehealth subsidiaries, Lemonaid, 23andMe also collects personal health information and creates medical records.[4]

5. Though 23andMe collects and maintains a vast amount of sensitive personal information about consumers, it most importantly collects and analyzes biological samples in order to sequence a person's entire genome, which can be used to determine, among other things, risk factors for certain diseases.[5] 23andMe has collected and stores this sensitive genetic information on more than 15 million people.[6]

6. On March 23, 2025, 23andMe Holding Co. and eleven affiliated debtors filed bankruptcy, and on March 24, 2025, the Debtors filed its *Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice*

---

[4] *See* Lemonaid Health, Inc.'s March 14, 2025 Privacy Policy, (https://www.lemonaidhealth.com/legals/privacy-policy)
[5] Dkt. No. 32 at. ¶¶26-32.
[6] Dkt. No. 32 at ¶¶2-3, 19.

3

*Thereof, (IV) Approving Procedures Regarding Entry Into Stalking Horse Agreement(s), if any, (V)Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (VII) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VIII) Granting Related Relief*[7] in which, among other things, the Debtors seek approval from this Court to auction off the Debtors' assets.

7. Though Debtors have not provided a list of assets to be sold, those assets presumably include the genetic material, genetic information, and other personally identifiable information of millions of Americans.

8. While the Debtors have stated that they will seek to protect consumers PII, Debtors have also stated that "[t]o the extent circumstances arise where any deviation from the Company's consumer privacy practices is warranted" the Debtors will implement changes as needed.[8]

9. These assurances ring hallow, and it is not the first time that Debtors have failed to safeguard consumers' information, In October 2023, 23andMe experienced a data breach that affected approximately seven million consumers resulting in federal, state and international investigations as well as a civil class action.[9] This highly sensitive information was then found to be used across the dark web.[10]

---

[7] Dkt. No. 30. Hereinafter "Debtors' Motion" or "Bidding Procedures Motion."
[8] Dkt. No. 32 at ¶112.
[9] Dkt. No. 32 at ¶6.
[10] Letter from Bill Cassidy, M.D., Ranking Member Senate Comm. on Health, Educ., Labor & Pensions to Anne Wojcicki Chief Executive Officer of 23andMe, Inc. (Oct. 20, 2023), https://www.help.senate.gov/imo/media/doc/cassidy_letter_on_23andme_data_leak.pdf.

4

IV.   ARGUMENT

A. **The Court Should Appoint a Consumer Privacy Ombudsman because the Debtors' Current Privacy Policy Does Not Apply to All Consumers.**

10. As more thoroughly discussed in the United States Trustee's Motion to Appoint[11] and the State of Texas's Motion to Appoint,[12] the Debtors' privacy policy at the time of filing should not apply to all consumers.

11. For example, prior to June 8, 2022, the Debtor's privacy policy did not contain language permitting the sale of consumers' information in bankruptcy.[13]

12. At a minimum, any consumers that bought a 23andMe kit prior to June 8, 2022, were not subject to the language regarding selling consumers' personal information in a bankruptcy. Because those privacy policies failed to disclose that Debtors may sell or transfer that information, the Court must appoint a Consumer Privacy Ombudsman under 11 U.S.C. § 332 to assist the Court in its consideration of the sale motion.[14]

13. Further, is unclear how many times the Debtor has changed its privacy policy, but such changes may include other relevant representations by Debtor with respect to the privacy and treatment of consumers' personal information at the time they purchased these often one-time products which may conflict with Debtors' proposed sale.[15]

14. This Court should appoint a Consumer Privacy Ombudsman to review the Debtors' prior privacy policies and determine their proper application.

---

[11] Dkt. No. 195.
[12] Dkt. No. 181.
[13] David Siffert, *If 23andMe Goes Bankrupt, What Happens to All Our Data?*, 203 N.Y.L.J. 4 (Jan. 4, 2025).
[14] *See* 11 U.S.C. § 363(b)(1)(A), (B).
[15] *See* Dkt No. 31-32 at ¶4 (referring to sale of product as a "often one-time" sale). The Texas Attorney General's Motion to Appoint a Consumer Privacy Ombudsman describes other serious issues with the Debtors' privacy policies, including conflicting representations as to the control and treatment of consumers' information. *See* Dkt. No. 181 at ¶¶14-20. As such, they will not be repeated in full here but are incorporated by reference.

5

**B. The Court Should Appoint a Consumer Privacy Ombudsman because the Debtors' Privacy Policy Violates Missouri's Genetic Data Privacy Law**.

15. Debtors argue that under 11 U.S.C. § 363, the Debtors' privacy policy in place at the time of the bankruptcy filings[16] allows for the proposed sale of consumers' information. However, as noted above, the Debtors' privacy policy at the time of filing does not apply to all consumers.

16. Moreover, even if it did apply, the sale of such consumers' genetic information would violate Missouri law. Specifically Missouri's Genetic Information Privacy Law mandates that "any person who, in the ordinary course of business . . . or rendering of a service, creates, stores, receives or furnishes genetic information" must "hold such information as confidential medical records and shall not disclose such genetic information except pursuant to written authorization of the person to whom such information pertains."[17]

17. The illegal sale of genetic information cannot be "consistent with"[18] Debtors' privacy policies when those polices cannot authorize that which Missouri law forbids.[19]

18. Instead, the appointment of a Consumer Privacy Ombudsman is necessary to review the Debtors' policies, the applicable law, and other relevant information and to make recommendations for this Court's consideration, including whether such sale "would violate applicable nonbankruptcy law."[20]

---

[16] 23andMe's March 14, 2025, Privacy Policy, https://www.23andme.com/legal/privacy/full-version/
[17] Mo. Rev. Stat. §375.1309.1.
[18] 11 U.S.C. § 363(b)(1)(A).
[19] *See* 28 U.S.C. § 959(b) ("[A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his . . . according to the requirements of the valid laws of the State in which such property is situated.")
[20] 11 U.S.C. § 363(b)(1)(B)(ii).

6

C. **The Court Should Appoint a Consumer Privacy Ombudsman because Debtors' Privacy Policy and Terms of Service Create a Conflict over Ownership of Genetic Data and May Violate Missouri's Consumer Protection Laws.**

23. Under the privacy policy[21] that Debtors rely on to sell consumers' Personal Information, the term "Personal Information" include information derived from the genetic sample submitted by consumers (e.g. genotypes):

> When we say **Personal Information**, we use this as a general term to refer to the different data categories we describe in this section that either personally identify you or are about you. Your Personal Information can be either
> 
> - **Individual-level Information:** information about a single individual, such as their genotypes, diseases or other traits or characteristics.
> - **De-identified Information:** information that has been stripped of identifying data, such as name and contact information, so that an individual cannot reasonably be identified.

24. Debtors' terms of use, however, state that "any information derived from your sample *remains your information*, subject to rights we retain as set forth in these Terms,"[22] and nowhere in the terms of use does it state that Personal Information or information derived from a sample, can be sold.[23]

25. This conflict regarding ownership of information derived from samples calls into question whether this information is or is not property of the Debtors' estate that can be sold.

26. Further, even if this information is property of the Debtors' estate, Debtors' conflicting representations to consumers could render the sale of such data illegal under Missouri's consumer protection laws.

27. The Missouri Merchandising Practices Act ("MMPA")[24] prohibits any "deception, fraud, . . . misrepresentation, unfair practice or the concealment, suppression, or

---

[21] 23andMe's March 14, 2025, Privacy Policy, https://www.23andme.com/legal/privacy/full-version/
[22] 23andMe's March 14, 2025, Terms of Service, https://www.23andme.com/legal/terms-of-service/full-version/
[23] *Id*.
[24] Mo. Rev. Stat. §407.010 *et seq.*

7

omission of any material fact in connection with the sale or advertisement of any merchandise…."[25]

28. These terms are paternalistic and broadly construed. For instance, "deception" is any act or use that "has the tendency or capacity to mislead, deceive or . . . that tends to create a false impression."[26]

29. "Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable mental state . . . are not elements of deception," and the "deception may occur in securing the first contact with a consumer and is not cured even though the true facts . . . are subsequently disclosed."[27]

30. Similarly, "suppression of a material fact" is any act or use "which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated," and does not require establishing reliance or intent.[28]

31. Due to Debtors' contradictory representations to consumers, the appointment of a Consumer Privacy Ombudsman is mandatory, necessary, and appropriate to assist in determining not only who owns the genetic information, but also whether the sale of such information would violate applicable nonbankruptcy law [29]

**D. The Court Should Appoint a Consumer Privacy Ombudsman because the Lemonaid Subsidiaries' Privacy Policy does not Clearly Disclose the Sale of Personally Identifiable Information through Bankruptcy to Third Parties Unrelated to the Debtors, and Sale of that Data May Violate Missouri Law.**

32. Lemonaid Health, Inc. has a different privacy policy from Debtors 23andMe.[30]

---

[25] Mo. Rev. Stat. §407.020.1.
[26] 15 Mo. Code. State Reg. §60-9.020(1).
[27] 15 Mo. Code. State Reg. §60-9.020(2).
[28] 15 Mo. Code. State Reg. §60-9.110(1), (2).
[29] *See* 11 U.S.C. §§ 363(b)(1) and 332.
[30] Lemonaid Health, Inc.'s March 14, 2025, Privacy Policy, https://www.lemonaidhealth.com/legals/privacy-policy.

33. Further, though no privacy policy for Debtors Lemonaid Community Pharmacy, Inc. and Lemonaid Pharmacy Holdings have been found or disclosed, Lemonaid Health, Inc.'s privacy policy indicates that Lemonaid Health's privacy policy applies to these other Debtors.[31]

34. This privacy policy fails to properly inform consumers about a bankruptcy sale of their PII to an unrelated third party.[32]

35. Further, to the extent the Lemonaid subsidiaries seek to sell such information without adequate disclosure, the attempt to do so may violate Missouri law.

36. Missouri's consumer protection statute prohibits any "deception, fraud, … misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise…."[33]

37. Because the Lemonaid subsidiaries' privacy policy at the time of filing did not clearly disclose to consumers that their personally identifiable information could be sold in a bankruptcy proceeding to third parties that are not related to the Debtor, and such sale may be illegal, a Consumer Privacy Ombudsman must be appointed pursuant to 11 U.S.C. § 363(b)(1).[34]

## V.  RESERVATION OF RIGHTS

38. Missouri reserves the right to supplement this Motion or to raise additional arguments or objections to the Debtors' proposed sale as necessary and appropriate. Missouri reserves the right to file a separate reply to the Debtors' *Motion for Entry of an Order (I) Appointing an Independent Customer Data Representative and (II) Granting Related Relief*.[35]

---

[31] *Id.*
[32] *See* 11 U.S.C. §§ 363(b)(1) and 332.
[33] Mo. Rev. Stat. §407.020.1.
[34] Lemonaid Health, Inc.'s March 14, 2025, Privacy Policy, https://www.lemonaidhealth.com/legals/privacy-policy.
[35] Dkt. No. 169.

## VI.  NOTICE

39.     This Motion, and notice thereof, will be served in accordance with this Court's Interim Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief [Docket Entry #131], Bankruptcy Rule 2002, and Local Rule 9013-3, as applicable.

## VII.  PRAYER

WHEREFORE, Missouri respectfully requests that the Court direct the United States Trustee to appoint a Consumer Privacy Ombudsman pursuant to section 332 of the Bankruptcy Code and enter any other and further relief to which the Court finds just and appropriate.

Dated: April 15, 2025

Respectfully Submitted,

**ANDREW BAILEY**
Attorney General

By: */s/ Caleb Lewis*
Caleb M. Lewis, Mo. Bar #61894
  Assistant Attorney General
Michael Schwalbert, Mo. Bar #63119
  Assistant Attorney General
Alison Esbeck, Mo. Bar. #58501
  Assistant Attorney General
Zachary Elam, Mo. Bar #76935
  Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street Suite 200
St. Louis, MO 63101
(314) 340-7883
FAX: (314) 340-7981
Caleb.Lewis@ago.mo.gov
Michael.Schwalbert@ago.mo.gov
Alison.Esbeck@ago.mo.gov
Zachary.Elam@ago.mo.gov

*Attorneys for the Office of the Missouri Attorney General*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was filed electronically on April 15, 2025, with the United States Bankruptcy Court and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

I further certify that a true and correct copy of the foregoing document was served via email on April 15, 2025, on the parties listed in the Master Service List attached at Exhibit A and on April 16, 2025, a true and correct copy of the foregoing was served via United States Mail on those parties listed in the Master Service List that did not have an email address and are not a Movant herein.

/s/Caleb Lewis

Caleb Lewis