**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| 23ANDME HOLDING CO., *et al.*,[1] | § | Case No. 25-40976 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | **Response Deadline:** April 29, 2025 |
| | § | **Hearing Date:** April 29, 2025 |
| | § | **Hearing Time:** 1:30 P.M. CT |
| | § | **Hearing Location:** |
| | § | Thomas F. Eagleton U.S. Courthouse |
| | § | 111 S. 10th Street |
| | § | Courtroom 5 North |
| | § | St. Louis, MO 63102 |
| | § | Relates to Dkt. No. 169 |

**THE STATES' (A) OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPOINTING AN INDEPENDENT CUSTOMER DATA REPRESENTATIVE AND (II) GRANTING RELATED RELIEF *AND* (B) JOINDER TO THE UNITED STATES TRUSTEE'S (I) MOTION FOR APPOINTMENT OF CONSUMER PRIVACY OMBUDSMAN OR, IN THE ALTERNATIVE, APPOINTMENT OF AN EXAMINER AND (II) OBJECTION TO DEBTORS' MOTION FOR APPOINTMENT OF INDEPENDENT CUSTOMER DATA REPRESENTATIVE**

**WARNING: THIS OBJECTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE BY APRIL 29, 2025. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. THE DATE IS SET OUT ABOVE. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA, 94102.

COMES NOW, the State of Arizona, *ex rel*. Kristin K. Mayes, the Attorney General; Office of the Attorney General, State of Connecticut; District of Columbia, Office of the Attorney General; State of Florida, Office of the Attorney General, Department of Legal Affairs; Office of the Illinois Attorney General; The State of Kansas, *ex rel*. Kris Kobach; State of Louisiana; State of Maine; Michigan Attorney General, *ex rel*. the People of the State of Michigan; New Hampshire Office of the Attorney General, Consumer Protection Division; New Mexico Department of Justice; New York State Attorney General's Office; State of North Carolina; Ohio Attorney General; The State of South Carolina *ex rel*. Alan Wilson; State of Utah, Office of the Utah Attorney General; State of Vermont; Commonwealth of Virginia, *ex rel*. Jason S. Miyares, Attorney General; Washington Attorney General Nick Brown; Office of the West Virginia Attorney General; State of Wisconsin by and through Abigail R. Ryan, Bankruptcy Counsel, National Association of Attorneys General, and joined by the State of Colorado, by and through Senior Assistant Attorney General, Robert Padjen; by the Commonwealth of Kentucky, *ex rel.* Russell Coleman, Attorney General; the State of Minnesota, by its Attorney General, Keith Ellison; by the State of Missouri, Andrew Bailey, Attorney General; and by the State of Oregon *ex rel*. Dan Rayfield, Oregon Attorney General, by and through Senior Assistant Attorney General, Justin D. Leonard, and files this *(A) Objection to the Debtors' Motion for Entry of an Order (I) Appointing an Independent Customer Data Representative and (II) Granting Related Relief and (B) Joinder to the United States Trustee's (I) Motion for Appointment of Consumer Privacy Ombudsman or, in the Alternative, Appointment of an Examiner and (II) Objection to Debtors' Motion for Appointment of Independent Customer Data Representative*,[2] and would show the Court as follows:

---

[2] Hereinafter "Objection" or "States' Objection."

## I. OVERVIEW

The Debtors have a track record of ignoring regulatory processes and complying with the law on their own terms. The Debtors are doing so again here. The Debtors attempt to sidestep the Consumer Privacy Ombudsman requirements by proposing a completely Debtor-created and Debtor-controlled "Customer Data Representative."

Instead of complying with the law and resolving their security issues with the States, the Debtors seek to appoint its own Customer Data Representative that will review the Debtors' existing policies and security protocols—policies and protocols the States have found to violate state laws. As admitted by the Debtors, their 2023 data breach is one of the reasons 23andMe filed this bankruptcy. Rather than allowing an independent, UST-appointed CPO to evaluate their purportedly secure systems and ensure that customer data is protected, they want a professional that they select to tell this Court everything is fine. At least 44 states have investigated the Debtors' security practices and found them seriously lacking. An independent professional is necessary in this situation to provide assurance to the stakeholders and most importantly, the approximately 15 million consumers whose most sensitive personal data is at risk: their genetic data, coupled with standard PII and medical records.

There is no need for this Court to grant the Debtors' Motion because the Bankruptcy Code already provides for the appointment of a Consumer Privacy Ombudsman. Further, 11 U.S.C. § 105(a) allows this Court to *sua sponte* direct the United States Trustee to appoint a Consumer Privacy Ombudsman *and* a Security Examiner under 11 U.S.C. § 1104(c)(1) to protect consumers' very private, very personal genetic information, while allowing the bankruptcy process to move forward.

## II. PROCEDURAL BACKGROUND

1. On April 7, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Appointing an Independent Customer Data Representative and (II) Granting Related Relief*,[3] with the objection date being set for Tuesday, April 22, 2025, at 4:00 p.m. CDT.

2. Thereafter, the following motions were filed:

- April 9, 2025, the Texas Attorney General filed its *Motion for Order Appointing a Consumer Privacy Ombudsman ("CPO") under 11 U.S.C. §§ 105(a), 332, and 363(b)(1)*[4].

- April 10, 2025, the United States Trustee filed the *United States Trustee's (I) Motion for Appointment of Consumer Privacy Ombudsman or, in the Alternative, Appointment of an Examiner and (II) Objection to Debtors' Motion for Appointment of Independent Customer Data Representative*.[5]

- April 15, 2025, the States filed a *Motion for the Appointment of a Consumer Privacy Ombudsman and a Security Examiner pursuant to 11 U.S.C. Sections 105(a), 332, 363(b)(1) and Federal Rule of Bankruptcy Procedure 6004(g)*.[6]

- April 15, 2025, the Missouri Attorney General filed a *Motion for Order Appointing a Consumer Privacy Ombudsman ("CPO") under 11 U.S.C. §§105(a), 332 and 365(b)(1) and Notice of Hearing*.[7]

3. Debtors' Counsel and the States have been in discussions regarding the possible resolution of these pending motions, and Debtors' Counsel extended the States' deadline to

---

[3] Dkt. 169. Hereinafter, "Debtors' Motion."
[4] Dkt. No. 181.
[5] Dkt. 195. Hereinafter, "U.S. Trustee's Motion & Objection."
[6] Dkt. No. 239.
[7] Dkt. No. 248.

object to the Debtors' Motion through Wednesday, April 23, 2025.

4. While discussions are ongoing, the States file this Objection out of an abundance of caution.

### III. OBJECTION

**A. *The Debtors do not want to Comply with the Law and Attempt to Usurp the Jobs of State Regulators with the Requested Appointment of a Customer Data Representative.***

5. The Debtors' Motion for a Customer Data Representative is the Debtors' attempt at an end-run around the bankruptcy code, state laws, and ongoing regulatory investigations. Unfortunately, 23andMe is known for attempting to skirt the laws, and this request for a Consumer Data Representative is no different.

6. For instance, in 2009, the FDA informed 23andMe that its new DNA testing kit would need to obtain clearance as a "medical device" that needs to be deemed safe and effective by the FDA.[8] 23andMe started negotiations with the FDA, but it was not until 2012 that the company started submitting documents to start the process of obtaining clearance as a medical device. However, also in 2012, 23andMe quickly stopped communicating with the FDA, even failing to answer FDA's letters.[9]

7. 23andMe instituted a different plan, instead of completing the process for approval from the FDA, 23andMe started an aggressive ad campaign, including television commercials, for its Personal Genome Service ("PGS")—the service that *required* the FDA's approval.[10]

---

[8] *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC4330248 and https://www.scientificamerican.com/article/23andme-is-terrifying-but-not-for-the-reasons-the-fda-thinks/
[9] *See* id.
[10] *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC4330248/#B13

8. In November of 2013, the FDA issued 23andMe a Warning Letter[11] requiring that "23andMe immediately discontinue marketing the PGS until" it gains FDA approval. Failure to comply with the Warning Letter could result in "seizure, injunction, and civil money penalties."[12]

9. It was only after receiving the Warning Letter that 23andMe came into compliance with the FDA's requirements.[13]

10. Similarly, in the spring of 2024, led by Connecticut and Indiana, 44 states began a multistate investigation into the 23andMe data breach that exposed almost 7 million consumers' genetic information to the dark web.

11. Throughout 2024, the multistate group collected documents and information through civil investigative demands and took sworn statements of current and former 23andMe employees.

12. In early 2025, based on the findings of its investigation, the multistate group sent proposed settlement terms to 23andMe, but the multistate group received no response. Instead, on March 23, 2025, 23andMe filed bankruptcy.

13. To date, there is no resolution of the States' investigation into the Debtors' security breach, and the Debtors have not provided the States with evidence that any changes have been made in their security systems. In fact, the Debtors' Motion admits that no changes have been made by stating that the Debtors ". . .***have not changed the way they store or process Customer Data***."[14]

---

[11] "Warning Letters" are used by the FDA when a company has significantly violated FDA regulations. The letter "identifies the concerns. . .[and] provides an opportunity for the company . . .to address FDA's concerns and requests a response with a certain timeframe." https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/about-warning-and-close-out-letters
[12] Exhibit A (FDA November 2013 letter).
[13] Exhibit B (FDA March 2014 letter).
[14] Dkt. 169, para. 10 (emphasis added).

14. While the States can and may still use their police and regulatory powers to force the Debtors' compliance with State laws, the States have been attempting to work with the Debtors to keep costs down and keep consumers' genetic materials protected. However, the lack of meaningful engagement by the Debtors post-bankruptcy, coupled with the Debtors' request to appoint a completely made-up position of "Consumer Data Representative" reflects a lack of good faith by the Debtors' to ensure any sale is compliant with the state laws.

15. The facts are clear—the States have already done a robust review of the Debtors' cyber security structure and other relevant security information over the last year, and the States found serious issues that have not been rectified.

16. The Debtors' attempt to have their own Consumer Data Representative in place to review the cyber security structure and sign off on its integrity is a clear case of the fox guarding the hen house. The Debtors should not be allowed to skirt state laws at the expense of their customers. As such, the Debtors' Motion should be denied.

**B.     *The Debtors' Proposed Customer Data Representative Protocols are Not Calculated to Ensure Compliance with State Laws.***

17. The Debtors' Motion completely omits *any* understanding that this sale is in violation of state laws. Nowhere in the proposed Consumer Data Representative "Protocol" does it require a review of state laws and a report of how the sale will comply with state laws.

18. Further, the States are not included as consultation parties or key stakeholders that would be able to work with the Consumer Data Representative.

19. While the Debtors may argue that it is too unwieldly to communicate with 50 different states, they are wrong. First, the Debtors have always been required to comply with each state's laws. The challenge of that compliance is not a reason to ignore it. Further, the States

have already formed a small group of bankruptcy-specific counsel with whom the Debtors may communicate, as well as through the larger multistate consumer protection group.

20. If a sale were to move forward under the Debtors' protocol, without serious consultation with the States and without a resolution of the outstanding multistate investigation, the States will be put in the position of automatically objecting to the sale based on violations of state laws.

C. **_This Court Should Sua Sponte Appoint an Independent Consumer Privacy Ombudsman and a Security Examiner to Protect the Integrity of the Bankruptcy System_.**

21. This Court is well aware of the unique nature of this case. This is the first time large amounts of genetic materials and genetic data are being auctioned off through the bankruptcy process, and people are watching.

22. The international community watched almost seven million customers' genetic data, genetic information, and personally identifiable information breached and posted on the dark web. The public watched as 23andMe blamed their customers for the data breach. Now, with unprecedented media attention, the general public is watching this bankruptcy case move forward at an extremely fast pace. Will the Debtors be allowed to hand pick a Customer Data Representative for a perfunctory review of its privacy policies that will facilitate a quick sale of never-before-sold asset: peoples' genetic identities and their associated medical records and other intimate personal information.

23. It is undeniable that this bankruptcy is moving quickly. The Debtors' Motion was granted after only having been on file for three days. This very short three-day period between the filing of the Debtors' Motion and its final approval did not give the States adequate time to

obtain counsel, review the sale motion and all the other first day motions, and properly object thereto.

24. In other mega bankruptcy cases, the amount of time that motions to approve bidding procedures were on file before they were granted is much longer than 3 days. Some example cases follow:

| Case | Date Motion Filed | Date Approved | Number of Days |
|---|---|---|---|
| *In re Tupperware Brands Corp*[15] | Sept. 18, 2024 | Oct. 23, 2024 | 36 Days |
| *In re Big Lots, Inc.*[16] | Sept. 9, 2024 | Oct. 25, 2024 | 31 Days |
| *In re JoAnn, Inc.*[17] | Jan. 15, 2025 | Feb. 16, 2025 | 33 Days |
| *In re White Forest Resources, Inc.*[18] | Feb. 12, 2025 | March 10, 2025 | 27 Days |
| *In re Conn's, Inc.*[19] | July 26, 2024 | August 20, 2024 | 26 Days |
| *In re 99 Cents Only Stores, LLC*[20] | April 16, 2024 | May 9, 2024 | 24 Days |

25. Further, the bid deadline is set for May 7, 2025, with an auction set for May 14, 2025, and a sale hearing set for June 17, 2025—meaning all the genetic materials, genetic data, and personally identifiable information could be sold in at most 87 days from the date of filing.

26. Understandably, this bankruptcy does not need to languish; however, compliance with state laws that ensure protection of consumers' genetic information, genetic data, and personally identifiable information should not be set aside for the sake of speed.

---

[15] https://dm.epiq11.com/case/tupperware/info
[16] https://cases.ra.kroll.com/biglots/Home-Index
[17] https://cases.ra.kroll.com/JOANN2025/Home-Index
[18] https://cases.stretto.com/WhiteForestResources/
[19] https://dm.epiq11.com/case/conns/info
[20] https://cases.ra.kroll.com/99only/Home-Index

27. Likewise, consumers should have faith in the safety and transparency of the bankruptcy system. Allowing the Debtors to appoint their own Consumer Data Representative chips away at the transparency of and faith in the bankruptcy process.

28. In order to balance the speed of the proposed sale with the importance of protecting consumers' information and the integrity of the bankruptcy system, this Court should direct the United States Trustee to appoint an independent Consumer Privacy Ombudsman and a Security Examiner in this case.

### IV. JOINDER TO THE U.S. TRUSTEE'S MOTION & OBJECTION

29. The States fully join the *U.S. Trustee's (I) Motion for Appointment of Consumer Privacy Ombudsman or, in the Alternative, Appointment of an Examiner and (II) Objection to Debtors' Motion for Appointment of Independent Customer Data Representative*.[21]

30. In further support, the States request that, in addition to the appointment of a Consumer Privacy Ombudsman, a Security Examiner should be appointed pursuant to 11 U.S.C. § 1104(C)(1) to fully review the Debtors' current cybersecurity and identify any outstanding weaknesses.

31. The appointment of a Security Examiner would benefit the consumers as it will bolster confidence in the Debtors' ability to keep customer data safe.

32. A Security Examiner will also benefit the estate because, as the Court is aware, there is an outstanding multistate investigation into the Debtors' security systems due to the 2023 data breach. At this time, the Debtors have failed to address the State's concerns regarding its present security systems and failed to provide evidence of its consideration or compliance with the States' settlement proposal. Until the multistate group is satisfied that the Debtors have taken

---

[21] Dkt. No. 195.

the proper security measures set out by the States, this multistate investigation will not be closed.

33.     The States reserve the right to bring any police and regulatory action against the Debtors if this multistate investigation is not amicably resolved.

## V.    NOTICE

34.     While the deadline for objecting to the Debtors' Motion was Tuesday, April 22, 2025, Debtors' Counsel agreed to a one-day extension of time for the filing of the States' Objection.

35.     As required by docket 131 the *Interim Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures, and (II) Granting Related Relief*, notice is hereby given that copies of the proposed order granting the relief requested herein will be made available on the website of the Debtors' claims and noticing agent at

https://restructuring.ra.kroll.com/23andMe.

## VI.    PRAYER

WHEREFORE, the States respectfully request that the Court deny the Debtors' Motion and *sua sponte* direct the United States Trustee to appoint a Consumer Privacy Ombudsman pursuant to section 332 of the Bankruptcy Code, appoint a Security Examiner pursuant to 11 U.S.C. §§ 105(a) and 1104(c)(1), and enter any further relief to which the Court finds is just.

Dated: April 23, 2025,

*(Remainder of Page Intentionally Left Blank
Signature Page Follows)*

Respectfully submitted,

/s/ ABIGAIL R. RYAN
ABIGAIL R. RYAN
BANKRUPTCY COUNSEL
NATIONAL ASSOCIATION OF ATTORNEYS GENERAL
1850 M Street NW, 12th Floor
Washington, DC 20036
Telephone: (202) 326-6000, Ext. 258
Email: aryan@naag.org

COUNSEL FOR:

THE STATE OF ARIZONA, EX REL. KRISTIN K. MAYES, THE ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL, STATE OF CONNECTICUT

DISTRICT OF COLUMBIA, OFFICE OF THE ATTORNEY GENERAL

STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS

OFFICE OF THE ILLINOIS ATTORNEY GENERAL

THE STATE OF KANSAS, EX REL. KRIS KOBACH

STATE OF LOUISIANA

STATE OF MAINE

MICHIGAN ATTORNEY GENERAL, EX REL. THE PEOPLE OF THE STATE OF MICHIGAN

NEW HAMPSHIRE OFFICE OF THE ATTORNEY GENERAL, CONSUMER PROTECTION DIVISION

NEW MEXICO DEPARTMENT OF JUSTICE

NEW YORK STATE ATTORNEY GENERAL'S OFFICE

STATE OF NORTH CAROLINA

OHIO ATTORNEY GENERAL

THE STATE OF SOUTH CAROLINA EX REL. ALAN WILSON

STATE OF UTAH, OFFICE OF THE UTAH ATTORNEY GENERAL

STATE OF VERMONT

COMMONWEALTH OF VIRGINIA, EX REL. JASON S. MIYARES, ATTORNEY GENERAL

WASHINGTON ATTORNEY GENERAL NICK BROWN

OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL

STATE OF WISCONSIN

**FOR MOVANT STATE OF COLORADO**

/S/ ROBERT PADJEN
ROBERT PADJEN, NO. 14678CO
SENIOR ASSISTANT ATTORNEY GENERAL
COLORADO DEPARTMENT OF LAW
RALPH L. CARR COLORADO JUDICIAL CENTER
1300 Broadway, 8th Floor
Denver, Colorado 80203
Direct dial: 720-508-6346
E-mail: robert.padjen@coag.gov

**FOR MOVANT THE COMMONWEALTH OF KENTUCKY, EX REL. RUSSELL COLEMAN, ATTORNEY GENERAL**

/S/ CHRISTOPHER D. HUNT
CHRISTOPHER D. HUNT (KY BAR NO. 91775)
ASSISTANT ATTORNEY GENERAL
KENTUCKY OFFICE OF THE ATTORNEY GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel: (502) 696-5691 (Hunt)
ChrisD.Hunt@ky.gov

**FOR MOVANT STATE OF MINNESOTA KEITH ELLISON ATTORNEY GENERAL OF MINNESOTA**

/S/ DALILA Z. JORDAN
DALILA Z. JORDAN, ATTORNEY REG # 0403120
ASSISTANT ATTORNEY GENERAL
CONSUMER PROTECTION DIVISION
445 Minnesota Street, Suite 600
Saint Paul, Minnesota 55101
Telephone: (651) 300-7640
Email: Dalila.Jordan@ag.state.mn.us

COUNSEL FOR THE STATE OF MINNESOTA

**FOR the STATE OF MISSOURI**
**ANDREW BAILEY, ATTORNEY GENERAL**

BY: */S/ CALEB LEWIS*
Caleb M. Lewis, Mo. Bar #61894
   Assistant Attorney General
Michael Schwalbert, Mo. Bar #63119
   Assistant Attorney General
Alison Esbeck, Mo. Bar. #58501
   Assistant Attorney General
Zachary Elam, Mo. Bar #76935
   Assistant Attorney General

Missouri Attorney General's Office
815 Olive Street Suite 200
St. Louis, MO 63101
(314) 340-7883
FAX: (314) 340-7981
Caleb.Lewis@ago.mo.gov
Michael.Schwalbert@ago.mo.gov
Alison.Esbeck@ago.mo.gov
Zachary.Elam@ago.mo.gov
*ATTORNEYS FOR THE OFFICE OF THE MISSOURI ATTORNEY GENERAL*

**FOR STATE OF OREGON, DAN RAYFIELD**
**ATTORNEY GENERAL OF OREGON**

*/S/ JUSTIN D. LEONARD*
JUSTIN D. LEONARD, E.D. MO. D.C. # 033736OR
SENIOR ASSISTANT ATTORNEY GENERAL
OREGON DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4400
Email: Justin.Leonard@doj.oregon.gov

COUNSEL FOR THE STATE OF OREGON, *EX REL.*, DAN RAYFIELD, ATTORNEY GENERAL OF OREGON

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system upon all those who receive electronic notification and as required by the Case Management Procedures at docket number 131.

      /s/ *Abigail R. Ryan*
Abigail R. Ryan
Bankruptcy Counsel
National Association of Attorneys General