**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br>            Debtors. | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered)<br><br>Hearing Date: April 22, 2025<br>Hearing Time: 1:30 p.m.<br><br>Related Doc. 12 & 80 |

**FINAL ORDER (I) AUTHORIZING (A) CONTINUED USE
OF CASH MANAGEMENT SYSTEM, (B) MAINTENANCE OF
BANK ACCOUNTS AND BUSINESS FORMS, (C) PERFORMANCE
OF INTERCOMPANY TRANSACTIONS, AND (D) CERTAIN PREPETITION
OBLIGATIONS TO BE HONORED; (II) GRANTING ADMINISTRATIVE
EXPENSE PRIORITY STATUS TO POSTPETITION INTERCOMPANY
CLAIMS AGAINST THE DEBTORS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of a final order (this "Final Order") (a) authorizing the Debtors to (i) continue using their existing Cash Management System, (ii) maintain the Bank Accounts and Business Forms, (iii) perform Intercompany Transactions, and (iv) honor certain prepetition obligations related to the Cash Management System; (b) granting administrative expense priority status to postpetition Intercompany Claims against the Debtors; and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C.

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

§ 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri; and this Court having found that this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

    1.       The Motion is GRANTED on a final basis as set forth herein.

    2.       The Debtors are authorized, in their sole discretion, to: (a) continue operating the Cash Management System (subject to the modifications described herein and in the Motion) and honor any prepetition and postpetition obligations related thereto; (b) maintain existing Bank Accounts and Business Forms; (c) maintain the ability to use debit, wire, and ACH payments; and (d) continue to deposit funds in accordance with their prepetition practices to the extent set forth herein.

    3.       The Debtors are further authorized, in their sole discretion, to: (a) continue using, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date,

including those accounts identified on **Exhibit C** to the Motion; (b) continue the Corporate Card Program in the ordinary course, including making ordinary course modifications thereto, and timely perform and honor their past and future obligations under the Corporate Card Program (the "Corporate Card Obligations"); (c) use, in their present form, all Business Forms, without reference to the Debtors' status as debtors in possession; (d) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (e) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH payments, and other debits; and (f) pay any ordinary course prepetition or postpetition fees, including prepetition Bank Fees in an amount not to exceed $3,500 and outstanding prepetition obligations arising under the Corporate Card Program in an amount not to exceed $10,000, incurred in connection with the Bank Accounts and the Corporate Card Program and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided*, *however*, that the Debtors shall provide a list of the prepetition Corporate Card Program obligations to counsel for the Official Committee of Unsecured Creditors (the "Committee") prior to payment of same. All postpetition Bank Fees shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

4. The Debtors are further authorized to continue to maintain the Collateral Account at JPM for purposes of cash collateralizing the Corporate Card Obligations and obligations under the Letters of Credit (as defined below), and all cash from time to time on deposit in the Collateral Account shall remain subject to the Assignment of Deposits in favor of JPM unless otherwise ordered by this Court. If the Debtors fail to make any timely payment to JPM in respect of the Corporate Card Obligations, JPM is authorized, in its sole discretion, to terminate the Corporate Card Program upon five days written notice to the Debtors; *provided, however*, that any such

termination must otherwise be consistent with the terms and provisions of the Corporate Card Agreement.

5. The Debtors and PayPal Holdings, Inc. and its affiliates ("PayPal") are a party to certain PayPal User Agreements (the "User Agreements") for, among other things, the processing of payment transactions in exchange for a processing fee. The Debtors are authorized to continue to operate under the User Agreements and to pay or reimburse PayPal for all obligations owed pursuant to the terms and conditions of the User Agreements, including fees, charges, refunds, chargebacks, reserves, and other amounts due and owing from the Debtors to PayPal, whether such obligations were incurred prepetition or postpetition. PayPal is authorized to receive and obtain payment for such obligations that the Debtors owe to it, as provided under and in the manner set forth in the User Agreements, including without limitation, by way of recoupment or setoff without further order of the Court regardless of whether such obligations arose prepetition or postpetition. Pursuant to the terms and conditions of the User Agreements, PayPal has and shall continue to have the right to setoff any and all obligations that the Debtors owe to it against the sale revenue it processes for the Debtors.

6. The Bank at which the Bank Accounts are maintained is hereby authorized to continue to maintain, service, and administer the Bank Accounts in accordance with prepetition practices as accounts of debtors in possession, without interruption and in the ordinary course of business. In this regard, the Bank is authorized to receive, process, honor, and pay any and all checks, electronic funds transfer requests, and payment orders drawn or issued by the Debtors or other holders, makers, or parties entitled to issue instructions with respect thereto, whether presented or issued before or after the Petition Date to the extent the Debtors have good funds standing to their credit with the Bank; *provided* that any checks, electronic funds transfer requests,

and payment orders drawn or issued by the Debtors before the Petition Date may be honored by the Bank only if specifically authorized by order of this Court and identified to the applicable Bank by the Debtors. The Bank is authorized to rely on representations of the Debtors as to which checks, electronic funds transfer requests, and payment orders are authorized to be paid without any duty of further inquiry and without liability for following the Debtors' instructions.

7. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any amounts owed in connection with the relief granted herein.

8. In the course of providing cash management services to the Debtors, the Bank, without further order of this Court, is authorized, but not directed, to (a) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges, and expenses to which the Bank is entitled under the terms and, in accordance with its contractual arrangements with the Debtors, and (b) charge back any returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course.

9. The unexpired prepetition cash management agreements that may exist between the Debtors and JPM shall continue to govern the postpetition cash management relationship between them. Subject to applicable bankruptcy or nonbankruptcy law, all of the provisions of such agreements, including the termination and fee provisions, shall remain in full force and effect absent further order of this Court, except and to the extent otherwise directed by the terms of this Final Order, and except as amended, modified, or supplemented by agreement between the Debtors and the Bank in the ordinary course of business.

10. Notwithstanding any other provision of this Final Order, the Bank is authorized, but not directed, to rely on the Debtors' representations with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors should be honored pursuant to any order of this Court, whether or not such payments are dated, drawn, or issued prior to, on, or subsequent to the Petition Date. If the Bank honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition or postpetition check or item to be honored, or (c) as a result of an innocent mistake made despite the implementation of reasonable item-handling procedures, the Bank shall neither be deemed to be in violation of this Final Order nor be liable to the Debtors, their estates, or any other party on account of such prepetition or postpetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

11. The Bank is further authorized, but not directed, to accept and hold the Debtors' funds in accordance with the Debtors' instructions; *provided*, in each case, that the Bank shall not have any liability to any party for relying on such representations.

12. The Debtors are authorized to use their existing Business Forms; *provided* that once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" or "DIP" and the lead case number on all checks.

13. The Administrative Expense Procedures set forth in the Interim Order shall be automatically replaced and superseded by the "Carve-Out" account and related provisions set forth in the DIP Order (as defined below), once entered by this Court.

14. Notwithstanding anything contained herein, despite the Debtors' use of the consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C.

§ 1930(a)(6) based on the disbursements of each Debtor, regardless of which Debtor pays those disbursements.

15. Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (a) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' accounts with such Bank prior to filing of the petitions which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the petitions; and (b) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to any Bank or payment processors as service charges for the maintenance of the Cash Management System.

16. Nothing contained herein shall prevent the Debtors from closing or implementing changes to any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate, in each case, after one business day's notice to the lender under the Debtors' postpetition financing facility (such lender, the "DIP Lender"), counsel to the Committee, and the U.S. Trustee, and any relevant Bank is authorized, but not directed, to honor the Debtors' requests and to close, open, or implement changes to such Bank Accounts or additional bank accounts, as the case may be, under the terms of the documents governing the Bank Accounts or otherwise agreed to by the relevant Bank; *provided* that any new bank accounts shall be opened at a bank that is party to a uniform depository agreement with the U.S. Trustee, or at a bank that is willing to immediately execute a uniform depository agreement, in each case, after one business day's notice to the DIP Lender, counsel to the Committee, and the U.S. Trustee. The Bank shall have no liability to any party for relying on such representations or instructions by the Debtors with respect to the foregoing.

17. The relief granted in this Final Order extends to any new bank account opened by the Debtors and, in accordance with the provisions of this Final Order, such account shall be deemed a Bank Account, and the bank at which such Bank Account is opened, a Bank.

18. The Debtors shall maintain accurate and detailed records of all transfers within the Cash Management System so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

19. Notwithstanding anything to the contrary in the Motion or this Final Order, JPM is authorized to disburse funds in the Collateral Account pursuant to, and subject to the terms of, (a) the Irrevocable Standby Letter of Credit dated April 17, 2024 to and in favor of PayPal, Inc., as beneficiary (as amended and together with all related documentation, including the Application and Agreement for Irrevocable Standby Letter of Credit, dated April 9, 2024, by 23andMe, Inc., as applicant and account party, the "PayPal Letter of Credit"), (b) Irrevocable Standby Letter of Credit dated May 10, 2018, to and in favor of SCG Grove 221, LLC, as beneficiary (as amended and together with all related documentation, including the Application and Agreement for Irrevocable Standby Letter of Credit dated May 4, 2018, by 23andMe, Inc., as applicant and account party, and, together with the PayPal Letter of Credit, the "Letters of Credit"), and (c) the Assignment of Deposits. To the extent necessary, JPM is hereby granted relief from the stay imposed by Bankruptcy Code section 362 for purposes of this paragraph 19.

20. The Investment Account is dormant and does not hold a balance. The Debtors shall not fund or utilize the Investment Account for any investment activities during this case. The Debtors shall provide a monthly statement reflecting the balance of the Investment Account no later than the twenty-first day following the end of the prior month, and such report shall be kept strictly confidential by the U.S. Trustee. The Bank (other than with respect to the Investment

Account) shall comply with its obligations under its uniform depository agreement entered into with the U.S. Trustee.

21. The Debtors are authorized to continue using the Cash Management System to perform Intercompany Transactions, subject to the terms set forth in this Final Order, in the ordinary course of business and to honor any prepetition and postpetition Intercompany Claims arising from the same; *provided* that the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during these chapter 11 cases such that all Intercompany Transactions may be readily ascertained, traced, and recorded and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions. The Debtors shall provide a report to counsel for the Committee, counsel for the DIP Lender, and the U.S. Trustee on a monthly basis, to be provided no later than the 15th day of the following month, describing all transfers of cash constituting Intercompany Transactions (including, for each such transaction, the name of the Debtor transferor, the name of the transferee, and the amount of the transfers).

22. Any Intercompany Claims against the Debtors arising from the Intercompany Transactions are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code; *provided* that the Debtors shall provide counsel to the Committee with three business days' advance notice (the "Notice Period") of any Intercompany Transactions (other than any payroll and benefits-related transactions) in excess of $50,000, which notice shall include cash and non-cash activity between and among Debtor entities and non-Debtor affiliates. For the avoidance of doubt, the Debtors are not authorized to make any Intercompany Transactions outside of the ordinary course of business pursuant to this Final Order. During the Notice Period, the

Committee shall have the opportunity to object to and resolve in good faith with the Debtors the propriety of any such Intercompany Transactions.

23. Notwithstanding anything to the contrary contained in the Motion or herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to and in accordance with any orders, as applicable, authorizing or approving any postpetition debtor-in-possession financing or use of cash collateral for the Debtors (such orders, the "DIP Order") and any budget in connection with any such postpetition debtor-in-possession financing or use of cash collateral authorized therein.  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

24. Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Debtors', the Committee's, or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', the Committee's, or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of

claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.

25. The terms and provisions of this Final Order shall be binding on the Debtors and their estates and any successor thereto, including any trustee appointed in the chapter 11 cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the chapter 11 cases, or in any other proceedings superseding or related to any of the foregoing.

26. Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

27. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

29. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

30. No later than two business days after the date of this Final Order, the Debtors shall serve on the Notice Parties a copy of the Final Order and shall file a certificate of service no later than 24 hours after service.

Dated: April 23, 2025
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

**Order Prepared By:**

**Carmody MacDonald P.C.**
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:    (314) 854-8600
Facsimile:    (314) 854-8660
Email:        thr@carmodymacdonald.com
              nrw@carmodymacdonald.com
              jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
Email:        pbasta@paulweiss.com
              chopkins@paulweiss.com
              jchoi@paulweiss.com
              ghotz@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*