**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-40976<br><br>(Jointly Administered) |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF KR OP TECH, LLC TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING (A) REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (B) ABANDONMENT OF CERTAIN PERSONAL PROPERTY, IF ANY, EACH EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**
**[Doc. 5]**

KR OP Tech, LLC ("KR OP") hereby submits its Limited Objection and Reservation of Rights of KR OP Tech, LLC (the "Objection") to Debtors' Motion for Entry of an Order (I) Authorizing (A) Rejection of a Certain Executory Contracts and Unexpired Leases and (B) Abandonment of Certain Personal Property, if any, Each Effective as of the Petition Date and (II) Granting Related Relief [Doc. 5] (the "Rejection Motion"), by and through its counsel of record, as follows:

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these Chapter 11 Cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

4933-3807-4166.2

**I.      INTRODUCTION**

1. KR OP is Debtor 23andMe, Inc.'s ("Tenant Debtor") landlord under the Oyster Point Tech Center Lease[2] with respect to that certain entire building commonly known as 349 Oyster Point Boulevard, South San Francisco, California (the "Building"). See Declaration of Natalia Morales in Support of Objection ("Morales Decl."), ¶ 4. As part of the Rejection Motion, the Debtors seek entry of an order approving the rejection of the Oyster Point Tech Center Lease effective as the Petition Date. Rejection Motion, ¶ 17. While KR OP does not challenge the Debtors' ultimate business judgment in electing to reject the Oyster Point Tech Center Lease, KR OP does object to the Debtors' request that such rejection become effective as of the Petition Date for the following reasons:

2. First, as set forth in In re Worths Stores Corp., 130 B.R. 531 (Bankr. E.D. Mo. 1991) and In re Valley Steel Products Co., Inc., 147 B.R. 168, 170-71 (Bankr. E.D. Mo. 1992), prevailing case law from within the Eastern District of Missouri prohibits *nunc pro tunc* rejection of a nonresidential real property lease and instead requires that the effective date of lease rejection occur no earlier than the court's approval of such rejection. The Rejection Motion fails to cite to this prevailing case law from the Eastern District of Missouri which would bar the Debtors' *nunc pro tunc* request.

3. Second, even if this Court were to adopt case law from other Circuits which have in "exceptional circumstances" permitted *nunc pro tunc* rejection of a nonresidential real property, as set forth in more detail below, KR OP submits that the Debtors are not eligible for such extraordinary relief here. Even though the Debtors claim to have vacated the Building as of the

---

[2] Capitalized terms not otherwise defined herein are used in the same sense and with the same meaning as in the Rejection Motion.

Petition Date, on April 15, 2025, the Debtors notified KR OP that the Debtors would need to re-enter the Building to remove certain "Hazwaste" from the Building on April 23, 2025. Morales Decl., ¶ 6. Indeed, on April 22, 2025, the Debtors sent KR OP an inventory of the "Hazwaste" they intended to remove, which inventory included items such as lab debris with ethidium bromide, solvent waste, formaldehyde waste solution, labpacks with a lithium compound, and lab packs with acids. See Id. at ¶ 7, Ex. "3". Tenant Debtor then re-entered the Building with its contractor on April 23, 2025, for the purpose of removing the "Hazwaste" waste it left behind. Id. at ¶ 8. In addition, it is believed that Tenant Debtor once again re-entered the Building on April 24, 2025, for the purpose of facilitating an inspection by the County of San Mateo. See id. at ¶ 9. The Debtors' re-entry into the Building to remove hazardous waste they failed to previously remove and re-entry to facilitate an inspection they failed to complete is entirely inconsistent with an unequivocal relinquishment of possession of the Building and is thus fatal to granting *nunc pro tunc* relief.

4.  Finally, KR OP objects to the abandonment of any hazardous waste and/or materials in the Building. The Debtors should be required to fully remediate and remove all hazardous waste and/or materials in the Building in compliance with applicable laws as a condition of rejection of the Oyster Point Tech Center Lease and abandonment of any remaining personal property.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

5.  KR OP is an indirect subsidiary of Kilroy Realty Corporation ("KRC"). Morales Decl., ¶ 1. The Building is part of a three (3) building project commonly known as Oyster Point Tech Center (the "Project") that KR OP acquired from Oyster Point Tech Center LLC ("Original Landlord") in or about January of 2018. Morales Decl., ¶ 2. KR OP, as successor-in-

interest in the Project to Original Landlord, and Tenant Debtor, as tenant, are parties to that certain Triple Net Lease dated November 3, 2016 (the "Oyster Point Tech Center Lease") for approximately 65,340 rentable square feet of space (the "Premises") consisting of the entire rentable square feet in the Building. Morales Decl., ¶ 4. The Oyster Point Tech Center Lease provided for the use of the Premises only for general business office, administration, laboratory, research and development use, including a vivarium, and no other business or purpose without the prior consent of KR OP. Id.

6. On March 23, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Doc. 105]. No trustee or examiner has been appointed in these chapter 11 cases and the Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. Contemporaneously with the filing of their voluntary chapter 11 petitions, the Debtors filed the Rejection Motion. In the Rejection Motion, the Debtors assert, among other things, that the Oyster Point Tech Center Lease imposes substantial burdens on the Debtors and they thus request that this Court enter an order approving their rejection of the Oyster Point Tech Center Lease. In addition, the Debtors request that this Court approve such rejection effective as of the Petition Date arguing that "the balance of equities favors rejection of the Contracts and Leases effective as of the Petition Date." Rejection Motion, ¶ 17.

8. On or about March 24, 2025, Eli Fry of the Debtors sent Peter Dowley of KRC an email (the "March 24 Email") attaching certain letters dated March 23, 2025 (the "Rejection Letters"). Morales Decl., ¶ 5, Ex. "1". In the Rejection Letters, Tenant Debtor asserts that it vacated

the Building. Neither the March 24 Email nor the Rejection Letter, however, affirmatively state that Tenant Debtor relinquished all rights of possession to the Building. Id.

9. On April 15, 2025, Nick McEwain of Tenant Debtor sent Jessica Hart of KRC an email notifying KR OP that Tenant Debtor had scheduled a final "Hazwaste" pickup for April 23, 2025, from the Building. Morales Decl., ¶ 6, Ex. "2". On or about April 22, 2025, Tenant Debtor, through its counsel, sent KR OP an inventory of material and items (the "Hazwaste Items") that Tenant Debtor sought to remove from the Building as part of its scheduled "Hazwaste" pickup on April 23, 2025. Id. at ¶ 7, Ex. "3". The list included such items as lab debris with ethidium bromide, solvent waste, formaldehyde waste solution, labpacks with a lithium compound, and lab packs with acids. See id. On April 23, 2025, it is believed that Tenant Debtor accessed the Building together with its contractor for the purpose of removing the Hazwaste Items. Id. at ¶ 8. In addition, on or about April 22, 2025, Tenant Debtor, through its counsel, notified KR OP that Tenant Debtor had scheduled an inspection of the Building by San Mateo County on April 24, 2025. Id. at ¶ 9. KR OP understands that such inspection by San Mateo County occurred in the Building on April 24, 2025. See id.

### III. ARGUMENT

#### A. The Debtors Cannot Retroactively Reject the Oyster Point Tech Center Lease as the Petition Date.

10. Section 365(a) of the Bankruptcy Code provides that "the trustee, *subject to the court's approval*, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (emphasis added). A proceeding to reject an unexpired lease is a contested proceeding that must be decided by the court on a motion with appropriate notice to the affected parties. See Bankruptcy Rules 6006(a) and (c); see also Worths Stores, 130 B.R. at 533-34. Given the plain language of the section 365(a), except in the case of a "deemed" rejection under section

365(d)(4) of the Bankruptcy Code, court approval is a condition precedent to rejection of an unexpired lease. See In re Thinking Machine Corp., 67 F.3d 1021, 1025 (1st Cir. 1995); see also Worths Stores, 130 B.R. at 533-34.

11.  With respect to when the rejection of the Oyster Point Tech Center Lease may become effective, and without citation to authority from within the Eighth Circuit or this Court, the Debtors request that the rejection of the Oyster Point Tech Center Lease should become effective retroactive to the Petition Date. Rejection Motion, ¶ 18. The Debtors' request for retroactive relief, however, is contrary to prevailing bankruptcy court authority in the Eastern District of Missouri. See Worths Stores, 130 B.R. at 533-34 (finding that the effective date for the rejection of a nonresidential real property lease could not occur prior to court approval); Valley Steel, 147 B.R. at 170-71 (same). As stated in Worths Stores, because section 365 of the Bankruptcy Code "clearly requires" court approval to reject a nonresidential real property lease, allowing rejection to become effective upon the filing of a motion would render court approval a "meaningless formality." Worths Stores, 130 B.R. at 534; see also Valley Steel, 147 B.R. at 170-71. Moreover, as stated in Worths Stores, allowing retroactive rejection would run contrary to the provisions section 365(a)of the Bankruptcy Code and Bankruptcy Rules 6006(a) and 9014 which combined require the filing of a motion, notice to affected parties, and the entry of court order before rejection may become effective. Worths Stores, 130 B.R. at 533-34. Because the Debtors' request for retroactive rejection is contrary to prevailing law case law in the Eastern District of Missouri, KR OP submits the Debtors' request for retroactive relief should be denied and instead the effective date of rejection should be no earlier than the date this court approves the rejection of the Oyster Point Tech Center Lease and abandonment of all remaining personal property in the Building.

12. Surprisingly, the Debtors do not cite to either the Worths Stores or Valley Steel rulings in the Rejection Motion. Instead, they cite to authority from outside the Eighth Circuit where courts have stated that *nunc pro tunc* relief may be permitted in "exceptional circumstances" (which, as set forth in more detail herein, does not warrant *nunc pro tunc* relief here even if this Court were to adopt such rulings) and to the Supreme Court's ruling in Roman Cath. Archdiocese of San Juan, P.R. v. Acevedo Feliciano, 140 S. Ct. 696, 701 (2020). Archdiocese of San Juan, however, does not support retroactive rejection.

13. In Archdiocese of San Juan, the Supreme Court expressly limited the scope of *nunc pro tunc* relief that may be granted by a bankruptcy court. The Supreme Court stated that:

> Federal courts may issue nunc pro tunc orders, or now for then orders . . . to reflect the reality of what has already occurred . . . Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court. . . . Put colorfully, [n]unc pro tunc orders are not some Orwellian vehicle for revisionist history – creating facts that never occurred in fact. . . . Put plainly, the court cannot make a record of what is not.

Archdiocese of San Juan, 140 S. Ct. at 700-01 (citations and internal quotation marks omitted).

14. The Debtors here ask this Court to enter the exact type of *nunc pro tunc* order that the Supreme Court admonished was impermissible in Archdiocese of San Juan. Instead of attempting to reflect the reality of what actually occurred, the Debtors request that this Court decide that they properly rejected the Oyster Point Tech Center Lease as of the Petition Date even though that never happened. As the Supreme Court admonished, this Court cannot make "a record of what is not" and retroactively declaring that this Court approved the rejection as of the Petition Date when it did not is inconsistent with Archdiocese of San Juan. KR OP thus respectfully submits that this Court should find that the effective date of lease rejection can be no earlier than the date the Court enters its order approving the rejection.

**B.      Even if This Court Were to Allow for Retroactive Rejection of a Nonresidential Real Property Lease in "Exceptional Circumstances," the Debtors Have Failed to Demonstrate "Exceptional Circumstances" Justifying Retroactive Rejection.**

15.     Even if this Court were to adopt the ruling of various courts from outside that Eighth Circuit that have recognized that retroactive rejection may be possible, retroactive rejection is not warranted here. The Debtors rely on such cases as Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.), 392 F.3d 1064, 1072 (9th Cir. 2004), Thinking Machines Corp. v. Mellon Financial Services Corp. # 1 (In re Thinking Machines Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995), and In re Chi-Chi's, Inc, 305 B.R. 396, 399 (Bankr. D. Del. 2004), to argue that a bankruptcy court has equitable authority to authorize rejection of a nonresidential lease of real property retroactively. This line of case law, however, has characterized retroactive rejection as an extraordinary remedy available in only "exceptional circumstances." See, e.g., At Home, 392 B.R. at 1072 (retroactive rejection available only in extraordinary circumstances); In re O'Neil Theatres, Inc., 257 B.R. 806, 808 (Bankr. E.D. La. 2000) ("The court emphasizes that in most cases a lease will be considered rejected as of the date of entry of the order approving the rejection, and only in exceptional circumstances … will the court adopt a retroactive date."); see also In re Romacorp, Inc., Case No. 05-86818-BJH-11, 2006 WL 6544088, at *6 (Bankr. N.D. Tex. Feb. 2, 2006) ("Before the Court should grant the extraordinary equitable remedy of retroactive rejection, something more than the Debtor's business judgment must be shown.").

16.     To the extent this Court is inclined to consider that rejection may become effective prior to the entry of an order approving such rejection, the Debtors have not demonstrated that they are entitled to such extraordinary relief. Although the Debtors generically state in the Rejection Letters that they have vacated possession of the Building, they point to no objective facts which demonstrate that they unequivocally relinquished their right to possess the Building to KR OP.

The Rejection Letters do not state that the Debtors unequivocally relinquish their rights to possession of the Building and are silent with respect to the return of all keys, access cards, etc. See Morales Decl., ¶ 5, Ex. "1". In addition, contrary to their contention that they vacated the Building, the Debtors re-entered the Building to remove Hazwaste Items on April 23, 2025, and again on April 24, 2025, to facilitate an inspection by the County of San Mateo. See Morales Decl., ¶¶ 8 and 9. Tenant Debtor's re-entry to remove hazardous waste on April 23, 2025, and re-entry again on April 24, 2025, is entirely inconsistent with an assertion that Tenant Debtor unequivocally relinquished all its possessory rights as of the Petition Date. Finally, the Debtors left personal property in the Building which remains subject to the automatic stay and has not yet been abandoned as no order has yet been entered. See Rejection Motion, ¶¶ 19-20. Under these facts, KR OP submits that Tenant Debtor should not be eligible for *nunc pro tunc* relief.

17. The very line of case law that the Debtors generally rely upon for *nunc pro tunc* relief also demonstrates the Debtors' ineligibility here. For example, in Chi-Chi's, the bankruptcy court declined to approve *nunc pro tunc* relief because the premises were the subject of subleases, and the subtenants remained in possession, which frustrated the landlord's ability to re-lease the property. Chi-Chi's, 305 B.R. at 399. In effect, because the debtor's actions had created uncertainty regarding the landlord's ability to re-lease the premises, the bankruptcy court declined to approve *nunc pro tunc* relief.

18. Here, the Debtors have created their own cloud on title regarding KR OP's ability to re-let the Building. Not only have they failed to clearly relinquish all their possessory rights in the Rejection Letters, but they have also left hazardous waste and/or materials in the Building and re-entered the Building to remove such waste and/or materials on April 23, 2025. The Debtors then re-entered again on April 24, 2025, to facilitate an inspection by the County of San Mateo. KR OP

could not re-let the Building until the Debtors first remediated and removed their hazardous waste and/or materials. Because the Debtors failed to fully remove all "Hazwaste" and clearly intended to re-enter the Building following the Petition Date, *nunc pro tunc* relief should not be available to the Debtors.

19. Moreover, given the uncertainty caused by the Debtors' failure to properly relinquish possession of the Building and remove all hazardous waste and/or materials from the Building, allowing for *nunc pro tunc* relief here would also be inequitable. Section 365(a) requires the entry of a court order to reject lease (absent a deemed rejection) to promote certainty and fairness to a landlord, because until the court rules, the landlord does not know whether the lease will be rejected. Rejection of a lease is not automatic following the filing of a motion. A debtor might change its mind and withdraw the motion, or the motion might be denied, either due to opposition from the United States Trustee or creditor's committee (which might believe that the lease has value or which might need time to determine whether the lease has value), or the court might deny the debtor's motion for some other reason. "Courts can, and do, differ with debtors-in-possession over the value of leases or executory contracts, and they override rejection decisions on this basis." Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust (In re Paul Harris Stores, Inc.), 148 B.R. 307, 312 (S.D. Ind. 1992). Moreover, given that rejection does not occur without court approval, a landlord cannot re-lease the premises to another party until the court has ordered rejection of the lease. As a result, particularly where the Debtors have failed to properly relinquish possession of the applicable leasehold premises and continue to access the leasehold premises to remove hazardous waste and/or materials in compliance with applicable law, rejection should not occur any earlier than entry of the court's order approving such rejection.

**C.    The Debtors' Seek to Unfairly Shift the Risk of Loss to KR OP in the Rejection Motion.**

20.    Rejection involves much more than merely an accounting entry for the payment of rent. It impacts a panoply of property rights with respect to the Building, including, but not limited to, an insurable interest with respect to the property and the risk of loss in the event of damages to the Premises or property located therein. The Debtors acknowledge that they have left "Hazwaste" in the Building as is evidenced by their April 23, 2025, re-entry to remove such waste. The Debtors must remain responsible for all the risks associated with such removal and the costs of utilities, security, and insurance through the date all hazardous materials and/or waste were completely removed and also indemnify and hold KR OP harmless from any liability arising out of potential personal injury claims or property damage cause during such period. The Debtors cannot abdicate these obligations by seeking to reject the Lease without fully relinquishing all their rights to possession in the Building and fully remediating all hazardous materials and/or waste left behind. These risks must be addressed by establishing the date of completion of hazardous materials and/or waste removal at minimum as the proposed rejection effective date.

21.    The Debtors control the timing of the rejection of the Lease, not KR OP. See, e.g., In re The Leather Factory, Inc., 475 B.R. 710, 714 (Bankr. C.D. Cal. 2012) ("[A]s a matter of equity, the date of rejection is solely in the hands of the debtor …"). Thus, if this Court chooses to recognize *nunc pro tunc* rejection at all, rejection of the Oyster Point Tech Center Lease should not be effective until the Debtors at least fully relinquished all their rights to possess the Building and completed removal of all hazardous waste and/or materials.

22.    KR OP recognizes that moving the effective date of lease rejection to reflect the reality of the re-entry into the premises by Debtors' agent to facilitate the removal of hazardous waste and/or materials may result in increased administrative claims under Bankruptcy Code

section 365(d)(3). See, e.g., In re Burvival, 406 B.R. 548 (8th Cir. BAP 2009); see also In re Specialty Retail Shop Holding Corp. ("Shopko"), 2019 WL 4023817 (Bankr. D. Neb. 2019); and In re Imperial Beverage Group, LLC, 457 B.R. 490, 501 (Bankr. N.D. Tex. 2011). The consequences of Debtors' intentional holdover in the leased premises beyond the Petition Date, however, find no refuge under the deferential "business judgment" standard. KR OP is not challenging Debtors' business judgment to reject its nonresidential real property lease. Here, the Debtors plainly intended to continue to use the Building to store "Hazwaste" notwithstanding declared rejection, allowing the bankruptcy court to scrutinize lease rejection (see, e.g., In re Muma Services, Inc., 279 B.R. 478, 485-86 (Bankr. D. Del. 2002)) and adjust the effective date of lease rejection. Assuming *nunc pro tunc* relief is available here, the effective date of rejection should be no earlier than the date the removal of hazardous waste and/or materials is concluded and unequivocally possession is returned to KR OP. Any resulting administrative expense claims may be administered later in these chapter 11 cases though the ordinary claim and objection process.

### D.  The Debtors Should Not Be Authorized to Abandon Any Hazardous Waste and/or Materials.

23.  The Debtors seek general authority to abandon personal property in the Rejection Motion. Rejection Motion, ¶ 20. KR OP objects to abandonment to the extent that the Debtors seek authority to abandon any hazardous waste and/or materials, or personal property contaminated with hazardous materials and/or waste.  The Rejection Motion is entirely silent with respect to an intent or desire to abandon any hazardous waste and/or materials and thus abandonment should not be approved for this reason alone. Moreover, even if the Rejection Motion properly sought authority to abandon hazardous waste and/or materials, the Supreme Court long ago ruled that debtors may not abandon property in contravention of state or local laws designed to protect the public health and safety. See, e.g., Midlantic Nat. Bank v. New Jersey Dept. of Environmental

Protection, 474 U.S. 494, 506-07 (1986) (a bankruptcy court "does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety."). As a result, this Court should not approve the abandonment of hazardous waste and/or materials, particularly since the Debtors have failed to identify any hazardous waste and/or materials in the Rejection Motion. Instead, the Debtors should be ordered to remove and remediate all hazardous waste and/or materials in compliance with applicable law.

WHEREFORE, KR OP objects to the entry of an order approving the rejection of the Lease prior to this Court's actual approval thereof and to the abandonment of any hazardous waste and/or materials in the Building.

Dated: April 25, 2025
St. Louis, Missouri

Respectfully submitted,

*/s/ Camber M. Jones*
Camber M. Jones  MO Bar No. 71026
2144 E. Republic Rd., Ste. B300
Springfield, MO 65804
Telephone: (417) 888-1000
Facsimile: (417) 881-8035
E-mail: cjones@spencerfane.com
**Local Counsel to KR OP TECH, LLC**

and
*/s/ Michael S. Greger*
Michael S. Greger, Esquire (admitted *pro hac vice*)
Ivan M. Gold (*pro hac vice* pending)
ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
2010 Main Street, 8th Floor
Irvine, CA 92614
Telephone: (949) 553-1313
Facsimile: (949) 553-8354
E-mail: mgreger@allenmatkins.com
E-mail: igold@allenmatkins.com
**Counsel for KR OP Realty, L.P.**

## **CERTIFICATE OF SERVICE**

       The undersigned certifies, under penalty of perjury, that on April 25, 2025, the foregoing document was electronically filed with the Clerk of Court using the Eastern District of Missouri CM/ECF and the document was thereby served electronically through the CM/ECF system to all parties who have appeared in this action.

                                                                        /s/ *Camber M. Jones*