**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-40979-357<br><br>Jointly Administered<br><br>**Hearing Date: June 3, 2025**<br>**Hearing Time: 1:30 p.m. CDT**<br>**Hearing Location: Courtroom 5 North**<br>**Objection Deadline: May 27, 2025 at 4:00 p.m. CDT** |

**APPLICATION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS FOR ENTRY**
**OF AN ORDER AUTHORIZING THE EMPLOYMENT OF KELLEY**
**DRYE & WARREN LLP AS LEAD COUNSEL EFFECTIVE AS OF APRIL 8, 2025**

The Official Committee of Unsecured Creditors (the "Committee") of 23andMe

Holding Co., *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), submits this application (the "Application") for the entry of an order, substantially in

the form attached hereto (the "Proposed Order"), authorizing the employment of Kelley Drye &

Warren LLP ("Kelley Drye") as lead counsel to the Committee effective as of April 8, 2025,

pursuant to sections 327, 328(a), and 1103(a) of the Bankruptcy Code, Rule 2014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2014-1 of the Local Rules of

Bankruptcy Procedure of the United States Bankruptcy Court for the Eastern District of Missouri

(the "Local Rules"), and the U.S. Trustee Guidelines (as defined below).

---

[1]　　　　The Debtors in each of these cases are: 23andMe Holding Co., 23andMe, Inc., 23andMe Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC.

In support of this Application, the Committee submits the *Declaration of Jason R. Adams* (the "Adams Declaration"), attached hereto as Exhibit A, and the *Declaration of Whitney S. Grubb* (the "Grubb Declaration"), the chairperson of the Committee, attached hereto as Exhibit B, both of which are incorporated herein by reference.  In further support of this Application, the Committee respectfully represents as follows:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  A proceeding to consider and grant the Application is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATUTORY BASES FOR RELIEF

2.    The statutory predicates for the relief requested herein are sections 327, 328, 330, and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014, 2016 and 9062.  The relief requested is consistent with the U.S. Trustee Guidelines.  Compensation sought will be in accordance with sections 330 and 331 of the Bankruptcy Code.

## BACKGROUND

3.    On March 23, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code with this Court.  Since the Petition Date, the Debtors have remained in possession of their assets and have continued to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    On April 3, 2025, the Office of the United States Trustee for Region 13 (the "U.S. Trustee") appointed a seven-member Committee consisting of: (i) Laboratory Corporation of America Holdings; (ii) Workday, Inc.; (iii) Telus International Services Limited;

(iv) Jellyfish US Limited; (v) Whitney S. Grubb; (vi) Pamela Zager-Maya; and (vii) Michelle Igoe.[2]

5.      On April 8, 2025, the Committee selected Kelley Drye as its lead counsel and Stinson LLP ("Stinson") as co-counsel.  On April 10, 2025, the Committee selected FTI Consulting Inc. ("FTI") as its financial advisor.

## RELIEF REQUESTED

6.      By this Application, the Committee requests entry of the Proposed Order approving the employment of Kelley Drye effective as of April 8, 2025, which is the date on which the Committee selected Kelley Drye to serve as lead counsel and the date on which Kelley Drye began rendering services to the Committee.  Subject to the terms set forth herein, the Committee seeks to employ Kelley Drye in accordance with Kelley Drye's normal hourly rates in effect when services are rendered and normal reimbursement policies subject to Bankruptcy Rule 2016 and Local Rule 2016 and any other applicable procedures and orders of the Court.

## THE EMPLOYMENT OF KELLEY DRYE IS WARRANTED

7.      Kelley Drye possesses extensive knowledge and expertise in the substantive areas of law relevant to these chapter 11 cases and is well-qualified to represent the Committee. In selecting counsel, the Committee sought attorneys with experience representing the interests of unsecured creditors in chapter 11 cases of this nature.  Kelley Drye has represented unsecured creditors' committees in numerous other chapter 11 cases.  Kelley Drye also has a broad-based practice in other key areas of law relevant to these chapter 11 cases.  The Committee, therefore, believes that Kelley Drye is well qualified to serve as its counsel in these chapter 11 cases.

---

[2]      Docket No. 159.

8.      In addition, by separate applications filed contemporaneously herewith, the

Committee also seeks to employ (i) Stinson as co-counsel; and (ii) FTI as financial advisor.

**I.      <u>Scope of Services</u>**

9.      Kelley Drye has and will render, among other things, the following legal

services to the Committee:

(a)      advise the Committee with respect to its rights, duties and powers in these chapter 11 cases;

(b)      assist and advise the Committee in its consultations with the Debtors and in connection with the administration of these chapter 11 cases, the sale and plan processes, and the ultimate disposition of the Debtors' estates;

(c)      advise and represent the Committee in connection with matters generally arising in these cases, including the Debtors' motions to (i) obtain DIP financing; and (ii) sell substantially all of their assets;

(d)      assist and advise the Committee on the various data privacy and security issues implicated by the filing of the chapter 11 cases and the proposed  sale or transfer of the Debtors' assets;

(e)      Interface with various federal agencies, State Attorneys' General and the Consumer Privacy Ombudsman appointed in these chapter 11 cases to address privacy, security and sale issues;

(f)      assist the Committee in its investigation of the acts, conduct, assets, liabilities, and financial condition of the Debtors;

(g)      Participate in negotiations regarding, and reconciliation of, claims arising from prepetition data breach, Pixel and other litigation claims;

(h)      Investigate and preserve estate claims and causes of action against current and former Debtor insiders and quantify potential claims that may be implicated by the Debtors' sale process;

(i)      appear before this Court, and any other federal or state courts;

(j)      prepare, on behalf of the Committee, any pleadings, including motions, memoranda, complaints, objections, and responses to matters arising in these cases; and

(k)    perform such other legal services as may be required or are otherwise deemed to be in the interests of the Committee in accordance with the Committee's powers and duties as set forth in the Bankruptcy Code, Bankruptcy Rules, or other applicable law.

10.    Kelley Drye will coordinate with other estate professionals, including Stinson, FTI, and the Debtors' professionals, to avoid duplication of efforts. Kelley Drye  In particular, Kelley Drye will divide legal work related to these cases with Stinson to avoid duplicative efforts and preserve estate resources.

**II.    Kelley Drye's Disinterestedness and Disclosures**

11.    As more fully set forth in the Adams Declaration, Kelley Drye ran the Debtors' list of interested persons and entities involved in these chapter 11 cases, which is attached as Schedule 1 to the Adams Declaration, through Kelley Drye's conflict system, consistent with the U.S. Trustee's requirements.  Kelley Drye does not represent, or have any connection with, any of the parties in interest listed on Schedule 1, subject to the disclosures regarding representations in unrelated matters set forth on Schedule 2 to the Adams Declaration.  Kelley Drye does not and will not represent any such party in any matter related to the Debtors.  The Committee has waived any conflict of interest that exists or may exist due to Kelley Drye's prior representation of such party in matters unrelated to the Debtors.

12.    The Committee does not believe Kelley Drye's representation of such entities or their affiliates in unrelated matters will impair Kelley Drye's ability to represent the Committee in these chapter 11 cases.  The Committee has been informed that Kelley Drye will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise.  To the extent that Kelley Drye discovers a connection with any party or enters into any new relationship with any interested party that was otherwise required to be disclosed in this Application, Kelley Drye will promptly supplement its disclosure to the Court.  Kelley Drye will not, while employed

by the Committee, represent any entity having an adverse interest in connection with these chapter 11 cases.

13.     Based on the Adams Declaration, the Committee submits that Kelley Drye is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and neither represents nor holds an interest adverse to the interest of the Committee, the Debtors, or their estates with respect to the matters on which Kelley Drye is to be employed.

## III.     Professional Compensation

14.     The Committee requests that all legal fees and related costs and expenses incurred by the Committee on account of services rendered by Kelley Drye in these cases be paid as administrative expenses of the Debtors' estates pursuant to sections 328, 330(a), 331, 503(b), and 507(a) of the Bankruptcy Code.

15.     Kelley Drye intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court for all services performed and expenses incurred since April 8, 2025.

16.     Kelley Drye's current standard hourly rates for attorneys are set forth below. The rates of the primary attorneys working on this matter are set forth in the Adams Declaration.

| Title | 2025 Rates |
|---|---|
| Partners | $855 - $1,635 |
| Special Counsel | $545 - $1,060 |
| Associates | $565 - $985 |
| Paraprofessionals | $350 - $450 |

17.     Kelley Drye has advised the Committee that the hourly rates are subject to annual increases in the normal course of Kelley Drye's business.  In the event of any such increase, Kelley Drye will provide the U.S. Trustee and the Committee with notice of any such increase and

file a supplemental affidavit (a "Supplemental Affidavit") with the Court. Any Supplemental Affidavit will explain the basis for the requested rate increase in accordance with section 330(a)(3)(F) of the Bankruptcy Code. Pursuant to section B(2)(d) of the U.S. Trustee Guidelines, Kelley Drye will provide justification of the reasonableness of any rate increase.

18.     The hourly rates set forth above are the firm's standard hourly rates for work of this nature. The firm's standard rates are set at a level designed to compensate the firm fairly for the work of its attorneys and paralegals and to cover fixed overhead expenses.

19.     Kelley Drye will charge for expenses in a manner and at rates consistent with charges made to its other clients and the U.S. Trustee Guidelines, and in accordance with the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court. Such expenses include, among other things, long-distance telephone, fax (outgoing only) not exceeding $0.25 per page, mail and express mail charges, special or hand delivery charges, photocopying charges at the rate of $0.10 per page for black and white and $0.80 for color copies, travel expenses, expenses for computerized research, and transcription costs.

## IV.     Statement Regarding U.S. Trustee Guidelines

20.     In 2013, the Executive Office for the United States Trustee ("EOUST") adopted the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Appendix B Guidelines"). By their terms, the Appendix B Guidelines "apply to the U.S. Trustee's review of applications for compensation filed by attorneys in larger chapter 11 cases," and are intended as an update to the original *Guidelines for Reviewing Applications for Compensation Filed Under 11 U.S.C. § 330* (the "Appendix A Guidelines" and, together with the Appendix B Guidelines, the "U.S. Trustee Guidelines") adopted by the EOUST

in 1996.  The Committee and Kelley Drye will make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and the fee applications to be filed by Kelley Drye.

21.     The Committee requests approval of the employment of Kelley Drye effective as of April 8, 2025.  Such relief is warranted by the circumstances presented by these chapter 11 cases.  The Committee's selection of Kelley Drye on April 8, 2025 necessitated that Kelley Drye immediately commence work on time-sensitive matters and promptly devote substantial resources to these chapter 11 cases pending submission and approval of this Application.

22.     No prior application for the relief requested herein has been presented to this Court or any other court.

## **<u>NOTICE</u>**

23.     Notice of this Application has been provided to the following parties: (a) counsel to the Debtors; (b) the Debtors' authorized claims and noticing agent, Kroll Restructuring Administration LLC; (c) the U.S. Trustee; (d) JMB Capital Partners Lending, LLC, the lender under the Debtors' postpetition financing facility, along with its counsel; (e) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (f) the law firms representing plaintiffs who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (g) the United States Attorney's Office for the Eastern District of Missouri; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the state attorneys general in all 50 states; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Because of the nature of the relief requested, the Committee respectfully submits that no further notice of the Application is necessary or required.

## CONCLUSION

**WHEREFORE**, the Committee requests that the Court enter the Proposed Order:

(i) authorizing the Committee to employ Kelley Drye as lead counsel effective as of April 8, 2025;

(ii) authorizing payment of such compensation to Kelley Drye as may be allowed by this Court;

and (iii) granting such other and further relief as the Court may deem just and proper.


Dated: May 5, 2025

Respectfully submitted,

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF 23ANDME HOLDING CO., *et al.*

By: _____

Chairperson of the Official Committee of Unsecured
Creditors of 23andMe Holding Co., *et al.*[3]

---

[3]      Under the Bylaws of the Official Committee of Unsecured Creditors of 23andMe Holding Co., *et al.*, Whitney S. Grubb, as Chairperson of the Committee, has authority to sign documents on behalf of the Committee as appropriate to implement decisions of the Committee made in accordance with the Bylaws.

**<u>EXHIBIT A</u>**

**DECLARATION OF JASON R. ADAMS**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40979-357 |
| Debtors. | Jointly Administered |

## <u>DECLARATION OF JASON R. ADAMS</u>

I, Jason R. Adams, hereby declare that the following statements are true and correct to the best of my knowledge after due inquiry as described herein:

1.      I am a partner of the law firm of Kelley Drye & Warren LLP ("<u>Kelley Drye</u>"), which maintains offices at 3 World Trade Center, 175 Greenwich Street, New York, New York 10007.  I am an attorney admitted to practice law in New York.

2.      I am familiar with the matters set forth herein and make this declaration in support of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment of Kelley Drye & Warren LLP as Lead Counsel Effective as of April 8, 2025* (the "<u>Application</u>").[2]

---

[1]      The Debtors in each of these cases are: 23andMe Holding Co., 23andMe, Inc., 23andMe Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC.

[2]      Capitalized terms used but not otherwise defined in this declaration have the meanings ascribed to them in the Application.

3.      On April 3, 2025, the Office of the United States Trustee for Region 13 appointed a seven-member committee (the "Committee") consisting of: (i) Laboratory Corporation of America Holdings; (ii) Workday, Inc.; (iii) Telus International Services Limited; (iv) Jellyfish US Limited; (v) Whitney S. Grubb; (vi) Pamela Zager-Maya; and (vii) Michelle Igoe.[3]

4.      On April 8, 2025, the Committee selected Kelley Drye as its lead counsel and Stinson LLP ("Stinson") as co-counsel.

5.      Kelley Drye began rendering services to the Committee immediately following its selection by the Committee.

## KELLEY DRYE'S DISCLOSURE PROCEDURES

6.      To prepare this declaration, I, or someone under my supervision, took the Debtors' list of interested persons and entities involved in these chapter 11 cases (the "Search List"), which is attached hereto as Schedule 1, and compared it with the information contained in the conflict systems and indexes of adverse parties currently maintained by Kelley Drye (the "Conflict System").

7.      The Conflict System is designed to include every matter on which the firm is now or has been engaged since 1993, sorted by the entity which has engaged the firm and, in each instance, listing the identity of the clients, related parties and adverse parties, and the attorneys in the firm who are knowledgeable about each matter.  It is Kelley Drye's policy that a new matter may be opened within the firm only after completing and submitting to those charged with maintaining the Conflict System the information necessary to check each such matter for conflicts, including the identity of the prospective client and related adverse parties.  Kelley Drye maintains

---

[3]      Docket No. 159.

and updates the Conflict System in the regular course of the firm's business, and it is the regular practice of the firm to maintain these records.

8.    Further, an email was sent to each attorney of Kelley Drye to determine if any attorney (a) has a connection to (i) the Debtors, or (ii) current and former officers and directors of the Debtors; or (b) is a relative of (i) any of the Judges or the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri, or (ii) the personnel of the Office of the United States Trustee for the Eastern District of Missouri.

### KELLEY DRYE'S CONNECTIONS WITH PARTIES IN INTEREST IN THESE CHAPTER 11 CASES

9.    I, or a person under my supervision, reviewed the Conflict System results for the Search List to determine whether Kelley Drye has an adverse interest to the Debtors' estates.  Kelley Drye ran the names of all parties in interest on the Search List through its Conflict System, and Kelley Drye does not represent, or have any other connection with, any of the parties in interest listed on the Search List, subject to the disclosures set forth herein on Schedule 2, which is incorporated herein by reference.

10.    The Committee is aware that Kelley Drye has previously represented or currently represents certain creditors or parties in interest and/or their affiliates in matters unrelated to the Debtors and these chapter 11 cases.

11.    I believe the connections disclosed on Schedule 2 do not affect Kelley Drye's representation of the Committee in these chapter 11 cases.  Kelley Drye's representation of the parties disclosed on Schedule 2 in prior and unrelated matters does not comprise a material component of Kelley Drye's practice, nor does Kelley Drye currently represent the parties on any issue relating to the Debtors and these chapter 11 cases.

12.     In response to the email sent internally as described in paragraph 8 above, an associate in Kelley Drye's Real Estate practice group advised that they own seven shares of 23andMe common stock.  This attorney has not, and will not, represent the Committee and will do no work related to these chapter 11 cases.

13.     Kelley Drye does not represent the Debtors or any of their affiliates, partners, or subsidiaries in these chapter 11 cases, and Kelley Drye will not undertake the representation of the Debtors or any related entities during this engagement.

14.     Kelley Drye will not, while employed by the Committee, represent any other entity having an adverse interest in connection with these chapter 11 cases.

15.     Except as otherwise disclosed herein, insofar as I have been able to ascertain, neither I, Kelley Drye, nor any Kelley Drye attorney:

     (a)     is a creditor, a material equity security holder, or insider of the Debtors;

     (b)     is, or was within two years before the date of the filing of the petitions, a director, officer, or employee of the Debtors; or

     (c)     has an interest materially adverse to the interests of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or for any other reason.

16.     Insofar as I have been able to ascertain, subject to the disclosures on Schedule 2 and as set forth herein, no attorney of Kelley Drye has any connection with the Debtors, the Debtors' officers and directors, the Debtors' creditors, the Debtors' equity security holders, and other known parties in interest or their attorneys and financial advisors, or the members of the Committee.  To the best of my knowledge formed after reasonable inquiry, neither I, nor any attorney of Kelley Drye is related to the bankruptcy judge assigned to these chapter 11 cases.

17.     Based upon the information available to me, Kelley Drye is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, and neither represents nor holds an interest adverse to the interests of the Committee, the Debtors, or their estates with respect to the matters on which Kelley Drye is to be employed.  To the extent Kelley Drye discovers any connection with any party or enters into any new relationship with any party that would otherwise have had to have been disclosed in this Application, Kelley Drye will promptly supplement its disclosures to the Court.

**KELLEY DRYE'S RATES AND BILLING PRACTICES**

18.     No promises have been received by Kelley Drye or any Kelley Drye attorney as to payment or compensation in connection with these chapter 11 cases.  Kelley Drye has no agreement with any other entity to share with such entity any compensation received by Kelley Drye or by such entity.

19.     Kelley Drye intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court for all services performed and expenses incurred since April 8, 2025.

20.     My hourly billing rate as of January 1, 2025 is $1,150, and the hourly rates of the other Kelley Drye attorneys currently expected to be principally responsible for rendering services to the Committee in this case are: Eric R. Wilson ($1,280); Alysa Z. Hutnik ($1,005); Maeghan J. McLoughlin ($1,045); Richard Gage ($1,045); Steven Yachik ($785); John Churchill ($735); Paul Laudiero ($735); Madeleine Ostertag ($605); Tamara Zapata ($565); and Rachel Forman ($565).  Kelley Drye's current standard hourly rates for its attorneys are set forth below:

| Title | 2025 Rates |
|---|---|
| Partners | $855 - $1,635 |
| Special Counsel | $545 - $1,060 |
| Associates | $565 - $985 |
| Paraprofessionals | $350 - $450 |

21.     Kelley Drye has advised the Committee that the hourly rates are subject to annual increases in the normal course of Kelley Drye's business.  In the event of any increase, Kelley Drye will provide the U.S. Trustee and the Committee with notice of any such increase and file a supplemental affidavit (a "Supplemental Affidavit") with the Court.  Any Supplemental Affidavit will explain the basis for the requested rate increase in accordance with section 330(a)(3)(F) of the Bankruptcy Code.  Pursuant to section B(2)(d) of the U.S. Trustee Guidelines, Kelley Drye will provide justification of the reasonableness of any rate increase.

22.     The Application requests, pursuant to section 327, 328(a), 1103, 330, and 331 of the Bankruptcy Code, approval of the Committee's employment of Kelley Drye as lead counsel.  The hourly rates set forth above and in the Application are the firm's standard hourly rates for work of this nature.  The firm's standard rates are set at a level designed to compensate the firm fairly for the work of its attorneys and paralegals and to cover fixed overhead expenses.

23.     Kelley Drye will charge for expenses in a manner and at rates consistent with charges made to its other clients and the U.S. Trustee Guidelines, and in accordance with the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.  Such expenses include, among other things, long-distance telephone, fax (outgoing only) not exceeding $0.25 per page, mail and express mail charges, special or hand delivery charges, photocopying charges at the rate of $0.10 per page for black and white and $0.80 for color copies, travel expenses, expenses for computerized research, and transcription costs.

## STATEMENT REGARDING U.S. TRUSTEE GUIDELINES

24.      In 2013, the Executive Office for the United States Trustee (the "EOUST")

adopted the *Guidelines for Reviewing Applications for Compensation and Reimbursement of*

*Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of*

*November 1, 2013* (the "Appendix B Guidelines").  By their terms, the Appendix B Guidelines

"apply to the U.S. Trustee's review of applications for compensation filed by attorneys in larger

chapter 11 cases," and are intended as an update to the original Appendix A Guidelines adopted

by the EOUST in 1996.  Kelley Drye will comply with the U.S. Trustee's requests for information

and additional disclosures as set forth in the U.S. Trustee's Guidelines, both in connection with

the Application and any fee applications to be filed by Kelley Drye in these chapter 11 cases.

## ATTORNEY STATEMENT PURSUANT TO APPENDIX B GUIDELINES

25.      The following is provided in response to the request for additional

information set forth in ¶ D.1 of the Appendix B Guidelines.

| | |
|---|---|
| **Question:** | Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? |
| **Answer:** | No. |
| **Question:** | Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? |
| **Answer**: | No. |
| **Question**: | If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments the 12 months prepetition. If your billing rates and material financial terms have changed post-petition, explain the difference and the reasons for the difference. |
| **Answer**: | Kelley Drye did not represent the Committee in the 12 months prepetition.  Kelley Drye has represented other committees in the 12 months prepetition in other bankruptcy cases. |
| **Question:** | Has your client approved your prospective budget and staffing plan and, if so, for what budget period. |
| **Answer**: | Yes, for the period of April 8, 2025, through June 30, 2025. |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing

is true and correct to the best of my knowledge and belief.

Executed on May 5, 2025

*/s/ Jason R. Adams*
Jason R. Adams

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
|----------|----------|
| 1(a) | Debtors |
| 1(b) | (Financial Advisor to) Potential Buyer |
| 1(c) | (Legal Counsel to) Potential Buyer |
| 1(d) | Bankruptcy Judges/Staff |
| 1(e) | Bankruptcy Professionals – Retained |
| 1(f) | Banks/Lender/UCC Lien Parties/Administrative Agents |
| 1(g) | Counsel Representing Cyber Security Incident Claimants |
| 1(h) | Customers |
| 1(i) | Director/Officer |
| 1(j) | Insurance Providers |
| 1(k) | Known Affiliates – JV |
| 1(l) | Landlords/ Subtenants |
| 1(m) | Letter of Credit- Beneficiary |
| 1(n) | Litigation |
| 1(o) | Potential Buyer |
| 1(p) | Regulators |
| 1(q) | Significant Equity Holders |
| 1(r) | U.S. Trustee Office |
| 1(s) | Vendors (Top 85% of Accounts Payable) |

# SCHEDULE 1(a)

### Debtors

23 and Me
23andMe Holding Co.
23andMe Inc.
23andme Pharmacy Holdings, Inc.
Lemonaid Community Pharmacy
Lemonaid Health Inc.
Lemonaid Pharmacy Holdings, Inc.
Lpharm Cs LLC
Lpharm Ins LLC
Lpharm Rx LLC
Lprxone, LLC
Lprxthree LLC
Lprxtwo, LLC

# SCHEDULE 1(b)

**(Financial Advisor To) Potential Buyer**

JPMorgan Securities LLC
TD Cowen

# SCHEDULE 1(c)

## (Legal Counsel To) Potential Buyer

Ropes and Gray LLC
Skadden, Arps, Slate, Meaegher & Flom
LLP

# SCHEDULE 1(d)

## Bankruptcy Judges/Staff

Catherine Norwood
Chicquita Greene-Hester
Chief Judge Bonnie L. Clair
Courtney Kirbis
Hayley Koontz
Judge Brian C. Walsh
Judge Kathy A. Surratt-States
Kaila Spivey
Taylor Rowland

# SCHEDULE 1(e)

## Bankruptcy Professionals - Retained

Alvarez & Marsal North America, LLC
Carmody Macdonald P.C.
Deloitte Tax LLP
Goodwin Procter LLP
Kroll Restructuring Administration LLC
Lewis Rice LLC
Moelis & Company LLC
Paul, Weiss, Rifkind, Wharton & Garrison LLP

# SCHEDULE 1(f)

**Banks/Lender/UCC Lien Parties/Administrative Agents**

Cardinal Health 110 LLC, "As Agent"
JPMorgan Chase Bank N.A.
JPMorgan Chase Bank N.A. - Toronto Branch
Smith Drug Company-Division of JM Smith Corp.
U.S. Bank Equipment Finance
U.S. Bank National Association

# SCHEDULE 1(g)

### Counsel Representing Cyber Security Incident Claimants

Aron Law Firm
Aylstock, Witkin, Kreis, & Overholtz PLLC
Barnow & Associates P.C.
Berman Tobacco
Boni, Zack & Snyder LLC
Bottini & Bottini, Inc.
Bradley/Grombacher LLP
Clarkson Law Firm
Clayeo C. Arnold, Professional Law Corp.
Cole & Van Note
Cotchett Pitre & Mccarthy LLP
Cuneo Gilbert & Laduca
Du Vernet Stewart
Edelsberg Law, P.A.
Employee Justice Legal Group, Pc
Falls Law Group
Federman & Sherwood
Freed Kanner London & Millen LLC
Glancy Prongay & Murray LLP
Gustafson Gluek PLLC
Herman Jones LLP
Kantrowitz, Goldhamer & Graifman, P.C.
Kaplan Fox & Kilsheimer LLP
Kazerouni Law Group
Kleine PC
Kopelitz Ostrow Ferguson Weiselberg
Gilbert
KP Law Ltd. (Uk)
Labaton Keller
Laukaitis Law LLC
Law Office of Courtney Weiner PLLC
Law Offices of Paul Whalen, PC
Levi & Korsinsky
Levin Sedran & Berman LLP
Lexington Law Group, LLP
Lieff Cabraser Heimann & Bernstein And
Robbins Geller
Lockridge Grindal Nauen P.L.L.P.
Loftus & Eisenberg, Ltd.
Longman Law, P.C.
Lynch Carpenter LLP

Mason LLP
Mcshane & Brady, LLC
Milberg Coleman Bryson Phillips Grossman
Milberg Coleman Bryson Phillips Grossman
LLC
Neal & Harwell
Pierce Gore Law Firm
Potter Handy LLP
Poulin | Willey | Anastopoulo, LLC
Reese LLP
Robbins Geller Rudman & Dowd, LLP
Saltz, Mongeluzzi & Bendesky, PC
Schubert Jonckheer & Kolbe LLP
Scott+Scott Attorneys At Law LLP
Srourian Law Firm, P.C.
The Grant Law Firm, PLLC
The Mehdi Firm LLP
Tostrud Law Group PC
Tycko & Zavareei
Tycko & Zavareei, LLP
Wolf Haldenstein Adler Freeman & Herz
LLP
Wucetich & Korovilas LLP
Yanni Law
Zinns Law, LLC

# SCHEDULE 1(h)

## Customers

Abbvie Inc.
Amazon
Amazon: Amazon Ca
Amazon: Amazon UK
Amazon: Woot
Cardinal Health, Inc.
Coreweave, Inc.
Glaxosmithkline & Glaxosmithkline LLC
Gsk
Michael J Fox Foundation : Mjff Pd
Myheritage
Sanofi Us Services Inc.
Walmart.com

# SCHEDULE 1(i)

## Director/Officer

Andre Fernandez
Avi Factor
Eland Siddle
Guy Chayoun
Jim Frankola
Joe Selsavage
Mark Jensen
Thomas Walper

# SCHEDULE 1(j)

## Insurance Providers

AIG Financial Lines Claims
Allied World Specialty Insurance Company
Arch Specialty Insurance Company
Axis Insurance
Beazley USA Services, Inc
Berkley Life Sciences
Berkley Professional Liability
Chubb Group
Chubb Group of Insurance Co
CNA Claims Reporting
Commercial Management Liability
Great American Insurance Company
HCC Global Financial Products, Llc.
Hiscox Usa
Hudson Insurance Company
Lloyd's America, Inc.
Old Republic Professional Liability, Inc.
Resilience Cyber Insurance Solutions
The Hartford Financial Lines
The Travelers Companies, Inc.
Trium Cyber Us Services, Inc.
Woodruff Sawyer
Xl Professional Insurance

# SCHEDULE 1(k)

## Known Affiliates – JV

LMND CA
LMND KS
LMND NJ
LMND TX

# SCHEDULE 1(l)

### Landlords/ Subtenants

KR OP Tech, LLC
Oyster Point Tech Center LLC A Delaware Limited Liability Company

# SCHEDULE 1(m)

## Letter of Credit- Beneficiary

221 N Mathilda, LLC, A Delaware Limited Liability Company
Paypal, Inc

## SCHEDULE 1(n)

### Litigation

Adriane Farmer
Alex Velarde
Alexandra Hoffman
Almeida Law Group LLC
Alyson Hu
Andez Jones
Antoinette Powell
Bonnie Eden
Brandon Molina
Briana Dube
Brianna Sorensen
Camie Picha
Caroline Greenberg
Carolyn Rock
Casey Gerry Schenk Francavilla Blatt &
Penfield, LLP
Christina Shaw
Christopher Du Vernet Carlin Mcgoogan
Duvernet
Stewart, Barristers and Soliciters
Claire Paddy
David Melvin
David Tulchinsky
Dhaman Gill
Edelson PC
Elaine Fralix
Erik Stanford
Falls Law Group
Haris Mirza
Harold Garrett
Harold Velez
John Diaz
Julie Macmillan
Kathy Vasquez
Katianne Navarro
Keller Rohrback L.L.P.
Kerry Lamons
Knd Complex Litigation
Kp Law Limited
Kristen Rivers
Labaton Keller Sucharow LLP

Laquisha Smith
Leena Yousefi Ylaw Group
Levi + Korsinsky LLP
Luis Valladares
Marjorie Morgenstern
Matthew A. Smith
Matthew Marden
Max Alperstein
Mcguire Law, P.C.
Melanie Berman
Melissa Ryan
Michael Schutz
Michele Bacus
Michelle Andrizzi
Michelle Igoe
Migliaccio & Rathod LLP
Milberg Coleman Bryson Phillips Grossman
PLC
Monica Santana
Neil Benedict
Nicholas Furia
Nichole Friend
Patrick Capstick
Polina Ioffe
Potter Handy, Llp
Richard Roe
Rudy K. Thompson
Sarah Cantu
Stephen L. Seikel
Steve Siegel Hanson LLP
Thomas Vickery
Tracy Scott
Trisha Wilkus
Tyrell Brown

# SCHEDULE 1(o)

## Potential Buyer

New Mountain Capital, LLC

# SCHEDULE 1(p)

## Regulators

Agencia Española De Protección De Datos
Bureau of Consumer Protection
Federal Trade Commission
Office of Attorney General Todd Rokita
Office of the Attorney General – Connecticut
Office of the Privacy Commissioner of Canada
United Kingdom Information Commissioner's Office

# SCHEDULE 1(q)

## Significant Equity Holders

ABEEC 2.0, LLC
Anne Wojcicki
Zentree Investments Limited

# SCHEDULE 1(r)

## U.S. Trustee Office

Paul Randolph

# SCHEDULE 1(s)

## Vendors (Top 85% of Accounts Payable)

ACCO Engineered Systems
Aganitha Ai Inc.
Alixpartners, LLC
Allied Universal Security Services
Alom Technologies Corporation
Amazon Web Services
Andre John Fernandez
Bdo Usa LLP
Blue Shield Of California
Braintree
Catalent Cts Singapore Private Limited
CSW Direct LLC
Cloudflare, Inc.
Coalition For Genetic Data Protection Inc.
Consulting, JW LLC
Converge Technology Solutions US, LLC
Dechert LLP
Deloitte & Touche LLP
Deloitte Consulting LLP
Delta Dental Of California
DNA Genotek Inc.
Egon Zehnder International, Inc
Fedex Corp
Folk Devils LLC
Fooda, Inc.
Fulgent Therapeutics, LLC
Glaxosmithkline Intellectual Property Ltd.
Goodwin Procter LLP
Google, Inc. - Adwords
Greenberg Traurig LLP
Healthline Media Inc
Iheartmedia + Entertainment
Illumina, Inc.
Integral Rx
Jellyfish US Limited
Kaiser Foundation Health Plan Northern CA
Katie Couric Media, LLC

Kilroy Realty, LP
KPMG LLP
L.E.K. Consulting LLC
Lifebit Biotech Limited
Mark E. Jensen
Medpace Inc.
Meta Platforms, Inc.
Metropolitan Life Insurance Company
Moelis & Company, LLC
Morgan, Lewis & Bockius LLP
Moviano
National Genetics Institute
Pacific Gas And Electric Company
Partnerize
Peter M Lefkowitz
Power Digital Marketing, Inc.
Precision For Medicine, Inc.
Priti Patel Consulting LLC
Rain The Growth Agency
Right Side Up LLC
Salesforce.Com
Santa Clara County Tax Collector
Scale Strategy Operations LLC
SCG Grove 221, LLC
Steadymd, Inc.
Surefox North American
Tango Card, Inc.
Tatari, Inc.
Tcwglobal (Wmbe Payrolling Inc.)
Telus International Services Limited
Unum Life Insurance Company Of America
Ventana Medical Systems, Inc.
Wilson Sonsini Goodrich & Rosati, Professional Corporation
Woodruff-Sawyer & Co.
Woot Services LLC
World Archives
Wuxi Biologics (Hong Kong) Limited
Zendesk, Inc

**SCHEDULE 2**

**DISCLOSURES TO KELLEY DRYE'S RETENTION APPLICATION**

Kelley Drye currently represents or has represented the following creditors, parties-in-interest and/or their affiliates on various matters wholly unrelated to the Debtors.  In each of the three years prior to the Petition Date, such matters have accounted for the percentage indicated below of Kelley Drye's collected revenue.

| Party | Relationship to Kelley Drye | Years of Representation | 2022 % of Revenue Collected | 2023 % of Revenue Collected | 2024 % of Revenue Collected |
|---|---|---|---|---|---|
| Allied World Specialty Insurance Company | Affiliate of Current Client | 2006 – Present | <0.01% | 0.01% | 0.01% |
| Converge Technology Solutions US, LLC | Affiliate of Current Client | 2021 – Present | 0.02% | 0.00% | 0.00% |
| Egon Zehnder International, Inc | Current Client | 2019 – Present | <0.01% | 0.01% | <0.01% |
| JP Morgan Chase Bank | Current Client | 2015 – Present | 0.38% | 0.27% | 0.15% |
| Kilroy Realty, LP | Current Client | 2020 – Present | 0.00% | 0.01% | <0.01% |
| KPMG LLP | Current Client | 2015 – Present | 0.06% | 0.05% | 0.07% |
| Meta Platforms Inc. | Current Client | 2020 – Present | 0.40% | 0.17% | 0.03% |
| Metropolitan Life Insurance Company | Former Client | 2009 – 2023 | <0.01% | 0.01% | N/A |
| Michael J Fox Foundation: MJFF PD | Former Client | 2023 – 2024 | N/A | 0.01% | 0.00% |
| National Genetics Institute | Affiliate of Current Client | 2006 – Present | 1.38% | 1.07% | 0.94% |
| New Mountain Capital, LLC | Affiliate of Current Client | 2023 – Present | N/A | 0.00% | <0.01% |

| Party | Relationship to Kelley Drye | Years of Representation | 2022 % of Revenue Collected | 2023 % of Revenue Collected | 2024 % of Revenue Collected |
|---|---|---|---|---|---|
| Paypal, Inc. | Current Client | 2024 – Present | N/A | N/A | 0.04% |
| Salesforce.com | Current Client | 2013 – Present | 0.17% | 0.08% | 0.05% |
| U.S. Bank National Association | Current Client | 2008 – Present | 1.25% | 0.20% | 0.44% |
| Unum Life Insurance Company of America | Affiliate of Current Client | 2016 – Present | 0.02% | <0.01% | 0.00% |
| Walmart.com | Affiliate of Current Client | 2007 – Present | 0.43% | 0.77% | 0.11% |
| Wells Fargo Bank, N.A. (n/k/a Computershare) | Current Client | 2021 – Present | 0.41% | 0.42% | 0.67% |
| Wilmington Savings Fund Society, FSB | Current Client | 2014 – Present | 0.00% | 0.00% | <0.01% |

## **EXHIBIT B**

**DECLARATION OF WHITNEY S. GRUBB**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

|  |  |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-40979-357<br><br>Jointly Administered |

## <u>DECLARATION OF WHITNEY S. GRUBB</u>

I, Whitney S. Grubb, hereby declare that the following statements are true and correct to the best of my knowledge after due inquiry as described herein.

1.      I am over the age of 21 and I serve as the Chairperson of the Committee. I am competent to make this declaration in support of the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment of Kelley Drye & Warren LLP as Lead Counsel Effective as of April 8, 2025* (the "<u>Application</u>") filed contemporaneously herewith.[2]

2.      This declaration is provided pursuant to ¶ D.2 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "<u>Appendix B Guidelines</u>"), which "apply to the U.S. Trustee's review of applications for compensation filed by attorneys in larger chapter 11 cases," and are intended as an update to the original *Guidelines for Reviewing Applications for Compensation Filed Under 11 U.S.C. § 330* adopted by the

---

[1]      The Debtors in each of these cases are: 23andMe Holding Co., 23andMe, Inc., 23andMe Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

Executive Office for the United States Trustee ("<u>EOUST</u>") in 1996.  I am informed by counsel that the Appendix B Guidelines request that any application for employment of an attorney under 11 U.S.C. §§ 327 and 1103 be accompanied by a verified statement from the client that addresses the following:

    (a)    The identity and position of the person making the verification.

    (b)    The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

    (c)    The number of firms the client interviewed.

    (d)    If the billing rates are not comparable to the applicant's billing rates for other non-bankruptcy engagements and to the billing rates of other comparably skilled professionals, then the circumstances warranting the retention of that firm.

    (e)    The procedures the client has established to supervise the applicant's fees and expenses and to manage costs.  If the procedure for the budgeting, review and approval of fees and expenses differ from those the regularly employs in non-bankruptcy cases to supervise outside general counsel, explain how and why.  In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

## A.    <u>Identity of the Declarant</u>

3.    On April 3, 2025, I was appointed to the Committee and was subsequently selected to serve as Chairperson of the Committee.  Under the Bylaws of the Official Committee of Unsecured Creditors, the Chairperson of the Committee has the authority to sign documents on behalf of, and to bind, the Committee as appropriate to implement decisions of the Committee made in accordance with the Bylaws.

4.    I was involved in the Committee's decision to retain Kelley Drye on April 8, 2025 as the Committee's lead counsel in these chapter 11 cases and participated in negotiating the terms of Kelley Drye's employment together with the other members of the Committee.

**B.**     **Steps Taken to Ensure Comparability of Engagement Terms**

5.     I have confirmed with Kelley Drye that, while Kelley Drye's billing rates vary from attorney to attorney based on such facts as the attorney's seniority and position with the firm (*e.g.*, partner, counsel, or associate), years of experience, and the demand for services in the attorney's particular area of expertise, their billing rates do not vary as a function of whether the services performed relate to a bankruptcy engagement or a non-bankruptcy engagement.

6.     The Committee has been informed that Kelley Drye endeavors to set the hourly rates for its attorneys and paraprofessionals at levels competitive to those charged by firms with which it competes.

**C.**     **Number of Firms Interviewed**

7.     Kelley Drye was one of six firms to interview for the engagement.  In connection with Kelley Drye's interview, the Committee evaluated the breadth of Kelley Drye's experience and particular areas of expertise, the firms' prior history of representing committees in chapter 11 cases, and the attorneys to be assigned to this matter.

**D.**     **Other Circumstances Warranting Retention of Kelley Drye**

8.     The Committee has determined that Kelley Drye's attorneys' billing rates are set each year to ensure that their rates are in line with or lower than the billing rates of other comparably skilled professionals at law firms in Kelley Drye's peer group.  This, coupled with Kelley Drye's previous experience as committee counsel in numerous chapter 11 cases, makes Kelley Drye the appropriate choice for lead Committee counsel in these chapter 11 cases.

**E.**     **Procedures Established to Supervise Fees and Expenses and Manage Costs**

9.      I understand that Kelley Drye's fees and expenses (i) will be subject to review, comment, and objection (if warranted), and Court approval; and (ii) will be subject to the periodic review on an interim and final basis during the course of these chapter 11 cases by the United States Trustee (the "U.S. Trustee") and the Debtors, as well as by the Committee.

10.      During these chapter 11 cases, the Committee will monitor Kelley Drye's interim fee applications to ensure that the fees and expenses requested therein are reasonable in nature and correspond to necessary or beneficial services rendered on behalf of the Committee. Kelley Drye may amend and supplement its budget and staffing plan as the cases develop to reflect changed circumstances or unanticipated developments and will alert the Committee to those changed circumstances and unanticipated developments in a timely fashion.  To the extent the Committee has an objection to the fees and expenses requested by Kelley Drye in any interim fee statement that cannot be resolved to the Committee's satisfaction informally, Kelley Drye has informed me that they will file a notice of objection on the Committee's behalf.  In so doing, I understand that Kelley Drye reserves all rights to contest any such objection raised to the allowance or payment of its requested fees and expenses, and the Committee reserves the right to retain conflicts counsel to prosecute any such objection to the extent it cannot be resolved informally by the parties.

11.      Nothing contained herein is intended to limit Kelley Drye's ability to request allowance and payment of fees and expenses pursuant to sections 330 and 331 of the Bankruptcy Code, nor to restrict Kelley Drye's right to defend any objection raised to the allowance or payment of such fees.  Moreover, nothing herein is intended to restrict the Committee's right to retain conflicts counsel to prosecute any such fee objection to the extent the

objection is not resolved informally by the parties or is raised by another party in interest, such as the U.S. Trustee.

**F.**    **Other Matters**

12.    Kelley Drye's hourly rates are subject to annual adjustments in January of each year to reflect economic and other conditions.  I have been advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "periodic, incremental increases in a lawyer's regular hourly billing rates are generally permissible if such practice is communicated clearly to and accepted by the client at the commencement of the client-lawyer relationship and any periodic increases are reasonable under the circumstances."  I have also been specifically advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "the client need not agree to pay the modified fee to have the lawyer continue the representation."  Kelley Drye disclosed to the Committee its rates in effect as of January 1, 2025.  To the extent Kelley Drye seeks to make any adjustments to its rate structure, the Committee expressly reserves the right to reject any such modification.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 5, 2025

_____
Whitney S. Grubb