UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>Debtors. | Case No. 25-40976<br>Chapter 11<br><br>(Jointly Administered)<br><br><br>Related Docs. 30, 125, 325 & 337 |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES WITH RESPECT TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF THE NOTICE THEREOF, (IV) APPROVING PROCEDURES  REGARDING ENTRY INTO STALKING HORSE AGREEMENT(S), IF ANY, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (VI) AUTHORIZING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (VII) APPROVING PROCEDURES FOR THE SALE, TRANSFER, OR ABANDONMENT OF DE MINIMIS ASSETS, AND (VIII) GRANTING RELATED RELIEF**

ACE American Insurance Company, ACE Property & Casualty Insurance Company, ACE Fire Underwriters Insurance Company, Pacific Employers Insurance Company, Westchester Fire Insurance Company, Federal Insurance Company, and each of their respective U.S.-based affiliates and successors (collectively, and solely in their capacities as insurers and/or third party administrators of one or more of the above-captioned debtors, the "Chubb Companies"), by and

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are:  23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595).  The Debtors' service address for purposes of these Chapter 11 Cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

through their undersigned counsel, hereby file this Reservation of Rights (the "Reservation of Rights") with respect to the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry Into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (VII) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VIII) Granting Related Relief* [Docket No. 30] (the "Sale Motion")[2] and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

A. **The Bankruptcy Case**

1. On March 23, 2025 (the "Petition Date"), 23andMe Holding Co. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court").

2. On March 24, 2025, the Debtors filed the Sale Motion.

3. Pursuant to the Sale Motion, the Debtors sought entry of an order approving, *inter alia*, (a) the Bidding Procedures in connection with the sale of substantially of the Debtors' assets, and (b) procedures for the assumption and assignment of contracts. In the Sale Motion, the Debtors further seek Court approval of the sale of substantially all the Debtors' assets pursuant to section 363 of the Bankruptcy Code through one or more transactions (each a "Sale Transaction").

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Sale Motion.

2

4. On March 28, 2025 the Court entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry Into Stalking Horse Agreement(s), If Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Doc. No. 125] (the "Bidding Procedures Order").

5. The Sale Motion does not identify any proposed Stalking Horse Bidder or include any proposed form of an asset purchase agreement. The Bidding Procedures Order established April 25, 2025 as the deadline for the Debtors to select one or more bidders to act as Stalking Horse Bidder(s) (the "Stalking Horse Deadline").

6. On April 25, 2025, the Debtors filed the *Notice of Extension of Stalking Horse Deadline Pursuant to Bidding Procedures* [Doc. No. 325] extending the Stalking Horse Deadline to April 28, 2025.

7. On April 28, 2025, the Debtors filed the *Notice of Second Extension of Stalking Horse Deadline Pursuant to Bidding Procedures* [Doc. No. 337] extending the Stalking Horse Deadline to April 30, 2025.

8. As of the date hereof, the Debtors have not filed any notice of the Stalking Horse Bidder or any proposed Stalking Horse APA.

**B.    The Insurance Programs**

9. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to the Debtors as named insureds.

3

10. Prior to the Petition Date, the Chubb Companies and the Debtors also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

11. Pursuant to certain Policies and Insurance Agreements (the "ACE Insurance Program"), ACE American Insurance Company, ACE Property & Casualty Insurance Company, Pacific Employers Insurance, Westchester Fire Insurance Company, Illinois Union Insurance Company and/or certain of their U.S.-based affiliates provide, *inter alia*, certain employment practices liability, computer programing, commercial umbrella, businessowners, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "ACE Program Obligations").

12. Pursuant to certain other Policies and any agreements related thereto (collectively, the "Federal Insurance Program," and together with the ACE Insurance Program, the "Insurance Programs"),[3] Federal Insurance Company and/or certain of its U.S.-based affiliates provides, *inter alia*, certain boiler and machinery, property, package, employment practices liability, automobile liability, commercial umbrella, fiduciary liability, excess umbrella, business owners, employment practices liability, directors and officers liability, and certain other insurance for specified policy

---

[3] The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

4

periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Federal Insurance Program (the "Federal Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").[4]

13. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## RESERVATION OF RIGHTS

14. At this time, the Chubb Companies cannot determine or confirm whether any proposed Sale Transaction in connection with the Sale Motion contemplates or will contemplate the sale or other transfer of all or a portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder). The Chubb Companies, therefore, reserve their rights with respect to any Sale Transaction to the extent that the Debtors seek to assume and assign or otherwise transfer either or both of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder).

15. The Chubb Companies assert that (i) the Insurance Programs must each be assumed and assigned, if at all, as a whole, and, in order to be entitled to any of the rights, benefits, interests and/or proceeds under the Insurance Programs, any Successful Bidder(s) must remain liable for the Obligations thereunder; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Programs (and/or the rights, benefits, interests and proceeds

---

[4] The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

5

thereunder), the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) cannot be assigned or transferred without the consent of the Chubb Companies, which consent has not been sought or given; (iii) the Chubb Companies should not be responsible for determining which entity, as between the Debtors and any Successful Bidder(s), is entitled to coverage and/or the rights, benefits, interests and/or proceeds under the Insurance Programs; (iv) any proposed cure amounts must be evaluated at the time of assumption; and (v) because the Successful Bidder(s) has not yet been identified, the Chubb Companies cannot determine whether any Successful Bidder(s) will intend to seek assignment of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) and the Chubb Companies lack adequate assurance of future performance under the Insurance Programs by any Successful Bidder(s).

I.     **Each of the Insurance Programs and the Obligations Thereunder Are Indivisible.**

16.    It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Am. S. Ins. Co. v. DLM, LLC*, No. GLR-16-3628, 2017 U.S. Dist. LEXIS 105716, at *14 (D. Md. July 10, 2017) ("If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."); *Tavenner v. United States (In re Vance)*, 298 B.R. 262, 268 (Bankr. E.D. Va. 2003) ("'[A] debtor may not assume the favorable aspects of a contract [ ] and reject the unfavorable aspects of the same contract. . . [.]'") (citation omitted); *Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. App'x. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. App'x. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*,

6

291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, (plaintiff) cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage.") (citations and quotations omitted) (alterations in original); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect.") (citations omitted); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.") (internal citations and quotations omitted) (alterations in original); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

17.  It is also well-established that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997)

7

(noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (stating a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

18. Accordingly, in order to be entitled to any of the rights, benefits, interests, and/or proceeds under the Insurance Programs, any Successful Bidder must also remain liable for the Obligations thereunder.

19. Moreover, each of the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where

8

several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non severable agreement" where contracts were between same parties and obligations of each party are mutually dependent on the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

20. Accordingly, any sale or other transfer of only a portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) is improper, and any purported transfer of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) to the Successful Bidder(s) must be in its entirety.

21. The Chubb Companies therefore reserve their rights with respect to any purported assumption and assignment or other transfer of any portion of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) in connection with the Sale Motion and any proposed Sale Transaction.

**II. The Insurance Programs Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.**

22. To the extent that the Debtors seek to assign the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) in connection with the Sale Motion or any Sale Transaction, such assignment cannot occur without the express written consent of the Chubb Companies.

23. Section 365 of the Bankruptcy Code governs the assumption and assignment of executory contracts and unexpired leases.

24. Section 365(f)(1) allows a contract or lease to be assigned despite a provision in the contract or lease that restricts assignment. However, section 365(f) is subject to and controlled in

9

all respects by, section 365(c), which independently restricts a debtor's ability to assume and assign certain types of contracts. *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

25. Section 365(c) provides that a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor, unless such counterparty consents to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

26. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does no consent to assignment.").

27. Applicable non-bankruptcy law prohibits the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet.*) (where an insurer's express written consent to any transfer of rights under an insurance policy

10

is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898 at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

28. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure

---

[5] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

11

some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) cannot be assigned without the prior written consent of the Chubb Companies.

29. Further, as a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder), the Debtors and the assignee will be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies. These agreements have not yet been negotiated, let alone executed.

30. Accordingly, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder), the Chubb Companies reserve their rights with respect to any and all such assignments at this time.

**III. The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and any Successful Bidder(s).**

31. As of the date hereof, it is not clear exactly what, if any, portions of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) the Debtors intend to transfer to the Successful Bidder(s) pursuant to the Sale Motion.

32. While it is improper, as discussed above, to split the Insurance Programs themselves, or to split the rights, benefits, interests and/or proceeds under the Insurance Programs from the Obligations thereunder, any transfer of only a certain (as yet unspecified) portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) in connection

12

with any Sale Transaction is likely to result in coverage disputes between the Successful Bidder(s) and the Debtors.

33. To the extent any portion of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) is assigned in connection with any Sale Transaction, the Chubb Companies should not be put in the position of determining, as between the Debtors and any Successful Bidder(s), which entity is entitled to coverage under the Insurance Programs in connection with a particular claim. Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and any Successful Bidder(s), which entity is entitled to any of rights, benefits, interests and/or proceeds under the Insurance Programs.

**IV.     Cure Amounts Must Be Evaluated at the Time of Assumption.**

34. To the extent the Debtors seek to assume and assign all or a portion of either or both of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder) pursuant to any Sale Transaction, the Debtors must assume and assign each of the Insurance Programs in its entirety. Further, as more particularly described in the Insurance Programs, the Debtors are required to pay the Obligations, and, therefore, amounts may become due and owing under the Insurance Programs either prior to or after the assumption thereof.

35. Such Obligations include, but are not limited to, certain premium installments that will become due periodically in the coming months, as well as premium for bound renewals of certain Policies that have not yet incepted.

36. The Chubb Companies also have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Programs and the Obligations. By way of example and not limitation, premiums may be payable at audit under the terms of the Insurance Programs, based upon factors as they exist throughout the coverage period. Therefore, the Chubb Companies have contingent, unliquidated claims against the Debtors for any additional

13

premium that may become due upon completion of audit(s). By way of further example, as insured claims develop, amounts payable in relation thereto arise at various points in time; so it is common for amounts to arise in the future with respect to insured claims where the date of loss was prior to the Petition Date.

37. The amounts owed by the Debtors on account of the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.

38. Accordingly, any cure amounts must be determined at the time of assumption and, further, as a condition for the assignment of the Insurance Programs, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Programs, including, without limitation, paying the Obligations as they become due.

**V.** **Any Successful Bidder(s) Must Provide Adequate Assurance of Future Performance.**

39. It is currently unknown what entity(ies), if any, will be the Successful Bidder(s), and the Chubb Companies have therefore not yet been definitively advised as to whether any Successful Bidder(s) intends to seek the assignment of either of the Insurance Programs (and/or the rights, benefits, interests and proceeds thereunder).

40. Pursuant to section 365(f)(2) of the Bankruptcy Code, any assignee of a contract must provide adequate assurance of future performance.

41. Considering the fact that the Successful Bidder(s) is not yet known, the Chubb Companies do not have, and the Debtors have not supplied, any information—much less sufficient information or a reasonable amount of time—to determine if any Successful Bidder(s) would be capable of providing adequate assurance of future performance and whether any Successful Bidder(s) would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the

Chubb Companies are unable, at this time, to assess whether any Successful Bidder(s) (including any proposed Stalking Horse Bidder) would satisfy those criteria.

WHEREFORE, the Chubb Companies reserve all of their rights with respect to the Insurance Programs, the Sale Motion, any proposed Sale Transaction in connection therewith, and/or any documents relating thereto.

Dated: May 6, 2025                    Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Alex W. Karasik*

Alex W. Karasik
190 South LaSalle Street, Suite 3700
Chicago, IL 60603
Phone: (312) 499-6700
Fax: (312) 284-1064
Email:  AWKarasik@duanemorris.com

Wendy M. Simkulak, Esq.
Catherine B. Heitzenrater, Esq.
30 South 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
Email: WMSimkulak@duanemorris.com
Email: CHeitzenrater@duanemorris.com

Nathan P. Yeary
1540 Broadway
New York, NY 10036
Phone: (212) 692-1000
Fax: (212) 692-1020
Email: NYeary@duanemorris.com

*Counsel for the Chubb Companies*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>Debtors. | Case No. 25-40976<br>Chapter 11<br><br>(Jointly Administered) |

**CERTIFICATE OF SERVICE**

The undersigned certifies, under penalty of perjury that on May 6, 2025, a true and correct copy of the foregoing *Reservation of Rights of the Chubb Companies with Respect to the Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), if any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (VII) Approving Procedures for the Sale, Transfer, or Abandonment of de Minimis Assets, and (VIII) Granting Related Relief*, was filed electronically using the Bankruptcy Court for the Eastern District of Missouri CM/ECF.  The document was

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are:  23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595).  The Debtors' service address for purposes of these Chapter 11 Cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

thereby served electronically through the CM/ECF system on all parties requesting electronic notification in this case.

Dated: May 6, 2025 /s/ *Alex W. Karasik*
Alex W. Karasik