**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| 23ANDMEHOLDING CO., *et al.*,[1] | ) | Case No. 25-40976 |
| Debtors. | ) | (Jointly Administered) |

**CONSUMER PRIVACY OMBUDSMAN'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILMER CUTLER PICKERING HALE AND DORR LLP AS COUNSEL EFFECTIVE AS OF MAY 13, 2025**

Neil M. Richards, the duly-appointed consumer privacy ombudsman ("CPO") in the above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully states as follows in support of this application (the "Application"):

**Relief Requested**

1. The CPO seeks entry of an order (the "Proposed Order"), substantially in the form attached hereto, authorizing the retention and employment of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale" or the "Firm") as counsel to the CPO, effective as of May 13, 2025, in accordance with the terms and conditions set forth in the WilmerHale engagement agreement, dated as of May 9, 2025, attached hereto as **Exhibit A**. In support of this Application, the CPO relies on the declaration of Andrew N. Goldman, a partner of WilmerHale (the "Goldman Declaration"), attached hereto as **Exhibit B.**

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The CPO confirms their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §1408.

4. The statutory bases for the relief requested herein is section 327 and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules") 2014(a) and 2016, and rules 2014 and 2016 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Bankruptcy Local Rules").

**Background**

5. Debtors are a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome. Debtors pioneered direct access to genetic information as the only company with multiple FDA clearances for genetic health reports. Further, through its Lemonaid Health telehealth platform, Debtors operate as a national online doctor's office that provide medical care, pharmacy fulfillment, and laboratory testing services.

6. On March 23, 2025 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 on the Bankruptcy Code. Debtors are operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On March 28, 2025, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines with Respect*

*Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry into Stalking Horse Agreement(s), if any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* [Docket No. 125], which order set forth, among other things, certain procedures governing the sale of all or any portion of Debtors' assets.

8. On April 3, 2025, the Office of the U.S. Trustee (the "UST") filed the *Notice of Appointment of Official Unsecured Creditors' Committee* [Dockt No. 159] appointing an official committee of unsecured creditors (the "Official Committee of Unsecured Creditors").

9. On April 29, 2025, the Court entered the *Joint Stipulation and Agreed Order Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman* [Docket No. 346] (the "Joint Stipulation and Order"), submitted and agreed to by and between the Debtors, the Official Committee of Unsecured Creditors, and the Signatory Governmental Parties (as defined in the Joint Stipulation and Order), authorizing the UST to appoint a consumer privacy ombudsman. The Joint Stipulation and Order authorized the consumer privacy ombudsman to file a motion seeking authorization to employ and retain professionals to assist the consumer privacy ombudsman, "with any such retention subject to Court approval under standards equivalent to those set forth in 11 U.S.C. § 327." *See* Joint Stipulation and Order ¶ 1.

10. On May 6, 2025, the UST filed the *Notice of Appointment of Consumer Privacy Ombudsman* [Docket No. 388] appointing Neil M. Richards as CPO.

**Authority**

11. The Joint Stipulation and Order directs the CPO to seek Court approval of any proposed professional the CPO seeks to engage and retain in connection with the CPO's

obligations in these chapter 11 cases "under standards equivalent to those set forth in 11 U.S.C. § 327." *See* Joint Stipulation and Order ¶ 1. Bankruptcy Code section 327(a) provides that a debtor:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

12. Moreover, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the U.S. trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

13. The CPO submits that for all the reasons stated below and in the Goldman Declaration, the retention and employment of WilmerHale as counsel to the CPO is necessary and in the best interests of the CPO and complies with the requirements of section 327(a) of the Bankruptcy Code. Further, as stated in the Goldman Declaration, WilmerHale is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the CPO, Debtors, their creditors, or other parties in interest, except as specifically disclosed in the Goldman Declaration.

**WilmerHale's Qualifications**

14. WilmerHale's expertise and extensive experience in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code in addition to expertise and extensive experience in the field of cybersecurity and data

privacy will allow WilmerHale to effectively and efficiently advise the CPO in the context of these chapter 11 cases. WilmerHale has been extensively involved in major chapter 11 cases, including representing parties in interest in numerous cases before Bankruptcy Courts in numerous jurisdictions. In addition, Kirk Nahra, a partner and co-chair of WilmerHale's cybersecurity and privacy practice who will be working on this matter, regularly advises clients across industries, from Fortune 500 companies to startups, on implementing the requirements of privacy and data security laws across the country and internationally, and advises clients experiencing privacy and security breaches. Indeed, WilmerHale has advised healthcare providers, health plans, pharmaceutical and biotechnology companies, equipment suppliers, information technology vendors, consultants, and service providers encompassing the full range of health data regulatory considerations. WilmerHale has advised a broad range of stakeholders in the healthcare system on privacy, data security and breach notification matters, including the regulatory standards imposed pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), Health Information Technology for Economic and Clinical Health ("HITECH") Act, and supplemental state regulations. For WilmerHale's clients involved in clinical research, the Firm has provided counsel on human research protections imposed pursuant to the Common Rule and related regulations. WilmerHale's consumer data protection representative matters include: (1) developing and implementing HIPAA compliance policies and procedures for HIPAA-covered entities and their business associates; (2) negotiating business associate agreements for service providers and covered entities; (3) developing patient consent and patient privacy documentation for clinical research; (4) advising numerous clients on health data issues in corporate mergers and acquisitions, including restrictions on transfers of health data as corporate assets; and (5) advising

clients on potential HIPAA concerns raised by production of materials in litigation and investigations.

15. The CPO has been informed that Andrew Goldman and Kirk Nahra, partners of WilmerHale, as well as other partners of, counsel to, and associates of WilmerHale who will be working on this matter, are members in good standing of the applicable state bar(s) in which they are admitted to practice.

16. For the foregoing reasons, the CPO believes that WilmerHale is specially situated and well-qualified to represent them in these chapter 11 cases in an efficient and effective manner. Accordingly, the CPO believes that the retention of WilmerHale is necessary and in the best interests of the CPO.

**Services to be Provided**

17. The CPO desires to employ WilmerHale to provide legal services relating to their service as consumer privacy ombudsman in these chapter 11 cases, including, without limitation the following (collectively, the "CPO Counsel Matters"):

a. Understanding applicable state, federal and foreign privacy and data security laws, including, but not limited to genetic privacy laws and regulations;

b. Reviewing and assessing the implementation of and compliance with privacy and data protection protocols and processes;

c. Advising the CPO on the legal and technical aspects of the cybersecurity practices of both the Debtor and any proposed purchaser;

d. Investigating any proposed sale or transfer of personally identifiable information by the Debtors;

e. Reporting to the Court on the information described in Bankruptcy Code section 332(b);

f. Providing advice to the CPO on issues of bankruptcy law and procedure, including issues relating to sales under Bankruptcy Code section 363, and the procedures applicable in this Court;

g. Representation of the CPO in any other matter that may arise in connection with the CPO's service as consumer privacy ombudsman; and

h. Appearing before the Court in connection with the foregoing.

18. WilmerHale has stated its desire and willingness to act in these chapter 11 cases and render the necessary professional services as counsel to the CPO.

**Professional Compensation**

19. WilmerHale intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court. The hourly rates and corresponding rate structure WilmerHale will use in these chapter 11 cases are in accordance with its ordinary and customary rates for matters of this type in effect on the date of such services, and are the same as the hourly rates and corresponding rate structure that WilmerHale uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.

20. WilmerHale operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

21. These rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses, and are revised on an annual basis. The current standard hourly rates for WilmerHale's attorneys and paralegals range from $1,600 to $2,600 for partners, $1,400 to $1,600 for counsel, $825 to $1,370

for associates, and $550 to $820 for paraprofessionals. These rates are subject to periodic adjustment to reflect economic and other conditions.[2] The Firm has not agreed to any variations from, or alternatives to, its standard billing arrangements for this engagement. WilmerHale has also informed the CPO, and the CPO also understands, that WilmerHale, like any other large law firm, has a wide array of clients and matters and from time to time will, in specific instances, negotiate discounts, write-offs, reduced rates, alternative fee structures, and other customized compensation arrangements with its clients, which arrangements may depend on the size, duration, subject matter, staffing, client internal procedures and guidelines, and other details of the engagement at issue. These details may change from time to time.

22. The following attorneys will have primary responsibility for representing the CPO in these chapter 11 cases:

| Name | Years of Experience | Current Hourly Rate |
|---|---|---|
| Andrew Goldman | 30 | $2,300.00 |
| Kirk J. Nahra | 25 | $1,900.00 |

Other WilmerHale lawyers will be consulted and may appear on behalf of the CPO in these chapter 11 cases, as necessary. Further, the CPO desires to employ Ryan Durrie as an expert to provide additional services relating to the CPO's service as consumer privacy ombudsman in these chapter 11 cases. Ryan Durrie's current hourly rate is $400.00.

2 WilmerHale, like many law firms, typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (a) ordinary step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "Step Increase") and (b) periodic rate increases with respect to each level of seniority. The Step Increases do not constitute "rate increases" (as the term is used in the Fee Guidelines, as defined in the Goldman Declaration).

23. In addition to the hourly rates set forth above, and consistent with WilmerHale's policy, both with respect to the CPO and with respect to its other clients, WilmerHale will seek reimbursement for certain other expenses and charges incurred in connection with the client's matter that would not have been incurred except for the representation of that particular client (subject to exceptions and qualifications agreed to from time to time between WilmerHale and its clients on specific matters). It is also WilmerHale's policy to charge its clients only the amount actually incurred by WilmerHale in connection with such items. These charges and disbursements include (without limitation) costs for telecopier (outgoing only) toll and other charges, mail and express mail charges, special or hand-delivery charges, photocopying charges, travel expenses, expenses for "working meals," computerized legal research, transcription costs, as well as non-ordinary overhead expenses such as secretarial overtime. WilmerHale will charge the CPO for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients and made to the CPO prior to the Petition Date, subject to any limitations contained in the Bankruptcy Local Rules.

**No Adverse Interest**

24. To the best of the CPO's knowledge, and as set forth in the Goldman Declaration, WilmerHale does not represent or hold any interest adverse to the CPO, the Debtors or to the Debtors' estates with respect to the CPO Counsel Matters for which the CPO wishes to employ WilmerHale. Further, to the best of the CPO's knowledge, WilmerHale does not represent any creditor or other parties in interest in any matter adverse to the CPO, the Debtors or the Debtors' estates with respect to the CPO Counsel Matters for which the CPO wishes to employ WilmerHale. WilmerHale has noted, as set forth in the Goldman Declaration, that it represents and may represent or have other relationships with certain creditors of the Debtors or other parties in interest in the Debtors' chapter 11 cases, but that such representations or other relationships do not involve

the CPO or Debtors in respect of the CPO Counsel Matters for which the CPO wishes to employ WilmerHale. If any new facts or circumstances are discovered, WilmerHale will supplement its disclosure to the Court.

**No Prior Request**

25. No prior request for the relief sought in this Application has been made to this or any other court.

**Notice**

26. The CPO will provide notice of this Application to the following parties: (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date; (d) the agent/lender under any proposed postpetition financing facility and its counsel, if applicable; (e) the United States Attorney's Office for the Eastern District of Missouri; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Federal Trade Commission; (i) the state attorneys general in all 50 states; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Notice of this Application and any order entered hereon will be served in accordance with rule 9013-3(A)(1) of the Local Rules. The CPO submits that, in light of the nature of the relief requested, no other or further notice need be given.

27. A copy of this Application is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

[*Remainder of page intentionally left blank*]

WHEREFORE, the CPO respectfully requests that the Court enter the Proposed Order granting the relief requested herein and granting such other relief as is appropriate under the circumstances.

Dated: May 13, 2025

/s/ Neil M. Richards

Neil M. Richards
Consumer Privacy Ombudsman

# EXHIBIT A

**Engagement Letter**

Docusign Envelope ID: 9ABF3D2C-14B7-4435-8589-947D077E0AC4


WILMERHALE

May 9, 2025

**Kirk J. Nahra**

+1 202 663 6128 (t)
+1 202 663 6363 (f)
kirk.nahra@wilmerhale.com

Neil M. Richards
Koch Distinguished Professor in Law
Director of the Cordell Institute
Washington University in St. Louis
1 Brookings Drive
St. Louis, MO 63130

Re: **Engagement with WilmerHale**

Dear Neil:

We are pleased that you have asked Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale" or "the Firm") to serve as counsel to you in connection with your work as 23andMe-Appointed Consumer Privacy Ombudsman, and we look forward to the opportunity. This letter will confirm our discussion with you regarding the engagement and describe the basis on which our Firm will provide legal services to you. If you have any questions about any of these provisions, do not hesitate to call, and if any of these terms are not acceptable to you, please notify me immediately.

**1.** *Client; Scope of Representation.*

Our client in this matter will be you. We will be engaged upon approval by the bankruptcy court to advise you in connection with your role as Appointed Consumer Privacy Ombudsman in 23andMe's bankruptcy proceeding (the "Matter"). Our acceptance of this engagement does not involve an undertaking to represent you or your interests in any other matter or in any other capacity.

Andrew Goldman and I will supervise the other partners, associates, and professionals in public policy and other areas who may be called upon to assist in this effort. Public policy and other professionals who are not attorneys will not provide legal advice or give legal opinions. All work will be performed consistent with applicable rules of professional conduct.

In the course of our engagement, we will interpret and apply the terms of this engagement letter and any outside counsel guidelines for which we have provided our assent consistently with all applicable rules of professional conduct and federal and state laws, including, but not limited to, those governing the Firm's employment relationships.

**2.** *Fees and Expenses.*

Our fees are ordinarily based on hourly rates for lawyers and, where applicable, other professionals and paraprofessionals. We review and may adjust our billing rates annually, and changes in billing rates for personnel working on a matter may occur during the course of the representation. My 2025 billing rate for this Matter is $1,900.00 and Andrew Goldman's rate is $2,300. We would expect to add staff to this Matter as appropriate. We understand that our rates and invoices will be subject to approval by the Bankruptcy court.

Our invoices will include separate charges for disbursements made and internal charges incurred on behalf of you. To the extent consistent with Bankruptcy Court Guidelines, these may include such items as reprographics, after hours support, computerized research charges, courier and messenger charges, supplies, travel and related lodging and meal expenses, charges for complex document production, and late night meal and transportation costs. Additional expenses may include filing fees, patent/trademark and service fees, trial exhibit and transcript fees, registration fees, services of outside professionals and court and subpoena fees. Except as set forth in the Pricing Guidelines for Disbursements and Other Charges attached hereto and incorporated herein, we will bill at cost for charges paid to third parties, and charges for internal services will be billed at our usual and customary rates for such services. Fees and expenses of others (such as consultants, experts, and local counsel) and other extraordinary expenses (such as remote office requirements for trials, etc.) will be billed directly unless other arrangements, such as use of disbursement retainers, are put in place.

We will ordinarily send monthly invoices for work performed and expenses recorded on our books during the previous month. We understand that we will be submitting these invoices to the Bankruptcy Court for approval (with copies to you). If there are any special policies with respect to information to be included in our invoices or if there is any change in address and contact information, please notify us promptly. Please review our invoices when received so that any questions are raised in a timely fashion.

Additional details concerning expense reimbursement are set forth in the enclosed Pricing Guidelines for Disbursements and Other Charges.

If the Firm or any of its personnel are required by subpoena or other lawful process to provide testimony or produce documents or records, including electronic records, relating to the Firm's representation of you, or if we must defend the confidentiality of your communications with us in any proceeding, following the same procedure set forth above, for any resulting costs, including for our time, calculated at the hourly rate for the particular individuals involved, even if our representation of you has ended.

**3.** *Conflicts.*

We are a large firm with offices in a number of cities in the United States and abroad, and we represent many other companies and individuals. In addition, we may represent, now or in the future, competitors in the same industry, technology, or intellectual property space.

Given the breadth of our practice, it is possible that during the time we are representing you, some of our present or future clients are or will be engaged in transactions, or encounter disputes, with you. You agree that we may continue to represent, and may undertake in the future to represent, existing or new clients in any matter that is not substantially related to our work for you even if the interests of such clients in those matters are directly adverse to you; provided, however, that this waiver shall not extend to initiation of litigation, arbitration or other dispute resolution proceedings against you on behalf of another client concurrent with the representation. Third-party discovery requests and related motions practice matters are expressly included within the advance waiver. At no time would we use or disclose any confidential or proprietary information relating to your representation in connection with our representation of another client without your written consent. Please know that, in similar engagement letters with many of our other clients, we have asked for similar agreements to preserve our ability to represent you.

These conflicts terms govern in lieu of any conflicts terms in any outside counsel guidelines.

**4.** *Consent Regarding WilmerHale Privileged Communications.*

It may be necessary or appropriate for the Firm or Firm lawyers to consult (at the Firm's own expense, of course) with WilmerHale's General Counsel, other WilmerHale lawyers or external counsel regarding our rights and responsibilities concerning the Firm's engagement by you. In such instances, a conflict of interest may arise between the Firm and you as to the subject matter of such consultation. You consent to such consultations, waive any conflict of interest that may result therefrom, and acknowledge that such consultations are protected by WilmerHale's (i.e., not your) attorney-client privilege.

**5.** *Data Protection.*

We have attached a Data Use Notice setting out how we collect and use the personal information provided by you. Please sign below to acknowledge receipt of the notice.

During the engagement, the Firm may use cloud-based or hosted data applications and systems ("Cloud Services") to facilitate collaboration, operational efficiencies, and business continuity. Any use by the Firm of such Cloud Services shall comply with the Firm's ISO 27001 information security program (including, for example, data encryption, user authentication,

malware and perimeter defense protection, user access controls, and ongoing third-party security review). Our policies limit use to Cloud Services that have been reviewed and licensed by the Firm. Our policies also provide that utilization of Cloud Services that include Generative Artificial Intelligence ("GAI") capabilities is limited to tools and providers that do not share your data with other parties or use it for training of those providers' models. We will not use GAI tools as a substitute for a lawyer's skill, judgment, or legal decision-making.

**6.** *Conclusion of Representation.*

Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to our professional obligations to you under applicable rules of professional conduct. Unless previously terminated, our representation of you will terminate upon completion of the services for the Matter described above in section 1. In the event a period of six months has passed during which we have not performed legal services on your behalf, the engagement shall be deemed concluded unless extended by mutual agreement. It is understood and agreed that in the event of any termination or withdrawal, we will be entitled to receive any unpaid fees and expenses. Subsequent invoices sent to collect expenses and/or unpaid balances, and/or accounting records or client lists shall not extend the attorney-client relationship. Unless you engage us after termination of this Matter, we will have no continuing obligation to advise you with respect to future legal developments, such as changes in the applicable laws or regulations that could have an impact on your future rights and liabilities.

Without limiting the foregoing, we may be required to withdraw from this representation if continuing with it would become unethical. We may also withdraw, in the event that you do not cooperate fully with us in the Matter, do not follow reasonable advice that we render, fail to respond to communications from us, do not timely notify us of a change in contact information or our invoices are not paid in accordance with this agreement. If we elect to withdraw, you will take all steps necessary to assist us with our timely withdrawal, including the execution of any documents or filings with any court, tribunal, or agency. Notwithstanding such termination, the Court following the process set forth above will remain obligated to pay us for all services provided and to reimburse us for all costs and expenses paid or incurred on your behalf. Note that you may not reference or use our Firm's name or logo in any marketing or other materials and communications absent specific written authorization from the Firm.

Following the conclusion of our representation, we will keep confidential any non-public information you have supplied to us, which we will retain in accordance with applicable rules of professional conduct. Upon request, we will return your papers and property promptly upon receipt of payment for any outstanding fees and expenses, consistent with applicable rules of professional conduct. The Firm will retain its own files pertaining to the Matter in accordance with the Firm's records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such

documents or other materials after a reasonable time following the termination of the engagement.

Finally, I would like to confirm that our representation of your interests in the Matter shall not encompass advice concerning insurance matters (including evaluations of insurance claims, notices to brokers, agents, or insurers, procurement of insurance, or coverage issues).

Once again, we are pleased to have this opportunity to work with you. Please contact me immediately if you have any questions about this agreement. If you are in agreement with the terms and conditions of representation set forth in this letter, please sign this letter below, return a signed copy back to us and retain a copy for your records. We will not be able to begin advising you until we receive this letter duly countersigned.

Very truly yours,

WILMER CUTLER PICKERING HALE AND DORR LLP

By:____________________________
Kirk J. Nahra
Partner

**ACKNOWLEDGED AND AGREED TO by Neil M. Richards as Appointed Consumer Privacy Ombudsman regarding 23andMe**:

Neil Richards
____________________________
Neil M. Richards/Koch Distinguished Professor in Law/Director of the Cordell Institute

Date: 5/9/2025

**Data Use Notice acknowledged and agreed to** by **Neil M. Richards as Appointed Consumer Privacy Ombudsman regarding 23andMe**:

Neil Richards
____________________________
Neil M. Richards/Koch Distinguished Professor in Law/Director of the Cordell Institute

Date: 5/9/2025

WILMERHALE

**Wilmer Cutler Pickering Hale and Dorr LLP**
**Pricing Guidelines for Disbursements and Other Charges**
**As of January 1, 2025**

Consistent with ABA Formal Opinion 93-379, WilmerHale does not charge for overhead expenses generally associated with operation of the firm, yet seeks to recoup expenses reasonably incurred in connection with a client's matter for services performed in-house, such as photocopying, computer research, and similar services. We have standardized pricing for these services as listed below. WilmerHale does not make a profit on these services. Furthermore, WilmerHale does not charge for more than our direct costs associated with third-party services, such as court reporter fees, except to the extent that actual supplemental costs are incurred.

***REPROGRAPHICS***

| | |
|---|---|
| Document Printing/Scanning | $0.15 per page |
| Internal Photocopy | $0.15 per page |
| Color Photocopy/Document Printing | $1.00 per page |

The Firm's in-house vendor also has separate charges for special projects such as labeling, velo binding, pagination, and oversize copies.

***AFTER HOURS SUPPORT***

| | |
|---|---|
| Late-evening/Weekend | $65.00 per hour |

After Hours Support is charged to the client when work is performed at the Firm past normal working hours expressly in response to work for a particular client, and not in response to general workload or for personal convenience.

***ONLINE RESEARCH***

Our research usage volume has enabled us to obtain favorable discounts off published retail prices from LexisNexis, Westlaw, and other vendors. We charge the published retail price less volume discounts.

***WHDS DATA PROCESSING & REVIEW***

The Firm offers WilmerHale Discovery Solutions ("WHDS") for document review and discovery. WHDS work will be charged based on data volumes associated with processing and storage.

***ADDITIONAL DISBURSEMENTS***

Typical disbursements include courier and messenger charges, special supplies, travel and related lodging and meal expenses, charges for complex document production, select research services, and late night meal and transportation costs. Other expenses may include filing fees, patent/trademark and service fees, trial exhibit and transcript fees, registration fees, services of outside professionals, as well as court and subpoena fees.

---

***FAX, TELEPHONE AND POSTAGE***

The Firm does not charge for incoming or outbound faxes, local, long distance, or conference calls, web conference sessions, or routine postage.

# DATA USE NOTICE

Wilmer Cutler Pickering Hale and Dorr LLP (WilmerHale) is an international law firm organized as two limited liability partnerships in the State of Delaware, one for the United Kingdom and one for the rest of the world. WilmerHale is committed to ensuring the confidentiality of client information. We are also under ethical and legal obligations to do so because of the bar rules that apply to our profession and our attorney-client relationships.

Personal data is any information relating to an identified or identifiable individual (the data subject). This Data Use Notice sets out the terms on which we process and protect personal data.

**Please acknowledge your review and agreement in the signature block above for this engagement letter.**

## Our role

### US law

Under US law, WilmerHale will typically operate as a data processor, contractor, or service provider in respect of the personal data that we collect pursuant to the engagement letter with our clients, within the meaning of applicable US state data protection laws. To the extent that we operate as a data processor, contractor, or service provider in respect of the personal data that we collect pursuant to our engagement letter, we will comply with our obligations under applicable US state data protection laws, including by adhering to the following requirements:

- We will implement an appropriate controller-processor agreement or business-contractor/service provider agreement, as may be required;
- We will process personal data solely for the purpose of providing services to our clients or otherwise in accordance with our clients' instructions;
- We will not combine personal data received from a client with personal data received from any other party;
- We will have in place technical and organizational security measures that shall be of a standard generally observed in the legal profession, including measures that guard against unauthorized or unlawful access to, or alteration, disclosure, or destruction of personal data and against accidental loss or destruction of or damage to personal data;
- We will require our clients to confirm that their representatives are authorized to provide to us the personal data that we shall process on our clients' behalf.

Please note that some of the sections in this Data Use Notice may not apply to the extent we process personal data in the role of a data processor, contractor, or service provider.

Additionally, in some contexts, we may be a data controller under applicable US state data protection laws. In those contexts, we will process personal data in accordance with the sections below.

### GDPR/UK GDPR

To the extent the European Union's General Data Protection Regulation 2016/679 (GDPR) and the equivalent regulations in the UK (UK GDPR and Data Protection Act 2018) are applicable, Wilmer

Cutler Pickering Hale and Dorr LLP, a Delaware limited liability partnership with principal law offices at 60 State Street, Boston, Massachusetts 02109, +1 617 526 6000 and 2100 Pennsylvania Avenue, NW, Washington, DC 20037, +1 202 663 6000 on the one hand and the separate Delaware limited liability partnership Wilmer Cutler Pickering Hale and Dorr LLP of solicitors and registered foreign lawyers authorized and regulated by the Solicitors Regulation Authority (SRA No. 287488) having its address at 49 Park Lane, London W1K 1PS are joint data controllers for the processing of personal data, who have agreed that both have responsibility for compliance with the provisions of the GDPR and UK equivalents and the contact points listed in this Data Use Notice.

## The personal data we collect and use

### Information collected by us

During and prior to the provision of legal services we may collect the following personal data:

- Information on the individuals on teams tasked at a client entity with working with us on a matter;
- Information on an individual client instructing us in their own capacity;
- Information on the ultimate beneficial owners and directors of a client entity;
- Information on individuals required for providing legal advice.

### How we use personal data

We use personal data received from our clients to:

- Comply with the provisions of anti-money laundering, terrorist financing legislation, and other legal requirements, as we are legally required to do;
- Undertake our pre-engagement conflict checks, in order to be able to provide services to our clients;
- Provide legal services as our clients have requested in this engagement;
- Notify clients and contacts about important legal developments and services that we think they may find valuable and send newsletters, invitations to seminars, and similar marketing materials.

We do not sell or share personal data received from our clients as these terms are defined under applicable privacy laws.

### Who we share personal data with

We may, for the above purposes, share personal data with any office of the firm. The firm's offices are located worldwide, including in the United States of America, which may not have similar data protection legislation as the European Economic Area or the UK. We may also use various third parties as subcontractors to provide services to us for the purposes stated above. We may disclose personal data to them as needed for them to perform their specific tasks under our instructions, subject to the safeguards described here. In addition, we may disclose personal data that our clients expressly authorize, as required by law, or when we believe that such disclosure is necessary in connection with a judicial or administrative proceeding or to comply with a court order, law, or regulation applicable to us; or as we determine to be necessary to protect our property or assert our legal rights or to protect the property or safety of any other person.

WilmerHale will at all times ensure a data protection level equivalent to that in the European Economic Area and UK for the processing of personal data. We will implement appropriate safeguards within the

meaning of Article 46 GDPR and its equivalent UK provision, such as standard data protection clauses, if the recipient of personal data is not located in a country considered to ensure an adequate level of protection within the meaning of Article 45 GDPR and its equivalent UK provision.

**How long personal data will be kept**

- We will hold the personal data we collect for our anti-money laundering checks for five years after the end of our client relationship.
- We will hold the personal data we collect for the provision of legal services for ten years after the conclusion of the matter on which we have been working.

**Basis for collecting and using personal data**

We rely on Article 6(1)(c) GDPR and its equivalent UK provision as the basis for collecting and using personal data for our anti-money laundering checks (processing is necessary for compliance with a legal obligation to which the controller is subject).

We rely on Article 6(1)(b) GDPR and Article 6(1)(f) and its equivalent UK provisions for the processing of personal data for the provision of legal services and our pre-engagement conflict checks (processing is necessary for the performance of a contract to which the data subject is party or in order to take steps at the request of the data subject prior to entering into a contract and processing is necessary for our legitimate interests and the legitimate interests of our clients, namely compliance with applicable laws and the provision of legal services).

We rely on Article 6(1)(a) GDPR and its equivalent UK provision for the processing of personal data where the respective data subjects have provided consent to such processing (data subject has given consent to the processing of his or her personal data for one or more specific purposes).

Regarding the use of personal data for marketing purposes, we rely on Article 6(1)(f) GDPR and its equivalent UK provision (legitimate interests of WilmerHale). Data subjects can object to this use; details are described below in the section “Your rights”.

## Keeping personal data secure

We have appropriate security measures in place to prevent personal data from being accidentally lost or used or accessed in an unauthorized way. We limit access to our clients’ personal data to those who have a genuine business need to know it. Those processing our clients’ personal data will do so only in an authorized manner and are subject to a duty of confidentiality.

We also have procedures in place to deal with any suspected data security breach. We will notify our clients and/or affected data subjects and any applicable regulator of a suspected data security breach where we are legally required to do so.

## Your rights

Data subjects may have certain rights available to them in relation to personal data we process as a controller. These rights may include:

- The right to access your personal data (including a data portability request);
- The right to correct or amend any personal data we have on file about you;
- The right to delete your personal data;

- The right to limit the use of your "sensitive" personal data;
- The right to opt-out of the sale or "sharing" of your personal data;
- The right to opt-out of the use of your personal data for targeted advertising purposes;
- The right to restrict or object to the processing of your personal data (such as for direct marketing purposes);
- The right to restrict or opt-out of the use of your personal data for certain automated decision-making (including profiling in furtherance of decisions that produce legal or similarly significant effects);
- The right to revoke your consent (to the extent applicable);
- The right to confirm whether personal data about you is being processed;
- The right to obtain a list of specific third parties (or categories of third parties) to which we have disclosed your personal data or any personal data.

To exercise any of the rights listed above, please contact us, preferably via email, at dataprotectionofficer@wilmerhale.com.

If you would like to unsubscribe from any email newsletters we send you or any invitations to seminars, you may also click on the "unsubscribe" button at the bottom of the email newsletter or invite.

## How to complain

We hope that we can resolve any query or concern you raise about our use of your information. Please contact us or our data protection officer at the addresses indicated above or at dataprotectionofficer@wilmerhale.com with any questions or requests you may have.

The GDPR also gives data subjects the right to lodge a complaint with a competent supervisory authority in the European Union (or European Economic Area). You can find contact information for the competent supervisory authority by following this weblink: https://edpb.europa.eu/about-edpb/about-edpb/members_en. Similar provisions apply in the UK, and you can find information about contacting the supervisory authority at this weblink: https://ico.org.uk/global/contact-us/contact-us-public/. California consumers can contact the California Privacy Protection Agency at this weblink: https://cppa.ca.gov/webapplications/complaint, and similarly, Colorado residents can lodge a complaint at this weblink: https://coag.gov/file-complaint/.

## Changes to this Data Use Notice

Latest update: October 2024.

We may change this Data Use Notice from time to time. You may request the most up-to-date version from us.

# EXHIBIT B

**Goldman Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| 23ANDMEHOLDING CO., *et al.*,[1] | ) | Case No. 25-40976 |
| Debtors. | ) | (Jointly Administered) |

**DECLARATION OF ANDREW N. GOLDMAN
IN SUPPORT OF THE CONSUMER PRIVACY OMBUDSMAN'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF WILMER CUTLER PICKERING HALE AND DORR LLP AS COUNSEL EFFECTIVE AS OF MAY 13, 2025**

I, Andrew N. Goldman, being duly sworn, state the following under penalty of perjury:

1. I am a partner of the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 7 World Trade Center, New York, New York 10007 ("WilmerHale") and I am the Chair of WilmerHale's Bankruptcy and Financial Restructuring Practice. I am a member in good standing of the Bars of the State of New York and the State of New Jersey, and I have been admitted to practice in the Southern and Eastern Districts of New York and the District of New Jersey. There are no disciplinary proceedings pending against me.

2. On April 29, 2025, the Court entered the *Joint Stipulation and Agreed Order Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman* [Docket No. 346] (the "Joint Stipulation and Order") submitted and agreed to by and between the Debtors, the Official Committee of Unsecured Creditors, and the Signatory Governmental Parties (as defined

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

in the Joint Stipulation and Order) authorizing: (a) the United States Trustee ("UST") to appoint a consumer privacy ombudsman (the "CPO"); and (b) the CPO to file a motion seeking authorization to employ and retain professionals to assist the CPO, "with any such retention subject to Court approval under standards equivalent to those set forth in 11 U.S.C. § 327."

3. On May 6, 2025, the UST filed the *Notice of Appointment of Consumer Privacy Ombudsman* [Docket No. 388] appointing Neil M. Richards as CPO.

4. Contemporaneously herewith, the CPO has filed the *Consumer Privacy Ombudsman's Application for Entry of an Order Authorizing the Retention and Employment of Wilmer Cutler Pickering Hale and Dorr LLP as Counsel Effective as of May 13, 2025* (the "Application").[2] The Application, among other things, seeks entry of an order authorizing the CPO to retain and employ WilmerHale as counsel.

5. I submit this declaration (the "Declaration") in support of the Application and pursuant to section 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014 and 2016 of the Local Bankruptcy Rules for the Eastern District of Missouri (the "Bankruptcy Local Rules").

6. Except as otherwise noted, I have personal knowledge of the matters set forth herein. To the extent any information disclosed herein requires amendment or modification upon WilmerHale's completion of further review, or as additional party-in-interest information becomes available, a supplemental declaration will be submitted to the Court reflecting such amended or modified information.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

**WilmerHale's Qualifications**

7. On May 9, 2025, the CPO and WilmerHale entered into an Engagement Letter, a copy of which is attached to the Application as Exhibit A (the "Engagement Letter").

8. WilmerHale's expertise and extensive experience in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code in addition to WilmerHale's expertise and extensive experience in the field of cybersecurity and data privacy that will allow WilmerHale to effectively and efficiently advise the CPO in the context of these chapter 11 cases. WilmerHale has been extensively involved in major chapter 11 cases, including representing parties in interest in numerous cases before Bankruptcy Courts in multiple jurisdictions. In addition, Kirk Nahra, a partner and co-chair of WilmerHale's cybersecurity and privacy practice who will be working on this matter has regularly advised clients across industries, from Fortune 500 companies to startups, on implementing the requirements of privacy and data security laws across the country and internationally and advised clients experiencing privacy and security breaches. Indeed, WilmerHale has advised healthcare providers, health plans, pharmaceutical and biotechnology companies, equipment suppliers, information technology vendors, consultants, and service providers encompassing the full range of health data regulatory considerations. WilmerHale has advised a broad range of stakeholders in the healthcare system on privacy, data security and breach notification matters, including the regulatory standards imposed pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), Health Information Technology for Economic and Clinical Health ("HITECH") Act, and supplemental state regulations. For WilmerHale's clients involved in clinical research, the Firm has provided counsel on human research protections imposed pursuant to the Common Rule and related regulations. WilmerHale's consumer data protection representative matters include: (1) developing and implementing HIPAA compliance policies and procedures for HIPAA-covered

entities and their business associates; (2) negotiating business associate agreements for service providers and covered entities; (3) developing patient consent and patient privacy documentation for clinical research; (4) advising numerous clients on health data issues in corporate mergers and acquisitions, including restrictions on transfers of health data as corporate assets; and (5) advising clients on potential HIPAA concerns raised by production of materials in litigation and investigations.

9. Kirk Nahra and I, partners of WilmerHale, as well as other partners of, counsel to, and associates of WilmerHale who will be working on this matter, are members in good standing of the applicable state bar(s) in which they are admitted to practice.

10. For the foregoing reasons, I believe that WilmerHale is specially situated and well-qualified to represent the CPO in these chapter 11 cases in a most efficient and effective manner. Accordingly, the retention of WilmerHale is necessary and in the best interests of the CPO.

**Services To Be Provided**

11. The Engagement Letter and the Application set forth the terms under which WilmerHale has agreed to act as counsel for the CPO with respect to the CPO Counsel Matters in the Debtors' chapter 11 cases. Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of WilmerHale for rendering the following legal services—in connection with the following:

a. Understanding applicable state, federal and foreign privacy and data security laws, including, but not limited to genetic privacy laws and regulations;

b. Reviewing and assessing the implementation of and compliance with privacy and data protection protocols and process;

c. Advising the CPO on the legal and technical aspects of the cybersecurity practices of both the Debtor and any proposed purchaser;

d. Investigating any proposed sale or transfer of personally identifiable information by the Debtors;

e. Reporting to the Court on the information described in Bankruptcy Code section 332(b);

f. Providing advice to the CPO on issues of bankruptcy law and procedure, including issues relating to sales under Bankruptcy Code section 363, and the procedures applicable in this Court; and

g. Representation of the CPO in any other matter that may arise in connection with the CPO's service as consumer privacy ombudsman; and

h. Appearing before the Court in connection with the foregoing.

12. WilmerHale has stated its desire and willingness to act in these chapter 11 cases and render the necessary professional services as counsel to the CPO.

**Professional Compensation**

13. WilmerHale intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with the CPO Counsel Matters, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures and orders of the Court. In the normal course of business, WilmerHale revises its hourly rates annually. The current standard hourly rates for WilmerHale's attorneys and paralegals range from $1,600 to $2,600 for partners, $1,400 to $1,600 for counsel, $825 to $1,370 for associates, and $550 to $820 for paraprofessionals. These rates are subject to periodic adjustment to reflect economic and other conditions.[3] The Firm has not agreed to any variations from, or alternatives to, its standard billing

[3] WilmerHale, like many law firms, typically increases the hourly billing rate of attorneys and paraprofessionals once a year, which increase includes (a) ordinary step increases related to the advancing seniority or promotion of an attorney or paraprofessional (a "Step Increase") and (b) periodic rate increases with respect to each level of seniority. The Step Increases do not constitute "rate increases" (as the term is used in the Fee Guidelines, as defined herein).

arrangements for this engagement. WilmerHale has also informed the CPO, and the CPO also understands, that WilmerHale, like any other large law firm, has a wide array of clients and matters and from time to time will, in specific instances, negotiate discounts, write-offs, reduced rates, alternative fee structures, and other customized compensation arrangements with its clients, which arrangements may depend on the size, duration, subject matter, staffing, client internal procedures and guidelines, and other details of the engagement at issue. These details may change from time to time.

14. The following attorneys will have primary responsibility for representing the CPO in these chapter 11 cases:

| **Name** | **Years of Experience** | **Current Hourly Rate** |
|---|---|---|
| Andrew Goldman | 30 | $2,300.00 |
| Kirk Nahra | 25 | $1,900.00 |

Other WilmerHale lawyers will be consulted and may appear on behalf of the CPO in these chapter 11 cases, as necessary. Further, I understand that the CPO desires to employ Ryan Durrie as an expert to provide additional services relating to the CPO's service as consumer privacy ombudsman in these chapter 11 cases. I understand that Ryan Durrie's current hourly rate is $400.00.

15. The hourly rates and corresponding rate structure set forth above are in accordance with its ordinary and customary rates for matters of this type in effect on the date of such services, and are the same as the hourly rates and corresponding rate structure that WilmerHale uses in other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required. WilmerHale operates in a national marketplace for legal services in which rates are driven by multiple factors

relating to the individual lawyer, his or her area of specialization, the Firm's expertise, performance, and reputation, the nature of the work involved, and other factors. WilmerHale's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses, and are revised on an annual basis.

16. Additionally, it is WilmerHale's policy to seek reimbursement for certain other expenses and charges incurred in connection with the client's matter that would not have been incurred except for the representation of that particular client (subject to exceptions and qualifications agreed to from time to time between WilmerHale and its clients on specific matters), as well as modifications required to comply with the applicable general orders of this Court and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013 (collectively, the "Fee Guidelines"), sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any further order of the Court. It is also WilmerHale's policy to charge its clients only the amount actually incurred by WilmerHale in connection with such items. These charges and disbursements include (without limitation) costs for telecopier (outgoing only) toll and other charges, mail and express mail charges, special or hand-delivery charges, photocopying charges, travel expenses, expenses for "working meals," computerized legal research, transcription costs, as well as non-ordinary overhead expenses such as secretarial overtime. WilmerHale will charge the CPO for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients, subject to the Bankruptcy Local Rules.

17. WilmerHale has advised the CPO that it intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges, costs, and expenses incurred in these chapter 11 cases. No promises have been received by WilmerHale, or

any member, counsel or associate of WilmerHale, as to payment or compensation in connection with these chapter 11 cases other than in accordance with Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and the Fee Guidelines. Further, WilmerHale has no agreement with any other entity to share compensation received by WilmerHale or any such entity.

**WilmerHale's Disinterestedness**

18. In connection with WilmerHale's proposed retention in this case, and in preparing this Declaration, WilmerHale conducted an investigation, as further described below, to determine whether it could accept the representation. To the best of my information, knowledge and belief, the partners, counsel and associates of WilmerHale do not hold or represent any interest adverse to the CPO, the Debtors or the Debtors' estates with respect to the CPO Counsel Matters.

19. In order to ascertain the existence of possible conflicts, WilmerHale has undertaken a routine review of its computerized databases which contain the names of clients and other parties interested in particular matters. WilmerHale requires all of its professionals, before accepting the representation of a new client, or the representation of an existing client in a new matter, to perform a conflicts check through the conflicts databases and to enter into those databases information regarding the proposed new clients or matters. Accordingly, a review of the conflicts databases (and, as applicable, follow-up inquiries with WilmerHale attorneys responsible for the coordination of work for other clients identified in the course of the review of the conflicts databases) should reveal any and all actual or potential conflicts of interest with respect to any given representation. In particular, employees of WilmerHale's conflicts and client records department used these systems to check for any potential conflicts or other connections regarding all persons and entities known to WilmerHale to be involved in the issues for which WilmerHale is to be employed. To the extent I have been able to ascertain based on the results of such search, WilmerHale does not hold or represent any adverse interests in respect of the specific issues for

which WilmerHale is to be employed. Nevertheless, WilmerHale has disclosed, for purposes of transparency, various matters herein related to the CPO, the Debtors or the Debtors' estates.

20. Out of an abundance of caution, WilmerHale hereby discloses that its partners, counsels, associates and paraprofessionals may have been customers of the Debtors, and as such may hold claims against the Debtors, including, but not limited to the Cyber Security Incident. To the extent that I am aware of any WilmerHale employee that is a claimant against the Debtors now, or that I become aware of during WilmerHale's representation of the CPO, WilmerHale will establish a screen between such employee and the employees representing the CPO, and such attorney will not participate in WilmerHale's representation of the CPO.

21. As part of its preparations for commencing these chapter 11 cases and filing the Application, the Debtors filed a potential parties in interest list in these chapter 11 cases [Docket No. 31] (the "Potential Parties in Interest"), which is attached to this Declaration as Schedule 1. WilmerHale's conflicts databases were searched for the Potential Parties in Interest that are or have been clients in at least the past three (3) years. Based on the results of that search, WilmerHale has identified the Potential Parties in Interest that, during that period, WilmerHale has represented and currently represents in Schedule 2 (the "Disclosure Schedule") attached hereto. None of the representations disclosed in the Disclosure Schedule are materially adverse to the interests of the CPO, the Debtors or the Debtors' estates with respect to the CPO Counsel Matters. As such, I do not believe that WilmerHale's current or prior representations of such entities or their affiliates preclude WilmerHale's retention by the CPO pursuant to section 327 of the Bankruptcy Code.

22. In the event that WilmerHale must become adverse to any party listed on the Disclosure Schedule that is a current client of WilmerHale, WilmerHale will rely on applicable waivers on file or seek a waiver from such entity allowing WilmerHale to be adverse to such party.

To the extent that a waiver does not exist or is not obtained from such party and it is necessary for the CPO or the Debtors to be adverse to that party in a matter, WilmerHale will not be involved and the CPO or the Debtors will be represented in such particular matter by separate counsel.

23. WilmerHale lawyers and staff, and their family members, may hold investments directly or indirectly in entities that are Potential Parties in Interest. In addition, certain WilmerHale attorneys may hold interests in certain passive investment vehicles (such as blind trusts, mutual funds, or other similar funds as to which the investor has no discretion as to the selection of the individual underlying assets), which in turn hold or may hold equity interests or other securities of certain Potential Parties in Interest. WilmerHale has a long-standing policy prohibiting all personnel from using confidential information that may come to their attention in the course of their work. In this regard, and consistent with the Firm's Securities and Trading Policy, all WilmerHale personnel are barred from trading in securities with respect to which the Firm possesses confidential information. Further, it is possible that a professionally managed retirement plan on behalf of WilmerHale's attorneys, or a 401(k)-type plan or other professionally managed investment vehicles owned by WilmerHale attorneys, may hold equity interests or other securities of certain Potential Parties in Interest.

24. WilmerHale, which has over 1,000 attorneys, has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations, some of which may be claimants in the Debtors' chapter 11 cases or otherwise have an interest in such cases. In addition, as part of its practice, WilmerHale appears in cases, proceedings and transactions involving many different attorneys and accountants, some of whom may represent claimants or other parties in interest in the Debtors' chapter 11 cases. WilmerHale also represents and interacts with various governmental entities and authorities, both within and

outside the United States, which may in turn have relationships, whether commercial or regulatory or otherwise, with the Debtors. Given the size of WilmerHale's practice, it is virtually impossible to conceive of a significant chapter 11 case in which at least some of WilmerHale's current or former clients or other relationship parties, or their attorneys and accountants, would not have business or other relationships with or hold claims against the Debtors. However, based on my experience, and on that of my partners representing debtors, creditors, and trustees in chapter 11 cases, the fact that some current or former clients or other relationship parties of WilmerHale, or their attorneys and accountants, may hold claims against the Debtors or have other relationships with the Debtors will not impair WilmerHale's ability to represent the Debtors in these chapter 11 cases with respect to the CPO Counsel Matters, so long as WilmerHale does not hold or represent any interest adverse to the Debtors in respect of the CPO Counsel Matters.

25. WilmerHale may have referred and may, from time to time, refer matters to certain of the Debtors' professionals and the professionals representing other parties in interest in the chapter 11 cases. Furthermore, certain of the Debtors' professionals and the professionals representing other parties in interest in the Debtors' chapter 11 cases may have referred and may, from time to time, refer matters to WilmerHale. These occasional referrals to or from other professional firms would in no way impair WilmerHale's ability to represent its client in any particular matter, including these chapter 11 cases.

26. WilmerHale and many of its attorneys and employees, and their family members, are likely to maintain direct or indirect commercial, consumer, customer, or taxpayer relationships, or maintain credit facilities or pension, insurance, investment or depository accounts with one or more of the Potential Parties in Interest and/or their affiliates. Based on my experience and on that of my partners representing debtors, creditors, and trustees in chapter 11 cases, such relationships

will not impair WilmerHale's ability to represent the CPO in these chapter 11 cases with respect to the CPO Counsel Matters.

27. Based on information currently available to me after reasonable inquiry, I am unaware of any partner, counsel or associate of WilmerHale who has any other connection with any United States Bankruptcy Judge for the Eastern District of Missouri, the United States Trustee for Region 13, the attorney for the United States Trustee assigned to these chapter 11 cases or any other employee of the Office of the United States Trustee in Region 13. WilmerHale will update this Declaration as necessary if and when WilmerHale becomes aware of any additional material information, other than the connections that any law firm or its lawyers and staff might normally have with such individuals and entities in the ordinary course of business.

28. Further, for purposes of transparency, WilmerHale may have represented in the past and/or may currently represent or in the future represent entities (other than Potential Parties in Interest) not currently known to WilmerHale or inadvertently not set forth herein who may be parties in interest in these cases. To the extent that any new relevant facts or relationships bearing on the matters in which WilmerHale seeks to represent the CPO are discovered during the period of WilmerHale's retention, WilmerHale will use reasonable efforts to promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).

29. Based upon my review of all of WilmerHale's connections in these chapter 11 cases, I submit that WilmerHale is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, in that the Firm, its partners, counsel and associates:

a. Are not creditors, equity holders, or insiders of the Debtors;[4]

[4] Consistent with the foregoing, to the extent that I become aware of any partner, counsel, associate, or paraprofessional of WilmerHale that is now or later becomes a creditor of the

b. Are not and were not investment bankers for any outstanding security of the Debtors;

c. Have not been, within three years before the Petition Date, (i) investment bankers for a security of the Debtors or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; and

d. Are not and were not, within two years before the Petion Date, a director, officer, or employee of the Debtors or of any investment banker as specified in subparagraph (b) or (c) of this paragraph.

30. As far as I have been able to ascertain after due inquiry, except as set forth above, to the best of my knowledge, WilmerHale does not represent or hold any interest adverse to the CPO, the Debtors or to the Debtors' estate with respect to the CPO Counsel Matters.

31. Based upon the foregoing, I believe that WilmerHale and the professionals it employs are qualified to represent the CPO with respect to the CPO Counsel Matters for which WilmerHale is proposed to be retained and employed.

**Attorney Statement Pursuant to Fee Guidelines**

32. The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Fee Guidelines:

a. **Question: Did you agree to any variations from, or alternatives to, your standard billing arrangements for this engagement?**

**Answer**: No. WilmerHale and the CPO have not agreed to any variations from, or alternatives to, WilmerHale's standard billing arrangements for this engagement. The rate structure provided by WilmerHale is appropriate and is not significantly different from (a) the rates that WilmerHale charges for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

b. **Question: Do any of the professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?**

Debtors, WilmerHale will screen off such person from this matter and such person will not participate in WilmerHale's representation of the CPO.

**Answer**: No. The hourly rates used by WilmerHale in representing the CPO are consistent with the rates that WilmerHale charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

c. **Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.**

**Answer**: WilmerHale has not represented the CPO or the Debtors in the 12 months prior to the Petition Date.

d. **Question**: **Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?**

**Answer**: No.

33. The foregoing constitutes the statement of WilmerHale pursuant to standards equivalent to those set forth in sections 327(a) and 330 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014 and 2016.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: May 13, 2025

Respectfully submitted,

*/s/ Andrew N. Goldman*
Andrew N. Goldman

**Schedule 1**

**Potential Parties in Interest**

**POTENTIAL PARTIES IN INTEREST**[1]

1. (FINANCIAL ADVISOR TO) POTENTIAL BUYER
   - JPMORGAN SECURITIES LLC
   - TD COWEN
2. (LEGAL COUNSEL TO) POTENTIAL BUYER
   - ROPES & GRAY LLC
   - SKADDEN, ARPS, SLATE, MEAEGHER & FLOM LLP
3. BANKRUPTCY JUDGES/STAFF
   - CATHERINE NORWOOD
   - CHICQUITA GREENE-HESTER
   - CHIEF JUDGE BONNIE L. CLAIR
   - COURTNEY KIRBIS
   - HAYLEY KOONTZ
   - JUDGE BRIAN C. WALSH
   - JUDGE KATHY A. SURRATT-STATES
   - KAILA SPIVEY
   - TAYLOR ROWLAND
4. BANKRUPTCY PROFESSIONALS - RETAINED
   - ALVAREZ AND MARSAL NORTH AMERICA, LLC
   - CARMODY MACDONALD P.C.
   - DELOITTE TAX LLP
   - GOODWIN PROCTER LLP
   - KROLL RESTRUCTURING ADMINISTRATION LLC
   - LEWIS RICE LLC
   - MOELIS & COMPANY LLC
   - PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
5. BANKS/LENDER/UCC LIEN PARTIES/ADMINISTRATIVE AGENTS
   - CARDINAL HEALTH 110 LLC, "AS AGENT"
   - JPMORGAN CHASE BANK N.A.
   - JPMORGAN CHASE BANK N.A. - TORONTO BRANCH
   - SMITH DRUG COMPANY-DIVISION OF JM SMITH CORP.
   - U.S. BANK EQUIPMENT FINANCE
   - U.S. BANK NATIONAL ASSOCIATION
6. COUNSEL REPRESENTING CYBER SECURITY INCIDENT CLAIMANTS
   - ARON LAW FIRM
   - AYLSTOCK, WITKIN, KREIS, & OVERHOLTZ PLLC
   - BARNOW & ASSOCIATES P.C.
   - BERMAN TOBACCO

[1] This list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose. As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible. Accordingly, a party that otherwise may fall under multiple categories is likely to be listed under only one category.

- BONI, ZACK & SNYDER LLC
- BOTTINI & BOTTINI, INC.
- BRADLEY/GROMBACHER LLP
- CLARKSON LAW FIRM
- CLAYEO C. ARNOLD, PROFESSIONAL LAW CORP.
- COLE & VAN NOTE
- COTCHETT PITRE & MCCARTHY LLP
- CUNEO GILBERT & LADUCA
- DU VERNET STEWART
- EDELSBERG LAW, P.A.
- EMPLOYEE JUSTICE LEGAL GROUP, PC
- FALLS LAW GROUP
- FEDERMAN & SHERWOOD
- FREED KANNER LONDON & MILLEN LLC
- GLANCY PRONGAY & MURRAY LLP
- GUSTAFSON GLUEK PLLC
- HERMAN JONES LLP
- KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.
- KAPLAN FOX & KILSHEIMER LLP
- KAZEROUNI LAW GROUP
- KLEINE PC
- KOPELITZ OSTROW FERGUSON WEISELBERG GILBERT
- KP LAW LTD. (UK)
- LABATON KELLER
- LAUKAITIS LAW LLC
- LAW OFFICE OF COURTNEY WEINER PLLC
- LAW OFFICES OF PAUL WHALEN, PC
- LEVI & KORSINSKY
- LEVIN SEDRAN & BERMAN LLP
- LEXINGTON LAW GROUP, LLP
- LIEFF CABRASER HEIMANN & BERNSTEIN AND ROBBINS GELLER
- LOCKRIDGE GRINDAL NAUEN P.L.L.P.
- LOFTUS & EISENBERG, LTD.
- LONGMAN LAW, P.C.
- LYNCH CARPENTER LLP
- MASON LLP
- MCSHANE & BRADY, LLC
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC
- NEAL & HARWELL
- PIERCE GORE LAW FIRM
- POTTER HANDY LLP
- POULIN | WILLEY | ANASTOPOULO, LLC
- REESE LLP

- ROBBINS GELLER RUDMAN & DOWD, LLP
- SALTZ, MONGELUZZI & BENDESKY, PC
- SCHUBERT JONCKHEER & KOLBE LLP
- SCOTT+SCOTT ATTORNEYS AT LAW LLP
- SROURIAN LAW FIRM, P.C.
- THE GRANT LAW FIRM, PLLC
- THE MEHDI FIRM LLP
- TOSTRUD LAW GROUP PC
- TYCKO & ZAVAREEI
- TYCKO & ZAVAREEI, LLP
- WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP
- WUCETICH & KOROVILAS LLP
- YANNI LAW
- ZINNS LAW, LLC

**7.** CUSTOMERS
- ABBVIE INC.
- AMAZON
- AMAZON : AMAZON CA
- AMAZON : AMAZON UK
- AMAZON : WOOT
- CARDINAL HEALTH, INC.
- COREWEAVE, INC.
- GLAXOSMITHKLINE & GLAXOSMITHKLINE LLC
- GSK
- MICHAEL J FOX FOUNDATION : MJFF PD
- MYHERITAGE
- SANOFI US SERVICES INC.
- WALMART.COM

**8.** DEBTORS
- 23 AND ME
- 23ANDME HOLDING CO.
- 23ANDME INC.
- 23ANDME PHARMACY HOLDINGS, INC.
- LEMONAID COMMUNITY PHARMACY
- LEMONAID HEALTH INC.
- LEMONAID PHARMACY HOLDINGS, INC.
- LPHARM CS LLC
- LPHARM INS LLC
- LPHARM RX LLC
- LPRXONE, LLC
- LPRXTHREE LLC
- LPRXTWO, LLC

**9.** DIRECTOR/OFFICER
- ANDRE FERNANDEZ

- AVI FACTOR
- ELAND SIDDLE
- GUY CHAYOUN
- JIM FRANKOLA
- JOE SELSAVAGE
- MARK JENSEN
- THOMAS WALPER

**10.** INSURANCE

- AIG FINANCIAL LINES CLAIMS
- ALLIED WORLD SPECIALTY INSURANCE COMPANY
- ARCH SPECIALTY INSURANCE COMPANY
- AXIS INSURANCE
- BEAZLEY USA SERVICES, INC
- BERKLEY LIFE SCIENCES
- BERKLEY PROFESSIONAL LIABILTY
- CHUBB GROUP
- CHUBB GROUP OF INSURANCE CO
- CNA CLAIMS REPORTING
- COMMERCIAL MANAGEMENT LIABILITY
- GREAT AMERICAN INSURANCE COMPANY
- HCC GLOBAL FINANCIAL PRODUCTS, LLC.
- HISCOX USA
- HUDSON INSURANCE COMPANY
- LLOYD'S AMERICA, INC.
- OLD REPUBLIC PROFESSIONAL LIABILITY, INC.
- RESILIENCE CYBER INSURANCE SOLUTIONS
- THE HARTFORD FINANCIAL LINES
- THE TRAVELERS COMPANIES, INC.
- TRIUM CYBER US SERVICES, INC.
- WOODRUFF SAWYER
- XL PROFESSIONAL INSURANCE

**11.** KNOWN AFFILIATES - JV

- LMND CA
- LMND KS
- LMND NJ
- LMND TX

**12.** LANDLORDS/ SUBTENANTS

- KR OP TECH, LLC
- OYSTER POINT TECH CENTER LLC, A DELEWARE LIMITED LIABILITY COMPANY

**13.** LETTER OF CREDIT- BENEFICIARY

- 221 N MATHILDA, LLC, A DELEWARE LIMITED LIABILITY COMPANY
- PAYPAL, INC.

**14.** LITIGATION

- ADRIANE FARMER
- ALEX VELARDE
- ALEXANDRA HOFFMAN
- ALMEIDA LAW GROUP LLC
- ALYSON HU
- ANDEZ JONES
- ANTOINETTE POWELL
- BONNIE EDEN
- BRANDON MOLINA
- BRIANA DUBE
- BRIANNA SORENSEN
- CAMIE PICHA
- CAROLINE GREENBERG
- CAROLYN ROCK
- CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP
- CHRISTINA SHAW
- CHRISTOPHER DU VERNET CARLIN MCGOOGAN DUVERNET STEWART, BARRISTERS AND SOLICITERS
- CLAIRE PADDY
- DAVID MELVIN
- DAVID TULCHINSKY
- DHAMAN GILL
- EDELSON PC
- ELAINE FRALIX
- ERIK STANFORD
- FALLS LAW GROUP
- HARIS MIRZA
- HAROLD GARRETT
- HAROLD VELEZ
- JOHN DIAZ
- JULIE MACMILLAN
- KATHY VASQUEZ
- KATIANNE NAVARRO
- KELLER ROHRBACK L.L.P.
- KERRY LAMONS
- KND COMPLEX LITIGATION
- KP LAW LIMITED
- KRISTEN RIVERS
- LABATON KELLER SUCHAROW LLP
- LAQUISHA SMITH
- LEENA YOUSEFI YLAW GROUP
- LEVI + KORSINSKY LLP
- LUIS VALLADARES
- MARJORIE MORGENSTERN

- MATTHEW A. SMITH
- MATTHEW MARDEN
- MAX ALPERSTEIN
- MCGUIRE LAW, P.C.
- MELANIE BERMAN
- MELISSA RYAN
- MICHAEL SCHUTZ
- MICHELE BACUS
- MICHELLE ANDRIZZI
- MICHELLE IGOE
- MIGLIACCIO & RATHOD LLP
- MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLC
- MONICA SANTANA
- NEIL BENEDICT
- NICHOLAS FURIA
- NICHOLE FRIEND
- PATRICK CAPSTICK
- POLINA IOFFE
- POTTER HANDY, LLP
- RICHARD ROE
- RUDY K. THOMPSON
- SARAH CANTU
- STEPHEN L. SEIKEL
- STEVE SIEGEL HANSON LLP
- THOMAS VICKERY
- TRACY SCOTT
- TRISHA WILKUS
- TYRELL BROWN

**15.** POTENTIAL BUYER

- NEW MOUNTAIN CAPITAL, LLC

**16.** REGULATORS

- AGENCIA ESPAÑOLA DE PROTECCIÓN DE DATOS
- BUREAU OF CONSUMER PROTECTION
- FEDERAL TRADE COMMISSION
- OFFICE OF ATTORNEY GENERAL TODD ROKITA
- OFFICE OF THE ATTORNEY GENERAL - CONNECTICUT
- OFFICE OF THE PRIVACY COMMISSIONER OF CANADA
- UNITED KINGDOM INFORMATION COMMISSIONER’S OFFICE

**17.** SIGNIFICANT EQUITY HOLDERS

- ABEEC 2.0, LLC
- ANNE WOJCICKI
- ZENTREE INVESTMENTS LIMITED

**18.** U.S. TRUSTEE OFFICE

- PAUL RANDOLPH

**19.** VENDORS (TOP 85% OF ACCOUNTS PAYABLE)

- ACCO ENGINEERED SYSTEMS
- AGANITHA AI INC.
- ALIXPARTNERS, LLC
- ALLIED UNIVERSAL SECURITY SERVICES
- ALOM TECHNOLOGIES CORPORATION
- AMAZON WEB SERVICES
- ANDRE JOHN FERNANDEZ
- BDO USA LLP
- BLUE SHIELD OF CALIFORNIA
- BRAINTREE
- CATALENT CTS SINGAPORE PRIVATE LIMITED
- CDW DIRECT LLC
- CLOUDFLARE, INC.
- COALITION FOR GENETIC DATA PROTECTION INC.
- CONSULTING, JW LLC
- CONVERGE TECHNOLOGY SOLUTIONS US, LLC
- DECHERT LLP
- DELOITTE & TOUCHE LLP
- DELOITTE CONSULTING LLP
- DELTA DENTAL OF CALIFORNIA
- DNA GENOTEK INC.
- EGON ZEHNDER INTERNATIONAL, INC
- FEDEX CORP
- FOLK DEVILS LLC
- FOODA, INC.
- FULGENT THERAPEUTICS, LLC
- GLAXOSMITHKLINE INTELLECTUAL PROPERTY LTD.
- GOODWIN PROCTER LLP
- GOOGLE, INC. - ADWORDS
- GREENBERG TRAURIG LLP
- HEALTHLINE MEDIA INC
- IHEARTMEDIA + ENTERTAINMENT
- ILLUMINA, INC.
- INTEGRAL RX
- JELLYFISH US LIMITED
- KAISER FOUNDATION HEALTH PLAN NORTHERN CA
- KATIE COURIC MEDIA, LLC
- KILROY REALTY, LP
- KPMG LLP
- L.E.K. CONSULTING LLC
- LIFEBIT BIOTECH LIMITED
- MARK E. JENSEN
- MEDPACE INC.

- META PLATFORMS, INC.
- METROPOLITAN LIFE INSURANCE COMPANY
- MOELIS & COMPANY, LLC
- MORGAN, LEWIS & BOCKIUS LLP
- MOVIANTO
- NATIONAL GENETICS INSTITUTE
- PACIFIC GAS AND ELECTRIC COMPANY
- PARTNERIZE
- PETER M LEFKOWITZ
- POWER DIGITAL MARKETING, INC.
- PRECISION FOR MEDICINE, INC.
- PRITI PATEL CONSULTING LLC
- RAIN THE GROWTH AGENCY
- RIGHT SIDE UP LLC
- SALESFORCE.COM
- SANTA CLARA COUNTY TAX COLLECTOR
- SCALE STRATEGY OPERATIONS LLC
- SCG GROVE 221, LLC
- STEADYMD, INC.
- SUREFOX NORTH AMERICAN
- TANGO CARD, INC.
- TATARI, INC.
- TCWGLOBAL (WMBE PAYROLLING INC.)
- TELUS INTERNATIONAL SERVICES LIMITED
- UNUM LIFE INSURANCE COMPANY OF AMERICA
- VENTANA MEDICAL SYSTEMS, INC.
- WILSON SONSINI GOODRICH & ROSATI, PROFESSIONAL CORPORATION
- WOODRUFF-SAWYER & CO.
- WOOT SERVICES LLC
- WORLD ARCHIVES
- WUXI BIOLOGICS (HONG KONG) LIMITED
- ZENDESK, INC

**Schedule 2**

**Disclosure Schedule**

| Matched Entity | Relationship to Debtors | Relationship to WilmerHale |
|---|---|---|
| AbbVie Inc. | Customer | Subsidiary or Affiliate of Current Client |
| American International Group, Inc. | Insurance | Current Client |
| Blue Shield of California Life & Health Insurance Co. | Vendor | Current Client |
| Braintree Laboratories, Inc. | Vendor | Current Client |
| Chubb Group of Insurance Co. | Insurance | Current Client |
| Deloitte LLP | Vendor | Current Client |
| Delta Dental of California | Vendor | Subsidiary or Affiliate of Current Client |
| GlaxoSmithKline plc | Customer | Current Client |
| Google, Inc. - Adwords | Vendor | Subsidiary or Affiliate of Current Client |
| JPMorgan Securities LLC | Bank | Current Client |
| KPMG L.L.P. | Vendor | Current Client |
| Meta Platforms, Inc. | Vendor | Current Client |
| Metropolitan Life Insurance Company | Vendor | Current Client |
| Moelis & Co. | Vendor | Current Client |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP | Bankruptcy Professional | Current Client |
| PayPal, Inc. | Letter of Credit – Beneficiary | Current Client |
| Ventana | Vendor | Subsidiary or Affiliate of Current Client |
| Salesforce.com, Inc. | Vendor | Current Client |
| United Kingdom Information Commissioner's Office | Regulator | Subsidiary or Affiliate of Current Client |
| Walmart Inc. | Customer | Current Client |