**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976-357 |
| Debtors. | (Jointly Administered) |

**MOTION FOR ENTRY OF AN ORDER**
**(A) (I) ENFORCING THE AUTOMATIC STAY OR (II) , IN THE ALTERNATIVE,**
**EXTENDING THE AUTOMATIC STAY; AND (B) ENJOINING THE CONTINUED**
**PROSECUTION OF THE CANADIAN PROCEEDINGS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases"), by and through the undersigned counsel, hereby move this Court for entry of an order (a) (i) confirming that the automatic stay under section 362 of title 11 of the United States Code (the "Bankruptcy Code") prohibits the continued prosecution of the below-defined Canadian Proceedings, including as against the below-defined Additional Defendants, or, in the alternative, or (ii) in the alternative, extending the automatic stay to the Additional Defendants in the Canadian Proceedings, and (b) enjoining, pursuant to section 105 of the Bankruptcy Code, the continued prosecution of the Canadian Proceedings, including against the below-defined Additional Defendants during the pendency of these Chapter 11 Cases (the "Motion"). Respondents J.R. and M.M. (together, "Respondents") are named plaintiffs in two class action lawsuits filed in the Supreme Court of British Columbia against Debtors 23andMe

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

Holding Co. and 23andMe, Inc. (together, "23andMe") and the Additional Defendants, based on a cybersecurity breach of the Debtors' customer data systems. *J.R. & M.M.* v. *23andMe Holding Co., et al.*, No. VLC-S-S-2465520 (Can. B.C. S.C.) (the "Debtor and D&O Action"); *J.R.* v. *23andMe Holding Co. & 23andMe, Inc.*, No. S237147 (Can. B.C. S.C.) (the "Debtor Action" and, together with the Debtor and D&O Action, the "Canadian Proceedings").   In support of this Motion, and upon the *Declaration of Max H. Siegel* ("Siegel Decl.") and *Declaration of Mary Buttery* ("Buttery Decl.") filed contemporaneously herewith, Debtors respectfully state and allege as follows:

## PRELIMINARY STATEMENT

1.      Respondents' Canadian Proceedings bring claims based on identical conduct—the Cyber Security Incident defined below—to the class action pending in the U.S. District Court for the Northern District of California, *In re 23andMe, Inc. Customer Data Sec. Breach Litig.*, Case No. 24-md-3098 (N.D. Cal.), and numerous state court lawsuits and arbitrations commenced in the United States, which are the subject of pre-petition settlement agreements (collectively, the "U.S. Actions").  *See* Buttery Decl. ¶¶ 2–3.  But, although the Canadian Proceedings are based on the same underlying conduct as the U.S. Actions, they also go further than any of the U.S. Actions by naming as defendants certain current and former directors, officers, and employees of the Debtors, as well as the Debtors' auditor, KPMG LLP (United States) ("KPMG").  *See id.* ¶ 2. Although the Canadian Proceedings name additional defendants, they do not plead any claims or liability theories against those individuals that are different from the claims asserted against the Debtors.  *Id.* ¶ 16.

2.      By prosecuting these claims against the Debtors in a foreign forum, the Canadian Proceedings threaten the orderly administration of the Chapter 11 Cases, and impair the value of

the Debtors' assets.  The plaintiffs in the Canadian Proceedings also cannot avoid application of the automatic stay through artful pleading against the Additional Defendants based on conclusory allegations that the Additional Defendants are all "co-principals and/or co-conspirators" with the Debtors.  *See* Buttery Decl., Ex. C. ¶¶ 6, 9, 47.  The Canadian Proceedings and the claims against the Additional Defendants are all premised on the alleged liability of the Debtors for a cyber security incident, and those claims cannot possibly proceed without causing harm to the Debtors, or without the participation of the Debtors.

3.      Respondents first filed the Debtor Action against 23andMe, which is unquestionably subject to the automatic stay.  Respondents later filed the Debtor and D&O Action, which merely names the Additional Defendants in addition to the Debtors, and are currently seeking leave to add the Additional Defendants to the Debtor Action.  Buttery Decl. ¶ 22.  Although there are two Canadian Proceedings, they are for all intents and purposes asserting the same claims, on behalf of the same putative class.  *See id.* ¶ 3; *compare* Buttery Decl., Ex. A ¶ 16 (Debtor Action class definition), *with* Buttery Decl., Ex. C ¶ 17 (Debtor and D&O Action class definition).  The two cases contain duplicative claims against the Debtors, and the Debtor and D&O Action also names as defendants Anne Wojcicki, Roelof Botha, Patrick Chung, Peter J. Taylor, and David Baker (collectively, the "Individual Defendants")—who are current and former directors, officers, and employees of the Debtors—and the Debtors' auditor, KPMG (together with the Individual Defendants, the "Additional Defendants").  Buttery Decl. ¶ 2.  All the claims against the Additional Defendants are also asserted against the Debtors.  *Id.* ¶ 16.  Respondents apparently dispute whether the automatic stay of 11 U.S.C. § 362 applies.  Indeed, as described further below, they recently filed a proposed amended pleading in the Debtor Action, which adds the Additional

Defendants but continues to assert claims against the Debtors, in clear violation of the automatic stay. *See id.* ¶ 18; Buttery Decl., Ex. D (proposed amended pleading).

4.      Respondents' claims against the Additional Defendants are indistinguishable from the claims against the Debtors, and so any further prosecution of the Additional Defendants for those claims would, in substance, allow claims against the Debtors outside of the Chapter 11 Cases. Moreover, the Debtors have indemnification obligations to the directors and officers named as Individual Defendants—including for damages and litigation expenses, including attorneys' fees—and thus the prosecution of claims against them threatens the assets of the estate and the interests of creditors as well. *See* Siegel Decl., Ex. A at 11 § 8.2(a); Siegel Decl., Ex. C at 4 § 9(2)(a).

5.      Discovery obligations in the Canadian Proceedings—for claims against the Debtors, the Individual Defendants, or KPMG—will also disrupt the operations and value of the Debtors, as well as the ability of their directors and officers to perform their duties diligently during the Chapter 11 Cases. Discovery has not yet occurred in the Canadian Proceedings and the relevant documents regarding the underlying Cyber Security Incident are in the possession of the Debtors. And the adjudication of the Canadian Proceedings Action against the Additional Defendants without the participation of the Debtors threatens to prejudice the Debtors with respect to defenses they would otherwise assert in the Canadian Proceedings.

6.      Because the Canadian Proceedings, including with respect to the Additional Defendants, threaten the Debtors and the Chapter 11 Cases, they violate the automatic stay, and the Debtors respectfully request that the Court enter an order to that effect. In the alternative, the Debtors respectfully request that the Court extend the automatic stay to apply to the Additional Defendants with respect to the claims asserted against them in the Canadian Proceedings. The

Debtors further respectfully request that the Court enter an injunction prohibiting the continued prosecution of the Canadian Proceedings, including as against the Additional Defendants.

## JURISDICTION AND VENUE

7.  The Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Arising-under and arising-in jurisdiction exist over this action because this Motion seeks to confirm that the automatic stay bars the claims against the Additional Defendants in the Canadian Proceedings. Related-to jurisdiction exists over the claims against the Debtors and the non-debtor Additional Defendants because (i) the Motion concerns claims against the Debtors that unquestionably violate the automatic stay, (ii) the Debtors and the Additional Defendants (as defined below) share an identity of interest, and (iii) continued prosecution of the Canadian Proceedings would divert critical estate resources away from the Debtors' Chapter 11 Cases.

8.  Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

9.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. The Debtors previously filed the *Debtors' Adversary Complaint for Declaratory and Injunctive Relief*, ECF No. 230 (the "Adversary Complaint"), seeking the relief sought herein. The Debtors and the Respondents subsequently agreed to litigate the relief sought herein via motion practice, as opposed to an adversary complaint. Pursuant to the *Stipulation of Dismissal Without Prejudice*, entered on May 20, 2025, the Debtors withdrew the Adversary Complaint without prejudice, and Respondents consented to the Debtors' seeking such relief by motion. *23&me Holding Co.* v. *J.R.*, Adv. Proc. No. 25-04011 (Bankr. E.D. Mo.), ECF No. 4.

5

## BACKGROUND

**I.     The Debtors' Business and the Additional Defendants**

11.     As further set forth in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions*, Case No. 25-40976 (Bankr. E.D. Mo.), ECF No. 32, which the Debtors expressly incorporate by reference herein, the Debtors operate, among other things, a leading human genetics and telehealth company with a mission to help people access, understand, and benefit from the human genome.  The Debtors pioneered direct-to-consumer genetic testing through their saliva collection kits, providing customers with access to unique, personalized information about their ancestry, genetic traits, and health risks through their Personal Genome Service® offerings.

12.     Anne Wojcicki is the co-founder, former chair (and current member) of the board of directors, and former chief executive officer of 23andMe.

13.     Roelof Botha is a former director of 23andMe and a former member of its audit committee.

14.     Patrick Chung is a former director of 23andMe and a former member of its audit committee.

15.     Peter J. Taylor is a former director of 23andMe and the former chair of its audit committee.

16.     David Baker is a former employee who served as the chief security officer of 23andMe.

17.     KPMG has provided services as the Debtors' auditor.

## II.      The Cyber Security Incident

18.      On October 1, 2023, a threat actor posted online a claim to have 23andMe users' profile information (the "Cyber Security Incident").  Upon learning of the incident, the Company immediately commenced an investigation and engaged third-party incident response experts to assist in determining the extent of any unauthorized activity.  Based on its investigation, the Company determined the threat actor was able to access a very small percentage (0.1%) of user accounts in instances where usernames and passwords that were used on the Company website were the same as those used on other websites that had been previously compromised or were otherwise available.  Through their access to the foregoing accounts, the threat actor accessed files containing information that users consented to share when opting into certain 23andMe service offerings.  Accordingly, the Company determined that the threat actor ultimately accessed, without authorization, personal information relating to approximately seven million customers.  *See* Kvarda Decl. ¶ 64.

19.      The Cyber Security Incident resulted in numerous actions being filed or threatened against the Company in United States federal and state courts, Canada, and the United Kingdom, as well as the initiation of various domestic and foreign governmental investigations.

## III.     Respondents Bring Litigation Against the Debtors and the Additional Defendants

20.      Respondents are purported customers of 23andMe.  They claim to have purchased and used its products.  Buttery Decl. ¶ 3.  Following the Cyber Security Incident, Respondents brought two class action litigations against 23andMe and the Individual Defendants related to the Cyber Security Incident.  *Id.* ¶ 2.

21.      On October 20, 2023, Respondents filed the Debtor Action against 23andMe in the Supreme Court of British Columbia.  *Id.* ¶ 5.  They asserted claims related to the Cyber Security Incident and brought claims for breaches of provincial privacy legislation, intrusion upon

seclusion, breaches of provincial consumer legislation, breach of contract, negligence, and breach of the Competition Act. *Id.* ¶ 6. Then, nearly a year later, they sought to amend their pleading to add the Additional Defendants. *Id.* ¶ 10. At that stage in the proceedings, under Canadian law, leave of court would have been required to add additional defendants. *See id.* ¶ 11. Rather than seek leave of court, Respondents instead filed the Debtor and D&O Action. *Id.* ¶ 15.

22.     The Debtor and D&O Action, filed on September 18, 2024, names 23andMe, the Individual Defendants, and KPMG as defendants. Buttery Decl., Ex. C ¶¶ 18–20, 34–40. The Debtor and D&O Action brings many duplicative claims against 23andMe. Buttery Decl. ¶ 16. It also names the Individual Defendants and KPMG as defendants to these very same claims—that is, there is no claim against the Individual Defendants and/or KPMG in which the Debtors are not also defendants. *Id.* For the avoidance of doubt, the Debtor and D&O Action is not a separate lawsuit where directors and officers are alleged to have breached any duty apart from any duty owed by the Debtors to their customers. *See id.* Nor, for that matter, are there any unique claims against the Additional Defendants alone. *Id.* Instead, the Additional Defendants are merely co-defendants in a large subset of the claims against the Debtors—the same claims alleged in the Debtor Action. *Id.*

23.     The Debtor and D&O Action alleges that the Debtors and the Additional Defendants willfully, knowingly, recklessly, deliberately, and purposefully maintained improper data retention and protection measures and practices. *See* Buttery Decl., Ex. C ¶¶ 9–10, 119–32. This purportedly resulted in the availability of class members' data for sale on the dark web. *Id.* ¶ 66. Respondents here, the plaintiffs in the Canadian Proceedings, have brought the Debtor and D&O Action on behalf of a putative class of "[a]ll natural persons residing or domiciled in Canada whose sensitive personal information was accessed by unauthorized parties or otherwise

compromised in the course of or as a result of the Data Breach." *Id.* ¶ 11.  This is the exact same putative class as in the Debtor Action.  *See* Buttery Decl., Ex. A ¶ 16.   Respondents here, the plaintiffs in the Canadian Proceedings, assert claims jointly against 23andMe and the Individual Defendants claims for breach of provincial privacy legislation, intrusion upon seclusion, negligence, and breach of the Competition Act.  Buttery Decl., Ex. C ¶ 13.  They assert additional causes of action against 23andMe, including breach of provincial consumer legislation and breach of the terms of services.  *Id.*  These too overlap with the claims asserted in the Debtor Action.

24.     Respondents here, the plaintiffs in the Canadian Proceedings, allege that they suffered harms, damages, and losses as a result of 23andMe and the Additional Defendants' conduct, including economic loss; loss of valuable, confidential information; damages from identity fraud schemes; non-pecuniary harms, including emotional distress and anxiety; out-of-pocket expenses; loss of valuable time and resources; and exposure to a real risk of significant harm as a result of the exposure of highly sensitive personal and commercial information.  *Id.* ¶¶ 159–65.

25.     In the Canadian Proceedings, they seek "monetary compensation to the Class for general, compensatory, consequential, symbolic, moral, aggravated, punitive or other forms of damages, whether statutory, at common law and/or equity, on an aggregated basis to the fullest extent possible," pre- and post-judgment interest, and expenses.  Buttery Decl., Ex. C, part 2, ¶ 1. They claim entitlement to "monetary awards or compensation under common law, statutory and/or equitable headings of damages," as well as "disgorgement," "accounting," or "such other restitutionary relief as may be available for all revenues or profits generated by the Respondents from, as a result of, or reasonably connected with its [*sic*] violations contractually and at law to protect their private information."  Buttery Decl., Ex. C, part 3, ¶¶ 64–65.

26.     All of the claims against the Individual Defendants are identical to claims brought against the Debtors in both the Debtor Action and the Debtor and D&O Action.  Buttery Decl. ¶ 16.  The Debtors are necessary parties in the Debtor and D&O Action, but the Debtor and D&O Action, like the Debtor Action, is unquestionably stayed as to the Debtors by operation of the automatic stay.  Resolution of the claims in the Debtor and D&O Action and any underlying issues without the participation of the Debtors may be prejudicial to the Debtors' right to present a defense in each of the Canadian Proceedings.

27.     Any documents and communications relevant to Respondents' claims against the Additional Defendants are in the Debtors' possession.  All of the claims in the Canadian Proceedings are based on conduct by the Debtors, and thus any discovery would be in the Debtors' possession.  The claims in the Canadian Proceedings do not allege any actions by the Individual Defendants other than participating in the Debtors' conduct and do not allege any conduct by KPMG.  Thus, the Additional Defendants will not possess any discoverable materials.  By allowing the Debtor and D&O Action to proceed, the Debtors could become subject to costly and burdensome discovery obligations—disrupting the Debtors' operations, depleting the value available to creditors, and interfering with the prompt and orderly disposition of the Chapter 11 Cases.

28.     Transparently, the claims against the Additional Defendants are an effort to avoid the automatic stay and recover from the Additional Defendants for alleged misconduct by the Debtors.  Not only did Respondents file the Debtor Action followed by the Debtor and D&O Action, asserting the same claims against both the Debtors and the Additional Defendants; they have since sought to amend the complaint in the Debtor Action to a near copycat of their complaint in the Debtor and D&O Action.  The Proposed Amended Complaint is attached to the *Declaration*

*of Mary Buttery* as <u>Exhibit D</u> and a redline comparison of the Proposed Amended Complaint and

the complaint in the Debtor and D&O Action is attached to the *Declaration of Max H. Siegel* as

<u>Exhibit E</u>.  Tellingly, paragraph 22 of the Proposed Amended Complaint expressly alleges as

follows:

> On March 24, 2025, 23andMe commenced insolvency proceedings under
> Chapter 11 of the United States Bankruptcy Code, in order to "maximize
> stakeholder value" and "to facilitate a sale process to maximize the value of its
> business," according to 23andMe.  These events further revealed the inherently
> dangerous and potentially harmful nature of 23andMe's products and offerings, and
> raised significant concerns regarding the integrity and security of customer data.

Buttery Decl., Ex. D ¶ 22.  In other words, Respondents are continuing to prosecute (indeed,

expanding) the Debtor Action with full knowledge of these Chapter 11 Cases and seek to use the

existence of the Chapter 11 Cases to further their claims against the Debtors, all in violation of the

automatic stay.

     29.    The Proposed Amended Complaint merely strips a variety of paragraphs from the

Debtor and D&O Action Complaint and adds six non-substantive allegations, most of which are

variants of the allegation that 23andMe's product offerings were "potentially harmful."  Siegel

Decl., Ex. D ¶¶ 19–22; Siegel Decl., Ex. D, part 2 ¶ 17.  And it broadens the putative class

definition such that, among other things, it now includes 23andMe customers whose data was not

breached, if they merely "provided a bodily substance sample containing their DNA to 23andMe

at any time since 23andMe's inception."  Buttery Decl., Ex. D ¶ 8.  Absent relief from this Court,

the duplicative claims against the Debtors and the Additional Defendants in the Canadian

Proceedings will only continue to multiply.

## IV.    The Debtors' Indemnity Agreements and Insurance Policies

     30.    23andMe Holding Co. is governed by the Certificate of Incorporation dated

June 16, 2021, as amended on October 11, 2024.  Siegel Decl., Ex. A (2021 Certificate of

Incorporation); Siegel Decl., Ex. B (showing 2024 amendments not pertinent to this Motion).

Section 8.2(a) of the Certificate of Incorporation provides, creates broad indemnification

obligations:

> To the fullest extent permitted by Delaware law, as the same exists or may hereafter be amended, the Corporation shall indemnify, defend and hold harmless each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit, investigation, arbitration or proceeding, whether civil, criminal, administrative or investigative (a "proceeding") by reason of the fact that he or she is or was a director or officer of the Corporation or any of its subsidiaries or, while a director or officer of the Corporation or any of its subsidiaries, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with respect to an employee benefit plan (an "indemnitee"),whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, against all liability and loss suffered and expenses (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes, and penalties and amounts paid in settlement) reasonably incurred by such indemnitee in connection with such proceeding.

Siegel Decl., Ex. A at 11 § 8.2(a).

31.     23andMe, Inc. is governed by the Certificate of Incorporation dated June 16, 2021,

which creates broad indemnification obligations:

> Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law.

Siegel Decl., Ex. C at 4 § 9(2)(a).

32.     Under these provisions, any judgment against the director and officer Individual

Defendants could create indemnification obligations for the Debtors.  The Canadian Proceedings,

therefore, threaten to deplete the value of the estate, diminish the value available to creditors, and impair the operations of the Debtors in these Chapter 11 Cases.

## V.        The Debtors Institute These Chapter 11 Case

33.        On March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On March 27, 2025, the Court entered an order authorizing the joint administration of the Chapter 11 Cases, pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their property as debtors in possession, pursuant to 11 U.S.C. §§ 1107(a) and 1108.

34.        On May 15, 2025, Matthew Kvarda, as foreign representative of the Debtors, commenced foreign recognition proceedings under the Companies' Creditors Arrangement Act ("CCAA"), which applies in Canada.  On May 20, 2025, a Canadian insolvency judge held a hearing on that application.  Buttery Decl. ¶ 26.

## VI.       The Debtors File an Adversary Proceeding

35.        On April 14, 2025, Debtors filed the Adversary Complaint, commencing an adversary proceeding against Respondents and seeking (a) (i) a declaration that the automatic stay already stays the Canadian Proceedings, including as to the D&O Defendants, under Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, or, (ii) in the alternative, an extension of the automatic stay under Section 362 of the Bankruptcy Code to the D&O Defendants with respect to the Canadian proceedings; and (b) an order enjoining the continued prosecution of the Canadian Proceedings under Section 105 of the Bankruptcy Code.  The adversary proceeding is captioned *23andMe Holding Co. v. J.R.*, No. 25-04011.

36.        On May 20, 2024, the Debtors and the Respondents entered into the *Stipulation of Dismissal Without Prejudice*.  In the *Stipulation of Dismissal Without Prejudice*, the Debtors and

Respondents stipulated and agreed that (1) the adversary proceeding was dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii); (2) the Debtors may pursue the relief they sought in the adversary proceeding by filing a motion before this Court; and (3) the Defendants would not argue in any forum that the relief requested was improper because it was sought by motion rather than in an adversary proceeding or on the grounds that service was ineffective, but reserved all other defenses.

### BASES FOR RELIEF

I.    **The Court Should Confirm That the Automatic Stay Applies to the Claims Against All Defendants in the Canadian Proceedings or, in the Alternative, Extend the Stay to the Additional Defendants**

37.    The Bankruptcy Code's automatic stay provision bars the Canadian Proceedings. A bankruptcy petition operates as a stay, applicable of all entities, of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [Chapter 11]," or "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3). "The automatic stay serves the debtor's interests by protecting the estate from dismemberment, and it also benefits creditors as a group by preventing individual creditors from pursuing their own interests to the detriment of the others." *City of Chicago v. Fulton*, 592 U.S. 154, 157 (2021).

38.    The Canadian Proceedings are barred because 23andMe Holding Co. and 23andMe, Inc. are Debtors in the Chapter 11 Cases and the Additional Defendants share an identity of interest with the Debtors.

39.    "[B]ankruptcy court[s] can stay cases against non-debtors . . . where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment

14

or finding against the debtor.'" *Ritchie Cap. Mgmt., L.L.C.* v. *Jeffries*, 653 F.3d 755, 762 (8th Cir. 2011) (quoting *McCartney* v. *Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997), and citing *A.H. Robins Co.* v. *Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)); *see also Nat'l Bank of Ark.* v. *Panther Mtn. Land Dev., LLC (In re Panther Mtn. Land Dev., LLC)*, 686 F.3d 916, 921–23 (8th Cir. 2012); *accord, e.g.*, *Reliant Energy Servs.* v. *Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003);  *see also In re W. Robidoux, Inc.*, 2022 WL 17620269, at *9 (W.D. Mo. Dec. 13, 2022) ([T]he Court agrees that § 362(a)(1) stays proceedings to collect claims against debtors, even if the lawsuit or proceedings attempting to do so are against a non-debtor.").

40.     Here, there is a clear identity of interest between the Debtors and the Additional Defendants such that a judgment against the Additional Defendants would, in effect, be a judgment or finding against the Debtors.   The bases for this identity of interest include (1) the indemnification provisions in the Certificates of Incorporation, which apply to the Individual Defendants (but not KPMG), (2) the Debtors' possession of relevant discovery in the both Canadian Proceedings, and (3) the overlapping—indeed, identical—claims against the Debtors and the Additional Defendants in the Canadian Proceedings, which cannot be fairly adjudicated without the Debtors' participation. *See, e.g.*, *In re Edgeworth*, 993 F.2d 51, 55–56 (5th Cir. 1993) (holding that overriding question when determining whether insurance proceeds are property of the estate is whether debtor would have the right to receive and keep those proceeds); *Ritchie*, 653 F.3d at 762–63; *Lomas Fin. Corp.* v. *N. Tr. Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990) (holding that the Bankruptcy Court appropriately stayed action against a non-debtor third party pursuant to § 362(a)(1) where debtor was obligated to indemnify non-debtors with respect to claims in that action).

41.    A bankruptcy court should also apply the automatic stay to a non-debtor when "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Ritchie*, 653 F.3d at 763 (quoting *Queenie Ltd.* v. *Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003)).  Prosecution of the Canadian Proceedings against the Additional Defendants while the Chapter 11 Cases are pending would cause adverse economic consequences for the estate by potentially forcing the Debtors to indemnify the Individual Defendants and sacrifice coverage to satisfy estate claims under their insurance policies—depriving the estate and creditors of value. It would also cause adverse economic consequences by subjecting the Debtors to burdensome discovery and potentially prejudicing their ability to present a defense to claims brought jointly against the Debtors and the Additional Defendants, which comprise all claims brought against the Additional Defendants.

42.    In the alternative, if the automatic stay does not apply to Additional Defendants in the Canadian Proceedings, the Court should enter an order extending the automatic stay to prevent the continued prosecution of claims against the Additional Defendants in the Canadian Proceedings.  "Extending the stay is warranted where there is a 'sufficient nexus' between a debtor corporation and its members and an extension of the stay would 'contribute to the debtor's reorganization efforts.'" *In re Bailey Ridge P'rs, LLC*, 571 B.R. 430, 438 (Bankr. N.D. Iowa 2017) (quoting *In re Metro Square*, 1988 WL 86679, at *5 (Bankr. D. Minn. Aug. 10, 1988)).  The facts that confirm that the stay applies also, in the alternative, confirm that the stay should be extended. For example, courts extend the automatic stay to directors and officers when "there is an entitlement to indemnification between the debtor and its officers and directors." *Am. Film Techs., Inc.* v. *Taritero (In re Am. Film Techs. Inc.)*, 175 B.R. 847, 853 (Bankr. D. Del. 1994).  Likewise, the burdens of discovery and the threat of prejudice if the Canadian Proceedings continue as to the

Additional Defendants without the Debtors' participation continue all create a "nexus" between the Debtors and the Additional Defendants, such that extending the stay would "contribute to the [Debtors'] reorganization efforts." *Bailey Ridge*, 571 B.R. at 438. Those efforts would be impeded if the Debtors were forced into the discovery process or the Debtors had liability adjudicated without their participation. Accordingly, if the automatic stay does not apply to the Additional Defendants in the Canadian Proceedings (it does), the Court should enter an order extending the automatic stay.

## II.    The Court Should Enjoin the Continued Prosecution of the Canadian Proceedings

43.    Section 105(a) of the Bankruptcy Code permits the bankruptcy court to issue any order "necessary or appropriate" to assure the administration of the Debtors' bankruptcy estate, including issuing injunctions to prohibit continued litigation against non-debtors and/or to extend the automatic stay to non-debtors. 11 U.S.C. § 105(a). "[C]ourts have granted injunctions, at least on a temporary basis, to restrain actions against a principal of the debtor upon a showing that the non-debtor's time, energy and commitment to the debtor are necessary for the formulation of a reorganization plan." *Bailey Ridge*, 571 B.R. at 438 (Bankr. N.D. Iowa 2017) (quoting *In re Three Seas Realty II, L.L.C.*, 2010 WL 2857598, at *3 (Bankr. N.D. Iowa July 19, 2010)).

44.    "In deciding whether to enjoin lawsuits under § 105, the Court considers the following factors: (1) whether there is a likelihood of a successful reorganization; (2) whether there is imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction." *Id.*

45.    As to the first factor, for the reasons discussed in the *Declaration of Matthew Kvarda in Support of Chapter 11 Petitions and First Day Pleadings*, Case No. 25-40976 (Bankr. E.D. Mo.), ECF No. 32, among others, there is a strong likelihood of a successful reorganization.

At this point, the Debtors have conducted a value-maximizing auction of the Debtors' assets and filed a notice of successful a backup bidders. *See Notice of Successful and Backup Bidders with Respect to Debtors' Assets*, ECF No. 420.

46.    As to the second factor, an injunction is necessary to prevent irreparable harm to the Debtors and their estates for five reasons.

47.    *First*, any attempt to obtain a judgment against the Additional Defendants, if successful, would prejudice the Debtors, but the "Debtors will not have an opportunity to defend their conduct or products." *In re W.R. Grace & Co.*, 386 B.R. 17, 34 (Bankr. D. Del. 2008); *see also Whittaker, Clark & Daniels, Inc*., 2024 WL 4579207, at *9 (Bankr. D.N.J. Oct. 24, 2024) (enjoining lawsuit because "continuation of the Direct Claims presents the potential consequences of adverse judgments and litigation prejudice in the form of res judicata, collateral estoppel, and record taint."). There are also numerous creditors asserting claims against the Debtors directly in these Chapter 11 Cases, and so any attempt to litigate those exact same issues in Canada against proxy defendants for the Debtors creates a manifest risk of inconsistent adjudications. Bankruptcy courts routinely grant injunctions when the prosecution of lawsuits during a chapter 11 case would create the risk of inconsistent judgments. *See, e.g.*, *In re Johns-Manville Corp.*, 91 B.R. 225, 230 (Bankr. S.D.N.Y. 1988) (granting injunction because "[a]ny inconsistent and conflicting judicial decisions regarding the insurance policies would not merely jeopardize but would undoubtedly destroy six years of negotiations and settlements."  ); *In re Excel Innovations, Inc.*, 2006 WL 6810922, at *10 (B.A.P. 9th Cir. Oct. 24, 2006) (affirming injunction because "inconsistent results could complicate Excel's litigation with Appellants, as well as any claim proceedings in respect to Hoffman's proof of claim for indemnification"). This concern is especially severe here, where Respondents' claims against the Additional Defendants are entirely based on conduct of the

Debtors, and thus the adjudication of the Canadian Proceedings even as to the Additional Defendants.

48.     *Second*, continued prosecution of the Canadian Proceedings will result in imminent financial loss to the estate.  "[C]ontinued litigation in the [Canadian Proceedings] will have an adverse impact on the bankruptcy estate" by "impair[ing] reorganization efforts and drain[ing] resources and time."  *In re LTL Mgmt., LLC*, 645 B.R. 59, 82 (Bankr. D.N.J. 2022).  If the Canadian Proceedings are not enjoined, the Debtors will need "to employ counsel and spend a substantial amount of time and effort defending such actions, and their assets could be substantially depleted." *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993); *see also, e.g.*, *In re LTL Mgmt., LLC*, 638 B.R. 291, 307 (Bankr. D.N.J. 2022) (applying automatic stay to non-debtors where "continued litigation against the [p]rotected [p]arties would divert funds and resources toward defense costs and potentially disrupt the flow of funds and resources" towards debtor's estates).  Even if the Canadian Proceedings were to continue only as to the Additional Defendants, the Debtors would nonetheless be dragged through the litigation because all potentially relevant discovery materials are in the Debtors' possession, and thus the Debtors may be forced to deal with a costly discovery process in another forum.  The Debtors will also face indemnification claims which will deplete the estate.

49.     *Third*, continued prosecution of the Canadian Proceedings would distract the Debtors' key employees and divert time and resources away from the Debtors' restructuring, potentially threatening the Debtors' ability to swiftly and efficiently resolve these Chapter 11 Cases.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) (enjoining non-debtors from continuing lawsuit "[b]ecause the suit would ultimately divert the debtor's resources and attention from the bankruptcy process.").  Even if the litigation is only

pursued against Additional Defendants, because the issues entirely revolve around the Debtors corporate conduct, the cases there cannot be litigated without the oversight and attention of the Debtors' current management team (none of whom are even defendants). "[T]he Principals' time and energy would be distracted both from the Debtors' daily business affairs and from the Debtors' progressing toward a plan of reorganization." *In re Lazarus Burman.*, 161 B.R. at 901; *see also In re SVB Fin. Grp.*, 2023 WL 2962212, at *8 (Bankr. S.D.N.Y. Apr. 14, 2023) (granting injunction because "the Arbitrations would divert attention away from the Debtor's restructuring."); *In re PTI Holding Corp.*, 346 B.R. 820, 827 (Bankr. D. Nev. 2006) (granting injunction because "[t]he testimony is uncontradicted that [officer defendants] are each necessary to any successful reorganization of Homestead. It is also uncontradicted that diversion of the brothers' time would harm Homestead by depriving it of key players at a time that their services would be necessary in formulating a plan of reorganization, or in promoting or otherwise furthering Homestead's business.).

50.     *Fourth*, continued prosecution of the Canadian Proceedings, including against the Additional Defendants, could make the Debtors liable for indemnification. As discussed above, the Debtors have contractual indemnification obligations towards the D&O Defendants, which is a well-established basis for enjoining litigation. *See, e.g., W.R. Grace & Co.*, 386 B.R. at 34 (granting injunction because defendant in non-bankruptcy action had contractual indemnification rights against debtors); *see also Lomas*, 117 B.R. at 68; *Am. Film Techs*, 175 B.R. at 853. And the Canadian Proceedings could deplete insurance proceeds otherwise available to fund recovery to creditors based on estate claims, if any are identified during the Chapter 11 Cases.

51.     *Finally*, the continuation of the Canadian Proceedings would frustrate the purpose of the Automatic Stay—to provide debtors with a "breathing spell" to allow them to focus on the

bankruptcy proceedings. *In re Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986).

52. As to the third factor, in contrast to the immediate and irreparable harm the Debtors and their estates would face if injunctive relief is denied, the only potential harm faced by Defendants is delay caused by applying the automatic stay to the Canadian Proceedings during the pendency of the Debtors' Chapter 11 Cases. Mere delay as a result of an injunction issued until bankruptcy proceedings are resolved is not a significant harm. *In re Lazarus Burnam Assocs.*, 161 B.R. at 901. Thus, the balance of equities weighs in the Debtors' favor.

53. As to the fourth factor, public interest favors an injunction, which would enable the Debtors to maximize the value of their estates for the benefit of all stakeholders—a paramount goal of the Bankruptcy Code.

54. Accordingly, the Debtors are entitled to an injunction preventing the continued prosecution of the Canadian Proceedings during these Chapter 11 Cases.

## <u>CONCLUSION</u>

WHEREFORE, Debtors 23&me Holding Co. respectfully request that this Court enter a an order (a) (i) confirming that the automatic stay prohibits the continued prosecution of the Canadian Proceedings, including as against the Additional Defendants, or (ii) in the alternative, extending the automatic stay to the Additional Defendants in the Canadian Proceedings; and (b) enjoining the continued prosecution of the Canadian Proceedings, including against the Additional Defendants, during the pendency of these Chapter 11 Cases.

Dated: May 20, 2025
St. Louis, Missouri

Respectfully submitted,

**CARMODY MACDONALD P.C.**
/s/ *Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:    (314) 854-8600
Facsimile:    (314) 854-8660
Email:        thr@carmodymacdonald.com
              nrw@carmodymacdonald.com
              jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
William A. Clareman (admitted *pro hac vice*)
Max H. Siegel (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
Email:        pbasta@paulweiss.com
              chopkins@paulweiss.com
              wclareman@paulweiss.com
              msiegel@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*