UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **23ANDME HOLDING CO.,** *et al.*,[1] | Case No. 25-40976-357 |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 574** |

### DECLARATION OF ANDREW SWIFT IN
### SUPPORT OF THE REGENERON BREAKUP FEE

I, Andrew Swift, hereby declare under penalty of perjury:

1. I am a Managing Director at Moelis & Company LLC ("Moelis") an investment banking firm with principal offices located at 399 Park Avenue, New York, New York 10022. Moelis is the investment banker for the debtors and debtors-in-possession (collectively, the "Debtors" or the "Company") in the above-captioned chapter 11 cases. I submit this declaration (the "Declaration") in support of the Debtors' proposal to, among other things, pay Regeneron Pharmaceuticals, Inc. ("Regeneron") a $10 million breakup fee pursuant to the *Debtors' Motion for Entry of an Order (I) Establishing Procedures for the Submission of Final Proposals From the Backup Bidder and Successful Bidder and (II) Granting Related Relief* [Docket No. 574] (the "Motion")[2] and under the circumstances described in additional detail below.

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Motion or the Bidding Procedures (as defined in the Motion).

2. Although Moelis is expected to be compensated for its work as the Debtors' investment banker in these chapter 11 cases, I am not being compensated separately for this Declaration or testimony. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, the information provided to me by professionals involved in advising the Debtors in these chapter 11 cases, or information provided to me by the Debtors. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am over the age of 18 years, and I am authorized to submit this Declaration.

## Professional Qualifications

3. I have more than 12 years of investment banking experience. I have led engagement teams in complex bankruptcies and reorganizations across a broad spectrum of industries in a variety of capacities. In particular, I have provided services to debtors and other constituencies in numerous restructurings, including: *In re Blink Holdings, Inc., et al.*, No 24-11686 (JKS) (Bankr. D. Del. 2024); *In re Invitae Corp., et al.*, No 24-11362 (MBK) (Bankr. D.N.J. 2023); *In re Diamond Sports Group LLC*, No. 23-90116 (CML) (Bankr. S.D. Tex. 2023); *In re Cyxtera Technologies, Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. 2023); *In re Genesis Global Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y. 2023); *In re Hexion Holdings LLC*, No. 19-10684 (KG) (Bankr. D. Del. 2019); *In re Mattress Firm, Inc.*, No. 18-12241 (CSS) (Bankr. D. Del. 2018); *In re CJ Holding Co.*, No. 16-33590 (DRJ) (Bankr. S.D. Tex. 2016); and *In re Trinity Coal Corporation*, No. 13-50364 (TNW) (Bankr. E.D. Ky. 2013).

4. I have been employed at Moelis since 2012. I hold a Bachelor of Arts in history from the University of Michigan. I am authorized to execute this declaration on behalf of Moelis.

5. Since its engagement, Moelis has rendered investment banking advisory services to the Special Committee in connection with its evaluation of financing and strategic alternatives,

including the Sale Transaction. Additionally, Moelis has worked extensively with the Debtors' management and other professionals retained by the Debtors throughout the chapter 11 cases, including with respect to the Sale Transaction and Auction process, and has become familiar with the Debtors' capital structure, financial condition, liquidity needs, and business operations.

### The Regeneron Breakup Fee

6. The Final Proposal Procedures contemplate, among other things, the Debtors' payment of a $10 million breakup fee to Regeneron in the event the Debtors select TTAM as the Winning Bidder and close the Sale Transaction with TTAM (the "Regeneron Breakup Fee"). Specifically, the Regeneron Breakup Fee shall be due upon, and paid concurrently with, the Debtors' closing of the Sale Transaction with TTAM as consideration for (a) Regeneron's agreement to serve as the Successful Bidder in the event TTAM is selected as the Winning Bidder until the Court's entry of the TTAM Authorization Order or Regeneron's agreement to provide the Regeneron Consent, as applicable, at the current purchase price of $256 million, (b) the time, effort, and resources invested by Regeneron to consummate the Sale Transaction under the Regeneron APA, including in particular from the conclusion of the Auction to the Best and Final Deadlines, and (c) Regeneron's agreement to serve as the Backup Bidder at a purchase price of $151 million notwithstanding the terms of the Bidding Procedures and the Regeneron APA (collectively, the "Regeneron Consideration"). Cumulatively, the Regeneron Consideration is intended to preserve the value of Regeneron's current Successful Bid of $256 million to the Debtors' estate while affording the Bidders the opportunity to overbid further. The Regeneron Breakup Fee will only become payable under the circumstance in which the Final Proposal Procedures produce a higher and better Sale Transaction than the current Successful Bid that is closed with TTAM.

7. Based on my discussions with Regeneron's and the Debtors' advisors, I do not believe that Regeneron would have consented to the Final Proposal Procedures or agreed to provide the Regeneron Consideration absent the Regeneron Breakup Fee.

8. In addition, I note that TTAM's Asset Purchase Agreement (for the current Backup Bid of $146 million) provides for a $5 million payment payable by the Debtors to TTAM in the event that TTAM's Backup Bid becomes the operative proposed Sale Transaction and the Debtors were to terminate TTAM's Asset Purchase Agreement in an exercise of their fiduciary duties. Furthermore, this $5 million payment was also a condition of TTAM's Asset Purchase Agreement at the Auction at values as low as $50 million, which implies a substantially higher fee percentage than the proposed Regeneron Breakup Fee. *See* Notice Exhibit B § 10.2.

9. Accordingly, in my view and based on my experience, by providing the Regeneron Consideration, Regeneron is acting like a "stalking horse bidder" whose bid of $256 million at the Auction is effectively setting a floor for subsequent bidding under the Final Proposal Procedures, similar to stalking horse bidders in other chapter 11 cases. Unlike typical stalking horse bid protections, the Regeneron Breakup Fee does not include a specific, separate amount for expense reimbursement. In this regard, the Regeneron Breakup Fee is, in my view and based on my experience, reasonable and appropriate based upon market bid protections that stalking horse bidders typically require in other chapter 11 sale processes of similar size and complexity to the Sale Transaction. Therefore, I believe that the Regeneron Breakup Fee is appropriate and a sound exercise of the Debtors' business judgment, and should be approved.

## Conclusion

10. Accordingly, for the reasons described herein and in the Motion—and based on my experience as a restructuring professional and involvement in other similar sale processes—I

believe that granting the Regeneron Breakup Fee as set forth in the Motion and Proposed Order represents an appropriate and sound exercise of the Debtors' business judgment, and that the Court should approve such relief in conjunction with the Final Proposal Procedures.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: June 3, 2025

By:   /s/ *Andrew Swift*  
     Andrew Swift  
     Managing Director  
     Moelis & Company LLC