**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25-40976 (BCW) |
| | ) | |
| 23ANDMEHOLDING CO., et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Response Deadline: June 10, 2025 |
| | ) | Hearing Date: June 17, 2025 |
| | ) | Hearing Time: 9:00 AM CT |
| | ) | Hearing Location: |
| | ) | Thomas F. Eagleton US Courthouse |
| | ) | 111 S. 10th Street |
| | ) | Courtroom 5 North |
| | ) | St. Louis, MO 63102 |
| | ) | |
| | ) | Related to Docket No. |
| | ) | 30, 125, & 420 |

**STATE OF TENNESSEE'S LIMITED OBJECTION TO THE DEBTORS' MOTION APPROVING SALE OF ASSETS (Relates to Docket #s 30, 125 and 420)**

Comes now the State of Tennessee, by and through the Office of the Tennessee Attorney General, and files its Limited Objection to Debtors' Motion Approving the Sale of Assets.

1. Pursuant to the Joint Stipulation for the Appointment of a Consumer Privacy Ombudsman (the "CPO"), Docket No. 346, the CPO's complete report on the proposed sale is due June 10, 2025. Following a hearing last week during which new bidding procedures were allowed, the bidding is not expected to be final before objections to the approval of the sale are due and all interested parties even know the winning bidder or have seen the final bid along with the winning Asset Purchase Agreement.

2. While the final bids are pending submission, interested parties, such as the state regulators, must anticipate what the winning bid may look like by looking to the Asset Purchase

Agreements attached to the Notice of Successful Bidder (Docket No. 420 Exs. A & B), filed before the additional bidding procedures were approved.

3. While Tennessee does not oppose a sale of assets in principle, it does have concerns about the transfer of consumers' genetic data without their separate express consent. Under Tennessee law, any sale, transfer or use of Tennessee consumers' genetic data beyond the primary purpose of the Debtors' genetic testing product or service must be conditioned on obtaining separate express consent from each consumer. Such separate express consent is required here, notwithstanding the Debtors' privacy policies or Purchaser's commitment to continue the privacy policies of the Debtors. Any such sale, transfer or use without separate express consent from each Tennessee consumer would constitute a violation of Tennessee law for each instance.

4. Tennessee's Genetic Information Privacy Act ("GIPA") regulates direct-to-consumer genetic testing companies, such as 23andMe. *See* Tenn. Code Ann. § 47-18-4902, 4904. GIPA requires direct-to-consumer genetic testing companies, such as the Debtors, to obtain *express consent from consumers* before collecting, using, or disclosing a consumer's genetic data. *Id.* § 47-18-4904(a)(2). In obtaining such consent, the company must (1) clearly describe its use of the genetic data, (2) specify who has access to any test results, and (3) specify how the company may share the genetic data. *Id.* A company must also obtain *separate express consent* before, among other things, (1) transferring or otherwise disclosing a consumer's genetic data to a person other than the company's vendors or service providers or (2) using the genetic data beyond the primary purpose of the company's genetic testing product or service. *Id.* § 47-18-4904(a)(3)(A)(i)-(iii).

5. Under GIPA, express consent means a consumer's affirmative response to a "clear, meaningful, and prominent notice regarding the collection, use, or disclosure of genetic data for a

specific purpose." *Id.* § 47-18-4902(6). The GIPA also requires companies to provide a process by which consumers can (1) access their genetic data, (2) delete their account and genetic data, and (3) destroy their biological sample. *Id.* § 47-18-4904(a)(6)(A)-(C).

6. Permitting the sale or transfer of Tennessee consumer's genetic data without the separate express consent of each consumer would disregard Tennessee law. Tennessee opposes the preemption of the GIPA statutory requirements for separate express consent of a consumer before a transfer or disclosure of their data is permitted or before their genetic data is used in a manner beyond the primary purpose of the debtors' genetic testing product or service.

7. The filing of a bankruptcy petition did not relieve the Debtors of their obligation to follow federal and state consumer protection laws. See 28 U.S.C. § 959(b); *In re PSA, Inc.*, 335 B.R. 580, 586-87 (Bankr. D. Del. 2005); cf. *Midlantic Natl'l Bank v. N.J. Dept. of Env't Prot.*, 474 U.S. 494, 504 (1986) (citing the legislative history of Bankruptcy Code section 362, which makes clear that enforcement of consumer protection statutes is not stayed).

8. Indeed, the parties, through the Asset Purchase Agreements, already anticipate the requirement to obtain consent. Docket # 420, Ex. A, page 53 at para. 7.3; Ex. B, page 59 at para. 7.3.

9. As such, this Court should not permit the sale of genetic data in this case without the separate express consent of each consumer whose data is at issue because such a transaction would violate Tennessee law.

10. Any order permitting the sale should require an explicit statement that separate express consent must be obtained from any Tennessee consumer whose genetic data is to be sold, transferred or used in manner beyond the primary purpose of the company's genetic testing product or service.

11. The result should be the same whether Debtors frame the requested transaction as a sale or transfer of assets or as a change in ownership. Either way, it is a different entity that would control the genetic information than the one the consumers contracted with initially. Even more, GIPA's requirement that a company obtain separate express consent before using genetic data beyond the primary purpose of the company's genetic testing product or service applies regardless of whether the data is sold or otherwise transferred at all. Separate express consent should be required.

12. Further, The Debtors' APAs define "Person" as "any natural person, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, proprietorship, other business organization, trust, government, Governmental or Regulatory Authority, or any other entity whatsoever." The States object to the inclusion of "Government" and "Governmental and Regulatory Authorities" being included in this definition, as the Bankruptcy Code specifically exempts most governmental units from the definition of "person," and provides a more specific definition applicable to governmental units. Some provisions of the sales documents applicable to "Persons" as defined by the Debtors may not be applicable to the government due to state and or federal laws. Therefore, the States request that "Government" and "Governmental and Regulatory Authorities" be deleted from the Debtors' definition of "Person," and, instead use the Bankruptcy Code's definition of "Governmental Unit" under 11 U.S.C. section 101(27) in all sales documents and orders.

13. Tennessee reserves the right to supplement or amend this Limited Objection.

WHEREFORE, Tennessee prays that any order

1. Require separate express consent of each Tennessee consumer for any sale, transfer or change to the manner of use of their genetic data;

2. Remove any reference to governmental entities from the definition of persons in the APA.

Respectfully submitted,

**Jonathan Skrmetti**
**Tennessee Attorney General**

*/s/ Marvin E. Clements, Jr.*
Marvin E. Clements, Jr. (TN BPR # 016031)
Senior Assistant Attorney General
Office of the TN Attorney General
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202
Phone: (615) 741-1935
marvin.clements@ag.tn.gov

*Attorney for The State of Tennessee*

**Dated: June 10, 2025.**

**CERTIFICATE OF SERVICE**

I certify that on June 10, 2025, a copy of the foregoing was electronically filed with the United States Bankruptcy Court for the Eastern District of Missouri and was served upon the parties registered to receive notice electronically via the Court's CM/ECF system.

*/s/ Marvin E. Clements, Jr.*
Marvin E. Clements, Jr.