**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976-357 |
| | Hon. Brian C. Walsh<br>U.S. Bankruptcy Judge |
| Debtors. | (Jointly Administered) |

**UNITED STATES TRUSTEE'S OBJECTION TO CPO'S APPLICATION TO RETAIN WILMER CUTLER PICKERING HALE & DORR LLP AS COUNSEL**

Jerry L. Jensen, Acting United States Trustee for Region 13, (the "UST"), through undersigned counsel, objects to the Application for Entry of An Order Authorizing the Retention and Employment of Wilmer Cutler Pickering Hale and Dorr LLP as Counsel Effective May 13, 2025 (the "Application") filed by Neil M. Richards, Consumer Privacy Ombudsman (the "CPO"). In his Application, the CPO seeks Court approval for the retention of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale" or the "Firm") effective May 13, 2025. The UST objects to the Application because WilmerHale is not "disinterested" and "represents an interest adverse to the estate" within the meaning of 11 U.S.C. § 327(a) because it concurrently

---

[1] The Debtors in these cases and the last four digits of each Debtor's federal tax identification number are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these Chapter 11 Cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

represents Regeneron Pharmaceuticals, Inc. ("Regeneron")—a bidder for substantially all the Debtors' assets. Accordingly, the CPO's Application must be denied.

## RELEVANT FACTS

1. On May 13, 2025, the CPO filed the Application to employ WilmerHale (Doc. 406).

2. Six days later, on May 19, 2025, the above-captioned debtors, 23andMe Holding Co. et al (the "Debtors") filed Notice of Successful and Backup Bidders with Respect to the Auction of the Debtors' Assets (the "Auction Notice") wherein, among other matters, the Debtors publicly identified Regeneron Pharmaceuticals, Inc. ("Regeneron") as the successful bidder under its auction.

3. At the June 3, 2025, status conference, the Court ordered the CPO to file an amended certificate of service establishing a 14-day negative-notice period concerning the Application; the amended certificate (Doc. 628) fixes June 18, 2025, as the response deadline.

4. On June 9, 2025, 21 days after the Debtors filed the Auction Notice proposing Regeneron as the successful bidder, WilmerHale filed a Second Supplemental Declaration disclosing that it currently represents Regeneron in other matters but stating that it "does not believe the engagement compromises disinterestedness" (Doc. 685 at ¶ 7).

5. Regeneron remains as one of two acknowledged active bidders for substantially all the Debtors' assets, including Customer Data as defined in the Regeneron Asset Purchase Agreement ("APA"). The CPO's mandate includes evaluating Regeneron's—and its competitor, TTAM's— privacy and cybersecurity practices and making recommendations to the Court regarding any sale of Personally Identifiable Information ("PII") either to Regeneron or to TTAM. *See* Application and Goldman Dec. at ¶ 2 (Doc. 406).

GOVERNING LAW

6. The Joint Stipulation and Agreed Order directing the appointment of the CPO expressly requires any professional retention to satisfy "standards equivalent to those set forth in 11 U.S.C. § 327." *Id.* ¶¶ 9 and 11.

7. Section 327(a) prohibits employment of a professional who "holds or represents an interest adverse to the estate" and who is not "disinterested." *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 124 (2015).

8. A professional is disinterested only if the person "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).

9. Under the § 327(a) standards that govern employment of the CPO's professionals, WilmerHale bears the burden of establishing that it is both disinterested and does not represent an adverse interest. *See In re Big Mac Marine, Inc.*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005); *In re Huntco Inc.*, 288 B.R. 229, 232 (Bankr. E.D. Mo. 2002).

10. Section 327 must be strictly construed "in order to maintain the integrity of the bankruptcy process." *In re Am. Energy Trading, Inc.*, 291 B.R. 154, 157 (Bankr. W.D. Mo. 2003) (internal citations omitted).

11. Even the appearance of divided loyalty warrants disqualification. *See In re BH&P Inc.*, 949 F.2d 1300, 1316 (3d Cir. 1991).

12. "The adverse interest and disinterested person limitations set forth in § 327 governing the employment of professionals cannot be excused by waiver." *In re Am. Energy Trading, Inc.*, 291 B.R. 154, 158 (Bankr. W.D. Mo. 2003).

13. "While consent may satisfy certain State bar rules on conflicts, it is not a substitute for disinterestedness under Section 327(a)." *In re Enviva Inc.*, 2024 WL 2795274, at *7 (Bankr. E.D. Va. May 30, 2024); *see also In re* Project *Orange Assocs.,* LLC, 431 B.R. 363, 377-79 (Bankr. S.D.N.Y. 2010) (Denial of retention appropriate where a law firm cannot "fairly and fully advise" the estate because it simultaneously owes duties to the debtor's largest unsecured creditor on issues central to the case).

14. Nor does the Code excuse even allegedly *de minimis* conflicts: "the adverse interest test is objective and excludes 'any interest or relationship, *however slight*, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *Project Orange Assocs.*, 341 B.R. at 370 (emphasis added) (quoting *In re Granite Partners*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998)).

15. Recasting WilmerHale's engagement as special counsel under section 327(e) does not salvage the retention. That subsection is restricted to employing counsel "for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." WilmerHale's engagement would only be permissible under section 327(e) if WilmerHale had previously represented the CPO; the special purpose was collateral to the CPO's core purpose; and WilmerHale did not represent or hold any adverse interest to the CPO. None of those conditions is met. WilmerHale has never previously represented the CPO (who did not exist until his appointment on May 6); WilmerHale's primary assignment is to assist with the CPO's core, indeed only, task (*see* Doc. 406 at ¶ 17, "Services to be Provided");

4

and, most importantly, WilmerHale's ongoing fiduciary duty to Regeneron is squarely adverse to the very matters on which WilmerHale advises the CPO.

ARGUMENT

WilmerHale Represents an Interest Adverse to the Estate.

16. WilmerHale admits it currently represents Regeneron—the very entity whose cybersecurity controls, privacy disclosures, and post-sale data-handling commitments the CPO had to scrutinize. In the same sense that a lawyer cannot simultaneously represent the estate and a creditor, WilmerHale cannot represent both the CPO and a bidder for the estate's assets when the proposed sale and the CPO's report on it is a, if not *the*, central issue in this case. *Big Mac Marine,* 326 B.R. at 154; *see also Project Orange Assocs.,* 431 B.R. at 377-79. WilmerHale owes a continuing fiduciary duty of loyalty to both of its current clients, the CPO and Regeneron, making its representation of the CPO untenable and unlawful under the Code.

The Conflict Is Actual, Not Merely Potential.

17. The CPO's just-filed report had to evaluate whether Regeneron's bid should be accepted, modified, or rejected, but any recommendation that conditions or critiques Regeneron's offer would prejudice WilmerHale's existing client, while any report favorable to Regeneron might prejudice TTAM to Regeneron's advantage. Moreover, even absent direct adversity between concurrent clients, the risk that the lawyers might "pull their punches" in favor of one or the other—even absent the intention to do so—constitutes an actual conflict. *See Project Orange Assocs.,* 431 B.R. at 377. Because WilmerHale's duty of loyalty to Regeneron is "materially adverse to the estate" under 11 U.S.C. § 101(14), the conflict is actual.

Retention Would Undermine Public Confidence in the CPO Process.

5

18. The CPO's core mission is to ensure that sensitive consumer health and genetic data in connection with a sale is appropriately protected under applicable law and the Debtors' privacy policies. Allowing the CPO's counsel to owe simultaneous loyalty to one of the two bidders risks eroding public trust in the bankruptcy system. *See In re Granite Partners*, 219 B.R. 22, 42 (Bankr. S.D.N.Y. 1998) (Ensuring bankruptcy professionals remain conflict free is key to preservation of the integrity of the bankruptcy system).

19. Indeed, the UST's Motion to Appoint a CPO and Opposition to the Debtors' proposed Customer Data Representative was premised, in part, on the sacrosanct need for independence in the review of the privacy implications of any sale, free from the influence of any constituency in the case except those who privacy interests who might be affected.

## RELIEF REQUESTED

20. The UST respectfully requests that the Court deny approval of the Application.

## RESERVATION OF RIGHTS

21. The UST reserves all rights to supplement this objection, to seek discovery, and to be heard on all issues raised by the Application or any amended application.

## CONCLUSION

22. Because WilmerHale represents an interest adverse to the estate and is not disinterested, the Application cannot be approved under the "standards equivalent to § 327" mandated by this Court's own order. The Court should sustain this Objection and grant the relief requested.

WHEREFORE, the UST respectfully requests that the Court deny approval of the Application and grant such other relief as is appropriate under the circumstances.

Dated: St. Louis, Missouri  Respectfully submitted,
June 13, 2025

                                              JERRY L. JENSEN
                                              Acting United States Trustee

                                              PAUL A. RANDOLPH
                                              Assistant United States Trustee

By:    */s/ Joseph R. Schlotzhauer*
        Joseph R. Schlotzhauer, E.D. MO #62138
        Trial Attorney
        Office of the United States Trustee
        111 S. 10th Street
        Suite 6.353
        St. Louis, MO 63102
        (314) 539-2982
        joseph.schlotzhauer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on June 13, 2025, a true and correct copy of the foregoing document was filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri and was served on the parties entitled to receive electronic notice via e-mail by the Court's CM/ECF System.

I further certify that on June 13, 2025, a true and correct copy of the foregoing document was served via the United States Mail Service, postage prepaid, to the parties listed in the attached Exhibit A.

                                                */s/ Joseph R. Schlotzhauer*
                                                Trial Attorney
                                                Office of the United States Trustee