**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>23andMe Holding Co., *et al.*,<br><br>                    Debtors. | Case No. 25-40976<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>Related Dkt. Nos.: 30, 125, 420, 657, 739, 746 |

**THE PEOPLE OF THE STATE OF CALIFORNIA'S
SUPPLEMENTAL OBJECTION TO DEBTORS' "FINAL" PROPOSED ASSET SALE**

      1.      California enacted the Genetic Information Privacy Act (GIPA[1]) in 2021 to give California consumers control over their "genetic data [and] biological samples" by, among other things, requiring companies like 23andMe that wish to transfer or disclose this incredibly sensitive information to first get affected consumers' "separate and express consent" to do so. Cal. Civ. Code § 56.181(a)(2)(D). The legislature found consumer empowerment necessary to "safeguard the privacy, confidentiality, security, and integrity of a consumer's genetic data . . . ." *Id*. § 56.181(a); *see also* 2021 Cal. Legis. Serv. Ch. 596 (S.B. 41) ("Genomic data is highly distinguishable. . . . The potential information hidden within genomic data is cause for significant concern.").

      2.      Debtors now seek to improperly usurp this consumer control conferred by California's legislature. Debtors prefer to substitute their own judgment for that of affected California consumers by proposing to sell vast volumes of genetic data and biological samples (last week to Regeneron, Friday to TTAM, Saturday to NewCo) without obtaining legally required consumer consent. Cal. Civ. Code § 56.181(a)(2)(D). Debtors do not oppose giving simple notice to consumers.[2] Instead, Debtors take issue with empowering Californians to

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the People's initial objection [Dkt. No. 683].
[2] *See* Dkt. No. 752, Ex. A ("[T]here will be a change in ownership of your Personal Information.").

exercise their statutorily conferred right to affirmatively consent to a transfer of their most sensitive personal data.

3.  Debtors do not dispute—nor could they—that § 363 sales must comply with state-law transfer restrictions, like GIPA. *See, e.g.*, *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987) ("[T]he trustee could not evade the restrictions on transfer because the estate takes property subject to the same restrictions that it had before the bankruptcy."). Debtors do not dispute—nor could they—that their proposed transaction eschews the "separate and express consent" required by GIPA.[3]

4.  Instead, Debtors fear that compliance with GIPA would be too costly because too many Californians—if given their statutory rights—would decline to affirmatively consent to the sale of their genetic data, thereby devaluing the portfolio that Debtors' wish to sell. Thus, rather than empowering California consumers as required by state law, Debtors prefer to argue that state-law transfer restrictions, like GIPA, somehow do not apply.

5.  Debtors are wrong. Indeed, Debtors' 11th-hour "election" to re-structure its proposed transaction as an "equity sale" only compounds the impropriety. [Dkt. No. 746.] For the reasons set forth in the People's initial objection [Dkt. No. 683] and those in this supplemental objection, the Court should deny the proposed sale.[4]

### I. THE COURT SHOULD REJECT DEBTORS' ATTEMPT TO ELEVATE FORM OVER SUBSTANCE TO EVADE STATE-LAW TRANSFER RESTRICTIONS

6.  Bankruptcy courts, as courts of equity, should look through form to substance and treat a transaction according to its real nature. *Katz v. First Nat'l Bank of Glen Head*, 568 F.2d

---

[3] Furthermore, as argued in the People's initial objection [Dkt. No. 683 at 5], since TTAM is a non-profit entity, Debtors' sale of California consumers' "sensitive personal information" to TTAM triggers opt-out requirements under the California Consumer Privacy Act of 2018 (CCPA). Cal. Civ. Code §§ 1798.100 *et seq.*, 1798.120, 1798.121. This sale also triggers CCPA's requirements limiting the "use and disclosure" of this information. *Id.* § 1798.121.

[4] On the Saturday (June 14) before the sale hearing, Debtors for the first time provided notice of their new proposal to transfer genetic data and biological samples through a yet-to-be-formed, non-debtor Delaware LLC. [Dkt. No. 746.] Debtors' proposed transaction is an ever-moving target, continuing to implicate basic notions of appropriate notice and due process. *See, e.g.*, *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953). Debtors also now propose a number of discrete, outside-the-ordinary-course transactions (e.g., non-debtor LLC formation) for which no motions are pending. The People reserve all rights.

964, 970 (2d Cir.1977); *accord, e.g.*, *In re Briggs Transp. Co.*, 780 F.2d 1339, 1343 (8th Cir. 1985) ("[A] bankruptcy court is a court of equity. Bankruptcy courts do not read statutory words with a computer's ease, but operate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.").

7. Debtors' initial attempt to sell genetic assets was met with myriad objections and an adverse report from the statutory consumer-privacy ombudsperson (CPO). [*E.g.*, Dkt. No. 728 at 100 ("[T]he CPO cannot conclude that the sale or transfer of the Company's assets to either bidder does not violate applicable non-bankruptcy laws, unless the Company first obtains affirmative consent from the Company's customers . . . .").]

8. Debtors now "elect" a two-step sale, in which genetic data and biological samples are first sold under § 363 to a yet-to-be-formed, non-debtor Delaware LLC, and then Debtors sell the equity of that LLC under § 363 to TTAM. [*See* Dkt. No. 739 at 38 (Debtors "may" elect equity-transfer structure); Dkt. No. 746 at 2 ("Debtors have elected . . . to structure the transactions . . . through the NewCo Drop Down and NewCo Equity Transfer . . . .").] Thus, say Debtors, GIPA is now inapplicable. Not so.

9. The Court must look through this proposed two-step transaction to see it for what it is: A sale of consumers' genetic data and biological samples to TTAM. To be sure, this has been Debtors' stated goal from the start of this bankruptcy case: "Debtors commenced these chapter 11 cases to effectuate a value-maximizing sale of substantially all or a portion of their assets . . . ." [Dkt. No. 30 at 5.] And this is precisely how 23andMe itself characterizes the transaction: 23andMe "has entered into a definitive agreement with TTAM . . . for the sale of substantially all of the Company's assets . . . for a purchase price of $305 million." 23andMe Press Release (Jun. 13, 2025), https://investors.23andme.com/node/10471/pdf (last visited Jun. 15, 2025).

10. Debtors' last-minute recasting of this asset sale into a contrived "equity" sale is an attempt to evade applicable state-law transfer restrictions, like GIPA, which this Court should not countenance. *See, e.g.*, *In re Meill*, 441 B.R. 610, 615 (B.A.P. 8th Cir. 2010) ("A sale of

3

estate property outside the ordinary course of business . . . may be approved if it is for a fair and reasonable price and in good faith.") (quoting *In re LeBlanc, Inc.*, 299 B.R. 546, 552 (Bankr. N.D. Iowa 2003)) (emphasis added).

11. Simply put, any transfer of genetic data or biological samples authorized under § 363 must comply with applicable state-law transfer restrictions. *See, e.g.*, *In re Schauer*, 835 F.2d at 1225. Debtors' current proposal stills fails to do so. For this reason alone, the Court should deny the proposed sale.

II. **IN ANY EVENT, DEBTORS' TWO-STEP TRANSACTION IS LEGALLY INFIRM ON ITS FACE AND CANNOT BE APPROVED**

12. Regardless, Debtors' proposed two-step sale also legally fails on its own terms for at least several standalone reasons.

13. First, the proposed § 363 sale of genetic data and biological samples from 23andMe to the yet-to-be-formed, non-debtor Delaware LLC constitutes a "transfer or disclosure" of protected genetic material to a "third party," thus triggering GIPA's "separate and express consent" requirement. Cal. Civ. Code § 56.181(a)(2)(D). Debtors' recent filings are replete with representations confirming the "transfer" of genetic data and biological samples from one legal entity to another.[5] Accordingly, far from evading GIPA or other state-law transfer restrictions, Debtors' proposed two-step sale falls headlong into them.

14. Debtors will no doubt argue that this new non-debtor LLC is somehow not a "third party,"[6] but this argument is without any legal basis. *See, e.g.*, *Skouras v. Admiralty Enters., Inc.*, 386 A.2d 674, 681 (Del. Ch. 1978) ("Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity.");

---

[5] *See, e.g.*, Dkt. No. 739 at 26 ("'Industry Data' Means all Customer Data and all biological samples . . ., including genetic data, processed genetic data"), 38 ("Sellers may elect to sell, transfer, convey, assign, deliver and set over to a newly-formed Delaware [LLC] . . . all of the right, title, benefit and interest of Sellers in, to and under, the Industry Data, Personal Information and such other Acquired Assets as Purchaser may approve"); Dkt. No. 746 at 2 ("Debtors sell, transfer, convey, assign, deliver, and set over the Industry Data . . . to a newly-formed Delaware [LLC]").

[6] On the other hand, assuredly, Debtors will simultaneously maintain that NewCo is enough of a "third party" to warrant § 363(m) third-party–purchaser status. Debtors cannot have it both ways.

4

*Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 231 A.2d 450, 454 (Del. Ch. 1967) ("[A] corporate entity must be regarded as more than a mere formality. It is an entity distinct from its stockholders even if its stock is wholly owned by one corporation."). To the extent Debtors attempt to muster statutory ambiguity (where none exists), California law is clear how to resolve it: The interpretation that provides "the greatest protection for the right of privacy for consumers shall control." Cal. Civ. Code § 56.184(b); Cal. Civ. Code § 1798.175 ("[P]rovisions of the law that afford the greatest protection for the right of privacy for consumers shall control."). Here, the "greatest protection" is unquestionably honoring affected consumers' statutory "separate and express consent" rights under GIPA. Debtors' contrived transfer structure does not and cannot evade GIPA or other state-law transfer restrictions.

15. Moreover, Debtors' proposed two-step sale fails under for § 363 for lack of consideration. *See, e.g.*, *In re Meill*, 441 B.R. at 615 (sale must be "for a fair and reasonable price"). Here, Debtors propose transferring genetic data and biological samples worth perhaps millions of dollars to a newly formed, non-debtor LLC, without any assets or capitalization, in exchange for an almost certainly worthless IOU note.[7] While TTAM proposes to pay Debtors $305 million for its equity in the newly formed LLC in step two, the LLC will not see a penny of this consideration. Accordingly, under Debtors' proposal, the newly formed LLC will acquire valuable assets from Debtors in exchange for, at most, nominal consideration (i.e., a worthless note). *See, e.g.*, *United States v. Fincher*, 593 F.3d 702, 706 (8th Cir. 2010) ("nominal consideration" is not "reasonably equivalent value"). This cannot be approved under § 363. Indeed, this transaction would almost certainly be avoidable as fraudulent transfer if incurred prior to Debtors' bankruptcy filing. *See* 11 U.S.C. § 548(a)(1).

16. This also means that Debtors' proposed transaction must be denied the protections of § 363(m). It involves a sale of purportedly valuable estate assets to an entity that Debtors

---

[7] In their publicly filed documents, Debtors allude to the parties "cooperat[ing] in good faith" to draft documents to effectuate the "NewCo Equity Transfer," such as "promissory notes." [*Id.*] This cooperation extends to "any amendment to this Agreement as may be necessary or appropriate to effectuate the NewCo Drop Down and NewCo Equity Transfer" [*id.*], transforming the purportedly final APA into a moving target.

necessarily disclaim is a third party, for nominal consideration (i.e., not for value), and designed to evade application of state law (i.e., not in good faith). *See, e.g.*, *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003) ("Section 363(m) protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale."); *In re Abbotts Dairies*, 788 F.2d 143, 149 (3d Cir. 1986) ("Courts applying section 363(m) . . . turn[] to traditional equitable principles . . . encompass[ing] one who purchases in 'good faith' and for 'value.'").

17. Finally, Debtors two-step proposal is an improper use of § 363, constituting a *sub rosa* plan. "The reason *sub rosa* plans are prohibited is based on a fear that a debtor-in-possession will enter into transactions that will, in effect, 'short circuit the requirements of [C]hapter 11 for confirmation of a reorganization plan.'" *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) (quoting *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983)); *see also, e.g.*, *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1135 (8th Cir. 1984).

18. Here, Debtors propose to do exactly that. For example, through their proposed two-step transaction, Debtors contemplate creating a new, non-debtor entity and transferring estate assets to it. However, the Bankruptcy Code expressly authorizes this only through a Chapter 11 plan. *See* 11 U.S.C. § 1123(a)(5)(B) (authorizing plan provisions that "transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan"). On the other hand, nothing in § 105, § 363, or § 365 (the provisions on which Debtors' purport to rely) expressly authorizes what Debtors propose here. And for good reason. At bottom, Debtors' two-step proposal amounts to an attempt to circumvent the procedural safeguards of a Chapter 11 plan, including, for example, provision of a court-approved disclosure statement with adequate information (instead of the 400-word description in Section 2.8(a) of TTAM's APA filed on the Saturday before the sale hearing), 11 U.S.C. § 1125; and assurance that dissenting, impaired claimants will receive at least what they would receive if the estate were liquidated, 11 U.S.C. § 1129(a)(7).

19. Courts have repeatedly rejected tactics—exactly like what Debtors propose

here—that attempt to avoid Chapter 11's procedural safeguards, and this Court should too. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468-69 (2017) (rejecting proposed transaction that "circumvent[s] the Code's procedural safeguards"); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) (reversing asset sale, holding that § 363 does not "gran[t] the bankruptcy judge carte blanche " or "swallo[w] up Chapter 11's safeguards").

## CONCLUSION

20. For these reasons and those in the People's initial objection [Dkt. No. 683], the Court should deny Debtors' proposed sale.

Dated: June 16, 2025

Respectfully submitted,

Rob Bonta
Attorney General
Nicklas A. Akers
Senior Assistant Attorney General

/s/ Bernard A. Eskandari
Bernard A. Eskandari #244395CA
Stacey D. Schesser #245735CA
Supervising Deputy Attorneys General
Yen P. Nguyen #239095CA
Daniel M.B. Nadal #299661CA
Deputy Attorneys General
CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Ave., Ste. 11000
San Francisco, California 94102
Telephone:   (415) 510-3497
Facsimile:    (916) 731-2146
Email:          bernard.eskandari@doj.ca.gov
                     stacey.schesser@doj.ca.gov
                     titi.nguyen@doj.ca.gov
                     daniel.nadal@doj.ca.gov

*Counsel for the People of the State of California*

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on June 16, 2025, a true and correct copy of the foregoing document was filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri and was served on the parties registered to receive electronic notice via the Court's CM/ECF System.

                                      /s/ Bernard A. Eskandari
                                      An Attorney for the People of the State of California