**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| 23ANDME HOLDING CO., *et al.*,[1] | Case No. 25-40976-357 |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 606, 729 |
| | Hearing Date: June 24, 2025 at 9:00 a.m. (CT) |
| | Objection Deadline: June 24, 2025 at 9:00 a.m. (CT) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**TO MOTION TO EXPEDITE HEARING ON MOTION TO APPOINT**
**AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby objects (the "Objection") to the *Motion to Expedite Hearing on Motion for Entry of an Order Directing the Appointment of an Official Committee of Equity Security Holders Pursuant to 11 U.S.C. § 1102* (the "Motion to Expedite")[2] filed by certain holders of Class A common stock of 23andMe Holding Co. (collectively, the "Moving Shareholders") in connection with the Moving Shareholders' *Motion for Entry of an Order Directing the Appointment of an Official Committee of Equity*

---

[1] The Debtors in each of these cases are: 23andMe Holding Co., 23andMe, Inc., 23andMe Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] Docket No. 729.

*Security Holders Pursuant to 11 U.S.C. § 1102* (the "Equity Committee Motion").[3] In support of its Objection, the Committee respectfully states as follows:

## BACKGROUND

1. On March 23, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition Date, the Debtors have remained in possession of their assets and continue to operate and manage their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On April 3, 2025, the Office of the United States Trustee for Region 13 (the "U.S. Trustee") appointed a seven-member Committee consisting of: (i) Laboratory Corporation of America Holdings; (ii) Workday, Inc.; (iii) Telus International Services Limited; (iv) Jellyfish US Limited; (v) Whitney S. Grubb; (vi) Pamela Zager-Maya; and (vii) Michelle Igoe.[4]

### A. Current Case Status

3. On March 24, 2025, the Debtors filed a motion to sell substantially all of their assets pursuant to section 363 of the Bankruptcy Code.[5] On March 28, 2025, the Court approved bid procedures for the sale process.[6]

4. Following a robust marketing process, the Debtors conducted an auction from May 14 to May 16, 2025, which concluded with the Debtors selecting the $256 million bid from Regeneron Pharmaceuticals, Inc. ("Regeneron") as the winning bidder and the $146 million

---

[3] Docket No. 606. Capitalized terms used but not defined in this Objection have the meanings ascribed to them in the Equity Committee Motion.

[4] Docket No. 159.

[5] Docket No. 30.

[6] Docket No. 125.

bid from TTAM Research Institute ("TTAM") as the backup bid. Following the auction, TTAM submitted a new $305 million bid and sought to reopen the auction process.[7] Following substantial efforts to resolve the issues amongst the parties, the Debtors filed a motion on May 31, 2025, to establish procedures for a supplemental bidding process between Regeneron and TTAM (the "Supplemental Bidding Motion").[8]

5. The Court heard the Supplemental Bidding Motion on June 4, 2025 (the "Supplemental Bidding Hearing"), and ultimately approved a final proposal session to take place on June 13, 2025.[9] At the June 13 final proposal session, attended by the Debtors and the Committee, Regeneron failed to submit an additional bid and TTAM was declared the new winning bidder.[10]

6. Since the outset of these chapter 11 cases, numerous parties including the National Association of Attorneys General ("NAAG") on behalf of 28 states, as well as the states of Texas, California, Tennessee and Alaska (collectively, the "States") have voiced concerns regarding the proposed sale and the treatment of personally identifiable information ("PII"). Most recently, NAAG and the States filed various objections to the sale and initiated adversary proceedings (collectively, the "Governmental Challenges") to limit the Debtors' ability to transfer PII and for declaratory relief regarding the Debtors' property rights in PII.[11] In broad strokes, the

---

[7] *See Objection of TTAM Parties to Debtors' Motion for Entry of an Order (I) Establishing Procedures for the Submission of Final Proposals from the Backup Bidder and Successful Bidder and (II) Granting Related Relief*, Docket No. 601, at ¶¶ 1-5.

[8] Docket No. 574.

[9] *See Proposed Agenda for Hearing on June 4, 2025 at 1:30 p.m.*, Docket No. 627; *Order (I) Establishing Procedures for the Submission of Final Proposals from the Backup Bidder and Successful Bidder and (II) Granting Related Relief*, Docket No. 657.

[10] *Notice of Winning Bidder with Respect to the Final Proposal Procedures to Acquire the Debtors' Assets*, Docket No. 739 at 2.

[11] *See, e.g.*, *The States' Complaint for Declaratory Judgment*, Docket No. 686; *The People of the State of California's Objection to Debtors' Proposed Asset Sale*, Docket No. 683; *The States' Objection to the Debtors' Proposed Sale of Customer Assets*, Docket No. 687; *State of Tennessee's Limited Objection to the*

-3-

Governmental Challenges assert that the sale violates various state laws governing consumer privacy and the sale of genetic data.[12] The Governmental Challenges raise issues that all parties supporting the sale must navigate and address to preserve any chance for the Debtors to maximize recoveries for all stakeholders.

7.  The hearing on the sale is currently scheduled to begin on June 18 and continue on June 20, 2025.

B.  **The Repeated Equity Committee Requests**

8.  On March 31, 2025, the Moving Shareholders sent a letter to U.S. Trustee (as supplemented on April 9, 2025) requesting the appointment of a committee of equity security holders under section 1102(a)(2) of the Bankruptcy Code (an "Official Equity Committee").[13] The Debtors opposed, and on April 14, 2025, the U.S. Trustee denied the Moving Shareholders' request.[14]

9.  Barely a month later, on May 16, 2025, the Moving Shareholders renewed their request (as further supplemented on May 19, 2025) for the U.S. Trustee to appoint an Official Equity Committee.[15] The Debtors and the Committee both opposed the request. On May 30, 2025, the U.S. Trustee again declined to appoint an Official Equity Committee.[16]

---

*Debtors' Motion Approving Sale of Assets*, Docket No. 693; *The State of Texas' Objection to Debtors' Sale Transaction and Proposed Sale Order*, Docket No. 703.

[12] *See, e.g., The States' Objection to the Debtors' Proposed Sale of Customer Assets*, Docket No. 687 at ¶ 33 (arguing, "the Debtors and Purchasers must comply with the respective states' laws prohibiting the sale, transfer, or disclosure of genetic data."); *see also id.* at Ex. A.

[13] Equity Committee Motion at Ex. D.

[14] *Id.* at ¶ 47.

[15] Equity Committee Motion at Ex. F.

[16] *Id.* at ¶ 48.

10. Less than a week later, on June 3, 2025, the Moving Shareholders filed the Equity Committee Motion.[17] The Moving Shareholders, however, did not notice the Equity Committee Motion for a hearing.

11. The Moving Shareholders also filed a response to the Supplemental Bidding Motion on June 3, 2025, and appeared and made arguments at the June 4, 2025, Supplemental Bidding Hearing.[18] At that hearing, the Court briefly addressed potential scheduling of the Equity Committee Motion.[19] The Moving Shareholders assured the Court they would seek to establish a consensual schedule for litigating the Equity Committee Motion.[20]

12. On June 12, 2025, while the Committee (and presumably the Moving Shareholders themselves) was in the midst of preparing for both the June 13 continued bidding session and the sale hearing scheduled to begin on June 18, 2025, the Moving Shareholders filed the Motion to Expedite. The Committee is currently working to finalize its statement in support of the sale, which addresses not only the numerous Governmental Challenges but also the 120-page consumer ombudsman report that was filed on June 11, 2025.

13. Notably, counsel for the Moving Shareholders did not consult, or seek to negotiate a consensual scheduling order with, the Committee before they filed the Motion to Expedite. In fact, counsel for the Moving Shareholders has yet to try and even contact counsel for the Committee since the filing of the Motion to Expedite to discuss any issues regarding the motion, the sale process or the chapter 11 cases as a whole.

---

[17] Docket No. 606. At the same time, the Moving Shareholders also filed a response to the Supplemental Bidding Motion.

[18] Docket No. 609.

[19] Hr'g Tr., 127:11-128-5, June 4, 2025.

[20] *Id.* at 128:2-3.

## OBJECTION

14. Federal Rule of Bankruptcy Procedure 9006(c)(1) ("Rule 9006") allows a bankruptcy judge to reduce the time for a hearing "for cause."[21] The party seeking to reduce time under Rule 9006 bears the burden of demonstrating that cause exists to expedite a matter.[22] "[B]ankruptcy courts should review *ex parte* motions . . . [under Rule 9006] carefully to be certain that there is, indeed, good cause for the handicap to the respondents and to the court's information-gathering capacity that is likely to result."[23]  "[M]otions to expedite should be used sparingly, rather than as a matter of course."[24]

15. The Motion to Expedite is devoid of any showing of cause that would justify expediting the Equity Committee Motion. That is because no cause exists. The Moving Shareholders will not be prejudiced in any way if the Equity Committee Motion is heard on a standard and properly noticed schedule. Armed with capable counsel, the Moving Shareholders have been, and will continue to be, actively engaged in these cases to advocate their interests while the Equity Committee Motion is litigated in due course. The Moving Shareholders have filed pleadings in the cases, appeared at critical hearings, and were invited to participate in the June 13, 2025, continued bidding session. They will also presumably be filing papers in support of sale approval and appearing at the sale hearing scheduled to commence in less than 48 hours. The voices of the Moving Shareholders have been and will continue to be heard. Nothing about that will change if the Motion to Expedite is denied, demonstrating that the Moving Shareholders will not be harmed in any way if the Equity Committee Motion is heard on regular notice.

---

[21]   Fed. R. Bankr. P. 9006(c)(1). *See also* Bankr. E.D. Mo. L.R. 9013-2(A).

[22]   *See In re Villareal*, 160 B.R. 786, 788 (Bankr. W.D. Tex. 1993).

[23]   *In re Gledhill*, 76 F.3d 1070, 1084 (10th Cir. 1996) (internal quotations and citations omitted).

[24]   *Villareal*, 160 B.R. at 788.

16. If the Equity Committee Motion truly was exigent, which it is not, the Moving Shareholders would have filed it sooner or at least properly noticed it for a hearing when they filed it on June 3. The Moving Shareholders also fail to explain why they have failed to engage the Committee to establish a consensual schedule for the Equity Committee Motion, as they assured the Court they would do at the June 4, 2025, Supplemental Bidding Hearing. Contrary to those assurances, counsel for the Moving Shareholders has not sent one email, or placed one call, to counsel to the Committee to discuss the Equity Committee Motion. In fact, the Committee only learned of the Motion to Expedite when it was filed. Rule 9006 is not a mechanism for parties to escape the consequences of their own delay.[25]

17. Had counsel for the Moving Shareholders made the effort, the Committee would have explained that discovery, briefing and argument on the Equity Committee Motion should occur on a standard schedule to commence after the sale hearing has concluded. The sale is currently the most important issue in these chapter 11 cases, to which the key constituencies must devote their full, present attention. Presumably the Moving Shareholders appreciate that without an approved sale, there is no prospect of equity recovery.

18. Unlike the Moving Shareholders, the Committee will be prejudiced if the Motion to Expedite is granted. The three-page Motion to Expedite provides no explanation for why the Committee should be forced to divert its attention from case-dispositive sale issues to take discovery and brief and prepare for an unnecessarily expedited hearing on the Equity Committee Motion at this pivotal time.[26] As the Court is aware, the sale hearing will be taking place over two

---

[25] *See id.* at 787 (holding that "cause" under Bankruptcy Rule 9006 is not shown when the cause for an expedited hearing is one of the movant's own making).

[26] *See, e.g., In re SunEdison, Inc.*, 556 B.R. 94, 100 (Bankr. S.D.N.Y. 2016) (referencing evidentiary hearing related to motion to appoint equity committee); *In re Pilgrim's Pride, Corp.*, 407 B.R. 211, 214 (Bankr. N.D. Tex. 2009) (issuing decision following evidentiary hearing); *In re Spansion, Inc.*, 421 B.R. 151, 160-63 (Bankr. D. Del. 2009) (analyzing competing valuation analyses developed in discovery); *In re Mirant Corp.*,

-7-

days this week, with a break on Thursday for a court holiday. During that time, the Committee expects to be actively engaged with the relevant parties in interest with respect to the sale and a hopeful consensual resolution that will preserve value for all stakeholders. With a proposed hearing next Tuesday, the Motion to Expedite would severely prejudice the Committee's ability to conduct discovery and brief the issues raised in the Equity Committee Motion on shortened time. Rule 9006 requests are used sparingly to avoid precisely that type of handicap.[27]

19. In short, the Moving Shareholders have failed to demonstrate that cause exists to accelerate the Equity Committee Motion, and the Motion to Expedite should be denied. Instead, the Equity Committee Motion should be scheduled on a date on or after July 1, 2025, before which time the parties will (i) know the results of the sale hearing; and (ii) hopefully engage in productive discussions regarding a consensual path forward that does not require the Court's intervention.

---

334 B.R. 800, 810-20 (Bankr. N.D. Tex. 2005) (analyzing evidence, including 454 exhibits submitted by parties).

[27] *See, e.g., In re A.H. Coombs, LLC*, no. 16–25559, 2016 WL 7985367, at *4 (Bankr. D. Utah Dec. 22, 2016) ("While the Bankruptcy Rules allow for preliminary hearings on cash collateral to be expedited, requesting shortened notice on other matters is to be done sparingly, and not as a matter of course.").

## **CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court (i) deny the Motion to Expedite; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 16, 2025

**STINSON LLP**

*/s/ Nicholas Zluticky*
Nicholas J. Zluticky (MO #61203)
Zachary H. Hemenway (MO #59670)
Miranda S. Swift (MO #75782)
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email: nicholas.zluticky@stinson.com
    zachary.hemenway@stinson.com
    miranda.swift@stinson.com

-and-

**KELLEY DRYE & WARREN LLP**
Jason R. Adams (admitted *pro hac vice*)
Eric R. Wilson (admitted *pro hac vice*)
Maeghan J. McLoughlin (admitted *pro hac vice*)
Steven Yachik (admitted *pro hac vice*)
3 World Trade Center
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
E-mail: jadams@kelleydrye.com
    ewilson@kelleydrye.com
    mmcloughlin@kelleydrye.com
    syachik@kelleydrye.com

*Counsel to the Official Committee of Unsecured Creditors*