UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br><br>       Debtors. | Chapter 11<br><br>Case No. 25-40976<br><br>(Jointly Administered)<br><br>Docket Nos.  30, 125, 420,<br>         574, 657, 668,<br>         703, 739, 746<br><br>Hearing Date:  June 18, 2025<br>Hearing Time:  9:00 a.m. CDT<br>Hearing Location: Thomas F. Eagleton<br>         U.S. Courthouse<br>         111 S. 10th Street<br>         Courtroom 5 North<br>         St. Louis, MO 63102 |

**THE STATE OF TEXAS'S SUPPLEMENTAL OBJECTION
TO DEBTORS' SALE TRANSACTION AND PROPOSED SALE ORDER**

   The State of Texas, acting by and through the Office of the Texas Attorney General ("Texas"), hereby files this supplemental objection (the "Supplemental Objection") to the Debtors' newly proposed transaction that includes two "sales" of all or substantially all of their assets, first, to a newly-formed non-debtor affiliate or subsidiary ("NewCo"), and second, to the auction winner TTAM Research Institute ("TTAM"), as currently contemplated in the June 13, 2025 *Notice of Winning Bidder with Respect to the Final Proposal Procedures to Acquire the Debtors' Assets*[2] and as further modified in the *Notice of (I) Adjournment of Sale Hearing and (II) Election of NewCo to Drop Down and NewCo Equity Transfer Pursuant to TTAM Asset Purchase Agreement*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.
[2] D.E. 739.

1

(the "Newly Proposed Sales Notice") and under the June 13, 2025 Asset Purchase Agreement between the Debtors and TTAM (the "Revised TTAM APA").[3] As discussed herein, the Debtors cannot sell, use, transfer or disclose the property of their estimated 850,000 Texas customers as contemplated, the Bankruptcy Code does not authorize their transactions, and this Court lacks jurisdiction to approve the relief requested by the sale parties. In support of this Supplemental Objection, Texas respectfully states as follows:[4]

## I. RELEVANT BACKGROUND

1. Texas repeats and reasserts paragraphs 1-11 of its Objection to Debtors' Sale Transaction and Proposed Sale Order.[5]

2. Since the beginning of this bankruptcy case, Texas has asked the Debtors whether they intend to market the Highly Sensitive Data and how they intend to comply with Texas's laws. This request for information has continued throughout the pendency of this case.

3. A *Notice of Successful and Backup Bidders with Respect to the Auction of Debtors' Assets* was filed on May 19, 2025 (the "Initial Sale Notice"), indicating bids by two third parties, Regeneron and TTAM, pursuant to the terms of the Regeneron APA and TTAM APA, respectively.[6]

4. On June 6, 2025, following a contested hearing, an *Order (I) Establishing Procedures for the Submission of Final Proposals from the Backup Bidder and Successful Bidder and (II) Granting Related Relief* was entered by the Court.[7] Although the Order provides that objections to the Initial Sale Notice and APAs are due no later than June 10, 2025, the Court, on

---

[3] D.E. 746.
[4] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Texas's *Objection to Debtors; Sale Transaction and Proposed Sale* Order D.E. 703 (the "Objection"). Unless otherwise noted, references to the "Bankruptcy Code" or "Section" shall mean Title 11 of the United States Code and the specific sections referenced thereunder.
[5] D.E. 703.
[6] D.E. 420.
[7] D.E. 657.

2

the record, provided assurances that should the Initial Sale Notice or revised APAs include substantial changes, parties in interest could file supplemental or amended objections up until the time of the hearing.

5. On June 9, 2025, Texas filed *The State of Texas' Complaint for Declaratory Judgment* after it became clear that the Debtors and neither potential purchaser would be seeking separate express consent from Texas customers prior to consummation of the sale and in violation of those customers' property rights.[8]

6. On June 10, 2025, Texas filed its Objection to the Initial Sale Notice and APAs.[9] Texas incorporates and reasserts the objections therein.

7. On June 13, 2025, the Debtors filed the Newly Proposed Sales Notice and Revised TTAM APA that includes an entirely new process with two transactions, including a yet to be created non-debtor subsidiary or affiliate, and a transaction between two non-debtors.[10]

8. On June 14, 2025, the Debtors filed *a Notice of (I) Adjournment of Sale Hearing and (II) Election of NewCo Drop Down and NewCo Equity Transfer Pursuant to TTAM Asset Purchase Agreement* adjourning the hearing to approve the Initial Sale Notice and APAs, and now Newly Proposed Sales Notice and Revised TTAM APA, to June 18, 2025 at 9:00 a.m. CDT.[11]

9. On June 16, 2025, Debtors filed a *Notice of Change of Ownership of Personal Information* (the "Customer Notice").[12]

---

[8] D.E. 688; Adversary Proceeding No. 25-04036, D.E. 1.
[9] D.E. 703.
[10] See D.E. 739.
[11] D.E. 746.
[12] D.E. 752.

3

## II. OBJECTION AND AUTHORITY IN SUPPORT

A. **The Bankruptcy Code Does Not Permit the Newly Proposed Sales Notice, and the Court Does Not Have Jurisdiction to Authorize the Revised TTAM APA.**

*(1) The Newly Proposed Sales Notice and Revised TTAM APA Create an Entirely New Two-Step Process and Substantially and Materially Changes the Initial Sale Notice and TTAM APA.*

10. The Newly Proposed Sales Notice and Revised TTAM APA substantially and materially changes the Initial Sale Notice and TTAM APA in a number of ways that are not appropriate under section 363. The Debtors, through the Newly Proposed Sales Notice, seek approval of a Debtor-TTAM controlled process designed to circumvent plan requirements, the section 363 sale process, and Texas law. First, through a two-step process, the Debtors will create NewCo, a special purpose non-debtor subsidiary whose creation, structure, purpose, and other details are not disclosed; the Debtors will then sell estate assets, including Texas customer's Highly Sensitive Data, to this non-debtor entity without any defined or appropriately disclosed consideration and free and clear of any interest in such assets.[13] Second, TTAM will purchase the equity interests in NewCo in what the Debtors call an "Equity Transfer," again without any defined or disclosed consideration."[14] Although the Revised TTAM APA includes a "Purchase Price" of $302,500,000, at no point do the documents describe how the Purchase Price is exchanged, including by and to whom. Furthermore, NewCo has no resources to purchase the assets. This entire two-part structure appears to have been created in bad faith solely as a mechanism to undermine Texas customers' property rights and evade Texas law and is in violation of § 363(b), (f), (m), (n), and (p).

---

[13] D.E. 739, Section 2.8, pp. 38-39, 79 ("Upon the Sellers' election to effect a NewCo Drop Down, the parties shall cooperate in good faith to structure the NewCo Drop Down in a manner that is reasonably acceptable to the parties **including with respect to the determination of the purchase price payable by NewCo in consideration** . . . ." (emphasis supplied) (pgs. 31, 72).
[14] Id.

11. In addition, the Debtors are now proposing a "Plan Toggle" transaction in case the Court does not approve the Newly Proposed Sales Notice and Revised TTAM APA,[15] removing the Lemonaid Assets previously included in the TTAM APA, now providing that "Purchaser" will serve as a stalking horse bidder (without separate court authority) to acquire the "reorganized equity interests" of the Lemonaid Assets following the filing of a plan of reorganization.[16] The sale price is reduced by $2.5 million in contemplation of the Purchaser successfully acquiring the Lemonaid Assets in a yet to be filed plan of reorganization.[17] However, as part of the Lemonaid Plan Toggle, the "Purchaser" may elect, by notifying Sellers in writing not less than two (2) days prior to the sale closing date, that they require Sellers to wind-down the Lemonaid Business rather than proceed to a plan process, and with no notice to be provided to any other entity than between Purchaser and Seller.[18]

12. Rather than proceeding with the Initial Sale Notice and TTAM APA free and clear of liens and interests pursuant to section 363(f), which drew multiple objections by multiple parties, or providing an equity sale transaction whereby TTAM purchases the equity of Debtors directly and through which all liabilities of the Debtors would also transfer, the Debtors are essentially proposing a post-petition "Two-Step" process, by which the Debtors transfer the assets out of the estate and shed its liabilities, while ultimately retaining the assets through the non-debtor subsidiary, which will then be acquired by TTAM, a third party entity. These Newly Proposed Sale Notices and Revised TTAM APA are clearly an attempt by Debtors and TTAM to circumvent state regulatory law and for TTAM to escape the liabilities it incurred pre-petition, including class action claims and state enforcement claims involving significant data breaches which occurred

---

[15] Id., Section 11.8.
[16] D.E. 739, Section 7.21.
[17] D.E. 739, Section 7.21 (pgs. 36, 72).
[18] Id.

under the leadership of TTAM's primary investor.

### *(2) The Transactions Under the Revised TTAM APA Constitute a Sub Rosa Plan.*

13. The Revised TTAM APA is an attempt by the Debtors and TTAM to circumvent the requirements under Chapter 11 for confirmation of a reorganization plan through the terms of their agreement.[19] While a "sale of substantially all of the Debtor's assets other than in the ordinary course and without the structure of a Chapter 11 Disclosure Statement and Plan is not prohibited by the Bankruptcy Code," certain requirements must be met, and the transaction closely scrutinized.[20] The Debtors bear the heightened burden of proving that the sale is not a sub rosa plan, and such elements include that (1) accurate and reasonable notice has been given to all creditors and parties in interest, (2) that a sound business judgment has been established for such sale without a disclosure statement and plan of reorganization, (3) the price to be paid is fair and reasonable; and (4) the transaction does not "unfairly benefit insiders or the prospective purchasers, or unfairly favor a creditor or class of creditors."[21]

14. In the present case, accurate and reasonable notice has clearly not been provided — the Revised TTAM APA was filed on Friday, June 13, 2025, the notice thereto filed on Saturday, June 14, 2025, with the hearing scheduled for Wednesday, June 18, 2025. It is unclear whether parties in interest have been given sufficient notice or disclosure of the two new transactions that are before the Court for approval. As stated above, the Revised TTAM APA provides no details or disclosure regarding New Co's creation, structure, purpose, or use, and besides the amount of the Purchase Price, no specific details regarding consideration or exchange are provided. Further,

---

[19] See In re Humboldt Creamery, LLC, No. 09-11078, 2009 Bankr. LEXIS 2470 (Bankr. N.D. Cal. Aug. 14, 2009); In re Braniff Airways, Inc., 700 F.2d 935, 940 (5th Cir. 1983).
[20] See In re Channel One Communications, Inc., 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (citing In re Lionel Corp., 722 F.2d 1063, 1070–71 (2nd Cir. 1983)).
[21] In re George Walsh Chevrolet, Inc., 188 B.R. 91, 101–02 (Bankr. E.D. Mo. 1990); see also In re The Landing, 156 B.R. 246, 249 (Bankr. E.D. Mo. 1993).

6

the transaction with TTAM is clearly an insider transaction, as it involves an entity with a current Board Member of the Debtors at the helm, a dressed-up attempt by the parties to circumvent statutory requirements regarding property law and privacy interests in genetic data, and an attempt by TTAM to purchase estate assets in the form of equity without the burden of estate liabilities. In common English, this is nothing more than a shell game to avoid what should otherwise be fully disclosed in a disclosure statement and plan of reorganization.

15. Additionally, the Revised TTAM APA reflects terms related to an as-yet-to-be-filed plan with terms for the sale of an estate asset (Lemonaid Health) to TTAM that are clearly beneficial to TTAM, as the overall purchase price previously disclosed to the Court is reduced by the amount of the anticipated sale of the Lemonaid assets. Further, TTAM is granted the right to dictate the terms of purchase of the Lemonaid assets to be proposed in a plan, or demand, no later than two (2) days prior to Closing of this Sale, to liquidate the Lemonaid assets without notice or opportunity to respond. This is clearly a benefit to not only the prospective purchaser, but a purchaser who is an insider.

### *(3) The Proposed Transaction is Beyond the Jurisdiction of the Bankruptcy Court.*

16. The transactions under the Revised TTAM APA cannot be approved pursuant to section 363(b)(1)(B) as there has been no finding by this Court that "no showing [has been] made that such sale…would violate applicable nonbankruptcy law."[22] Quite the contrary, the Debtors have gone to incredible lengths to structure the Revised TTAM APA in an attempt to avoid compliance with Texas's property and privacy laws.

17. The Debtors have failed to cite any authority authorizing the creation of NewCo in the course of this bankruptcy proceeding. The Court also lacks jurisdiction over NewCo, which is

---

[22] 11 U.S.C. § 363(b)(1)(B).

7

a non-existent, yet to be created, non-debtor subsidiary. "[J]urisdiction cannot be conferred by consent."[23] "Ownership of all of the outstanding stock of a corporation is not the equivalent of ownership of the subsidiary's property or assets."[24] Even if NewCo consented to this Court's jurisdiction, once the Debtors transfer its assets and liabilities to NewCo, this Court has no authority to enter a sale order that effectively transfers NewCo's assets and liabilities to TTAM, even if under the guise of an equity transfer.[25]

B.   **The Revised TTAM APA Does Not Comply with Texas Law.**

18.   Texas supplements its original Objection and objects to the following provisions of the Revised TTAM APA specifically:

   a. Article V: Representations and Warranties, Section 5.1(l)(iv). The following section was added to the Revised TTAM APA, is a substantive change, and conflicts directly with Texas law, specifically the Texas Direct-to-Consumer Genetic Testing Act ("DTC Genetic Testing Act"):[26]

   > Section 5.1(l)(iv): "Except as set forth in the Bankruptcy Order or as required as a result of, or arising out of circumstances relating to, Purchaser or its Affiliates…**Sellers are not required to provide notice to obtain affirmative opt-in consent from any relevant individual prior to effectuating such transfer**."[27]

   b. Article V: Representations and Warranties, Section 5.1(w)(iv). The following section was added to the Revised TTAM APA, is a substantive change, and

---

[23] Equity Broad. Corp. v. Shubert (In re Winstar Communs. Inc.), 284 B.R. 40, 50 (Bankr. D. Del. 2002) ("Subject matter jurisdiction cannot be conferred upon the bankruptcy courts by consent of the parties." (citing Uranga v. Geib (In re Paso del Norte Oil Co.), 755 F.2d 421, 425 (5th Cir. 1985))).
[24] Parkview-Gem, Inc. v. Stein, 516 F.2d 807, 809 (8th Cir. 1975) (citing In re Gobel, Inc., 80 F.2d 849, 851 (2d Cir. 1936)).
[25] See In re Winstar Communs. Inc., 284 B.R. at 50; see also In re Bernard Technologies, Inc., 398 B.R. 526, 529 (Bankr, D. Del. 2008) (finding that Court lacked jurisdiction over debtor's non-debtor subsidiary because the entities are separate and distinct entities).
[26] Codified primarily in Texas Business & Commerce Code § 503A.001 et seq.
[27] D.E. 739, emphasis added.

8

conflicts directly with Texas law, specifically the Texas DTC Genetic Testing Act:

> Section 5.1(w)(iv): "The Acquired Assets delivered at the Closing shall include the Industry Data. At the Closing, the Industry Data shall transfer to Purchaser or a Designated Purchaser, free and clear of all Liens, other than Permitted Encumbrances. At the Closing, Purchaser or Designated Purchaser shall have good and marketable title to and the right to use, and shall be free to use in substantially the same manner in which Sellers use prior to the Closing, the Industry Data, after giving effect to Section 7.11. Without limiting the generality of the foregoing, as of the Closing**, no Governmental or Regulatory Authority shall have imposed any material restriction or material Lien on the transfer or use of any Industry Data, other than any such restriction or Lien that has been released or overridden**.[28]

c. <u>Article XI: Bankruptcy Matters.</u> The following section was added to the Revised TTAM APA, is a substantive change, and conflicts directly with Texas law, specifically the Texas DTC Genetic Testing Act:

> Section 11.9(l): "The Sale Order, which shall be in form and substance reasonably acceptable to the Purchaser, shall contain, among other provisions, the following provisions: … **provide that Purchaser shall have the right to use the Acquired Assets on and after the Closing Date**…**and that the transfer of the Acquired Assets complies with the Bankruptcy Code and applicable non-bankruptcy law** and, solely to the extent that any party has filed an objection to the Sale that the Sellers' Proposed Use of the Acquired Assets immediately prior to the Closing Date violates the applicable non-bankruptcy law raised in such objection, that **such Proposed Use does not violate applicable non-bankruptcy Law**."[29]

C. **The Transactions in the Revised TTAM APA Would Be Prohibited by Fraudulent Transfer Rules.**

19. Under the Bankruptcy Code, fraudulent transfers are pre-petition transfers made

---

[28] D.E. 739, emphasis added.
[29] D.E. 739, emphasis added.

with "actual intent to hinder, delay, or defraud any entity to which the debtor was or became" indebted to on or after the date of the transfer.[30] Alternatively, fraudulent transfers are transfers where the debtor received less than a reasonably equivalent value in exchange for the transfer and one of the following factors are present: (1) the debtor was insolvent on the date the transfer was made or became insolvent as a result of such transfer; (2) the debtor was engaged in business or a transaction for which any property remaining with the debtor was an unreasonably small capital; (3) the debtor intended to incur debts that would be beyond the debtor's ability to pay as such debts matured; or (4) the debtor made such transfer to or for the benefit of an insider.[31]

20. The Debtors in the present case are creating a new, wholly owned, non-debtor subsidiary to which they intend to transfer substantially all of their assets, which by the sale price, are worth $305 million. As a result of this transfer, the Debtors will be left with no assets. Furthermore, this sale is to an entity owned or controlled, at least in part, by Debtors' previous CEO, Anne Wojcicki, who will receive releases from the Debtors without adequate consideration. Such releases will further cut off the ability of creditors to seek recourse against insiders. The fact that the Debtors have proposed this Two-Step Transaction in an attempt to circumvent compliance with state privacy and property laws, coupled with the significant concerns regarding transferring all of the estate's assets to an insider and releases of insiders' potential liability, are indicative of a fraudulent transfer if this were a pre-petition transfer.

D. **The Filing of and Hearing Regarding the Transactions in the Revised TTAM APA Deprives Creditors and Parties in Interest of Due Process.**

21. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to

---

[30] 11 U.S.C. § 548(a)(1).
[31] See id.

10

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[32] Such notice "must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance."[33] The purpose of the notice requirement is "to give the creditors, who have a vital interest in the maximum realization from the assets of the estate, an opportunity to review the terms of any proposed sale, and to object thereto, if they deem the terms and conditions not to be in their best interests."[34]

22. In the late afternoon on Friday, June 13, 2025, the Debtors filed the Newly Proposed Sales Notice that included a substantially and materially Revised TTAM APA.[35] The next day, they filed the related Notice.[36] Texas was given two business days, at most, to review the Revised TTAM APA and file this Supplemental Objection thereto. As explained above in Section III(A), the Revised TTAM APA substantially changed the original APA. Because of these changes, which proposed entirely new transactions that could not possibly have been contemplated upon reading the original APA, Texas should have been allowed at least seven days to file an objection.[37] At the very least, due process requires more than two business days' notice of the new terms of the sale in order to form a proper response and objection thereto. The timeline for these new sales and Revised TTAM APA has deprived all creditors and parties in interest of due process by failing to provide an adequate time for any meaningful review and analysis of the newly proposed Two-Step Transaction.

---

[32] Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (internal citations omitted).
[33] Id. (internal citations omitted).
[34] In re Sapolin Paints, 11 B.R. 930, 936 (Bankr E.D.N.Y. 1981).
[35] D.E. 739.
[36] D.E. 746.
[37] Under Rule 6004 of the Federal Rules of Bankruptcy Procedure, a party's objection is required to be filed "at least 7 days before the date set for the proposed action." Fed. R. Bankr. P. 6004(b).

11

### III. RESERVATION OF RIGHTS

23. Texas reserves the right to further supplement this Supplemental Objection or to raise additional arguments or objections to the transactions as necessary and appropriate.

### IV. CONCLUSION

24. While expeditious consideration of the sale of property is not unusual in bankruptcy proceedings, the sale, transfer, and disclosure of the most sensitive of data must comply with applicable law, including state law that directly provides customers with a property interest in their data. As such, Texas requests the Court deny the Sale Motion as proposed, and in the alternative, require the Debtors and/or any approved Purchaser to obtain express, separate, affirmative consent to the sale from Texas customers prior to the sale closing.

*[Remainder of page left intentionally blank.  Signature page follows.]*

Dated: June 17, 2025

Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**RACHEL R. OBALDO**
Chief for Bankruptcy & Collections Division

*/s/ Layla D. Milligan*
LAYLA D. MILLIGAN
Texas State Bar No. 24026015
ROMA N. DESAI
Texas State Bar No. 24095553
STEPHANIE EBERHARDT
Texas State Bar No. 24084728
Assistant Attorneys General
Office of the Texas Attorney General
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
P: (512) 463-2173/F: (512) 936-1409
layla.milligan@oag.texas.gov
roma.desai@oag.texas.gov
stephanie.eberhardt@oag.texas.gov

ATTORNEYS FOR THE STATE OF TEXAS

13

## CERTIFICATE OF SERVICE

      I certify that a true and correct copy of the foregoing document was filed electronically on the 17th day of June 2025, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

                                        */s/ Layla D. Milligan*
                                        Layla D. Milligan
                                        Assistant Attorney General