**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 25-40976 (BCW)** |
| | ) | |
| **23ANDMEHOLDING CO., et al.,** | ) | **Chapter 11** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| | ) | **Hearing Date:** June 18, 2025 |
| | ) | **Hearing Time:** 9:00 AM CT |
| | ) | **Hearing Location:** |
| | ) | Thomas F. Eagleton US Courthouse |
| | ) | 111 S. 10th Street |
| | ) | Courtroom 5 North |
| | ) | St. Louis, MO 63102 |
| | ) | |
| | ) | **Related to Docket No.** |
| | ) | **30, 125, 420, 693, 739 & 746** |

**STATE OF TENNESSEE'S SUPPLEMENTAL OBJECTION TO THE DEBTORS'**
**MOTION APPROVING SALE OF ASSETS (Relates to Docket #s 30, 125 and 420)**

Comes now the State of Tennessee, by and through the Office of the Tennessee Attorney General, and files its Supplemental Objection to Debtors' Motion Approving the Sale of Assets.

1.     The Debtors have recently selected TTAM as the winning bidder through the auction. DE 739.  The Asset Purchase Agreement submitted by TTAM contained many changes, including the option to proceed with the purchase of the assets through an equity transaction option. The Debtors and TTAM have elected to proceed under the equity route. DE 746.

2     In a nutshell, the proposed equity transaction appears to be that Debtor will create a wholly owned non-debtor entity (NewCo), transfer the Industry Data and other Acquired Assets to NewCo in consideration of a promissory note from NewCo to pay Debtors $305 million, and TTAM will purchase all outstanding equity in NewCo from Debtors for $305 million, which would satisfy NewCo's promissory note.

1

3.      Tennessee maintains that while it does not oppose a sale in principle, it still opposes the transfer of consumers' genetic data without their separate express consent, whether as an asset sale or the new equity transaction.  Under Tennessee law, any sale, transfer or use of Tennessee consumers' genetic data beyond the primary purpose of the Debtors' genetic testing product or service must be conditioned on obtaining separate express consent from each consumer.  Such separate express consent is required here, notwithstanding the Debtors' privacy policies or Purchaser's commitment to continue the privacy policies of the Debtors.  Any such sale, transfer or use without separate express consent from each Tennessee consumer would constitute a violation of Tennessee law for each instance.

4.      Tennessee's Genetic Information Privacy Act ("GIPA") regulates direct-to-consumer genetic testing companies, such as 23andMe. *See* Tenn. Code Ann. § 47-18-4902, 4904. GIPA requires direct-to-consumer genetic testing companies, such as the Debtors, to obtain *express consent from consumers* before collecting, using, or disclosing a consumer's genetic data. *Id.* § 47-18-4904(a)(2). In obtaining such consent, the company must (1) clearly describe its use of the genetic data, (2) specify who has access to any test results, and (3) specify how the company may share the genetic data. *Id.* A company must also obtain *separate express consent* before, among other things, (1) transferring or otherwise disclosing a consumer's genetic data to a person other than the company's vendors or service providers or (2) using the genetic data beyond the primary purpose of the company's genetic testing product or service. *Id.* § 47-18-4904(a)(3)(A)(i)-(iii).

5.      Under GIPA, express consent means a consumer's affirmative response to a "clear, meaningful, and prominent notice regarding the collection, use, or disclosure of genetic data for a specific purpose." *Id.* § 47-18-4902(6). GIPA also requires companies to provide a process by

which consumers can (1) access their genetic data, (2) delete their account and genetic data, and (3) destroy their biological sample. *Id.* § 47-18-4904(a)(6)(A)-(C).

6.      Debtor argues that the transfer of the genetic data of consumers to the newly created company should be allowed, without first obtaining the express consent of consumers, as it is a transfer to an affiliate that should be considered excepted under the genetic privacy laws of Tennessee and other states.  Tennessee's GIPA has no exception for the transfer or disclosure of a consumer's data to an affiliate or subsidiary without the requirement of separate express consent of each consumer.  The only exception stated is for transfers or disclosures to vendors and service providers. *Id.* § 47-18-4904(a)(3)(A)(i).  NewCo is neither a vendor nor a service provider to Debtors.  Its existence is merely a construct created for the desired transaction.

7.      It is not a logical conclusion to find that an affiliate should be excepted since vendors and service providers are excepted from the requirement of separate express consent.

8.      In the absence of language addressing affiliate treatment under in Tenn. Code Ann. § 47-18-4904, Tennessee points to Tenn. Code Ann. § 47-18-4903(4) and (5), where, in considering application of GIPA to research hospitals or academic medical centers, the law specially includes entities affiliated with the research hospitals or academic medical centers.

9.      Further, when drafting The Tennessee Information Protection Act ("TIPA"), which provides Tennessee consumers with certain personal information rights and places new obligations on controllers and processors of data, among other things, the Tennessee Legislature defined "affiliate" and excluded affiliates from the definition of "third party" for TIPA.   Tenn. Code Ann. § 47-18-3301, et seq., effective July 1, 2025. Clearly, the Legislature knew how to include treatment for affiliates if it wanted to in enacting GIPA. It did not, instead only excepting transfers or disclosures to vendors and service providers from the separate express consent requirement.

3

10.     Permitting the sale or transfer of Tennessee consumer's genetic data without the separate express consent of each consumer would disregard Tennessee law.  Tennessee opposes the preemption of the GIPA statutory requirements for separate express consent of a consumer before a transfer or disclosure of their data is permitted or before their genetic data is used in a manner beyond the primary purpose of the debtors' genetic testing product or service.

11.     Tennessee's GIPA should not be preempted by 11 U.S.C. § 363(b).  The question of whether state law should be preempted by federal law generally turns on four questions: Is the state law explicitly preempted by the federal law?   Is the state law implicitly preempted by the federal law because Congress has regulated the entire field? Is the state law implicitly preempted by the federal law because compliance by a private party with federal and state law is impossible? Is the state law implicitly preempted because it creates an obstacle to accomplishment and execution of the full purpose of the federal law?     *Sears, Roebuck and Co. v. O'Brien*, 178 F. 3d 962, 966 (8th Cir. 1999)(citations omitted)  Here, the answer to each question is no.

12.     The filing of a bankruptcy petition did not relieve the Debtors of their obligation to follow federal and state consumer protection laws. See 28 U.S.C. § 959(b); *In re PSA, Inc*., 335 B.R. 580, 586-87 (Bankr. D. Del. 2005); cf. *Midlantic Natl'l Bank v. N.J. Dept. of Env't Prot*., 474 U.S. 494, 504 (1986) (citing the legislative history of Bankruptcy Code section 362, which makes clear that enforcement of consumer protection statutes is not stayed).

13.     Indeed, the parties, through the original Asset Purchase Agreements, already anticipated the requirement to obtain consent. Docket # 420, Ex. A, page 53 at para. 7.3; Ex. B, page 59 at para. 7.3.

14.      As such, this Court should not permit the sale of genetic data in this case, either as an asset sale or the equity transaction without the separate express consent of each consumer whose data is at issue because such a transaction would violate Tennessee law.

15.      Any order permitting the sale should require an explicit statement that separate express consent must be obtained from any Tennessee consumer whose genetic data is to be sold, transferred or used in manner beyond the primary purpose of the company's genetic testing product or service.

16.      Although the equity transaction is a substitute for the direct sale of the Industry Data and genetic data to TTAM, the result should be the same when it comes to consumers' separate express consent.  It is still a different entity that would control the genetic information than the one which consumers contracted with initially, even if some of the new business personnel and operation will be familiar to current consumers.

17.      Beyond the issue of transfer of the data, TTAM must be required to obtain separate express consent before using genetic data beyond the primary purpose of the company's genetic testing product or service.  Tenn. Code Ann. § 47-18-4904(a)(3)(A)(ii),

18.      Tennessee's objection applies to both the proposed winning bid and the backup bid. Both the asset sale of the genetic data and related information and  the equity transaction result in a transfer of consumers genetic data which should require separate express consent under GIPA.

19.      Tennessee reserves the right to supplement or amend this Objection.

WHEREFORE, Tennessee prays that any order

1.  Require separate express consent of each Tennessee consumer for any sale, transfer or change to the manner of use of their genetic data; and

5

2. Remove any reference to governmental entities from the definition of persons in the APA.

Respectfully submitted,

**Jonathan Skrmetti**
**Tennessee Attorney General**

*/s/ Marvin E. Clements, Jr.*
Marvin E. Clements, Jr. (TN BPR # 016031)
Senior Assistant Attorney General
Office of the TN Attorney General
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202
Phone: (615) 741-1935
marvin.clements@ag.tn.gov

*Attorney for The State of Tennessee*

**Dated: June 17, 2025.**

## CERTIFICATE OF SERVICE

I certify that on June 17, 2025, a copy of the foregoing was electronically filed with the United States Bankruptcy Court for the Eastern District of Missouri and was served upon the parties registered to receive notice electronically via the Court's CM/ECF system.

*/ s/ Marvin E. Clements, Jr.*
Marvin E. Clements, Jr.