UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 25-40976 |
|  | ) |  |
| 23andMe Holding Co., *et al.*, | ) | Chapter 11 |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

### STATEMENT OF REGENERON IN RESPONSE TO CERTAIN SALE OBJECTIONS

Regeneron Pharmaceuticals, Inc. ("Regeneron"), as Backup Bidder under this Court's *Order (I) Establishing Procedures for the Submission of Final Proposals from the Backup Bidder and Successful Bidder and (II) Granting Related Relief* [Dkt. 657] (the "Final Proposals Order") and the *Notice of Winning Bidder With Respect to the Final Proposal Procedures to Acquire the Debtors' Assets* [Dkt. 739] ("Notice of Winning Bidder"), respectfully submits the following statement in response to certain objections to the proposed sale.[2]

1. On June 13, 2025, the Debtors determined that TTAM was the Winning Bidder for the Debtors and, accordingly, that Regeneron would be the Backup Bidder on the terms set forth in the Final Proposals Order.

2. Regeneron submits this statement only to address a claim made by certain

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] Capitalized terms not otherwise defined have the same meanings as in the Notice of Winning Bidder.

governmental objectors to the effect that Regeneron would be required to proceed with the Backup Bid even if the Court were to require express re-consent by the Debtors' customers. *See, e.g.*, *The States' Objection to the Debtors' Proposed Sale of Customers' Assets* [Dkt. No. 687] at 11 (asserting Regeneron (and TTAM)) "must follow through with the transaction, even if express consent is required by the Court and even when consent is not obtained"); *State of Tennessee's Limited Objection to the Debtors' Motion Approving Sale of Assets* [Dkt. No. 693] at 3 (similar).

3. Regeneron did not agree, and is not required, to proceed with the Backup Bid if the Court were to require express re-consent by the Debtors' customers. To the contrary, the Regeneron APA is clear that Regeneron is not required to close on the transaction unless the Debtors can transfer (as part of that same transaction) their data to Regeneron, and Regeneron has the legal ability to use that data to the same extent that the 23andMe Debtors could use it pre-transaction.[3]

4. Under Regeneron's APA, one of the conditions to the "obligation of [Regeneron] to effect the Closing" is that "[e]ach of the Seller Fundamental Representations shall be true and correct in all material respects." Regeneron APA § 9.1(a). One of the Seller Fundamental Representations is the "Biobank Representation" set forth in Section 5.1(v)(iv) of the Regeneron APA (*see* Regeneron APA at 19, definition of "Seller Fundamental Representations,") which is a representation by the Debtors that:

> ***The Acquired Assets delivered at the Closing shall include the Industry Data*** [(including customer data[4])]. At the Closing, the Industry Data shall transfer to Purchaser

---

[3] Regeneron understands that the Debtors share the same understanding of Regeneron's contractual obligations in this respect. *See Debtors' Omnibus Reply in Support of Entry of the Sale Order* [Dkt. No. 771] at ¶ 26(e) & n.12. This statement is intended only to further clarify Regeneron's contractual obligation.

[4] "Industry Data" is defined as "all customer data and all biological samples of the Business that are biobanked or otherwise in the possession of Sellers, including genetic data, processed genetic data, analyses of raw genotyped data, phenotype data, ancestry, surveys, user generated or

>or a Designated Purchaser, free and clear of all Liens, other than Permitted Encumbrances.  **_At the Closing, Purchaser or Designated Purchaser shall have good and marketable title to and the right to use, and shall be free to use in substantially the same manner in which Sellers use prior to the Closing, the Industry Data, after giving effect to Section 7.11.  Without limiting the generality of the foregoing, as of the Closing, no Governmental or Regulatory Authority shall have imposed any material restriction or material Lien on the transfer or use of any Industry Data_**, other than any such restriction or Lien that has been released or overridden.

Regeneron APA § 5.1(v)(iv) (emphasis added).  If the Debtors were unable to transfer their customer data to Regeneron (or if Regeneron were unable to use that data in substantially the same manner as the Debtors) absent a new consent from each customer, the Biobank Representation would be materially inaccurate, and Regeneron would not be required to close the transaction.

5.    The objecting states do not reference this controlling provision of the Regeneron APA.  Instead, they point to an unrelated provision, Section 7.3, which is a commonly included provision in asset purchase agreements, referred to here as an "Incapable of Transfer Provision." In an asset purchase, it is common for the parties to agree that an asset that cannot be transferred to the purchaser without obtaining a required consent (_e.g._, consent to assign a supplier contract) will not be so transferred until such required consent is obtained, and to further agree as to the required efforts and other arrangements in case such a consent is not obtained by closing.  The Incapable of Transfer Provision in the Regeneron APA does exactly that, establishing, among other things, the parties' respective obligations with respect to using reasonable efforts to obtain such consent and to cooperate to achieve a mutually agreeable arrangement under which Regeneron would obtain the benefits and assume the burdens associated with the asset.  In this way, the provision addresses what happens _if_ an asset cannot be transferred at closing.  However,

---

reported data, linked medical records or other linked health data, account information and biological samples (saliva and blood samples) of the Business." Regeneron APA at 2.

- 3 -

contrary to the governmental objectors' contentions, that provision does not in any way address *whether* consent is required to transfer the customer data (or any other asset).

6.  Section 7.3, moreover, does not override the requirement that the Biobank Representation be accurate in all material respects as a condition to closing. Indeed, to remove any doubt, Section 7.3 expressly states that the opposite is true:

> Notwithstanding the foregoing, if Sellers shall have complied with their obligations under [the APA] with respect to using efforts to obtain such consents ***and the failure to obtain any such consent would not constitute a breach or inaccuracy of any of the Sellers' representations*** and warranties in this Agreement, the failure to obtain any such consent in and of itself will not give rise to any breach by Sellers of this Agreement.

Regeneron APA § 7.3 (emphasis added). In sum, if 23andMe's ability to transfer customer data were restricted by this Court or through state governmental restrictions, the Debtors would be in breach of this fundamental representation under the APA, and Regeneron would not be obligated to close, regardless of Section 7.3.

7.  Nor, if such a restriction were imposed, could the Debtors satisfy other conditions precedent to Regeneron's obligation to close. Among others, the contemplated sale is also subject to approval of a satisfactory Bankruptcy Court order, which must provide that:

> [Regeneron] shall have the right to use the Acquired Assets on and after the Closing Date in the same manner and for the same purpose as used by [23andMe] prior to the Closing Date (the "Proposed Use"), including the right to use survey data, phenotype data, other self-reported information, linked health data, genetic data and biological samples, in each case pursuant to and in accordance with the privacy policies, informed consents and IRB approvals, waivers and protocols of or applicable to [23andMe], and that the transfer of the Acquired Assets complies with the Bankruptcy Code and applicable non-bankruptcy law and, solely to the extent that any party has filed an objection to the Sale that [23andMe's] Proposed Use of the Acquired Assets immediately prior to the Closing Date violates the applicable non-bankruptcy law raised in such objection, that such Proposed Use does not violate applicable nonbankruptcy Law.

*See* Regeneron APA § 11.2(e); *see also id.* § 9.3(b) (requiring entry of the sale order described in § 11.12 of the APA as a condition to closing). If this Court were to impose the customer consent

requirement demanded by the states, Regeneron would not have the right to use the Acquired Assets for the Proposed Use, the Debtors would be unable to obtain the required form of Sale Order and thus Regeneron would not be required to close.

| | |
|---|---|
| Dated:  June 17, 2025 | /s/ Emil A. Kleinhaus                            <br>Elaine Golin (admitted *pro hac vice*)<br>Emil A. Kleinhaus (admitted *pro hac vice*)<br>Michael S. Benn (admitted *pro hac vice*)<br>Michael H. Cassel (admitted *pro hac vice*)<br>WACHTELL, LIPTON, ROSEN & KATZ<br>51 West 52nd Street<br>New York, New York  10019<br>Telephone:  (212) 403-1000<br>Facsimile:   (212) 403-2000<br>Email:         EPGolin@wlrk.com<br>                    EAKleinhaus@wlrk.com<br>                    MSBenn@wlrk.com<br>                    MHCassel@wlrk.com<br><br>-and-<br><br>Stephen B. Sutton, MO #25109<br>Benjamin C. Struby, MO #56711<br>LATHROP GPM LLP<br>2345 Grand Blvd.<br>Suite 2200<br>Kansas City, MO  64108<br>Telephone:  (816) 292-2000<br>Email:         steve.sutton@lathropgpm.com<br>                    benjamin.struby@lathropgpm.com<br><br>*Counsel for Regeneron Pharmaceuticals, Inc.* |

## **CERTIFICATE OF SERVICE**

      I certify that on June 17, 2025, a copy of the foregoing was electronically filed with the United States Bankruptcy Court for the Eastern District of Missouri and was served upon the parties registered to receive notice electronically via the Court's CM/ECF system.

                                      */s/Benjamin C. Struby*