**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE EASTERN DISTRICT OF MISSOURI**

**EASTERN DIVISION**

RECEIVED + FILED

2025 JUN 26  PM 3: 42

CLERK. US BANKRUPTCY COU
EASTERN DISTRICT
MISSOURI-MO

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| | § | |
| 23andMe Holding Co., et al., | § | Case No. 25-40976 |
| | § | |
| | § | |
| | § | |
| | § | |
| Debtors. | § | Hon. Barry S. Schermer |

**Declaration of Courtney J. Nagle in Support of Individual**

**Creditor Statement and Response to U.S. Trustee Motion**

I, **Courtney J. Nagle**, declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a resident of Smithtown, New York, and a claimant in Nagle v. 23andMe, Inc., JAMS Ref No. 5425001589. I am a disabled U.S. Army veteran, a medically retired New York State public safety inspector, and currently serve as a board member for the Selective Service. I also serve in the U.S. Coast Guard Auxiliary and am rated 100% Permanent & Total disabled by the Department of Veterans Affairs. I make this declaration in support of my Cyber Security Incident Proof of Claim in the Chapter 11 case of 23andMe Holding Co., Case No. 25-40976 (E.D. Mo.).

2. I suffer from complex post-traumatic stress disorder (CPTSD) and am permanently disabled. I receive 100% P&T disability from the VA, SSDI from the Social Security Administration, and am medically retired through New York State Civil Service. I am a creditor in this Chapter 11 case due to 23andMe's negligent handling of my genetic and health data.

3. The 23andMe breach has severely impacted my mental health. I was forced to cancel both a scheduled VA psychiatric session and a veterans education counseling meeting as well as completely withdraw from schooling vocational rehabilitation due to stress caused by the breach and 23andMe's continued

misconduct. Their actions have disrupted my medical treatment and delayed my educational rehabilitation.

4.  Prior to bankruptcy, 23andMe's counsel, particularly Ms. Kim, failed to meet basic arbitration obligations. They ignored filings, refused to comply with document production, and denied reasonable disability accommodations for a local hearing under JAMS rules. Ms. Kim implied that my CPTSD could not be further aggravated a medically baseless and offensive argument that no court would accept in the context of physical harm.

5.  I did not consent to the sale, monetization, or corporate transfer of my genetic data. I believe 23andMe's conduct violates New York Civil Rights Law § 79-L, the SHIELD Act, and analogous California privacy laws. Changes to their Terms of Service and Privacy Policy were neither clearly disclosed nor lawfully accepted in my case.

6.  I support the U.S. Trustee's motion for the appointment of a Consumer Privacy Ombudsman or Examiner. Additionally, I respectfully request this Court:

    (a) Prohibit any sale or transfer of genetic data without verified consumer consent;

    (b) Direct a full audit of 23andMe's handling of consumer genetic and health information;

    (c) Investigate potential executive payouts, especially any enrichment of Anne Wojcicki or other insiders;

    (d) Consider enhanced damages claims for individuals like me whose lives and rights were materially harmed.

7.  I respectfully request this declaration be entered into the record, and that I be notified of any proceedings affecting consumer data rights, creditor interests, or privacy protections in this bankruptcy matter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 27, 2025, in Smithtown, New York.

Signature:

Courtney J. Nagle

211 Terry Road, Apt. 18B

Smithtown, NY 11787

Phone: (631) 897-6578

Email: cjnagle@gmail.com



# APPOINTMENT OF ARBITRATOR

NOTICE TO ALL PARTIES                                            December 18, 2023

     Re:     <u>Nagle, Courtney vs. 23andMe, Inc.</u>
                Reference #:  5425001589

Dear Parties:

Hon. James C. Francis IV (Ret.) has been appointed as Arbitrator in the above-referenced matter.  In accordance with the JAMS Streamlined Arbitration Rules no party may have *ex-parte* communications with the Arbitrator.  Any necessary communication with the Arbitrator must be initiated through the case manager.

The Arbitrator will bill in accordance with the enclosed Fee Schedule.  The arbitration will be administered consistent with the enclosed JAMS Policy on Consumer Arbitrations, Minimum Standards of Procedural Fairness.  According to this policy, the non-consumer party is responsible for 100% of the cost of the arbitration and will be billed accordingly.  JAMS will also administer the case consistent with JAMS Cancelation/Continuance policy. Pursuant to this policy, if a hearing is canceled or continued after the deadline the fees are non-refundable unless we can fill the reserved but unused time with another matter.

Under appropriate circumstances, the arbitrator may award JAMS fees and expenses against any party.  In California, the arbitration provision shall not require the consumer to pay the fees and costs incurred by the opposing party if the consumer does not prevail, and we will not enforce such a provision in the parties' agreement.  JAMS agreement to render services is not only with the parties, but extends to the attorney or other representative of the parties in the arbitration.

The paying party has been billed a preliminary deposit to cover the expense of all pre-hearing work, such as reading, drafting of orders, and conference calls. An invoice for this deposit is attached.  Payment is due upon receipt. Upon receipt of payment, a Preliminary Arbitration Management Conference Call will be scheduled with the Arbitrator.

Your new contact person for this file is Durrell Cherington, Case Manager to Hon. James C. Francis IV (Ret.).

Durrell Cherington
620 Eighth Avenue (NY Times Building)
34th Floor
New York, NY 10018
Phone: 212-607-2799
Email: DCherington@jamsadr.com

Contact me at 313-209-8851 or snevins@jamsadr.com if you have questions.

Sincerely,

Sarah Nevins
Arbitration Practice Manager
snevins@jamsadr.com



## JAMS ARBITRATION ADMINISTRATIVE POLICIES

### I. Fees for the Arbitration

The Parties and their attorneys agree to pay JAMS for the arbitration as set forth in the Fee and Cancelation Policy attached to and incorporated in this Agreement. JAMS agreement to render services is jointly with the Party and attorney or other representative of the Party in Arbitration.

Unless otherwise agreed by JAMS, the Parties agree that they are liable for and agree to pay their portion of JAMS' fees and expenses and for all time spent by the arbitrator, including any time spent in rendering services before or after the arbitration hearing. Parties are billed a preliminary retainer to cover the expense of all pre-hearing work, including conference calls. Payment of the preliminary retainer is required prior to scheduling a Preliminary Arbitration Management Conference with the Arbitrator. The Parties agree to pay all invoices received prior to the hearing in advance of the arbitration hearing. If such fees have not been paid prior to the arbitration hearing, the Party or Parties who have not paid remain liable for such fees. The Parties further agree to payment of an Abeyance Fee to be charged 12 months from the date of last billing, and every six months thereafter. The Parties agree that JAMS may cancel an arbitration hearing and will not deliver the arbitrator's decision to any Party without full payment of all invoices. Refunds will be issued to the individual or entity that was billed, regardless of payor(s).  For payments remitted via e-check, credit card, or ACH, refunds will be issued to the credit card or bank account that was used to make the payment.

### II. Records

JAMS does not maintain a duplicate file of documents filed in the Arbitration. If the parties wish to have any documents returned to them, they must advise JAMS in writing within 30 days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing and JAMS reserves the right to impose an additional fee for such special arrangements.

### III. Disqualification of the Arbitrator and JAMS as Witness/Limitation of Liability

The Parties have agreed or hereby agree that they will not call the arbitrator or any employee or agent of JAMS as a witness or as an expert in any proceeding involving the Parties and relating to the dispute which is the subject of the arbitration, nor shall they subpoena any notes or other materials generated by the arbitrator during the arbitration. The Parties further agree to defend the arbitrator and JAMS and its employees and agents from any subpoenas from outside Parties arising out of this Agreement or arbitration.

The Parties agree that neither the arbitrator nor JAMS, including its employees or agents, is a necessary Party in any proceeding involving the participants and relating to the dispute which is the subject of the arbitration. The Parties further agree that the arbitrator and JAMS, including its employees or agents, shall have the same immunity from liability for any act or omission in connection with the arbitration as judges and court employees would have under federal law.

### IV. Party

The term "Party" as used in these Policies includes Parties to the Arbitration and their counsel or representative.



# Unrepresented Party Informational Notice

Parties that intend to proceed in an alternative dispute process without representation of counsel, should understand the following:

- JAMS is a private organization that is not affiliated with the individuals, companies, or law firms involved with this dispute.
- Neither JAMS nor JAMS Neutrals have a financial interest in the outcome of any matter at JAMS.
- JAMS is an administrator and, as such, provides services such as calendar management, billing management, and arbitration administration and other case management.
- Neither JAMS nor JAMS Neutrals provide legal advice or assistance to the parties in how they should present their case.
- JAMS or JAMS Neutrals do not represent any parties in any matter at JAMS. There is no lawyer/client relationship formed in any respect with JAMS or JAMS Neutrals.
- JAMS and JAMS Neutrals facilitate a neutral process to help resolve the parties' dispute(s).
- If you require legal advice, please contact your local Bar Association for a recommendation.

Any questions pertaining to this information should be addressed to the selected Neutral, your Case Manager or other JAMS representative. You can reach a JAMS representative by dialing 800-352-5267.

*Effective July 15, 2009*



# JAMS POLICY ON CONSUMER ARBITRATIONS PURSUANT TO PRE-DISPUTE CLAUSES MINIMUM STANDARDS OF PROCEDURAL FAIRNESS

JAMS provides arbitration and mediation services worldwide. We resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

JAMS arbitrators and mediators are full-time neutrals who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct.



JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers[1] only if the contract arbitration clause and specified applicable rules comply with the following minimum standards of fairness.

## These minimum standards for arbitration procedures are:

1. The arbitration agreement must be reciprocally binding on all parties such that (a) if a consumer is required to arbitrate his or her claims or all claims of a certain type, the company is so bound; and, (b) no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction.

2. The consumer must be given notice of the arbitration clause. Its existence, terms, conditions and implications must be clear.

3. Remedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court.

4. The arbitrator(s) must be neutral, and the consumer must have a reasonable opportunity to participate in the process of choosing the arbitrator(s).

5. The consumer must have a right to an in-person hearing in his or her hometown area.

6. The clause or procedures must not discourage the use of counsel.

7. With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration.

8. In California, the arbitration provision may not require the consumer to pay the fees and costs incurred by the opposing party if the consumer does not prevail.

9. The arbitration provision must allow for the discovery or exchange of non-privileged information relevant to the dispute.

10. An Arbitrator's Award will consist of a written statement stating the disposition of each claim. The award will also provide a concise written statement of the essential findings and conclusions on which the award is based.

[1] *These standards are applicable where a company systematically places an arbitration clause in its agreements with individual consumers and there is minimal, if any, negotiation between the parties as to the procedures or other terms of the arbitration clause. A consumer is defined as an individual who seeks or acquires any goods or services primarily for personal family or household purposes, including the credit transactions associated with such purchases, or personal banking transactions. These standards do not apply to the use of arbitration in resolving disputes arising from commercial transactions between a lender and commercial borrowers, or a company and commercial customers,other financial services such as investment transactions, real estate transactions, or to matters involving underinsured motorists. Nor do they apply if the agreement to arbitrate was negotiated by the individual consumer and the company.*



# General Fee Schedule
*Hon. James C. Francis IV (Ret.)*

## PROFESSIONAL FEES
### $850 per hour
- Other professional time (including additional hearing time, pre- and post-hearing reading and research, conference calls, and drafting orders and awards) will be billed at $850 per hour. This may include travel time.
- All travel expenses are billed at actual cost.

## ARBITRATION FEES
### Filing Fee
$2,000 – Two Party Matter
$3,500 – Matters involving three or more parties
$2,000 – Counterclaims
• Entire Filing Fee must be paid in full to commence the proceedings.
• A refund of $1,000 will be issued if the matter is withdrawn within five days of filing. After five days, the Filing Fee is non-refundable.

### Case Management Fee
- 13% of Professional Fees
- The Case Management Fee includes access to an exclusive nationwide panel of judges, attorneys, and other ADR experts, dedicated services including all administration through the duration of the case, document handling, and use of JAMS conference facilities including after hours and on-site business support. Weekends and holidays are subject to additional charges.

## CASE MANAGEMENT FEES FOR OTHER MATTERS
### (Discovery, Special Master, Reference, and Appraisal)
Initial Non-Refundable Case Management Fee of $1000 per party
Plus 13% of Professional Fees

### Neutral Analysis Matters
Contact JAMS for administrative and pricing details.

## CANCELLATION/CONTINUANCE POLICY

| Number of Days | | Cancellation/Continuance Period | | Fee |
|---|---|---|---|---|
| 1 day or less | ................. | 30 days or more prior to hearing | ................. | 100% REFUNDABLE, except for time incurred |
| 2 days or more | ................. | 60 days or more prior to hearing | ................. | 100% REFUNDABLE, except for time incurred |
| Sessions of any length | ................. | Inside the cancellation/continuance period | ................. | NON-REFUNDABLE |

- Unused hearing time is non-refundable.
- Hearing fees, including all applicable Case Management Fees, are non-refundable if time scheduled (or a portion thereof) is cancelled or continued after the cancellation date unless the Arbitrator's time can be rescheduled with a hearing in another matter. The cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the cancelling or continuing party is responsible for the fees of all parties.
- A deposit request for anticipated preparation and follow-up time will be billed to the parties. Any unused portion will be refunded.
- Refund Policy: Overpayments are issued to the billing contact on the matter regardless of the paying party.
- All fees are due and payable in advance of services rendered and by any applicable due date as stated in a hearing confirmation letter. JAMS reserves the right to cancel your hearing if fees are not paid by all parties by the applicable cancellation date and JAMS confirms the cancellation in writing.
- Receipt of payment for all fees is required prior to service of an arbitration order or award.
- For arbitrations arising out of employer-promulgated plans, the only fee that an employee may be required to pay is $400. The employer must bear the remainder of the employee's share of the Filing Fee and all Case Management Fees. Any questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually negotiated agreement or contract will be determined by JAMS, whose determination shall be final.
- For arbitrations arising out of pre-dispute arbitration clauses between companies and individual consumers, JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standards of Procedural Fairness applies. In those cases, when a consumer (as defined by those Minimum Standards) initiates arbitration against the company, the only fee required to be paid by the consumer is $250. The company must bear the remainder of the consumer's share of the Filing Fee and all Case Management Fees.
- Parties that, through mutual agreement, have held their case in abeyance for one year will be assessed an initial abeyance fee of $500, and $500 every six months thereafter. If a party refuses to pay the assessed fee, the other party or parties may opt to pay the entire fee on behalf of all parties, otherwise the matter will be closed.
- JAMS panelists may use a law clerk depending on the complexity of the case. The parties will be informed of the engagement if the neutral plans to employ a clerk. The clerk's hourly rate will be billed to the parties subject to the agreed fee split and in accordance with JAMS' policies.

JAMS agreement to render services is with the attorney, the party, and/or other representatives of the party.

# DEPOSIT REQUEST



**Invoice Date**
12/18/2023

**Invoice Number**
6966898

Bill To:
**Mr. Adam Korn Esq.**
**Greenberg Traurig LLP**
**1840 Century Park East**
**19th Floor**
**Los Angeles, CA 90067**
**US**

**Reference #:**  **5425001589 - Rep# 4**
Billing Specialist:  **Mindiola, Nicholaus**
Email:  **nmindiola@jamsadr.com**
Telephone:  **949-224-4626**
Employer ID:  **68-0542699**

RE: **Nagle, Courtney vs. 23andMe, Inc.**

Representing: **23andMe, Inc.**

Neutral(s):  **JAMS 1-JAMS**

Hearing Type: **ARBITRATION**                SN

| Date / Time | Description | Your Share |
|---|---|---|
| 12/15/23 | **JAMS INC** Deposit for services: To be applied to professional time (session time, pre and post session reading, research, preparation, conference calls, travel, etc.), expenses, and case management fees. Please review the Neutral's fee schedule regarding case management fee and cancellation policies. Supplemental deposit requests will be assessed as needed. Any unused portion of this deposit will be refunded at the conclusion of the case. | $ 5,000.00 |

**Total Billed:**    $ 5,000.00

**Total Payment:**    $ 0

**Balance:**    $ 5,000.00

Invoice total is based on the fee split agreed upon by all parties. If the case cancels or continues, fees are due per our cancellation and continuance policy. Please make checks payable to JAMS, Inc. Payment is due upon receipt.

Click here to pay

Standard mail:
**P.O. Box 845402**
**Los Angeles, CA 90084**

Overnight mail:
**18881 Von Karman Ave. Suite 350**
**Irvine, CA 92612**

From: customercare@23andme.com
Subject: Re: Urgent Response Required: Account Compromise and Out-of-Court
Settlement Demand
Date: October 13, 2023 at 7:25:16 PM EDT
To: Courtney Nagle <cjnagle@gmail.com>
Reply-To: customercare@23andme.com

Hello Courtney,

Your request has been updated below. Feel free to reply to this email with any
questions or additional comments.

**Alex, Oct 13, 2023, 4:25 PM PDT:**

Hello Courtney,

Thank you for contacting the 23andMe Team. I understand your concern and
that this is not an easy situation.

After learning of this suspicious activity, we immediately began an
investigation and contacted law enforcement. We do not have any indication at
this time that there has been a data security incident within our systems, or that
23andMe was the source of the account credentials used in these attacks. You
can find more information about our ongoing investigation on our blog here.

We are continuing to investigate and will provide updates to customers when
and where we can. We have sent an email to all customers with more
information. It sounds like you have read this email and understand the
investigation is still ongoing.

*Please note that we are requiring all customers to reset their passwords in light
of recent events.*

If we learn that your data has been accessed without your authorization, we will
contact you separately with more information.

Please let me know if you have any additional questions.

Best regards,

Alex
The 23andMe Team

All Concerned,

I recently received communication regarding unauthorized access to certain 23andMe customer profiles. While I appreciate 23andMe's commitment to addressing this matter promptly, I must express my deep concern over the breach and its implications, which extend beyond personal privacy.

I became aware of this hack on or about October 11, 2023. Before this breach of trust and violation of my privacy, I was in communication with my school regarding their policy of online proctoring and collecting biometric data. As someone on VA disability, SSDI, and NYS civil service disability retirement due to military service-connected PTSD, my mental health is of utmost importance. The news of my personal information being accessed without authorization has severely impacted my well-being.

The situation has had a profound effect on my life, to the point where I've had to make the difficult decision to withdraw from my degree program. Attached, you will find correspondence with my VA education counselor and CDU from August to October 2023. These emails illustrate the issues I encountered with the school and my privacy concerns well before my knowledge of the 23andMe data breach.

This decision to withdraw from school is not one I've taken lightly. It is a direct consequence of the anxieties and distress caused by the breach, which has exacerbated my PTSD symptoms. Furthermore, the potential exposure of my genetic data only compounds the emotional toll this situation has taken on me.

This situation extends beyond individual privacy concerns. In today's world, where enemies of the United States are actively developing genetically engineered bioweapons, the exposure of genetic data becomes a matter of national security. The ability to identify and target certain portions of the population based on their genetic makeup poses a significant threat to our nation and its citizens.

I hope we find a satisfactory resolution, as it is in the best interest of both 23andMe and the security of our nation.

Sincerely,
Mr. Courtney J. Nagle

From: "Courtney J. Nagle" <cjnagle@gmail.com>
Subject: Examity issues
Date: October 16, 2023 at 12:25:20 PM EDT
To: "Parsley, Kimberly, Vbanyc" <Kimberly.Parsley@va.gov>

Hi Kim,

I'm currently experiencing some serious issues and feeling overwhelmed due to the Examity program. The requirement to allow access to my computer and even go around my apartment to prove that no one is hiding in the bathroom and closets feels intrusive and unnecessary. It's important to clarify that my objection isn't related to them monitoring my school work; rather, it's about the invasion of my personal space and privacy.

As I mentioned before, I'm already struggling with using programs like Zoom and VA video chat. Talking on the phone is difficult for me, and there are only a few people I can comfortably communicate with in that way. The additional requirement of Examity is pushing me to the breaking point. I recently spent hours contemplating the "allow access" request on the program and nearly felt physically ill.

If participating in this program puts me at risk of relapsing into substance abuse or negatively affecting my mental health to the point where I might end up in the hospital, I must reconsider my involvement. I've attached a rough draft of the email I plan to send them later. Right now, I have to attend my psychologist appointment in Northport. If Examity requires proof of my condition, I suggest they speak with my psychologist, whom I've been seeing for two years and who was already aware of these issues before I even considered returning to school.

Sorry for being crazy,

Courtney

PS I will be finished with my appoiment around 2:30.


Catholic Distance University
Office of the President
300 S. George St.
Charles Town, WV 25414

Dear President,

I hope this letter finds you well. I am writing to express my deep concerns and dissatisfaction regarding the use of Examity and similar proctoring services at Catholic Distance University (CDU). While I understand the importance of maintaining academic integrity, I believe that the current approach to monitoring students' activities, especially during final exams, raises significant ethical and legal questions.

CDU, established in 1983 as a home study school, gradually expanded its offerings to include home-based study for courses up to the master's level over the following two decades. During this period, online and at-home monitoring systems were non-existent. This prompts me to question how CDU ensured the integrity of its educational programs for students in the past. Were proctors dispatched to students' homes to oversee their coursework, or was the system largely reliant on the "honor system"?

The heart of my concern lies in the stark contrast between CDU's historical approach and its current policies. For eight-week periods, students are allowed to utilize their home computers, the internet, and course materials under the assumption of academic honesty, as prescribed by the "honor system." However, the final exams require the submission of biometric data and intrusive scans of students' homes, including areas as private as bathrooms, bedrooms, and closets. This practice, in my opinion, constitutes a clear violation of the Fourth Amendment, as evidenced by multiple lawsuits and class action lawsuits against other online monitoring services and universities that employ them.

My reservations extend beyond legal concerns. As a military veteran grappling with post-traumatic stress disorder (PTSD), depression, anxiety, and substance abuse disorder, this invasive monitoring system has a profound and detrimental impact on my mental health. I have experienced severe privacy violations and PTSD-related crises that have led to hospitalizations and lengthy inpatient programs. Given this history, I cannot allow the intrusion into my personal space and privacy, even if it means academic consequences from CDU.

In conclusion, I urge CDU to reconsider its use of Examity and similar proctoring services, especially in light of the legal and ethical concerns raised by their implementation. I believe that there are alternative methods to maintain academic integrity without compromising the rights and well-being of students, particularly those with mental health challenges like myself.

Thank you for your attention to this matter. I hope that CDU will take steps to address these concerns and work toward a more compassionate and student-centered approach to online education.

Sincerely,

Mr. Courtney J. Nagle
211 Terry Road
Apt 18B
Smithtown, NY 11787
(631) 897-6578

Dispute Resolution (Including Arbitration, Class Action Waiver and Time to Initiate Action)

PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.

a. Initial Dispute Resolution. We are available by email at customercare@23andme.com to address any concerns you may have regarding your use of the Service. Most concerns may be quickly resolved in this manner. You agree to use best efforts to settle any dispute, claim, question, or disagreement directly through consultation and good faith negotiations which shall be a precondition to either party initiating a lawsuit or arbitration.

b. Agreement to Binding Arbitration. If we do not reach an agreed upon solution within a period of thirty (30) days from the time informal dispute resolution is pursued pursuant to the Initial Dispute Resolution section above, then either you or we may initiate binding arbitration. Except for any disputes excluded below in (d), all claims arising out of or relating to these Terms (including their formation, performance and breach), the parties' relationship with each other and/or your use of the Services shall be finally settled by binding arbitration administered on a confidential basis by JAMS, in accordance with the JAMS Streamlined Arbitration Rules and Procedures, excluding any rules or procedures governing or permitting class actions. Each party will have the right to use legal counsel in connection with arbitration at its own expense. The parties shall select a single neutral arbitrator in accordance with the JAMS Streamlined Arbitration Rules and Procedures. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of these Terms, including, but not limited to, any claim that all or any part of these Terms is void or voidable. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award shall be in writing and provide a statement of the essential findings and conclusions, shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction. The interpretation and enforcement of these Terms shall be subject to the Federal Arbitration Act. The JAMS rules governing the arbitration may be accessed at https://www.jamsadr.com/adr-rules-procedures. If you initiate arbitration, to the extent the filing fee for the arbitration exceeds Two Hundred and Fifty U.S. Dollars ($250), and where the claim is found to be non-frivolous, we will pay the additional cost. If we are required to pay the additional cost of the filing fees, you should submit a request for payment of fees to JAMS along with your form for initiating the arbitration, and we will make arrangements to pay all necessary fees directly to JAMS. We

1

will also be responsible for paying all other arbitration costs arising in connection with the arbitration, other than costs incurred by you for legal counsel, travel and other out-of-pocket costs and expenses not constituting fees or amounts payable to JAMS. You will not be required to pay fees and costs incurred by use if you do not prevail in arbitration. We will also pay JAMS to reimburse you for any portion of the $250 filing fee that is more than what you would otherwise have to pay to file suit in a court of law. You understand that, absent this mandatory provision, you would have the right to sue in court and have a jury trial. You further understand that the right to discovery may be more limited in arbitration than in court.

c. Class Action and Class Arbitration Waiver. You and we each further agree that any arbitration shall be conducted in our respective individual capacities only and not as a class action, and you and we each expressly waive our respective right to file a class action or seek relief on a class basis. The arbitrator may award in the arbitration the same damages or other relief available under applicable law, including injunctive and declaratory relief, as if the action were brought in court on an individual basis. Notwithstanding anything to the contrary in the foregoing or herein, the arbitrator may not issue a "public injunction" and any such "public injunction" may be awarded only by a federal or state court. If either party seeks a "public injunction," all other claims and prayers for relief must be adjudicated in arbitration first and any prayer or claim for a "public injunction" in federal or state court stayed until the arbitration is completed, after which the federal or state court can adjudicate the party's claim or prayer for "public injunctive relief." In doing so, the federal or state court is bound under principles of claim or issue preclusion by the decision of the arbitrator. If any court or arbitrator determines that the class action waiver set forth in this paragraph is void or unenforceable for any reason or that an arbitration can proceed on a class basis, then the arbitration provision set forth above in (b) shall be deemed null and void in its entirety and the parties shall be deemed to have not agreed to arbitrate disputes.

d. Exceptions. Notwithstanding the parties' agreement to resolve all disputes through arbitration, either party may seek relief (i) in a small claims court for disputes or claims within the scope of that court's jurisdiction, and (ii) any disputes relating to intellectual property rights, obligations, or any infringement claims.

e. 30 Day Right to Opt-Out. You have the right to opt-out and not be bound by the arbitration and class action waiver provisions set forth in (b) and (c) by sending written notice of your decision to opt-out by emailing us at arbitrationoptout@23andme.com. The notice must be sent within thirty (30) days of your first use of the Service, or the effective date of the first set of Terms containing an Arbitration and Class Action and Class Arbitration Waiver section otherwise you shall be bound to arbitrate disputes in accordance with the terms

2

of those sections. If you opt-out of these arbitration provisions, we also will not be bound by them.

f.  Term for Cause of Action. You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of or related to use of the Services or the Terms must be filed within one (1) year after such claim or cause of action arose or be forever barred.

g.  Exclusive Venue for Litigation. To the extent that the arbitration provisions set forth in (b) do not apply or if you have opted out of arbitration, you agree that any litigation shall be filed exclusively in state or federal courts located in Santa Clara County, California (except for small claims court actions which may be brought in the county where you reside). You and we expressly consent to exclusive jurisdiction in Santa Clara County, California for any litigation other than small claims court actions. In the event of litigation relating to these Terms or the Service, you agree to waive, to the maximum extent permitted by law, any right to a jury trial, except where a jury trial waiver is not permissible under applicable law.

Courtney J. Nagle
211 Terry Road, Apt 18B
Smithtown, NY 11787-5111
Email: cjnagle@gmail.com
Phone: (631) 897-6578

RECEIVED÷FILED

2025 JUN 26  PM 3: 42

CLERK, US BANKRUPTCY COU
EASTERN DISTRICT
ST LOUIS, MISSOURI-MR

June 21, 2025

Clerk of the Court
United States Bankruptcy Court
Eastern District of Missouri
111 South 10th Street, Fourth Floor
St. Louis, MO 63102

**Re:** In re 23andMe Holding Co., et al. — Case No. 25-40976 (Bankr. E.D. Mo.)

**Subject:** Submission of Declaration of Courtney J. Nagle – Creditor Statement

Dear Clerk of the Court:

I am a creditor in the above-captioned bankruptcy matter and a claimant in arbitration proceedings related to 23andMe. Enclosed please find my **Declaration of Courtney J. Nagle**, submitted for the record in connection with my claim and to support the appointment of a Consumer Privacy Ombudsman and related relief sought in these proceedings.

I respectfully request that this declaration be filed on the official docket in this case so that it may be considered by the Court and all interested parties. Please notify me if additional steps or fees are required to facilitate this submission.

Thank you for your attention to this matter.

Sincerely,

Courtney J. Nagle