**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,[1]<br>　　　　　Debtors. | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered)<br><br>Related Doc. 606 |

**STIPULATION AND AGREED ORDER BY AND AMONG THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND CERTAIN EQUITY HOLDERS RESOLVING REQUESTS FOR THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF EQUITY HOLDERS**

This stipulation and agreed order (the "Stipulation") is made this 25th day of June 2025 by each of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases (the "Committee"), and certain unaffiliated holders of the Debtors' common stock that are represented by Brown Rudnick LLP ("Brown Rudnick") (the "Ad Hoc Group of Shareholders", and collectively with the Debtors and the Committee, the "Parties").[2] The Parties stipulate and agree as follows:

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: 23andMe Holding Co. (0344), 23andMe, Inc. (7371), 23andMe Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] The Ad Hoc Group of Shareholders hold 6,805,766 shares (or approximately 33.5%) of outstanding Class A common stock of 23andMe Holding Co. *See Verified Statement of the Ad Hoc Group of Shareholders Pursuant to Bankruptcy Rule 2019* [Docket No. 610].

WHEREAS, on March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court").

WHEREAS, the Debtors are operating their businesses as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

WHEREAS, on March 31, 2025, the Ad Hoc Group of Shareholders first requested the appointment of an official equity committee (*see* Exhibit D to the Motion (as defined below)).  On April 3, 2025, the Debtors submitted a letter to the UST opposing the Ad Hoc Group of Shareholders' request on the basis that (i) the interests of the Debtors' equity security holders are adequately represented without an equity committee by virtue of the supervision and oversight of the independent Special Committee of the Board of Directors and the fiduciary duties owed by such committee to the Debtors' stakeholders, including the Debtors' equity security holders; (ii) substantial likelihood of meaningful distributions to the Debtors' equity security holders could not be demonstrated in light of, among other things, uncertainty around the size of the potential claims pool; and (iii) the cost of an equity committee would substantially outweigh any potential benefits (*see* Exhibit C to the Motion, the "April 3 Letter").  The request was ultimately denied by the UST.

WHEREAS, on May 16, 2025, the Ad Hoc Group of Shareholders renewed their request and on May 19, 2025, further supplemented their renewed request after the initial auction results were announced (*see* Exhibits F and G to the Motion).  The Debtors and the Committee opposed the renewed request on grounds stated in the Debtors' April 3 Letter and the Committee's May 23, 2025 letter to the UST.  On May 30, 2025, the UST denied the renewed request.

WHEREAS, on June 3, 2025, the Ad Hoc Group of Shareholders filed the *Motion for Entry of an Order Directing the Appointment of an Official Committee of Equity Security Holders Pursuant to 11 U.S.C. § 1102* [Docket No. 606] (the "Motion").

WHEREAS, the Debtors and the Committee expressed concerns to Brown Rudnick and the Ad Hoc Group of Shareholders regarding the cost and duplication of efforts that would result from the appointment of an official committee of equity security holders. Nevertheless, as a result of good faith, arm's-length negotiations, the Parties have agreed to resolve their disputes over these issues on the terms described herein.

WHEREAS, the Parties have determined that it is in their best interests to enter into this Stipulation agreeing to support the appointment of an official committee of equity security holders (the "Official Equity Committee") on the terms set forth in this Stipulation.

**NOW, IT IS THEREFORE STIPULATED AND AGREED, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION AS INDICATED BELOW, IT IS SO ORDERED AS FOLLOWS:**

1. The foregoing recitals are incorporated herein by reference.

2. Subject to the Court's entry of an order approving the sale of substantially all of the Debtors' assets (the "Sale Order"), the Debtors and the Committee consent to and shall support the appointment of an Official Equity Committee on behalf of the Debtors' common equity security holders in the Debtors' chapter 11 cases. The Parties further consent to the adjournment of the hearing on the Motion to July 1, 2025, and the Debtors and the Committee shall appear (which appearance may be virtual, and unless such hearing is cancelled) and support the relief requested in the Motion, subject to the terms of this Stipulation. Upon entry of the Sale Order, the Committee's objection to the Ad Hoc Group of Shareholders' motion to expedite the hearing on the Motion shall be deemed withdrawn.

3. Upon entry of this order, the U.S. Trustee is directed to appoint an Official Equity Committee as soon as reasonably practicable.

4. The Official Equity Committee's scope of work ("Scope of Work") shall be limited to the following:

(a) *Claims Administration*: The Official Equity Committee may undertake review of and, if appropriate, raise reasonable objections to any proposed settlement or allowance of any claims against the Debtors' estates if the Parties are unable to resolve any such objections following good faith negotiations; *provided* that for the avoidance of doubt, nothing herein restricts the rights of the Debtors or the Committee to review, reconcile, and object to general unsecured claims filed or asserted against the Debtors' estates.

(b) *Asset Sale*: The Official Equity Committee's ability to object to the Winning Bidder[3] at the Sale Hearing is preserved.

(c) *Chapter 11 Plan*: The Official Equity Committee may engage in negotiations with the Debtors, the Committee, and other stakeholders regarding the terms, documentation, and confirmation of a chapter 11 plan, including with respect to provisions governing (a) post-effective date claims administration procedures, and (b) pursuit of preserved estate claims and causes of action, in each case as implemented and/or pursued, as applicable, after the effective date of a chapter 11 plan. For the avoidance of doubt, the Official Equity Committee's right to object to confirmation of the Debtors' chapter 11 plan is preserved.

5. The Official Equity Committee shall have an allowed administrative claim under section 503(b)(2) of the Bankruptcy Code for compensation and reimbursement of its fees and expenses for services performed by counsel to the Official Equity Committee and any other professional retained by the Official Equity Committee (collectively, the "OEC Professionals") within the Scope of Work from the appointment of the Official Equity Committee through the effective date of a chapter 11 plan, which fees and expenses shall not exceed $2,550,000.00 in the aggregate (the "OEC Fee Cap"), *provided* that the OEC Professionals shall apply for compensation

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Order (I) Establishing Procedures for the Submission of Final Proposals from the Backup Bidder and Successful Bidder and (II) Granting Related Relief* [Docket No. 657].

for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with section 327 and 330 of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure of the Court (the "Local Rules"), and any other applicable procedures and orders of the Court; and *provided further* that the Official Equity Committee may seek modification of the OEC Fee Cap either: (i) by written agreement with the Parties, or (ii) through further order of the Bankruptcy Court for cause shown upon normal notice to the Debtors, Committee, and other parties in interest and an opportunity to be heard, if, solely with respect to this clause (ii), the effective date of any chapter 11 plan has not occurred by September 30, 2025.  All allowed fees and expenses of the OEC Professionals shall be paid from the proceeds of the sale of the Debtors' assets and the OEC Professionals shall have no recourse against the Carve Out or the Carve Out Account established pursuant to the *Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing, Grant Liens, Provide Superpriority Administrative Expense Claims and Use Cash Collateral, (B) Modifying the Automatic Stay, and (C) Granting Related Relief.*  [Docket No. 313].

6. The Ad Hoc Group of Shareholders, its members (solely in their capacity as such), representatives, advisors or professionals waive and release the Debtors and their estates from any and all substantial contribution claims and other administrative expense claims against the Debtors in connection with these chapter 11 cases, except as explicitly set forth in this Stipulation; *provided* that, solely to the extent that the final aggregate amount of the Official Equity Committee's allowed fees and expenses are less than the OEC Fee Cap (the difference between the final aggregate amount of the Official Equity Committee's allowed fees and expenses and the OEC Fee Cap, the "OEC Fee Cap Excess Amount"), then the Ad Hoc Group of Shareholders may seek allowance of substantial contribution claims and other administrative expense claims, in an aggregate amount

not to exceed the OEC Fee Cap Excess Amount, for reasonable and documented fees and expenses of counsel to the Ad Hoc Group of Shareholders incurred prior to the appointment of the Official Equity Committee and in connection with these chapter 11 cases (the "AHG Admin Claims"), upon normal notice to the Debtors, Committee, and other parties in interest and an opportunity to be heard.  The AHG Admin Claims may be allowed only upon proof of a substantial contribution in accordance with 11 U.S.C. § 503(b)(3)(D) and a court order thereunder.  For the avoidance of doubt, in no event shall the aggregate amount of the allowed fees and expenses of the Official Equity Committee and any AHG Admin Claims exceed the OEC Fee Cap.

7. The Official Equity Committee shall not be permitted to conduct its own investigation or discovery into potential estate claims and causes of action except (i) in connection with paragraphs 3(a) and (c) hereof, and in such instance, the Official Equity Committee shall confer with the Debtors and the Committee regarding the scope of such investigation or discovery in order to minimize duplication of effort and (ii) as may be otherwise agreed pursuant to a chapter 11 plan and commencing on or after the effective date of such plan.

8. This Stipulation may be signed in counterparts and signatures may be delivered by fax or email, each of which shall be deemed original, but all of which together shall constitute one and the same instrument.  Each Party who executes this Stipulation on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such Party.

9. Each of the Parties represents and warrants to the other Parties that it has: (a) entered into this Stipulation freely and voluntarily and with full knowledge of its significance; and (b) been represented by counsel of its own choice in the negotiation, drafting, and execution of this Stipulation.

10. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or otherwise, the terms and conditions of this Stipulation shall be immediately effective and enforceable upon its entry.

11. The Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation. Any request for relief brought before the Court to resolve a dispute arising from or related to this Stipulation, and the matters agreed to herein, shall be brought on proper notice and in accordance with the relevant Bankruptcy Rules and the Local Rules.

Dated: June 30, 2025
St. Louis, Missouri
cjs

_____
Brian C. Walsh
United States Bankruptcy Judge

AGREED AS REFLECTED BELOW:

Dated:  June 27, 2025

**Carmody MacDonald P.C.**
 */s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 854-8600
Facsimile: (314) 854-8660
Email:   thr@carmodymacdonald.com
             nrw@carmodymacdonald.com
             jjg@carmodymacdonald.com

          - and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: pbasta@paulweiss.com
chopkins@paulweiss.com
jchoi@paulweiss.com
ghotz@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

**STINSON LLP**

By: /s/ *Nicholas J. Zluticky*
Nicholas J. Zluticky (MO # 61203)
Zachary H. Hemenway (MO # 59670)
Miranda S. Swift (MO # 75782)
1201 Walnut, St. 2900 Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email: nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com
miranda.swift@stinson.com

-and-

**KELLEY DRYE & WARREN LLP**
Eric R. Wilson (admitted *pro hac vice*)
Jason R. Adams (admitted *pro hac vice*)
Maeghan J. McLoughlin (admitted *pro hac vice*)
Steven Yachik (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: ewilson@kelleydrye.com
jadams@kelleydrye.com
mmcloughlin@kelleydrye.com
syachik@kelleydrye.com

*Co-Counsel to the Official Committee of Unsecured Creditors*

**DESAI LAW FIRM LLC**

By: /s/ *Spencer P. Desai*
Spencer P. Desai
13321 North Outer Forty Rd., Suite 300
St. Louis, MO 63017
Telephone: (314) 666-9781
Email: spd@desailawfirmllc.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark (admitted *pro hac vice*)
Bennett S. Silverberg (admitted *pro hac vice*)
Andrew M. Carty (admitted *pro hac vice*)
Alexander F. Kasnetz (admitted *pro hac vice*)
Seven Times Square New York, NY 10036
Telephone: (212) 209-4800
Email: rstark@brownrudnick.com
bsilverberg@brownrudnick.com
acarty@brownrudnick.com
akasnetz@brownrudnick.com

Shari I. Dwoskin *(admitted pro hac vice )*
One Financial Center Boston, MA 02111
Telephone: (617) 856-8200
Email: sdwoskin@brownrudnick.com

*Counsel to the Ad Hoc Group of Shareholders*