# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.), *et al.*,[1]<br><br>Debtors. | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered) |

**JOINT MOTION OF THE DEBTORS AND CANADIAN PLAINTIFFS PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 9019 AND 7023 FOR AN ORDER (I) PRELIMINARILY APPROVING THE CANADIAN DATA BREACH SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THE CANADIAN PLAINTIFFS; (II) CERTIFYING A CLASS FOR SETTLEMENT PURPOSES ONLY; (III) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE CLASS CERTIFICATION AND SETTLEMENT; (IV) SCHEDULING A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT AGREEMENT; AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") and the Canadian Plaintiffs (as defined herein) respectfully state as follows in support of this motion (the "Motion"):

### Relief Requested[2]

1.      The Debtors and the Canadian Plaintiffs hereby file this Motion pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 7023 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the

---

[1]     The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: Chrome Holding Co. (0344), ChromeCo, Inc. (7371), Chrome Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595).  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]     Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Motion.

Federal Rules of Civil Procedure (the "FRCP"), applicable hereto by Bankruptcy Rule 7023, for entry of an order (the "Proposed Order"): (a) preliminarily approving the settlement (the "Settlement") contemplated in the settlement agreement attached hereto as **Exhibit A** (the "Canadian Data Breach Class Settlement Agreement"), between the Debtors and the Canadian Plaintiffs, on behalf of the Canadian Data Breach Settlement Class (together with the Debtors, the "Parties"); (b) certifying the Canadian Data Breach Settlement Class for settlement purposes only; (c) approving the form and manner of notice (the "Canadian Class Notice") to Canadian Data Breach Class Members, attached hereto as **Exhibit B**; (d) approving the claim form (the "Canadian Claim Form") attached hereto as **Exhibit C**; (e) approving the Canadian Data Breach Class Settlement Benefits Plan (the "Canadian Data Breach Settlement Class Benefits Plan") attached hereto as **Exhibit D**; (f) approving the form and manner by which Canadian Data Breach Class Members may exclude themselves from the Settlement (the "Canadian Opt-Out Form") attached hereto as **Exhibit E**; (g) approving the form and manner by which Canadian Data Breach Class Members may object to the Settlement or any related relief (the "Canadian Objection Form") attached hereto as **Exhibit F**;  (h) scheduling a fairness hearing to consider final approval of the Canadian Data Breach Class Settlement Agreement; and (i) granting related relief.

2.       In support of this Motion, the Parties submit (a) the *Declaration of Moran Solomon in Support of the Joint Motion of the Debtors and Canadian Plaintiffs Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 7023 for an Order (I) Preliminarily Approving the Settlement Agreement Between the Debtors and the Canadian Plaintiffs; (II) Certifying a Class for Settlement Purposes Only; (III) Approving the Form and Manner of Notice to Class Members of the Class Certification and Settlement; (IV) Scheduling a Fairness Hearing to Consider Final Approval of the Settlement Agreement; and (V) Granting*

2

*Related Relief* (the "<u>Canadian Claims Admin Decl.</u>"), and (b) *Declaration of Eli Karp in Support of the Joint Motion of the Debtors and Canadian Plaintiffs Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 9019 and 7023 for an Order (I) Preliminarily Approving the Settlement Agreement Between the Debtors and the Canadian Plaintiffs; (II) Certifying a Class for Settlement Purposes Only; (III) Approving the Form and Manner of Notice to Class Members of the Class Certification and Settlement; (IV) Scheduling a Fairness Hearing to Consider Final Approval of the Settlement Agreement; and (V) Granting Related Relief* (the "<u>Canadian Class Counsel Decl.</u>"), in each case filed contemporaneously herewith.  In further support of the Motion, the Debtors and the Canadian Plaintiffs, by and through their undersigned counsel, state as follows:

<u>**Preliminary Statement**</u>[3]

3.      As the Court is aware, the Debtors commenced these chapter 11 cases, in part, to resolve various claims arising out of a data breach that was identified and disclosed by the Debtors in October 2023 (the "<u>Cyber Security Incident</u>").  Throughout the pendency of these chapter 11 cases, the Debtors have engaged in negotiations with various stakeholders to reach a consensual resolution of claims arising from the Cyber Security Incident.  As part of those efforts, the Debtors and the Canadian Plaintiffs have reached a Settlement that, subject to the occurrence of the effective date of an Acceptable Plan and final approval of the Settlement, provides compensation in the amount of $3.25 million to the Canadian Data Breach Settlement Class to resolve their Cyber Security Incident claims.  The Canadian Data Breach Settlement Agreement described herein is the product of good-faith, arm's-length negotiations between the Parties, taking into account the

---

[3]   Capitalized terms used but not defined in this section have the meanings ascribed to such terms elsewhere in this Motion, in the First Day Declaration (as defined below) or the Plan (as defined below), as applicable.

3

risks and costs of continued litigation as well as the importance of securing a meaningful recovery for the Canadian Data Breach Class Members.

4.      The Settlement is fair and reasonable to the Canadian Data Breach Class Members. Resolving the Canadian Proceedings through the Settlement provides Canadian Data Breach Class Members with treatment under the Plan that will provide an Allowed amount of $3.25 million on account of the Canadian Class Proof of Claim.  Without approval of this Settlement, the Canadian Data Breach Class Members face an uncertain outcome as part of the Debtors' claims resolution process.  Moreover, the benefits provided by the Settlement, which are detailed in the Canadian Data Breach Class Settlement Benefits Plan, are carefully tailored to redress the alleged harms faced by certain 23andMe Canadian customers from the Cyber Security Incident.  If the Settlement is approved, the benefits available to Canadian Data Breach Class Members will include compensation for certain extraordinary claims and ordinary claims through a transparent and streamlined claims administration process managed by Canadian Data Breach Class Counsel and the Canadian Claims Administrator.

5.      The Settlement also confers a number of benefits to the Debtors' estate and their stakeholders.  Among other things, the Settlement allows the Debtors to resolve a substantial majority of Canadian Data Breach Claims filed against the Debtors.  As of the date hereof, the Debtors estimate that over 1,200 claimants in the Canadian Data Breach Settlement Class filed individual Proofs of Claims against the Debtors.  In the absence of the Settlement, the Debtors or the Plan Administrator, as applicable, would likely need to expend significant resources, money and time to resolve such claims as part of these chapter 11 cases, which would ultimately reduce the amount of distributable value available for stakeholder recoveries and delay distributions. Moreover, the Canadian Data Breach Settlement Agreement provides that the costs and expenses

4

associated with notice and distributions to Canadian Data Breach Class Members will be paid from the funds approved for distribution on account of the Canadian Class Proof of Claim, relieving the Debtors' estates from costs and expenses associated with administering Proofs of Claims filed by members of the Canadian Data Breach Settlement Class.

6.      As set forth in detail in this Motion, the proposed Settlement should be approved. It is both "fair and equitable and in the best interests of the estate," as required by Bankruptcy Rule 9019(a), and is "fair, reasonable, and adequate" for the Canadian Data Breach Class as required by FRCP 23.  The Settlement balances the constraints of the available funds in these chapter 11 cases while ensuring that the Canadian Data Breach Settlement Class receives fair compensation for their alleged injuries.

## **Jurisdiction**

7.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri (the "Local Rules").  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Parties consent to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The bases for the relief requested herein are sections 105 of the Bankruptcy Code, Rules 7023 and 9019 of the Bankruptcy Rules and Rule 23 of the FRCP.

## **Background**

### I.    **The 2023 Cyber Security Incident**

10.    On October 1, 2023, a threat actor posted online a claim to have 23andMe users' profile information. Upon learning of the incident, the Company immediately commenced an investigation and engaged third-party incident response experts to assist in determining the extent of any unauthorized activity.  Based on its investigation, the Company determined the threat actor was able to access a small percentage (0.1%) of user accounts in instances where usernames and passwords that were used on the Company website were the same as those used on other websites that had been previously compromised or were otherwise available (the "Credential Stuffed Accounts").  The information accessed by the threat actor in the Credential Stuffed Accounts varied by user account, and generally included ancestry information, and, for a small subset of those accounts, health-related information based upon the user's genetics.  Using this access to the Credential Stuffed Accounts, the threat actor accessed files containing information that other users consented  to share when opting into either 23andMe's DNA Relatives, Family Tree or Connections features.[4]  For most of the impacted customers, the information accessed by the threat actor included such information from a customer's DNA Relatives profile or Family Tree profile within 23andMe's DNA Relatives feature, which may have included their name, sex, birth year, information about the customer's ancestry based on their genetic information, self-reported location (city/zip code), ancestor birth locations, family names and Family Tree information.  For a small number of customers, the threat actor also accessed personal information about the

---

[4]    23andMe's "DNA Relatives" feature allows customers to find and connect with their genetic relatives, while the "Family Tree" feature automatically predicts a family tree based on the DNA shared by a customer with its relatives in 23andMe.  23andMe's "Connections" feature allows users to share information with another 23andMe user. Connections are established based on mutual agreement of the users—one user sends a Connection invitation and the other user accepts it to initiate the sharing of data between the users.

customer's present or future health based on the analysis of their genetic data, their self-reported health information and their uninterpreted genotype data.

11.     The Company determined that as a result of the Cyber Security Incident, the threat actor accessed, without authorization, personal information relating to approximately seven million 23andMe customers, including approximately 320,000 natural persons in Canada. Canadian Class Counsel Decl. ¶13.

## II.     The Canadian Proceedings

12.     Following the Company's disclosure of the Cyber Security Incident in October 2023, the named plaintiff in *J.R.* v. *23andMe Holding Co. et al.*, BCSC court file no. S-237147, Vancouver Registry (the "2023 British Columbia Action"), filed a Notice of Civil Claim against 23andMe Holding Co. and 23andMe, Inc. in the Supreme Court of British Columbia (the "Canadian Court") on October 20, 2023, alleging damages arising from the Cyber Security Incident.

13.     On November 24, 2023, plaintiff "Carloyn Rock" filed a Statement of Claim commencing a proposed class proceeding against 23andMe Holding Co. and 23andMe, Inc. in the Ontario Superior Court of Justice (*see Caroyln Rock* v. *23andMe Holding Co. and 23andMe, Inc.*, Ontario Superior Court, court file no. CV-23-00710212-00CP) (the "Ontario Action").

14.     On April 11, 2024, the plaintiff in the Ontario Action agreed to stay its proceeding in favor of the 2023 British Columbia Action and led by KND Complex Litigation, a Canadian law firm based in Toronto, Ontario with operations across Canada (the "Canadian Data Breach Class Counsel"), and counsel in the Ontario Action agreed to form a consortium led by Canadian Data Breach Class Counsel.

15.     On August 14, 2024, a mediation between parties to the Canadian Class Actions was held before the Honorable Mary Ellen Boyd in Vancouver, BC, Canada, but the parties did not achieve a settlement.

16.     On September 18, 2024, the named plaintiff in the 2023 British Columbia Action along with another named plaintiff, M.M. (together, the "Canadian Plaintiffs") filed a new Notice of Civil Claim commencing another proposed class proceeding against 23andMe Holding Co., 23andMe, Inc. and certain non-debtor individuals and entities, including certain of the Debtors' former directors and/or officers (the "D&O's") and the Debtors' auditor, KPMG LLP (United States) ("KPMG") (the "2024 British Columbia Action," and together with the 2023 British Columbia Action, the "Canadian Class Actions," and the Canadian Class Actions together with the Ontario Action, the "Canadian Proceedings") in the Canadian Court alleging damages from the Cyber Security Incident.

### III.   The Chapter 11 Cases

17.     On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

18.     The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  On April 3, 2025, the Office of the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On July 15, 2025, the U.S. Trustee appointed an official committee of equity security holders (the "Official Equity Committee" and together with the Creditors' Committee, the "Committees").

19.     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of*

8

*Matthew Kvarda in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 32] (the "First Day Declaration").

20.     On April 30, 2025, the Court entered the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof, and (II) Granting Related Relief* [Docket No. 349] (the "Bar Date Order"), establishing certain dates and deadlines for filing Proofs of Claim in these chapter 11 cases, including July 14, 2025 as the deadline for submitting claims arising from or related to the Cyber Security Incident (the "Cyber Security Incident Bar Date").

21.     On May 26, 2025, with consent from the Canadian Plaintiffs, the Canadian Court recognized the Debtors' chapter 11 cases as a "foreign main" proceeding pursuant to the *Companies' Creditors Arrangement Act* (Canada) and granted other related relief, *In the Matter of the Companies' Creditors Arrangement Act, R.S.C.1985, c. C-36 as amended, and In the Matter of 23andMe Holding Co. and 23andMe, Inc.*, Case No. VLC-S-253696 (Can. B.C. S.C.).

22.     On June 5, 2025, the Bankruptcy Court entered the *Stipulation and Agreed Order Providing for a Temporary Stay of the Canadian Proceedings* [Docket No. 655], extending the automatic stay to the D&Os and KPMG.

23.     On July 10, 2025, the Canadian Plaintiffs filed the Canadian Class Proof of Claim.

24.     On July 14, 2025, the Debtors and the Canadian Plaintiffs filed a *Notice Regarding Rule 7023 Settlement with Canadian Data Breach Plaintiffs* [Docket No. 1003] providing notice of an agreement in principle reached between the Debtors and the Canadian Plaintiffs regarding issues related to Canadian Data Breach Class Counsel's authorization to file one, consolidated class proof of claim on behalf of the Canadian Data Breach Settlement Class (the "Canadian Class

Proof of Claim") and other issues related to class certification pursuant to Rule 7023 of the Bankruptcy Rules (the "Rule 7023 Issues").

25.     On August 12, 2025, the Debtors and the Canadian Plaintiffs executed a settlement agreement (the "Original Settlement Agreement") to resolve the Parties' Rule 7023 Issues, the terms of which were incorporated into (a) the Debtors' *Joint Chapter 11 Plan of Chrome Holding Co. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1113] (as modified, amended or supplemented from time to time, the "Plan") and (b) *Disclosure Statement for the Joint Chapter 11 Plan of Chrome Holding Co. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1114] (as modified, amended or supplemented from time to time, the "Disclosure Statement").

26.     On September 5, 2025, the Debtors and the Canadian Plaintiffs executed an amended settlement agreement (*i.e.*, the Canadian Data Breach Class Settlement Agreement) with modifications to the Original Settlement Agreement.

## IV.    Proposed Settlement of Claims

27.     The material terms of the Canadian Data Breach Class Settlement Agreement are set forth below:[5]

> **A.    Settlement Terms**.  Subject to the conditions set forth in the Canadian Data Breach Class Settlement Agreement, the Debtors, the Canadian Plaintiffs and Canadian Data Breach Class Counsel agree as follows:
>
> 1.    Canadian Class Proof of Claim:  Canadian Data Breach Class Counsel may file one, consolidated class proof of claim on behalf of the Canadian Plaintiffs and any individual who (a) was a customer of 23andMe at any time between May 1, 2023 through October 1, 2023 (the "Cyber Security Incident Period"); (b) resided in Canada during the Cyber Security Incident Period; and (c) received a notice from the Debtors notifying the customer that their personal information was compromised in the Cyber Security

---

[5]     The summary set forth herein is qualified in its entirety by the terms of the Canadian Data Breach Class Settlement Agreement, and the terms of the Canadian Data Breach Class Settlement Agreement shall control in the event of a conflict.

Incident (together with the Canadian Plaintiffs, the "Canadian Data Breach Class Members"), subject to, among other things, the following:

(a)   The Canadian Class Proof of Claim may be filed in an amount determined by Canadian Data Breach Class Counsel in accordance with applicable law;

(b)   Notwithstanding the filed amount of the Canadian Class Proof of Claim, subject to the occurrence of the Plan Effective Date (as defined below) and as of the date this Agreement is approved by the appropriate court(s) on a final basis, the Canadian Class POC shall be deemed to be an allowed claim in the amount of US$3,250,000.00 (the "Canadian Class Allowed Claim") and the recovery on account of the Canadian Class Allowed Claim will not exceed US$3,250,000.00 of distributions;

(c)   The Canadian Data Breach Class Proof of Claim shall be administered and reconciled, as applicable, in the U.S. in accordance with the claims administration process set forth in an Acceptable Plan (as defined below); and

(d)   The order under Rules 9019 and 7023 of the Bankruptcy Rules approving and implementing the terms of the Canadian Data Breach Class Settlement Agreement on a final basis (the "Final Approval Order") shall, among other things, provide for the allowance of the Canadian Class Allowed Claim; accordingly, all other parties in interest shall have the opportunity to object to allowance of the Canadian Class Allowed Claim by way of an objection to the Final Approval Order; *provided further* that the hearing to consider the Agreement on a final basis shall not take place before an Acceptable Plan goes effective in accordance with its terms; *provided further* that Canadian Data Breach Class Counsel may commence the process for noticing the Canadian Data Breach Class Members regarding the settlement contemplated in the Canadian Data Breach Class Settlement Agreement prior to entry of the Final Approval Order so long as such process is commenced no earlier than the date the Bankruptcy Court enters an order confirming a plan in these chapter 11 cases.

2.    Certification of the Canadian Data Breach Settlement Class.  For settlement purposes only, the Debtors agree to the certification of the Canadian Data Breach Class Members under Rule 7023 of the Bankruptcy Rules.

3.    Chapter 11 Plan:  Canadian Data Breach Class Counsel shall engage in good-faith negotiations with the Debtors regarding the terms of a mutually acceptable chapter 11 plan, which is in all material respects consistent with

11

the Canadian Data Breach Class Settlement Agreement (an "<u>Acceptable Plan</u>").

    (a)    If an Acceptable Plan has been filed and such Acceptable Plan contemplates separate classification of Canadian Data Breach Class Members from general unsecured creditors, Canadian Data Breach Class Counsel and Canadian Plaintiffs shall support such separate classification; *provided* that such class of Canadian Data Breach Class Members receives pro rata treatment with all other general unsecured classes on account of any allowed Canadian Class Proof of Claim, unless otherwise agreed by Canadian Data Breach Class Counsel, in accordance with the Bankruptcy Code.

    (b)    Canadian Data Breach Class Counsel, on behalf of the Canadian Data Breach Class Members, shall vote in favor of the Acceptable Plan and will use commercially reasonable efforts to encourage the Canadian Data Breach Class Members who file individual proofs of claim to support and vote in favor of an Acceptable Plan, including but not limited to submitting a letter of support for such plan to be included as part of the solicitation package; *provided* that the costs and expenses associated with sending such a letter of support shall in no event be borne by Canadian Data Breach Class Counsel or the Canadian Data Breach Class Members.

4.    <u>Settlement Class Certification</u>:  if an Acceptable Plan contemplates certification of the Canadian Data Breach Settlement Class as a settlement class pursuant to applicable laws, which shall be determined upon good-faith negotiation between the Debtors and Canadian Data Breach Class Counsel on behalf of the Canadian Data Breach Class Members, the Debtors shall seek approval of a process whereby:

    (a)    The funds approved for the Canadian Class Allowed Claim will be placed in a separate trust, sub-trust or similar vehicle (the "<u>Canadian Data Breach Class Settlement Fund</u>") controlled by Canadian Data Breach Class Counsel for the benefit of the Canadian Data Breach Class Members and, if and to the extent approved by the appropriate court(s), Canadian Data Breach Class Counsel.

    (b)    Canadian Data Breach Class Counsel shall oversee distribution of the Canadian Data Breach Class Settlement Fund pursuant to a proposed benefits plan approved by the appropriate court(s) (the "<u>Canadian Data Breach Settlement Class Benefits Plan</u>" attached hereto as **<u>Exhibit D</u>**), with the costs of administering the Canadian Data Breach Class Settlement Fund and the Canadian Data Breach Settlement Class Benefits Plan paid from the Canadian Data Breach Class Settlement Fund.

(c)     The Canadian Data Breach Class Benefits Plan shall include the ordinary terms of approval process of the Canadian Data Breach Class Settlement Fund, including but not limited to the dissemination of appropriate notice to the Canadian Data Breach Class Members, as approved by the appropriate court(s), the costs of which shall be paid from the Canadian Data Breach Class Settlement Fund in amounts approved by the appropriate court(s).

(d)     Settlement Class Opt Outs.

   (i)     Any Canadian Data Breach Class Member that individually and timely filed a valid Proof of Claim (a "Canadian Eligible Class Member") shall have the opportunity to opt out of the Canadian Data Breach Class Benefits Plan by timely and validly electing to opt out of the Canadian Data Breach Class Benefits Plan. Any Canadian Data Breach Class Member that fails to timely opt out of the Canadian Data Breach Class Benefits Plan shall receive benefits as set forth in the Canadian Data Breach Class Benefits Plan, and may not maintain a separate Proof of Claim in the bankruptcy or otherwise assert or continue their claim in the Canadian Class Actions. Any Canadian Data Breach Class Member that opts out may be placed in a separate class under the Plan.

   (ii)     If more than 10% of Canadian Eligible Class Members opt out of the Canadian Data Breach Class Benefits Plan (the "Opt-Out Percentage"), the Debtors shall have the option to provide Canadian Data Breach Class Counsel with notice terminating the Agreement and the Debtors' right to object to the allowance and full amount of the Canadian Data Breach Class Proof of Claim shall be fully preserved.

   (iii)     In the event that the Opt-Out Percentage is triggered and the Debtors exercise the option to terminate the Canadian Data Breach Class Settlement Agreement, any and all obligations imposed on the parties pursuant to the Canadian Data Breach Class Settlement Agreement shall be terminated, and the Canadian Data Breach Class Settlement Agreement shall be without prejudice to either of the parties' respective rights, claims and/or defenses in the Canadian Class Actions.

5.     Canadian Class Actions:  upon the effective date of an Acceptable Plan (the "Plan Effective Date") and the funding of the Canadian Data Breach Class Settlement Fund, Canadian Plaintiffs shall (a) promptly move to dismiss the Canadian Class Actions with prejudice and without costs to any Party and the Canadian Data Breach Class Members' claims against the Debtors, the Debtors' D&Os as well as KPMG arising from or related to the

13

Canadian Class Actions shall be finally and fully compromised, settled and released; and (b) promptly move, and/or shall cause that a motion be brought, to dismiss the Ontario Action with prejudice and without costs to any Party and the Canadian Data Breach Class Members' claims against the Debtors asserted in this proceeding shall be finally and fully compromised, settled and released; *provided* that the Canadian Plaintiffs agree to further stay the Canadian Class Actions and the Ontario Action until the earlier of (i) the funding of the Canadian Data Breach Class Settlement Fund or (ii) termination of the Canadian Data Breach Class Settlement Agreement in accordance with the terms herein.

6. <u>Foreign Recognition</u>: the Debtors and the Canadian Plaintiffs in the Canadian Class Actions shall bring an application for recognition in the Supreme Court of British Columbia of any order entered by the Bankruptcy Court approving the terms of the Canadian Data Breach Class Settlement Agreement.

## B. Mutual Releases

1. Upon the Plan Effective Date, Canadian Data Breach Class Counsel, Canadian Plaintiffs and the Canadian Data Breach Class Members (the "<u>Canadian Class Action Parties</u>") shall be deemed to, and hereby agree to, release, acquit, satisfy and forever discharge the Debtors and any of their respective members, shareholders, affiliates, related entities, current and former officers, directors, employees, principals, auditors, agents, successors, predecessors and representatives (the "<u>Debtor Released Parties</u>") for any claims arising out of the Cyber Security Incident that the Canadian Class Action Parties can, shall or may have against the Debtor Released Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

2. Upon the Plan Effective Date, the Debtors and any of their respective members, shareholders, affiliates, related entities, current and former officers, directors, employees, principals, agents, successors, predecessors and representatives shall be deemed to, and hereby agree to, release, acquit, satisfy and forever discharge the Canadian Class Action Parties for any claims arising out of the Cyber Security Incident, including any claims arising out of or related in any way to the institution, prosecution or settlement of the Canadian Class Actions against 23andMe Inc., that the Debtors can, shall or may have against the Canadian Class Action Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

14

3.     The Parties agree that the releases set forth herein shall be construed as broadly as possible, except that the obligations of the Parties as set forth in this Agreement shall not be released.

**C.     Canadian Data Breach Settlement Class Definition and Estimated Class Size**

28.     The Canadian Data Breach Settlement Class includes any individual who (a) was a customer of the Debtors during the Cyber Security Incident Period; (b) resided in Canada during the Cyber Security Incident Period; and (c) received a notice from the Debtors notifying the customer that their personal information was compromised in the Cyber Security Incident. 23andMe's investigation determined the threat actor accessed Personal Information without authorization relating to approximately 320,000 natural persons in Canada.

**D.     Benefits to Canadian Data Breach Class Members**

29.     Subject to approval of this Court and the Canadian Court, and the implementation and administration of the chapter 11 plan, the Canadian Data Breach Class Settlement Agreement provides for the payment of US$3.25 million (approximately, CA$4.49 million), in full and final settlement of the claims advanced against 23andMe Holding Co. and 23andMe, Inc. (collectively, "23andMe") in the Canadian Class Actions.  As part of the Settlement, the claims against the other named defendants in the Canadian Class Actions  will be dismissed with prejudice and without costs to any party in the Canadian Class Actions.

30.     The manner of distribution of the net settlement funds will be as follows:

1.     The formation of the Canadian Data Breach Settlement Distribution Fund.

31.     The net proceeds of the Settlement, after deduction of legal fees, disbursements, expenses, costs and applicable expenses will be available for distribution amongst the Canadian Data Breach Class Members ("Canadian Data Breach Settlement Distribution Fund").  After the deduction of those expenses, Canadian Data Breach Class Counsel expect that approximately US$1.68 million (approximately CA$2.32 million) will be available in the Canadian Data Breach

Settlement Distribution Fund, as detailed below (all figures indicated below are estimates based on the current currency exchange rates, and they are rounded for ease of use):

| | | |
|---|---|---|
| (a) | Gross Canadian Data Breach Settlement Amount | US$3.25 million |
| (b) | Canadian Data Breach Class Counsel Legal Fees (33% of the Gross Canadian Data Breach Settlement Amount, subject to Court approvals) | US$1.07 million |
| (c) | Tax on Legal Fees | US$0.14 million |
| (d) | Canadian Data Breach Class Counsel Disbursements | US$0.1 million |
| (e) | Administration Expenses | US$0.26 million |
| (f) | Total Fees and Expenses (b)+(c)+(d)+(e) | US$1.57 million |
| (g) | Canadian Data Breach Settlement Distribution Fund (a) - (e) | US$1.68 million |

2.    The allocation of the Canadian Data Breach Settlement Distribution Fund into: (A) the Canadian Extraordinary Claims Distribution Fund; and (B) the Canadian Ordinary Claims Distribution Fund.

32.    Fifty percent of the Canadian Data Breach Settlement Distribution Fund will be initially allocated to a separate fund to compensate claimants with certain extraordinary claims (the "Canadian Extraordinary Claims Distribution Fund").  The other fifty percent of the Canadian Data Breach Settlement Distribution Fund will be allocated to a separate fund to compensate claimants with ordinary claims (the "Canadian Ordinary Claims Distribution Fund").

3.    Administration of the Canadian Extraordinary Claims Distribution Fund.

33.    Canadian Data Breach Class Counsel expect the Canadian Extraordinary Claims Distribution Fund will include US$0.84 million (approximately CA$1.16 million).  Each Canadian Data Breach Class Member who has incurred any of the following out-of-pocket expenses may submit a claim for up to CA$2,500 against the Canadian Extraordinary Claims Distribution Fund:

(a)    unreimbursed costs associated with the purchase of a physical security or monitoring system;

16

(b)    unreimbursed costs associated with seeking professional mental health counseling or treatment; and/or

(c)    any other documented, unreimbursed, out-of-pocket expense that the eligible Canadian Data Breach Class Member proves was incurred as a direct result of, and in response to, the Cyber Security Incident.

34.    To be eligible, a Canadian Data Breach Class Member who submits an extraordinary claim must submit documentation proving that such expenses were incurred, and that they were incurred between October 1, 2023 and March 31, 2024.

35.    The Canadian claims administrator (hereinafter, the "Canadian Claims Administrator"), will review and determine the extraordinary claims. If the amount available in the Canadian Extraordinary Claims Distribution Fund is less than the aggregate value of the approved extraordinary claims, the Canadian Claims Administrator will pro rate the available funds amongst the claimants based on the value of their approved extraordinary claims. If the amount available in the Canadian Extraordinary Claims Distribution Fund exceeds the value of the approved extraordinary claims, the Canadian Claims Administrator will pay the extraordinary claims in full and remit the balance remaining in the Canadian Extraordinary Claims Distribution Fund into the Canadian Ordinary Claims Distribution Fund.

4.    Administration of the Canadian Ordinary Claims Distribution Fund.

36.    Canadian Data Breach Class Counsel expect the Canadian Ordinary Claims Distribution Fund will include a minimum of US$0.84 million (approximately CA$1.16 million).

37.    The Canadian Claims Administrator will distribute this fund amongst all eligible claimants on a pro rata basis without the need to provide further proof or documentation.

**E.    Canadian Data Breach Class Counsel's Fees and Other Costs**

38.    Canadian Plaintiffs and Canadian Data Breach Class Counsel will apply to this Court for approval of legal fees at 33% of the gross recovery of US$3.25 million, or approximately

17

US$1.07 million, plus applicable taxes. In addition, Canadian Plaintiffs and Canadian Data Breach Class Counsel will apply for reimbursement of Canadian Data Breach Class Counsel's disbursements, which are expected to not exceed US$100,000.

39.     Canadian Data Breach Class Counsel have worked on this complex matter, including both the proposed class proceedings and the insolvency proceedings, on a contingency basis. Canadian Data Breach Class Counsel have furthermore internally funded this litigation. Canadian Class Counsel Decl. ¶27.

40.     Canadian Plaintiffs and Canadian Data Breach Class Counsel will also apply for approval of honorarium payments to the three Canadian plaintiffs, namely J.R., M.M. and Carolyn Rock, at CA$2,500, for a total of CA$7,500 (approximately, US$5,500).

41.     If this Court approves the payment of legal fees, disbursements and the honorarium payments, Canadian Data Breach Class Counsel will also seek appropriate recognition and approval orders from the Canadian Court.

**V.      Proposed Notice to Members of the Canadian Data Breach Settlement Class**

42.     Canadian Data Breach Class Counsel have prepared draft forms of the Canadian Class Notice which includes short-form and long-form notices of the Settlement. The Canadian Class Notice provides detailed information regarding the Settlement, the Canadian Data Breach Class Members who stand to benefit from it, the manner of distribution of the proceeds of the Settlement, the steps that are expected to happen in the future and the options available to Canadian Data Breach Class Member, including the ability to object to the approval of the Settlement and the related relief or opt out of the Settlement.

43.     Canadian Plaintiffs and Canadian Data Breach Class Counsel propose that the Canadian Claims Administrator distribute the Canadian Class Notice as follows:

(a)    direct email to each Canadian Data Breach Class Member at the email addresses associated with their 23andMe accounts;

(b)    direct email to persons who have contacted Canadian Data Breach Class Counsel;

(c)    direct mail to persons who do not have a valid email address on file, or whose email address is invalid or is otherwise undeliverable, to the mailing address 23andMe used to notify its affected customers of the Cyber Security Incident, to the extent available;

(d)    publication through the Canada Newswire in English and French on a one-time basis;

(e)    publication on a dedicated website to be created by the Canadian Claims Administrator; and

(f)    publication on Canadian Data Breach Class Counsel's website at https://knd.law/class-actions/23-and-me/.

## VI.    Proposed Canadian Claims Administrator

44.    Canadian Plaintiffs and Canadian Data Breach Class Counsel would propose that this Court appoint Concilia Services Inc. ("Concilia") as the Canadian Claims Administrator.

45.    Based in Montreal, Province of Quebec, Concilia is a firm focusing on the administration of settlements in class actions, and it has experience administering settlements in similar proceedings. Concilia has been appointed by courts in Canada as a settlement administrator in various class actions, including consumer and privacy class actions. Canadian Claims Admin Decl. ¶1.

46.    Concilia is able to serve the Canadian Settlement Class in the French language, which is imperative for administering the Settlement in Canada which has a significant French-speaking population. Canadian Claims Admin Decl. ¶8.

47.    To facilitate the claims process, Concilia will establish a dedicated website with respect to the Settlement (the "Settlement Website"), and make available an online version of the Canadian Claim Form. Canadian Claims Admin Decl. ¶6. The Canadian Claims Administrator

will also establish a dedicated email address and a toll-free phone number in order to receive and respond to inquiries from Canadian Data Breach Class Members.  *Id.*

48.     Concilia has provided proposals for the distribution of the Canadian Class Notice and the administration of the Settlement at estimated costs of CA$42,600 and CA$310,000, respectively, for a total of CA$352,600 (approximately, US$256,000).  Canadian Claims Admin Decl. ¶¶5, 6.

## ARGUMENT

**I.      The Court Should Approve the Canadian Data Breach Class Settlement Agreement Pursuant to Rule 9019 of the Bankruptcy Rules**

49.     Bankruptcy Rule 9019 grants the Court authority to approve the settlement of claims and controversies after notice and a hearing.  Specifically, Bankruptcy Rule 9019(a) provides the following:

> On the [debtor in possession's] motion and after notice and a hearing, the court may approve a compromise or settlement.  Notice must be given to:  all creditors; the United States trustee; . . . and any other entity the court designates.

Fed. R. Bankr. P. 9019(a).

50.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is "fair and equitable and in the best interests of the estate."  *TooBaRoo, LLC* v. *W. Robidoux, Inc.*, 135 F.4th 1133, 1138 (8th Cir. 2025); *see also In re Apex Oil Co.*, 92 B.R. 847, 866-67 (Bankr. E.D. Mo. 1988) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) ("*TMT Trailer Ferry*") and *In re Cockhren*, 468 B.R. 838, 845-46 (8th Cir. 2012)).  The proposed settlement need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." *Tri-State*

*Financial, LLC* v. *Lovald*, 525 F.3d 649, 654 (8th Cir. 2008) (citing *TMT Trailer Ferry*, 390 U.S. at 424).

51.     Relying on the guiding language of *TMT Trailer Ferry*, courts in this circuit have set forth the following factors regarding the reasonableness of settlements (the "*TMT* Factors"):

    i.    the probability of success in the litigation;

    ii.    the difficulties, if any, to be encountered in the matter of collection;

    iii.    the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

    iv.    the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Tri-State Financial*, 525 F.3d at 654; *see also TooBaRoo,* 135 F.4th at 1138-1139.  Ultimately, approval of a compromise is within the sound discretion of the bankruptcy court.  *See Tri-State Financial*, 525 F.3d at 654 (citing *In re New Concept Housing, Inc.*, 951 F.2d 932, 939 (8th Cir. 1991) ("A bankruptcy court's approval of a settlement will not be set aside unless there is plain error or abuse of discretion")).  It is the responsibility of the bankruptcy court to examine a settlement and determine whether it "fall[s] below the lowest point in the range of reasonableness." *Tri-State Financial*, 525 F.3d at 654.

52.     Based on the relevant factors,[6] the Canadian Data Breach Class Settlement Agreement is fair and equitable, falls well within the range of reasonableness, and is in the best interests of the Debtors' estate and therefore should be approved.  The Parties engaged in extensive, good-faith negotiations to reach a consensual agreement that allows the Debtors to avoid draining estate resources in discovery and legal fees and expenses litigating complex Rule 7023

---

[6]    The second *TMT* Factor—the likely difficulties in collection—does not apply here.  *See In re Nutraquest, Inc.*, 434 F.3d 639, 646 (3d Cir. 2006) (finding that the second *Martin* factor, which is identical to the second *TMT* Factor, did not apply when considering the settlement of a claim against a debtor).

Issues.  And while the Parties are confident in their respective legal and factual positions with respect to the Rule 7023 Issues, litigation is inherently uncertain.  Litigating the Rule 7023 Issues to final judgment would impose significant costs on the Debtors' estates and further consume the Debtors' limited resources to their stakeholders' detriment.  Absent a settlement, Canadian Data Breach Class Counsel would have likely filed an adversary proceeding to litigate the Rule 7023 Issues and the Debtors would be required to litigate such issues.  Further, if the Court were to find it appropriate to extend Bankruptcy Rule 7023 to the claims allowance process for purposes of authorizing the Canadian Data Breach Class Proof of Claim, the Parties would have to engage in full FRCP 23 class certification proceedings as to the merits of the purported class (including targeted discovery with respect thereto), and would potentially proceed to expedited discovery and a trial on the Canadian Data Breach Class Proof of Claim.

53.     The Debtors or the Plan Administrator would also likely incur significant fees and expenses to administer and resolve the Canadian Data Breach Class Proof of Claim as part of the claims administration process in the absence of the Settlement.  And given the quantum of the amount asserted on the Canadian Data Breach Class Proof of Claim (approximately $407 million), other key stakeholders in these cases, including the Creditors' Committee and the Official Equity Committee, would likely actively participate in that process, requiring even further expenditures by the Debtors' estates.

54.     The Parties further submit that the terms of the Canadian Data Breach Class Settlement Agreement provide other significant benefits for the Debtors' estates.  *First*, the Debtors believe that the proposed recovery for the Canadian Data Breach Class Members contemplated as part of the Settlement, specifically the Canadian Data Breach Class Allowed Claim, is a favorable result, particularly in light of the quantum of the claim asserted as part of the

Canadian Data Breach Class Proof of Claim.  *Second*, as of the date hereof, more than 1,200 Canadian claimants have filed Proofs of Claim asserting claims arising from the Cyber Security Incident.  In the absence of the Settlement, the Debtors or the Plan Administrator, as applicable, would likely need to expend significant resources, money and time to administer these Canadian Data Breach Claims, which would threaten the efficient and effective administration of these cases, reduce the amount of distributable value available for stakeholder recoveries and delay distributions.  Thus, subject to the number of Canadian Eligible Class Members who opt out of the Canadian Data Breach Settlement Class, the Settlement will resolve a significant number of Canadian Data Breach Claims filed against the Debtors, which would be in the best interest of all stakeholders.  *Third*, the full, customary releases—especially when coupled with the request in the Proposed Order that the Court determine the Cyber Security Incident Bar Date remains in effect and has not, and will not, be tolled with respect to creditors who did not file individual proofs of claim on account of their Cyber Security Incident Claims—provide finality for all parties in interest.

55.    *Fourth*, pursuant to the terms of the Settlement, subject to confirmation of an Acceptable Plan, final approval of the Settlement and funding of the Canadian Data Breach Class Settlement Fund, Canadian Plaintiffs have agreed to dismiss the Canadian Proceedings with prejudice and without costs to any Party, and the Canadian Data Breach Class Members' claims against the Debtors, the D&Os as well as KPMG arising from or related to the Canadian Proceedings shall be finally and fully compromised, settled and released.  This confers a significant benefit to the Debtors and the estates because in the absence of the Settlement, the Canadian Plaintiffs and Canadian Data Breach Class Members may continue to litigate their claims against the D&Os and KPMG after the Plan Effective Date, which litigation will inevitably require

participation from the Debtors or the Plan Administrator, at the expense and cost of the estates, given that, among other things, the facts at issue in the litigation will necessitate discovery of certain information that is in the possession of the Debtors.

56.     *Fifth*, the Canadian Data Breach Class Settlement Agreement also provides that the costs and expenses associated with notice and distributions to Canadian Data Breach Class Members will be paid from the Canadian Data Breach Class Settlement Fund, thereby relieving the Debtors' estates from costs and expenses associated with administering Proofs of Claims filed by members of the Canadian Data Breach Settlement Class.  And lastly*,* Canadian Data Breach Class Counsel have agreed to support a chapter 11 plan that is in all material respects consistent with the Canadian Data Breach Class Settlement Agreement.  Accordingly, the Canadian Data Breach Class Settlement Agreement provides a fair, practical and efficient resolution of disputes and a substantial number of Proofs of Claims, that will enable the Debtors to advance confirmation and consummation of a chapter 11 plan and facilitate distributions in a timely and efficient manner.

57.     For the reasons discussed herein, the Parties submit that the Canadian  Data Breach Class Settlement Agreement is in the best interest of the Debtors' estate and accordingly, the Parties respectfully request that the Court approve the Canadian Data Breach Class Settlement Agreement.

## II.     The Court Should Preliminarily Approve the Settlement Agreement Pursuant to FRCP 23

58.     While Bankruptcy Rule 9019 asks whether the proposed settlement is "fair and equitable and in the best interests of the estate," *In re SportStuff, Inc.*, 430 B.R. 170, 172 (B.A.P. 8th Cir. 2010) (citation omitted), Rule 23 of the FRCP asks similar questions but from the perspective of the class.  Under Rule 23, when a proposed class settlement is reached, it must be submitted to the court for preliminary approval. *See* Fed. R. Civ. P. 23(e); 4 William B. Rubenstein,

24

NEWBERG AND RUBENSTEIN ON CLASS ACTIONS §13:12 (6th ed. 2025). At the preliminary approval stage, the court makes a preliminary determination as to whether the proposed settlement is likely to approve the proposal under Rule 23(e)(2), warranting sending notice to the class. *Id.* Following the notice period, the court holds a fairness hearing to determine if the proposed settlement is "fair, reasonable, and adequate," at which class members may appear and support or object to the settlement, and the court decides whether to give final approval to the settlement. *Id.* §13:39; Fed. R. Civ. P. 23(e)(2).

59. At the preliminary approval stage, the Parties need show only that final approval is likely, not that it is certain. *See* Fed. R. Civ. P. 23(e)(1)(B). In making this determination, Rule 23(e)(2) requires the Court to consider whether (a) the class representatives and class counsel have adequately represented the class, (b) the proposal was negotiated at arm's length, (c) the relief provided by the settlement is adequate and (d) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

60. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public." *Little Rock Sch. Dist.* v. *Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (citation omitted). "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic* v. *Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (citation and internal marks omitted).

61. The proposed Settlement meets (and exceeds) the requirements for preliminary approval, certification of the settlement classes and issuance of notice.

A.       **The Proposed Settlement Is Fair, Reasonable and Adequate**

62.       Pursuant to Rule 23(e)(1)(B)(i), the Court may preliminarily approve a class action settlement if it "will likely be able to approve the proposal under Rule 23(e)(2)" which entails reviewing four enumerated factors.  The Parties address each factor in turn.

1.       Canadian Data Breach Class Counsel and the Canadian Plaintiffs Have Adequately Represented the Class.

63.       This factor focuses "on the actual performance of counsel acting on behalf of the class."  Fed. R. Civ. P. 23, Advisory Comm. Notes (Dec. 1, 2018) (hereafter, "Advisory Comm. Notes").  Here, the adequacy factor is easily satisfied.

64.       The Canadian Plaintiffs, J.R. and M.M., are residents of British Columbia and Ontario, respectively.  Canadian Class Counsel Decl. ¶43.  To date, they have directed the conduct of the Canadian Proceedings as well as the Debtors' insolvency proceedings, which have been ongoing at a fast pace since October 2023.  *Id.* at ¶¶7,43.  Their efforts have included: (a) directing Canadian Data Breach Class Counsel through the various iterations of the pleadings in the Canadian Class Actions; (b) directing Canadian Data Breach Class Counsel in complex negotiations resulting in the stay of the Ontario Action and the formation of a Canadian nation-wide consortium to litigate the claim on behalf of the affected Canadian customers of 23andMe, facilitating an efficient, coordinated proceeding; (c) directing Canadian Data Breach Class Counsel in the conduct of a robust mediation process which took place in August of 2024; (d) directing Canadian Data Breach Class Counsel in the conduct of the parallel insolvency proceedings in Canada under Canada's *Companies Creditors Arrangement Act*, RSC 1985, C-36, Supreme Court of British Columbia at Vancouver File No. S-253696; and (e) directing Canadian Data Breach Class Counsel in the conduct of complex, multi-stage negotiations that resulted in: (i)  resolution of issues around the submission of a Canadian Class Proof of Claim in July 2025;

26

(ii) execution of the Original Settlement Agreement on August 12, 2025; and (iii) execution of the Settlement Agreement on September 5, 2025. *Id.* ¶44.

65.     Canadian Data Breach Class Counsel have engaged in extensive efforts to protect the interests of the Canadian Data Breach Class Members every step of the way through the complex procedures described in the preceding paragraph to achieve the Settlement. Canadian Class Counsel Decl. ¶45. Canadian Data Breach Class Counsel's efforts will continue after the implementation of an Acceptable Plan and until the settlement funds are distributed to eligible Canadian Data Breach Class Members.

66.     Canadian Data Breach Class Counsel have undertaken this matter on a contingency basis and have internally funded the costs and disbursements of these proceedings, taking on significant risks and costs in pursuing this matter. Canadian Class Counsel Decl. ¶27.

        2.     The Settlement Was Negotiated at Arm's Length.

67.     This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e), Advisory Comm. Notes. This factor also "requires the court to decide whether the agreement is a product of fraud or collusion." *Myers* v. *Iowa Bd. of Regents*, 2023 WL 7102158, at *7 (S.D. Iowa June 22, 2023).

68.     Parties to the Canadian Data Breach Class Settlement Agreement first engaged in settlement discussions prior to the commencement of these cases, including one failed mediation session before the Honorable Mary Ellen Boyd in Vancouver, BC. The Parties, through experienced counsel, continued their settlement discussions throughout the pendency of these chapter 11 cases by exchanging numerous e-mails and conducting telephone conferences. Moreover, the Canadian Plaintiffs and Canadian Data Breach Class Counsel understood the strengths and weaknesses of their claims at the time of the settlement negotiations based on

extensive investigation and research. Canadian Class Counsel Decl. ¶36. Thus, this factor weighs

in favor of Settlement approval. *See In re Resideo Techs., Inc., Sec. Litig.*, 2022 WL 872909, at

*2 (D. Minn. Mar. 24, 2022) (finding that the proposed settlement was negotiated at arm's length

because negotiations were held "between experienced counsel" and because the settling plaintiffs

"knew the strengths and weaknesses of their claims at the time of settlement negotiations").

### 3.   The Relief Provided to the Class Is Adequate.

69.     Rule 23(e) charges the Court to consider whether "the relief provided for the class

is adequate, taking into account: (a) the costs, risks, and delay of trial and appeal; (b) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (c) the terms of any proposed award of attorney's fees, including

timing of payment; and (d) any agreement required to be identified under Rule 23(e)(3). *See* Fed.

R. Civ. P. 23(e)(2)(c)(i-iv).

70.     In this case, there is no doubt that the Settlement benefits provide fair, reasonable

and adequate relief for all Canadian Data Breach Class Members, particularly when viewed in

light of the meaningful monetary benefit this Settlement confers on the Canadian Data Breach

Class Members, and the limited funds available to satisfy the high volume of claims asserted

against the Debtors. Pursuant to the Canadian Data Breach Class Settlement Agreement, subject

to entry of the Final Approval Order, the Canadian Data Breach Class Settlement Trust will be

funded in cash in the amount of $3.25 million.

71.     Moreover, as set forth in the proposed Canadian Data Breach Class Benefits Plan,

the benefits offered to Canadian Data Breach Class Members directly account for the multiple

aspects of harm such members have allegedly suffered and squarely address the alleged damages

caused by the exposure of such members' personal information as part of the Cyber Security

Incident.  The manner of distribution of the proceeds of the Settlement is outlined above, at paragraphs 30-37 of this Motion.

72.     Pursuant to the Canadian Settlement Class Benefits Plan, each Canadian Data Breach Class Member may submit an extraordinary claim for up to CA$2,500 for documented, unreimbursed expenses incurred as a direct result of and in response to the Cyber Security Incident between October 1, 2023 and March 31, 2024.  Extraordinary claims are comprised of three categories: (a) unreimbursed costs associated with the purchase of a physical security or monitoring system; (b) unreimbursed costs associated with seeking professional mental health counseling or treatment; and/or (c) any other documented, unreimbursed, out-of-pocket expense that the claimant establishes was incurred as a direct result of, and in response to, the Cyber Security Incident.  Moreover, pursuant to the Canadian Settlement Class Benefits Plan, each Canadian Data Breach Class Member may submit an ordinary claim without the need to provide further information or documentation.

73.     Therefore, the Settlement complies with the requirement that "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D); *see also* 7B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1797.1 (3d ed. 2024) (citing cases and noting that courts "must consider whether the proposal treats class members equitably relative to each other").

### (a)     The relief provided to the class is adequate considering the costs and risks of further litigation

74.     Considering the costs and risks of further litigation, the proposed Settlement satisfies Rule 23(e)(2)(c)(i).  The Canadian Plaintiffs believe their class proof of claim is meritorious and maintain that the strength of their claims is a significant factor that drove settlement negotiations and ultimately the proposed Canadian Data Breach Class Settlement

Agreement.  At the same time, the Canadian Plaintiffs face substantial risks that could decrease the amount of recovery—or even defeat recovery on a class-wide basis altogether.  First and foremost, the Canadian Plaintiffs face the risk that the Court may deny their motion to file a class proof of claim, which is within the Court's exclusive discretion.  *See, e.g.*, *In re Erie Islands Resort & Marina*, 580 B.R. 731, 735 (Bankr. N.D. Ohio 2017) ("Whether to allow a claim as a class claim falls within the sound discretion of the bankruptcy court.").  The Canadian Plaintiffs also recognize that an adverse decision would have the practical effect of denying class-wide relief.  Further, even if the Canadian Plaintiffs were to prevail on their motion and be entitled to receive the full measure of damages sought, their recovery would be effectively capped by the limited funds available in these chapter 11 cases.  The Canadian Plaintiffs believe that the Settlement addresses these risks while securing a meaningful recovery for the Canadian Data Breach Class Members as part of these chapter 11 cases.  As such, this factor weighs in favor of settlement approval.

> **(b)    The relief provided to the class is adequate considering the effectiveness of distributing relief to the class**

75.    The Court must also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. . . but the court should be alert to whether the claims process is unduly demanding."  Fed. R. Civ. P. 23 Advisory Comm. Notes.

76.    In order to facilitate the claims process, the proposed Canadian Claims Administrator, Concilia, will establish a dedicated website and an online claim submission form. The claim form will require basic information that can be provided readily by eligible claimants, and it can be completed within minutes.  This process will make the process for submission,

collection, review and reconciliation of the claims seamless and efficient.  Thus, this factor weighs in favor of settlement approval.

### (c)     The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees

77.     This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Advisory Comm. Notes.  In this case, Canadian Data Breach Class Counsel will petition the Court for an award of 33% of the Canadian Data Breach Class Settlement Fund (approximately, US$1.07 million), as attorneys' fees plus reimbursement of reasonable expenses which are expected to not exceed US$100,000. Canadian Class Counsel Decl. ¶26.

78.     Attorneys' fees will be payable solely from the Canadian Data Breach Class Settlement Fund in a percentage determined by the Court.  Further, this is a non-reversionary settlement, reached through arm's-length negotiations and under no circumstances will any funds revert to the Debtors.  The entire Canadian Data Breach Class Settlement Fund, less notice and administration, taxes, attorneys' fees and costs, will be utilized to provide cash and other benefits to members of the Canadian Data Breach Settlement Class.

79.     At the final approval stage, Canadian Data Breach Class Counsel will fully brief the fairness and reasonableness of the requested attorneys' fees under factors applied in this Circuit.  This factor is likely to be satisfied and weighs in favor of settlement approval.

### (d)     There are no agreements required to be identified under Rule 23(e)

80.     There are no agreements impacting the proposed Settlement that are required to be identified under Rule 23(e).  Canadian Class Counsel Decl. ¶42. This factor weighs in favor of settlement approval.

### 4.     The Settlement Treats Class Members Equitably to One Another.

31

81.     This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others."  Advisory Comm. Notes.  In this case, Canadian Data Breach Class Counsel worked diligently to create a benefits plan that provides for objective criteria for determining each eligible claimant's entitlement to compensation, and for the efficient distribution of the net proceeds of the Settlement amongst all Canadian Data Breach Class Members.  Canadian Class Counsel Decl. ¶17.  The Canadian Settlement Class Benefits Plan benefits all Canadian Data Breach Class Members in a way that addresses the injuries and damages incurred by class members.  *Id*.

82.     As the Canadian Settlement Class Benefits Plan provides for the opportunity for each Canadian Data Breach Class Member to submit a claim for compensation and for the Canadian Claims Administrator to determine the appropriate amount for compensation based on objective criteria, including the type of injury suffered by the claimant, this factor weighs in favor of settlement approval.

**B.     Other Factors Also Support Preliminary Approval**

83.     The Court must also consider these four factors when determining whether the settlement is fair, reasonable and adequate: (a) the merits of the plaintiffs' case weighed against the terms of the settlement; (b) the defendants' financial condition; (c) the complexity and expense of further litigation; and (d) the amount of opposition to the settlement.  *Marshall v. National Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (citing Fed. R. Civ. P. 23(e)(2) & *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)).

84.     "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement."  *Id.* (citation omitted).  The Canadian Plaintiffs believe their class proof of claim is valid and further maintain that the strength of their claims is a factor that drove settlement negotiations and ultimately, the Canadian Data Breach Class Settlement Agreement—which in

turn contemplates meaningful monetary benefits conferred on Canadian Data Breach Class Members.

85.    At the same time, the Canadian Plaintiffs face substantial risks that could decrease the amount of recovery—or even defeat recovery on a class-wide basis altogether.  As discussed in *supra* ¶ 74,  the Canadian Plaintiffs face the risk that the Court could deny their requested relief to file a class proof of claim which would have the practical effect of denying class-wide relief. Further, even if the Canadian Plaintiffs were to prevail in their adversary proceeding and/or litigation relating to the allowance of the Canadian Data Breach Class Proof of Claim, it is unlikely they would be awarded the full measure of damages given the limited funds available in these chapter 11 cases.

86.    Further, the likely complexity and expense of continued litigation weigh in favor of the fairness, reasonableness and adequacy of the settlement.  Resolving the action through the Settlement saves the Parties the expenses of litigating complex Rule 7023 Issues and substantially benefits Canadian Data Breach Class Members by providing a pathway for meaningful relief as part of these chapter 11 cases, and the total value of the benefits under the proposed Settlement appropriately accounts for the risks of further litigation.

87.    The financial condition of the Debtor also weighs heavily in favor of settlement approval.  As set forth in the First Day Declaration, the Debtors commenced these chapter 11 cases to, among other things, address their deteriorating liquidity position.  And while the Debtors have secured additional funds through the completion of the Chrome Sale Transaction, the proceeds from the sale remain the primary source of monetary recovery for the Canadian Data Breach Class Members.  Moreover, funds available to compensate Canadian Data Breach Class Members are further limited by the fact that a high volume of Proofs of Claim have been filed against the Debtors

33

in these chapter 11 cases. Thus, this factor also weighs in favor of approving the Settlement. *See, e.g.*, *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005) (requiring courts to consider "the defendant's financial condition" in determining whether a settlement is fair, reasonable and adequate); *Bredthauer* v. *Lundstrom*, 2012 WL 4904422, at *6 (D. Neb. Oct. 12, 2012) (granting preliminary approval of a proposed class action settlement based on, among other things, "the risk of a substantially lower recovery, and the fact that [defendant] is in bankruptcy").

88.     Notice has not yet been issued to class members, so any opposition to this Settlement is unknown at this time. Canadian Data Breach Class Counsel will respond to any objections to the Settlement in advance of the Final Approval Hearing.

### C.    Canadian Data Breach Class Counsel and the Canadian Plaintiffs Believe the Settlement Is an Excellent Result

89.     Because Canadian Data Breach Class Counsel are "intimately familiar with the facts and legal issues involved in this case," their opinion regarding the adequacy of a proposed class action settlement is "entitled to great weight." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) (citing *EEOC* v. *McDonnell Douglas Corp.,* 894 F. Supp. 1329, 1335 (E.D. Mo. 1995)). Here, Canadian Data Breach Class Counsel believe that the Settlement reflects a significant success. In light of the unique nature of the Cyber Security Incident, the risks inherent in litigating the Rule 7023 Issues, the limited funds available and other factors implicated by the bankruptcy proceedings, Canadian Data Breach Class Counsel believe this is an excellent result for the Canadian Data Breach Settlement Class. Canadian Class Counsel Decl. ¶40.

### III.   The Court Should Certify the Canadian Data Breach Settlement Class for Settlement Purposes Pursuant to FRCP 23

90.     When, as here, the court has not certified a class before approving a class settlement, the court must determine whether a proposed settlement class satisfies the certification

requirements of FRCP 23.  *See In re Kaiser Grp., Int'l*, 278 B.R. 58, 64–65 (Bankr. D. Del. 2002); *see also Amchem* v. *Windsor*, 521 U.S. 591, 620 (1997); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).  "[A]ll Federal Circuits recognize the utility of [FRCP] 23(b)(3) settlement classes."  *Amchem*, 521 U.S. at 618; *Cmty. Bank*, 418 F.3d at 299 ("The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification.").  Class certification is appropriate where the plaintiff shows that the four Rule 23(a) factors—numerosity, typicality, commonality and adequacy—and the two Rule 23(b) factors—predominance and superiority—are satisfied.  In this case, the Canadian Data Breach Settlement Class satisfies Rule 23 and should be certified for settlement purposes.

### A.    The Class Is Sufficiently Numerous

91.    Rule 23(a)(1) requires that the class be sufficiently numerous such that joinder of all members would be impracticable.  "In considering this requirement, courts examine the number of persons in the proposed class and factors such as the nature of the action, the size of the individual claims, and the inconvenience of trying the individual claims." *Cromeans* v. *Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 551 (W.D. Mo. 2014).  Classes with as few as 20 members have satisfied numerosity.  *See, e.g.*, *Ark. Educ. Ass'n* v. *Bd. of Educ.*, 446 F.2d 763, 765-66 (8th Cir. 1971) (a proposed class of 20 members satisfied numerosity); *Paxton* v. *Union Nat. Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (finding a class of 74 employees satisfied numerosity).  Here, the class is made up of approximately 320,000 individuals, and therefore the class is sufficiently numerous.  *See* Canadian Class Counsel Decl. ¶13.

### B.    There Are Common Questions of Law and Fact

92.    Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of

class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans*, 303 F.R.D. at 552 (quoting *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011)). "[A] single common contention . . . is sufficient." *Flynn* v. *FCA US LLC*, 327 F.R.D. 206, 222-23 (S.D. Ill. 2018). Commonality "does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *M.B. by Eggemeyer* v. *Corsi*, 327 F.R.D. 271, 278 (W.D. Mo. 2018) (citations omitted). For this reason, "[c]ommonality is easily satisfied in most cases." *Id.*

93.    Here, the Canadian Plaintiffs maintain that the claims arising from the Cyber Security Incident derive from the common fact that personal information of the Canadian Data Breach Class Members was accessed as a result of the Cyber Security Incident. This fact raises common questions amongst the Canadian Data Breach Class Members, the resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *Wal-Mart Stores*, 564 U.S. at 350.

94.    It is the Canadian Plaintiffs' view that common legal and factual questions arising from the Cyber Security Incident are as follows:

> Did 23andMe breach a duty owed to the Canadian Data Breach Class Members in respect of the Cyber Security Incident? If so, are the Canadian Data Breach Class Members entitled to damages?

95.    Thus, these common legal and factual questions meet the commonality requirement.

### C.    The Canadian Plaintiffs' Claims Are Typical of the Canadian Data Breach Class Members' Claims

96.     Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement "is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Cope* v. *Let's Eat Out, Inc.*, 319 F.R.D. 544, 555 (W.D. Mo. 2017) (citing *DeBoer* v. *Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995)). In assessing typicality, courts consider whether the proposed class representative's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern* v. *UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

97.     The typicality requirement is satisfied here because the claims of the Canadian Plaintiffs arise from the same event (i.e., the Cyber Security Incident), give rise to the same legal theory (i.e., whether 23andMe owed a duty to their impacted customers in respect of the Cyber Security Incident), and are identical to the hundreds of thousands of claims of other Canadian Data Breach Class Members that make up the Canadian Data Breach Settlement Class.

**D.      The Canadian Plaintiffs and Canadian Data Breach Class Counsel Will— and Have—Fairly and Adequately Protected the Interests of the Settlement Class.**

98.     Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 625 (1997) (citation omitted). The focus is on whether (a) the class representatives have common interests with class members and (b) the class representatives will vigorously prosecute the interests of the other class members through qualified counsel. *Paxton*, 688 F.2d at 562-63. Both criteria are readily met here.

99.     The Canadian Plaintiffs, J.R. and M.M., have to-date directed the conduct of these complex proceedings, within the class proceedings as well as the insolvency proceedings in the

United States and Canada.  Further, through Canadian Data Breach Class Counsel, the Canadian

Plaintiffs have communicated with thousands of the Canadian Data Breach Class Members over

the life of the Canadian Class Actions as well as these chapter 11 cases and the insolvency

proceedings in Canada.  Canadian Class Counsel Decl. ¶43.  The Canadian Plaintiffs' participation

meets the adequacy requirement.

100.    The Canadian Plaintiffs are represented by Canadian Data Breach Class Counsel,

who are qualified lawyers with experience in successfully prosecuting high-stakes complex cases

and consumer class actions.  *See* Canadian Class Counsel Decl. ¶3.  They have devoted the

resources necessary to see this case through despite significant risks.  *Id*. ¶27.  Canadian Data

Breach Class Counsel's work on this case began prior to the bankruptcy proceedings.  *Id*. ¶37.

Throughout the Canadian Class Actions and the insolvency proceedings in the United States and

Canada, Canadian Data Breach Class Counsel have been guided by the Canadian Data Breach

Class Members' interests, and they present this Settlement without reservation as being in the best

interests of Canadian Data Breach Class Members. *Id*.

### E.    The Settlement Class Satisfies Rule 23(b)(3)

101.    Rule 23(b)(3) requires that (a) "questions of law or fact common to class members

predominate over any questions affecting only individual members" and (b) that a class action is

"superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(3).  Both of these requirements are satisfied here.

### 1.    Common Issues of Law and Fact Predominate.

102.    "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  When

determining whether common questions predominate, the court asks whether, if the plaintiff's

general allegations are true, common evidence could suffice to make out a prima facie case for the

38

class. *See Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 453 (2016) ("A common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."). Even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3)." *Id.*

103.    The common questions in this case, described above in *supra ¶¶*94, 97, can be resolved for all members of the Canadian Data Breach Settlement Class as part of a single adjudication.

### 2.    Class Treatment Is Superior.

104.    Rule 23(b)(3) also requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy" and lists four non-exclusive factors relevant to a predominance finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. The applicable factors weigh in favor of a predominance finding.

105.    Here, the Canadian Data Breach Class Members' claims depend on the same common questions susceptible to generalized, class-wide proof; thus, a representative action is superior to other methods for fairly and efficiently adjudicating the controversy. Therefore, given the large number of Canadian Data Breach Class Members and the commonality of their claims, certifying the Canadian Data Breach Settlement Class would allow a more efficient adjudication of the controversy than individual adjudications.

106.    In this matter, any Canadian Eligible Class Member can easily opt out of the Settlement to pursue that option, and some may exercise that right. However, the actions of these

individuals do not affect the predominance analysis here, as there are over 318,000 class members who have not filed an individual proof of claim, for whom the class proof of claim represents the only means through which they can obtain compensation from 23andMe for their claims. And with respect to the Canadian Eligible Class Members, every one of those individuals who chooses to participate in the Settlement represents one fewer individual proof of claim to be adjudicated and resolved in the chapter 11 cases. As such, the efficiencies of collectively adjudicating the many common legal and factual questions, as well as the risks and expense of litigating the Rule 7023 Issues, weigh in favor of predominance.

107. Further, where the court is deciding certification in the settlement context, as it is here, the Court need not consider manageability issues. *Amchem Prods.*, 521 U.S. at 620. Thus, the superiority of class treatment is easily shown.

**F.      KND Complex Litigation Should Be Appointed as Class Counsel**

108. KND Complex Litigation should be appointed as class counsel for purposes of this class action Settlement. A Toronto, Ontario-based boutique law firm focused on complex litigation and class actions, the lawyers within KND Complex Litigation have significant experience representing plaintiffs in various types of class actions, including securities, consumer and privacy class actions. Canadian Class Counsel Decl. ¶3. KND lawyers have significant experience litigating complex class actions in conjunction with insolvency proceedings, and have furthermore significant experience acting for Canadian plaintiffs in cross-border litigation involving parallel proceedings in the United States. *Id.* KND lawyers have been appointed as class counsel by Canadian courts in similar class proceedings. *Id.* Moreover, KND Complex Litigation has been appointed as representative counsel to the Canadian Data Breach Class Members for the limited purpose of addressing issues arising from 23andMe's terms of service by

40

a representation order of the Supreme Court of British Columbia dated December 20, 2023.  *Id.*
¶4.

109.    Rule 23(g), which governs the standards and framework for appointing class
counsel for a certified class, sets forth four criteria the district court must consider in evaluating
the adequacy of proposed counsel: (a) "the work counsel has done in identifying or investigating
potential claims in the action; (b) counsel's experience in handling class actions, other complex
litigation, and the types of claims asserted in the action; (c) counsel's knowledge of the applicable
law; and (d) the resources that counsel will commit to representing the class."  Fed. R. Civ. P.
23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly
and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

110.    Canadian Data Breach Class Counsel meet all of these criteria for the following
reasons.  To date, they have vigorously and diligently represented the interests of the Canadian
Data Breach Class Members in complex class proceedings as well as insolvency proceedings in
the United States and Canada.  In so doing, Canadian Data Breach Class Counsel diligently
investigated the claims, identified the defendants, strategized and navigated the Canadian Data
Breach Class Members' claims through complex insolvency proceedings and achieved an
excellent result by way of the Settlement.  Canadian Class Counsel Decl. ¶38.  Canadian Data
Breach Class Counsel have dedicated appropriate resources and utilized significant expertise to
successfully resolve this matter, guided by the best interests of the Canadian Data Breach Class
Members.  *Id.*  ¶37.

**IV.    The Court Should Approve the Form and Manner of the Proposed Canadian Class Notice, the Proposed Canadian Claims Administrator and the Process for Objections**

**A.    The Proposed Notice Plan**

1.    <u>Canadian Class Notice</u>

111.    When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). To that end, Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." *Id.*

112.    The proposed Canadian Class Notice plan meets those standards.   Canadian Plaintiffs and Canadian Data Breach Class Counsel propose that the Canadian Class Notice be disseminated by: (a) direct email to each Canadian Data Breach Class Member; (b) direct notice to each person who has contacted Canadian Data Breach Class Counsel in relation to this matter; (c) direct mail to persons who do not have a valid email address on file, or whose email address is invalid or results in a bounce following email notification, at the mailing address 23andMe used to notify its affected customers of the Cyber Security Incident to the extent available; (d) publication through Canada Newswire once in English and French; (e) publication on a dedicated website to be created by the Canadian Claims Administrator; and (f) publication on Class Counsel's website.

113.    The Canadian Claims Administrator will create a dedicated website for the administration of the Settlement, and will make an online claims submission form available in order to facilitate the claims process.  Canadian Claims Admin. Decl. ¶6.  The Canadian Claims

42

Administrator will also establish a dedicated email address and a toll free phone number in order to receive and respond to inquiries from Canadian Data Breach Class Members. *Id.*

114. Further, those Canadian Data Breach Class Members who timely filed individual proofs of claim (the "Canadian Eligible Class Members") will also receive a copy of the Canadian Data Breach Class Benefits Plan attached as part of the solicitation materials (the "Solicitation Materials") and pursuant to solicitation procedures to be approved by the Court pursuant to the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures and Solicitation Package, (III) Scheduling a Confirmation Hearing, (IV) Establishing Procedures for Objecting to the Plan, (V) Establishing the California Claims Determination Procedures, (VI) Approving the Form, Manner, and Sufficiency of Notice of the Confirmation Hearing, (VII) Scheduling Certain Dates Related Thereto, and (VIII) Granting Related Relief* [Docket No. 1116]. Canadian Class Counsel Decl. ¶46. Through those materials, Canadian Eligible Class Members will have the opportunity to evaluate the benefits provided by the Settlement and choose whether or not to opt out of the Settlement in the context of the plan confirmation process. *Id.* This detailed notice weighs in favor of settlement approval.

**B.     The Canadian Claims Administrator**

115. As discussed above, the Canadian Plaintiffs and Canadian Data Breach Class Counsel propose that Concilia be appointed as the Canadian Claims Administrator. Concilia has provided proposals for the distribution of the Canadian Class Notice as well as the Settlement, at estimated costs of approximately US$256,000. Canadian Claims Admin Decl. ¶¶5, 6.

116. Based on its experience, and objectively on a consideration of the nature of Concilia's engagement and its anticipated efforts to distribute the benefits of the Settlement, Canadian Data Breach Class Counsel believe that the expected costs to be incurred are reasonable

and competitive in the Canadian market.  Canadian Class Counsel Decl. ¶33.  The costs associated

with the appointment and retention of the Canadian Claims Administrator will be paid out of the

Canadian Data Breach Class Settlement Fund.  *Id.* ¶34.

### C.    Manner and Form of Opt Outs and Objections

117.    As set forth herein, Canadian Eligible Class Members will be free to choose

whether or not to opt out of the Settlement through the Solicitation Materials.  Canadian Class

Counsel Decl. ¶46.  Canadian Eligible Class Members will receive a copy of the Canadian Data

Breach Class Benefits Plan, as well as a summary notice of the Settlement as part of the Solicitation

Materials, subject to the approval thereof by the Court.  *Id.*  These materials will give the Canadian

Eligible Class Members the opportunity to evaluate the benefits provided by the Settlement and

choose whether or not to opt out of the Settlement in the context of the plan confirmation

process.  *Id.*

118.    Moreover, all other Canadian Data Breach Class Members (*i.e.*, members who did

not timely file a Proof of Claim) will be given the opportunity to opt out of the Settlement by

submitting the Canadian Opt-Out Form to the Canadian Claims Administrator.  Canadian Data

Breach Class Members may access the Canadian Opt-Out Form from the Settlement Website and

submit it electronically or by mail.  The Canadian Opt-Out Form must be submitted individually

by the Canadian Data Breach Class Members opting out of the Settlement benefits and may not be

submitted by third parties, except as authorized by the Canadian Claims Administrator at its sole

discretion.  The Canadian Claims Administrator shall verify that each individual who submits an

Opt-Out Form is a Canadian Data Breach Class Member.

119.    All Canadian Data Breach Class Members will have an opportunity to object to the

Settlement, or any related relief.  To do so, they will be able to access the Canadian Objection

Form from the Settlement Website, and they can submit it electronically or by mail.  The Canadian

44

Objection Form must be submitted individually by the Canadian Data Breach Class Members.  The Canadian Claims Administrator shall verify that each individual who submits an Objection Form is a Canadian Data Breach Class Member.  Canadian Data Breach Class Counsel will address any objections at the hearing of the motion for final approval of the Settlement.

120.    The opt-out and objection instructions are in plain language and clearly prompt those who wish to opt out or object to provide the specific information each action requires. *See generally* Exhibit B, Exhibit E and Exhibit F.  In particular, the Canadian Class Notice clearly informs the Canadian Data Breach Class Members of the opt-out deadline, how to opt out  and the consequences of opting out, and requires that they supply only the information needed to opt out of the Settlement. *Id.*  Similarly, the Canadian Class Notice informs Canadian Data Breach Class Members about how to send their written objections to the Court or file in person with the Court (or if represented by counsel to have counsel e-file their written objections to the Court), tells them that the Court can only approve or deny the Settlement and cannot change its terms, and clearly identifies the Objection Deadline. *Id.*

## V.    Scheduling the Final Approval Hearing Is Appropriate

121.    The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to determine whether the proposed settlement is "fair, reasonable, and adequate." *Id.*; Fed. R. Civ. P. 23(e)(2).  During this hearing, class members or their counsel may be heard in support of or in opposition to the settlement.  The Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a final approval order and judgment under Rule 23(e).  The Parties request this Court set a final fairness hearing <u>after</u> the Debtors' Plan goes effective (the "<u>Plan Effective Date</u>"), to avoid any disruption to the Debtors' solicitation procedures as contemplated pursuant to the Disclosure Statement Motion.

122.    The Parties propose the following proposed schedule for the approval process:

| EVENT | PROPOSED DEADLINE |
|---|---|
| 23andMe shall, for the purpose of facilitating Notice, provide or cause to be provided to the Canadian Claims Administrator information about the Canadian Data Breach Class Members to effectuate the notice plan | No later than 30 days following entry of the Preliminary Approval Order |
| Plan Confirmation Hearing | November 13, 2025 or as soon as reasonably practicable |
| Substantial completion of distributing the Canadian Class Notice | 14 calendar days following the entry of an Order confirming the Plan |
| Canadian Data Breach Class Counsel shall file a motion for fees, expenses, costs and Service Awards | 30 calendar days following the entry of an Order confirming the Plan |
| Deadline for objections and opt outs | 44 calendar days following the entry of an Order confirming the Plan |
| Canadian Data Breach Class Counsel shall file all papers in support of the application for the Final Approval Order and Final Judgment | 74 calendar days following the entry of an Order confirming the Plan |
| Hearing on Final Approval of the Settlement | At least 90 calendar days following the entry of an Order confirming the Plan |
| Publication of notice regarding the Canadian Claims Process | 14 calendar days following the entry of the Final Approval Order |
| Deadline for submitting a claim ("Canadian Claims Deadline") | 90 calendar days following publication of notice regarding the Canadian Claims Process |

## VI.    After the Fairness Hearing, the Court Should Approve the Canadian Data Breach Class Settlement Agreement and Grant Related Relief on a Final Basis

123.    Fed. R. Civ. P. 23(e)(1)(C) provides that "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).

124.     In *In Re: Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922 (8th Cir. 2005), the Eighth Circuit sets out the following four factors that are to be weighed in determining whether a settlement should be approved as fair, reasonable and adequate to a class under Civil Procedure Rule 23(e): (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Id.* at 932-33.

125.     For all the foregoing reasons, the Parties submit that, after the final fairness hearing, the Settlement should be approved as fair, reasonable and adequate to the Canadian Data Breach Settlement Class under the four factors enumerated by the Eighth Circuit.

## Reservation of Rights

126.     In the event the Canadian Data Breach Class Settlement Agreement is not approved on a final basis, (a) nothing herein shall be construed as a waiver by any Party of any or all of such Party's rights, remedies, claims or defenses related to the Cyber Security Incident; (b) the Parties expressly and fully reserve any and all of their respective rights, remedies, claims and defenses, including pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, whether under federal or state law; (c) statements in this Motion shall not be admissible into evidence in any proceeding other than a proceeding to enforce the relief granted in the Proposed Order; and (d) any and all rights of the Parties are reserved and preserved and not impacted in any way by this Motion.

## Notice

127.     The Debtors will provide notice of this Motion to the following parties: (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (d) the law firms representing claimants who have filed or asserted claims arising out of the Cyber Security Incident as of the Petition Date;

47

(e) counsel to the Official Equity Committee; (f) the United States Attorney's Office for the Eastern District of Missouri; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) the Federal Trade Commission; (j) the state attorneys general in all 50 states; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-3(E)(1).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Parties respectfully request that the Court enter the Proposed Order and grant the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 11, 2025

Respectfully Submitted,

By: */s/ Thomas H. Riske*
**Carmody MacDonald P.C.**
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
Becky R. Eggmann #37302MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 854-8600
Facsimile: (314) 854-8660
Email: thr@carmodymacdonald.com
nrw@carmodymacdonald.com
jjg@carmodymacdonald.com
bre@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: pbasta@paulweiss.com
chopkins@paulweiss.com
jchoi@paulweiss.com
ghotz@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

/s/ *Sage Nematollahi*

**KND COMPLEX LITIGATION**
Sage Nematollahi (admitted *pro hac vice*)
Yonge Eglinton Centre
Suite 401, 2300 Yonge Street
Toronto, Ontario M4P 1E4
Email: sn@knd.law
Telephone: 236-888-7700

*On behalf of the Canadian Plaintiffs and Canadian Data Breach Settlement Class*

## <u>Exhibit A</u>

**Settlement Agreement**

PRIVILEGED & CONFIDENTIAL
SUBJECT TO FRE 408 & STATE LAW EQUIVALENTS

**THIS SETTLEMENT AGREEMENT DOES NOT CONSTITUTE, AND SHALL NOT BE DEEMED, AN OFFER OR A SOLICITATION WITH RESPECT TO ANY SECURITIES OF THE DEBTORS OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY CHAPTER 11 PLAN, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, SHALL COMPLY WITH ALL APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY, AND/OR OTHER APPLICABLE LAWS.**

## AMENDED SETTLEMENT AGREEMENT

This *Amended Settlement Agreement* ("Agreement") is made and entered into on September 5, 2025 (the "Effective Date") by and among: the debtors and debtors in possession in the jointly administered chapter 11 cases of *In re 23andMe Holding Co., et al.* Case No. 25-40976-357 (BCW) (collectively, the "Debtors" and, the Debtors with their non-Debtor affiliates, "23andMe" or the "Company") and the named plaintiffs (the "Canadian Plaintiffs") in (i) *J.R.* v. *23andMe Holding Co. et al.*, BCSC court file no. S-237147, Vancouver Registry, filed October 20, 2023; and (ii) *J.R. and M.M.* v. *23andMe Holding Co. et al.*, BCSC court file no. S-246520, Vancouver Registry, filed September 18, 2024 (collectively, the "Canadian Class Actions"). The Debtors and Canadian Plaintiffs may be referred to individually as a "Party" and together as "Parties."[1]

## RECITALS:

WHEREAS, in October 2023, the Company identified and disclosed a data breach (the "Cyber Security Incident") which resulted in numerous actions being filed or otherwise threatened against the Company as well as the initiation of various governmental investigations.

WHEREAS, on October 20, 2023, the Canadian Plaintiffs filed a lawsuit against 23andMe, Inc. in the Supreme Court of British Columbia (the "Canadian Court") alleging damages arising from the Cyber Security Incident.

WHEREAS, on November 24, 2023, plaintiff "Carolyn Rock" issued a statement of claim commencing a proposed class proceeding against 23andMe Holding Co. and 23andMe, Inc. in the Ontario Superior Court, court file no. CV-23-00710212-00CP (the "Ontario Action").

WHEREAS, on April 11, 2024, plaintiff in the Ontario Action agreed to stay its proceeding in favor of the Canadian Class Actions.

WHEREAS, on September 18, 2024, the Canadian Plaintiffs filed a lawsuit against the Debtors and certain non-debtor individuals and entities, including certain of the Debtors' current or former directors and/or officers (the "D&O's") and the Debtors' auditor, KPMG LLP (United States) ("KPMG"), in the Canadian Court alleging damages from the Cyber Security Incident.

WHEREAS, on March 23, 2025, each Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code.

---

[1]   All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bar Date Order (as defined herein).

WHEREAS, on April 30, 2025, the Bankruptcy Court entered the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket No. 349] (the "Bar Date Order"), establishing, among other things, July 14, 2025 as the deadline to file claims arising out of or related to the Cyber Security Incident.

WHEREAS, on May 26, 2025, with consent from the Canadian Plaintiffs, the Canadian Court recognized the Debtors' chapter 11 cases as a "foreign main" proceeding pursuant to the *Companies' Creditors Arrangement Act* (Canada) and granted other related relief, *In the Matter of the Companies' Creditors Arrangement Act, R.S.C.1985, c. C-36 as amended, and In the Matter of 23andMe Holding Co. and 23andMe, Inc.*, Case No. VLC-S-253696 (Can. B.C. S.C.).

WHEREAS, on June 5, 2025, the Bankruptcy Court entered the *Stipulation and Agreed Order Providing for a Temporary Stay of the Canadian Proceedings* [Docket No. 655], extending the automatic stay to the D&Os and KPMG.

WHEREAS, on August 12, 2025, the Debtors and the Canadian Plaintiffs executed a settlement agreement (the "Original Settlement Agreement") to resolve issues concerning Canadian Counsel's authorization to file a class proof of claim on behalf of the Canadian Plaintiffs and the putative class members in the Canadian Class Actions (the "Rule 7023 Issues").

WHEREAS, the Debtors and the Canadian Plaintiffs have agreed to modify the terms of the settlement as set forth herein.

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties represent, warrant, consent, and agree as follows:

I.    **Adoption of Recitals**. The above recitals are true and correct, are incorporated herein by this reference, and constitute a part of this Agreement.

II.   **Settlement Terms**. Subject to the conditions set forth in this Agreement, the Parties agree as follows:

A.    Counsel ("Canadian Counsel") to the named plaintiffs in the Canadian Class Actions may file one, consolidated class proof of claim ("Canadian Class POC") on behalf of the Canadian Plaintiffs and any individual who (i) was a customer of the Debtors at any time between May 1, 2023 through October 1, 2023 (the "Cyber Security Incident Period"); (ii) resided in Canada during the Cyber Security Incident Period; and (iii) received a notice from the Debtors notifying the customer that their personal information was compromised in the Cyber Security Incident (together with the Canadian Plaintiffs, the "Canadian Settlement Class Members"), subject to the following:

1. The Canadian Class POC must be submitted on or before the Cyber Security Incident Bar Date (*i.e.*, July 14, 2025);

2. The Canadian Class POC may be filed in an amount determined by Canadian Class Counsel in accordance with applicable law;

3. Notwithstanding the filed amount of the Canadian Class POC, subject to the occurrence of the Plan Effective Date (as defined below) and as of the date this Agreement is approved by the appropriate court(s) on a final basis, the Canadian Class POC shall be deemed to be an allowed claim in the amount of US$3,250,000.00 (the "Canadian Class Allowed Claim") and the recovery on account of the Canadian Class Allowed Claim will not exceed US$3,250,000.00 of distributions; and

4. The Canadian Class POC shall be administered and reconciled, as applicable, in the U.S. in accordance with the claims administration process set forth in an Acceptable Plan.

B.     Pursuant to this Agreement, and for settlement purposes only, the Debtors hereby agree to the certification of the Canadian Settlement Class Members under Rule 7023 of the Bankruptcy Rules.

C.     Pursuant to this Agreement, Canadian Counsel and Canadian Plaintiffs further agree to the following:

1. Canadian Counsel shall engage in good faith negotiations with the Debtors regarding the terms of a mutually acceptable chapter 11 plan which is in all material respects consistent with this Agreement (an "Acceptable Plan"), and Canadian Counsel agrees that any plan that is in material respects consistent with this Agreement constitutes an Acceptable Plan;

2. If an Acceptable Plan has been filed, and such Acceptable Plan contemplates separate classification of Canadian Settlement Class Members from general unsecured creditors, Canadian Counsel and Canadian Plaintiffs shall support such separate classification; *provided* that such class of Canadian Settlement Class Members receives pro rata treatment with all other general unsecured classes on account of any allowed Canadian Class POC, unless otherwise agreed by Canadian Counsel, in accordance with the Bankruptcy Code;

3. Canadian Counsel, on behalf of the Canadian Settlement Class Members, shall vote in favor of the Acceptable Plan and will use commercially reasonable efforts to encourage Canadian Settlement Class Members who file individual proofs of claim to support and vote in favor of an Acceptable Plan, including but not limited to submitting a letter of support for such plan to be included as part of the solicitation package; *provided* that the costs and expenses associated with sending such a letter of support shall in no event be borne by Canadian Counsel or Canadian Settlement Class Members;

3

4. If an Acceptable Plan contemplates certification of a settlement class comprised of Canadian Settlement Class Members pursuant to applicable laws which shall be determined upon good faith negotiation between the Debtors and Canadian Counsel on behalf of the Canadian Settlement Class Members, the Debtors shall seek approval of a process whereby;

    a. The funds approved for the Canadian Class Allowed Claim will be placed in a separate trust, sub-trust or similar vehicle (the "Canadian Data Breach Class Settlement Fund") controlled by Canadian Counsel for the benefit of Canadian Settlement Class Members and, if and to the extent approved by the appropriate court(s), Canadian Counsel;

    b. Canadian Counsel shall oversee distribution of the Canadian Data Breach Class Settlement Fund pursuant to a proposed benefits plan approved by the appropriate court(s) (the "Canadian Class Benefits Plan"), with the costs of administering the Canadian Data Breach Class Settlement Fund and the Canadian Class Benefits Plan paid from the Canadian Data Breach Class Settlement Fund;

    c. The Canadian Class Benefits Plan shall include the ordinary terms of approval process of the Canadian Data Breach Class Settlement Fund, including but not limited to the dissemination of appropriate notice to the Canadian Settlement Class Members, as approved by the appropriate court(s), the costs of which shall be paid from the Canadian Data Breach Class Settlement Fund in amounts approved by the appropriate court(s);

    d. Any Canadian Settlement Class Member that individually and timely filed a valid proof of claim ("POC") shall have the opportunity to "opt out" of the Canadian Class Benefits Plan by timely and validly electing to opt out of the Canadian Class Benefits Plan. Any Canadian Class Member that fails to timely opt out of the Canadian Class Benefits Plan shall receive benefits as set forth in the Canadian Class Benefits Plan, and may not maintain a separate POC in the bankruptcy or otherwise assert or continue their claim in the Canadian Class Actions. Any Canadian Settlement Class Member that opts out may be placed in a separate class under the Plan;

    e. If more than 10% of the Canadian Settlement Class Members who filed individual POCs opt out of the Canadian Class Benefits Plan (the "Opt-Out Percentage"), the Debtors shall have the option to provide Canadian Counsel with notice terminating the Agreement and the Debtors' right to object to the allowance and full amount of the Canadian Class POC shall be fully preserved; and

4

f.  In the event that the Opt-Out Percentage is triggered and the Debtors exercise the option to terminate the Agreement, any and all obligations imposed on the parties pursuant to this Agreement shall be terminated, and this Agreement shall be without prejudice to either of the Parties' respective rights, claims and/or defenses in the Canadian Class Actions.

5.  Upon the Acceptable Plan becoming effective in accordance with its terms (the "<u>Plan Effective Date</u>") and the funding of the Canadian Data Breach Class Settlement Fund, Canadian Plaintiffs shall promptly move to dismiss the Canadian Class Actions with prejudice and without costs to any Party and the Canadian Settlement Class Members' claims against the Debtors, the Debtors' D&Os as well as KPMG arising from or related to the Canadian Class Actions shall be finally and fully compromised, settled, and released; *provided* that the Canadian Plaintiffs agree to further stay the Canadian Class Actions until the earlier of (a) the funding of the Canadian Data Breach Class Settlement Fund or (b) termination of this Agreement in accordance with the terms herein.

6.  Upon the Plan Effective Date and the funding of the Canadian Data Breach Class Settlement Fund, Canadian Plaintiffs shall promptly move, and/or shall cause that a motion be brought, to dismiss the Ontario Action with prejudice and without costs to any Party and the Canadian Settlement Class Members' claims against the Debtors asserted in this proceeding shall be finally and fully compromised, settled, and released; *provided* that the Canadian Plaintiffs agree to further stay the Ontario Action until the earlier of (a) the funding of the Canadian Data Breach Class Settlement Fund or (b) termination of this Agreement in accordance with the terms herein.

D.  Canadian Counsel and Canadian Settlement Class Members shall not use this Agreement to argue that any class has been properly pleaded or accepted by the Debtors for purposes of the Canadian Class Actions.  Parties to this Agreement reserve all rights and remedies available to such Parties in the Canadian Class Actions if they proceed other than by way of an Acceptable Plan.

E.  If this Agreement is not consummated in accordance with the terms outlined herein, any and all obligations imposed on the Parties pursuant to this Agreement shall be terminated, and this Agreement shall be without prejudice to either of the Parties' respective rights, claims and/or defenses in the Canadian Class Actions.

F.  The Debtors and the Canadian Plaintiffs in the Canadian Class Actions shall forthwith bring an application for recognition in the Supreme Court of British Columbia of any order entered by the Bankruptcy Court approving the terms of this Agreement.

G.  The order under rules 9019 and 7023 of the Federal Rules of Bankruptcy Procedure approving and implementing the terms of this Agreement on a final basis (the "<u>Final Approval Order</u>") shall, among other things, provide for the allowance of the Canadian Class Allowed Claim under rule 9019 settlement

approval standards; accordingly, all other parties in interest shall have the opportunity to object to allowance of the Canadian Class Allowed Claim by way of an objection to the Final Approval Order; *provided further* that the hearing to consider the Agreement on a final basis shall not take place before an Acceptable Plan goes effective in accordance with its terms; *provided further* that Canadian Counsel may commence the process for noticing Canadian Settlement Class Members regarding the settlement contemplated in this Agreement prior to entry of the Final Approval Order so long as such process is commenced no earlier than the date the Bankruptcy Court enters an order confirming a plan in these chapter 11 cases.

**III.    Mutual Releases.**

A.    Upon the Plan Effective Date, Canadian Counsel, Canadian Plaintiffs, and the Canadian Settlement Class Members (the "Canadian Class Action Parties") shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Debtors and any of their respective members, shareholders, affiliates, related entities, current and former officers, directors, employees, principals, auditors, agents, successors, predecessors, and representatives (the "Debtor Released Parties") for any claims arising out of the Cyber Security Incident that the Canadian Class Action Parties can, shall, or may have against the Debtor Released Parties, whether known or unknown, accrued, or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

B.    Upon the Plan Effective Date, the Debtors and any of their respective members, shareholders, affiliates, related entities, current and former officers, directors, employees, principals, agents, successors, predecessors, and representatives shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge Canadian Class Action Parties for any claims arising out of the Cyber Security Incident, including any claims arising out of or related in any way to the institution, prosecution or settlement of the Canadian Class Actions against 23andMe Inc., that the Debtors can, shall, or may have against the Canadian Class Action Parties, whether known or unknown, accrued, or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

C.    The Parties agree that the releases set forth herein shall be construed as broadly as possible, except that the obligations of the Parties as set forth in this Agreement shall not be released.

**IV.    Further Assurances**. Each of the Parties shall execute and deliver to the other all such other documents as may reasonably be requested to accomplish whatever may be contemplated pursuant to this Agreement, and hereby agree to do and perform all acts, and to make, execute, and deliver all instruments and documents necessary to perform the obligations or consummate the transactions contemplated by this Agreement.

V. **Non-Waiver**. The failure of any Party to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violations thereof, nor prevent that Party thereafter from enforcing each and every provision of this Agreement.  The rights granted to the Parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such Party's right to assert all other legal remedies available to it under the circumstances.

VI. **Prevailing Party**.  Except as otherwise provided in this Agreement, the Parties acknowledge and agree that each of them, as between them, will bear their own costs, expenses, and attorneys' fees arising out of the negotiation, preparation, and execution of this Agreement, and all matters arising out of or connected therewith.

VII. **Entire Agreement**.  This Agreement constitutes the entire Agreement and supersedes any and all other understandings and agreements between the Parties with respect to the subject matter hereof, including the Original Settlement Agreement, and no representation, statement, or promise not contained herein shall be binding on either Party.  This Agreement may be modified, changed, amended, or otherwise altered only by a written amendment signed by each Party.

VIII. **Execution in Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement.  Delivery of an executed counterpart of a signature page of this Agreement by photocopy, facsimile, electronic, email, or other copies of signatures shall have the same effect as an ink-signed original.

IX. **Binding Nature of the Agreement on the Debtors' Estates**.  Subject to Bankruptcy Court approval of this Agreement, this Agreement shall be binding upon the Debtors and any subsequently appointed chapter 11 or chapter 7 trustee and shall be enforceable by the Canadian Plaintiffs against the Debtors and their estates both during these chapter 11 cases and, if applicable, after conversion to chapter 7 or the dismissal of the chapter 11 cases.

X. **Review by Counsel; Voluntary Agreement.**  The Parties confirm they have had the terms of this Agreement explained to them by their attorneys, and by executing this Agreement they represent that they are relying upon their own judgment and the advice of the counsel of their choice and are not relying upon any recommendations or representations of any opposing party, opposing counsel, or other representative, other than those representations expressly in this Agreement.

XI. **Jointly Drafted.** The Parties to this Agreement have cooperated in the drafting and preparation of this Agreement.  Therefore, this Agreement shall not be construed against either Party on the basis that the Party was the drafter.

XII. **Cooperation and Best Efforts**. The Parties hereto agree to cooperate fully in the execution of any documents or performance in any way which may be reasonably necessary to carry out the purposes of this Agreement and to effectuate the intent of the Parties thereto, and the Parties shall use their reasonable best efforts to obtain Bankruptcy Court approval.

XIII.  **Authority**. Subject to approval of the Bankruptcy Court, the individuals executing this Agreement on behalf of the Parties have the full power and lawful authority to execute and deliver this Agreement, as well as all of the other documents executed or delivered, or to be executed or delivered, by the Parties in connection herewith, to perform the obligations hereunder, and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement by the Parties, the performance of the obligations hereunder, and the consummation by the Parties of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of the Parties and no other corporate proceedings are necessary to authorize this Agreement or to consummate the transactions contemplated hereby. Subject to approval of the Bankruptcy Court, each of the documents in connection herewith to which the Parties are, or will be, a party, has been, or will be, duly and validly executed and delivered by the Parties, and, assuming the due authorization, execution, and delivery of the documents by the other Parties, are (or when executed and delivered will be) legal, valid, and binding obligations of the Parties.

XIV.  **Governing Law.**  The exclusive jurisdiction for any dispute related to this Agreement, including interpretation and enforcement thereof, shall be the Bankruptcy Court.

XV.  **Severability**.  The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, all other parts shall remain fully valid and enforceable.

XVI.  **Court Approvals.**  The execution and delivery of this Agreement by the Parties, the performance of the obligations hereunder, and the consummation by the Parties of the transactions contemplated hereby are all dependent on and subject to (a) the entry of any order by the Bankruptcy Court approving the Agreement in full, which may include the order confirming a chapter 11 plan and (b) recognition and/or approval of the Agreement by the Supreme Court of British Columbia.  Absent such an order, this Agreement and all the provisions hereunder will be of no effect.

XVII.  **Notice.** Where this Agreement requires a Party to provide notice or any other communication or document to another, such notice, communication, or document shall be provided by email to the representatives for the Party to whom notice is being provided, as identified below:

For the Canadian Plaintiffs and Canadian Counsel:

    Attn: Eli Karp | Sage Nematollahi | Taek Soo Shin
    KND Complex Litigation
    401 – 2300 Yonge Street
    Toronto, ON
    Canada M4P 1E4
    ek@knd.law | sn@knd.law | ts@knd.law

For the Debtors:
    Attn: Paul Basta | Christopher Hopkins | Jessica Choi | Grace Hotz
    Paul, Weiss, Rifkind, Wharton & Garrison

1285 Avenue of the Americas
New York, New York 10019
pbasta@paulweiss.com | chopkins@paulweiss.com | jchoi@paulweiss.com |
ghotz@paulweiss.com

**XVIII. Choice of Language.** It is the express wish of the parties that this Agreement be drawn up in the English language only. *Il est la volonté expresse des parties que cette convention et tous les documents s'y rattachant, y compris les avis et les autres communications, soient rédigés et signés seulement en anglais.*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

ACCEPTED AND AGREED by each of the signing parties below, who each warrant and represent that they have read and understand the foregoing Agreement and are entering into the foregoing Agreement voluntarily and without any duress or undue influence, and that each had the opportunity to consult with legal counsel of their own choosing before signing:

/s/ *Sage Nematollahi*
**KND COMPLEX LITIGATION**
Sage Nematollahi (admitted *pro hac vice*)
Yonge Eglinton Centre
Suite 401, 2300 Yonge Street
Toronto, Ontario M4P 1E4
Email: sn@knd.law
Telephone: 236-888-7700

*On behalf of the Canadian Plaintiffs*

/s/ *Christopher Hopkins*
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email:      pbasta@paulweiss.com
            chopkins@paulweiss.com
            jchoi@paulweiss.com
            ghotz@paulweiss.com


*On behalf of the Debtors and Debtors in Possession*

10

## **Exhibit B**

**Canadian Class Notice**

- 1 -

## In re 23andMe Canadian Consumer Privacy Class Action

### SHORT-FORM NOTICE OF PROPOSED CANADIAN SETTLEMENT

In October 2023 and September 2024, class actions were filed ("**Canadian Class Actions**") in the Supreme Court of British Columbia ("**Canadian Court**") on behalf of Canadian customers of 23andMe Holding Co. and 23andMe, Inc. (collectively, "**23andMe**") who were affected in a data security breach that 23andMe identified and disclosed in October 2023 ("**Cyber Security Incident**"). The defendants in the class actions are 23andMe, certain of 23andMe's former directors and officers and its auditors, KPMG LLP (United States) (collectively with 23andMe, the "**Defendants**").

The Plaintiffs and 23andMe have reached a settlement ("**Proposed Canadian Settlement**") as part of 23andMe's insolvency proceedings ("**Chapter 11 Proceedings**") under chapter 11 of title 11 of the United States Code, which was commenced in March 2025 in the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division ("**United States Bankruptcy Court**").

The Proposed Canadian Settlement covers any individual who (i) was a customer of 23andMe at any time between May 1, 2023 through October 1, 2023 (the "**Cyber Security Incident Period**"); (ii) resided in Canada during the Data Security Incident Period; and (iii) received a notice from 23andMe notifying the customer that their personal information was compromised in the Cyber Security Incident (together with the Canadian Plaintiffs, the "**Canadian Data Breach Class Members**").

Subject to the implementation and administration of a chapter 11 plan filed and to be confirmed by the United States Bankruptcy Court, the Proposed Canadian Settlement provides for the payment of US$3.25 million (approximately, C$_____), in full and final settlement of the claims advanced against 23andMe in the Canadian Class Actions. As part of the Proposed Canadian Settlement, the claims against the other Defendants will be dismissed on a with prejudice and without costs basis.

The net proceeds of the Proposed Canadian Settlement, after deduction of legal feels to be calculated at 33% of US$3.25 million (or, approximately, US$1.07 million), disbursements, administration and other costs, honorarium and other expenses, and applicable taxes, will be paid to eligible Canadian Data Breach Class Members in accordance with the Canadian Data Breach Settlement Class Benefits Plan.

The Proposed Canadian Settlement is not an admission of liability on the part of 23andMe, who denies the allegations and vigorously defend the actions against them. The Proposed Canadian Settlement represents a compromise of disputed claims. The Proposed Canadian Settlement is subject to approval of the United States Bankruptcy Court and the Canadian Court.

Copies of the Settlement Agreement, the Canadian Data Breach Settlement Class Benefits Plan, and other important documents and information, are available on the website of [claims administrator].

The United States Bankruptcy Court will hear an application for final approval of the Proposed Canadian Settlement on _____, 2026, to be followed by an application for final approval of the Proposed Canadian Settlement by the Canadian Court.

The Canadian Data Breach Class Members who filed individual proofs of claims within 23andMe's Chapter 11 Proceedings were previously given an opportunity to opt-out (meaning to exclude themselves) from the Proposed Canadian Settlement as part of the solicitation process in relation to 23andMe's chapter 11 Plan.

Furthermore, all Canadian Data Breach Class Members are being again provided with the opportunity to opt out (meaning to exclude themselves) from the Proposed Canadian Settlement. Any Canadian Data Breach Class Member who wishes to opt-out must complete and submit the Canadian Settlement Opt-Out Form approved by the Court and available [here], and submit the completed Canadian Settlement Opt-Out Form by email to [claims administrator at email] by no later than 11:59 p.m., Pacific Time, on _____, 20__.  Please note that a Canadian Data Breach Class Member who validly opts out will only retain the rights to sue, continue to sue, or pursue claims arising out of the Cyber Security Incident that are not otherwise barred or released as part of the Chapter 11 Proceedings, and may be barred from pursuing any and all claims they may have against 23andMe Holding Co. and 23andMe, Inc.  Any Canadian Data Breach Class Members who wishes to opt out is advised to seek independent legal advice before doing so.

Any person who wishes to object to the Proposed Canadian Settlement or any related matter, including the Canadian Data Breach Settlement Class Benefits Plan or the legal fees to be requested, must complete the Canadian Settlement Objection Form, in the form approved by the Court and available [here], and submit the completed Canadian Settlement Objection Form by email to [claims administrator at email] by no later than 11:59 p.m., Pacific Time, on _____, 20__.  Please note that the United States Bankruptcy Court and the Canadian Court may approve the Proposed Canadian Settlement and related matters if considering all circumstances the courts conclude that they are fair, reasonable and in the best interests of the Canadian Data Breach Class Members.

Unless you wish to opt out or object to the Proposed Canadian Settlement or related matters, you need not do anything at this time.  If the United States Bankruptcy Court and the Canadian Court approve the Proposed Canadian Settlement, a further notice will be issued which will provide information concerning the claims process and instructions for Canadian Data Breach Class Members to submit a claim for compensation.

Please review the Long-Form Notice of Proposed Canadian Settlement for further details and important deadlines, available [here].

The Canadian Claims Administrator in relation to this settlement is Concilia Services Inc., and they may be contacted at [CONTACT INFORMATION].

The Toronto-based law firm of KND Complex Litigation is the Canadian Data Breach Class Counsel, and may be contacted as follows:

Sage Nematollahi
KND Complex Litigation
23andMe@knd.law

- 3 -

The Canadian Class Actions are distinct and independent of the class action proceedings brought and pending in the United States.  The Proposed Canadian Settlement is **NOT** available to persons other than the Canadian Data Breach Class Members.

## In re 23andMe Canadian Consumer Privacy Class Action

***J.R. v. 23andMe Holding Co. et al.,*** **BCSC court file no. S-237147, Vancouver Registry, filed October 20, 2023; and *J.R. and M.M. v. 23andMe Holding Co. et al.,* BCSC court file no. S-246520 ("Canadian Class Actions")**

### LONG-FORM NOTICE OF PROPOSED CANADIAN SETTLEMENT

**THE PUBLICATION OF THIS LONG-FORM NOTICE HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION ("UNITED STATES BANKRUPTCY COURT") SUPREME COURT OF BRITISH COLUMBIA ("CANADIAN COURT").**

**PLEASE REVIEW THIS NOTICE CAREFULLY AS IT MAY AFFECT YOUR LEGAL RIGHTS.**

### A.  INTRODUCTION

In October 2023 and September 2024, the Canadian Class Actions were filed in the Supreme Court of British Columbia ("**Canadian Court**") on behalf of Canadian customers of 23andMe Holding Co. and 23andMe, Inc. (collectively, "**23andMe**") who were affected in a data security breach that 23andMe identified and disclosed in October 2023 ("**Cyber Security Incident**"). The defendants in the Canadian Class Actions are 23andMe, certain of 23andMe's former directors and officers and its auditors, KPMG LLP (United States) (collectively with 23andMe, the "**Defendants**").

The Canadian Class Actions sought compensation on behalf of all persons residing in Canada whose sensitive personal information was affected as a result of the Cyber Security Incident ("**Canadian Data Breach Class**" and members of the Canadian Data Breach Class, "**Canadian Data Breach Class Members**").

The Toronto-based law firm of KND Complex Litigation is Counsel to the Plaintiffs and the class in the class actions ("**Canadian Data Breach Class Counsel**").

### B.  OVERVIEW OF THE PROPOSED CANADIAN SETTLEMENT

The Plaintiffs and 23andMe have reached a settlement ("**Proposed Canadian Settlement**") as part of 23andMe's insolvency proceedings ("**Chapter 11 Proceedings**") under chapter 11 of title 11 of the United States Code, which was commenced in March 2025 in the United States Bankruptcy Court.

Subject to the implementation and administration of a chapter 11 plan filed and to be confirmed by the United States Bankruptcy Court, the Proposed Canadian Settlement provides for the payment of US$3.25 million (approximately, C$____), in full and final settlement of the claims advanced against 23andMe in the Canadian Class Actions.  As part of the Proposed Canadian Settlement, the claims against the other Defendants will be dismissed on a with prejudice and without costs basis.

- 5 -

The net proceeds of the Proposed Canadian Settlement, after deduction of legal feels to be calculated at 33% of US$3.25 million (or, approximately, US$1.07 million), disbursements, administration and other costs, honorarium and other expenses, will be paid to eligible Canadian Data Breach Class Members in accordance with the Canadian Data Breach Settlement Class Benefits Plan.

The Proposed Canadian Settlement was negotiated as part of 23andMe's Chapter 11 Proceedings. Pursuant to the terms of the plan filed in the Chapter 11 Proceedings and to be confirmed by the United States Bankruptcy Court, the Proposed Canadian Settlement provides for full and final releases. The terms of the Proposed Canadian Settlement are consistent with those achieved in similar insolvency and class action proceedings.

The Proposed Canadian Settlement is not an admission of liability on the part of 23andMe, who denies the allegations. The Proposed Canadian Settlement represents a compromise of disputed claims. The Proposed Canadian Settlement is subject to approval of the United States Bankruptcy Court and the Canadian Court.

This Long-Form Notice of Proposed Canadian Settlement provides details regarding the Proposed Canadian Settlement, the path forward, and the options available to the Canadian Data Breach Class Members at this time.

Note that the Canadian Class Actions are distinct and independent of the class action proceedings brought and pending in the United States. The Proposed Canadian Settlement is **NOT** available to persons other than the Canadian Data Breach Class Members.

## C. OVERVIEW OF THE CANADIAN DATA BREACH SETTLEMENT CLASS BENEFITS PLAN

The Canadian Data Breach Settlement Class Benefits Plan provides for objective criteria to validate and determine the claim of each eligible Canadian Data Breach Class Member who submits a timely and valid claim for compensation in accordance with the claims process to be established by the courts.

### i. The formation of the Canadian Data Breach Settlement Distribution Fund

The Proposed Canadian Settlement would provide for a payment of US$3.25 million for the benefit of the Canadian Data Breach Class Members. The United States Bankruptcy Court and the Canadian Court will be asked to approve the payment of legal fees (at 33% of the gross recovery), plus administration and other costs and expenses, plus applicable taxes, from the settlement amount.

After the deduction of those expenses, Canadian Data Breach Class Counsel expect that approximately US$1.68 million (approximately CA$____) will be available for distribution amongst the Canadian Data Breach Class Members ("**Canadian Data Breach Settlement Distribution Fund**"). The breakdown of those legal fees and administrative and other expenses is expected to be as follows:

| (a) | Gross Canadian Data Breach Settlement Amount | US$3.25 million |
|---|---|---|
| (b) | Canadian Data Breach Class Counsel Legal Fees | US$1.07 million |
| (c) | Tax on Legal Fees | US$0.14 million |
| (d) | Canadian Data Breach Class Counsel Disbursements | US$0.1 million |
| (e) | Administration Expenses | US$0.26 million |
| (e) | Total Fees and Expenses (b)+(c)+(d)+(e) | US$1.57 million |
| (f) | Canadian Data Breach Settlement Distribution Fund (a) - (e) | US$1.68 million |

### ii. The Allocation of the Canadian Data Breach Settlement Distribution Fund into: (1) the Canadian Extraordinary Claims Distribution Fund; and (2) the Canadian Ordinary Claims Distribution Fund

Fifty percent of the Canadian Data Breach Settlement Distribution Fund will be initially allocated to a fund to be called the Canadian Extraordinary Claims Distribution Fund. The other fifty percent of the Canadian Data Breach Settlement Distribution Fund will be allocated to a fund to be called the Canadian Ordinary Claims Distribution Fund.

### iii. Administration of the Canadian Extraordinary Claims Distribution Fund

Canadian Data Breach Class Counsel expect the Canadian Extraordinary Claims Distribution Fund will include US$0.84 million (approximately CA$___). Each Canadian Data Breach Class Member who has incurred any of the following out of pocket expenses may submit a claim for up to CA$2,500 against the Canadian Extraordinary Claims Distribution Fund:

(a)  unreimbursed costs associated with the purchase of a physical security or monitoring system;

(b)  unreimbursed costs associated with seeking professional mental health counseling or treatment; and/or

(c)  any other documented, unreimbursed, out-of-pocket expense that the eligible Canadian Data Breach Class Member proves was incurred as a direct result of, and in response to, the Cyber Security Incident.

To be eligible, a Canadian Data Breach Class Member who submits an extraordinary claim must submit documentation proving that such expenses were incurred, and that they were incurred between October 1, 2023 and March 31, 2024.

The Canadian Claims Administrator will review and determine the extraordinary claims. If the amount available in the Canadian Extraordinary Claims Distribution Fund is less that the aggregate value of the approved extraordinary claims, the Canadian Claims Administrator will pro rate the available funds amongst the claimants based on the value of their approved extraordinary claims.

If the amount available in the Canadian Extraordinary Claims Distribution Fund is greater than the value of the approved extraordinary claims, the Canadian Claims Administrator will pay the extraordinary claims in full and remit the balance remaining in the Canadian Extraordinary Claims Distribution Fund into the Canadian Ordinary Claims Distribution Fund.

### iv.  Administration of the Canadian Ordinary Claims Distribution Fund

Canadian Data Breach Class Counsel expect the Canadian Ordinary Claims Distribution Fund will include a minimum of US$0.84 million (approximately CA$___).

The Canadian Claims Administrator will distribute this fund amongst all eligible claimants equally without the need to provide further proof or documentation.

Canadian Data Breach Class Counsel expect that approximately 64,000 eligible Canadian Data Breach Class Members will submit eligible claims for compensation.  On an equally pro-rated basis, Canadian Data Breach Class Counsel expect that the Canadian Ordinary Claims Distribution fund will result in a payment of approximately CA$17.77 to each eligible claimant.

### D.  APPLICATION FOR FINAL APPROVAL OF THE PROPOSED CANADIAN SETTLEMENT

On _____, 2026, the United States Bankruptcy Court will hear a motion for final approval of the Proposed Canadian Settlement.  As part of that application, the United States Bankruptcy Court will be asked to also grant orders as follows:

a) an Order approving the Canadian Data Breach Settlement Class Benefits Plan;

b) an Order approving honorarium payments to the plaintiffs, J.R., M.M. and Carolyn Rock, each in the amount of CA$2,500; and

c) an Order approving Canadian Data Breach Class Counsel's fees, at 33% of US$3.25 million gross settlement consideration, and Canadian Data Breach Class Counsel's out of pocket expenses not exceeding US$100,000.

If the United States Bankruptcy Court approves the Proposed Canadian Settlement, an application will be made to the Canadian Court for the appropriate recognition and approval orders.

### E.  OPTIONS AVAILABLE TO THE CANADIAN DATA BREACH CLASS MEMBERS AT THIS TIME

**If you are a Canadian Data Breach Class Member, the options available to you are as follows:**

a) **DO NOTHING:** If you have no objection to the Proposed Canadian Settlement or any related matter including the Canadian Data Breach Settlement Class Benefits Plan or the legal fees to be requested, you need not do anything at this time.  The Proposed Canadian Settlement will follow its due course to obtain approvals of the United States Bankruptcy Court and the Canadian Court.  If the courts approve the Proposed Canadian Settlement, a further notice will be issued in due course, which will provide information regarding the

claims process and instructions regarding how you may claim compensation from the net settlement distribution fund.

b) **OBJECT TO THE PROPOSED CANADIAN SETTLEMENT:** If you wish to object to the Proposed Canadian Settlement, including the Canadian Data Breach Settlement Class Benefits Plan or the legal fees request, which you wish to bring to the attention of the courts at the hearing of the application for final approval of the Proposed Canadian Settlement, you may provide your comments by completing and submitting a Canadian Settlement Objection Form (available here) by no later than 11:59 p.m., Pacific Time, on _____, 20__, by email at [Concilia to provide email address].

Canadian Data Breach Class Counsel will bring the comments or objections that may be received to the attention of the courts. Please note that the United States Bankruptcy Court and the Canadian Court may approve the Proposed Canadian Settlement and related matters if considering all circumstances the courts conclude that they are fair, reasonable and in the best interests of the Canadian Data Breach Class Members.

a) **OPT OUT OF THE PROPOSED CANADIAN SETTLEMENT:** Canadian Data Breach Class Members who timely filed an individual proof of claim in the Chapter 11 Proceedings were provided with the opportunity to opt out of the Proposed Canadian Settlement through the chapter 11 solicitation process administered as part of the Debtors' Chapter 11 Proceedings. Furthermore, all Canadian Data Breach Class Members will have the opportunity to opt out of the Proposed Canadian Settlement. To do so, you must complete and submit a Canadian Settlement Opt-Out Form (available here) by no later than 11:59 p.m., Pacific Time, on _____, 20__, by email at [Concilia to provide email address]

By opting out of the Proposed Canadian Settlement, you will not be eligible to receive any benefits contemplated in the Canadian Data Breach Settlement Class Benefits Plan and you cannot object to the Settlement. Furthermore, you will only retain the rights to sue, continue to sue, or pursue claims arising out of the Cyber Security Incident that are not otherwise barred or released as part of the Chapter 11 Proceedings, and you may be barred from pursuing any and all claims I may have against 23andMe Holding Co. and 23andMe, Inc. Any Canadian Data Breach Class Member who wishes to opt out is advised to seek independent legal advice before doing so.

## F. THE PATH FORWARD

In the event that the courts approve the Proposed Canadian Settlement, a further notice will be issued that will provide details regarding the Canadian Claims Process, and how Canadian Data Breach Class Members may submit a claim for compensation.

In the event that the courts decline to approve the Proposed Canadian Settlement, the Proposed Canadian Settlement shall be terminated and it shall have no effect. If the Proposed Canadian Settlement is not approved, there will no longer be an opportunity to pursue the claims against 23andMe as a result of the chapter 11 plan filed and confirmed as part of the Chapter 11 Proceedings which will have the effect of extinguishing and barring any claims against 23andMe.

- 9 -

In the event that the Proposed Canadian Settlement is not approved, the parties will assess the implications of the termination of the Proposed Canadian Settlement and may seek the appropriate directions of the courts in due course.

### G. INQUIRIES WITH RESPECT TO ADMINISTRATION OF THE PROPOSED CANADIAN SETTLEMENT

Concilia Services Inc. ("**Concilia**") has been appointed by the courts as the Canadian Claims Administrator in relation to this matter.  Any questions concerning the administration of the settlement must be directed to Concilia at the following contact information:

[contact information for

 Claims Administrator]

### H.  Canadian Data Breach Class Counsel

Canadian Data Breach Class Counsel are **NOT** the Canadian Claims Administrator, and will not be able to respond to inquiries concerning the administration of the settlement.  Those inquiries must be provided to the Canadian Claims Administrator, Concilia at the contact information provided above.

Canadian Data Breach Class Counsel may be contacted as follows:

 Sage Nematollahi
 KND Complex Litigation
 23andMe@knd.law


Information concerning the Canadian Class Actions is available on the website of Canadian Data Breach Class Counsel at the following URL address:

KND: https://knd.law/class-actions/23-and-me/

**<u>Exhibit C</u>**

**Canadian Claim Form**

> **Claim Form must be postmarked, emailed, faxed or
> submitted electronically (on-line portal) by 11:59 pm
> Pacific Time on ◆**

## CLAIM FORM PACKAGE

## 23andMe Holding Co. and 23andMe, Inc.
## Canadian Consumer Privacy Class Action

## Supreme Court of British Columbia at Vancouver Registry,
## Action No. S-237147 and No. S-246520

**CLAIMS ADMINISTRATOR**

**[address]**

**Phone:**      ◆
**Email:**      ◆
**Fax:**        ◆
**Website:**    ◆

**23andMe Canadian Consumer Privacy Class Action**

## CANADIAN SETTLEMENT CLAIM FORM

**This Canadian Settlement Claim Form must be postmarked,
emailed, faxed or submitted electronically (on-line portal) by
<u>11:59 pm Pacific Time on</u> ◆**

**IDENTIFICATION OF CLAIMAINT**

*The Claims Administrator will use this information for all communications regarding your
Canadian Claim Form. Please input the information of the person you wish the Administrator to
contact with regards to your Canadian Claim Form. If this information changes, you MUST
notify the claims administrator by email to ◆.*

| | |
|---|---|
| First Name: | |
| Last Name: | |
| E-mail Address Associated with 23andMe Account: | |
| Secondary Email Address (optional): | |
| Address: | |
| City: | |
| Province / Territory: | |
| Country: | |
| Postal Code: | |
| Phone Number: | |

**IMPORTANT INFORMATION AND INSTRUCTIONS**

1.  Only the following group of persons are eligible to submit a Canadian Claim Form:

    Any individual who (i) was a customer of the Debtors at any time between May 1, 2023 through October 1, 2023 (the "**Cyber Security Incident Period**"); (ii) resided in Canada during the Cyber Security Incident Period; and (iii) received a notice from 23andMe notifying the customer that their personal information was compromised in the Cyber Security Incident;

    ("**Canadian Data Breach Class**" or "**Canadian Data Breach Class Members**").

2.  In order to be eligible for compensation, any Canadian Data Breach Class Member must complete and submit the Canadian Settlement Claim Form, and provide supporting documentation if a claim is made with respect to Eligible Extraordinary Claims, by no later than 11:59 pm Pacific Time ◆ ("**Canadian Eligible Claimants**").

3.  Canadian Eligible Claimants may submit the Canadian Settlement Claim Form in order to apply for compensation in relation to two types of claims:

    1)  **Eligible Extraordinary Claims**:

        Each Canadian Eligible Claimant may make a claim for reimbursement of up to CAD$2,500 in relation to documented, unreimbursed, out-of-pocket expenses incurred between October 1, 2023 and March 31, 2024 as a direct result of the Cyber Security Incident for:

        (a)  unreimbursed costs associated with the purchase of a physical security or monitoring system;

        (b)  unreimbursed costs associated with seeking professional mental health counseling or treatment; and/or

        (c)  any other documented, unreimbursed, out-of-pocket expense that the Canadian Eligible Claimant establishes was incurred as a direct result of, and in response to, the Cyber Security Incident.

        In order to be an Eligible Extraordinary Claim, the Canadian Eligible Claimant must provide documentation proving that the expenses were incurred, and that they were incurred during the period from October 1, 2023 to and including March 31, 2024.

    2)  **Eligible Ordinary Claims:** Each Canadian Eligible Claimant may make a claim for compensation other than the Eligible Extraordinary Claims without the need to provide further information or documentation. Each Canadian Eligible Claimant who completes and submits a valid Canadian Claim Form will be automatically considered for receiving compensation.

4.  All payments will be issued in Canadian currency.

**Eligible Extraordinary Claims (if applicable)**

**NOTE: an Eligible Canadian Claimant who submits this claim must provide supporting documentation:**

| | TYPE OF ELIGIBLE EXTRAORDINARY CLAIM | Amount Claimed in CAD | Supporting Documentation Provided? |
|---|---|---|---|
| CATEGORY 1 | unreimbursed costs associated with the purchase of a physical security or monitoring system incurred between October 1, 2023 and March 31, 2024 as a direct result of the Cyber Security Incident | | YES / NO |
| CATEGORY 2 | unreimbursed costs associated with seeking professional mental health counseling or treatment incurred between October 1, 2023 and March 31, 2024 as a direct result of the Cyber Security Incident | | YES / NO |
| CATEGORY 3 | any other documented, unreimbursed, out-of-pocket expense that the Canadian Eligible Claimant establishes was incurred between October 1, 2023 and March 31, 2024 as a direct result of, and in response to, the Cyber Security Incident  **Please explain the nature of the expense and how it was incurred between October 1, 2023 and March 31, 2024 as a direct result of, and in response to, the Cyber Security Incident:** | | YES / NO |
| **TOTAL (Maximum Allowed: CAD$2,500)** | | | |

## <u>PREFERRED FORM OF COMPENSATION:</u>

        ☐ Interac e-Transfer (to the email address provided above); or

        ☐ Cheque (to the address provided above).

**DECLARATION**

**YOU MUST READ AND SIGN THE DECLARATION. FAILURE TO SIGN THIS FORM MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

I acknowledge that I am a Canadian Data Breach Class Member bound by and subject to the terms of the Canadian Data Breach Settlement Agreement, Canadian Settlement Class Benefit Plan and any Court order that may form any part of the litigation and settlement. I hereby agree to provide additional information to the Canadian Claims Administrator to support this claim, if requested to do so. I have not submitted any other claim in relation to this matter and no other person having done so on my behalf.

On behalf of myself and each of my heirs, agents, executors, trustees, administrators, predecessors, successors, and assigns, I submit this Canadian Claim Form under the terms of the Canadian Data Breach Settlement Agreement, Canadian Data Breach Class Benefits Plan and any Court order that may form any part of the litigation and settlement and enforcing the release and declaration set forth herein.

I hereby warrant and represent that I have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

I hereby warrant and represent that I have included the information requested, and I have included valid and true supporting documentation in support of any Eligible Extraordinary Claim made in this Canadian Claim Form, if any.

**RELEASE OF RELEASEES. Pursuant to the Canadian Data Breach Settlement Agreement, Canadian Data Breach Class Benefits Plan and Court Orders and documents,** upon the Effective Date, in consideration of payment of the Settlement Amount and for other valuable consideration set forth in the Canadian Data Breach Settlement Agreement, the Releasors forever and absolutely release, waive and discharge the Releasees from the Released Claims that any of them, whether directly, indirectly, or in any other capacity, ever had, now have, or hereafter can, shall or may have.

I _____, am a Canadian Data Breach Class Member, as defined herein, and declare under penalty of perjury and disqualification to receive payment from the Canadian Data Breach Settlement Distribution Fund, under the laws of the Province of British Columbia, that all of the foregoing information, documentation, calculations and identity supplied in my Canadian Claim Form Package by the undersigned is true, accurate, complete and correct.

Executed this ____day of _____, 202__, in the City of_____, Province of _____.

Signature: _____.

Capacity of person(s) signing: _____.



**USE OF REPRESENTATIVE.**  If the person completing and submitting this Canadian Claim Form is a representative for the Canadian Eligible Claimant, he or she must certify that he or she is authorized to do so on behalf of the Canadian Eligible Claimant.

I _____, certify that I am authorized to complete and submit this Canadian Claim Form on behalf of _____ who is a Canadian Data Breach Class Member.


Date: _____   Signature: _____



**NOTES TO CANADIAN CLAIMS ADMINISTRATOR:**

**Exhibit D**

**Canadian Data Breach Settlement Class Benefits Plan**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.), *et al.*,[1]<br><br>Debtors. | Case No. 25-40976-357<br>Chapter 11<br><br><br>(Jointly Administered) |

**CANADIAN DATA BREACH SETTLEMENT CLASS BENEFITS PLAN**

**PART I – RECITALS**

A.      **WHEREAS,** in October 2023, 23andMe Holding Co. and 23andMe, Inc. (collectively, "**23andMe**" or the "**Company**") identified and disclosed a data breach (the "**Cyber Security Incident**") which resulted in numerous actions being filed or otherwise threatened against the Company as well as the initiation of various governmental investigations;

B.      **AND WHEREAS**, on October 20, 2023, the named plaintiffs (the "**Canadian Plaintiffs**") in (i) *J.R. v. 23andMe Holding Co. et al.*, BCSC court file no. S-237147, Vancouver Registry, filed October 20, 2023; and (ii) *J.R. and M.M. v. 23andMe Holding Co. et al.*, BCSC court file no. S-246520, Vancouver Registry, filed September 18, 2024 (collectively, the "**Canadian Class Actions**") filed a lawsuit against 23andMe in the Supreme Court of British Columbia (the "**Canadian Court**") alleging damages arising from the Cyber Security Incident;

C.      **AND WHEREAS**, on September 18, 2024, the Canadian Plaintiffs filed a lawsuit against 23andMe and certain of 23andMe's current or former directors and/or officers (the

---

[1]      The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: Chrome Holding Co. (0344), ChromeCo, Inc. (7371), Chrome Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595).  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

"**D&O's**") and 23andMe's auditor, KPMG LLP (United States) ("**KPMG**"), in the Canadian Court alleging damages from the Cyber Security Incident;

D.    **AND WHEREAS**, on March 23, 2025, 23andMe filed a voluntary petition for relief with the United States Bankruptcy Court for the Eastern District of Missouri (the "**Bankruptcy Court**") under chapter 11 of title 11 of the United States Code (the "**Chapter 11 Proceedings**");

E.    **AND WHEREAS**, on April 30, 2025, the Bankruptcy Court entered the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket No. 349], establishing, among other things, July 14, 2025 as the deadline to file claims arising out of or related to the Cyber Security Incident;

F.    **AND WHEREAS**, on May 26, 2025, with consent from the Canadian Plaintiffs, the Canadian Court recognized 23andMe's chapter 11 cases as a "foreign main" proceeding pursuant to the Companies' Creditors Arrangement Act (Canada) and granted other related relief, *In the Matter of the Companies' Creditors Arrangement Act, R.S.C.1985, c. C-36 as amended, and In the Matter of 23andMe Holding Co. and 23andMe, Inc.*, Case No. VLC-S-253696;

G.    **AND WHEREAS**, on June 5, 2025, the Bankruptcy Court entered the *Stipulation and Agreed Order Providing for a Temporary Stay of the Canadian Proceedings* [Docket No. 655], extending the automatic stay to the D&Os and KPMG;

H.    **AND WHEREAS**, 23andMe and Canadian Plaintiffs through their Counsel ("**Canadian Class Counsel**") have engaged in discussions related to issues (the "**Rule 7023 Issues**") concerning Canadian Counsel's authorization to file a class proof of claim on behalf of the Canadian Plaintiffs and the putative class members in the Canadian Class Actions;

I.    **AND WHEREAS**, on July 14, 2025, 23andMe and Canadian Plaintiffs filed a *Notice Regarding Rule 7023 Settlement with Canadian Data Breach Plaintiffs* [Docket No. 1003] providing that the Debtors and the Canadian Plaintiffs reached an agreement in principle with respect to the Rule 7023 Issues;

J.    **AND WHEREAS**, ahead of the July 14, 2025 Cyber Security Incident Bar Date, Canadian Counsel filed the one, consolidated class proof of claim (the "**Canadian Class Proof of Claim**") on behalf of the Canadian Data Breach Class Members;

K.    **AND WHEREAS**, on August 12, 2025, 23andMe and Canadian Plaintiffs executed a settlement agreement ("**Original Settlement Agreement**") and executed a further amended Settlement Agreement (the "**Settlement Agreement**" and the settlement contemplated therein, the "**Settlement**") which contemplates, among other things, (i) Canadian Counsel's authorization to file the Canadian Class Proof of Claim on behalf of the Canadian Plaintiffs and any individual who (a) was a customer of 23andMe between May 1, 2023 through October 1, 2023 ("**Cyber Security Incident Period**"); (b) resided in Canada during the Cyber Security Incident Period; and (c) received a notice from 23andMe notifying the customer that their personal information was compromised in the Cyber Security Incident, excluding the individuals who validly opt out of the Settlement in accordance with the process to be established by the Court (together with the Canadian

Plaintiffs, the "**Canadian Data Breach Class Members**"); (b) notwithstanding the filed amount of the Canadian Class Proof of Claim, the Canadian Class Proof of Claim shall be deemed to be an allowed claim in the amount of US$3.25 million (the "**Canadian Class Allowed Claim**"); (c) subject to confirmation of a plan which is in all material respects consistent with the Settlement Agreement, the Debtors will fund a settlement trust ("**Canadian Data Breach Settlement Fund**") with the amount of the Canadian Class Allowed Claim to be distributed to Canadian Data Breach Class Members who do not opt out of the Settlement and who timely file valid claims pursuant to a proposed benefits plan approved by the Bankruptcy Court and Canadian Court;

L.    **AND WHEREAS** the parties have engaged in good faith discussions with respect to the drafting of the Acceptable Plan and endeavour to submit it for the necessary approvals of the Bankruptcy Court and the Canadian Court without delay;

M.    **AND WHEREAS**, subject to court approval of the Acceptable Plan, the parties commit to continue their good faith efforts to implement the Acceptable Plan in accordance with its terms expeditiously and without undue delay such that the benefits of the Settlement Agreement and the Canadian Data Breach Settlement Fund accrue to the Canadian Settlement Class Members without undue delay;

N.    **AND WHEREAS** the Canadian Data Breach Settlement Fund, net of Court-approved legal fees, expenses, administration expenses, honorariums and applicable taxes ("**Canadian Data Breach Settlement Distribution Fund**"), would be available for distribution to the eligible Canadian Settlement Class Members who submit valid claims in accordance with the procedure outlined in this Canadian Settlement Class Benefit Plan.

O.    **AND WHEREAS** the goal of this Canadian Settlement Class Benefit Plan is to facilitate an efficient, just and fair allocation and distribution of the Canadian Data Breach Settlement Distribution Fund;

P.    **NOW THEREFORE**, subject to necessary approvals of the Bankruptcy Court and the Canadian Court, which will be sought in due course, it is hereby determined that the Canadian Data Breach Settlement Distribution Fund shall be allocated and distributed in accordance with the terms of this Canadian Data Breach Settlement Class Benefit Plan, as follows.

## PART II – DEFINITIONS

1.    For the purposes of this Canadian Settlement Class Benefit Plan, the definitions set out in the Settlement Agreement apply to and are incorporated into this Canadian Settlement Class Benefit Plan and, in addition to the terms defined in the Recitals section of this Canadian Settlement Class Benefit Plan, the following definitions apply:

(a)    "**Allocation System**" means the method of determining the Compensable Loss assigned to a claim in order to determine the amount of compensation to be awarded for that claim.

(b)　　**"Canadian Claimant"** means any Canadian Settlement Class Member who submits a Claim Form, regardless of whether it is a valid Claim Form which is accepted by the Canadian Claims Administrator or not.

(c)　　**"Canadian Claim Form"** means a written claim in the prescribed form seeking compensation from the Canadian Data Breach Settlement Distribution Fund.

(d)　　**"Canadian Claim Process"** means the Court-approved process to submit a Claim Form seeking compensation from the Canadian Data Breach Settlement Distribution Fund.

(e)　　**"Canadian Claims Administrator"** means the firm to be appointed by the Court to administer the Canadian Claim Process.

(f)　　**"Canadian Claims Bar Date"** means the date to be determined by the Court by which Claim Forms must be submitted in order for it to be considered a valid Canadian Claim Form.

(g)　　**"Canadian Claims Process Escrow Account"** has the meaning attributed to this term in paragraph 33.

(h)　　**"Canadian Data Breach Class Counsel"** means KND Complex Litigation.

(i)　　**"Canadian Data Breach Class Members"** has the meaning attributed to this term in the Recital sections, at paragraph K.

(j)　　**"Canadian Eligible Claim"** and **"Canadian Eligible Claims"** mean a claim or claims that the Canadian Claims Administrator has determined to be valid and proper to receive compensation from the Canadian Data Breach Settlement Distribution Fund, and they include Eligible Extraordinary Claims and an Eligible Ordinary Claims.

(k)　　**"Canadian Eligible Claimants,"** each being an **"Canadian Eligible Claimant,"** means a Canadian Claimant who submit a valid Canadian Claim Form, or on whose behalf a valid Canadian Claim Form is submitted by a person who is authorized to submit the Canadian Claim Form, in accordance with the Court-approved Canadian Claim Process.

(l)　　**"Canadian Settlement Amount"** means the amount of the Canadian Class Allowed Claim that is funded by the Debtors or their successors, including a Plan Administrator, into the Canadian Data Breach Settlement Fund.

(m)　　**"Canadian Data Breach Settlement Distribution Fund"** has the meaning ascribed to this term in the Recitals section of this Canadian Settlement Class Benefit Plan, and it is comprised of:

　　　　a　　**"Canadian Extraordinary Claims Distribution Fund,"** which has the meaning attributed to it in paragraph 11 of this Canadian Settlement Class Benefit Plan; and

      b      "**Canadian Ordinary Claims Distribution Fund**," which has the meaning attributed to it in paragraph 11 of this Canadian Settlement Class Benefit Plan.

(n)      "**Compensable Loss**" is the sum of a Canadian Eligible Claimant's recoverable compensation, which is calculated in accordance with the Allocation System.

(o)      "**Court**" means the Bankruptcy Court and/or the Canadian Court, as applicable or appropriate.

(p)      "**Eligible Extraordinary Claims**" has the meaning attributed to it in paragraph 27 of this Canadian Settlement Class Benefit Plan.

(q)      "**Eligible Ordinary Claims**" encompasses a claim for compensation from the Canadian Data Breach Settlement Distribution Fund submitted by a Canadian Eligible Claimant that is not an Eligible Extraordinary Claim.

(r)      "**Escrow Account**" an interest-bearing escrow account at a Canadian Schedule 1 bank under the control of KND Complex Litigation or the Canadian Claims Administrator for the benefit of the Canadian Settlement Class Members.

## PART III – GENERAL

2.      The Canadian Claims Administrator shall distribute the Canadian Data Breach Settlement Distribution Fund in accordance with the terms of this Canadian Settlement Class Benefit Plan.

3.      The goal of this Canadian Settlement Class Benefit Plan is to distribute the Canadian Data Breach Settlement Distribution Fund amongst Canadian Eligible Claimants.

4.      In the event of circumstances that may not be specifically addressed herein, the Canadian Claims Administrator shall address the situation in consultation with Canadian Data Breach Class Counsel bearing in mind the spirit and goal of this Canadian Settlement Class Benefit Plan.

5.      Canadian Data Breach Class Counsel and the Canadian Claims Administrator, whether individually or together, may apply to the Court for guidance and directions as needed to give effect to this Canadian Settlement Class Benefit Plan.

6.      All dollar figures indicated herein are in Canadian dollars, unless otherwise specified.

7.      The Canadian Data Breach Settlement Distribution Fund shall be paid out to Canadian Eligible Claimants in Canadian dollars.

## PART IV – FUNDING AND ALLOCATION OF THE ESCROW ACCOUNT

8.     Upon the Court's confirmation of the Applicable Plan, the administrator(s) of the Acceptable Plan shall implement the Acceptable Plan in accordance with its terms, and they shall endeavour to transfer the Canadian Settlement Amount to the Escrow Account.

9.     The Court-approved legal fees, expenses, administration expenses, honorariums and applicable taxes shall be paid in accordance with the terms of the Court's Order as a first charge against the Canadian Settlement Amount.

10.    The Canadian Settlement Amount, net of Court-approved legal fees, expenses, administration expenses, honorariums and applicable taxes, shall constitute the Canadian Data Breach Settlement Distribution Fund.

11.    The Canadian Claims Administrator shall initially allocate 50% of the Canadian Distribution Fund to the Canadian Extraordinary Claims Distribution Fund and the remaining 50% of the Canadian Distribution Fund to the Canadian Ordinary Claims Distribution Fund.

## PART V – COMPLETION AND SUBMISSION OF CANADIAN CLAIM FORMS

12.    Other than as specified herein, any person who wishes to claim compensation from the Canadian Data Breach Settlement Distribution Fund must complete and submit a Canadian Claim Form by the Canadian Claims Bar Date, following which the claim shall be disallowed and it shall be extinguished and forever barred.  Notwithstanding the foregoing, the Canadian Claims Administrator may in its discretion allow an otherwise-valid late Canadian Claim Form without further order of the Court.

13.    A Canadian Claim Form may be completed and submitted by a Canadian Eligible Claimant, or a person who is authorized to complete and submit the Canadian Claim Form on behalf of a Canadian Eligible Claimant.

14.    If a Claim Form is completed and submitted by a representative of a Canadian Eligible Claimant, the person completing and submitting the Canadian Claim Form shall certify that he or she is authorized to do so on behalf of the Canadian Eligible Claimant.

## PART VI – PROCESSING CANADIAN CLAIM FORMS

15.    The Canadian Claims Administrator shall develop and make available an electronic and automated process to facilitate the completion, submission and processing of the Canadian Claim Forms.  That process will be designed and structured to collect each Canadian Eligible Claimant's information, determine their eligibility and, if eligible, their Compensable Loss, in accordance with the terms of this Canadian Settlement Class Benefit Plan.

16.    Each person submitting a Canadian Claim Form shall certify that:

(a)     He or she, or the person on whose behalf the Canadian Claim Form is being submitted, is a Canadian Eligible Claimant; and

(b)     He or she is providing information that is true and correct.

17.    The Canadian Claim Process is intended to be expeditious, cost effective and user friendly and to minimize the burden on Canadian Eligible Claimants.  The Canadian Claims Administrator shall, in the absence of reasonable grounds to the contrary, assume an Canadian Eligible Claimant to be acting honestly and in good faith.

18.    Where a Canadian Claim Form contains minor omissions or errors, the Canadian Claims Administrator may, in its discretion, correct such omissions or errors if the information necessary to correct the error or omission is readily available to the Canadian Claims Administrator.

19.    The Canadian Claim Process is intended to prevent fraud and abuse.  If, after reviewing any Canadian Claim Form, the Canadian Claims Administrator believes that the claim contains unintentional errors which would materially exaggerate the Compensable Loss to be awarded to the Canadian Claimant, then the Canadian Claims Administrator may disallow the claim in its entirety or make such adjustments so that an appropriate Compensable Loss is awarded to the Canadian Eligible Claimant.

20.    If the Canadian Claims Administrator identifies a Canadian Claim Form that is materially untrue or inaccurate, the Canadian Claims Administrator may in its discretion disallow the claim in its entirety.

21.    Where the Canadian Claims Administrator disallows a claim in its entirety, the Canadian Claims Administrator shall send to the Canadian Claimant at the address provided by the Canadian Claimant or the Canadian Claimant's last known email or postal address, a notice advising the Canadian Claimant that he or she may request the Canadian Claims Administrator to reconsider its decision.

22.    A Canadian Eligible Claimant is not entitled to a notice or a review where a claim is allowed but the Canadian Eligible Claimant disputes the determination of Compensable Loss or his or her individual compensation.

23.    A Canadian Eligible Claimant may request that the Canadian Claims Administrator reconsider its decision only when the Claim is disallowed in its entirety.  Any request for reconsideration must be received by the Canadian Claims Administrator within 30 calendar days of the date of the notice advising of the disallowance.  If no request is received within this time period, the Canadian Claimant shall be deemed to have accepted the Canadian Claims Administrator's determination and the determination shall be final and not subject to further review by any court or other tribunal.

24.    Where a Canadian Claimant files a request for reconsideration with the Canadian Claims Administrator, the Canadian Claims Administrator shall conduct an administrative review of the Canadian Claimant's complaint.  Following its determination as part of its administrative review, the Canadian Claims Administrator shall advise the Canadian Claimant of its determination. In the event the Canadian Claims Administrator reverses a disallowance, the Canadian Claims Administrator shall send the Canadian Eligible

- 7 -

Claimant at his or her last known email or postal address, a notice specifying the revision to the Canadian Claims Administrator's disallowance.

25.    The determination of the Canadian Claims Administrator in an administrative review is final and is not subject to further review by any court or other tribunal.

## PART VII – ALLOCATION SYSTEM

26.    Each Canadian Eligible Claimant's Compensable Loss shall be calculated on a consideration and assessment of his or her Eligible Extraordinary Claim and Eligible Ordinary Claim.

### A.  Eligible Extraordinary Claims

27.    Each Canadian Eligible Claimant may make a claim for reimbursement of up to $2,500 in relation to documented, unreimbursed, out-of-pocket expenses incurred between October 1, 2023 and March 31, 2024 as a direct result of the Cyber Security Incident for:

   (a)    unreimbursed costs associated with the purchase of a physical security or monitoring system;

   (b)    unreimbursed costs associated with seeking professional mental health counseling or treatment; and/or

   (c)    any other documented, unreimbursed, out-of-pocket expense that the Canadian Eligible Claimant establishes was incurred as a direct result of, and in response to, the Cyber Security Incident.

28.    In order to be an Eligible Extraordinary Claim, the Canadian Eligible Claimant must provide documentation proving that the expenses were incurred, and that they were incurred during the period from October 1, 2023 through to and including March 31, 2024.

29.    The Canadian Claims Administrator may request that the Canadian Eligible Claimant who makes an Eligible Extraordinary Claim provide further information or documentation as necessary to prove that the relevant expenses were incurred as a direct result and in response to the Cyber Security Incident.

30.    If the Canadian Claims Administrator determines that the expenses were not incurred as a direct result of, and in response to the Cyber Security Incident, the Canadian Claims Administrator may disallow this portion of the claim, and the decision shall be final.

### B.  Eligible Ordinary Claims

31.    Each Canadian Eligible Claimant is entitled to receive a pro-rated share of the Canadian Ordinary Claims Distribution Fund without the need to provide any supporting information or documentation.

## PART VIII – DISTRIBUTION OF THE CANADIAN DATA BREACH SETTLEMENT DISTRIBUTION FUND

32.    The Canadian Data Breach Settlement Distribution Fund shall be distributed amongst Canadian Eligible Claimants in accordance with this section.

33.    Canadian Data Breach Class Counsel shall deduct legal fees, disbursements, honorariums and such other expenses as may be authorized by the Court, plus applicable taxes, from the Escrow Account, Canadian Data Breach Class Counsel shall transfer the remaining balance in the Escrow Account to an account designated by the Canadian Claims Administrator to be the Canadian Claims Process Escrow Account.   Thereafter, the Canadian Claims Administrator shall distribute the Canadian Data Breach Settlement Distribution Fund as follows.

### A.  Allocation of the Canadian Extraordinary Claims Distribution Fund

34.    The Canadian Claims Administrator shall calculate the aggregate value of Eligible Extraordinary Claims submitted by Canadian Eligible Claimants.

35.    If the aggregate value of all Eligible Extraordinary Claims submitted by Canadian Eligible Claimants is less than the funds available in the Canadian Extraordinary Claims Distribution Fund, the Canadian Claims Administrator shall allocate to each such Canadian Eligible Claimant an amount that is equal to the whole of their Eligible Extraordinary Claim.   Thereafter, the Canadian Claims Administrator shall transfer the balance remaining in the Canadian Extraordinary Claims Distribution Fund to the Canadian Ordinary Claims Distribution Fund.

36.    If the aggregate value of all Eligible Extraordinary Claims submitted by Canadian Eligible Claimants is greater than the funds available in the Canadian Extraordinary Claims Distribution Fund, the Canadian Claims Administrator shall pro-rate the Canadian Extraordinary Claims Distribution Fund amongst the Canadian Eligible Claimants based on the amount of their Eligible Extraordinary Claims.

### B.  Allocation of the Canadian Ordinary Claims Distribution Fund

37.    The Canadian Claims Administrator shall allocate the funds remaining in the Canadian Ordinary Claims Distribution Fund amongst all Canadian Eligible Claimants on a pro-rated basis.

### C.  Distribution of the Canadian Data Breach Settlement Distribution Fund

38.    After the Canadian Claims Administrator has determined the compensation to be allocated to each Canadian Eligible Claimant, the Canadian Claims Administrator shall pay each Canadian Eligible Claimant by way of cheque, e-transfer or comparable commercially sensible means.

39.    If the Canadian Claims Process Escrow Account is in a positive balance (whether by reason of tax refunds, un-cashed cheques or otherwise) after one hundred and eighty (180) days from the date of distribution of the Canadian Data Breach Settlement Distribution Fund,

the Canadian Claims Administrator shall, if feasible, allocate such balance among Eligible Claimants with valid and approved Eligible Extraordinary Claims on an equitable and economic fashion.  Alternatively, Canadian Data Breach Class Counsel may seek directions from the Court to allocate the balance remaining in the Canadian Claims Process Escrow Account to an appropriate *cy-près* recipient.


Date: September 11, 2025

/s/ *Sage Nematollahi*

**KND COMPLEX LITIGATION**

Sage Nematollahi (admitted *pro hac vice*)

Yonge Eglinton Centre

Suite 401, 2300 Yonge Street

Toronto, Ontario M4P 1E4

Email: sn@knd.law

Telephone: 236-888-7700


*On behalf of the Canadian Plaintiffs*

**<u>Exhibit E</u>**

**Canadian Opt-Out Form**

**23andMe Canadian Consumer Privacy Class Action**

## CANADIAN SETTLEMENT OPT-OUT FORM

**THIS IS NOT A CLAIM FORM.  PLEASE COMPLETE AND SUBMIT THIS CANADIAN SETTLEMENT OPT-OUT FORM ONLY IF YOU WISH TO OPT-OUT OF THE PROPOSED CANADIAN SETTLEMENT, BY NO LATER THAN 11:59 PM PACIFIC TIME ON ◆**

THIS CANADIAN SETTLEMENT OPT-OUT FORM MUST BE SUBMITTED TO THE CANADIAN CLAIMS ADMINISTRATOR at:

[Claims Administrator

Contact information]

ONLY THE FOLLOWING GROUP OF PERSONS ARE ELIGIBLE TO SUBMIT A CANADIAN SETTLEMENT OPT-OUT FORM:

> Any individual who (i) was a customer of 23andMe at any time between May 1, 2023 through October 1, 2023; (ii) resided in Canada during the period from May 1, 2023 through October 1, 2023; and (iii) received a notice from 23andMe notifying the customer that their personal information was compromised in the Cyber Security Incident;

> ("**Canadian Data Breach Class**" or "**Canadian Data Breach Class Members**").

I _____, certify that I am a Canadian Data Breach Class Member.

I wish to opt-out, meaning to exclude myself from, the Proposed Canadian Settlement achieved in *J.R.* v. *23andMe Holding Co. et al.*, BCSC at Vancouver Registry, court file no. S-237147, and *J.R. and M.M. v. 23andMe Holding Co. et al.*, BCSC at Vancouver Registry, court file no. S-246520 ("**Proposed Canadian Settlement**").

I understand that by submitting this opt-out form, I will not be entitled to participate in the Proposed Canadian Settlement.

I understand that by submitting this opt-out form, I will only retain the rights to sue, continue to sue, or pursue claims arising out of the Cyber Security Incident that are not otherwise barred or released as part of the Chapter 11 Proceedings, and that I may be barred from pursuing any and all claims I may have against 23andMe Holding Co. and 23andMe, Inc.

I confirm that I am hereby advised to seek independent legal advice before submitting this opt-out form.

My contact information is as follows:

Name: _____

Email address associated with
23andMe account: _____

Secondary email address (optional): _____

Address: _____

Phone number: _____

I _____ certify that the information provided herein is complete and true.

Signed on _____ day of _____, 20___, at the City of _____, in the Province / Territory of _____.

Signature: _____

**<u>Exhibit F</u>**

**Canadian Objection Form**

**23andMe Canadian Consumer Privacy Class Action**

**CANADIAN SETTLEMENT OBJECTION FORM**

<u>**THIS IS NOT A CLAIM FORM.**</u>  **PLEASE COMPLETE AND SUBMIT THIS CANADIAN SETTLEMENT OBJECTION FORM ONLY IF YOU WISH TO OBJECT TO THE PROPOSED SETTLEMENT OR ANY RELATED MATTERS, AS DESCRIBED HEREIN, BY NO LATER THAN <u>11:59 PM PACIFIC TIME ON</u> ◆**

THIS CANADIAN SETTLEMENT OBJECTION FORM MUST BE SUBMITTED TO THE CANADIAN CLAIMS ADMINISTRATOR at:

[Claims Administrator

Contact information]

Only the following group of persons are eligible to submit a Canadian Settlement Objection Form:

> Any individual who (i) was a customer of 23andMe at any time between May 1, 2023 through October 1, 2023; (ii) resided in Canada during the period from May 1, 2023 through October 1, 2023; and (iii) received a notice from 23andMe notifying the customer that their personal information was compromised in the Cyber Security Incident;
>
> (“**Canadian Data Breach Class**” or “**Canadian Data Breach Class Members**”).

I _____, certify that I am a Canadian Settlement Class Member.

I wish to object to (please check the appropriate box or boxes):

> Proposed Canadian Settlement
> Canadian Data Breach Settlement Benefits Plan
> Request for approval of Class Counsel’s legal fees at 33% of the gross settlement amount of US$3.25 million, or approximately US$1.07 million, and disbursements not exceeding US$100,000
> Request for approval of honorarium payments to the plaintiffs J.R., M.M. and Carolyn Rock, each in the amount of CA$2,500

The reason for my objection is as follow:

_____
_____
_____
_____
_____
_____
_____
_____

Please note that, despite your objection, the United States Bankruptcy Court and the Canadian Court may approve the Proposed Canadian Settlement and related matters if considering all circumstances the courts conclude that they are fair, reasonable and in the best interests of the Canadian Data Breach Class Members.

My contact information is as follows:

Name:                                    _____

Email address associated
with 23andMe account:            _____

Secondary email address
(optional):

Address:                              _____

Phone number:                     _____

I _____ certify that the information provided herein is complete and true.

Signed on _____ day of _____, 20__, at the City of _____, in the Province / Territory of _____.

Signature: _____