**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.), *et al.*,[1]<br><br>        Debtors. | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered)<br><br>Related Doc. 1226 |

**ORDER (I) PRELIMINARILY APPROVING THE U.S. DATA BREACH SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND SETTLEMENT CLASS REPRESENTATIVES; (II) PRELIMINARILY CERTIFYING THE CLASS FOR SETTLEMENT PURPOSES ONLY; (III) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE CLASS CERTIFICATION AND SETTLEMENT; (IV) SCHEDULING A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT AGREEMENT AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors and the U.S. Data Breach Settlement Class Representatives ("Settlement Class Representatives"), for entry of an order (this "Order") (a) preliminarily approving the settlement (the "Settlement") contemplated in the settlement agreement attached hereto as **Exhibit A** (the "Settlement Agreement"), between the Debtors and Settlement Class Representatives, on behalf of the U.S. Data Breach Settlement Class (together with the Debtors, the "Parties"); (b) certifying the U.S. Data Breach Settlement Class for settlement purposes only; (c) approving the forms and manner of notices to Settlement Class Members (the "Class Notices") attached hereto as **Exhibit B**; (d) approving certain claim forms

---

[1] The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are: Chrome Holding Co. (0344), ChromeCo, Inc. (7371), Chrome Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595). The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(the "Claim Forms") attached hereto as **Exhibit C**; (e) approving the U.S. Data Breach Class Settlement Class Benefits Plan ("Settlement Benefits Plan") attached hereto as **Exhibit D**; (f) approving the form and manner by which Settlement Class Members may exclude themselves from the Settlement (the "Opt-Out Form") attached hereto as **Exhibit E**; (g) scheduling a fairness hearing to consider final approval of the Settlement Agreement; and (h) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, the U.S. Data Breach Settlement Class and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing, if any, on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.　　The Motion is granted as set forth herein.

2.　　Pursuant to sections 105 and 363(b) of the Bankruptcy Code, Bankruptcy Rules 7023 and 9019, Rule 23 of the FRCP and all applicable law, the Settlement Agreement is hereby preliminarily authorized and approved on the terms set forth herein.

3.      The Settlement Agreement was negotiated in good faith and is hereby preliminarily approved, subject to a final hearing.

4.      The Court preliminarily certifies, for settlement purposes only pursuant to Rule 23 of the Federal Rules of Civil Procedure, made applicable hereto by Bankruptcy Rule 7023, the Settlement Class and Statutory Subclass defined in the Settlement Benefits Plan as follows: the U.S. Data Breach Settlement Class is defined as all natural persons who were residents of the United States at any time between May 1, 2023 and October 1, 2023 and who received a notice from 23andMe that their Personal Information was compromised in the Cyber Security Incident. The Statutory Subclass is defined as Settlement Class Members who were residents of Alaska, Oregon, California, or Illinois at any time between May 1, 2023 and October 1, 2023.

5.      The U.S. Data Breach Settlement Class and Statutory Subclass specifically exclude: (a) 23andMe and its officers and directors; (b) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class; (c) the Judge assigned to evaluate the fairness of this settlement; (d) potential class members who have provided 23andMe with an express release of claims arising out of or related to the Cyber Security Incident prior to August 4, 2025; and (e) any holder of a U.S. Data Breach Arbitration Claim.

6.      The Court preliminarily finds that the Settlement Class and Statutory Subclass each satisfy the requirements of Federal Rule of Civil Procedure 23(a) for settlement purposes: (a) the Settlement Class and Statutory Subclass are each sufficiently numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the Settlement Class and Statutory Subclass, (c) the Settlement Class and Statutory Subclass Representatives' claims are typical of those of the Settlement Class and Statutory Subclass Members, and (d) the Settlement Class and Statutory Subclass Representatives fairly and adequately protect the

interests of the Settlement Class and Statutory Subclass.  The Court further preliminarily finds that the Settlement Class and Statutory Subclass satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes; that common questions of law and fact predominate over questions affecting individual members, and a class action is a superior method for fairly and efficiently adjudicating the claims of the Settlement Class Representatives and class members.

7.     The Court additionally finds that the Settlement Class Representatives and U.S. Data Breach Class Counsel have adequately represented the class, the Settlement Agreement was negotiated at arm's length, the relief provided by the settlement is adequate, and the Settlement treats class members equitably relative to each other.  The Court has preliminarily determined that the Settlement is fair, reasonable, and adequate based on the merits of the plaintiffs' case weighed against the terms of the settlement, the debtors' financial condition, the complexity and expense of further litigation, and the amount of opposition to the Settlement at this juncture.

8.     The proposed settlement class representatives listed in **Exhibit F** attached hereto are hereby appointed as Settlement Class Representatives.

9.     The law firms of Stueve Siegel Hanson LLP, Casey Gerry Francavilla Blatt LLP and Keller Rohrback L.L.P. are hereby appointed as U.S. Data Breach Class Counsel.

10.     The following schedule relating to the approval process for the Settlement Agreement is approved; *provided* that the schedule may be modified as mutually agreed between the Debtors and U.S. Data Breach Class Counsel without further order of the Court; *provided, further,* that any such modification(s) to the schedule do not shorten the time periods in respect of the Notice Period, the Objection and Opt-Out Deadline, and the Claims Deadline:

| EVENT | DEADLINE |
|---|---|
| 23andMe shall serve or cause to be served the notice required by the CAFA | 10 days following the filing of the Motion for Preliminary Approval |
| 23andMe shall, for the purpose of facilitating Notice, provide or cause to be provided to the Settlement Administrator information about the Settlement Class Members to effectuate the Notice Plan | No later than 30 days following the Preliminary Approval Order |
| Plan Confirmation Hearing | November 19, 2025 or as soon as reasonably practicable thereafter |
| Notice Plan substantial completion deadline ("Notice Deadline") | 10 days following the Plan Confirmation Hearing |
| U.S. Data Breach Class Counsel shall file a motion for fees, expenses, costs, and Service Awards | 25 days following the Plan Confirmation Hearing |
| Deadline for objections and opt outs ("Objection and Opt-Out Deadline") | 40 days following the Plan Confirmation Hearing |
| U.S. Data Breach Class Counsel shall file all papers in support of the application for the Final Approval Order and Final Judgment | 55 days following the Plan Confirmation Hearing |
| Deadline for submitting a claim ("Claims Deadline") | 90 days following the Plan Confirmation Hearing |
| Hearing on Final Approval of the Settlement | January 20, 2026 at 10:00 a.m., prevailing Central Time |

11.     The forms of the Class Notice to Settlement Class Members (in substantially the form attached hereto as **Exhibit B**) concerning the Settlement Agreement and the process Settlement Class Members must follow to exclude themselves from or object to the Settlement Agreement are hereby approved.

12.     The Claim Forms attached hereto as **Exhibit C** and the method of distributing benefits to Settlement Class Members, including the method of processing class-member claims as set forth in the Motion, are hereby approved.

13.     The U.S. Data Breach Settlement Class Benefits Plan attached hereto as **Exhibit D** including the allocation of the Settlement Fund is hereby approved.

14.     The Opt-Out Form attached hereto as **Exhibit E** and the manner and method by which Settlement Class Members may exclude themselves from the Settlement is hereby approved.

15.     Kroll is hereby authorized to serve as the settlement administrator for the U.S. Data Breach Settlement Class.

16.     U.S. Data Breach Class Counsel or their designee, including the Settlement Administrator, shall bear the responsibility of the preparation and service of the Class Notice by (a) email using the same email list 23andMe used to notify its affected customers of the Cyber Security Incident; (b) where an email address is unavailable, via direct mail to the mailing address 23andMe used to notify its affected customers of the Cyber Security Incident; and (c) via the media plan as implemented by the Settlement Administrator.

17.     U.S. Eligible Class Members shall be provided with the opportunity to opt out of the U.S. Data Breach Settlement Class by timely and validly making the appropriate election in the Solicitation Materials in accordance with the solicitation procedures approved by the Court in connection with the Disclosure Statement Motion.

18.     Nothing herein modifies the Bar Date Order, including with respect to the Cyber Security Incident Bar Date, for any individual who did not timely file a Proof of Claim (including on account of any claims arising from or related to the Cyber Security Incident).

19.     Class Members who wish to object to the Settlement must send such objection, according to the instructions set out in the Class Notice, such that it is received by the Parties and filed with the Court no later than the objection deadline set forth in this Order and the Class

Notice, which shall be set at forty (40) days following the Plan Confirmation Hearing.

20. Pursuant to Section 1109(b) of the Bankruptcy Code, the Official Committee of Equity Holders may object to final approval of the Settlement and be heard at the Final Approval Hearing on account of such objection; *provided* that any such objection by the Official Committee of Equity Holders must be filed by the Objection and Opt-Out Deadline.

21. The Court shall, if objections are filed, conduct a hearing for final consideration and approval of the Settlement Agreement and the award of U.S. Data Breach Class Counsel's fees and expenses, which hearing shall take place at least sixty (60) days after the Plan Confirmation Hearing.

22. No creditor, other than the Settlement Class Members defined in the Settlement Agreement, shall gain any rights by reason of the Settlement Agreement. Nor shall the Settlement Agreement be admissible and/or used in any fashion in any action by any creditors.

23. All of the Debtors' rights and defenses to any Claim that is not the subject of this Settlement Agreement are expressly reserved.

24. In furtherance of this Order, the Settlement Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by mutual agreement of the Parties without further order of the Court, provided such modification, amendment, or supplement is not material.

25. The failure to mention any provision of the Settlement in this Order shall not impair its efficacy, it being the intent and effect of this Order that the Settlement and the compromises and agreements contained therein are preliminarily approved in all respects and all relief contemplated by the Settlement is hereby granted; *provided* that, for the avoidance of doubt, the releases contemplated in Section III of the Settlement Agreement are subject to entry

of the Final Approval Order and upon entry thereof, such releases will be effective as of the Plan Effective Date.

26.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim unless expressly contemplated herein; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

27.     Notice of the Motion as provided therein is hereby deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

28.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Motion.

29.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

30.     No later than two business days after the date of this Order, the Debtors shall serve on the Notice Parties a copy of the Order and shall file a certificate of service no later than 24 hours after service.

31.     The Final Approval Hearing is set for January 20, 2026 at 10:00 a.m., prevailing Central Time.

Dated:  October 2, 2025
St. Louis, Missouri
cjs

_____
Brian C. Walsh
United States Bankruptcy Judge

**Order Prepared By:**

**Carmody MacDonald P.C.**
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:      (314) 854-8600
Facsimile:      (314) 854-8660
Email:

        thr@carmodymacdonald.com
        nrw@carmodymacdonald.com
        jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:      (212) 373-3000
Facsimile:      (212) 757-3990
Email:      pbasta@paulweiss.com
        chopkins@paulweiss.com
        jchoi@paulweiss.com
        ghotz@paulweiss.com

*Counsel to the Debtors and Debtors in Possession*

Case 25-40976   Doc 1450   Filed 10/02/25   Entered 10/02/25 16:09:43   Main Document
Pg 11 of 87

## Exhibit A

**Settlement Agreement**

**PRIVILEGED & CONFIDENTIAL**
**SUBJECT TO FRE 408 & STATE LAW EQUIVALENTS**

THIS SETTLEMENT AGREEMENT DOES NOT CONSTITUTE, AND SHALL NOT BE DEEMED, AN OFFER OR A SOLICITATION WITH RESPECT TO ANY SECURITIES OF THE DEBTORS OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY CHAPTER 11 PLAN, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION, IF ANY, SHALL COMPLY WITH ALL APPLICABLE PROVISIONS OF SECURITIES, BANKRUPTCY, AND/OR OTHER APPLICABLE LAWS.

## SETTLEMENT AGREEMENT

This *Settlement Agreement* ("Agreement") is made and entered into on August 4, 2025 (the "Effective Date") by and among: the debtors and debtors in possession in the jointly administered chapter 11 cases of *In re 23andMe Holding Co., et al.* Case No. 25-40976-357 (BCW) (collectively, the "Debtors" and, the Debtors with their non-Debtor affiliates, "23andMe" or the "Company") and the Settlement Class Representatives (as defined herein) in the consolidated action *In re 23andMe, Inc., Customer Data Security Breach Litigation*, MDL 3098, Case No. 24-md-03098-EMC currently pending before the Honorable Edward M. Chen in the United States District Court for the Northern District of California. The Debtors and the Settlement Class Representatives may be referred to individually as a "Party" and together as "Parties."[1]

## RECITALS:

WHEREAS, in October 2023, the Company identified and disclosed a data breach (the "Cyber Security Incident") which resulted in numerous actions being filed or otherwise threatened against the Company as well as the initiation of various governmental investigations.

WHEREAS, after the Company's announcement of the Cyber Security Incident, over 40 putative class action lawsuits were filed against 23andMe asserting claims for various common law torts and various statutory claims.

WHEREAS, on December 21, 2023, 23andMe filed a Motion to Transfer Actions to the Northern District of California pursuant to 18 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation ("JPML"), MDL No. 3098 (the "Cyber Class Action").

WHEREAS, on April 11, 2024, the JPML centralized the multidistrict litigation before the Honorable Edward M. Chen of the Northern District of California (the "MDL Court").

WHEREAS, on June 5, 2024, the MDL Court appointed interim co-lead class counsel ("Cyber Class Action Counsel").

WHEREAS, on June 26, 2024, plaintiffs in the Cyber Class Action filed their consolidated class action complaint against 23andMe.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof and (II) Granting Related Relief* [Docket No. 349] (the "Bar Date Order").

WHEREAS, on September 5, 2024, representatives (the "Settlement Class Representatives") of U.S. persons whose personal information was impacted by the Cyber Security Incident (the "Cyber Class Action Members"), by and through Cyber Class Action Counsel, and 23andMe, Inc., entered into that certain Class Action Settlement Agreement and Release (the "Class Action Settlement Agreement" or, as modified by the Conditional Settlement Order (as hereafter defined) and modifications in response thereto, the "Prepetition Settlement Agreement").

WHEREAS, on December 4, 2024, the MDL Court conditionally granted preliminary approval of the Class Action Settlement Agreement on the terms set forth in the *Order Conditionally Granting Motion for Preliminary Approval* (the "Conditional Settlement Order").

WHEREAS, on March 12, 2025, 23andMe and Cyber Class Action Counsel filed a status report in the MDL Court confirming that 23andMe intended to go forward with the Settlement as informed by the Court on December 4, 2024.

WHEREAS, on March 23, 2025, each Debtor filed a voluntary petition for relief with the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code.

WHEREAS, on May 30, 2025, Cyber Class Action Counsel, on behalf of the Cyber Class Action Members, filed the *Motion for an Order Allowing Data Breach Victim Class to File a Class Proof of Claim* [Docket No. 539].

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties represent, warrant, consent, and agree as follows:

I.    **Adoption of Recitals**. The above recitals are true and correct, are incorporated herein by this reference, and constitute a part of this Agreement.

II.   **Settlement Terms**.  Subject to the conditions set forth in this Agreement, the Parties agree as follows:

A.    Cyber Class Action Counsel may file one, consolidated class proof of claim (the "Cyber Class POC") on behalf of the Cyber Class Action Members, subject to the following:

1.    The Cyber Class POC must be submitted on or before the Cyber Security Incident Bar Date.

2.    The Cyber Class POC may be filed in an amount determined by Cyber Class Action Counsel in accordance with the Bar Date Order and applicable law.

2

3.    The amount of the claim asserted on the Cyber Class POC must include all amounts contemplated in the Cyber Class Action, including, among other things, amounts reserved for (a) attorneys' fees, (b) litigation expenses, (c) service awards for named plaintiffs, (d) settlement administration costs, (e) data monitoring programs (*i.e.*, Privacy Shield), and (f) cash distributions for Cyber Class Action Members.

4.    Notwithstanding the filed amount of the Cyber Class POC, or the amount of such Cyber Class POC that is "allowed" following adjudication or administration of the claim in these chapter 11 cases, the aggregate cash distributions to be made on account of the Cyber Class POC shall not exceed $50 million in the aggregate (the "Cyber Security Incident Settlement Cap"); *provided* that if the Cyber Class POC receives distributions on account of such claim in the form of consideration other than cash or cash equivalents, the value of consideration shall be calculated based on the fair market value ("FMV") of such consideration, which FMV shall be determined by mutual agreement between Cyber Class Action Counsel and the Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Committee"), or, if the parties are unable to reach agreement, the Bankruptcy Court.

5.    The Debtors' right to contest the allowed amount of the Cyber Class POC is fully preserved but solely with respect to amounts in excess of $30 million (the "Cyber Security Incident Minimum Claim").

6.    Cyber Class Action Counsel shall engage in good faith negotiations with the Debtors and the Committee regarding the terms of a mutually acceptable chapter 11 plan which is in all material respects consistent with this Agreement (an "Acceptable Plan"), and Cyber Class Action Counsel agree that any plan that is in material respects consistent with this Agreement constitutes an Acceptable Plan.

7.    If an Acceptable Plan contemplates separate classification of Cyber Class Action Members as a distinct voting class under such chapter 11 plan, Cyber Class Action Counsel and Cyber Class Action Members shall support such separate classification; *provided* that such class of Cyber Class Action Members receives pro rata treatment with all other general unsecured classes on account of any allowed Cyber Class POC, unless otherwise agreed by Cyber Class Action Counsel or is otherwise in all material respects consistent with this Agreement.

8.    Cyber Class Action Counsel shall use commercially reasonable efforts to encourage Cyber Class Action Members to support and vote in favor of an Acceptable Plan, including but not limited to submitting a letter of support for such Acceptable Plan to be included as part of the solicitation package.

3

9. If an Acceptable Plan contemplates certification of the Cyber Class Action Members as a settlement class pursuant to Rule 23 of the Federal Rules of Civil Procedures (made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure), Cyber Class Action Counsel shall seek approval of a process (without objection from the Debtors) whereby:

(a) The funds approved for the Cyber Class POC will be placed in a Qualified Settlement Fund pursuant to § 468B of the Internal Revenue Code and related Treasury Regulations or similar trust under such plan (the "Cyber Class Action Trust") for the benefit of Cyber Class Action Members and Cyber Class Action Counsel; *provided* that in the event the placement of funds into such Qualified Settlement Fund impacts tax efficiencies and/ or raises any issues related to regulatory compliance for the Cyber Class Action Trust or any other trust contemplated under an Acceptable Plan, Cyber Class Action Counsel agree to discuss with the Debtors, a plan administrator appointed pursuant to the Plan, and the Committee and/or a general unsecured claims trustee, as applicable, to consider other trust options;

(b) Cyber Class Action Counsel will oversee distribution of the Cyber Class Action Trust pursuant to a proposed benefits plan approved by the Court (the "Cyber Class Benefits Plan");

(c) Any Cyber Class Action Member that timely filed a proof of claim ("POC") shall have the opportunity to "opt out" of the Cyber Class Benefits Plan by timely and validly electing to opt out of the Cyber Class Benefits Plan.  Any Cyber Class Action Member that fails to timely opt out of the Cyber Class Benefits Plan, regardless of whether such Cyber Class Action Member timely filed a proof of claim, shall receive benefits as set forth in the Cyber Class Benefits Plan and may not maintain a separate POC in the Chapter 11 Cases. Any Cyber Class Action Member that opts-out may be placed in a separate class under an Acceptable Plan.

(d) If more than 2% of the Cyber Class Action Members opt out of the Cyber Class Benefits Plan, the Debtors shall have the option to either (i) provide Cyber Class Action Counsel with notice either (a) terminating the Cyber Security Incident Settlement Cap and Cyber Security Incident Minimum Claim and preserving the Debtors' ability to object to the full amount of the Cyber Class POC or (b) objecting to certification of the Cyber Class Action Members under Rule 7023 of the Federal Rules of Bankruptcy Procedure; or (ii) impose reductions to the Cyber Security Incident Settlement Cap and Cyber Security Incident Minimum Claim, which reductions shall be calculated at a rate of $50 per opt out for each opt out in excess of 2% of the total Cyber Class Action Members.

4

B.      Cyber Class Action Counsel shall support a continued stay of the Cyber Class Action through the effective date of an Acceptable Plan.

C.      Upon the effective date of an Acceptable Plan (the "Plan Effective Date"), Cyber Class Action Counsel shall promptly move to dismiss the Cyber Class Action with prejudice and without costs to any Party.

**III.    Mutual Releases.**

A.      Upon the Plan Effective Date, Cyber Class Action Counsel, Settlement Class Representatives and the Cyber Settlement Class Members (the "Cyber Class Action Parties") shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Debtors and any of their respective members, shareholders, affiliates, related entities, current and former officers, directors, employees, principals, agents, successors, predecessors, and representatives (the "Debtor Released Parties") for any claims arising out of the Cyber Security Incident that the Cyber Class Action Parties can, shall, or may have against the Debtor Released Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

B.      Upon the Plan Effective Date, the Debtors and any of their respective members, shareholders, affiliates, related entities, current and former officers, directors, employees, principals, agents, successors, predecessors, and representatives shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge Cyber Class Action Parties for any claims arising out of the Cyber Security Incident, including any claims arising out of or relate in any way to the institution, prosecution or settlement of the Cyber Class Action against 23andMe Inc., that the Debtors can, shall, or may have against the Cyber Class Action Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

C.      The Parties agree that the releases set forth herein shall be construed as broadly as possible, except that the obligations of the Parties as set forth in this Agreement shall not be released.

IV.    **Further Assurances**. Each of the Parties shall execute and deliver to the other all such other documents as may reasonably be requested to accomplish whatever may be contemplated pursuant to this Agreement, and hereby agree to do and perform all acts, and to make, execute, and deliver all instruments and documents necessary to perform the obligations or consummate the transactions contemplated by this Agreement.

V.    **Non-Waiver**. The failure of any Party to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violations thereof, nor prevent that Party thereafter from enforcing each and every provision of this Agreement.  The rights granted to the Parties

5

herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such Party's right to assert all other legal remedies available to it under the circumstances.

VI.  **Prevailing Party**.   Except as otherwise provided in this Agreement, the Parties acknowledge and agree that each of them, as between them, will bear their own costs, expenses, and attorneys' fees arising out of the negotiation, preparation, and execution of this Agreement, and all matters arising out of or connected therewith.

VII.  **Entire Agreement**.  This Agreement constitutes the entire Agreement and supersedes any and all other understandings and agreements between the Parties with respect to the subject matter hereof and no representation, statement, or promise not contained herein shall be binding on either Party.  This Agreement may be modified, changed, amended, or otherwise altered only by a written amendment signed by each Party.

VIII.  **Execution in Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement.  Delivery of an executed counterpart of a signature page of this Agreement by photocopy, facsimile, electronic, email, or other copies of signatures shall have the same effect as an ink-signed original.

IX.  **Binding Nature of the Agreement on the Debtors' Estates.**  This Agreement shall be binding upon the Debtors and any subsequently appointed chapter 11 or chapter 7 trustee and shall be enforceable by the Settlement Class Representatives against the Debtors and their estates both during these chapter 11 cases and, if applicable, after conversion to chapter 7 or the dismissal of the chapter 11 cases.

X.  **Review by Counsel; Voluntary Agreement.**  The Parties confirm they have had the terms of this Agreement explained to them by their attorneys, and by executing this Agreement they represent that they are relying upon their own judgment and the advice of the counsel of their choice and are not relying upon any recommendations or representations of any opposing party, opposing counsel, or other representative, other than those representations expressly in this Agreement.

XI.  **Jointly Drafted.** The Parties to this Agreement have cooperated in the drafting and preparation of this Agreement.  Therefore, this Agreement shall not be construed against either Party on the basis that the Party was the drafter.

XII.  **Cooperation and Best Efforts**. The Parties hereto agree to cooperate fully in the execution of any documents or performance in any way which may be reasonably necessary to carry out the purposes of this Agreement and to effectuate the intent of the Parties thereto, and the Parties shall use their reasonable best efforts to obtain Bankruptcy Court approval.

XIII.  **Authority**. Subject to approval of the Bankruptcy Court, the individuals executing this Agreement on behalf of the Parties have the full power and lawful authority to execute and deliver this Agreement, as well as all of the other documents executed or delivered, or to be executed or delivered, by the Parties in connection herewith, to perform the obligations hereunder, and to consummate the transactions contemplated hereby.  The execution and delivery of this Agreement by the Parties, the performance of the obligations hereunder,

6

and the consummation by the Parties of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action on the part of the Parties and no other corporate proceedings are necessary to authorize this Agreement or to consummate the transactions contemplated hereby. Subject to approval of the Bankruptcy Court, each of the documents in connection herewith to which the Parties are, or will be, a party, has been, or will be, duly and validly executed and delivered by the Parties, and, assuming the due authorization, execution, and delivery of the documents by the other Parties, are (or when executed and delivered will be) legal, valid, and binding obligations of the Parties.

XIV.    **Governing Law.**    The exclusive jurisdiction for any dispute related to this Agreement, including interpretation and enforcement thereof, shall be the Bankruptcy Court. To the extent the Bankruptcy Court declines jurisdiction for any reason, the Parties shall request that the MDL Court undertake jurisdiction for the sole purpose of implementing this Agreement.

XV.    **Severability**.    The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, all other parts shall remain fully valid and enforceable.

XVI.    **Approval by the Bankruptcy Court.**    The execution and delivery of this Agreement by the Parties, the performance of the obligations hereunder, and the consummation by the Parties of the transactions contemplated hereby are all dependent on and subject to the entry of any order by the Bankruptcy Court approving of the Agreement in full, which may include the order confirming a chapter 11 plan.  Absent such an order, this Agreement and all the provisions hereunder will be of no effect.

*[Remainder of the page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

ACCEPTED AND AGREED by each of the signing parties below, who each warrant and represent that they have read and understand the foregoing Agreement and are entering into the foregoing Agreement voluntarily and without any duress or undue influence, and that each had the opportunity to consult with legal counsel of their own choosing before signing:

Norman E. Siegel
**STUEVE SIEGEL  HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

Cari Campen Laufenberg
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Gayle M. Blatt
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com

Tobias S. Keller
**KELLER BENVENUTTI KIM LLP**
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Tel: (415) 496-6723
tkeller@klkllp.com

*On behalf of the Settlement Class Representatives and Cyber Class Action Members*

8

/s/ *Christopher Hopkins*

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email:      pbasta@paulweiss.com
            chopkins@paulweiss.com
            jchoi@paulweiss.com
            ghotz@paulweiss.com


*On behalf of the Debtors and Debtors in Possession in
the above-captioned cases*

9

**Exhibit B**

Class Notices

# Exhibit B.1

Email Notice - Health Information Claimants

To:
From:
Subject: 23andMe Customer Data Security Breach Litigation Settlement

**Claim ID:** _____
**Monitoring Enrollment Code:** _____

## Your Information was Compromised in the 23ANDME CUSTOMER DATA SECURITY BREACH. You May be Eligible for a Cash Payment and Other Benefits from a $30-$50 Million Class Action Settlement.

*Para la notificación en Español visite nuestro sitio web.*

如需西班牙语通知，请访问我们的网站。

A federal bankruptcy court has authorized this Notice. This is not a solicitation from a lawyer.

A Settlement has been reached with 23andMe, Inc. ("23andMe") (now known as "Chrome")[1] in a class action lawsuit over a cyberattack announced by 23andMe on October 6, 2023, which resulted in the unauthorized access to Personal Information in its databases concerning approximately 6.4 million United States residents (the "Cyber Security Incident"). The lawsuit claims that 23andMe did not adequately protect users' Personal Information. 23andMe denies any wrongdoing. No judgment or determination of wrongdoing has been made.

➢ **Who Is Included?**

You received this email because records indicate you are included in this Settlement as a Settlement Class Member. **Your information was or may have been exposed on the dark web and you are entitled to benefits under the Settlement.** The Settlement Class includes the approximately 6.4 million U.S. residents identified by 23andMe whose Personal Information was compromised in the Cyber Security Incident. You are not a Settlement Class Member if you have timely and validly filed individual proofs of claim in the Bankruptcy Proceedings and elected to opt out of Settlement Class or have initiated a demand for arbitration against 23andMe.

23andMe has identified that **you are eligible to receive a Health Information Claim Cash Payment** because your Health Information was involved in the Cyber Security Incident. To receive your Health Information Claim Cash Payment of up to $165, please provide the information listed below. You must submit a Claim Form for any other cash benefits for which you are eligible.

➢ **What Does the Settlement Provide?**

If the Settlement is approved by the Court, a Settlement Fund of between $30 million and $50 million will be established. The Settlement Fund will be used to provide Settlement Class Members with:

- Five years of free Privacy & Medical Shield + Genetic Monitoring;

---

[1] On July 27, 2025, the Bankruptcy Court in *In re Chrome Holding Co. (f/k/a 23andMe Holding Co.), et al.*, Case No. 25-40976 (Bankr. E.D. Mo.) approved the sale of 23andMe Holding Co. and 23andMe, Inc.'s assets to TTAM Research Institute, which sale was completed on July 14, 2025. After the completion of the sale, 23andMe Holding Co. and 23andMe, Inc. formally changed their legal names to Chrome Holding Co. and ChromeCo, Inc., respectively. For ease of reference, Chrome Holding Co. and ChromeCo, Inc. are collectively referenced herein as "23andMe".

- Reimbursement of up to $10,000 for Extraordinary Claims incurred as a result of the Cyber Security Incident;

- Health Information Claim payments of up to $165 for Settlement Class Members; and

- Statutory Cash Claim payments estimated to be $100 for Settlement Class Members that resided in Alaska, California, Illinois, or Oregon at any time between May 1, 2023 and October 1, 2023 ("Cyber Security Incident Period").

The Settlement Fund will also be used to pay for the costs of notice and administration (currently estimated to be up to $918,000, but may change subject to the number of claims filed), and any payment of attorneys' fees (of up to 25% of the Settlement Fund) and expenses (not to exceed $500,000) and Service Awards for the Class Representatives (of $1,000 each for a total of $33,000), subject to court approval. If the Settlement Fund allowed is less than $50 million, the dollar amounts listed above will be reduced proportionally. Additionally, payments of the Extraordinary Claims and Statutory Cash Claims may be adjusted *pro rata* depending on the number of Settlement Class Members that participate in the Settlement, as outlined in the Settlement Benefits Plan available at www.23andMeDataSettlement.com.

➢ **How can Privacy & Medical Shield + Genetic Monitoring help me?**

You are being offered five years of Privacy & Medical Shield + Genetic Monitoring which will:
- monitor the dark web and other known data trafficking sites;
- provide you alerts if your private medical, genetic or other information is found for sale or trade;
- offer a variety of functions to help you reduce your digital footprint over time;
- provide the opportunity for you to transact online activities in a secure environment;
- prevent online tracking;
- provide ongoing opt outs of data broker sales;
- allow you to manage your passwords and store and transmit important documents safely;
- provide assistance and insurance if you are a victim of identity or medical fraud;
- and more.

The retail value of this five-year monitoring service is estimated to be $1,875 per Settlement Class Member and is being provided at no charge to those who enroll. You can learn more about this service and the additional benefits it provides by clicking **here**.

➢ **How To Get Benefits:**

1. **Extraordinary Claims:** Submit a Claim Form with documentation and an attestation supporting your out-of-pocket unreimbursed expenses related to the Cyber Security Incident.

2. **Health Information Claims Cash Payments:** Because 23andMe notified you that your Health Information was accessed in the Cyber Security Incident, you are automatically eligible to receive a Health Information Claim Cash Payment once the Settlement is approved and becomes final. Your Health Information was accessed in the Cyber Security Incident because the notice you received from 23andMe advises that your: (i) uninterpreted raw genotype data, (ii) certain health reports derived from the processing of your genetic information, including health-predisposition reports, wellness reports and carrier status reports, or (iii) your self-reported health condition information was accessed. To ensure you receive your payment, please provide, on the available Claim Form, your preferred electronic payment method or provide your mailing address to receive a check.

3. **Statutory Claims Cash Payments:** If you were a resident of Alaska, California, Illinois, or Oregon at any time during the Cyber Security Incident Period, you are eligible to submit a Claim Form attesting to your residential address to obtain this benefit.

4. **Five years of Privacy & Medical Shield + Genetic Monitoring:** To pre-enroll in this service, submit a Claim Form. You will receive an email containing instructions on how to begin this service once the Settlement is approved and becomes final.

**Use your unique Claim ID (located at the top of this email) to file your Claim Form online at** www.23andMeDataSettlement.com. You can also download a Claim Form from the Settlement Website or request one by calling toll free 1-___-___-____. If you are asking for any **cash benefits**, you must submit your Claim Form online by **11:59 p.m. Central Time on Month XX, 202X** or mail (postmark) your Claim Form by **Month XX, 202X**. If you are asking only to enroll in the **multi-year monitoring service**, you can enroll at any time during the five-year term of service.

➤ **Your Other Options**

1. **Opt Out**: If you timely filed an individual proof of claim in the Bankruptcy Proceedings, you received notice and an opportunity to opt out of Settlement through the Bankruptcy Solicitation Materials. If you did not file a proof of claim in the Bankruptcy Proceedings, and you do not want to be legally bound by the Settlement or receive any benefits from it, you must Opt-Out of the Settlement by **Month XX, 202X**. If you Opt-Out of the Settlement, you will retain any remaining rights to pursue claims arising out of this Cyber Security Incident that are not otherwise barred or released by the bankruptcy proceedings, and you will not receive any of the Settlement benefits. In particular, even if you opt out, you will be barred from pursuing any and all claims you may have against 23andMe (now known as "Chrome") and the other Debtor entities.

2. **Object:** If you want the Court to know you that you don't like the Settlement and/or the request for attorneys' fees and expenses or service awards, you may submit an objection. Objections must be filed electronically or in person with the Court or may be mailed to the Court and postmarked on or before **Month XX, 202X**. If you object to the Settlement and/or attorneys' fees and expenses or service awards, you are choosing to stay in the Settlement Class and must submit a Claim Form to receive a cash payment and other benefits, other than a payment for Health Information Claims.

3. **Do Nothing**: Unless you previously opted out through the bankruptcy process, whether you file a Claim Form, object to the Settlement and/or attorneys' fees and expenses or service awards, or do nothing, you are in the Settlement Class. You will be legally bound by all orders of the Court, and you will not be able to start, continue, or be part of any other lawsuit against 23andMe or Related Entities about the Cyber Security Incident.

Instructions on how to act on your options are available at www.23andMeDataSettlement.com.

➤ **When will the Court decide whether to finally approve the Settlement?**

The Court has scheduled a Final Approval Hearing in this case for **Month XX, 202X**, to consider: (1) whether to approve the Settlement; (2) whether to approve attorneys' fees of up to 25% of the Settlement Fund plus expenses not to exceed $500,000; (3) whether to approve Service Awards of up to $1,000 for each of the Class Representatives (up to a total of $33,000); and (4) whether any of the objections should be sustained. You or your own lawyer, if you have one, may ask to appear and speak at the Final Approval Hearing at your own expense, but you do not have to.

➤ **How Can I Get More Information?**

For complete information about all of your rights and options, as well as to obtain a Claim Form, view the Class Notice, the Settlement Agreement, and other related documents, visit www.23andMeDataSettlement.com, call 1-___-___-____ or access the Court Electronic Records (PACER) system online at https://www.moeb.uscourts.gov.

NOTICE AUTHORIZED BY: United States Bankruptcy Court for the Eastern District of Missouri

# Exhibit B.2

Email Notice - Settlement Class Members

To:
From:
Subject: 23andMe Customer Data Security Breach Litigation Settlement

**Claim ID:** _____
**Monitoring Enrollment Code:** _____

# Your Information was Compromised in the
# 23ANDME CUSTOMER DATA SECURITY BREACH.
# You May be Eligible for a Cash Payment and Other Benefits
# from a $30-$50 Million Class Action Settlement.

*Para la notificación en Español visite nuestro sitio web.*

如需西班牙语通知，请访问我们的网站。

A federal bankruptcy court has authorized this Notice. This is not a solicitation from a lawyer.

A Settlement has been reached with 23andMe, Inc. ("23andMe") (now known as "Chrome")[1] in a class action lawsuit over a cyberattack announced by 23andMe on October 6, 2023, which resulted in the theft of Personal Information in its databases concerning approximately 6.4 million United States residents (the "Cyber Security Incident"). The lawsuit claims that 23andMe did not adequately protect users Personal Information. 23andMe denies any wrongdoing. No judgment or determination of wrongdoing has been made.

➢ **Who Is Included?**

You received this email because records indicate you are included in this Settlement as a Settlement Class Member. **Your information was or may have been exposed on the dark web and you are entitled to benefits under the Settlement.** The Settlement Class includes the approximately 6.4 million U.S. residents identified by 23andMe whose Personal Information was compromised in the Cyber Security Incident. You are not a Settlement Class Member if you have timely and validly filed individual proofs of claim in the Bankruptcy Proceedings and elected to opt out of the Settlement Class or have initiated a demand for arbitration against 23andMe.

➢ **What Does the Settlement Provide?**

If the Settlement is approved by the Court, a Settlement Fund will be established which will be between $30 million and $50 million. The Settlement Fund will be used to provide Settlement Class Members with:

- Five years of free Privacy & Medical Shield + Genetic Monitoring;
- Reimbursement of up to $10,000 for Extraordinary Claims incurred as a result of the Cyber Security Incident;
- Health Information Claim payments of up to $165 for Settlement Class Members that received notice from 23andMe that their health information was involved in the Cyber Security Incident; and

---

[1] On July 27, 2025, the Bankruptcy Court in *In re Chrome Holding Co. (f/k/a 23andMe Holding Co.), et al.*, Case No. 25-40976 (Bankr. E.D. Mo.) approved the sale of 23andMe Holding Co. and 23andMe, Inc.'s assets to TTAM Research Institute, which sale was completed on July 14, 2025. After the completion of the sale, 23andMe Holding Co. and 23andMe, Inc. formally changed their legal names to Chrome Holding Co. and ChromeCo, Inc., respectively. For ease of reference, Chrome Holding Co. and ChromeCo, Inc. are collectively referenced herein as "23andMe".

- Statutory Cash Claim payments estimated to be $100 for Settlement Class Members that resided in Alaska, California, Illinois, or Oregon at any time between May 1, 2023 and October 1, 2023 ("Cyber Security Incident Period").

The Settlement Fund will also be used to pay for the costs of notice and administration (currently estimated to be up to $918,000, but may change subject to the number of claims filed), and any payment of attorneys' fees (of up to 25% of the Settlement) and expenses (not to exceed $500,000) and Service Awards for the Class Representatives (of $1,000 each for a total of $33,000), subject to court approval. If the Settlement Fund allowed is less than $50 million, the dollar amounts listed above will be reduced proportionally. Additionally, payments of the Extraordinary Claims and Statutory Cash Claims may be adjusted *pro rata* depending on the number of Settlement Class Members that participate in the Settlement, as outlined in the Settlement Benefits Plan available at www.23andMeDataSettlement.com.

➢ **How can Privacy & Medical Shield + Genetic Monitoring help me?**

You are being offered five years of Privacy & Medical Shield + Genetic Monitoring which will:
- monitor the dark web and other known data trafficking sites;
- provide you alerts if your private medical, genetic or other information is found for sale or trade;
- offer a variety of functions to help you reduce your digital footprint over time;
- provide the opportunity for you to transact online activities in a secure environment;
- prevent online tracking;
- provide ongoing opt outs of data broker sales;
- allow you to manage your passwords and store and transmit important documents safely;
- provide assistance and insurance if you are a victim of identity or medical fraud;
- and more.

The retail value of this five-year monitoring service is estimated to be $1,875 per Settlement Class Member and is being provided at no charge to those who enroll. You can learn more about this service and the additional benefits it provides by clicking **here**.

➢ **How To Get Benefits:**

1. **Extraordinary Claims:** Submit a Claim Form with documentation and an attestation supporting your out-of-pocket unreimbursed expenses related to the Cyber Security Incident.

2. **Health Information Claims Cash Payments:** If 23andMe notified you that your Health Information was accessed in the Cyber Security Incident, you are automatically eligible to receive a Health Information Claim Cash Payment once the Settlement is approved and becomes final. Your Health Information was accessed in the Cyber Security Incident if the notice you received from 23andMe advises that your: (i) uninterpreted raw genotype data, (ii) certain health reports derived from the processing of your genetic information, including health-predisposition reports, wellness reports and carrier status reports, or (iii) your self-reported health condition information was accessed. To ensure you receive your payment, please provide, on the available Claim Form, your preferred electronic payment method or provide your mailing address to receive a check.

3. **Statutory Claims Cash Payments:** If you were a resident of Alaska, California, Illinois, or Oregon at any time during the Cyber Security Incident Period, you are eligible to submit a Claim Form attesting to your residential address to obtain this benefit.

4. **Five years of Privacy & Medical Shield + Genetic Monitoring:** To pre-enroll in this service, submit a Claim Form. You will receive an email containing instructions on how to begin this service once the Settlement is approved and becomes final.

**Use your unique Claim ID (located at the top of this email) to file your Claim Form online at**

www.23andMeDataSettlement.com. You can also download a Claim Form from the Settlement Website or request one by calling toll free 1-___-___-____. If you are asking for any **cash benefits**, you must submit your Claim Form online by **11:59 p.m. Central Time on Month XX, 202X** or mail (postmark) your Claim Form by **Month XX, 202X**. If you are asking only to enroll in the **multi-year monitoring service**, you can enroll at any time during the five-year term of service.

➢ **Your Other Options**

1. **Opt Out**: If you timely filed an individual proof of claim in the Bankruptcy Proceedings, you received notice and an opportunity to opt out of Settlement through the Bankruptcy Solicitation Materials. If you did not file a proof of claim in the Bankruptcy Proceedings, and you do not want to be legally bound by the Settlement or receive any benefits from it, you must Opt-Out of the Settlement by **Month XX, 202X**. If you Opt-Out of the Settlement, you will retain any rights to pursue claims arising out of this Cyber Security Incident that are not otherwise barred or released by the bankruptcy proceedings, and you will not receive any of the Settlement benefits. In particular, even if you opt out, you will be barred from pursuing any and all claims you may have against 23andMe (now known as "Chrome") and the other Debtor entities.

2. **Object:** If you want the Court to know you that you don't like the Settlement and/or the request for attorneys' fees and expenses or service awards, you may submit an objection. Objections must be filed electronically or in person with the Court or may be mailed to the Court and postmarked on or before **Month XX, 202X**. If you object to the Settlement and/or attorneys' fees and expenses or service awards, you are choosing to stay in the Settlement Class and must submit a Claim Form to receive a cash payment and other benefits, other than a payment for Health Information Claims.

3. **Do Nothing**: Unless you previously opted out through the bankruptcy process, whether you file a Claim Form, object to the Settlement and/or attorneys' fees and expenses or service awards, or do nothing, you are in the Settlement Class. You will be legally bound by all orders of the Court, and you will not be able to start, continue, or be part of any other lawsuit against 23andMe or Related Entities about the Cyber Security Incident.

Instructions on how to act on your options are available at www.23andMeDataSettlement.com.

➢ **When will the Court decide whether to finally approve the Settlement?**

The Court has scheduled a Final Approval Hearing in this case for **Month XX, 202X**, to consider: (1) whether to approve the Settlement; (2) whether to approve attorneys' fees of up to 25% of the Settlement Fund plus expenses not to exceed $500,000; (3) whether to approve Service Awards of up to $1,000 for each of the Class Representatives (up to a total of $33,000); and (4) whether any of the objections should be sustained. You or your own lawyer, if you have one, may ask to appear and speak at the Final Approval Hearing at your own expense, but you do not have to.

➢ **How Can I Get More Information?**

For complete information about all of your rights and options, as well as to obtain a Claim Form, view the Class Notice, the Settlement Agreement, and other related documents, visit www.23andMeDataSettlement.com, call 1-___-___-____ or access the Court Electronic Records (PACER) system online at https://www.moeb.uscourts.gov.

NOTICE AUTHORIZED BY: United States Bankruptcy Court for the Eastern District of Missouri

# Exhibit B.3

Postcard Notice

23andMe Customer Data Security Breach Litigation Settlement
*In re: Chrome Holding Co., et al.,* Case No. 25-40976-357

# Class Action Notice
*Authorized by the U.S. Bankruptcy Court, Eastern District of Missouri*

| | | |
|---|---|---|
| **23andMe's records indicate your information was compromised in the 23andMe data security breach.** | **You may be eligible for a cash payment and other benefits from a $30-$50 million class action settlement.**<br><br>Up to $10,000 for Extraordinary Claims; Up to $165 for Health Information Claims; an estimated $100 for Statutory Cash Claims; and 5 years of Privacy & Medical Shield + Genetic Monitoring | **Your options:**<br><br>• **Submit a Claim Form** by [date].<br>• **Object** by [date].<br>• **Do nothing**. |

**Key things to know:**

- This is an important legal document.
- If you take no action, you will still be bound by the Settlement, and your rights will be affected.
- You can learn more at **23andMeDataSettlement.com** or by **scanning the QR code**.
- If you have questions or need assistance, please call 1-___-___-___.

# Court-Approved Legal Notice

**Learn more at**
**23andMeDataSettlement.com**

This is an important notice about a class action settlement.

<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

# Exhibit B.4

Class Notice

23andMe Customer Data Security Breach Litigation Settlement
United States Bankruptcy Court for the Eastern District of Missouri
*In re: Chrome Holding Co., et al.*, Case No. 25-40976-357



# Class Action Notice

## *Authorized by the U.S. Bankruptcy Court*

| Did you receive notice that your information was compromised in the 23andMe data security breach? | You may be eligible for a cash payment and other benefits from a class action settlement. | Read this notice. Your options: |
|---|---|---|
| | • Up to $10,000 for Extraordinary Claims;<br>• Up to $165 for Health Information Claims;<br>• An estimated $100 for Statutory Cash Claims; and<br>• 5 years of Privacy & Medical Shield + Genetic Monitoring | • Submit a Claim Form by [date].<br>• Opt-Out by [date].<br>• Object by [date].<br>• Do nothing. |

## Important things to know:

➤ This is a class notice for the *In re: 23andMe, Inc. Customer Data Security Breach Litigation*, Case No. 24-md-03098-EMC, originally filed in the United States District Court for the Northern District of California and now pending in the United States Bankruptcy Court for the Eastern District of Missouri as *In re: Chrome Holding Co., et al.*, Case No. 25-40976-357.[1]

➤ If you take no action, you will still be bound by the Settlement.

➤ You must file a Claim to receive a cash payment and other benefits the Settlement provides. Health Information Claim payments will be sent to eligible Settlement Class Members once payment information is provided.

➤ If you do not want to be bound by the Settlement, you may request exclusion ("Opt-Out"), unless you received an opportunity to opt out of the Settlement through the Bankruptcy Solicitation Materials.

➤ In order to receive a cash payment and other benefits, you must file a Claim even if you object.

➤ You should read this notice carefully and completely as it tells you what you can get from the Settlement with 23andMe (now known as "Chrome"). It also describes what your other options are.

---

[1] On July 27, 2025, the Bankruptcy Court in *In re Chrome Holding Co. (f/k/a 23andMe Holding Co.), et al.*, Case No. 25-40976 (Bankr. E.D. Mo.) approved the sale of 23andMe Holding Co. and 23andMe, Inc.'s assets to TTAM Research Institute, which sale was completed on July 14, 2025. After the completion of the sale, 23andMe Holding Co. and 23andMe, Inc. formally changed their legal names to Chrome Holding Co. and ChromeCo, Inc., respectively. For ease of reference, Chrome Holding Co. and ChromeCo, Inc. are collectively referenced herein as "23andMe".

## About this Notice

1. Why did I get this Notice?........................................................................................ **4**

2. What do I do next?................................................................................................ **4**

3. What are the deadlines I should be aware of?...................................................... **4**

## Learning About the Lawsuit

4. What is this lawsuit about?.................................................................................. **5**

5. What is the lawsuit called?.................................................................................. **5**

6. What are the claims in the lawsuit?..................................................................... **5**

7. What is a class action?....................................................................................... **6**

8. Why is there a Settlement in this lawsuit?........................................................... **6**

## Important Facts About the Settlement

9. How do I know if I am part of this Settlement.................................................... **6**

10. Are there exceptions to being included?............................................................. **6**

11. I'm still not sure if I am included...................................................................... **7**

12. What claims am I releasing if I stay in the Settlement Class?............................ **7**

13. Can I opt out of the Settlement Class?............................................................... **7**

## The Settlement Benefits

14. What does the Settlement provide?..................................................................... **7**

15. How does the Settlement help protect me against harm from disclosure of my Personal Information?...................................................................................... **8**

16. Where can I learn more about Privacy & Medical Shield + Genetic Monitoring?...................................................................................................... **8**

17. How can I enroll in Privacy & Medical Shield + Genetic Monitoring?................ **9**

18. How will the Settlement compensate me for unreimbursed costs related to the Cyber Security Incident?................................................................................. **9**

19. How do I get reimbursed for an Extraordinary Claim?...................................... **10**

20. How do I know if I am eligible for a Health Information Claim payment?........ **10**

21. How will the Settlement compensate me for a Health Information Claim?..... **10**

22. How do I know if I am eligible for a Statutory Cash Claim payment?.............. **11**

23. How do I get compensated for a Statutory Cash Claim?.................................. **11**

24. Can I delete my 23andMe information?............................................................ **11**

25. When will I get my monitoring or payment?..................................................... **12**

## Excluding Yourself from the Settlement

26. Why would I Opt-Out of the Settlement?........................................................... **12**

27. How do I Opt-Out of the Settlement?................................................................ **12**

28. What happens if I Opt-Out of the Settlement?.................................................. **13**

29. If I Opt-Out, can I get any benefits from this Settlement?................................. **13**

## Objecting to the Settlement

30. What does it mean to object to the Settlement?........................................... **13**

31. How do I tell the Court that I don't like the Settlement?................................... **14**

32. May I or my attorney speak at the Final Approval Hearing about my objection?........................................................................................ **15**

## The Lawyers Representing You

33. Do I have a lawyer in this case?............................................................. **15**

34. Should I get my own lawyer?............................................................... **15**

35. How will the lawyers be paid?............................................................. **15**

## If You Do Nothing

36. What happens if I do nothing at all?...................................................... **16**

37. Can I enroll in Privacy & Medical Shield + Genetic Monitoring later?................ **16**

## The Court's Final Approval Hearing

38. When and where will the Court decide whether to approve the Settlement?.. **16**

39. Can the date, time or location of the Final Approval Hearing change?............. **17**

40. Do I have to come to the hearing?......................................................... **17**

## Key Resources

41. How do I get more information about the Settlement?.................................... **17**

# About this Notice

## 1. Why did I get this Notice?

A federal bankruptcy court authorized this Notice because you have a right to know about the proposed Settlement in the case, and all of your options, before the Court decides whether to approve the Settlement. If the Court approves it, and after any appeals are resolved, an administrator appointed by the Court will process all claims, make payments and provide access to the benefits that the Settlement allows. You can keep informed of the progress here.

**This Notice Explains:**
- The lawsuit
- The Settlement
- Your legal rights
- The Settlement benefits
- Who can get benefits
- How to get benefits

## 2. What do I do next?

Read this Notice carefully to determine if you are a Settlement Class Member and to understand the Settlement and its benefits.

You must submit a Claim to receive a cash payment (other than a Health Information Claim payment) and to pre-enroll in Privacy & Medical Shield + Genetic Monitoring.

Health Information Claimants: Provide your preferred payment method on the available Claim Form and apply for any other benefits for which you are eligible.

Read on to understand the specifics of the Settlement, your choices, and what each choice would mean for you.

## 3. What are the deadlines I should be aware of?

- ➤ Your deadline to Object: **[date]**
- ➤ Your deadline to Opt-Out of the Settlement: **[date]**
- ➤ Your deadline to submit a Claim Form: **[date]**
- ➤ Final Approval Hearing: **[date]**

# Learning About the Lawsuit

## 4.  What is this lawsuit about?

In October 2023, 23andMe announced that it had been the subject of a cyberattack (the "Cyber Security Incident"), which resulted in the unauthorized access to certain personal information of approximately 6.4 million United States residents.

Numerous federal lawsuits were brought on behalf of 23andMe users whose Personal Information was compromised as a result of the Cyber Security Incident which have been consolidated. Your information was or <u>may</u> have been exposed on the dark web.

> **Personal Information varied by individual, but could include:**
> names, dates of birth, sex, genetic information, predicted relationships with genetic matches, ancestry reports, ancestors' birth locations and family names, family tree information, profile information and geographic location.

In March 2025, 23andMe initiated chapter 11 proceedings in the U.S. Bankruptcy Court for the Eastern District of Missouri to, among other things, facilitate the sale of the Company's assets and to resolve liabilities and claims arising from the Cyber Security Incident. Following that chapter 11 sale process, 23andMe has changed its name to "Chrome."

## 5.  What is the lawsuit called?

The federal lawsuits were initially consolidated as *In re: 23andMe, Inc. Customer Data Security Breach Litigation*, Case No. 24-md-03098-EMC. In March 2025, 23andMe initiated bankruptcy proceedings, *In re: 23andMe Holding Co., et al.*, now referred to as *In re: Chrome Holding Co., et al.*, Case No. 25-40976-357 (E.D. Mo.) ("Bankruptcy Proceedings"). In the Bankruptcy Proceedings, the individuals who sued 23andMe are now called the U.S. Settlement Class Representatives ("Class Representatives") and 23andMe is called the "Debtor." U.S. Bankruptcy Judge Brian C. Walsh is overseeing the Bankruptcy Proceedings which include the claims in this lawsuit.

## 6.  What are the claims in the lawsuit?

The Class Representatives claim that the Debtor failed to adequately protect their Personal Information and that they suffered harm as a result. The Debtor denies any wrongdoing, and no court or other entity has made any judgment or determination as to who is right or wrong, or that any law has been violated.

> **Want to know more?**
> Review the most recent Complaint, which describes the Class Representatives' legal claims against the Debtor, and the relief sought in the consolidated federal lawsuits.

Even if you never filed your own lawsuit or proof of claim against 23andMe regarding the Cyber Security Incident, you can obtain one or more of the benefits provided by this Settlement because you are a member of the Settlement Class.

## 7. What is a class action?

In a class action, one or more people file a lawsuit to assert legal claims on behalf of themselves and other persons who have experienced the same or similar circumstances. These individuals are known as "class representatives." Together, the people included in the class action are called a "class," "class members" or "Settlement Class Members." Because this is a class action settlement, even persons who did not file their own lawsuit can obtain relief for harm that may have been caused by the Cyber Security Incident.

## 8. Why is there a Settlement in this lawsuit?

The Court did not decide in favor of the Class Representatives or Debtor. Instead, both sides agreed to a settlement. That way, they avoid the risk and cost of further litigation and allow the Settlement Class Members to receive payments and benefits from the Settlement. The Class Representatives and Class Counsel think the Settlement is in the best interests of the Settlement Class.

> **What is a class action settlement?**
>
> A class action settlement is an agreement between the parties to resolve and end the case. Settlements can provide benefits to class members.

# Important Facts About the Settlement

## 9. How do I know if I am part of this Settlement?

You are a Settlement Class Member if you are among the approximately 6.4 million individuals who (a) were customers of 23andMe at any time May 1, 2023 through October 1, 2023 (the "Cyber Security Incident Period"); (b) resided in the U.S. during the Cyber Security Incident Period; and (c) received notice from 23andMe notifying customers that their personal information was compromised in the Cyber Security Incident.

Additionally, you are a Statutory Subclass Member if you were a resident of California, Illinois, Oregon or Alaska at any time during the Cyber Security Incident Period, and received notice that your Personal Information was compromised in the Cyber Security Incident.

Further, you are eligible to receive a "Health Information Claim" payment if, as described below, you were notified that your health information was involved in the Cyber Security Incident.

## 10. Are there exceptions to being included?

Yes, the Settlement Class **does not** include:

1) 23andMe customers who have chosen to exercise their right to arbitrate by asserting or filing a pre-arbitration demand, making a demand for arbitration or by filing a formal complaint with the arbitration forum;

2) 23andMe and its officers and directors;

3) all Settlement Class Members who timely and validly request to Opt-Out from the Settlement Class;

4) the Judge assigned to evaluate the fairness of this Settlement; and

5) potential settlement class members who have provided 23andMe with an express release of claims arising out of or related to the Cyber Security Incident prior to the Effective Date of this Settlement.

## 11.  I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. You can call 1-___-___-___, send an email to _____@_____.com or explore this website for more information.

## 12.  What claims am I releasing if I stay in the Settlement Class?

Unless you exclude yourself or "opt out" from the Settlement, you will remain in the Settlement Class, which means that all of the Court's orders will apply to you and legally bind you, and you agree to the "Mutual Releases" set forth in Section III of the Settlement Agreement. In contrast, if you opt out of the Settlement, you will retain any remaining rights to pursue claims arising out of this Cyber Security Incident that are not otherwise barred or released by the bankruptcy proceedings.

## 13.  Can I opt out of the Settlement Class?

If you filed a timely individual proof of claim in the Bankruptcy Proceedings, you received notice and an opportunity to opt out of Settlement through the Bankruptcy Solicitation Materials.

If you did not file a proof of claim in the Bankruptcy Proceedings, and you do not want to be legally bound by the Settlement or receive any benefits from it, you must Opt-Out of the Settlement by **Month XX, 202X**. If you Opt-Out of the Settlement, you will retain any remaining rights to pursue claims arising out of this Cyber Security Incident that are not otherwise barred or released by the bankruptcy proceedings, and you will not receive any of the Settlement benefits.

# The Settlement Benefits

## 14.  What does the Settlement provide?

If the Settlement is approved by the Court, a Settlement Fund will be established between $30 million and $50 million.

To the extent a Settlement Fund of $50 million is established, the Fund will be used to:

(1) Provide five years of **Privacy & Medical Shield + Genetic Monitoring** for all Settlement Class Members who enroll in this benefit program (retail value estimated at $1,875 for five years per Settlement Class Member); *See* Nos. 16-17

(2) Make cash payments for valid **Extraordinary Claims** up to $10,000 per Settlement Class Member (up to a collective maximum of $8.3 million of the Net Settlement Fund); *See* Nos. 18-19

(3) Make cash payments up to $165 for **Health Information Claims** for Settlement Class Members who received notice that their health information as described below was involved in the Cyber Security Incident (up to approximately $1,250,000 of the Net Settlement Fund); *See Nos.* 20-21

> **Want to know more?**
> For more detailed information on the benefits of the Settlement, please see the Settlement Agreement and Settlement Benefits Plan.

(4) Make cash payments estimated at $100 for valid **Statutory Cash Claims** for Settlement Class Members who were residents of Alaska, California, Illinois, or Oregon at any time between May 1, 2023 and October 1, 2023 (paid on a *pro rata* basis from the Net Settlement Fund less all Extraordinary and Health Information Claims paid); *See* Nos. 22-23

(5) Pay Service Awards to Class Representatives (up to $1,000 each for a total of $33,000), as approved by the Court;

(6) Pay attorneys' fees of up to 25% of the Settlement Fund and reimburse expenses of up to $500,000, as approved by the Court; and

(7) Pay the costs of notifying Settlement Class Members of the Settlement, and for the administration of the Settlement (estimated at $918,000 but could increase or decrease subject to the number of claims filed).

If the Settlement Fund established is less than $50 million, the dollar amounts listed above may be reduced proportionally.

## 15. How does the Settlement help protect me against harm from disclosure of my Personal Information?

All Settlement Class Members are entitled to receive five years of Privacy & Medical Shield + Genetic Monitoring. This unique and comprehensive monitoring program provides substantial web and dark web monitoring, a number of features to aid Settlement Class Members in reducing their digital footprint, and other options to enhance their privacy.

## 16. Where can I learn more about Privacy & Medical Shield + Genetic Monitoring?

Privacy & Medical Shield + Genetic Monitoring provides the services below. Click here for a full description of each of these.

**Benefits Include:**

- Genetic Monitoring
- Digital Vault
- Password Manager
- Breach Scan Tool
- Dark Web Monitoring
- Real-time Authentication Alerts
- Health Insurance Plan ID Monitoring
- Medical Record Monitoring
- National Provider Identifier Monitoring
- Victim Assistance
- $1 Million Identity Theft & Fraud Insurance - No Deductible

- Virtual Private Network
- Data Broker Opt-Out
- Private Browsing
- Anti Phishing
- Stolen Data Sites Monitoring
  - High-Risk Transaction Monitoring
  - Medical Beneficiary Identifier Monitoring
  - Customer Support
  - Security Freeze with All Credit Bureaus
  - International Classification of Disease Monitoring

## 17. How can I enroll in Privacy & Medical Shield + Genetic Monitoring?

You may pre-enroll in the monitoring service by submitting a Claim Form by the Claims Deadline. Once the Settlement is approved and becomes final, you will receive an email reminding you of the enrollment code sent with the notice of Settlement and containing instructions on how to complete the enrollment process and begin this service.

You can take advantage of the monitoring services at any time during the five years the monitoring is effective by following the instructions on the Settlement Website after the Claims Deadline. If you enroll after the monitoring begins you will only receive monitoring for the remainder of the five-year service term. Information regarding how to enroll will be posted on the Settlement Website after the claims period has ended.

## 18. How will the Settlement compensate me for unreimbursed costs related to the Cyber Security Incident?

The Settlement provides for reimbursement of Extraordinary Claims related to the Cyber Security Incident. **Extraordinary Claims** are limited to:

1. Unreimbursed costs, expenses or charges incurred as a direct result of identity fraud or falsified tax returns as a result of the Cyber Security Incident;

2. Unreimbursed costs or expenses associated with the purchase of a physical security or monitoring system that was purchased in response to the Cyber Security Incident; and

> **An "Extraordinary Claim"** is limited to verifiable unreimbursed costs or expenditures up to $10,000 actually incurred on or after August 11, 2023, through the date of Claim Form submission, and are related to the Cyber Security Incident.

3.  Unreimbursed costs or expenses associated with seeking professional mental health counseling or treatment that was incurred as a result of the Cyber Security Incident.

Extraordinary Claims will be paid from the Net Settlement Fund up to a total cap of $8,300,000 (the "Extraordinary Claims Fund"). If valid Extraordinary Claims exceed the Extraordinary Claims Fund, the Extraordinary Claims payments will be reduced on a *pro rata* basis. If the valid Extraordinary Claims are less than the Extraordinary Claims Fund, the balance of the Extraordinary Claims Fund will be added to the Statutory Cash Claim Fund.

## 19.    How do I get reimbursed for an Extraordinary Claim?

To request reimbursement for an Extraordinary Claim, you must submit a Claim Form and provide documentation showing what you spent and why it was related to the Cyber Security Incident. You can submit a Claim Form with the required attestation as to accuracy of your Claim online or by U.S. mail. Online Claim Forms must be submitted by **11:59 p.m. Central Time on XXXX, XX, 202X**. Mailed Claim Forms must be postmarked by **XXXX, XX, 202X**. To fill out and submit a Claim Form online, click here.

> ### Submit a Claim Form
> Claim Forms can be submitted online or printed from the Settlement Website and mailed to:
>
> 23andMe Settlement Administrator
>
> _____
>
> _____

## 20.   How do I know if I am eligible for a Health Information Claim payment?

If you received notice from 23andMe that your Health Information was involved in the Cyber Security Incident, you are eligible to receive a Health Information Claim payment. Your Health Information was accessed if the notice you received from 23andMe advises that your: (i) uninterpreted raw genotype data, (ii) certain health reports derived from the processing of your genetic information, including health-predisposition reports, wellness reports and carrier status reports, or (iii) your self-reported health condition information was accessed.

## 21.   How will the Settlement compensate me for a Health Information Claim?

If you received notice from 23andMe that your Health Information was compromised in the Cyber Security Incident, you are eligible to receive a cash payment of up to $165.00.

Health Information Claims will be paid from the Net Settlement Fund up to a total cap of $1,250,000. If valid Health Information Claims are less than the Health Information Claims Fund, the balance of the Health Information Claims Fund will be added to the Statutory Cash Claim Fund.

Eligible Health Information Settlement Class Members should provide their preferred payment method on a Claim Form to receive a payment for a Health Information Claim. **Health Information Claimants must file Claim Forms to obtain any *other* benefits for which they are eligible** either online by **11:59 p.m. Central Time on XXXXX** or by U.S. mail postmarked by **XXXXX, XX, 202X**.

## 22.   How do I know if I am eligible for a Statutory Cash Claim payment?

You are eligible to make a Statutory Cash Claim if you were a resident of Alaska, California, Illinois, or Oregon at any time during the Cyber Security Incident Period, and received notice from 23andMe that your Personal Information was compromised in the Cyber Security Incident.

## 23.   How do I get compensated for a Statutory Cash Claim?

Statutory Cash Claim payments are estimated to be $100.00 but may be more or less depending on the number of valid Claims filed.

You must submit a Claim Form, confirming and attesting to your residential address in Alaska, California, Illinois, or Oregon at any time between May 1, 2023 and October 1, 2023 in order to receive a Statutory Cash Claim payment from the Settlement. You can submit a Claim Form online by **11:59 p.m. Central Time on XXXX, XX, 202X** or by U.S. mail postmarked by **XXXX, XX, 202X**.

---

**Submit a Claim Form**

Claim Forms can be submitted online or printed from the Settlement Website and mailed to the address on the form.

23andMe Settlement Administrator

_____

_____

---

## 24.   Can I delete my 23andMe information?

Pursuant to paragraph 20 of the *Order (I) Approving (A) the Debtors' Entry into the Sale Transaction Documents, (B) the Sale to the Purchaser of the Acquired Assets Free and Clear of all Liens, Claims, Interests, and Encumbrances, and (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (II) Authorizing the Debtors to Consummate Transactions in Connection Therewith; and (III) Granting Related Relief* [Docket No. 910], 23andMe customers retain the ability to "delete their account and all their data in perpetuity." For more information, please visit www.23andMeDataSettlement.com.

## 25.   When will I get my monitoring or payment?

The Court will hold a hearing on XXXX, XX, 202X, to consider:

(1) whether to approve the Settlement;

-11-

(2) any objections;

(3) the requests for awards to the Class Representatives (up to $1,000 each for a total of $33,000); and

(4) the request for an award of attorneys' fees (up to 25% of the Settlement Fund) and expenses (up to $500,000) to Class Counsel for their work in this Litigation.

> **Please be patient.**
> Settlement payments will be distributed as soon as possible once the Court grants Final Approval of the Settlement and after any appeals are resolved in favor of the Settlement.

If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement Class Members will be informed of the progress of the Settlement here.

# Excluding Yourself from the Settlement

## 26.   Why would I Opt-Out of the Settlement?

If you do not want to receive any benefits from the Settlement, and you want to keep your right, if any, to separately to pursue claims arising out of this Cyber Security Incident that are not otherwise barred or released by the bankruptcy proceedings, you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class.

## 27.   How do I Opt-Out of the Settlement?

If you timely filed an individual proof of claim in the Bankruptcy Proceedings, you received notice and an opportunity to opt out of Settlement through the Bankruptcy Solicitation Materials.

If you did not file a proof of claim in the Bankruptcy Proceedings, you may exclude yourself from the Settlement by submitting a completed and signed Opt-Out request. Opt-Out Forms are available online and must be submitted by U.S. mail to the address below. Your Opt-Out Form must be individually signed using a wet-ink signature.

If you do not use the Opt-Out Form, your written Opt-Out request must:

(1) Include the case name and number of the Litigation: *In re: 23andMe Holding Co., et al.,* Case No. 25-40976-357;

(2) Include the name, current mailing address and email address associated with the person seeking exclusion from the Settlement;

(3) be individually signed by the person seeking exclusion using a wet-ink signature;

(4) include a statement that the person seeking exclusion had a 23andMe user account and was a U.S. resident at any time between May 1, 2023 and October 1, 2023; and

(5) clearly indicate an intent to be excluded from the Settlement.

Opt-Out Forms must be submitted individually by the Class Member seeking to exclude themselves from the Settlement. You may only exclude yourself—not any other person, unless

that person is under your legal guardianship (such as a minor child). Opt-Out requests seeking exclusion on behalf of more than one individual may be found invalid by the Settlement Administrator at its sole discretion.

Your Opt-Out must be postmarked **no later than XXXXX, 202X**, to:

23andMe Settlement Administrator
Attn: Exclusions
_____

_____

## 28.   What happens if I Opt-Out of the Settlement?

If you ask to be excluded ("Opt-Out"), you are stating to the Court that you do not want to be part of the Settlement. You will not be eligible to receive any Settlement benefits, and you cannot object to the Settlement. You will retain any remaining rights to pursue claims arising out of this Cyber Security Incident that are not otherwise barred or released by the Bankruptcy Proceedings. In particular, even if you opt out, you will be barred from pursuing any and all claims you may have against the Debtor entities, including the Debtor entities formerly known as 23andMe, Inc. and 23andMe Holding Co. (which, following the chapter 11 sales process, are now known as ChromeCo., Inc. and Chrome Holding Co.).

## 29.   If I Opt-Out, can I get any benefits from this Settlement?

No. If you Opt-Out, you will not receive any of the Settlement benefits outlined in the Settlement Benefits Plan.

# Objecting to the Settlement

## 30.   What does it mean to object to the Settlement?

If you are a Settlement Class Member, you may object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the Settlement. The Court will consider your views. If the Court denies approval, no Settlement payments or benefits will be provided to anyone, and the lawsuit will continue. If that is what you want to happen, you should object.

## 31.   How do I tell the Court that I don't like the Settlement?

To object to the Settlement, you must submit a letter or other document to the Court that includes:

(1) the case name and number of the Litigation: *In re: 23andMe Holding Co., et al.*, Case No.

25-40976-357;

(2) your full name, address, telephone number, and email address (if any);

(3) information which verifies you are a Settlement Class Member (e.g., a copy of the Class Notice, the unique Claim ID provided on the Email Notice you received about this Settlement, or a copy of the original notice of the Cyber Security Incident emailed or otherwise addressed to you);

(4) a statement of all of the grounds for your objection, accompanied by any legal support for your objection;

(5) a statement of whether the objection applies only to you, to a specific subset of the class, or to the entire class;

(6) a statement of whether you intend to personally appear or speak at the Final Approval Hearing;

(7) the identity of all counsel representing you and whether they will appear at the Final Approval Hearing;

(8) a statement of whether you have sold or otherwise transferred your right of recovery to this Settlement to another person or entity, and, if so, the identity of the person or entity; and

(9) your personal signature or your duly authorized representative's signature.

Your objection must be submitted to the Court by: (a) mailing it to the address below; or (b) delivering it in person at the United States Bankruptcy Court for the Eastern District of Missouri located at 111 South 10th St., 4th Floor, St. Louis, Missouri 63102. **Your objection must be filed, received by the Clerk or postmarked on or before 11:59 p.m. (Central Time) on XXXXX, 202X.**

---

Clerk's Office
United States Bankruptcy Court for the Eastern District of Missouri
111 South 10th St., 4th Floor
St. Louis, MO 63102

---

## 32. May I or my attorney speak at the Final Approval Hearing about my objection?

Yes, you or your attorney may speak at the Final Approval Hearing about your objection. To do so, you must include a statement in your objection indicating that you or your attorney intend to appear at the Final Approval Hearing. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

# The Lawyers Representing You

## 33.   Do I have a lawyer in this case?

The Court has appointed lawyers, called "Class Counsel" to represent the Settlement Class in this case. Class Counsel are Gayle M. Blatt of Casey Gerry Francavilla Blatt LLP, Norman E. Siegel of Stueve Siegel Hanson LLP, and Cari Campen Laufenberg of Keller Rohrback L.L.P:

| Gayle M. Blatt | Norman E. Siegel | Cari Campen Laufenberg |
|---|---|---|
| CASEY GERRY FRANCAVILLA BLATT LLP | STUEVE SIEGEL HANSON LLP | KELLER ROHRBACK L.L.P. |
| 110 Laurel Street | 460 Nichols Road, Suite 200 | 1201 Third Avenue |
| San Diego, CA 92101 | Kansas City, MO 64112 | Suite 3400 |
| | | Seattle, WA 98101 |

You will not be charged for their services.

## 34.   Should I get my own lawyer?

You do not need to hire your own lawyer to participate in the Settlement. If you object to the Settlement or otherwise want to be represented by your own lawyer, you may hire one at your own expense.

## 35.   How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to 25% of the Settlement Fund for attorneys' fees and reimbursement of up to $500,000 in litigation expenses incurred in this case. The Court will decide how much Class Counsel will be paid and the amount of their reimbursement.

> Lawyers' fees and expenses will only be awarded if approved by the Court as fair and reasonable in amount.

You have the right to object to the lawyers' fees even if you think the Settlement terms are fair. The lawyers' motion for attorneys' fees and costs will be filed with the Court and posted on the Settlement Website on or before [notice date].

# If You Do Nothing

## 36.   What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will not receive any cash reimbursement or statutory benefit to which you might be entitled under the Settlement. But you will retain the opportunity to participate in five years of Privacy & Medical Shield + Genetic Monitoring services as set forth below.

If you qualify for a Health Information Claim payment, you should provide your preferred payment method to ensure you receive your payment.

-15-

## 37.    Can I enroll in Privacy & Medical Shield + Genetic Monitoring later?

Yes, even if you do not make a claim, you may still enroll in Privacy & Medical Shield + Genetic Monitoring during the five-year term of the service by visiting www.23andMeDataSettlement.com for further enrollment instructions.

If you wait to enroll until sometime during the five-year term of service, you will only get monitoring for the remainder of the service term. Therefore, **you are encouraged to pre-enroll by submitting a Claim Form by the Claims Deadline** to be notified when it is time to activate the service so that you can take full advantage of the benefit.

If you do not take action to enroll in the monitoring program within the five-year monitoring term of service, you will give up your right to participate in that benefit.

# The Court's Final Approval Hearing

## 38.    When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing to decide whether to approve the Settlement. The hearing will be held at:

**Where:** United States Bankruptcy Court for the Eastern District of Missouri, 111 South 10th St., Courtroom 5 North, St. Louis, MO 63102

**When:** [time] on [date]

The date and time of the Final Approval Hearing may change without further notice to the class. You should check the Settlement Website frequently to confirm that the date has not changed.

> Because the Settlement of a class action decides the rights of all members of the proposed classes, the Court must give final approval to the Settlement before it can take effect.

**Case:** *In re 23andMe Holding Co., et al.*, Case No. 25-40976-357

**Judge:** The Honorable Brian C. Walsh

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court may also decide how much Class Counsel and the Class Representatives are entitled to under the Settlement. If there are objections, the Court will consider them. The Court may listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

## 39.    Can the date, time or location of the Final Approval Hearing change?

Yes, the Court may reschedule the Final Approval Hearing or change any of the deadlines described in this Notice. The date of the Final Approval Hearing may change without further notice to Settlement Class Members.

Check the Settlement Website for any updates.

You can also check whether the hearing date or any deadlines have changed by accessing the

-16-

case docket via the Court's Public Access to Court Electronic Records (PACER) system at https://www.moeb.uscourts.gov/.

## 40.   Do I have to come to the hearing?

No. Class Counsel will answer questions the Court may have about the Settlement. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Final Approval Hearing to talk about it. If you file your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary for the Court to consider your objection if it was filed on time.

# Key Resources

## 41.   How do I get more information about the Settlement?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement and the Settlement Benefits Plan. The Settlement Agreement and other related documents can be found here.

If you have additional questions, you may:

- contact the Settlement Administrator by email, phone or mail;

- contact Class Counsel (information below); or

- access the Court Electronic Records (PACER) system online at https://www.moeb.uscourts.gov/ or by visiting the Clerk's office of the Court (address below).

| Resource | Contact Information |
|---|---|
| **Settlement Website** | www.23andMeDataSettlement.com |
| **Email** | _____ |
| **Phone** | 1-___-___-___ |
| **Settlement Administrator** | _____<br><br>_____<br><br>_____ |
| **Your Lawyers** | Gayle M. Blatt<br>CASEY GERRY FRANCAVILLA BLATT LLP<br>110 Laurel Street<br>San Diego, CA 92101<br><br>Cari Campen Laufenberg<br>KELLER ROHRBACK L.L.P.<br>1201 Third Avenue, Suite 3400<br>Seattle, Washington 98101<br><br>Norman E. Siegel<br>STUEVE SIEGEL HANSON LLP<br>460 Nichols Road, Suite 200<br>Kansas City, MO 64112 |
| **Court** | Office of the Clerk<br>United States Bankruptcy Court for the Eastern District of Missouri<br>111 South 10th St., 4th Floor<br>St. Louis, MO 63102<br>HOURS: 8:30 a.m. to 4:30 p.m., Monday through Friday, except court-observed holidays.<br><br>More information about the Court Clerk's office hours and other locations can be found at https://www.moeb.uscourts.gov/court-info/court-locations.<br><br>**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.** |

**Exhibit C**

Claim Forms

# Exhibit C.1

Claim Form - Health Information Claimants

*Barcode*

Must be postmarked or submitted online NO LATER THAN XXXXXXX, 202X.

23andMe Claims Administrator

_____
_____

www.23andMeDataSettlement.com

## 23andMe Customer Data Security Breach Claim Form

### SETTLEMENT BENEFITS – WHAT YOU MAY GET

If you (a) were a customer of 23andMe (now known as "Chrome")[1] at any time during May 1, 2023 through October 1, 2023 (the "Cyber Security Incident Period"); (b) resided in the U.S. during the Cyber Security Incident Period; and (c) received a notice from 23andMe notifying you that your personal information was compromised in the Cyber Security Incident, you may submit a claim for benefits from this Settlement.

You may submit this Claim Form by (1) filling out the form and submitting it online at www.23andMeDataSettlement.com or (2) completing the form and mailing it to the address above. If you are making a claim for cash benefits, and you file your claim online, you will receive an electronic payment unless you designate otherwise. If you mail this Claim Form and make a claim for cash benefits, you will receive your payment via check.

*The easiest way to submit a claim and request electronic payment is to fill out this Claim Form and submit it online at www.23andMeDataSettlement.com.*

**Monitoring Service.** Use this Claim Form to pre-enroll in up to five years of Privacy & Medical Shield + Genetic Monitoring. Once the Settlement is approved and becomes final, you will receive an email reminding you of your enrollment code and containing instructions on how to complete the enrollment process and begin this service when it becomes available. For a comprehensive list of the benefits this service provides, please see the Class Notice and/or FAQ #14 at www.23andMeDataSettlement.com.

**Cash Benefits.** Use this Claim Form to request a payment for Extraordinary Claims and/or Statutory Cash Claims.

1. **Health Information Claims:** You are eligible to receive a Health Information Claim Cash Payment because your Health Information was involved in the Cyber Security Incident. To receive your Health Information Claim Cash Payment please provide the information listed below. You must submit a Claim Form for any other cash benefits for which you are eligible.

---

[1]   On July 27, 2025, the Bankruptcy Court in *In re Chrome Holding Co. (f/k/a 23andMe Holding Co.), et al.*, Case No. 25-40976 (Bankr. E.D. Mo.) approved the sale of 23andMe Holding Co. and 23andMe, Inc.'s assets to TTAM Research Institute, which sale was completed on July 14, 2025.  After the completion of the sale, 23andMe Holding Co. and 23andMe, Inc. formally changed their legal names to Chrome Holding Co. and ChromeCo, Inc., respectively.  For ease of reference, Chrome Holding Co. and ChromeCo, Inc. are collectively referenced herein as "23andMe".

2. **Extraordinary Claims:** If you spent money related to the Cyber Security Incident on or after May 1, 2023, through [the date of the preliminary approval order], for which you have not been reimbursed, you can receive up to $10,000 for documented approved costs. These costs are limited to: (1) unreimbursed costs, expenses, losses or charges incurred as a direct result of identity fraud or falsified tax returns that a Settlement Class Member establishes were incurred in response to the Cyber Security Incident; (2) unreimbursed costs or expenses associated with the purchase of a physical security or monitoring system that a Settlement Class Member establishes were purchased in response to the Cyber Security Incident; and/or (3) unreimbursed costs or expenses associated with seeking professional mental health counseling or treatment that you incurred as a result of the Cyber Security Incident.

3. **Statutory Cash Claims:** If you are a Settlement Class Member <u>and</u> you were a resident of Alaska, California, Illinois, or Oregon at any time during the Cyber Security Incident Period, you may submit a Statutory Cash Claim.

**If you qualify, you may file a claim to receive any or all of the benefits set forth above.**

**Claims for Cash benefits (other than Health Information Claim Payments) must be submitted online or mailed (postmarked by XXXXXX, 202X).**
**Claims asking for enrollment in the monitoring service may be submitted (online or via mail) at any time during the five-year period the service is being offered.**

**Use the address at the top of this form for mailed claims.**

Please note: For claims that require documentation, the Settlement Administrator may contact you to request additional documents needed to process your claim.

**<u>Cash benefits for Extraordinary Claims are subject to pro rata reduction. Statutory Cash Claim benefits may decrease or increase depending on the number of valid Statutory Cash Claims filed and the amount of claims submitted for Extraordinary Claims</u>.**

For more information and answers to FAQs, a description of the monitoring program or other Settlement benefits, please visit www.23andMeDataSettlement.com.

**Please note: Settlement benefits will be distributed only after the Settlement is approved by the Court, any appeal period has expired, and any appeals are resolved.**

## Your Information

*We will use this information to contact you and process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing info@23andMeDataSettlement.com.*

| | |
|---|---|
| **1. NAME (REQUIRED):** | First                    Mi    Last |
| **2. MAILING ADDRESS (REQUIRED):** | Street Address<br><br>Apt. No.<br><br>City                                    State          Zip |
| **3. CURRENT PHONE NUMBER (REQUIRED):** | ( _____ ) _____ - _____ |
| **4. EMAIL ADDRESS (REQUIRED):** | _____ @ _____ |
| **5. CLAIM ID (REQUIRED):** | Claim ID: _____ |
| **6. EMAIL ADDRESS ASSOCIATED WITH 23ANDME ACCOUNT (REQUIRED IF CLAIM ID IS NOT PROVIDED ABOVE)** | If you do not have or are unable to locate the Claim ID provided in the email you received regarding this Settlement, you must provide the email address associated with your 23andMe account.<br><br>_____ @ _____ |

## Cash Payment: Health Information Cash Claim

You are eligible to receive a Health Information Claim Cash Payment because your Health Information was involved in the Cyber Security Incident.

Please indicate on the Payment Selection form below how you would like to receive your payment.

## Privacy & Medical Shield + Genetic Monitoring [online claim form only]

All Settlement Class Members are entitled to receive five years of this comprehensive service as a benefit of the Settlement. **To pre-enroll in this service, check the box below to be notified when your enrollment code and service is ready for use.**

An enrollment code was provided to you in the notice of Settlement you received. Once the Settlement is approved and becomes final, you may use this enrollment code to complete your enrollment in Privacy & Medical Shield + Genetic Monitoring.

Even if you do not pre-enroll at this time by filling out this Claim Form, you can still enroll for the monitoring services at any time up to or during the five years the monitoring is effective by following the instructions on the Settlement Website. If you enroll after the five year service term begins, you will only receive monitoring for the remainder of the five year service term. Information regarding how to enroll will be posted on the Settlement Website after the claims period has ended.

☐ I want to pre-enroll for five years of Privacy & Medical Shield + Genetic Monitoring and be notified when I may complete my enrollment and begin this service.

You will receive a notification email with activation instructions at the email address you provided above after the Settlement becomes final. If you would like to receive the enrollment code and instructions at an alternative email address, please provide it here.

_____@_____

## Cash Payment: Extraordinary Claim

If you spent money related to the Cyber Security Incident on or after May 1, 2023, through [the date of the preliminary approval order], and you have not been reimbursed, you can be reimbursed up to $10,000 for documented approved costs. These are limited to: (1) unreimbursed costs, expenses, losses or charges incurred as a direct result of identity fraud or falsified tax returns that a Settlement Class Member establishes were incurred as a result of the Cyber Security Incident; (2) unreimbursed costs or expenses associated with the purchase of a physical security or monitoring system that a Settlement Class Member establishes was purchased in response to the Cyber Security Incident; and/or (3) unreimbursed costs or expenses associated with seeking professional mental health counseling or treatment that you incurred as a result of the Cyber Security Incident.

You must submit Reasonable Documentation supporting your claim. This may include credit card statements, bank statements, invoices, receipts, or other documents substantiating unreimbursed costs, expenses, losses, or charges as a direct result of the Cyber Security Incident, subject to the limitations set forth above.

Personal certifications, declarations, or affidavits do not constitute Reasonable Documentation, but may be included to provide clarification, context, or support for other submitted Reasonable Documentation.

Complete the section below to the best of your ability and include or attach documentation supporting your claim.

| Loss Type and Examples of Documents | Date (if known) | Amount (if known) | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Cyber Security Incident) |
|---|---|---|---|
| Documents showing you lost money due to identity fraud or falsified tax returns as a direct result of the Cyber Security Incident between 5/1/2023 and [date]<br><br>*Examples: Account statement with unauthorized charges highlighted; police reports; IRS documents; FTC Identity Theft Reports; letters refusing to refund fraudulent charges; invoices from accountants, lawyers, or others* | __/__/_____ | $_____.___ | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
| Documents showing you purchased a physical security or monitoring system as a direct result of the Cyber Security Incident between 5/1/2023 and [date]<br><br>*Examples: Receipts or statements for physical security or monitoring systems purchased as a result of the Cyber Security Incident* | __/__/_____ | $_____.__ | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
| Documents showing you paid mental health professionals for counseling and/or treatment to help address harm related to the Cyber Security Incident between 5/1/2023 and [date]<br><br>*Examples: Receipts, bills, and invoices from any mental health practitioner(s) you saw as a result of this Cyber Security Incident* | __/__/_____ | $_____.___ | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |

## Cash Payment: Statutory Cash Claim

If you were a resident of Alaska, California, Illinois, or Oregon at any time between May 1, 2023 through October 1, 2023 (the "Cyber Security Incident Period"), you may file a Statutory Cash Claim.

☐ I want to receive a Statutory Cash Claim payment estimated to be $100, and,

☐ I attest that I was a resident of Alaska, California, Illinois, or Oregon during the Cyber Security Incident Period.

Address during the Cyber Security Incident Period (if different than above):

_____
Street Address

_____
Apt./Suite No.

_____     ___ ____     _____
City                                          State              ZIP

# PAYMENT SELECTION:
# ONLINE CLAIM FORM ONLY

| How You Would Like to Receive Your Settlement Payment |
|---|
| Please select how you would like to receive your payment (select only one): |
| ☐  PayPal |
| ☐  Venmo |
| ☐  Zelle |
| [Upon selection, the Settlement Class Member will be required to enter the email address or phone number associated with their payment account selection] |
| ☐  Check |
| [Upon selection, the Settlement Class Member will be required to verify their mailing address] |

## Signature

I affirm under the laws of the United States that the information I have supplied in this Claim Form and any copies of documents that I am sending to support my claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete. I understand that payment amounts may be more or less than the estimated amounts stated above.

| Signature: | Dated: _____ / _____ / _____ |
|---|---|
| **Print Name:** | |

# Exhibit C.2

Claim Form - Settlement Class Members

\*Barcode\*

> **Must be postmarked or submitted online NO LATER THAN XXXXXXX, 202X.**

23andMe Claims Administrator



www.23andMeDataSettlement.com

## 23andMe Customer Data Security Breach Claim Form

### SETTLEMENT BENEFITS – WHAT YOU MAY GET

If you (a) were a customer of 23andMe[1] (now known as "Chrome") at any time during May 1, 2023 through October 1, 2023 (the "Cyber Security Incident Period"); (b) resided in the U.S. during the Cyber Security Incident Period; and (c) received a notice from 23andMe notifying you that your personal information was compromised in the Cyber Security Incident, you may submit a claim for benefits from this Settlement.

You may submit this Claim Form by (1) filling out the form and submitting it online at www.23andMeDataSettlement.com or (2) completing the form and mailing it to the address above. If you are making a claim for cash benefits, and you file your claim online, you will receive an electronic payment unless you designate otherwise. If you mail this Claim Form and make a claim for cash benefits, you will receive your payment via check.

***The easiest way to submit a claim and request electronic payment is to fill out this Claim Form and submit it online at www.23andMeDataSettlement.com.***

**Monitoring Service.** Use this Claim Form to pre-enroll in up to five years of Privacy & Medical Shield + Genetic Monitoring. Once the Settlement is approved and becomes final, you will receive an email reminding you of your enrollment code and containing instructions on how to complete the enrollment process and begin this service when it becomes available. For a comprehensive list of the benefits this service provides, please see the Class Notice and/or FAQ #14 at www.23andMeDataSettlement.com.

**Cash Benefits.** Use this Claim Form to request a payment for Extraordinary Claims and/or Statutory Cash Claims.

1. **Extraordinary Claims:** If you spent money related to the Cyber Security Incident on or after May 1, 2023, through [the date of the preliminary approval order], for which you have not been reimbursed, you can receive up to $10,000 for documented approved costs. These costs are limited to: (1) unreimbursed costs, expenses, losses or charges incurred as a direct result of identity fraud or falsified tax returns that a Settlement Class Member establishes were incurred in response to the Cyber Security Incident; (2) unreimbursed

---

[1] On July 27, 2025, the Bankruptcy Court in *In re Chrome Holding Co. (f/k/a 23andMe Holding Co.), et al.*, Case No. 25-40976 (Bankr. E.D. Mo.) approved the sale of 23andMe Holding Co. and 23andMe, Inc.'s assets to TTAM Research Institute, which sale was completed on July 14, 2025.  After the completion of the sale, 23andMe Holding Co. and 23andMe, Inc. formally changed their legal names to Chrome Holding Co. and ChromeCo, Inc., respectively.  For ease of reference, Chrome Holding Co. and ChromeCo, Inc. are referenced herein as "23andMe".

costs or expenses associated with the purchase of a physical security or monitoring system that a Settlement Class Member establishes were purchased in response to the Cyber Security Incident; and/or (3) unreimbursed costs or expenses associated with seeking professional mental health counseling or treatment that you incurred as a result of the Cyber Security Incident.

2. **Statutory Cash Claims:** If you are a Settlement Class Member <u>and</u> you were a resident of Alaska, California, Illinois, or Oregon at any time during the Cyber Security Incident Period, you may submit a Statutory Cash Claim.

**If you qualify, you may file a claim to receive any or all of the benefits set forth above.**

**Claims for Cash benefits must be submitted online or mailed (postmarked by <mark>XXXXXX, 202X</mark>). Claims asking for enrollment in the monitoring service may be submitted (online or via mail) at any time during the five-year period the service is being offered.**

**Use the address at the top of this form for mailed claims.**

Please note: For claims that require documentation, the Settlement Administrator may contact you to request additional documents needed to process your claim.

<u>**Cash benefits for Extraordinary Claims are subject to pro rata reduction. Statutory Cash Claim benefits may decrease or increase depending on the number of valid Statutory Cash Claims filed and the amount of claims submitted for Extraordinary Claims**</u>.

For more information and answers to FAQs, a description of the monitoring program or other Settlement benefits, please visit www.23andMeDataSettlement.com.

**Please note: Settlement benefits will be distributed only after the Settlement is approved by the Court, any appeal period has expired, and any appeals are resolved.**

## Your Information

*We will use this information to contact you and process your claim. It will not be used for any other purpose. If any of the following information changes, you must promptly notify us by emailing \_\_\_\_\_@_____.com.*

| | |
|---|---|
| **1. NAME (REQUIRED):** | First        Mi  Last |
| **2. MAILING ADDRESS (REQUIRED):** | Street Address<br><br>Apt. No.<br><br>City        State   Zip |
| **3. CURRENT PHONE NUMBER (REQUIRED):** | ( _____ ) _____ - _____ |
| **4. EMAIL ADDRESS (REQUIRED):** | _____@_____ |
| **5. CLAIM ID(REQUIRED):** | Claim ID: _____ |
| **6. EMAIL ADDRESS ASSOCIATED WITH 23ANDME ACCOUNT (REQUIRED IF CLAIM ID IS NOT PROVIDED ABOVE)** | If you do not have or are unable to locate the Claim ID provided in the email you received regarding this Settlement, you must provide the email address associated with your 23andMe account.<br><br>_____@_____ |

## Privacy & Medical Shield + Genetic Monitoring [online claim form only]

All Settlement Class Members are entitled to receive five years of this comprehensive service as a benefit of the Settlement. **To pre-enroll in this service, check the box below to be notified when your enrollment code and service is ready for use.**

An enrollment code was provided to you in the notice of Settlement you received. Once the Settlement is approved and becomes final, you may use this enrollment code to complete your enrollment in Privacy & Medical Shield + Genetic Monitoring.

Even if you do not pre-enroll at this time by filling out this Claim Form, you can still enroll for the monitoring services at any time up to or during the five years the monitoring is effective by following the instructions on the Settlement Website. If you enroll after the five year service term begins, you will only receive monitoring for the remainder of the five year service term. Information regarding how to enroll will be posted on the Settlement Website after the claims period has ended.

☐ I want to pre-enroll for five years of Privacy & Medical Shield + Genetic Monitoring and be notified when I may complete my enrollment and begin this service.

You will receive a notification email with activation instructions at the email address you provided above after the Settlement becomes final. If you would like to receive the enrollment code and instructions at an alternative email address, please provide it here.

_____@_____

## Cash Payment: Extraordinary Claim

If you spent money related to the Cyber Security Incident on or after May 1, 2023, through [the date of the preliminary approval order], and you have not been reimbursed, you can be reimbursed up to $10,000 for documented approved costs. These are limited to: (1) unreimbursed costs, expenses, losses or charges incurred as a direct result of identity fraud or falsified tax returns that a Settlement Class Member establishes were incurred as a result of the Cyber Security Incident; (2) unreimbursed costs or expenses associated with the purchase of a physical security or monitoring system that a Settlement Class Member establishes was purchased in response to the Cyber Security Incident; and/or (3) unreimbursed costs or expenses associated with seeking professional mental health counseling or treatment that you incurred as a result of the Cyber Security Incident.

You must submit Reasonable Documentation supporting your claim. This may include credit card statements, bank statements, invoices, receipts, or other documents substantiating unreimbursed costs, expenses, losses, or charges as a direct result of the Cyber Security Incident, subject to the limitations set forth above.

Personal certifications, declarations, or affidavits do not constitute Reasonable Documentation, but may be included to provide clarification, context, or support for other submitted Reasonable Documentation.

Complete the section below to the best of your ability and include or attach documentation supporting your claim.

| Loss Type and Examples of Documents | Date (if known) | Amount (if known) | Description of Loss or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Cyber Security Incident) |
|---|---|---|---|
| Documents showing you lost money due to identity fraud or falsified tax returns as a direct result of the Cyber Security Incident between 5/1/2023 and [date]<br><br>*Examples: Account statement with unauthorized charges highlighted; police reports; IRS documents; FTC Identity Theft Reports; letters refusing to refund fraudulent charges; invoices from accountants, lawyers, or others* | ___/___/_____ | $_____.____ | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
| Documents showing you purchased a physical security or monitoring system as a direct result of the Cyber Security Incident between 5/1/2023 and [date]<br><br>*Examples: Receipts or statements for physical security or monitoring systems purchased as a result of the Cyber Security Incident* | ___/___/_____ | $_____.__ | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |
| Documents showing you paid mental health professionals for counseling and/or treatment to help address harm related to the Cyber Security Incident between 5/1/2023 and [date]<br><br>*Examples: Receipts, bills, and invoices from any mental health practitioner(s) you saw as a result of this Cyber Security Incident* | ___/___/_____ | $_____.____ | _____<br>_____<br>_____<br>_____<br>_____<br>_____ |

## Cash Payment: Statutory Cash Claim

If you were a resident of Alaska, California, Illinois, or Oregon at any time between May 1, 2023 through October 1, 2023 (the "Cyber Security Incident Period"), you may file a Statutory Cash Claim.

☐ I want to receive a Statutory Cash Claim payment estimated to be $100, and,

☐ I attest that I was a resident of Alaska, California, Illinois, or Oregon during the Cyber Security Incident Period.

Address during the Cyber Security Incident Period (if different than above):

_____
Street Address

_____
Apt./Suite No.

_____     ___ ___     _____
City                                      State              ZIP

# PAYMENT SELECTION:
# ONLINE CLAIM FORM ONLY

## How You Would Like to Receive Your Settlement Payment

Please select how you would like to receive your payment (select only one):

☐ PayPal

☐ Venmo

☐ Zelle

[Upon selection, the Settlement Class Member will be required to enter the email address or phone number associated with their payment account selection]

☐ Check

[Upon selection, the Settlement Class Member will be required to verify their mailing address]

## Signature

I affirm under the laws of the United States that the information I have supplied in this Claim Form and any copies of documents that I am sending to support my claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete. I understand that payment amounts may be more or less than the estimated amounts stated above.

| Signature: | Dated: |
|---|---|
| | _____ / _____ / _____ |
| **Print Name:** | |

## Exhibit D

Settlement Benefits Plan

<u>U.S. Data Breach Class Benefits Plan</u>

1.      <u>Capitalized Terms</u>: Unless defined in this U.S. Data Breach Class Benefits Plan ("<u>Benefits Plan</u>"), capitalized terms shall be defined as set forth in the U.S. Data Breach Class Settlement Agreement ("<u>Settlement Agreement</u>) between the Debtors and the Settlement Class Representatives in *In re Chrome Holding Co., et al., Case No. 25-40976-357* (BCW),[1] dated August 4, 2025, involving claims asserted in the ***In re: 23andMe, Inc. Customer Data Security Breach Litigation***, Case No. 24-md-03098-EMC, originally filed in the United States District Court for the Northern District of California.

2.      <u>Settlement Class</u>: The U.S. Data Breach Settlement Class is defined as "all natural persons who were residents of the United States at any time between May 1, 2023 and October 1, 2023 and who received a notice from 23andMe that their Personal Information was compromised in the Cyber Security Incident. The Statutory Subclass is defined as Settlement Class Members who were residents of Alaska, Oregon, California or Illinois at any time between May 1, 2023 and October 1, 2023. The U.S. Data Breach Settlement Class and Statutory Subclass specifically exclude: (i) 23andMe and its officers and directors; (ii) all U.S. Eligible Class Members who timely and validly request to opt-out from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; (iv) potential class members who have provided 23andMe with an express release of claims arising out of or related to the Cyber Security Incident prior to August 4, 2025; and (v) any holder of a U.S. Data Breach Arbitration Claim.

3.      <u>Net Settlement Fund</u>: The "Net Settlement Fund" is the approved amount of the Cyber Class Proof of Claim ("<u>Cyber Class POC</u>") paid into the Cyber Class Action Trust (which shall not be less than $30,000,000 and not greater than $50,000,000) less (1) Notice and Administrative Costs; (2) Attorneys' Fees and Expenses awarded by the Court; (3) Service Awards to Settlement Class Representatives awarded by the Court; and (4) costs associated with procurement of Privacy & Medical Shield + Genetic Monitoring ("<u>Privacy Shield Monitoring</u>"). The Settlement Administrator shall use the Net Settlement Fund to pay valid claims for Extraordinary Claims, Health Information Claims, and Statutory Cash Claims as set forth below. The Settlement Administrator, subject to such supervision and direction

---

[1]      On July 27, 2025, the Bankruptcy Court in In re Chrome Holding Co. (f/k/a 23andMe Holding Co.), et al., Case No. 25-40976 (Bankr. E.D. Mo.) approved the sale of 23andMe Holding Co. and 23andMe, Inc.'s assets to TTAM Research Institute, which sale was completed on July 14, 2025.  After the completion of the sale, 23andMe Holding Co. and 23andMe, Inc. formally changed their legal names to Chrome Holding Co. and ChromeCo, Inc., respectively.  For ease of reference, Chrome Holding Co. and ChromeCo, Inc. are collectively referenced herein as "23andMe".

of the Court and Cyber Class Action Counsel ("Class Counsel") as may be necessary or as circumstances may require, shall administer and oversee distribution of the Net Settlement Fund pursuant to the process set forth in this Benefits Plan. Subject to Court approval, the deductions from the Net Settlement Fund are anticipated as follows:

a. Notice and Administrative Costs are anticipated to be approximately $918,000;

b. Attorneys' Fees and Expenses are anticipated to be approximately 25% of the approved Cyber Class POC plus actual out-of-pocket costs and expenses anticipated to be approximately $500,000;

c. Service Awards are anticipated to be approximately $33,000;

d. Privacy Shield Monitoring is anticipated to be approximately $3,110,000.

4.     Administration of Claims: The Notice and Claims Administrator ("Settlement Administrator") shall administer and calculate the claims submitted by Cyber Class Action Members in accordance with the Benefits Plan. Any determination by the Settlement Administrator regarding the validity or invalidity of any such claims shall be binding, though the Settlement Administrator may confer with Class Counsel as issues may arise.

5.     Extraordinary Claims: An "Extraordinary Claim" may be submitted by any Cyber Class Action Member and such claims are limited to verifiable unreimbursed costs or expenditures up to $10,000 that a Cyber Class Action Member actually incurred on or after May 1, 2023, through the date on which the Court enters the Preliminary Approval Order, and that the Cyber Class Action Member establishes are related to the Cyber Security Incident. Extraordinary Claims shall be paid pursuant to the schedule as set forth in Paragraph 9. Extraordinary Claims shall be limited to:

a. Unreimbursed costs, expenses, losses or charges incurred as a direct result of identity fraud or falsified tax returns that the Cyber Class Action Member establishes were the result of the Security Incident.

b. Unreimbursed costs or expenses associated with the purchase of a physical security or monitoring system that a Cyber Class Action Member establishes was purchased in response to the Security Incident.

2

c. Unreimbursed costs or expenses associated with seeking professional mental health counseling or treatment that a Cyber Class Action Member establishes was incurred as a result of the Security Incident.

6. <u>Health Information Claims</u>: A "Health Information Claim" will be paid to Cyber Class Action Members who received notice from 23andMe that their health information including (i) uninterpreted raw genotype data, (ii) certain health reports derived from the processing of their genetic information, including health-predisposition reports, wellness reports and carrier status reports, or (iii) self-reported health condition information was involved in the Cyber Security Incident. Health Information Claims will each be paid in the amount of $165 from the Health Information Fund. If Cyber Class Action Members who are eligible for this benefit do not submit Claim Forms or otherwise provide preferred electronic payment or address information, they will be sent cash payments by check at their last known mailing addresses or to any updated address located with commercially reasonable effort. These Cyber Class Action Members are also eligible to claim other Settlement benefits, select their preferred form of payment, and update their mailing addresses by submitting Claim Forms.

7. Health Information Claims shall be paid pursuant to the schedule set forth in Paragraph 9.

8. <u>Statutory Cash Claims</u>: In addition to Extraordinary Claims, and/or Health Information Claims, a "Statutory Cash Claim" may be claimed by any Cyber Class Action Member who was a resident of Alaska, California, Illinois, or Oregon at any time between May 1, 2023 and October 1, 2023. Statutory Cash Claims shall be paid pursuant to the schedule set forth in Paragraph 9.

9. <u>Payment Schedule</u>: All Extraordinary Claims, Health Information Claims, and Statutory Cash Claims shall be paid pursuant to the following schedule:

a. Valid Extraordinary Claims shall be paid from the Net Settlement Fund up to a total cap of $8,300,000 (the "Extraordinary Claims Fund"). If the total amount of valid Extraordinary Claims exceeds the Extraordinary Claims Fund, payment of the Extraordinary Claims will be reduced on a pro-rata basis. If the total amount of valid Extraordinary Claims is less than the Extraordinary Claims Fund, the balance of the Extraordinary Claims Fund will be added to the Statutory Cash Claim Fund.

3

b. Valid Health Information Claims shall be paid from the Net Settlement Fund up to a total cap which shall have sufficient funds available to pay each valid Health Information Claim but no greater than $1,250,000 (the "Health Information Claims Fund"). If the amount of valid Health Information Claims is less than the Health Information Claims Fund, the balance of the Health Information Claims Fund will be added to the Statutory Cash Claim Fund.

c. Valid Statutory Cash Claims shall be paid on a pro-rata basis from the "Statutory Cash Claim Fund," which shall be the Net Settlement Fund less valid claims paid from the Extraordinary Claims Fund and the Health Information Claims Fund.

10.    Cyber Class POC Reduction Contingency: The dollar figures set forth in Paragraphs 6, 9(a), and 9(b) reflect an approved Cyber Class POC of $50,000,000. To the extent the Cyber Class POC is approved in an amount less than $50,000,000, the dollar figures in these paragraphs shall be reduced by the percentage reduction to the Cyber Class POC.

11.    Remaining Funds: Any remaining funds resulting from the failure of Cyber Class Action Members to timely negotiate a settlement check or to timely provide required tax information such that a settlement check could issue, shall be used to extend the active period for Privacy Shield Monitoring. No funds may revert to 23andMe.

12.    "Claims Deadline" is the last day for Claim Forms to be uploaded online, or postmarked and mailed to the Claims Administrator.

13.    "Claim Form" means the document(s) made available pursuant to the provisions of the Benefits Plan in order to obtain certain benefits under this Settlement Agreement.

14.    Claims Period: The "Claims Period" is the period starting from the date of the Plan Confirmation Hearing and ending 90 days following the Plan Confirmation Hearing. Cyber Class Action Members must submit Claims for Extraordinary Claims and Statutory Cash Claims during the Claims Period.

15.    Claims Process: Cyber Class Action Members may submit Claim Forms to the Settlement Administrator electronically on the Settlement Website or may print a Claim Form for mailing from the Settlement Website. Claim Forms must

4

be submitted individually by the Cyber Class Action Members claiming Settlement benefits and may not be submitted by third parties, except as authorized by the Settlement Administrator at its sole discretion. Additionally, Settlement benefits, including payments of Cash claims, may only be conferred on a Cyber Class Action Member, except as authorized by the Settlement Administrator at its sole discretion. The Settlement Administrator shall verify that each individual who submits a Claim Form is a Cyber Class Action Member and shall be responsible for validating all claims.

    a.  <u>Extraordinary Claims</u>:

        i.  Cyber Class Action Members with Extraordinary Claims must attest to the accuracy of their Claim Forms and submit Reasonable Documentation supporting their Extraordinary Claims. "Reasonable Documentation" means documentation supporting a claim, including, but not limited to: credit card statements, bank statements, invoices, receipts, or other documents substantiating unreimbursed costs, expenses, losses or charges as a direct result of the Security Incident subject to the limitations set forth in (4)(a)-(c). Personal certifications, declarations, or affidavits from the claimant do not constitute Reasonable Documentation for Extraordinary Claims under 4(a)-(c), but may be included to provide clarification, context or support for other submitted Reasonable Documentation.

        ii.  In determining whether a claim under (4)(a)-(c) is valid, the Settlement Administrator shall consider: (1) the timing of the loss, including whether the loss occurred on or after May 1, 2023, through the date on which the Court enters the Preliminary Approval Order; (2) whether the loss involved the misuse of the type of Personal Information compromised in the Security Incident; (3) whether the Personal Information compromised in the Security Incident is related to the Cyber Class Action Member and is of the type that was misused; (4) the Cyber Class Action Member's explanation as to how the loss is related to the Security Incident; and (5) any other factor that the Settlement Administrator considers to be relevant.

        iii.  The Settlement Administrator shall have the sole discretion and authority to determine the validity of Extraordinary Claims but may confer with Class Counsel.

5

b. <u>Health Information Claims</u>:

i. Cyber Class Action Members with Health Information Claims who do not submit their preferred method of electronic payment will be sent Health Information Claim payments by check at their last known mailing addresses or any updated address reasonably located even if they do not submit a Claim Form. These Cyber Class Action Members may also submit a Claim Form to claim other Settlement benefits, select their preferred form of payment, and update their mailing addresses.

ii. The Settlement Administrator shall have the sole discretion and authority to determine the validity of Health Information Claims but may confer with Class Counsel.

c. <u>Statutory Cash Claims</u>:

i. Cyber Class Action Members with Statutory Cash Claims must submit a Claim Form attesting they were a resident of Alaska, California, Illinois, or Oregon at any time between May 1, 2023 and October 1, 2023, and include a residential address where they resided on the applicable date(s) (if other than the address provided on their Claim Form as their current residential address).

ii. The Settlement Administrator shall have the sole discretion and authority to determine the validity of Statutory Cash Claims but may confer with Class Counsel.

d. <u>Privacy & Medical Shield + Genetic Monitoring</u>:

i. Cyber Class Action Members will be provided with an enrollment code with their settlement notice to pre-enroll in Privacy Shield Monitoring. To pre-enroll in the service, Cyber Class Action Members are encouraged to submit a Claim Form. Once the Settlement is approved and becomes final, they will be notified that the enrollment code and the service is ready for use. However, even if a Cyber Class Action Member does not submit a Claim Form by the Claims Deadline, they can still take advantage of the monitoring services at any time during the five years the monitoring is effective by visiting the Settlement Website and using the contact information

6

provided to enroll in the Privacy Shield Monitoring service. Cyber Class Action Members who enroll after the five-year monitoring period begins will only receive monitoring for the remainder of the five-year period.

16.    Cash Payment Method and Timing: Cyber Class Action Members who make an Extraordinary Claim, a Statutory Cash Claim and/or are eligible for Health Information Claim payments will be able to select a method of payment, including options for digital payment. The distribution of checks and digital payments for approved claims by mail or electronic transmission to Cyber Class Action Members shall be substantially completed within sixty (60) days after all conditions precedent to distributing payments have occurred. If the Settlement Administrator determines that the selected payment method is unavailable or otherwise administratively infeasible, a check will be issued at the Cyber Class Action Member's last known mailing addresses or to any updated address located with commercially reasonable effort.

17.    Disputes:

a. To the extent the Settlement Administrator determines a claim is deficient in whole or part, within twenty-one (21) days after the Settlement Administrator processes all claims, the Settlement Administrator shall notify the Cyber Class Action Member in writing (including by e-mail where the Cyber Class Action Member selects e-mail as their preferred method of communication) of the deficiencies and provide the Cyber Class Action Member thirty (30) days to cure the deficiencies. The notice shall inform the Cyber Class Action Member that they can either attempt to cure the deficiencies outlined in the notice, or dispute the determination in writing. If the Cyber Class Action Member attempts to cure the deficiencies or disputes the determination but, in the sole discretion and authority of the Settlement Administrator fails to do so, the Settlement Administrator shall notify the Cyber Class Action Member of that determination within fourteen (14) days of the determination.

b. The Settlement Administrator shall have the sole discretion and authority to determine whether a claim is deficient in whole or part but may consult with Class Counsel in making individual determinations subject to this dispute process.

7

18. <u>Opt Out Process</u>:

    a. Any Cyber Class Action Member who timely filed a Proof of Claim who wishes to opt out of the Settlement Class must do so through the opt-out procedures set forth in the solicitation materials that will be distributed to such members as part of 23andMe's bankruptcy case.

    b. All other Cyber Class Action Members (*i.e.*, members who did not timely file a Proof of Claim) may print an Opt-Out Form from the Settlement Website and mail it to the Settlement Administrator. To be valid, each Cyber Class Action Member wishing to opt out of the Settlement Class shall: (i) include the case name and number of the Litigation; (ii) identify the name and current address of the Person seeking exclusion from the Settlement; (iii) be individually signed by the Person seeking exclusion using wet-ink signature; (iv) include an attestation clearly indicating the Person's intent (to be determined by the Settlement Administrator) to be excluded from the Settlement; and (v) attest that the Person seeking exclusion had a 23andMe user account and was a U.S. resident at any time between May 1, 2023 and October 1, 2023. To be effective, written Opt-Out requests must be postmarked by the Opt-Out Deadline. Opt-Out Forms must be submitted individually by the Cyber Class Action Members opting out of the Settlement benefits and may not be submitted by third parties, except as authorized by the Settlement Administrator at its sole discretion. The Settlement Administrator shall verify that each individual who submits an Opt-Out Form is a Cyber Class Action Member.

19. <u>Objection Process</u>: Cyber Class Action Members who wish to object to the Settlement Agreement must do so by filing a timely written objection with the Court in accordance with the procedures outlined in the Class Notice, filed or postmarked no later than the Objection Deadline. The objection must include:

    a. The case name and number of the Litigation;

    b. The full name, address, telephone number, and email address of the objecting Settlement Class Member;

    c. Information which verifies the objector is a Settlement Class Member, (e.g., a copy of the Class Notice or of the original notice of the Security Incident addressed to the objecting Settlement Class Member);

d.  A written statement of all grounds for the objection, accompanied by any legal support for the objection;

e.  A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

f.  A statement confirming whether the objector intends to personally appear or testify at the Final Approval Hearing;

g.  The identity of all counsel representing the objector and whether they will appear at the Final Approval Hearing;

h.  A statement of whether the objector has sold or otherwise transferred the right of their recovery to this Litigation to another person or entity, and, if so, the identity of the person or entity; and

i.  The objector's signature or other duly authorized representative.

20.  <u>Miscellaneous</u>:

a.  No Person shall have any claim against the Settlement Administrator, 23andMe, Class Counsel, 23andMe's Counsel, any of the Released Parties and/or the Settlement Class Representatives based on distributions of benefits to Cyber Class Action Members.

b.  Information submitted by Cyber Class Action Members pursuant to the terms of this Settlement Agreement shall be deemed confidential and protected as such by Class Counsel, 23andMe, CyEx, and the Settlement Administrator.

21.  <u>Modification of Benefits Plan</u>: Should the Parties agree, after Final Approval of the Settlement Agreement and Plan, that the provisions of this Benefits Plan should be modified in the interests of justice, they shall seek the Court's approval for such modification.

**<u>Exhibit E</u>**

Opt-Out Form

## 23andMe Customer Data Security Breach

# Opt-Out Form

Submit this Opt-Out Form to tell the Court that you do not want to be part of this Settlement. **In doing so, you will not be eligible to receive any Settlement benefits, and you cannot object to the Settlement. You will only retain any rights to sue, continue to sue, or pursue claims arising out of this Cyber Security Incident that are not otherwise barred or released by the bankruptcy proceedings. In particular, even if you opt out, you will be barred from pursuing any and all claims you may have against 23andMe (now known as "Chrome")[1] and the other Debtor entities.**

You may only exclude yourself—not any other person unless that person is under your legal guardianship (such as a minor child). In addition, you may not seek exclusion on behalf of more than one individual, if you do, your Opt-Out may be found invalid by the Settlement Administrator at its sole discretion.

You may not exclude yourself if you received an opportunity to opt out of the Settlement through the Bankruptcy Solicitation Materials.

You must submit a completed and signed Opt-Out request by U.S. mail postmarked no later than **XXXXX, 202X** to the address below.

## Your Information

*We will use this information to verify that you are a Settlement Class Member and exclude you from the Settlement Class.*

| 1. NAME (REQUIRED): | |
|---|---|
| | First                Middle          Last |
| 2. MAILING ADDRESS (REQUIRED): | |
| | Street Address |
| | Apt. No. |

---

[1] On July 27, 2025, the Bankruptcy Court in *In re Chrome Holding Co. (f/k/a 23andMe Holding Co.), et al.*, Case No. 25-40976 (Bankr. E.D. Mo.) approved the sale of 23andMe Holding Co. and 23andMe, Inc.'s assets to TTAM Research Institute, which sale was completed on July 14, 2025. After the completion of the sale, 23andMe Holding Co. and 23andMe, Inc. formally changed their legal names to Chrome Holding Co. and ChromeCo, Inc., respectively. For ease of reference, Chrome Holding Co. and ChromeCo, Inc. are collectively referenced herein as "23andMe".

| | City _____ |
|---|---|
| | State ____ ____ ____ ____   Zip ____ |
| **3. EMAIL ADDRESS (REQUIRED):** | _____ @ _____ |
| **4. EMAIL ADDRESS ASSOCIATED WITH 23ANDME ACCOUNT (REQUIRED)** | _____ @ _____ |

## Confirmation & Signature

By signing this Opt-Out Form I am stating:

1) I want to be excluded from the *In re: Chrome Holding Co., et al.*, Case No. 25-40976-357 (E.D. Mo.) Settlement; and

2) I had a 23andMe user account and was a U.S. resident at some time between May 1, 2023 and October 1, 2023.

Signature: _____   Date: ____/____/____

*You must sign this Opt-Out Form using a wet-ink signature.*

Opt-Out Forms must be postmarked no later than **XXXXX, 202X**, to:

_____

**<u>Exhibit F</u>**

**Settlement Class Representatives**

Adriane Farmer
A.B.
Anna DaVeiga
Benjamin Woessner
Bonnie Eden
Britany DeLoach
Camie Picha
Claire Paddy
Cody Vogel
Daniel Anderson
Daniel Pinho
David Tso
Eileen Mullen
Emily Beale
Harold Velez
Jaime Kelly
J.S.
Kathleen Loftus
Kristina Chew
Lenora Claire
L.G.
M.L.
Melissa Ryan
Michele Bacus
Neil Haven
Pamela Zager-Maya
R.T.
Rachel DeCarlo
Samantha Van Vleet
Susan Kennedy
Thomas Vickery
Tracie Payne Mitchell
Tracy Scott