## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 25-40976-357 |
| | Chapter 11 |
| CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.), *et al.*,[1] | |
| Debtors. | (Jointly Administered) |

### NOTICE OF DISPUTE REGARDING PLAN ADMINISTRATION TRUST AGREEMENT TO BE RESOLVED AT THE DECEMBER 3, 2025 HEARING

On November 26, 2025, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Fifth Amended Joint Plan of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1609] (as amended, modified, or supplemented from time to time, the "Plan")[2] with the United States Bankruptcy Court for the Eastern District of Missouri (the "Court"). Among other things, the Plan provides that on the Effective Date all of the Debtors' assets will vest in the Plan Administration Trust, which will be governed by the Plan Administration Trust Agreement. On October 30, 2025, the Debtors filed the *Notice of Filing of Initial Plan Supplement for the Second Amended Joint Plan of Chrome Holding Co. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1514], which included a draft of the Plan Administration Trust Agreement attached as **Exhibit C** thereto.

Article IX of the Plan sets forth a list of certain conditions that must be satisfied or waived for the Effective Date to occur (the "Conditions Precedent"). The Conditions Precedent include, among other things, that the Plan Administration Trust Agreement shall have been executed by the parties thereto. The Plan also requires that the Plan Administration Trust Agreement must be in a form and substance reasonably acceptable to the Debtors, the Plan Administrator, and the Committees.

---

[1]   The Debtors in each of these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Chrome Holding Co. (0344), ChromeCo, Inc. (7371), Chrome Pharmacy Holdings, Inc. (4690), Lemonaid Community Pharmacy, Inc. (7330), Lemonaid Health, Inc. (6739), Lemonaid Pharmacy Holdings Inc. (6500), LPharm CS LLC (1125), LPharm INS LLC (9800), LPharm RX LLC (7746), LPRXOne LLC (3447), LPRXThree LLC (3852), and LPRXTwo LLC (1595).  The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

[2]   Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Plan or the Plan Administration Trust Agreement, as applicable.

Over the course of several weeks, the Debtors have worked with the Plan Administrator and the Committees to reach a consensus on a form of the Plan Administration Trust Agreement that is reasonably acceptable to all required parties.  Pursuant to these discussions, the parties have developed a substantially agreed form of the Plan Administration Trust Agreement, but there are certain open issues in the agreement on which the Committees have not been able to reach a consensus (the "Open Issues").  A summary of the Open Issues is set forth below.

It is imperative that the parties come to an agreement on the Plan Administration Trust Agreement immediately to avoid any unnecessary delay to the occurrence of the Effective Date, which would require the Debtors to incur unnecessary costs and expenses to the detriment of their stakeholders.  Accordingly, the Debtors respectfully request the Court to resolve the Open Issues at the December 3, 2025 hearing by (a) reviewing the last version of the Plan Trust Administration Agreement that the Debtors sent to the Creditors' Committee on November 25, 2025, which the Creditors' Committee indicated would be reasonably acceptable to them (the "November 25 Version") and the version of the Plan Administration Trust Agreement that is acceptable to the Official Equity Committee (the "Equity Committee's Version"), which are attached hereto as **Exhibits A** and **B**, respectively, and (b) determining which of the Committees is unreasonably withholding their consent on the terms of the Plan Administration Trust Agreement.  A redline of the November 25 Version against the Equity Committee's Version is attached hereto as **Exhibit C**.  Both the November 25 Version and the Equity Committee's Version are acceptable to the Debtors and the Plan Administrator.  The material Open Issues are summarized as follows:[3]

- **Exhibit A** contemplates (a) an Equity Professionals Budget and GUC Professionals Budget of $1.875 million each and (b) that the GUC Representative shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise the GUC Representative Reconciled Claims, subject to certain limitations set forth therein.

- **Exhibit B** contemplates (a) an Equity Professionals Budget and GUC Professionals Budget of $1.5 million each and (b) no such authority for the GUC Representative over the GUC Representative Reconciled Claims and that the Plan Administrator will instead be responsible for reconciling such claims.

Given that the Debtors and the Plan Administrator would accept either version of the Plan Administration Trust Agreements in **Exhibits A** and **B**, the Debtors have determined the lack of consensus on the Plan Administration Trust Agreement to be a dispute solely between the Committees that the Committees are unable to resolve consensually.  To avoid the continued expenditure of estate resources to attempt to reach a consensual resolution of the Open Issues, including the time and professional fees required to engage in litigation and any unnecessary delay to the occurrence of the Effective Date, the Debtors have determined that the most value-maximizing resolution is to file both versions of the Plan Trust Agreement as **Exhibits A** and **B** and seek resolution of the Open Issues at the December 3, 2025 hearing.

---

[3]   The following summary is provided for convenience purposes only.  To the extent any of the terms described below are inconsistent with the November 25 Version or the Equity Committee's Version, the November 25 Version or the Equity Committee's Version, as applicable, control in all respects.

Dated: November 28, 2025

Respectfully submitted,

**Carmody MacDonald P.C.**
/s/ *Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:  (314) 854-8600
Facsimile:  (314) 854-8660
Email:  thr@carmodymacdonald.com
          nrw@carmodymacdonald.com
          jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile: (212) 757-3990
Email:  pbasta@paulweiss.com
          chopkins@paulweiss.com
          jchoi@paulweiss.com
          ghotz@paulweiss.com

*Counsel to the Debtors and Debtors in
Possession*

## <u>Exhibit A</u>

**November 25 Version**

Draft 11/25/2025

**PLAN ADMINISTRATION TRUST AGREEMENT OF THE**

**CHROME PLAN TRUST**

**DATED AS OF [●], 2025**

**BY AND AMONG**

**THOMAS B. WALPER AS PLAN ADMINISTRATOR**

**and**

**CHROME HOLDING CO. AND ITS AFFILIATES
THAT ARE SIGNATORIES HERETO**

# TABLE OF CONTENTS

I.   DECLARATION OF TRUST ................................................................ 2

   A.   Creation and Governance of the Plan Administration Trust ............................ 2

   B.   Purpose of the Trust ................................................................. 3

   C.   Transfer of Plan Administration Trust Assets ......................................... 3

   D.   Plan Administration Trust Assets ..................................................... 4

   E.   Appointment and Acceptance of the Plan Administrator ............................... 4

   F.   Liquidation of Plan Administration Trust Assets ..................................... 5

   G.   Reversionary Interests ............................................................... 5

   H.   Incidents of Ownership .............................................................. 5

   I.   Privileges ........................................................................... 6

II.   PLAN ADMINISTRATION TRUST BENEFICIARIES ............................... 6

   A.   Rights of Plan Administration Trust Beneficiaries ................................... 6

   B.   Interest Beneficial Only ............................................................. 7

   C.   Evidence of Plan Administration Trust Interest ...................................... 7

   D.   No Standing ......................................................................... 8

   E.   Requirement of Undertaking .......................................................... 8

   F.   Limitation on Transferability ....................................................... 8

   G.   Exemption from Registration .......................................................... 8

   H.   Conflicting Claims .................................................................. 9

III.   DURATION AND TERMINATION OF THE TRUST ................................. 10

   A.   Dissolution of the Trust ............................................................ 10

   B.   Continuance of the Trust for Winding Up ............................................. 10

IV.   ADMINISTRATION OF THE TRUST ............................................. 11

   A.   Payment of Claims, Expenses, and Liabilities ....................................... 11

   B.   Procedures for Resolving Unliquidated and Disputed Claims .......................... 11

   C.   Trust Reserve Accounts .............................................................. 14

      1.   Chrome Disputed Claims Reserve ................................................. 14

      2.   Lemonaid Disputed Claims Reserve ............................................... 14

      3.   Administrative / Priority Claims Reserve ....................................... 15

      4.   Data Breach Settlement Reserves ................................................ 16

      5.   Cyber Insurance Reserve ........................................................ 16

6. GUC Subordinated Claims Reserve ........................................................ 16

D. Retained Causes of Action ...................................................................... 16

E. Abandonment ......................................................................................... 16

F. Distributions .......................................................................................... 17

　　1. Distributions Generally ..................................................................... 17

　　2. Powers of Distribution Agent ............................................................ 18

　　3. Expenses Incurred on or After the Effective Date ............................. 18

　　4. Distribution Record Date; Addresses ................................................ 18

　　5. Compliance with Tax Requirements .................................................. 19

　　6. Surrender of Instruments .................................................................. 19

　　7. No Fractional Units ........................................................................... 19

　　8. Foreign Currency Exchange Rate. ..................................................... 19

　　9. Setoffs and Recoupments ................................................................. 20

　　10. Minimum Distribution ...................................................................... 20

　　11. Allocations ....................................................................................... 20

　　12. Distributions Free and Clear ............................................................ 20

　　13. Claims Paid by Third Parties ............................................................ 21

　　14. Claims Payable by Third Parties ....................................................... 21

　　15. Inapplicability of Escheat, Abandoned or Unclaimed Property Laws ..... 21

　　16. Voided Checks; Request for Reissuance. .......................................... 21

G. Compliance With Laws .......................................................................... 22

H. Fiscal Year ............................................................................................ 22

I. Books and Records ................................................................................ 22

J. No Bond Requirement ........................................................................... 22

K. Plan Administration Trust Insurance ...................................................... 23

V. TAX MATTERS ......................................................................................... 23

A. Trust's Tax Power for the Debtors .......................................................... 23

B. Treatment of Trust for Tax Purposes ..................................................... 23

C. Tax Withholdings by the Plan Administration Trust ................................ 25

D. DOF Election ......................................................................................... 26

E. Qualified Settlement Fund ..................................................................... 26

VI. POWERS AND LIMITATIONS OF THE TRUST AND THE PLAN
ADMINISTRATOR ...................................................................................... 26

A. Powers of the Trust ............................................................................... 26

B. Responsibilities and Authority of the Trust ............................................ 27

ii

C.  Wind-Down..................................................................................................... 27

D.  Actions Taken by the Trust............................................................................. 28

E.  Limitations on the Trust................................................................................. 30

F.  Term of the Plan Administrator ..................................................................... 30

G.  Plan Administrator Conflicts of Interest ....................................................... 31

H.  Compensation and Expenses of the Plan Administrator................................ 31

I.  Employment, Indemnification, and Other Agreements ................................. 31

J.  Investment of Plan Administration Trust Monies.......................................... 31

VII.  SUCCESSOR PLAN ADMINISTRATOR AND REPRESENTATIVES...................... 32

A.  Resignation ..................................................................................................... 32

B.  Removal .......................................................................................................... 32

C.  Effect of Resignation or Removal.................................................................. 32

D.  Appointment of Successor Plan Administrator.............................................. 33

E.  Acceptance of Appointment by Successor Plan Administrator...................... 33

F.  Representatives ............................................................................................... 33

VIII.  REPRESENTATIVES AND TRUST GOVERNANCE ........................................... 34

A.  Generally......................................................................................................... 34

B.  Meetings of the Trust Parties ......................................................................... 34

C.  Disposition of Assets ...................................................................................... 34

D.  Establishment and Maintenance of Reserves................................................. 35

   1.  Reserves Initially Established in Consultation with the Debtors and the Committees. 35

   2.  Reserves Established in Consultation with the Representatives.................... 35

E.  Compensation .................................................................................................. 35

   1.  Compensation of the GUC Representative ................................................... 35

   2.  Compensation of the Equity Representative................................................. 36

   3.  Compensation of Plan Administrator........................................................... 36

   4.  Compensation Modifications........................................................................ 36

F.  Trust Professionals.......................................................................................... 37

   1.  Plan Administrator Professionals................................................................. 37

   2.  GUC Representative Professionals............................................................... 37

   3.  Equity Representative Professionals............................................................. 38

G.  Plan Administration Trust Expenses Reporting.............................................. 38

H.  Claims Reconciliation..................................................................................... 38

   1.  Plan Administrator Claims Reconciliation ................................................... 38

2.    Final Approval of Distributions to Qualified Settlement Funds ................................... 39

3.    GUC Representative Claims Reconciliation ................................................................. 39

4.    Equity Representative HoldCo Interest Reconciliation ............................................... 40

5.    Claims Estimation Motions and Objections ................................................................ 41

I.    Plan Administrator's Authority to Pursue and Resolve Retained Causes of Action ........ 41

J.    Other Consultation Rights of Representatives as to Actions Taken by the Trust ............. 41

1.    Books and Records ...................................................................................................... 41

2.    Insurance ..................................................................................................................... 42

3.    Litigation Financing and Borrowing ........................................................................... 42

4.    Closing of the Chapter 11 Cases ................................................................................. 42

5.    Amendment of the Trust Agreement ........................................................................... 43

IX.    RELIANCE, LIABILITY, AND INDEMNIFICATION ................................................. 43

A.    Reliance by the Plan Administrator and the Representatives ........................................ 43

B.    Limitation of Liability .................................................................................................. 43

C.    No Liability for Acts Approved by the Bankruptcy Court ........................................... 44

D.    Nonliability for Acts of Others .................................................................................... 44

E.    Exculpation .................................................................................................................. 44

F.    Indemnity ..................................................................................................................... 45

X.    MISCELLANEOUS PROVISIONS ............................................................................... 45

A.    Governing Law ............................................................................................................. 45

B.    Severability .................................................................................................................. 45

C.    Notices ......................................................................................................................... 46

D.    Headings ...................................................................................................................... 46

E.    Controlling Document .................................................................................................. 47

F.    Entire Agreement ......................................................................................................... 47

G.    Cumulative Rights and Remedies ................................................................................ 47

H.    Division of Trust .......................................................................................................... 47

I.    Cooperation .................................................................................................................. 47

J.    Amendment and Waiver ............................................................................................... 47

K.    Meanings of Other Terms ............................................................................................ 48

L.    Counterparts ................................................................................................................. 48

M.    Intention of Parties to Establish a Liquidating, Grantor Trust ..................................... 48

N.    Waiver .......................................................................................................................... 48

O.    Waiver of Jury Trial ..................................................................................................... 48

P.    Retention of Jurisdiction ................................................................................ 49

**PLAN ADMINISTRATION TRUST AGREEMENT OF THE
CHROME PLAN TRUST**

This Plan Administration Trust Agreement (the "Agreement") of the Chrome Plan Trust (the "Trust"),[1] dated as [●], 2025, is entered into by and among (i) debtors and debtors-in-possession Chrome Holding Co., ChromeCo Inc., Chrome Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC (collectively, the "Debtors"), and (ii) Thomas B. Walper, as plan administrator and trustee (together with any successor or additional trustee appointed under the terms of this Agreement, the "Plan Administrator"), for the purpose of, *inter alia*, (i) winding down the Wind-Down Debtors, and (ii) forming a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code, as contemplated by the Plan.[2]

**RECITALS**

A.     On March 23, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court") initiating the chapter 11 cases jointly administered under Case No. 25-40976-357 in the Bankruptcy Court (collectively, the "Chapter 11 Cases");

B.     On June 27, 2025, the Bankruptcy Court entered the Sale Order, approving the sale of certain of the Debtors' assets to the Chrome Purchaser pursuant to section 363 of the Bankruptcy Code pursuant to the Chrome Purchase Agreement;

C.     On the Effective Date, the Lemonaid Interests will be sold to the Lemonaid Purchaser;

D.     On October 1, 2025, the Bankruptcy Court entered the Solicitation Order [Docket No. 1442], which, *inter alia*, approved the adequacy of the Disclosure Statement and authorized the Debtors to transmit solicitation materials to, among others, Holders of Claims and Holdco Interests entitled to vote to accept or reject the Plan;

E.     On [●], 2025, the Bankruptcy Court entered an order confirming the Plan [Docket No. [●]] (the "Confirmation Order"), and the Effective Date of the Plan occurred on [●], 2025;

---

[1]     For the purposes of this Agreement, the term "Trust" shall include the Trust acting by and through the Plan Administrator, the GUC Representative, and/or the Equity Representative, as applicable.

[2]     The "Plan" means the *Fifth Amended Joint Chapter 11 Plan of Liquidation of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, filed at Docket No. [____] in the Chapter 11 Cases, as may be altered, amended, modified, or supplemented from time to time, including all exhibits and schedules thereto. Capitalized terms used but not defined in this Agreement have the meanings ascribed to them in the Plan.

1

F.     The Plan provides for, *inter alia*, the creation of the Trust for the benefit of the Plan Administration Trust Beneficiaries on the Effective Date for the purpose of liquidating and administering the Plan Administration Trust Assets and making distributions from the proceeds thereof in accordance with the terms of the Plan and this Agreement.

G.     Pursuant to the Plan, the Trust shall be structured to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, as provided for under the Plan and this Agreement. The Trust is established and is effective for the benefit of the Plan Administration Trust Beneficiaries; and

H.     The duties and powers of the Plan Administrator shall include all powers necessary to perform the Wind-Down Transactions and to administer the Plan Administration Trust Assets, in accordance with the Plan, the Confirmation Order, and this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## I.     DECLARATION OF TRUST

A.     <u>Creation and Governance of the Plan Administration Trust</u>

The Debtors and the Plan Administrator, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the Trust, which shall bear the name the "Chrome Plan Trust";

In connection with the exercise of the Plan Administrator's power hereunder, the Plan Administrator may use this name or such variation thereof as the Plan Administrator sees fit;

The Debtors and the Plan Administrator enter into this Agreement to, *inter alia*, effectuate the distribution of the Plan Administration Trust Assets to the Plan Administration Trust Beneficiaries pursuant to the Plan, the Confirmation Order, and this Agreement;

The Trust shall be governed by this Agreement and administered by the Plan Administrator and the Representatives, as provided herein, in the Plan, and the Confirmation Order;

Pursuant to Article IV.E.6 of the Plan and Section I.C of this Agreement, the Plan Administration Trust Assets shall automatically be transferred to and vest in the Trust on the Effective Date free and clear of any and all alleged or actual Claims, Interests, Liens, encumbrances, or other interests, subject only to the Trust Interests and the Plan Administration Trust Expenses, as provided for herein and in the Plan, and shall comprise Plan Administration Trust Assets for all purposes;

TO HAVE AND TO HOLD unto the Plan Administrator and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Plan Administration Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings (including interest) thereon are to be held by the Trust and applied on behalf of the Trust by the Plan Administrator on the terms and conditions set forth herein, solely to satisfy Plan Administration Trust Expenses and for the benefit of the Plan Administration Trust Beneficiaries and for no other party.

B.    Purpose of the Trust

The Trust shall be established as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d), for the purpose of pursuing or liquidating the Plan Administration Trust Assets, reconciling and objecting to Claims and HoldCo Interests, prosecuting Retained Causes of Action, and making distributions pursuant to the Plan to the Plan Administration Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, as provided for under the Plan and this Agreement. Subject to the election described in Article IV.E.5 of the Plan and Section V.D and V.E of this Agreement, the Trust is intended to qualify as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Plan Administration Trust Beneficiaries treated as grantors and owners of the Trust.

C.    Transfer of Plan Administration Trust Assets

Pursuant to the Plan and the Confirmation Order, as of the Effective Date, the Debtors irrevocably grant, release, assign, transfer, convey, and deliver and shall be deemed to have irrevocably transferred, granted, released, assigned, conveyed, and delivered to the Trust all rights, title, and interest in and to all of the Plan Administration Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all of the Debtors' right, title, and interest in and to the Plan Administration Trust Assets are automatically vested in the Trust free and clear of all Claims, Interests, Liens, encumbrances, or other interests, subject only to the Trust Interests and the Plan Administration Trust Expenses, as provided for herein, and shall become Plan Administration Trust Assets for all purposes.

The Trust hereby accepts as of the Effective Date all Plan Administration Trust Assets free and clear of any and all Claims, Interests, Liens, encumbrances, and other interests, and agrees to hold and administer the Plan Administration Trust Assets for the benefit of the Plan Administration Trust Beneficiaries, subject to the terms and conditions of the Plan, Confirmation Order, and this Agreement.

For the avoidance of doubt, upon the transfer of the Plan Administration Trust Assets, the Trust shall succeed to all of the Debtors' right, title, and interest in and to the Plan Administration Trust Assets, and upon delivery of the Plan Administration Trust Assets to the Trust and their vesting in the Trust as Plan Administration Trust Assets, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no further interest in or with respect to the Plan Administration Trust Assets or the Trust. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer

of the Plan Administration Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

For all U.S. federal income tax purposes, and, to the extent permitted by applicable law, for state and local income tax purposes, and subject to the election described in Article IV.E.5 of the Plan and Sections V.D and V.E of this Agreement, all parties (including, without limitation, the Debtors, the Trust, the Plan Administrator, the Representatives, and the Plan Administration Trust Beneficiaries) shall treat the transfer of the Plan Administration Trust Assets to the Trust in accordance with the terms of this Agreement as a transfer to the Plan Administration Trust Beneficiaries, followed by a transfer by such Plan Administration Trust Beneficiaries to the Trust, and the Plan Administration Trust Beneficiaries will be treated as the grantors and owners thereof.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and this Agreement, including, without limitation, the transfer of the Plan Administration Trust Assets to the Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and pursuant to the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

The Plan Administration Trust Assets shall be held and be applied by the Trust in accordance with the terms of this Agreement, the Plan, and the Confirmation Order for the benefit of the Plan Administration Trust Beneficiaries, and for no other party, subject to the further covenants, conditions and terms set forth in this Agreement, the Plan, and the Confirmation Order.

The Debtors, the Plan Administrator, and any party under the control of such parties, hereby agree to execute any documents or other instruments and shall take all other steps as necessary to cause title to the Plan Administration Trust Assets to be transferred to the Trust in accordance with this Agreement, the Plan, and the Confirmation Order.

D.    Plan Administration Trust Assets

The Trust, in accordance with section 1123(b)(3) of the Bankruptcy Code, shall be the representative of the Estates with respect to any and all Plan Administration Trust Assets including, but not limited to, the Retained Causes of Action, and shall retain and possess the right to commence, pursue, prosecute, enforce, abandon, waive, settle, compromise, release, or withdraw, as appropriate, any and all Retained Causes of Action in any court or other tribunal, except as otherwise provided in the Plan, the Confirmation Order, or this Agreement.

E.    Appointment and Acceptance of the Plan Administrator

The Trust shall be the exclusive trust of the Plan Administration Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).

The Plan Administrator accepts: (1) the appointment to serve as trustee for the Trust created by this Agreement in accordance with the terms of the Plan, the Confirmation Order, and

4

this Agreement; and (2) the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Plan Administration Trust Beneficiaries, by the Debtors of all of their respective rights, titles and interests in the Plan Administration Trust Assets, upon and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Plan Administrator's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose and the Trust and other responsibilities assigned to the Plan Administrator under the Plan and not otherwise. The Plan Administrator shall have the authority to bind the Trust in accordance with, and within the limitations set forth in this Agreement, but shall for all purposes hereunder be acting solely in the capacity as Plan Administrator, and not individually.

F.    Liquidation of Plan Administration Trust Assets

The Trust shall, in an expeditious but commercially reasonable manner and subject to the provisions of the Plan, the Confirmation Order, and the other provisions of this Agreement, and subject to Article VIII of this Agreement, liquidate and convert to Cash the Plan Administration Trust Assets, make timely distributions in accordance with the terms of this Agreement, the Plan, and the Confirmation Order and not unduly prolong the existence of the Trust. The Trust shall liquidate the Plan Administration Trust Assets in an effort to maximize net recoveries, and the Trust shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the maximization of recoveries; provided, that the determinations and actions of the Trust shall in all cases be subject to the limitations provided in the Plan, the Confirmation Order, and this Agreement, including, but not limited to, Article VIII of this Agreement.  Subject to the terms of this Agreement, such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any Claims or Retained Causes of Action, the pursuit of proceeds of the Cyber Insurance Policies (if not previously tendered), or through the sale or other disposition of the Plan Administration Trust Assets (in whole or in combination, and including the sale of the Retained Causes of Action or rights under the Insurance Policies, if not already liquidated). The Trust may incur Plan Administration Trust Expenses in connection with the liquidation and conversion of the Plan Administration Trust Assets into Cash or in connection with the administration of the Trust, subject to Article VIII of this Agreement.

G.    Reversionary Interests

In no event shall any part of the Plan Administration Trust Assets revert to or be distributed to the Debtors. The Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Escrow after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court.  For the avoidance of doubt, such reversionary interest of the Trust constitutes a Plan Administration Trust Asset that automatically vests in the Trust as of the Effective Date.

H.    Incidents of Ownership

The Plan Administration Trust Beneficiaries shall be the sole beneficiaries of the Trust and the owners of the Plan Administration Trust Assets, and the Trust shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this

5

Agreement, the Plan, and the Confirmation Order, including, without limitation, those powers set forth in Section V.E of this Agreement.

       I.     <u>Privileges</u>

In connection with the vesting and transfer of the Plan Administration Trust Assets in and to the Trust, the Trust shall stand in the same position as the applicable Debtor with respect to any claim the applicable Debtor and/or its Estate may have as to an attorney-client privilege, work-product doctrine, or any other privilege or confidentiality protections attaching to any documents or communications (whether written or oral) relating to the Plan Administration Trust Assets (collectively, "<u>Privileges and Protections</u>"), and the Trust shall succeed to all rights of the applicable Debtor and/or its Estate to hold, preserve, assert, be the beneficiary of, or waive any such Privileges and Protections. As of the Effective Date, all Privileges and Protections of the Debtors relating to the Plan Administration Trust Assets shall be deemed transferred, assigned, and delivered by the applicable Debtor to the Trust, without waiver, forfeiture, or release, and shall vest in the Trust. No such Privilege and Protections shall be waived, forfeited, or released by disclosures to the Trust, the Plan Administrator, the Trust Professionals (defined below), or the Representatives (in their capacities as such) of the Debtors' documents, information, or communication subject to attorney-client privilege, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Privileges and Protections relating to the Plan Administration Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; <u>provided</u>, that prior to waiving such Privilege and Protection, the Trust shall provide such third party with any written notice required by any joint defense or common interest agreements as of the Petition Date. Any and all work product created by or on behalf of the Trust, the Plan Administrator, the Trust Professionals (defined below), the Representatives (in their capacities as such), and each of their respective agents, representatives, employees, and independent contractors shall be deemed confidential to the extent that such work product is not protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. For the avoidance of doubt, communications between or among the Plan Administrator and one or both Representatives shall be confidential and subject to the common interest privilege. In addition, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order held by the Debtors prior to the Effective Date with respect to the Plan Administration Trust Assets shall vest in the Trust automatically and without further action by any party as of the Effective Date through the date of dissolution of the Trust.

## II.    PLAN ADMINISTRATION TRUST BENEFICIARIES

      A.     <u>Rights of Plan Administration Trust Beneficiaries</u>

"<u>Trust Interests</u>" means Class A-1 Plan Administration Trust Interests, Class A-2 Plan Administration Trust Interests, Class A-3 Plan Administration Trust Interests, Class A-4 Plan Administration Trust Interests, Class A-5 Plan Administration Trust Interests, Class A-6 Plan Administration Trust Interest, Class A-7 Plan Administration Trust Interest, Class A-8 Plan Administration Trust Interest, and Class B Plan Administration Trust Interests, each of which are

non-certified, non-transferable [(except Class B Plan Administration Trust Interests, which are transferable solely to the extent provided in this Agreement)][3] beneficial interests in the Trust granted to (i) Holders of (a) Chrome Commercial Claims, (b) Chrome Other General Unsecured Claims, (c) Lemonaid Commercial Claims, (d) Lemonaid Other General Unsecured Claims, (e) the Canadian Data Breach Class Settlement Fund's claims, (f) the Pixel Class Settlement Fund's claims, (g) the U.S. Data Breach Class Settlement Fund's claims, (h) GUC Subordination Claims, and (i) HoldCo Interests (collectively, the "Trust Beneficiary Claims"), which shall entitle such Holders and entities to their applicable Pro Rata share of distributions from the Trust in accordance with the Plan (including, for the avoidance of doubt, according to the Waterfall Recovery), the Confirmation Order, and applicable law. Each Plan Administration Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Plan Administration Trust Beneficiary of its respective priority under this Agreement. The Trust Interests are hereby declared and shall be in all respects personal property.

B.   Interest Beneficial Only

The ownership of a Plan Administration Trust Interest shall not entitle any Plan Administration Trust Beneficiary or the Debtors to any title in or to the Plan Administration Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

C.   Evidence of Plan Administration Trust Interest

The Trust shall maintain at all times a register of the names and distribution addresses of the Plan Administration Trust Beneficiaries, including the amount of such Plan Administration Trust Beneficiaries' respective Trust Beneficiary Claims (Allowed as of the Effective Date, or as may be Allowed thereafter pursuant to the Plan and this Agreement) (the "Trust Register"); provided, that the Trust may rely initially on the Claims Register, which shall be delivered to the Trust by the Notice and Claims Agent within thirty (30) days after the Effective Date and shall be based on the list of Holders of Administrative Claims, Priority Tax Claims, Claims in Classes 3 through 9, and Classes 13 and 14 of the Plan and maintained by the Notice and Claims Agent as of the Effective Date and prepared in accordance with the provisions of the Plan and the Confirmation Order, provided further that (i) with respect to Classes 3, 4, 5, and 14, upon the final approval of the settlement associated with each such Class, the Trust Register need only reflect the name and address of the agent or representative of each such Class identified in the relevant settlement agreement and the settlement amount, and (ii) for HoldCo Interests held exclusively in book entry form at [DTC/Cede & Co.], the Trust shall be entitled to rely upon the register of HoldCo Interests maintained at [DTC/Cede & Co.].  All references in this Agreement to Plan Administration Trust Beneficiaries shall be read to mean holders of record as set forth in the Trust Register maintained by the Trust and shall include Holders of Trust Beneficiary Claims who hold their position through a broker, bank, or other nominee, if applicable. The Trust shall cause the Trust Register to be kept at its office or at such other place(s) as may be designated by the Trust from time to time. The Trust shall be under no obligation to quantify or summarize any Plan Administration Trust Beneficiary's holdings or position with respect to such Plan Administration Trust Beneficiary's Plan Administration Trust Interest; provided that the Trust shall, upon the written request of a Plan Administration Trust Beneficiary, provide reasonably adequate

---

[3]   [Note to Draft: Subject to ongoing discussion among the Debtors and the Committees.]

documentary evidence of the existence of such Plan Administration Trust Beneficiary's Plan Administration Trust Interest, as indicated in the Trust Register; provided further, however, that the Plan Administrator shall not be required to compile or deliver information regarding any HoldCo Interest held in book entry form that is not reasonably available to the Plan Administrator through the customary practices and facilities of [DTC/Cede & Co.]. For the avoidance of doubt, ownership of a Plan Administration Trust Interest will not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except the book entry system.

D.    No Standing

Except as expressly provided in this Agreement, a Plan Administration Trust Beneficiary shall not have standing to direct or to seek to direct the Trust, Plan Administrator or any Representative to do or not to do any act or to institute any action or proceeding at law or in equity against any Entity upon or with respect to the Plan Administration Trust Assets.

E.    Requirement of Undertaking

The Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Plan Administrator or any Representative for any action taken or omitted by such entities as Plan Administrator or Representative, as applicable, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this section shall not apply to any suit by the Trust, Plan Administrator, or any Representative, each in their respective capacity as such.

F.    Limitation on Transferability

It is understood and agreed that the Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except by operation of law; provided that Class B Plan Administration Trust Interests shall be transferable to the extent that the transferability thereof would not require the Trust to register the Interests under Section 12(g) of the Exchange Act, or cause the Trust to incur expenses that (i) would materially exceed any benefit associated with facilitating the transferability of Class B Plan Administration Trust Interests, or (ii) otherwise threaten to diminish the recoveries available to Holders of Class A or Class B Trust Interests, and otherwise shall not be transferable except as provided in this Agreement; provided further that the Debtors' or Plan Administration Trust's Claims, rights, defenses or any other legal rights or entitlements with respect to any such transferred Class B Plan Administration Trust Interests shall be preserved and enforceable against the transferee of such transferred interest.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trust, and the Trust may continue to pay all amounts to or for the benefit of the assigning Plan Administration Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trust may rely upon such proof without the requirement of any further investigation.

G.    Exemption from Registration

The Trust Interests have not been registered pursuant to the Securities Act of 1933, as amended (the "Securities Act"), or any state securities law, and, except as otherwise provided in

the Plan or in this Agreement, shall not be listed for public trading on any securities exchange. The parties hereto intend that the rights of the holders of Trust Interests shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan. The Trust shall not be required to file reports with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), on account of any transfer. No transfer of a Plan Administration Trust Interest that causes the Trust to be required to file reports with the Securities and Exchange Commission pursuant to Sections 13 or 15(d) of the Exchange Act shall be permitted, and any such transfer shall be void *ab initio*. In order to prevent the Trust from becoming subject to such reporting requirements, the Trust may impose certain transfer restrictions designed to maintain the Trust as a non-reporting entity, and this Agreement may be amended pursuant to Section X.J. to make such changes as are deemed necessary or appropriate to ensure that the Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act of 1939, as amended, or the Investment Company Act of 1940, as amended.

       H.     Conflicting Claims

If any conflicting claims or demands are made or asserted with respect to the Trust Interest of a Plan Administration Trust Beneficiary under this Agreement, or if there is any disagreement between the permitted assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trust shall be entitled, in its discretion, to refuse to comply with any such conflicting claims or demands.

The Trust may elect to make no payment or distribution with respect to the Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over the resolution of such conflicting claims or demands. Neither the Trust, the Plan Administrator, nor any Representative shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust, Plan Administrator, or any Representative be liable for interest on any funds which may be so withheld.

The Trust, the Plan Administrator, and each Representative shall be entitled to refuse to act until either: (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trust, which agreement shall include a complete release of the Trust, the Plan Administrator, and the Representatives. Until the Trust receives written notice that one of the conditions of the preceding sentence is met, the Trust may deem and treat as the absolute owner under this Agreement of the Trust Interest in the Trust the Plan Administration Trust Beneficiary identified as the owner of that interest in the Trust Register. The Trust may deem and treat such Plan Administration Trust Beneficiary as the absolute owner for purposes of receiving

distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

In acting or refraining from acting under and in accordance with this Section II.H, the Trust, the Plan Administrator, and the Representatives shall be fully protected and shall incur no liability to any purported claimant, interest holder or any other Person.

## III.   DURATION AND TERMINATION OF THE TRUST

### A.   Dissolution of the Trust

The Plan Administrator and each Representative shall be discharged (if not discharged earlier in accordance with this Agreement) and shall have no further responsibilities except as provided in Section III.B of this Agreement, and the Trust shall be dissolved and thereafter terminate, at such time as: (a) subject to Article VIII of this Agreement, the Trust determines that the pursuit of additional Retained Causes of Action or proceeds of the Insurance Policies is not likely to yield sufficient additional proceeds to justify further pursuit of such Retained Causes of Action or proceeds of the Insurance Policies; (b) all objections to Disputed Claims and Disputed Interests are fully resolved; and (c) all Plan distributions required to be made by the Trust to the Plan Administration Trust Beneficiaries under the Plan and this Agreement have been made, provided, however that in no event shall the Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the 6-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension is necessary to facilitate or complete the recovery on, and liquidation and distribution of, the Plan Administration Trust Assets. Upon dissolution of the Trust, or at such earlier time as the Trust may determine (subject to Article VIII of this Agreement), the Trust may abandon any remaining Plan Administration Trust Assets in a manner consistent with Section IV.E of this Agreement.

### B.   Continuance of the Trust for Winding Up

After the dissolution of the Trust and for the purpose of liquidation and winding up the affairs of the Trust, the Plan Administrator shall continue to act as such until its duties under this Agreement and the Plan have been fully performed, including such post-distribution tasks as necessary to wind up the affairs of the Trust, including, without limitation filing a final tax return for the Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust, the full winddown and dissolution of the Debtors, including the performance of all Wind Down Transactions, and the final distribution of the Plan Administration Trust Assets, the Plan Administrator shall have no further duties or obligations under this Agreement and this Agreement shall terminate other than the provisions that expressly survive termination.

Upon a motion by the Trust, which may be a motion for a final decree, the Bankruptcy Court may enter an order (a) relieving (i) the Plan Administrator, its employees, professionals, and agents, and (ii) the Representatives and their respective agents and professionals, of any further duties, (b) discharging and releasing (i) the Plan Administrator, its employees, professionals, and agents, and (ii) the Representatives and their respective agents and representatives, from all

liability related to the Trust, and (c) releasing the Plan Administrator's bond, if any; provided, however, that the GUC Representative and its agents and professionals shall be fully discharged and released from all responsibilities under the Plan, the Confirmation Order and this Agreement at such time as all Allowed General Unsecured Claims have been fully paid in accordance with the Plan, in which case, any requirement under this Agreement of consultation with, or consent of, the GUC Representative for the Trust or Plan Administrator to act may be disregarded.

## IV.   ADMINISTRATION OF THE TRUST

### A.   Payment of Claims, Expenses, and Liabilities

The Trust shall use the Plan Administration Trust Assets to pay Plan Administration Trust Expenses, which shall include all Wind Down Expenses and any Allowed Professional Fee Claims, solely to the extent such Claims are not satisfied in full from the Cash available in the Professional Fee Escrow Account, and which shall have a first right to payment from the proceeds of Plan Administration Trust Assets. The Plan Administrator shall maintain such segregated accounts or reserves that it is required to maintain under the Plan or this Agreement.

The Trust, in its discretion, may make Plan distributions to Holders of Allowed Trust Beneficiary Claims at any time following the Effective Date in accordance with the Waterfall Recovery, provided that such Plan distributions or use is otherwise permitted under, and not inconsistent with, the terms of the Plan, this Agreement, the Confirmation Order, and applicable law; provided further, that the Trust shall pay or reserve for all present and future Plan Administration Trust Expenses before making any Plan distribution to Holders of Allowed Claims or Allowed HoldCo Interests.

### B.   Procedures for Resolving Unliquidated and Disputed Claims

#### 1.   *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and subject to Article VIII of this Agreement, the Trust shall have the sole authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise Disputed Claims and Disputed Interests; provided, however, that Proofs of Claim filed by Holders of Canadian Data Breach Class Settlement Claims, U.S. Data Breach Class Settlement Claims, Pixel Class Settlement Claims, and U.S. Data Breach Arbitration Settling Claims shall be automatically disallowed upon entry of final orders granting approval, as applicable, of the Canadian Data Breach Class Settlement Agreement, U.S. Data Breach Class Settlement Agreement, the Pixel Class Settlement Agreement, and the U.S. Data Breach Arbitration Settlement Order.  The Trust shall also have sole authority to administer and adjust (or direct the adjustment of) the Claims Register or Trust Register to reflect any settlements or compromises of Disputed Claims or Disputed Interests, including the settlement agreements set forth in this Section IV.B.1, without any further notice to or action, order or approval of the Bankruptcy Court.

#### 2.   *Estimation of Claims*

The Trust may, but is not required to, and solely with respect to Lemonaid Commercial Claims, with notice to the Lemonaid Purchaser, at any time request (pursuant to the Claims

Reconciliation Procedures or otherwise) that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise herein, a Claim that has been Disallowed but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero U.S. dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim; provided that such limitation shall not apply to Claims against any of the Debtors requested by the Debtors to be estimated for voting purposes only.

### 3. *Adjustment to Claims and HoldCo Interests Without Objection*

Any duplicate Claim or HoldCo Interest, any Claim that has been paid or satisfied, or any Claim or HoldCo Interest that has been amended or superseded, cancelled or otherwise Disallowed (including pursuant to the Plan or the Confirmation Order), may be adjusted or Disallowed (including on the Claims Register and/or the Trust Register, to the extent applicable) by the Trust after providing notice and a period of at least 30 days for any party in interest (including the Representatives) to object, without any further notice to or action, Order, or approval of the Bankruptcy Court.

### 4. *Time to File Objections to Claims or HoldCo Interests*

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended by order of the Bankruptcy Court). A motion to extend the Claims Objection Deadline shall automatically extend the deadline until the Bankruptcy Court enters an order on such motion. For the avoidance of doubt, the Claims Objection Deadline shall not apply to objections to HoldCo Interests, and the Plan Administrator shall be entitled, but not required, to object to HoldCo Interests (on no less than 30 days' notice to each affected Holder thereof) at any time prior to the final distribution to be made on account of HoldCo Interests.

### 5. *Disallowance of Claims or Interests*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, by that Entity have been turned over or paid to the Trust. All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee of the Debtors as of the Effective Date shall be deemed satisfied as of the Effective Date solely to the

extent such indemnification obligation is assumed by the Trust, or honored or reaffirmed, as the case may be pursuant to the Plan, without any further notice to or action, Order, or approval of the Bankruptcy Court.

Except as provided in the Plan or otherwise agreed to by the Plan Administrator, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, Order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless (a) as to Claims Bar Dates established by the Plan or Confirmation Order, the Holder obtains leave of the Bankruptcy Court to file a late Claim, and (b) as to all other Claims Bar Dates, on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.

6.    *Disputed Claims and Disputed Interests Procedures*

Except as otherwise specifically provided in the Plan or the Confirmation Order and subject to Article VIII of this Agreement, from and after the Effective Date, the Trust shall have the sole authority (solely with respect to Lemonaid Commercial Claims, with notice to the Lemonaid Purchaser) to: (a) File and prosecute objections to Claims or HoldCo Interests; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all objections to Claims or HoldCo Interests; (c) settle or compromise any Disputed Claim or Disputed HoldCo Interest without any further notice to or action, Order, or approval by the Bankruptcy Court; and (d) direct the Notice and Claims Agent to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

For the avoidance of doubt, except as otherwise provided in the Plan, after the Effective Date, the Trust shall have the exclusive right to object to Claims and HoldCo Interests and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or HoldCo Interest immediately before the Effective Date, including the Retained Causes of Action.

Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim and no HoldCo Interest shall become an Allowed HoldCo Interest unless and until (i) such Claim or HoldCo Interest is deemed Allowed under the Plan or the Bankruptcy Code, (ii) the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or HoldCo Interest or (iii) the Trust, Plan Administrator or a Representative, as applicable, has, subject to Article VIII of this Agreement, entered into a binding stipulation or settlement agreement or other writing Allowing a Claim or HoldCo Interest. Subject to Article VIII of this Agreement, the Trust may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy law.

7.    *No Distribution Pending Allowance*

Except as otherwise provided in the Plan, notwithstanding any other provision of this Agreement, if any portion of a Claim is a Disputed Claim or Disputed Interest, as applicable, no

13

payment or distribution provided hereunder or in the Plan shall be made on account of such Claim or HoldCo Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed HoldCo Interest.

        8.    *Distributions After Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed HoldCo Interest, the Trust or the applicable Distribution Agent shall make a distribution (if any) to the Holder of such Allowed Claim or Allowed HoldCo Interest, in accordance with the Waterfall Recovery as set forth in Article IV.D of the Plan. As soon as reasonably practicable after the date that the Order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Disputed HoldCo Interest, becomes a Final Order or a stipulation Allowing any Disputed Claim or Disputed HoldCo Interest becomes effective according to its terms, and solely to the extent the Distribution Agent for the applicable Class of Claims or HoldCo Interest has made a distribution to such Class as of such date, the Distribution Agent shall provide to the Holder of such Claim or HoldCo Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or HoldCo Interest unless such Holder is entitled to Post-Petition Interest under Article III of the Plan.

        C.    <u>Trust Reserve Accounts</u>

        1.    Chrome Disputed Claims Reserve

On or after the Effective Date, the Plan Administrator may establish the Chrome Disputed Claims Reserve, in an amount or amounts as reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement. On or after the Effective Date, the Plan Administrator may deposit Cash into or withdraw Cash from the Chrome Disputed Claims Reserve if the Chrome Disputed Claims Reserve Amount changes in accordance with this Agreement.

The Trust will withhold the Chrome Disputed Claims Reserve from the property to be distributed under the Plan to Holders of Allowed Claims asserted against the Chrome Debtors and may request estimation of any Chrome Disputed Claim that is contingent or unliquidated. The Trust will withhold the Chrome Disputed Claims Reserve based upon the amount of the Chrome Disputed Claim asserted by the respective Holder of such Chrome Disputed Claim or, if applicable, the estimated amount of each such Chrome Disputed Claim as determined by the Bankruptcy Court. If a Chrome Disputed Claim is estimated or allowed in an amount less than the amount being held on account of such Claim in the Chrome Disputed Claims Reserve, the difference shall be released from the Chrome Disputed Claims Reserve.  For the avoidance of doubt, no monies may be allocated to the Equity Recovery Pool unless the Chrome Disputed Claims Reserve is fully funded inclusive of any Post-Petition Interest payable on account of any applicable Chrome Disputed Claims.

        2.    Lemonaid Disputed Claims Reserve

On or after the Effective Date, the Plan Administrator may establish the Lemonaid Disputed Claims Reserve, in an amount or amounts as reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement.  On or after the Effective Date, the Plan

Administrator may deposit Cash into or withdraw Cash from the Lemonaid Disputed Claims Reserve if the Lemonaid Disputed Claims Amount changes at any time in accordance with this Agreement.

The Trust will withhold the Lemonaid Disputed Claims Reserve from the property to be distributed under the Plan to Holders of Allowed Claims asserted against the Lemonaid Debtors and may request estimation for any Lemonaid Disputed Claim that is contingent or unliquidated. The Trust will withhold the Lemonaid Disputed Claims Reserve based upon the amount of the Lemonaid Disputed Claim asserted by the respective Holder of such Lemonaid Disputed Claim or, if applicable, the estimated amount of each such Lemonaid Disputed Claim as determined by the Bankruptcy Court. If a Lemonaid Disputed Claim is estimated or allowed in an amount less than the amount being held in the Lemonaid Disputed Claims Reserve for such Claim, the difference shall be released from the Lemonaid Disputed Claims Reserve.  For the avoidance of doubt, no monies may be allocated to the Equity Recovery Pool unless the Lemonaid Disputed Claims Reserve is fully funded inclusive of any Post-Petition Interest payable on account of any applicable Lemonaid Disputed Claims.

3.      Administrative / Priority Claims Reserve

If not established prior to the Effective Date, on the Effective Date, in consultation with the Debtors and the Committees, the Plan Administrator shall establish the Administrative / Priority Claims Reserve by depositing Cash in the amount of the Administrative / Priority Claims Reserve Amount into the Administrative / Priority Claims Reserve in accordance with the terms of this Agreement. The Administrative / Priority Claims Reserve Amount shall be used to pay the Holders of all Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims that shall be paid in the first instance from the Professional Fee Escrow), Allowed Priority Tax Claims, and Allowed Other Secured Claims in full in Cash.

If all or any portion of any Other Priority Claim, Administrative Claim, Priority Tax Claim, or Other Secured Claim becomes Disallowed, the amount on deposit in the Administrative / Priority Claims Reserve attributable to the disputed portion of such Disallowed Claim, including any interest that has accrued on the amount on deposit in the Administrative / Priority Claims Reserve for the disputed portion of such Disallowed Claim, shall remain in the Administrative / Priority Claims Reserve to the extent that the Plan Administrator reasonably determines necessary to ensure that the Cash remaining in the Administrative / Priority Claims Reserve is sufficient to ensure that all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, or other Allowed Other Secured Claims will be paid in accordance with the Plan without any further action or order of the Bankruptcy Court. Any amounts remaining in the Administrative / Priority Claims Reserve after payment of all Allowed Administrative Claims (including any Allowed Professional Fee Claim that is not paid in full from the Professional Fee Escrow), Allowed Other Priority Tax Claims, Allowed Other Priority Claims, or other Allowed Other Secured Claims shall be distributed by the Trust in accordance with the Waterfall Recovery, the Plan, and this Agreement.

15

4.      Data Breach Settlement Reserves

If not established prior to the Effective Date, on or after the Effective Date, the Plan Administrator shall establish the U.S. Data Breach Class Settlement Fund Reserve, the U.S. Data Breach Arbitration Settlement Reserve, the Canadian Data Breach Class Settlement Fund Reserve, and the Pixel Class Settlement Fund Reserve in accordance with the terms of this Agreement, the U.S. Data Breach Class Settlement Agreement, the Canadian Data Breach Class Settlement Agreement, the U.S. Data Breach Arbitration Settlement Agreement, and the Pixel Class Settlement Agreement, as applicable.

5.      Cyber Insurance Reserve

If not established prior to the Effective Date, on or after the Effective Date, the Plan Administrator shall establish the Cyber Insurance Reserve, subject to Article VIII of this Agreement.  Following the receipt of proceeds from the Cyber Insurance Policies, the Plan Administrator shall transfer such proceeds to the Cyber Insurance Reserve to be distributed in accordance with the Cyber Insurance Proceeds Allocation.

6.      GUC Subordinated Claims Reserve

On or after the Effective Date, the Plan Administrator may establish a GUC Subordinated Claims Reserve in an amount or amounts reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement, to provide for the payment of GUC Subordinated Claims pending their allowance, in the event that all Allowed General Unsecured Claims have been paid in full in accordance with the Plan, such that Holders of Allowed GUC Subordinated Claims shall be entitled to receive a distribution under the Plan.

D.      <u>Retained Causes of Action</u>

Subject to Article VIII of this Agreement, the Trust may prosecute, negotiate, settle or otherwise compromise, or abandon any Retained Causes of Action without further order of the Bankruptcy Court, except as otherwise provided in the Plan, the Confirmation Order, or this Agreement.  Except as otherwise expressly provided in the Plan or this Agreement, the Trust may, but is not required to, pursue any Retained Causes of Action by informal demand and/or by the commencement of litigation. For the avoidance of doubt, net proceeds from Retained Causes of Action are Plan Administration Trust Assets.

E.      <u>Abandonment</u>

If, in the Plan Administrator's reasonable judgment, any Plan Administration Trust Assets cannot be sold in a commercially reasonable manner or the Plan Administrator believes in good faith that such Plan Administration Trust Assets have inconsequential value to the Trust or the Plan Administration Trust Beneficiaries, the Trust shall have the right (subject to Article VIII of this Agreement) to abandon or otherwise dispose of such Plan Administration Trust Assets, including by donating such Plan Administration Trust Asset to a charitable organization.

F.      Distributions

1.      Distributions Generally

The Trust shall make distributions from the Plan Administration Trust Assets of net Cash income and all other net Cash proceeds received by the Trust from the sale or liquidation of Plan Administration Trust Assets at least annually; provided, however, that the Trust may, to the extent consistent with Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by Revenue Procedure 94-45, 1994-2 C.B. 684, retain such amounts (a) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Plan Administration Trust Assets during the term of the Trust, (b) to pay reasonable Plan Administration Trust Expenses, and (c) to satisfy all other liabilities incurred or assumed by the Trust (or to which the Plan Administration Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Agreement, and retention of such amounts may preclude a distribution.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but such payment or performance shall be deemed to have been completed as of the required date.

Subject to Article VII of the Plan, distributions under the Plan on account of Allowed Claims or Allowed HoldCo Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Allowed HoldCo Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Plan Administrator, the Representatives, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct. Distributions to Holders of HoldCo Interests shall be made through the facilities of [DTC/Cede & Co.] and the Plan Administrator shall be authorized to deal with the Holders of HoldCo Interests and the making of distributions to such Holders through the customary practices and procedures of [DTC/Cede & Co.], subject to Article VIII of this Agreement. After the Trust has made its final distribution to Holders of HoldCo Interests, the Trust shall be authorized to cancel all HoldCo Interests and terminate their listing with [DTC/Cede & Co.], and take any other action reasonably necessary to effect a cancelation and discharge of such HoldCo Interests.

Payments to Professionals for all Allowed Professional Fee Claims shall be made from the Professional Fee Escrow Account until all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court in accordance with the Plan and any agreement governing the Professional Fee Escrow Account.  If funds in the Professional Fee Escrow Account are insufficient to pay all Allowed Professional Fee Claims in full, any unpaid amounts shall constitute a Trust Expense and shall be paid as such under the terms of the Plan and this Agreement.

Except as otherwise provided in the Plan, and subject to Article VIII of this Agreement, the Trust is not required to file any accounting or seek approval of any court with respect to the administration of the Trust, or as a condition for making any payment or distribution out of the Plan Administration Trust Assets.

2.      Powers of Distribution Agent

Each Distribution Agent, with respect to the Class or Classes of Claims or HoldCo Interests for which it serves, shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated by the Plan or this Agreement; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Distribution Agent by Order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to exercise any such powers.

3.      Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court and subject to the prior written consent of the Plan Administrator, the Trust shall pay the reasonable and documented compensation, fees and out-of-pocket expenses (including taxes) incurred by any Distribution Agent on or after the Effective Date (including taxes) as Plan Administration Trust Expenses in Cash upon presentment of written invoices in customary form.  If the Trust disputes any invoice presented by any Distribution Agent, the Trust shall pay any undisputed amounts while the parties attempt to resolve the disputed amounts consensually.  The Bankruptcy Court shall determine any dispute the parties are unable to resolve consensually.  For the avoidance of doubt, any reference to "taxes" in this paragraph shall not include income taxes imposed on the Distribution Agent.

4.      Distribution Record Date; Addresses

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date. The Distribution Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Claims or disputes over any Cure Claims, neither the Trust nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the Non-Debtor party to the applicable Executory Contract as of the Effective Date, even if such Non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim. The Distribution Record Date shall not apply to publicly held Securities, including HoldCo Interests, deposited with [DTC/Cede & Co.]. In connection with any distribution under the Plan to be effected through the facilities of [DTC/Cede & Co.] (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors or the Trust, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with Holders of any applicable HoldCo Interests to the extent consistent with the customary practices of [DTC/Cede & Co.].

Except as otherwise provided in the Plan or this Agreement, the Trust shall make Plan distributions to Holders of Allowed Claims in Classes 1, 2, 6 through 9, and 13 and to Holders of Allowed HoldCo Interests as of the Distribution Record Date (1) at the address set forth in the underlying Proof of Claim or Proof of Interest for any certificated HoldCo Interest, if Filed, (2) at the address set forth on the Debtors' Schedules or on any register of equity holders of certificated HoldCo Interests the Debtors may maintain, if no Proof of Claim or Proof of Interest is Filed, (3) pursuant to the book-entry system under which uncertificated HoldCo Interests are held or

18

(4) pursuant to any written change of address Filed with the Bankruptcy Court and delivered to the Trust.

Upon the final approval of the relevant settlement agreement, and the corresponding allowance of the settlement Claim, the Trust shall make Plan distributions to the Holders of Claims in Classes 3 through 5 and Class 14 by delivery of the required distribution(s) under the respective settlements and the Plan to the relevant settlement fund, benefits plan, or other designated agent under the applicable settlement agreement. Neither the Trust, the Plan Administrator, nor the Representatives shall have or incur any liability from or after making a distribution to the relevant settlement fund, benefits plan, or other designated agent with respect to any distribution(s) made under the Plan or this Agreement on account of Allowed Claims in Classes 3 through 5 or Class 14 of the Plan.

     5.     Compliance with Tax Requirements

Tax matters with respect to Plan distributions shall be governed by Article V of this Agreement.

     6.     Surrender of Instruments

As a condition precedent to receiving any distribution under the Plan, each Holder of a certificated instrument or note must surrender such instrument or note held by it to the Trust or its designee. Any holder of any such certificated instrument or note that fails to: (i) surrender the instrument or note; or (ii) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Trust and furnish a bond in form, substance, and amount reasonably satisfactory to the Trust within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights, claims, or interests and may not participate in any distribution under the Plan or this Agreement.

     7.     No Fractional Units

No fractional units of Trust Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed HoldCo Interest otherwise would result in the issuance of Trust Interests that are not a whole number, such Trust Interests shall be rounded as follows: (a) fractions of greater than one-half shall be rounded to the next higher whole number and (b) fractions of one-half or less shall be rounded to the next lower whole number with no further payment on account thereof. The total number of authorized and/or issued Trust Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

     8.     Foreign Currency Exchange Rate.

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value calculated by using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition* on the Petition Date.

9.      Setoffs and Recoupments

Except as otherwise provided in the DIP Orders, the Confirmation Order or the Plan, the Trust may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any payments or distributions to be made pursuant to the Plan on account of any Allowed Claim or Allowed HoldCo Interest, any and all claims, rights, and Causes of Action that the Trust may hold against the Holder of such Allowed Claim or Allowed HoldCo Interest; provided that neither the failure to effectuate a setoff or recoupment nor the Allowance of any Claim or Interest shall constitute a waiver or release by the Trust of any and all claims, rights, and Causes of Action that the Trust may possess against the applicable Holder.

Notwithstanding anything to the contrary in the Plan or this Agreement, but subject to the Bar Date Order (including the requirement that all Proofs of Claim state whether a Claim is subject to a right of setoff or recoupment) and the automatic stay, nothing shall modify the rights, if any, of any Holder of Allowed Claims, Allowed HoldCo Interests or any current or former party to an Executory Contract to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law with respect to undisputed amounts owing to or held by it, including the (1) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of any unexpired lease with the Debtors or any successors to the Debtors under the Plan; (2) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; (3) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or the Trust; or (4) assertion of rights of setoff and/or recoupment in connection with periodic reconciliations in accordance with the terms of assumed unexpired leases.

10.     Minimum Distribution

No payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the distribution shall reflect a rounding of such fraction to the nearest whole penny, rounded down to the next lower whole cent. Claimants whose aggregate distributions total less than $100 shall not be entitled to a distribution under the Plan, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII of the Plan and its Holder is forever barred pursuant to Article VIII of the Plan from asserting that Claim against the Debtors, the Wind-Down Debtors, the Trust, or their respective property; provided, however, that the foregoing shall not apply to distributions to Holders of Allowed Claims in Classes 3, 4, 5, and 14.

11.     Allocations

To the maximum extent permitted by Applicable Law, Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest (if any) provided for by this Plan, including Post-Petition Interest.

12.     Distributions Free and Clear

Except as otherwise provided in the Plan, any distribution or transfer made under the Plan, including distributions to any Holder of an Allowed Claim or Allowed HoldCo Interest, shall be

free and clear of any Liens, Claims, Interests, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

13.     Claims Paid by Third Parties

The Trust shall reduce a Claim, and such Claim (or portion thereof) shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor, the Trust, the Plan Administrator, or another Distribution Agent.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim under the Plan and also receives payment from a party that is not a Debtor, the Trust, the Plan Administrator, or another Distribution Agent on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Trust to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim (plus Post-Petition Interest, if applicable) as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

14.     Claims Payable by Third Parties

Except as provided otherwise in the Plan, including with respect to proceeds of the Cyber Insurance Policies, no distributions under the Plan need to be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies or the Wind-Down Debtors' insurance policies, as applicable, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim against any Debtor, then immediately upon such insurers' agreement, the applicable portion of such Claim may be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

15.     Inapplicability of Escheat, Abandoned or Unclaimed Property Laws.

Unclaimed or undeliverable property held by the Trust in accordance with Article VII.E.3 of the Plan shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, or any local governmental unit.  In connection with any unclaimed or undeliverable distribution, the Trust may, in its sole discretion, attempt to determine a Holder's current address or otherwise locate a Holder, but nothing in this Agreement or the Plan shall require the Trust to do so.

16.     Voided Checks; Request for Reissuance.

In accordance with Section VII.E.3. of the Plan, checks issued with respect to an Allowed Claim shall be null and void if not negotiated within 90 days after the date of issuance. Requests for reissuance of any voided check shall be made directly to the Trust by the Entity to whom such check was originally issued. Any claim in respect of a voided check shall be made within 30 days

after the date upon which such check was deemed void. If no request is made as provided in the preceding sentence, any Claims in respect of such voided check shall be discharged and forever barred.

        G.      <u>Compliance With Laws</u>

Any and all distributions of the Plan Administration Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

        H.      <u>Fiscal Year</u>

Except for the first and last years of the term of the Trust, the fiscal year of the Trust shall be the calendar year. For the first and last years of the term of the Trust, the fiscal year of the Trust shall be such portion of the calendar year that the Trust is in existence.

        I.       <u>Books and Records</u>

On the date hereof, the Trust shall: (a) take possession of (i) all books, records, and files of the Debtors and the Estates that were not sold or otherwise transferred prior to the Effective Date and (ii) copies of all books, records, and files of the Debtors and the Estates that were sold or otherwise transferred prior to the Effective Date that were retained pursuant to the Purchase Agreements or other relevant agreements, in each case that relate to the operations of the Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Plan Administrator determines, in accordance with this Agreement (including, but not limited to, the restrictions set forth in Article VIII), that retention of same is no longer necessary or beneficial.

The Plan Administrator shall retain and preserve the Debtors' books, records, and files that have been delivered to or created by the Trust, in such detail and for such period of time as may be necessary to enable the Trust to make full and proper reports in respect thereof in accordance with the provisions of this Agreement and applicable law, including applicable tax, securities and other federal and state laws. The Trust may, in in sole discretion and without the need for Bankruptcy Court approval (but and except as set forth in Article VIII of this Agreement) abandon or destroy any books and records that are not necessary for the administration of the Trust.

For the avoidance of doubt, the cost and expenses of maintaining books and records delivered to and maintained by the Trust shall constitute, and be paid as, Plan Administration Trust Expenses.

        J.      <u>No Bond Requirement</u>

Notwithstanding any state or other applicable law to the contrary, the Trust, the Plan Administrator, the Representatives, and any other Distribution Agent (including any successor to any of those parties) shall be exempt from giving any bond or other security in any jurisdiction and the Plan Administrator, the Representatives and any other Distribution Agent shall serve without bond.

K.    Plan Administration Trust Insurance

Subject to Article VIII of this Agreement, the Plan Administrator is authorized, but not required, to obtain all reasonable insurance coverage for the Trust, itself and its respective employees or agents, if applicable, the Representatives and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the Trust, which insurance coverage may, in the Plan Administrator's discretion, be extended for a reasonable period after the termination of the Trust or this Agreement.

The costs of any such insurance coverage shall constitute Trust Expenses and be paid out of Plan Administration Trust Assets.

## V.    TAX MATTERS[4]

A.    Trust's Tax Power for the Debtors

For all taxable periods ended on or before the dissolution of the Debtors, the Trust shall have the same authority and responsibility in respect of all taxes of the Debtors (including as the common parent or other agent of any consolidated, combined, or unitary tax group of which the Debtors were the agent) and, to the same extent, as if the Trust was a Debtor.

In furtherance of the transfer of the Plan Administration Trust Assets to the Trust, the Trust shall be entitled to all tax refunds of the Debtors (and the Trust shall bear responsibility for all tax liabilities of the Debtors for taxable periods ended on or before the dissolution of the Debtors, to the extent not discharged by the Plan or provided for payment or otherwise satisfied in the Plan).

The Plan Administrator shall not have any personal liability whatsoever associated with the signing of the Debtors' tax returns or the payment of any tax, penalties or interests associated therewith.

B.    Treatment of Trust for Tax Purposes

Subject to any applicable law or definitive guidance from the IRS or a court of competent jurisdiction to the contrary and except to the extent the Debtors and the Committees determine otherwise in their reasonable discretion to treat all or any portion of the Trust as a "qualified settlement fund," a "disputed ownership fund" and/or otherwise, the Debtors intend that the Trust shall be a liquidating trust as that term is used under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the Plan Administrator will take a position on such Trust's tax return accordingly. For U.S. federal income tax purposes, the transfer of the Plan Administration Trust Assets to the Trust, will be deemed to occur as (a) a first-step transfer of the Plan Administration Trust Assets (other than such assets allocable to a DOF (defined below) or QSF (defined below)) to the Plan Administration Trust Beneficiaries, and (b) a second-step transfer by such Plan Administration Trust Beneficiaries to the Trust. As soon as possible after the transfer of the Plan Administration Trust Assets to the Trust, subject to Article VIII of this Agreement, the Plan Administrator shall make a good faith valuation of the Plan

---

[4]    [Note to Draft: Under discussion.]

Administration Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the Trust, and the Plan Administration Trust Beneficiaries shall take consistent positions with respect to the valuation of the Plan Administration Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax reporting purposes.

To the extent permitted by applicable law, all parties, including the Trust, the Plan Administrator, and any Plan Administration Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes. The Debtors will provide information to the Trust as to their valuation determinations with respect to the Plan Administration Trust Assets on the Effective Date to facilitate consistent tax reporting by the Trust.

So long as the Trust is treated as a liquidating trust, the Trust shall file any and all tax returns for the Trust and any DOF (defined below) (if a DOF election is made) or QSF (defined below), as applicable, including, but not limited to, the filing of a separate federal tax return for any DOF or QSF; provided, however, that the Plan Administrator shall have no personal liability for the signing or accuracy of the Trust's or any DOF's tax returns (as applicable) or for any tax liability related thereto.

Allocations of Trust taxable income among the Plan Administration Trust Beneficiaries (other than taxable income allocable to any DOF or QSF) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to any DOF or QSF) to the holders of the Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Trust. Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Plan Administration Trust Assets. The tax book value of the Plan Administration Trust Assets for purposes of this Section V.B. shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Trust shall be responsible for payment, out of the Plan Administration Trust Assets (other than those subject to the DOF election or QSF treatment described in Article IV.E.5 of the Plan), of any taxes imposed on the Trust, the Plan Administration Trust Assets (other than those subject to the DOF election or QSF treatment described in Article IV.E.5 of the Plan and Section V.D of this Agreement) or any DOF or QSF to the extent such payment is consistent with the Bankruptcy Code, the Plan, and any applicable order of the Bankruptcy Court including, but not limited to, the Bar Date Order; provided, however, that any taxes imposed on any DOF or its assets will be paid out of the assets subject to the DOF election and any taxes imposed on any QSF or its assets will be paid out of the assets subject to QSF treatment, and any subsequent distributions in respect of the allowance or disallowance of such claims will be reduced accordingly. In the event, and to the extent, that any Cash subject to the DOF election is insufficient to pay the portion of any taxes attributable to taxable income arising from assets subject to the DOF election and any

24

Cash subject to QSF treatment is insufficient to pay the portion of any taxes attributable to taxable income arising from assets subject to QSF treatment, such assets (including those otherwise distributable) may be sold to pay such taxes.

The Trust shall file tax returns as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), except to the extent of any portion of the Trust that is treated as a "qualified settlement fund" or a "disputed ownership fund".

The Trust shall issue tax-related notices to the applicable Plan Administration Trust Beneficiaries as the Trust determines are necessary or desirable.

C.    Tax Withholdings by the Plan Administration Trust

Distributions made under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Plan distributions shall be subject to any such withholding, payment, and reporting requirements. The Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator or the Distribution Agent, as applicable, shall have the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The applicable Distribution Agent may require any Holder of any Claim or any HoldCo Interest to complete the appropriate IRS Form W-8 or IRS Form W-9 as a prerequisite to receiving any distribution under the Plan. If a Holder of any Claim or HoldCo Interest does not provide to the applicable Distribution Agent, within 90 days of first written request, all documentation that, in the applicable Distribution Agent's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Claim or Interest, including the appropriate IRS Form W-8 or IRS Form W-9, the relevant Claim or HoldCo Interest shall be deemed Disallowed, forever barred in its entirety without further order of the Bankruptcy Court and the funds on account of any present or future distribution associated with such Claim or HoldCo Interest shall revert to the Trust for all purposes, including, but not limited to, redistribution to the other Holders of Claims or HoldCo Interests, as applicable, in accordance with the terms of the Plan (upon payment or reservation in full of all Plan Administration Trust Expenses).  For the avoidance of doubt, with respect to (i) Classes 3, 4, 5, and 14, upon the final approval of the settlement associated with each such Class, the Trust shall only be responsible to obtain the tax identification document(s) (e.g., form W-9) of the relevant settlement fund, benefits plan, or other designated agent under the applicable settlement agreement in the relevant Class and not any other individual or entity, and the designated agent under the applicable settlement agreement or benefits plan in the relevant Class shall make all necessary arrangements to prepare and file any and all required tax forms and/or tax returns in connection with payments to individual claimants; and (ii) HoldCo Interests held exclusively in book entry form at [DTC/Cede & Co.],

25

the Trust shall only be responsible to obtain the tax identification document(s) (e.g., form W-9) of [DTC/Cede & Co.]

Notwithstanding any other provision of the Plan to the contrary, each Holder of a Claim or Interest that is to receive a distribution under the Plan or this Agreement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. Amounts properly withheld from distributions made under the Plan and this Agreement and paid over to the applicable taxing authority for the account of any Holder will be treated as amounts distributed to such Holder.

D.    DOF Election

The Trust may, in its sole discretion, determine the best way to report for United States tax purposes with respect to any of the various disputed Claims reserves, if applicable, including, but not limited to, filing a tax election to treat any or all of such disputed Claims reserves as a disputed ownership fund ("DOF") or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust (and, to the extent permitted by applicable law, report consistently with the foregoing for United States federal, state, and local income tax purposes) (the "DOF Election"). If a DOF Election is made with respect to one or more disputed Claims reserves, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of any DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for each DOF or other separate entity and the payment of federal and/or state income tax due.

E.    Qualified Settlement Fund

The Trust may, if it determines, in its sole discretion, that it is required to, report for United States tax purposes, a portion of the Trust's assets as one or more "qualified settlement funds" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Tax Code ("QSF").  The Trust shall comply with all federal and state tax reporting and tax compliance requirements associated with such assets constituting a QSF, including the filing of a separate federal tax return for each QSF or other separate entity and the payment of federal and/or state income tax due.

## VI.    POWERS AND LIMITATIONS OF THE TRUST AND THE PLAN ADMINISTRATOR

A.    Powers of the Trust

The Trust shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in the Bankruptcy Cases solely with respect to the purposes of the Trust set forth in the Plan and this Agreement or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, and is appointed as the representative of the Estates. The Trust may exercise all power and authority that may be exercised by any officer, director, or Holder of an Interest in the Debtors with like effect as if authorized, exercised, and taken by unanimous consent of such officers, directors, or Holders of HoldCo Interests.

26

B.     Responsibilities and Authority of the Trust

The Trust shall be the exclusive administrator of the Plan Administration Trust Assets for purposes of 31 U.S.C. § 3713(b), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the Trust's duties under this Agreement. The Trust shall hold and distribute plan distributions in accordance with the provisions of the Plan and this Agreement.

The Trust may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties and those of the Plan Administrator under the Plan and this Agreement, and may compensate and reimburse the reasonable fees and expenses of those professionals as Plan Administration Trust Expenses under this Agreement.

The powers of the Trust shall include any and all powers and authority to implement the Plan (except for administering the Professional Fee Escrow Account which is not a Trust responsibility), administer and make distributions in accordance with the Plan and this Agreement, including: (a) liquidating, receiving, holding, investing, supervising, and protecting the Plan Administration Trust Assets; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made from Plan Administration Trust Assets under the Plan; (c) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (d) paying all Plan Administration Trust Expenses as provided in this Agreement and the Plan; (e) except as otherwise provided in the Plan or this Agreement, investigating, commencing, pursuing, enforcing, prosecuting, abandoning, waiving, settling, compromising or releasing, as appropriate, claims, interests, rights, and Privileges under the Retained Causes of Action in accordance with Article IV.F of the Plan; (f) administering and paying taxes of the Wind-Down Debtors and the Trust, including filing tax returns; (g) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (h) discharging the Debtors' and the Wind-Down Debtors', as applicable, post-Effective Date obligations under the Purchase Agreements, if any; (i) administering, reconciling and objecting to Claims and Interests against the Debtors; and (j) subject to Article VIII, exercising such other powers as may be vested in the Trust pursuant to the Plan, the Confirmation Order, or any applicable orders of the Bankruptcy Court or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with this Agreement.

C.     Wind-Down

As soon as practicable after the Effective Date, the Plan Administrator shall: (a) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (b) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of one or more of the Debtors or the Wind-Down Debtors under the applicable laws of their state of incorporation or formation (as applicable); (c) perform the Wind-Down Transactions; and (d) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the Plan as it relates to the Wind-Down Debtors and the Wind-Down Transactions.  Any certificate of dissolution or

27

equivalent document may be executed by the Plan Administrator without the need for any action or approval by the shareholders or board of directors or managers of any Debtor. From and after the Effective Date, except with respect to Wind-Down Debtors as set forth in the Plan, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (y) shall be deemed to have canceled pursuant to the Plan all Interests (except to the extent necessary to facilitate the right of Holders of Allowed HoldCo Interests to receive distributions under the Plan), and (z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

D.    Actions Taken by the Trust

Subject to Article VIII of this Agreement, without limiting the Trust's authority under the preceding subsection, the Trust, the Plan Administrator, and/or the Representatives, as applicable, may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and this Agreement, without the need for Bankruptcy Court approval (unless otherwise indicated) subject to and in accordance with the terms of the Plan and this Agreement, including, but not limited to:

1.    the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of the Plan and this Agreement and that satisfy the requirements of applicable law;

2.    the power to invest any monies held as Plan Administration Trust Assets and withdraw, make distributions, and pay taxes and other obligations owed by the Trust from such funds in accordance with the Plan and this Agreement;

3.    the ability to borrow funds or enter into an agreement to obtain litigation financing to the extent consistent with and in furtherance of the purposes of the Trust;

4.    the power to engage and compensate, without prior Bankruptcy Court order or approval, employees, independent contractors, professionals, and other representatives or agents to assist the Trust with respect to its responsibilities (including professionals previously retained by the Debtors or the Committees), which shall be paid as Plan Administration Trust Expenses out of the Plan Administration Trust Assets;

5.    the execution and delivery or any appropriate instruments or transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with the Plan and this Agreement;

6.    the power to act on behalf of the Debtors, the Debtors' Estates, or the Trust in commencing, prosecuting, compromising, settling, or defending any litigation or

28

rights (whether legal or equitable) pertaining to the Plan Administration Trust Assets, including the Retained Causes of Action, without notice to or approval from the Bankruptcy Court;

7.    the ability to appear and have standing in the Bankruptcy Court (or any other court having jurisdiction over the Plan Administration Trust Assets) to be heard with regard to objections to Claims or Interests, Retained Causes of Action, and other matters that may affect or relate to the Plan Administration Trust Assets;

8.    the Filing, prosecuting, compromising, or settlement of objections to Claims or Interests in accordance with the Plan without further approval of or application to the Bankruptcy Court;

9.    the filing of any appropriate documents with appropriate governmental authorities pursuant to applicable law;

10.    the ability to collect and liquidate all Plan Administration Trust Assets, including the sale of any Plan Administration Trust Assets, which may include, but is not limited to, the entry into litigation financing arrangements with respect to any Retained Causes of Action;

11.    the ability to protect and enforce the rights to the Plan Administration Trust Assets vested in the Trust by the Plan and this Agreement;

12.    the power to comply with the Trust's accounting, finance, and reporting obligations;

13.    the power to take any action necessary to administer the Chapter 11 Cases, which may include, but is not limited to, the power to seek to establish a bar date for filing proofs of HoldCo Interests;

14.    the power to pay any and all expenses and make all other payments in connection with administering the Trust without further order of the Bankruptcy Court as Plan Administration Trust Expenses out of the Plan Administration Trust Assets and to pay Wind-Down Expenses; provided, however, that in no event shall the Plan Administrator be liable in its individual capacity for payment of any Plan Administration Trust Expenses or Wind-Down Expenses;

15.    the ability to open and maintain bank accounts in the name of the Trust, draw checks and drafts thereon on the sole signature of the Plan Administrator, and terminate such accounts as the Trust deems appropriate;

16.    in the event that the Trust determines that the Plan Administration Trust Beneficiaries or the Trust may, will, or have become subject to adverse tax consequences, in the Trust's sole discretion, the power to take such actions that will, or are intended to, alleviate such adverse tax consequences;

29

17. the ability to cause the Trust to abandon or donate to a charitable organization any Plan Administration Trust Assets that the Trust determines in its discretion to be too impracticable or of inconsequential value to the Trust and the Plan Administration Trust Beneficiaries;

18. the ability to make distributions to Holders of Allowed Claims and Allowed HoldCo Interests and deliver distributions on account of the Trust Interests in accordance with the Plan and this Agreement;

19. the ability to seek a final decree closing some or all of the Chapter 11 Cases; and

20. any and all other actions that the Trust, determines is necessary or appropriate to effectuate the Plan and this Agreement, including, but not limited to, the right to conduct discovery and oral examination of any Person under Bankruptcy Rule 2004.

E. <u>Limitations on the Trust</u>

The Trust shall hold the Trust out as a trust in the process of liquidation and not as an investment company. The authority of the Trust shall be restricted to the liquidation of the Plan Administration Trust Assets on behalf, and for the benefit, of the Plan Administration Trust Beneficiaries and the distribution and application of the Plan Administration Trust Assets for the purposes set forth in, and the conservation and protection of the Plan Administration Trust Assets and the administration thereof in accordance with, the provisions of this Agreement, the Plan and the Confirmation Order, and shall not take any action that would jeopardize (1) treatment of the Trust as a "liquidating trust" that is a grantor trust for U.S. federal income tax purposes (unless all or a portion of the Trust is treated as a qualified settlement fund) and (2) if the DOF Election is made, the treatment of any of the disputed Claims reserves as a DOF for U.S. federal income tax purposes. The Trust shall not at any time, on behalf of the Trust or the Plan Administration Trust Beneficiaries, (1) enter into or engage in any trade or business, or (2) take any actions that are not related, directly or indirectly, to the purposes of this Plan Administration Trust Agreement and the Trust or the administration or implementation of the terms this Agreement.

F. <u>Term of the Plan Administrator</u>

The Plan Administrator will serve on and after the Effective Date in accordance with this Agreement and the Plan. The Plan Administrator shall serve until the earlier to occur of: (1) dissolution of the Trust in accordance with the terms of this Agreement and the Plan; or (2) the Plan Administrator's death, resignation, dissolution, incapacity, bankruptcy, liquidation, or removal pursuant to this Agreement.

The duties, responsibilities, and powers of the Plan Administrator shall terminate on the first date after which (i) the Trust is wound up and dissolved in accordance with the Plan, this Agreement, and applicable law, and (ii) the Wind-Down Transactions have been consummated.

G.      Plan Administrator Conflicts of Interest

If the Plan Administrator determines in its reasonable discretion that it has an actual or potential conflict of interest with respect to any matter, the Plan Administrator shall provide prompt notice to the Representatives and request that the Representatives designate a person to act on behalf of the Trust solely with respect to such matter (such designee a, "Conflicts Trustee"). If the Representatives cannot agree on a Conflicts Trustee to appoint to act on behalf of the Trust with respect to such matter, then each Representative will propose one candidate to the Plan Administrator, and the Plan Administrator shall select one of the candidates presented to act as Conflicts Trustee.

Either Representative may identify a potential conflict matter to the Plan Administrator by written notice.  If such conflict matter is not resolved within seven (7) days after the Plan Administrator's receipt of notice, the applicable Representative may request that the Bankruptcy Court appoint and approve a Conflicts Trustee.

Any Conflicts Trustee's authority to act on behalf of the Trust shall terminate automatically upon the conclusion of the matter giving rise to such actual or potential conflict of interest.

H.      Compensation and Expenses of the Plan Administrator

Subject to Article VIII, the Plan Administrator shall be entitled to receive reasonable compensation in connection with its performance of its duties plus reimbursement of its reasonable out-of-pocket expenses.  All reasonable and documented costs, expenses, and obligations, including filing fees, incurred by the Plan Administrator shall constitute Plan Administration Trust Expenses and be paid from the Plan Administration Trust Assets, prior to any distribution to the Plan Administration Trust Beneficiaries and without further Bankruptcy Court approval or order (subject to the limitations set forth in this Agreement, including, but not limited to, Article VIII, and the Plan).

I.      Employment, Indemnification, and Other Agreements

The Trust may (but is not required to) enter into employment, independent contractor, indemnification and other agreements with individuals who may be required to assist the Trust. Such agreements shall remain in place until such time as the Trust shall determine to either terminate or amend such agreements.

J.      Investment of Plan Administration Trust Monies

All monies and other assets received by the Trust shall be held in trust for the benefit of the Plan Administration Trust Beneficiaries, but need not be segregated from other Plan Administration Trust Assets, unless and to the extent required by the Plan and this Agreement. The Trust shall be permitted but not required to invest any such monies in the manner set forth in this Section VI.I, but shall not have any liability for interest or producing income on any monies received by the Trust and held for distribution or payment to the Plan Administration Trust Beneficiaries, except as such interest shall actually be received by the Trust, which interest or income shall be distributed as provided in the Plan and this Agreement.  Except as otherwise provided by the Plan or Confirmation Order, the right and power of the Trust to invest the Plan

Administration Trust Assets, the proceeds thereof, or any income earned by the Trust, other than those powers reasonably necessary to maintain the value of the Plan Administration Trust Assets and to further the Trust's purpose pursuant to the Plan, shall be limited to the right and power to (1) invest such Plan Administration Trust Assets (pending distributions in accordance with the Plan or this Agreement) in (i) short-term direct obligations of, or obligations guaranteed by, the United States of America; (ii) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof or (iii) a short-term money market fund; and (2) deposit such Plan Administration Trust Assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "Permissible Investments"); provided, that the scope of any such Permissible Investments shall be limited to include only those investments that a Trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. For the avoidance of doubt, the provisions of the Estates, Power and Trusts Law of New York shall not apply to the Trust or this Agreement. Notwithstanding the foregoing, the Plan Administrator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Plan Administrator's administration of the Trust.

## VII.   SUCCESSOR PLAN ADMINISTRATOR AND REPRESENTATIVES

### A.   Resignation

The Plan Administrator may resign by giving forty-five (45) days' written notice thereof to the Representatives, the U.S. Trustee, and Bankruptcy Court. Such resignation shall become effective on the effective date of the appointment of a successor Plan Administrator in accordance with Section VII.C and such successor's acceptance of such appointment in accordance with Section VII.E of this Agreement.

### B.   Removal

Either or both Representatives, on forty-five (45) days' notice, may file a motion seeking removal of the Plan Administrator for cause established by the moving party. If such motion is filed, until such time as such motion is ruled on by the Bankruptcy Court, any decisions by the Plan Administrator under this Agreement must either be (i) approved by both Representatives in writing, or (ii) approved by the Bankruptcy Court. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section VII.B. Any removal of the Plan Administrator shall become effective on such date as may be specified by the Representatives, or, in the event of removal by order of the Bankruptcy Court, upon such date ordered by the Bankruptcy Court.

### C.   Effect of Resignation or Removal

The death, resignation, removal, incapacity, dissolution, bankruptcy, or insolvency of the Plan Administrator shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement, the Plan, or the Confirmation Order or to invalidate any action theretofore taken by the Plan Administrator. All fees and expenses properly incurred by the

Plan Administrator prior to the resignation or removal of the Plan Administrator shall be paid as Plan Administration Trust Expenses from the Plan Administration Trust Assets pursuant to the Plan, the Confirmation Order, and this Agreement. In the event of the resignation or removal of the Plan Administrator, such Plan Administrator shall (a) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Plan Administrator or directed by the Bankruptcy Court to effect the termination of such Plan Administrator's capacity under this Agreement, (b) promptly deliver to the successor Plan Administrator all documents, instruments, records and other writings related to the Trust as may be in the possession of such Plan Administrator, (c) render to the Representatives a full and complete accounting of monies and assets received, disbursed, and held during the term of office of the resigning Plan Administrator and such other information as reasonably requested by the Representatives, and (d) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Plan Administrator.

D.    Appointment of Successor Plan Administrator

Upon the death, resignation, removal, incapacity, dissolution, bankruptcy, or insolvency of a Plan Administrator, the Representatives shall select a successor Plan Administrator and file a notice of the same with the Bankruptcy Court, *provided that* in the event of the resignation or removal of the Plan Administrator, the Representatives shall select a successor Plan Administrator no later than the effective date of such resignation or removal.

If the Representatives are unable to agree on the selection of a successor Plan Administrator as provided in this Section VII.D, then either or both Representatives shall file a motion requesting the Bankruptcy Court to appoint a successor Plan Administrator, *provided that*, in the event only one Representative files such motion, the other Representative's rights to file an objection to any such motion are preserved.

E.    Acceptance of Appointment by Successor Plan Administrator

Any successor Plan Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator. Upon acceptance in writing, such successor Plan Administrator shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges in the Trust of its predecessor under this Agreement, the Plan, and the Confirmation Order with like effect as if originally named Plan Administrator.

F.    Representatives

Each Representative may resign or be removed pursuant to the same terms and procedures provided above regarding the resignation or removal of the Plan Administrator, except that a notice of resignation of any Representative shall be delivered to the Plan Administrator, the remaining Representative and the U.S. Trustee.

## VIII.   REPRESENTATIVES AND TRUST GOVERNANCE

### A.   Generally

The Representatives shall have the authority and responsibility to oversee, review, and consult with the Plan Administrator regarding activities and performance of the Trust as set forth in the Plan and this Article VIII, and shall have the authority to take and approve such other actions as are expressly set forth in this Agreement, including, but not limited to, the right to seek to remove the Plan Administrator pursuant to Section VII.B of this Agreement.

The authority of the Representatives will be effective as of the Effective Date, and, except as provided in Section III.B. of this Agreement with respect to the GUC Representative, will remain and continue in full force and effect until the Trust is dissolved in accordance with the terms of this Agreement or the Bankruptcy Court rules otherwise.

### B.   Meetings of the Trust Parties

The Plan Administrator and the Representatives (collectively, the "Trust Parties") shall meet at least once per calendar month, unless the Trust Parties agree otherwise in writing to adjourn or cancel one or more monthly meetings.

Special meetings of the Trust Parties may be held whenever and wherever convened by the Plan Administrator; *provided, however,* that the Plan Administrator shall provide no less than two (2) days' written notice of any special meeting, unless both Representatives consent to shorter notice.

Any Trust Party proposing to discuss written materials at a meeting with the other Trust Parties must provide the other Trust Parties with copies of such written materials no less than two (2) days prior to such meeting, unless all other Trust Parties consent to shorter notice.

### C.   Disposition of Assets

The Plan Administrator may, with notice to the Representatives, abandon, sell, transfer, or otherwise dispose of any Plan Administration Trust Assets in any commercially reasonable manner (including abandonment or donation to a charitable organization of its choice), that the Plan Administrator reasonably concludes is of inconsequential benefit to the Trust Beneficiaries; *provided that* the Plan Administrator shall provide the Representatives no less than seven (7) days' written negative notice of any proposed abandonment, sale, transfer or other disposition of any Plan Administration Trust Assets greater than $250,000 in value.  If both Representatives object in writing within such notice period, the Plan Administrator may not consummate the proposed abandonment, sale, transfer or other disposition of the Plan Administration Trust Assets.  If only one of the Representatives provides timely written notice of an objection to the proposed abandonment, sale, transfer or other disposition of Plan Administration Trust Assets, then the Plan Administrator may file a motion seeking Bankruptcy Court approval of the proposed disposition of such Plan Administration Trust Assets, *provided* that the Representatives' rights to file an objection to such motion are preserved.

For the avoidance of doubt, no notice to, or approval from the Bankruptcy Court shall be required for any abandonment, sale, transfer or other disposition of a Plan Administration Trust Asset, except as otherwise provided in this Section VIII.C. or in Section VIII.J.1 of this Agreement.

    D.    <u>Establishment and Maintenance of Reserves</u>

        1.    Reserves Initially Established in Consultation with the Debtors and the Committees

To the extent that the Plan Administrator determines, in its discretion, that the amount of Cash deposited in the Administrative / Priority Reserve on the Effective Date, or held in such reserve from time to time thereafter, is insufficient to pay all Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims that shall be paid in the first instance from the Professional Fee Escrow), Allowed Priority Tax Claims, and Allowed Other Secured Claims in full in Cash, based on Claims filed after the Effective Date or otherwise, the Plan Administrator shall consult with the Representatives with respect to any proposed modification of the Administrative / Priority Reserve and provide the Representatives a reasonably detailed analysis in support of the request, together with such other information and documentation that the Representatives may reasonably require.

        2.    Reserves Established in Consultation with the Representatives

On or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall, in consultation with the Representatives, (a) establish and determine the initial amounts of the Chrome Disputed Claims Reserve, the Lemonaid Disputed Claims Reserve, and, if applicable, the Canadian Data Breach Class Settlement Fund Reserve, the Pixel Class Settlement Fund Reserve, the GUC Subordinated Claims Reserve, the U.S. Data Breach Arbitration Settlement Reserve, the U.S. Data Breach Class Settlement Fund Reserve and (b) if not established prior to the Effective Date, establish and determine the initial amounts of the Cyber Insurance Reserve.

To the extent that the Plan Administrator determines, in its discretion, that the amount of Cash deposited in any of the reserves set forth in this Section VIII.D.2, or held in any such reserve from time to time thereafter, is insufficient to satisfy the treatment specified in the Plan with respect to Claims in the corresponding Class or other material terms or conditions of the Plan, based on Claims filed after the Effective Date or otherwise, the Plan Administrator shall consult with the Representatives with respect to any proposed modification of the reserve to be supplemented and provide the Representative a reasonably detailed analysis in support of the request, together with such other information and documentation that the Representatives may reasonably require.

    E.    <u>Compensation</u>

        1.    Compensation of the GUC Representative

The GUC Representative shall be entitled to receive compensation equaling $150,000 per year, which will be pre-funded annually by the Plan Administrator, plus reasonable documented out-of-pocket expenses, which shall be subject to the GUC Professionals Budget and will be included in the monthly invoices to the Plan Administrator as set forth herein.

The GUC Representative shall provide to the Plan Administrator (a) monthly invoices detailing any out-of-pocket expenses, and (b) copies of invoices of any GUC Representative Professionals (defined below) that the GUC Representative seeks to pay.  If the Plan Administrator does not object in writing within seven (7) days after receipt of any invoice(s), the GUC Representative shall promptly pay the invoice(s) out of the GUC Professionals Budget.  If the Plan Administrator timely raises an objection, then (i) the GUC Representative shall promptly pay the undisputed portion of the invoice(s) provided by the GUC Representative out of the GUC Professionals Budget, and (ii) the Plan Administrator and the GUC Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s).  If the parties are unable to resolve such dispute within thirty (30) days after the date on which the Plan Administrator first sent written notice of its objection, then the GUC Representative may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Plan Administrator and an objection period for the Plan Administrator of fourteen (14) days.

2. Compensation of the Equity Representative

The Equity Representative shall be entitled to receive compensation equaling $150,000 per year, which will be pre-funded annually by the Plan Administrator, plus reasonable documented out-of-pocket expenses, which shall be subject to the Equity Professionals Budget and will be included in the monthly invoices to the Plan Administrator as set forth herein.

The Equity Representative shall provide to the Plan Administrator (a) monthly invoices detailing any out-of-pocket expenses, and (b) copies of invoices of any Equity Representative Professionals (defined below) that the Equity Representative seeks to pay.  If the Plan Administrator does not object in writing within seven (7) days after receipt of any invoice(s), the Equity Representative shall promptly pay the invoice(s) out of the Equity Professionals Budget. If the Plan Administrator timely raises an objection, then (i) the Equity Representative shall promptly pay the undisputed portion of the invoice(s) provided by the Equity Representative out of the Equity Professionals Budget, and (ii) the Plan Administrator and the Equity Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s). If the parties are unable to resolve such dispute within thirty (30) days after the date on which the Plan Administrator first sent written notice of its objection, then the Equity Representative may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Plan Administrator and an objection period for the Plan Administrator of fourteen (14) days.

3. Compensation of Plan Administrator

The compensation of the Plan Administrator shall be as agreed to by the Debtors and the Committees and set forth in the Plan Supplement.

4. Compensation Modifications

(a) The Plan Administrator may propose a modification to its compensation for cause by written request to the Representatives on seven (7) days' negative notice.  If (i) both Representatives timely object to a compensation modification proposed by the Plan Administrator, then the modification shall not be approved; and (ii) only one of the Representatives timely objects to a proposed modification to the Plan Administrator's compensation, then the Plan Administrator

may file a motion with the Bankruptcy Court seeking its approval, *provided* that the Representatives' rights to file an objection with the Bankruptcy Court are preserved.

(b) Either of the Representatives may propose a modification to its compensation for cause by written request to the Plan Administrator and the other Representative on seven (7) days' negative notice. If either the Plan Administrator or the other Representative timely objects to a proposed modification of any Representative's compensation, then the proposing Representative may file a motion with the Bankruptcy Court seeking its approval; *provided* that the other parties' rights to file an objection with the Bankruptcy Court are preserved.

F.    Trust Professionals

1.    Plan Administrator Professionals

The Plan Administrator, in consultation with the Representatives, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "Plan Administrator Professionals") to assist in carrying out its duties under the Plan and this Agreement. The Trust may compensate and reimburse the reasonable expenses of Plan Administrator Professionals, which shall constitute Plan Administration Trust Expenses, without further order of the Bankruptcy Court from the Plan Administration Trust Assets in accordance with the Plan and this Agreement.

On a monthly basis, the Plan Administrator shall provide reasonably detailed invoices to the Representatives with respect to (a) its fees and out-of-pocket expenses and (b) the fees and expenses of Plan Administrator Professionals. In the event that neither of the Representatives objects in writing within seven (7) days after receipt of such invoice(s), the Plan Administrator promptly shall pay the invoice(s) out of the Plan Administration Trust Assets as Plan Administration Trust Expenses. If either of the Representatives timely objects in writing, then (i) the Plan Administrator shall promptly pay the undisputed portion of the invoice(s) at the end of such period out of the Plan Administration Trust Assets as Plan Administration Trust Expenses, and the Trust Parties shall work in good faith to resolve any dispute with respect to the invoice(s) provided by the Plan Administrator; and (ii) the Plan Administrator and the objecting Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s). If the parties are unable to resolve such dispute within thirty (30) days after the date on which the objecting Representative first sent written notice of its objection, then the Plan Administrator may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Representatives and an objection period of fourteen (14) days for the Representatives.

2.    GUC Representative Professionals

The GUC Representative may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "GUC Representative Professionals") to assist in carrying out its duties under the Plan and this Agreement, subject to an initial budget of $[1.875] million for, among other things, compensation of GUC Representative Professionals in the aggregate (the "GUC Professionals Budget"). The Plan Administrator shall prefund the GUC Professionals Budget to

37

the GUC Representative. The GUC Representative may request an increase to the GUC Professionals Budget for cause by written request to the Plan Administrator and notice to the Equity Representative. If the Plan Administrator approves the GUC Representative's proposed increase to the GUC Professionals Budget, the Equity Representative may file an objection with the Bankruptcy Court to such increase and/or file a motion with the Bankruptcy Court seeking to obtain a commensurate increase. To the extent that the Plan Administrator denies a request for an increase in the GUC Professionals Budget, the GUC Representative may seek Bankruptcy Court approval of the request; *provided* that the Plan Administrator's and Equity Representative's right to file an objection with the Bankruptcy Court are preserved.

### 3. Equity Representative Professionals

The Equity Representative may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "Equity Representative Professionals") to assist in carrying out its duties under the Plan and this Agreement, subject to an initial budget of $[1.875] million for, among other things, compensation of Equity Representative Professionals in the aggregate (the "Equity Professionals Budget"). The Equity Representative may request an increase to the Equity Professionals Budget for cause by written request to the Plan Administrator and notice to the GUC Representative. If the Plan Administrator approves the Equity Representative's proposed increase to the Equity Professionals Budget, the GUC Representative may file an objection with the Bankruptcy Court to such increase and/or file a motion with the Bankruptcy Court seeking to obtain a commensurate increase. To the extent that the Plan Administrator denies a request for an increase in the Equity Professionals Budget, the Equity Representative may seek Bankruptcy Court approval of the request; *provided* that the Plan Administrator's and GUC Representative's right to file an objection with the Bankruptcy Court are preserved.

### G. Plan Administration Trust Expenses Reporting

The Plan Administrator shall pay all Plan Administration Trust Expenses out of Plan Administrator Trust Assets, and shall provide the Representatives with written monthly reports of such Plan Administration Trust Expenses no later than the last business day of each month.

### H. Claims Reconciliation

### 1. Plan Administrator Claims Reconciliation

The Plan Administrator, in consultation with the Representatives, shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise: Class 1 Other Secured Claims, Class 2 Other Priority Claims, Class 7 Chrome Other Secured Claims, Class 13 GUC Subordinated Claims (if any), any Claims filed by Converge Technology Solutions US LLC or KR Op Tech, LLC classified in Class 6 under the Plan, and any Remaining GUC Representative Reconciled Claims (if applicable) (collectively, "PA Reconciled Claims"). The Plan Administrator shall also have the authority, in consultation with the Representatives, to administer and adjust (or cause the adjustment of) the Claims Register or Trust Register to reflect any settlements or compromises of Disputed PA Reconciled Claims without any further notice to or action, order or approval of the Bankruptcy Court.

The Plan Administrator shall provide the Representatives at least seven (7) days' written negative notice of any proposed settlement, allowance, estimation, or objection to Claims (including, for the avoidance of doubt, any Remaining GUC Representative Reconciled Claims (if applicable)) in excess of $100,000 (on an individual basis or when taking similar claims together in the aggregate) (a "PA Claim Reconciliation Notice"); *provided* that to the extent the PA Claim Reconciliation Notice contemplates a Claims objection, a motion to estimate Claims or other pleading to be filed with the Bankruptcy Court, the Plan Administrator shall include the draft pleading with the PA Claim Reconciliation Notice in accordance with Section VIII.H.5 of this Agreement.  If both Representatives timely object to the proposed settlement, allowance, estimation or objection of any Claim(s) set forth in a PA Claim Reconciliation Notice, then the Plan Administrator shall not take the action proposed by the PA Claim Reconciliation Notice with respect to such disputed Claim(s).  If only one of the Representatives timely objects, then the Plan Administrator may file with the Bankruptcy Court such settlement, allowance, estimation, or objection seeking approval of the action proposed by the PA Claim Reconciliation Notice, *provided* that the Representatives' respective rights to file an objection to such motion with the Bankruptcy Court are preserved.

Beginning the first full calendar month following the Effective Date, the Plan Administrator shall provide the Representatives with a report on PA Reconciled Claims no later than the last business day of each month.

2.      Final Approval of Distributions to Qualified Settlement Funds

The Plan Administrator shall be responsible for (a) distributions to holders of Allowed Class 3 U.S. Data Breach Class Settlement Claims, Class 4 U.S. Data Breach Arbitration Claims, Class 5 Canadian Data Breach Class Settlement Claims and Class 14 Pixel Class Settlement Claims, including the initial payments disclosed in the Plan Supplement filed in the Chapter 11 Cases, and (b) in consultation with the Representatives, negotiating final settlement amounts with counsel to the Holders of the U.S. Data Breach Settlement Claims, and/or objecting to the applicable Claim of the Holders of the U.S. Data Breach Settlement Claims.

The Plan Administrator shall provide no less than seven (7) days' written negative notice of any proposed settlement with U.S. Data Breach Class Counsel.  If at least one Representatives timely objects in writing to the proposed settlement, then the Trust Parties and U.S. Data Breach Class Counsel shall meet and confer on a schedule for briefing and discovery related to such settlement, and the rights of all parties to file an objection with the Bankruptcy Court in respect of the schedule for briefing, schedule for discovery, or the proposed settlement shall be preserved.

3.      GUC Representative Claims Reconciliation

The GUC Representative, in consultation with the Plan Administrator and the Equity Representative, shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise Class 6 Chrome Commercial Claims (except for any Claims filed by Converge Technology Solutions US LLC and KR Op Tech, LLC), Class 8 Lemonaid Commercial Claims, and Class 9 Lemonaid Other General Unsecured Claims (collectively, "GUC Representative Reconciled Claims" and such process, the "GUC Reconciliation Process"); *provided* that upon the date that is [six (6)] months from the Effective

Date (the "GUC Representative Reconciled Claims Deadline") any GUC Representative Reconciled Claims that the GUC Representative has not objected to, reconciled, allowed, prosecuted, negotiated, estimated, settled, or otherwise compromised in accordance with this Agreement as of the GUC Representative Reconciled Claims Deadline (if any) (the "Remaining GUC Representative Reconciled Claims") shall become the Plan Administrator's responsibility to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise in accordance with Section VIII.H.1 of this Agreement and on the same terms as the other PA Reconciled Claims, and the GUC Representative will no longer have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise such Remaining GUC Representative Reconciled Claims; *provided further* that if at any time between the Effective Date and the GUC Representative Reconciled Claims Deadline, the Plan Administrator determines in its reasonable discretion and after consultation with the GUC Representative, that the GUC Representative is not conducting the GUC Reconciliation Process in a reasonably timely manner, the Plan Administrator may file a motion with the Bankruptcy Court seeking approval to terminate the GUC Representative's authority over the GUC Reconciliation Process and for the Plan Administrator to take responsibility of the GUC Reconciliation Process.

The GUC Representative shall provide the Plan Administrator and the Equity Representative seven (7) days' written negative notice of any proposed settlement, allowance, estimation, or objection to Claims in excess of $[50,000] (on an individual basis or when taking similar claims together in the aggregate) (a "GUC Claim Reconciliation Notice"); *provided* that to the extent the GUC Claim Reconciliation Notice contemplates a Claims objection, a motion to estimate Claims or other pleading to be filed with the Bankruptcy Court, the GUC Representative shall include the draft pleading with the GUC Claim Reconciliation Notice in accordance with Section VIII.H.5 of this Agreement. If both the Plan Administrator and the Equity Representative timely object to the proposed settlement, allowance, estimation or objection of any Claim(s) set forth in a GUC Claim Reconciliation Notice, then the Plan Administrator shall not take the action proposed by the GUC Claim Reconciliation Notice with respect to such disputed Claim(s). If only one of either the Plan Administrator or the Equity Representative timely objects, then the GUC Representative may file with the Bankruptcy Court such settlement, allowance, estimation or objection seeking approval of the action proposed by the GUC Claim Reconciliation Notice, *provided* that the Plan Administrator's and the Equity Representative's respective rights to file an objection to such motion with the Bankruptcy Court are preserved.

Beginning the first full calendar month following the Effective Date, the Plan Administrator shall provide the Representatives with a report on GUC Representative Reconciled Claims no later than the last business day of each month

> 4. Equity Representative HoldCo Interest Reconciliation

The Equity Representative, in consultation with the Plan Administrator, shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise Class 12 HoldCo Interests.

Beginning the first full calendar month following the Effective Date, the Equity Representative shall provide the Plan Administrator with a report on the reconciliation of Class 12 HoldCo Interests by no later than the last business day of each month

5.      Claims Estimation Motions and Objections

The Plan Administrator and the Representatives shall have the authority to file objections and estimation motions as set forth in Section IV.B.2 of this Agreement, in accordance with the Plan and the Claims Reconciliation Procedures, with respect to the classes of Claims or Interests, as applicable, that such Trust Party has authority to reconcile under this Section VIII.H, subject to any consultation or objection rights herein.  Prior to filing any pleading related to reconciliation of Claims or Interests, the filing Trust Party must provide the other Trust Parties with a draft copy of such pleading with no less than seven (7) days' notice prior to filing.  The other Trust Parties' rights to file an objection with the Bankruptcy Court to such pleading are preserved.

I.      <u>Plan Administrator's Authority to Pursue and Resolve Retained Causes of Action</u>

The Plan Administrator shall have the authority, in consultation with the Representatives, to pursue, abandon, prosecute, settle, compromise, withdraw or otherwise resolve any Retained Causes of Action, including Causes of Action against any Excluded Parties, as set forth in Section IV.D. of this Agreement and in the Plan.  Prior to filing any pleading related to Retained Causes of Action, the Plan Administrator must provide the Representatives with a draft copy of such pleading with no less than seven (7) days' notice prior to filing.  The Representatives' rights to file an objection with the Bankruptcy Court with respect to the Plan Administrator's filing of any such pleading are preserved.

Without limiting the generality of the foregoing, with respect to any Retained Causes of Action with an amount recoverable or sought to be recovered greater than $250,000, the Plan Administrator shall provide seven (7) days' written negative notice to the Representatives of any abandonment, commencement, prosecution, settlement, compromise, withdrawal, or other action that the Plan Administrator proposes.  If both Representatives provide timely written notice of an objection to the Plan Administrator's proposed course of action (or inaction) with respect to any Retained Cause of Action, then the Plan Administrator may not take such proposed course of action (or inaction) as to that Retained Cause of Action.  If only one of the Representatives provides timely written notice of an objection to the Plan Administrator's proposed course of action (or inaction) with respect to a Retained Cause of Action, then the Plan Administrator may file with the Bankruptcy Court a motion seeking approval of the proposed course of action (or in action); *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion are preserved.

The Plan Administrator shall provide the Representatives with quarterly reports on the status of the Retained Causes of Action vested in the Trust, which reports shall contain the analysis of applicable Plan Administrator Professionals assisting the Plan Administrator with respect to Causes of Action of anticipated recoveries, likelihood of success if litigation is pursued, and anticipated next steps with regard to the Retained Cause of Action.

J.      <u>Other Consultation Rights of Representatives as to Actions Taken by the Trust</u>

1.      Books and Records

If the Plan Administrator seeks to destroy or abandon any books, records, or files that have been delivered to or created by the Trust, the Plan Administrator must provide seven (7) days'

41

written negative notice to the Representatives.  If both Representatives timely object in writing to the proposed destruction or abandonment, then the Plan Administrator must retain such books, records, or files that it proposed to destroy or abandon.  If only one Representative timely objects, then the Plan Administrator may file a motion seeking Bankruptcy Court approval of the proposed destruction or abandonment, with the Representatives' rights to file an objection to any such motion of the Plan Administrator fully preserved.

If the Plan Administrator and the Representatives agree on the destruction or abandonment of any books, records, or files, then the Trust may, without the need for Bankruptcy Court approval, abandon or destroy any books, records, or files that are not necessary for the administration of the Trust.

   2.  Insurance

To the extent that the Plan Administrator determines to obtain or extend insurance coverage for the Trust, the Plan Administrator or its respective employees or agents, the Plan Administrator shall provide no less than seven (7) days' written notice to the Representatives of the terms of any insurance coverage obtained and/or extended and the costs associated therewith.

   3.  Litigation Financing and Borrowing

The Plan Administrator shall have the authority to solicit and incur litigation financing, if necessary.  The Plan Administrator shall provide seven (7) days' notice to the Representatives before incurring into any proposed litigation financing.  If, within the seven-day notice period, both Representatives provide written notice of their objection to the incurrence of the proposed litigation financing, then the Plan Administrator shall not incur such financing unless and until the Trust Parties otherwise determine it is appropriate to do so.  If only one of the Representatives provides written notice in the seven-day notice period of its objection to the proposed litigation financing, then the Plan Administrator may file with the Bankruptcy Court a motion seeking approval of the Trust's ability to incur the proposed litigation financing, *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion for are preserved.

   4.  Closing of the Chapter 11 Cases

To the extent that the Plan Administrator determines to file a motion with the Bankruptcy Court seeking a final decree closing some or all of the Chapter 11 Cases, it shall provide no less seven (7) days' written negative notice to the Representatives.  If both Representatives object in writing to the closing of one or more of the Chapter 11 Cases within such notice period, then the Plan Administrator may not seek a final decree at that time with respect to the Chapter 11 Case implicated by the Representatives' objection.  If only one of the Representatives timely notice of an objection to closing any of the Chapter 11 Cases, then the Plan Administrator may file with the Bankruptcy Court a motion seeking a final decree, *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion for a final decree are preserved.

5.      Amendment of the Trust Agreement

Any Trust Party proposing a material amendment to this Agreement shall provide the other Trust Parties seven (7) days' written notice thereof, together with a draft amended Trust Agreement marked to show proposed changes.  If both receiving Trust Parties timely object in writing to the proposed amendment, the proposed changes to this Agreement shall not be made.  If only one of the Trust Parties receiving notice of a proposed amendment timely objects in writing, the Trust Party proposing the amendment to this Agreement may seek its approval by motion to the Bankruptcy Court, *provided* that all other Trust Parties' rights to file an objection to such motion with the Bankruptcy Court are preserved.  All proposed amendments to this Agreement remain subject to the terms and conditions specified in Section IX.J. of this Agreement.

## IX.    RELIANCE, LIABILITY, AND INDEMNIFICATION

A.    <u>Reliance by the Plan Administrator and the Representatives</u>

Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, (i) the Plan Administrator may rely and shall be protected in acting upon the advice of any Trust Professional, and/or upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Plan Administrator; and (ii) the Representatives may rely and shall be protected in acting upon the advice of their retained professionals, and/or upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by any Representative to be genuine and to have been signed or presented by the proper party or parties and shall have no liability in respect of such reliance.

B.    <u>Limitation of Liability</u>

Neither the Trust, Plan Administrator, the Representatives, nor their respective firms, companies, affiliates, partners, officers, directors, members, employees, independent contractors, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan or this Agreement, other than for specific actions or omissions resulting from their willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. The Plan Administrator shall enjoy all of the rights, powers, immunities, and privileges of a chapter 7 trustee. The Trust, the Plan Administrator, and the Representatives may, in connection with the performance of their functions, in their sole and absolute discretion, consult with any of the Trust Professionals or the Representatives' Professionals, as applicable, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing. Notwithstanding such authority, none of the Trust, the Plan Administrator, and the Representatives shall be under any obligation to consult with any attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Trust, the Plan Administrator, or the Representatives unless such determination is based on willful misconduct, gross negligence,

or fraud. Persons dealing with the Trust, the Plan Administrator or the Representatives shall look only to the Plan Administration Trust Assets to satisfy any liability incurred by the Trust, the Plan Administrator or any Representative, respectively, in carrying out the terms of the Plan or this Agreement, and neither the Trust, the Plan Administrator nor any Representative shall have any personal obligation to satisfy such liability, except to the extent any such liability is primarily caused by such party's willful misconduct, gross negligence, or fraud.

C.      No Liability for Acts Approved by the Bankruptcy Court

Subject to Article VIII of this Agreement, the Plan Administrator and the Representatives shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration of the Plan or the disposition of the Trust, the Plan Administration Trust Assets, and the Claims required to be administered by the Trust; provided that the Representatives shall only have such right to the extent they seek instruction on their own responsibilities as set forth in the Plan and in this Agreement. Neither the Plan Administrator nor the Representatives shall be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

D.      Nonliability for Acts of Others

Except as provided herein, nothing in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Trust, the Plan Administrator, the Representatives, the Trust Professionals, or the Representatives' Professionals of any of the liabilities, obligations, or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the Trust, the Plan Administrator, or the Representatives to assume or accept any such liability, obligation, or duty. Any successor Plan Administrator may accept and rely upon any accounting made by or on behalf of any predecessor Plan Administrator hereunder, and any statement or representation made as to the assets comprising the Plan Administration Trust Assets or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. None of the Plan Administrator or the Representatives shall be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Plan Administrator, any Representative, or any successor thereto shall not be liable for any act or omission of any predecessor Plan Administrator or Representative, as applicable. Other than as set forth in Section IX.B of this Agreement, no provision of this Agreement shall require the Plan Administrator or any Representative to expend or risk its personal funds or otherwise incur any financial liability in the performance of his, her or its rights or powers hereunder if the Plan Administrator has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided.

E.      Exculpation

The Trust, the Plan Administrator and the Representatives shall be exculpated consistent with the terms of the Plan and the Confirmation Order.

F.   <u>Indemnity</u>

The Trust shall indemnify the Trust, the Plan Administrator, the Representatives and its and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such, and any of such Person's successors and assigns (the "<u>Trust Indemnified Parties</u>" and each a "<u>Trust Indemnified Party</u>") for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence, or willful misconduct on the part of the Trust Indemnified Parties (which fraud, gross negligence, or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan, the Confirmation Order, or this Agreement, as applicable. In addition, the Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust or the implementation or administration of the Plan, if the Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Trust. To the extent the Trust indemnifies and holds harmless any Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall constitute and be paid as Trust Expenses. The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the Trust out of the Plan Administration Trust Assets. This provision shall survive the termination of the Trust or this Agreement, and the death, dissolution, liquidation, resignation, replacement, or removal of the Plan Administrator or any Representative, as applicable.

## X.   **MISCELLANEOUS PROVISIONS**

A.   <u>Governing Law</u>

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law.

B.   <u>Severability</u>

In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

C.    Notices

Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email to which no undeliverable notice has been received by the sender, sent by nationally recognized overnight delivery service, or mailed by first-class mail, as follows:

1.    if to the Plan Administrator:

Thomas B. Walper
Attn: Thomas B. Walper
Email: thomas.b.walper@pm.me

with a copy to:

[●]

2.    if to the GUC Representative:

Matthew Dundon
Attn: Matthew Dundon
Email: md@dundon.com

with a copy to:

[●]

3.    if to the Equity Representative:

Alan D. Halperin
Attn: Alan D. Halperin
Email: ahalperin@halperinlaw.net

with a copy to:

[●]

4.    if to any Plan Administration Trust Beneficiary, in accordance with the terms and conditions of Section IV.F of this Agreement.

D.    Headings

The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision of this Agreement.

E.    Controlling Document

In the event of any inconsistency between the Plan, the Confirmation Order and this Agreement, the Confirmation Order shall control. In the event of an inconsistency between the Plan and this Agreement, this Agreement shall control.

F.    Entire Agreement

This Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Agreement.

G.    Cumulative Rights and Remedies

The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

H.    Division of Trust

Under no circumstances shall the Plan Administrator have the right or power to divide the Trust unless authorized to do so by the Bankruptcy Court.

I.    Cooperation

The Debtors, to the extent they continue to exist, and their professionals shall use commercially reasonable efforts to cooperate with the Trust, the Plan Administrator and the Trust Professionals to effect the transition from the Debtors to the Trust of administration of the Plan Administration Trust Assets, Claims and HoldCo Interests. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate access to (1) any reasonably available evidence and information the Plan Administrator reasonably requests in connection with the Trust's investigation, prosecution or other pursuit, or defense (as applicable) of Retained Causes of Action and objections to Disputed Claims [and Disputed Interests]; and (2) former employees or Professionals of the Debtors with knowledge (such knowledge being reasonably available) regarding any Retained Causes of Action. The Debtors shall promptly turn over or otherwise make available to the Trust at no cost to the Trust, any books and records of the Debtors held by such Professionals. The Debtors shall arrange for the Plan Administrator to receive an updated Claims Register from the Notice and Claims Agent within thirty (30) days after the Effective Date.  Any and all reasonable and documented out-of-pocket fees and expenses incurred by the Debtors or their professionals in connection with the cooperation obligations outlined herein shall constitute a Plan Administration Trust Expense and shall be paid pursuant to the terms of the Plan and this Agreement.

J.    Amendment and Waiver

This Agreement may from time to time be amended, supplemented or modified by the Debtors (to the extent they continue to exist) in a written agreement with the Plan Administrator, subject to Article VIII of this Agreement, or by order of the Bankruptcy Court. Notwithstanding

this Section IX.J, any amendment to this Agreement shall not be inconsistent with the Plan and the Confirmation Order and shall be consistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Plan Administration Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and Section I.B of this Agreement.

K.    Meanings of Other Terms

Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. The words herein and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Plan Administration Trust Agreement. The term "including" shall mean "including, without limitation."

L.    Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

M.    Intention of Parties to Establish a Liquidating, Grantor Trust

This Agreement is intended to form a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, and thus, except as set forth in Article IV.E.5 of the Plan and Sections V.D and V.E. as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code, as contemplated by the Plan, and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended to comply with such U.S. federal income tax laws, which amendments may apply retroactively.

N.    Waiver

No failure by the Trust, the Plan Administrator, or the Representatives to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

O.    Waiver of Jury Trial

Each of the parties hereto hereby waives the right to trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement (but not, for the avoidance of doubt, with respect to any Retained Cause of Action).

P.     Retention of Jurisdiction

Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, the administration and activities of the Trust, the Plan Administrator, or the Representatives, this Agreement, or any entity's obligations incurred in connection herewith, including, without limitation, any action against the Trust, the Plan Administrator, any Representative or any [Plan Administration Trust Professional], in each case in its capacity as such. Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Solely to the extent that the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Debtor's chapter 11 case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.. Subject to the proviso below, each party further irrevocably agrees that: (1) any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; and (2) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to re-argument or reconsideration; provided, however, that notwithstanding the foregoing, the Plan Administrator shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any Retained Causes of Action assigned to the Trust.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**; the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**CHROME HOLDING CO., CHROMECO INC., CHROME PHARMACY HOLDINGS, INC., LEMONAID COMMUNITY PHARMACY, INC., LEMONAID HEALTH, INC., LEMONAID PHARMACY HOLDINGS INC., LPHARM CS LLC, LPHARM INS LLC, LPHARM RX LLC, LPRXONE LLC, LPRXTHREE LLC, AND LPRXTWO LLC**

By: _____

Name: Joseph Selsavage
Title: Interim Chief Executive Officer and Chief Financial Officer and Accounting Officer

**PLAN ADMINISTRATOR**
By:  Thomas B. Walper, not individually, but solely as trustee of the Trust

By: _____

Name: Thomas B. Walper

**<u>Exhibit B</u>**

**Equity Committee's Version**

**BR Comments 11/28/2025**

**PLAN ADMINISTRATION TRUST AGREEMENT OF THE**

**CHROME PLAN TRUST**

**DATED AS OF [●], 2025**

**BY AND AMONG**

**THOMAS B. WALPER AS PLAN ADMINISTRATOR**

**and**

**CHROME HOLDING CO. AND ITS AFFILIATES
THAT ARE SIGNATORIES HERETO**

# TABLE OF CONTENTS

I.    DECLARATION OF TRUST ................................................................... 2

    A.    Creation and Governance of the Plan Administration Trust................................. 2

    B.    Purpose of the Trust ................................................................................. 3

    C.    Transfer of Plan Administration Trust Assets ................................................ 3

    D.    Plan Administration Trust Assets ................................................................ 4

    E.    Appointment and Acceptance of the Plan Administrator ................................. 4

    F.    Liquidation of Plan Administration Trust Assets ........................................... 5

    G.    Reversionary Interests ................................................................................. 5

    H.    Incidents of Ownership ............................................................................... 5

    I.    Privileges.................................................................................................... 6

II.    PLAN ADMINISTRATION TRUST BENEFICIARIES ................................ 6

    A.    Rights of Plan Administration Trust Beneficiaries ......................................... 6

    B.    Interest Beneficial Only ............................................................................... 7

    C.    Evidence of Plan Administration Trust Interest ............................................. 7

    D.    No Standing ................................................................................................ 8

    E.    Requirement of Undertaking......................................................................... 8

    F.    Limitation on Transferability ........................................................................ 8

    G.    Exemption from Registration........................................................................ 8

    H.    Conflicting Claims ...................................................................................... 9

III.    DURATION AND TERMINATION OF THE TRUST.................................... 10

    A.    Dissolution of the Trust ............................................................................... 10

    B.    Continuance of the Trust for Winding Up ..................................................... 10

IV.    ADMINISTRATION OF THE TRUST ....................................................... 11

    A.    Payment of Claims, Expenses, and Liabilities................................................ 11

    B.    Procedures for Resolving Unliquidated and Disputed Claims .......................... 11

    C.    Trust Reserve Accounts ............................................................................... 14

        1.    Chrome Disputed Claims Reserve ....................................................... 14

        2.    Lemonaid Disputed Claims Reserve..................................................... 14

        3.    Administrative / Priority Claims Reserve .............................................. 15

        4.    Data Breach Settlement Reserves ........................................................ 16

        5.    Cyber Insurance Reserve .................................................................... 16

     6.    GUC Subordinated Claims Reserve ................................................................. 16

  D.   Retained Causes of Action ................................................................................. 16

  E.   Abandonment ...................................................................................................... 16

  F.   Distributions ....................................................................................................... 17

     1.    Distributions Generally ............................................................................ 17

     2.    Powers of Distribution Agent .................................................................. 18

     3.    Expenses Incurred on or After the Effective Date .................................. 18

     4.    Distribution Record Date; Addresses ...................................................... 18

     5.    Compliance with Tax Requirements ........................................................ 19

     6.    Surrender of Instruments ......................................................................... 19

     7.    No Fractional Units .................................................................................. 19

     8.    Foreign Currency Exchange Rate. ........................................................... 19

     9.    Setoffs and Recoupments ........................................................................ 20

     10.   Minimum Distribution ............................................................................. 20

     11.   Allocations .............................................................................................. 20

     12.   Distributions Free and Clear .................................................................... 20

     13.   Claims Paid by Third Parties ................................................................... 21

     14.   Claims Payable by Third Parties .............................................................. 21

     15.   Inapplicability of Escheat, Abandoned or Unclaimed Property Laws ..... 21

     16.   Voided Checks; Request for Reissuance. ................................................ 21

  G.   Compliance With Laws ...................................................................................... 22

  H.   Fiscal Year .......................................................................................................... 22

  I.   Books and Records ............................................................................................. 22

  J.   No Bond Requirement ........................................................................................ 22

  K.   Plan Administration Trust Insurance ................................................................. 23

V.   TAX MATTERS ....................................................................................................... 23

  A.   Trust's Tax Power for the Debtors ..................................................................... 23

  B.   Treatment of Trust for Tax Purposes ................................................................. 23

  C.   Tax Withholdings by the Plan Administration Trust ......................................... 25

  D.   DOF Election ...................................................................................................... 26

  E.   Qualified Settlement Fund .................................................................................. 26

VI.  POWERS AND LIMITATIONS OF THE TRUST AND THE PLAN
ADMINISTRATOR .................................................................................................. 26

  A.   Powers of the Trust ............................................................................................ 26

  B.   Responsibilities and Authority of the Trust ....................................................... 27

C.    Wind-Down.................................................................................................... 27

D.    Actions Taken by the Trust........................................................................... 28

E.    Limitations on the Trust................................................................................ 30

F.    Term of the Plan Administrator .................................................................... 30

G.    Plan Administrator Conflicts of Interest ...................................................... 31

H.    Compensation and Expenses of the Plan Administrator................................ 31

I.    Employment, Indemnification, and Other Agreements ................................. 31

J.    Investment of Plan Administration Trust Monies.......................................... 31

VII.    SUCCESSOR PLAN ADMINISTRATOR AND REPRESENTATIVES...................... 32

A.    Resignation .................................................................................................. 32

B.    Removal ....................................................................................................... 32

C.    Effect of Resignation or Removal................................................................. 32

D.    Appointment of Successor Plan Administrator.............................................. 33

E.    Acceptance of Appointment by Successor Plan Administrator....................... 33

F.    Representatives ............................................................................................. 33

VIII.    REPRESENTATIVES AND TRUST GOVERNANCE ............................................ 34

A.    Generally...................................................................................................... 34

B.    Meetings of the Trust Parties ....................................................................... 34

C.    Disposition of Assets .................................................................................... 34

D.    Establishment and Maintenance of Reserves................................................. 35

    1.    Reserves Initially Established in Consultation with the Debtors and the Committees. 35

    2.    Reserves Established in Consultation with the Representatives................................... 35

E.    Compensation ............................................................................................... 35

    1.    Compensation of the GUC Representative ................................................................. 35

    2.    Compensation of the Equity Representative................................................................ 36

    3.    Compensation of Plan Administrator.......................................................................... 36

    4.    Compensation Modifications...................................................................................... 37

F.    Trust Professionals........................................................................................ 37

    1.    Plan Administrator Professionals................................................................................ 37

    2.    GUC Representative Professionals ............................................................................. 38

    3.    Equity Representative Professionals............................................................................ 38

G.    Plan Administration Trust Expenses Reporting.............................................. 38

H.    Claims Reconciliation................................................................................... 38

    1.    Plan Administrator Claims Reconciliation .................................................................. 38

iii

2. Final Approval of Distributions to Qualified Settlement Funds ................................... 39

3. Claims Estimation Motions and Objections ................................................................. 40

I. Plan Administrator's Authority to Pursue and Resolve Retained Causes of Action ........ 40

J. Other Consultation Rights of Representatives as to Actions Taken by the Trust............ 40

1. Books and Records ...................................................................................................... 40

2. Insurance ..................................................................................................................... 41

3. Litigation Financing and Borrowing ........................................................................... 41

4. Closing of the Chapter 11 Cases .................................................................................. 41

5. Amendment of the Trust Agreement ............................................................................ 42

IX. RELIANCE, LIABILITY, AND INDEMNIFICATION ................................................. 42

A. Reliance by the Plan Administrator and the Representatives ........................................ 42

B. Limitation of Liability .................................................................................................. 42

C. No Liability for Acts Approved by the Bankruptcy Court ............................................ 43

D. Nonliability for Acts of Others .................................................................................... 43

E. Exculpation ................................................................................................................. 43

F. Indemnity ..................................................................................................................... 44

X. MISCELLANEOUS PROVISIONS ................................................................................ 44

A. Governing Law ............................................................................................................. 44

B. Severability .................................................................................................................. 44

C. Notices ......................................................................................................................... 45

D. Headings ...................................................................................................................... 45

E. Controlling Document .................................................................................................. 45

F. Entire Agreement ......................................................................................................... 46

G. Cumulative Rights and Remedies ................................................................................ 46

H. Division of Trust .......................................................................................................... 46

I. Cooperation .................................................................................................................. 46

J. Amendment and Waiver ............................................................................................... 46

K. Meanings of Other Terms ............................................................................................ 46

L. Counterparts ................................................................................................................ 47

M. Intention of Parties to Establish a Liquidating, Grantor Trust ..................................... 47

N. Waiver ......................................................................................................................... 47

O. Waiver of Jury Trial ..................................................................................................... 47

P. Retention of Jurisdiction .............................................................................................. 47

## PLAN ADMINISTRATION TRUST AGREEMENT OF THE
## CHROME PLAN TRUST

This Plan Administration Trust Agreement (the "Agreement") of the Chrome Plan Trust (the "Trust"),[1] dated as [●], 2025, is entered into by and among (i) debtors and debtors-in-possession Chrome Holding Co., ChromeCo Inc., Chrome Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC (collectively, the "Debtors"), and (ii) Thomas B. Walper, as plan administrator and trustee (together with any successor or additional trustee appointed under the terms of this Agreement, the "Plan Administrator"), for the purpose of, *inter alia*, (i) winding down the Wind-Down Debtors, and (ii) forming a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code, as contemplated by the Plan.[2]

## RECITALS

A.      On March 23, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court") initiating the chapter 11 cases jointly administered under Case No. 25-40976-357 in the Bankruptcy Court (collectively, the "Chapter 11 Cases");

B.      On June 27, 2025, the Bankruptcy Court entered the Sale Order, approving the sale of certain of the Debtors' assets to the Chrome Purchaser pursuant to section 363 of the Bankruptcy Code pursuant to the Chrome Purchase Agreement;

C.      On the Effective Date, the Lemonaid Interests will be sold to the Lemonaid Purchaser;

D.      On October 1, 2025, the Bankruptcy Court entered the Solicitation Order [Docket No. 1442], which, *inter alia*, approved the adequacy of the Disclosure Statement and authorized the Debtors to transmit solicitation materials to, among others, Holders of Claims and Holdco Interests entitled to vote to accept or reject the Plan;

E.      On [●], 2025, the Bankruptcy Court entered an order confirming the Plan [Docket No. [●]] (the "Confirmation Order"), and the Effective Date of the Plan occurred on [●], 2025;

---

[1]     For the purposes of this Agreement, the term "Trust" shall include the Trust acting by and through the Plan Administrator, the GUC Representative, and/or the Equity Representative, as applicable.

[2]     The "Plan" means the *Fifth Amended Joint Chapter 11 Plan of Liquidation of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, filed at Docket No. [____] in the Chapter 11 Cases, as may be altered, amended, modified, or supplemented from time to time, including all exhibits and schedules thereto. Capitalized terms used but not defined in this Agreement have the meanings ascribed to them in the Plan.

1

F.     The Plan provides for, *inter alia*, the creation of the Trust for the benefit of the Plan Administration Trust Beneficiaries on the Effective Date for the purpose of liquidating and administering the Plan Administration Trust Assets and making distributions from the proceeds thereof in accordance with the terms of the Plan and this Agreement.

G.     Pursuant to the Plan, the Trust shall be structured to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, as provided for under the Plan and this Agreement. The Trust is established and is effective for the benefit of the Plan Administration Trust Beneficiaries; and

H.     The duties and powers of the Plan Administrator shall include all powers necessary to perform the Wind-Down Transactions and to administer the Plan Administration Trust Assets, in accordance with the Plan, the Confirmation Order, and this Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## I.     DECLARATION OF TRUST

A.     <u>Creation and Governance of the Plan Administration Trust</u>

The Debtors and the Plan Administrator, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the Trust, which shall bear the name the "Chrome Plan Trust";

In connection with the exercise of the Plan Administrator's power hereunder, the Plan Administrator may use this name or such variation thereof as the Plan Administrator sees fit;

The Debtors and the Plan Administrator enter into this Agreement to, *inter alia*, effectuate the distribution of the Plan Administration Trust Assets to the Plan Administration Trust Beneficiaries pursuant to the Plan, the Confirmation Order, and this Agreement;

The Trust shall be governed by this Agreement and administered by the Plan Administrator and the Representatives, as provided herein, in the Plan, and the Confirmation Order;

Pursuant to Article IV.E.6 of the Plan and Section I.C of this Agreement, the Plan Administration Trust Assets shall automatically be transferred to and vest in the Trust on the Effective Date free and clear of any and all alleged or actual Claims, Interests, Liens, encumbrances, or other interests, subject only to the Trust Interests and the Plan Administration Trust Expenses, as provided for herein and in the Plan, and shall comprise Plan Administration Trust Assets for all purposes;

TO HAVE AND TO HOLD unto the Plan Administrator and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Plan Administration Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings (including interest) thereon are to be held by the Trust and applied on behalf of the Trust by the Plan Administrator on the terms and conditions set forth herein, solely to satisfy Plan Administration Trust Expenses and for the benefit of the Plan Administration Trust Beneficiaries and for no other party.

B.    Purpose of the Trust

The Trust shall be established as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d), for the purpose of pursuing or liquidating the Plan Administration Trust Assets, reconciling and objecting to Claims and HoldCo Interests, prosecuting Retained Causes of Action, and making distributions pursuant to the Plan to the Plan Administration Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, as provided for under the Plan and this Agreement. Subject to the election described in Article IV.E.5 of the Plan and Section V.D and V.E of this Agreement, the Trust is intended to qualify as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Plan Administration Trust Beneficiaries treated as grantors and owners of the Trust.

C.    Transfer of Plan Administration Trust Assets

Pursuant to the Plan and the Confirmation Order, as of the Effective Date, the Debtors irrevocably grant, release, assign, transfer, convey, and deliver and shall be deemed to have irrevocably transferred, granted, released, assigned, conveyed, and delivered to the Trust all rights, title, and interest in and to all of the Plan Administration Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all of the Debtors' right, title, and interest in and to the Plan Administration Trust Assets are automatically vested in the Trust free and clear of all Claims, Interests, Liens, encumbrances, or other interests, subject only to the Trust Interests and the Plan Administration Trust Expenses, as provided for herein, and shall become Plan Administration Trust Assets for all purposes.

The Trust hereby accepts as of the Effective Date all Plan Administration Trust Assets free and clear of any and all Claims, Interests, Liens, encumbrances, and other interests, and agrees to hold and administer the Plan Administration Trust Assets for the benefit of the Plan Administration Trust Beneficiaries, subject to the terms and conditions of the Plan, Confirmation Order, and this Agreement.

For the avoidance of doubt, upon the transfer of the Plan Administration Trust Assets, the Trust shall succeed to all of the Debtors' right, title, and interest in and to the Plan Administration Trust Assets, and upon delivery of the Plan Administration Trust Assets to the Trust and their vesting in the Trust as Plan Administration Trust Assets, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the delivery thereof and shall have no further interest in or with respect to the Plan Administration Trust Assets or the Trust. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer

3

of the Plan Administration Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

For all U.S. federal income tax purposes, and, to the extent permitted by applicable law, for state and local income tax purposes, and subject to the election described in Article IV.E.5 of the Plan and Sections V.D and V.E of this Agreement, all parties (including, without limitation, the Debtors, the Trust, the Plan Administrator, the Representatives, and the Plan Administration Trust Beneficiaries) shall treat the transfer of the Plan Administration Trust Assets to the Trust in accordance with the terms of this Agreement as a transfer to the Plan Administration Trust Beneficiaries, followed by a transfer by such Plan Administration Trust Beneficiaries to the Trust, and the Plan Administration Trust Beneficiaries will be treated as the grantors and owners thereof.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and this Agreement, including, without limitation, the transfer of the Plan Administration Trust Assets to the Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and pursuant to the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

The Plan Administration Trust Assets shall be held and be applied by the Trust in accordance with the terms of this Agreement, the Plan, and the Confirmation Order for the benefit of the Plan Administration Trust Beneficiaries, and for no other party, subject to the further covenants, conditions and terms set forth in this Agreement, the Plan, and the Confirmation Order.

The Debtors, the Plan Administrator, and any party under the control of such parties, hereby agree to execute any documents or other instruments and shall take all other steps as necessary to cause title to the Plan Administration Trust Assets to be transferred to the Trust in accordance with this Agreement, the Plan, and the Confirmation Order.

D.    Plan Administration Trust Assets

The Trust, in accordance with section 1123(b)(3) of the Bankruptcy Code, shall be the representative of the Estates with respect to any and all Plan Administration Trust Assets including, but not limited to, the Retained Causes of Action, and shall retain and possess the right to commence, pursue, prosecute, enforce, abandon, waive, settle, compromise, release, or withdraw, as appropriate, any and all Retained Causes of Action in any court or other tribunal, except as otherwise provided in the Plan, the Confirmation Order, or this Agreement.

E.    Appointment and Acceptance of the Plan Administrator

The Trust shall be the exclusive trust of the Plan Administration Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).

The Plan Administrator accepts: (1) the appointment to serve as trustee for the Trust created by this Agreement in accordance with the terms of the Plan, the Confirmation Order, and

4

this Agreement; and (2) the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Plan Administration Trust Beneficiaries, by the Debtors of all of their respective rights, titles and interests in the Plan Administration Trust Assets, upon and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Plan Administrator's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose and the Trust and other responsibilities assigned to the Plan Administrator under the Plan and not otherwise. The Plan Administrator shall have the authority to bind the Trust in accordance with, and within the limitations set forth in this Agreement, but shall for all purposes hereunder be acting solely in the capacity as Plan Administrator, and not individually.

F.    Liquidation of Plan Administration Trust Assets

The Trust shall, in an expeditious but commercially reasonable manner and subject to the provisions of the Plan, the Confirmation Order, and the other provisions of this Agreement, and subject to Article VIII of this Agreement, liquidate and convert to Cash the Plan Administration Trust Assets, make timely distributions in accordance with the terms of this Agreement, the Plan, and the Confirmation Order and not unduly prolong the existence of the Trust. The Trust shall liquidate the Plan Administration Trust Assets in an effort to maximize net recoveries, and the Trust shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the maximization of recoveries; provided, that the determinations and actions of the Trust shall in all cases be subject to the limitations provided in the Plan, the Confirmation Order, and this Agreement, including, but not limited to, Article VIII of this Agreement.  Subject to the terms of this Agreement, such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any Claims or Retained Causes of Action, the pursuit of proceeds of the Cyber Insurance Policies (if not previously tendered), or through the sale or other disposition of the Plan Administration Trust Assets (in whole or in combination, and including the sale of the Retained Causes of Action or rights under the Insurance Policies, if not already liquidated). The Trust may incur Plan Administration Trust Expenses in connection with the liquidation and conversion of the Plan Administration Trust Assets into Cash or in connection with the administration of the Trust, subject to Article VIII of this Agreement.

G.    Reversionary Interests

In no event shall any part of the Plan Administration Trust Assets revert to or be distributed to the Debtors. The Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Escrow after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court.  For the avoidance of doubt, such reversionary interest of the Trust constitutes a Plan Administration Trust Asset that automatically vests in the Trust as of the Effective Date.

H.    Incidents of Ownership

The Plan Administration Trust Beneficiaries shall be the sole beneficiaries of the Trust and the owners of the Plan Administration Trust Assets, and the Trust shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this

5

Agreement, the Plan, and the Confirmation Order, including, without limitation, those powers set forth in Section V.E of this Agreement.

      I.      <u>Privileges</u>

In connection with the vesting and transfer of the Plan Administration Trust Assets in and to the Trust, the Trust shall stand in the same position as the applicable Debtor with respect to any claim the applicable Debtor and/or its Estate may have as to an attorney-client privilege, work-product doctrine, or any other privilege or confidentiality protections attaching to any documents or communications (whether written or oral) relating to the Plan Administration Trust Assets (collectively, "<u>Privileges and Protections</u>"), and the Trust shall succeed to all rights of the applicable Debtor and/or its Estate to hold, preserve, assert, be the beneficiary of, or waive any such Privileges and Protections. As of the Effective Date, all Privileges and Protections of the Debtors relating to the Plan Administration Trust Assets shall be deemed transferred, assigned, and delivered by the applicable Debtor to the Trust, without waiver, forfeiture, or release, and shall vest in the Trust. No such Privilege and Protections shall be waived, forfeited, or released by disclosures to the Trust, the Plan Administrator, the Trust Professionals (defined below), or the Representatives (in their capacities as such) of the Debtors' documents, information, or communication subject to attorney-client privilege, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Privileges and Protections relating to the Plan Administration Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; <u>provided</u>, that prior to waiving such Privilege and Protection, the Trust shall provide such third party with any written notice required by any joint defense or common interest agreements as of the Petition Date. Any and all work product created by or on behalf of the Trust, the Plan Administrator, the Trust Professionals (defined below), the Representatives (in their capacities as such), and each of their respective agents, representatives, employees, and independent contractors shall be deemed confidential to the extent that such work product is not protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. For the avoidance of doubt, communications between or among the Plan Administrator and one or both Representatives shall be confidential and subject to the common interest privilege. In addition, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order held by the Debtors prior to the Effective Date with respect to the Plan Administration Trust Assets shall vest in the Trust automatically and without further action by any party as of the Effective Date through the date of dissolution of the Trust.

## II.     PLAN ADMINISTRATION TRUST BENEFICIARIES

      A.      <u>Rights of Plan Administration Trust Beneficiaries</u>

"<u>Trust Interests</u>" means Class A-1 Plan Administration Trust Interests, Class A-2 Plan Administration Trust Interests, Class A-3 Plan Administration Trust Interests, Class A-4 Plan Administration Trust Interests, Class A-5 Plan Administration Trust Interests, Class A-6 Plan Administration Trust Interest, Class A-7 Plan Administration Trust Interest, Class A-8 Plan Administration Trust Interest, and Class B Plan Administration Trust Interests, each of which are

6

non-certified, non-transferable [(except Class B Plan Administration Trust Interests, which are transferable solely to the extent provided in this Agreement)][3] beneficial interests in the Trust granted to (i) Holders of (a) Chrome Commercial Claims, (b) Chrome Other General Unsecured Claims, (c) Lemonaid Commercial Claims, (d) Lemonaid Other General Unsecured Claims, (e) the Canadian Data Breach Class Settlement Fund's claims, (f) the Pixel Class Settlement Fund's claims, (g) the U.S. Data Breach Class Settlement Fund's claims, (h) GUC Subordination Claims, and (i) HoldCo Interests (collectively, the "Trust Beneficiary Claims"), which shall entitle such Holders and entities to their applicable Pro Rata share of distributions from the Trust in accordance with the Plan (including, for the avoidance of doubt, according to the Waterfall Recovery), the Confirmation Order, and applicable law. Each Plan Administration Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Plan Administration Trust Beneficiary of its respective priority under this Agreement. The Trust Interests are hereby declared and shall be in all respects personal property.

      B.    <u>Interest Beneficial Only</u>

The ownership of a Plan Administration Trust Interest shall not entitle any Plan Administration Trust Beneficiary or the Debtors to any title in or to the Plan Administration Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

      C.    <u>Evidence of Plan Administration Trust Interest</u>

The Trust shall maintain at all times a register of the names and distribution addresses of the Plan Administration Trust Beneficiaries, including the amount of such Plan Administration Trust Beneficiaries' respective Trust Beneficiary Claims (Allowed as of the Effective Date, or as may be Allowed thereafter pursuant to the Plan and this Agreement) (the "Trust Register"); provided, that the Trust may rely initially on the Claims Register, which shall be delivered to the Trust by the Notice and Claims Agent within thirty (30) days after the Effective Date and shall be based on the list of Holders of Administrative Claims, Priority Tax Claims, Claims in Classes 3 through 9, and Classes 13 and 14 of the Plan and maintained by the Notice and Claims Agent as of the Effective Date and prepared in accordance with the provisions of the Plan and the Confirmation Order, provided further that (i) with respect to Classes 3, 4, 5, and 14, upon the final approval of the settlement associated with each such Class, the Trust Register need only reflect the name and address of the agent or representative of each such Class identified in the relevant settlement agreement and the settlement amount, and (ii) for HoldCo Interests held exclusively in book entry form at [DTC/Cede & Co.], the Trust shall be entitled to rely upon the register of HoldCo Interests maintained at [DTC/Cede & Co.]. All references in this Agreement to Plan Administration Trust Beneficiaries shall be read to mean holders of record as set forth in the Trust Register maintained by the Trust and shall include Holders of Trust Beneficiary Claims who hold their position through a broker, bank, or other nominee, if applicable. The Trust shall cause the Trust Register to be kept at its office or at such other place(s) as may be designated by the Trust from time to time. The Trust shall be under no obligation to quantify or summarize any Plan Administration Trust Beneficiary's holdings or position with respect to such Plan Administration Trust Beneficiary's Plan Administration Trust Interest; provided that the Trust shall, upon the written request of a Plan Administration Trust Beneficiary, provide reasonably adequate

---

[3]    [Note to Draft: Subject to ongoing discussion among the Debtors and the Committees.]

documentary evidence of the existence of such Plan Administration Trust Beneficiary's Plan Administration Trust Interest, as indicated in the Trust Register; provided further, however, that the Plan Administrator shall not be required to compile or deliver information regarding any HoldCo Interest held in book entry form that is not reasonably available to the Plan Administrator through the customary practices and facilities of [DTC/Cede & Co.]. For the avoidance of doubt, ownership of a Plan Administration Trust Interest will not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except the book entry system.

D.    No Standing

Except as expressly provided in this Agreement, a Plan Administration Trust Beneficiary shall not have standing to direct or to seek to direct the Trust, Plan Administrator or any Representative to do or not to do any act or to institute any action or proceeding at law or in equity against any Entity upon or with respect to the Plan Administration Trust Assets.

E.    Requirement of Undertaking

The Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Plan Administrator or any Representative for any action taken or omitted by such entities as Plan Administrator or Representative, as applicable, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this section shall not apply to any suit by the Trust, Plan Administrator, or any Representative, each in their respective capacity as such.

F.    Limitation on Transferability

It is understood and agreed that the Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except by operation of law; provided that Class B Plan Administration Trust Interests shall be transferable to the extent that the transferability thereof would not require the Trust to register the Interests under Section 12(g) of the Exchange Act, or cause the Trust to incur expenses that (i) would materially exceed any benefit associated with facilitating the transferability of Class B Plan Administration Trust Interests, or (ii) otherwise threaten to diminish the recoveries available to Holders of Class A or Class B Trust Interests, and otherwise shall not be transferable except as provided in this Agreement; provided further that the Debtors' or Plan Administration Trust's Claims, rights, defenses or any other legal rights or entitlements with respect to any such transferred Class B Plan Administration Trust Interests shall be preserved and enforceable against the transferee of such transferred interest. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trust, and the Trust may continue to pay all amounts to or for the benefit of the assigning Plan Administration Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trust may rely upon such proof without the requirement of any further investigation.

G.    Exemption from Registration

The Trust Interests have not been registered pursuant to the Securities Act of 1933, as amended (the "Securities Act"), or any state securities law, and, except as otherwise provided in

the Plan or in this Agreement, shall not be listed for public trading on any securities exchange. The parties hereto intend that the rights of the holders of Trust Interests shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan. The Trust shall not be required to file reports with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), on account of any transfer. No transfer of a Plan Administration Trust Interest that causes the Trust to be required to file reports with the Securities and Exchange Commission pursuant to Sections 13 or 15(d) of the Exchange Act shall be permitted, and any such transfer shall be void *ab initio*. In order to prevent the Trust from becoming subject to such reporting requirements, the Trust may impose certain transfer restrictions designed to maintain the Trust as a non-reporting entity, and this Agreement may be amended pursuant to Section **Error! Reference source not found.** to make such changes as are deemed necessary or appropriate to ensure that the Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act of 1939, as amended, or the Investment Company Act of 1940, as amended.

       H.    <u>Conflicting Claims</u>

       If any conflicting claims or demands are made or asserted with respect to the Trust Interest of a Plan Administration Trust Beneficiary under this Agreement, or if there is any disagreement between the permitted assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trust shall be entitled, in its discretion, to refuse to comply with any such conflicting claims or demands.

       The Trust may elect to make no payment or distribution with respect to the Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over the resolution of such conflicting claims or demands. Neither the Trust, the Plan Administrator, nor any Representative shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust, Plan Administrator, or any Representative be liable for interest on any funds which may be so withheld.

       The Trust, the Plan Administrator, and each Representative shall be entitled to refuse to act until either: (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trust, which agreement shall include a complete release of the Trust, the Plan Administrator, and the Representatives. Until the Trust receives written notice that one of the conditions of the preceding sentence is met, the Trust may deem and treat as the absolute owner under this Agreement of the Trust Interest in the Trust the Plan Administration Trust Beneficiary identified as the owner of that interest in the Trust Register. The Trust may deem and treat such Plan Administration Trust Beneficiary as the absolute owner for purposes of receiving

distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

In acting or refraining from acting under and in accordance with this Section II.H, the Trust, the Plan Administrator, and the Representatives shall be fully protected and shall incur no liability to any purported claimant, interest holder or any other Person.

## III.    DURATION AND TERMINATION OF THE TRUST

### A.    Dissolution of the Trust

The Plan Administrator and each Representative shall be discharged (if not discharged earlier in accordance with this Agreement) and shall have no further responsibilities except as provided in Section III.B of this Agreement, and the Trust shall be dissolved and thereafter terminate, at such time as: (a) subject to Article VIII of this Agreement, the Trust determines that the pursuit of additional Retained Causes of Action or proceeds of the Insurance Policies is not likely to yield sufficient additional proceeds to justify further pursuit of such Retained Causes of Action or proceeds of the Insurance Policies; (b) all objections to Disputed Claims and Disputed Interests are fully resolved; and (c) all Plan distributions required to be made by the Trust to the Plan Administration Trust Beneficiaries under the Plan and this Agreement have been made, provided, however that in no event shall the Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the 6-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension is necessary to facilitate or complete the recovery on, and liquidation and distribution of, the Plan Administration Trust Assets. Upon dissolution of the Trust, or at such earlier time as the Trust may determine (subject to Article VIII of this Agreement), the Trust may abandon any remaining Plan Administration Trust Assets in a manner consistent with Section IV.E of this Agreement.

### B.    Continuance of the Trust for Winding Up

After the dissolution of the Trust and for the purpose of liquidation and winding up the affairs of the Trust, the Plan Administrator shall continue to act as such until its duties under this Agreement and the Plan have been fully performed, including such post-distribution tasks as necessary to wind up the affairs of the Trust, including, without limitation filing a final tax return for the Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust, the full winddown and dissolution of the Debtors, including the performance of all Wind Down Transactions, and the final distribution of the Plan Administration Trust Assets, the Plan Administrator shall have no further duties or obligations under this Agreement and this Agreement shall terminate other than the provisions that expressly survive termination.

Upon a motion by the Trust, which may be a motion for a final decree, the Bankruptcy Court may enter an order (a) relieving (i) the Plan Administrator, its employees, professionals, and agents, and (ii) the Representatives and their respective agents and professionals, of any further duties, (b) discharging and releasing (i) the Plan Administrator, its employees, professionals, and agents, and (ii) the Representatives and their respective agents and representatives, from all

10

liability related to the Trust, and (c) releasing the Plan Administrator's bond, if any; provided, however, that the GUC Representative and its agents and professionals shall be fully discharged and released from all responsibilities under the Plan, the Confirmation Order and this Agreement at such time as all Allowed General Unsecured Claims have been fully paid in accordance with the Plan, in which case, any requirement under this Agreement of consultation with, or consent of, the GUC Representative for the Trust or Plan Administrator to act may be disregarded.

## IV.   ADMINISTRATION OF THE TRUST

### A.   Payment of Claims, Expenses, and Liabilities

The Trust shall use the Plan Administration Trust Assets to pay Plan Administration Trust Expenses, which shall include all Wind Down Expenses and any Allowed Professional Fee Claims, solely to the extent such Claims are not satisfied in full from the Cash available in the Professional Fee Escrow Account, and which shall have a first right to payment from the proceeds of Plan Administration Trust Assets. The Plan Administrator shall maintain such segregated accounts or reserves that it is required to maintain under the Plan or this Agreement.

The Trust, in its discretion, may make Plan distributions to Holders of Allowed Trust Beneficiary Claims at any time following the Effective Date in accordance with the Waterfall Recovery, provided that such Plan distributions or use is otherwise permitted under, and not inconsistent with, the terms of the Plan, this Agreement, the Confirmation Order, and applicable law; provided further, that the Trust shall pay or reserve for all present and future Plan Administration Trust Expenses before making any Plan distribution to Holders of Allowed Claims or Allowed HoldCo Interests.

### B.   Procedures for Resolving Unliquidated and Disputed Claims

#### 1.   *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and subject to Article VIII of this Agreement, the Trust shall have the sole authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise Disputed Claims and Disputed Interests; provided, however, that Proofs of Claim filed by Holders of Canadian Data Breach Class Settlement Claims, U.S. Data Breach Class Settlement Claims, Pixel Class Settlement Claims, and U.S. Data Breach Arbitration Settling Claims shall be automatically disallowed upon entry of final orders granting approval, as applicable, of the Canadian Data Breach Class Settlement Agreement, U.S. Data Breach Class Settlement Agreement, the Pixel Class Settlement Agreement, and the U.S. Data Breach Arbitration Settlement Order.  The Trust shall also have sole authority to administer and adjust (or direct the adjustment of) the Claims Register or Trust Register to reflect any settlements or compromises of Disputed Claims or Disputed Interests, including the settlement agreements set forth in this Section IV.B.1, without any further notice to or action, order or approval of the Bankruptcy Court.

#### 2.   *Estimation of Claims*

The Trust may, but is not required to, and solely with respect to Lemonaid Commercial Claims, with notice to the Lemonaid Purchaser, at any time request (pursuant to the Claims

11

Reconciliation Procedures or otherwise) that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise herein, a Claim that has been Disallowed but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero U.S. dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim; provided that such limitation shall not apply to Claims against any of the Debtors requested by the Debtors to be estimated for voting purposes only.

### 3.    *Adjustment to Claims and HoldCo Interests Without Objection*

Any duplicate Claim or HoldCo Interest, any Claim that has been paid or satisfied, or any Claim or HoldCo Interest that has been amended or superseded, cancelled or otherwise Disallowed (including pursuant to the Plan or the Confirmation Order), may be adjusted or Disallowed (including on the Claims Register and/or the Trust Register, to the extent applicable) by the Trust after providing notice and a period of at least 30 days for any party in interest (including the Representatives) to object, without any further notice to or action, Order, or approval of the Bankruptcy Court.

### 4.    *Time to File Objections to Claims or HoldCo Interests*

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended by order of the Bankruptcy Court). A motion to extend the Claims Objection Deadline shall automatically extend the deadline until the Bankruptcy Court enters an order on such motion. For the avoidance of doubt, the Claims Objection Deadline shall not apply to objections to HoldCo Interests, and the Plan Administrator shall be entitled, but not required, to object to HoldCo Interests (on no less than 30 days' notice to each affected Holder thereof) at any time prior to the final distribution to be made on account of HoldCo Interests.

### 5.    *Disallowance of Claims or Interests*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, by that Entity have been turned over or paid to the Trust. All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee of the Debtors as of the Effective Date shall be deemed satisfied as of the Effective Date solely to the

12

extent such indemnification obligation is assumed by the Trust, or honored or reaffirmed, as the case may be pursuant to the Plan, without any further notice to or action, Order, or approval of the Bankruptcy Court.

Except as provided in the Plan or otherwise agreed to by the Plan Administrator, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, Order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless (a) as to Claims Bar Dates established by the Plan or Confirmation Order, the Holder obtains leave of the Bankruptcy Court to file a late Claim, and (b) as to all other Claims Bar Dates, on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.

6.    *Disputed Claims and Disputed Interests Procedures*

Except as otherwise specifically provided in the Plan or the Confirmation Order and subject to Article VIII of this Agreement, from and after the Effective Date, the Trust shall have the sole authority (solely with respect to Lemonaid Commercial Claims, with notice to the Lemonaid Purchaser) to: (a) File and prosecute objections to Claims or HoldCo Interests; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all objections to Claims or HoldCo Interests; (c) settle or compromise any Disputed Claim or Disputed HoldCo Interest without any further notice to or action, Order, or approval by the Bankruptcy Court; and (d) direct the Notice and Claims Agent to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

For the avoidance of doubt, except as otherwise provided in the Plan, after the Effective Date, the Trust shall have the exclusive right to object to Claims and HoldCo Interests and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or HoldCo Interest immediately before the Effective Date, including the Retained Causes of Action.

Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim and no HoldCo Interest shall become an Allowed HoldCo Interest unless and until (i) such Claim or HoldCo Interest is deemed Allowed under the Plan or the Bankruptcy Code, (ii) the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or HoldCo Interest or (iii) the Trust, Plan Administrator or a Representative, as applicable, has, subject to Article VIII of this Agreement, entered into a binding stipulation or settlement agreement or other writing Allowing a Claim or HoldCo Interest. Subject to Article VIII of this Agreement, the Trust may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy law.

7.    *No Distribution Pending Allowance*

Except as otherwise provided in the Plan, notwithstanding any other provision of this Agreement, if any portion of a Claim is a Disputed Claim or Disputed Interest, as applicable, no

13

payment or distribution provided hereunder or in the Plan shall be made on account of such Claim or HoldCo Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed HoldCo Interest.

8.    *Distributions After Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed HoldCo Interest, the Trust or the applicable Distribution Agent shall make a distribution (if any) to the Holder of such Allowed Claim or Allowed HoldCo Interest, in accordance with the Waterfall Recovery as set forth in Article IV.D of the Plan. As soon as reasonably practicable after the date that the Order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Disputed HoldCo Interest, becomes a Final Order or a stipulation Allowing any Disputed Claim or Disputed HoldCo Interest becomes effective according to its terms, and solely to the extent the Distribution Agent for the applicable Class of Claims or HoldCo Interest has made a distribution to such Class as of such date, the Distribution Agent shall provide to the Holder of such Claim or HoldCo Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or HoldCo Interest unless such Holder is entitled to Post-Petition Interest under Article III of the Plan.

C.    Trust Reserve Accounts

1.    Chrome Disputed Claims Reserve

On or after the Effective Date, the Plan Administrator may establish the Chrome Disputed Claims Reserve, in an amount or amounts as reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement. On or after the Effective Date, the Plan Administrator may deposit Cash into or withdraw Cash from the Chrome Disputed Claims Reserve if the Chrome Disputed Claims Reserve Amount changes in accordance with this Agreement.

The Trust will withhold the Chrome Disputed Claims Reserve from the property to be distributed under the Plan to Holders of Allowed Claims asserted against the Chrome Debtors and may request estimation of any Chrome Disputed Claim that is contingent or unliquidated. The Trust will withhold the Chrome Disputed Claims Reserve based upon the amount of the Chrome Disputed Claim asserted by the respective Holder of such Chrome Disputed Claim or, if applicable, the estimated amount of each such Chrome Disputed Claim as determined by the Bankruptcy Court. If a Chrome Disputed Claim is estimated or allowed in an amount less than the amount being held on account of such Claim in the Chrome Disputed Claims Reserve, the difference shall be released from the Chrome Disputed Claims Reserve.  For the avoidance of doubt, no monies may be allocated to the Equity Recovery Pool unless the Chrome Disputed Claims Reserve is fully funded inclusive of any Post-Petition Interest payable on account of any applicable Chrome Disputed Claims.

2.    Lemonaid Disputed Claims Reserve

On or after the Effective Date, the Plan Administrator may establish the Lemonaid Disputed Claims Reserve, in an amount or amounts as reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement.  On or after the Effective Date, the Plan

Administrator may deposit Cash into or withdraw Cash from the Lemonaid Disputed Claims Reserve if the Lemonaid Disputed Claims Amount changes at any time in accordance with this Agreement.

The Trust will withhold the Lemonaid Disputed Claims Reserve from the property to be distributed under the Plan to Holders of Allowed Claims asserted against the Lemonaid Debtors and may request estimation for any Lemonaid Disputed Claim that is contingent or unliquidated. The Trust will withhold the Lemonaid Disputed Claims Reserve based upon the amount of the Lemonaid Disputed Claim asserted by the respective Holder of such Lemonaid Disputed Claim or, if applicable, the estimated amount of each such Lemonaid Disputed Claim as determined by the Bankruptcy Court. If a Lemonaid Disputed Claim is estimated or allowed in an amount less than the amount being held in the Lemonaid Disputed Claims Reserve for such Claim, the difference shall be released from the Lemonaid Disputed Claims Reserve. For the avoidance of doubt, no monies may be allocated to the Equity Recovery Pool unless the Lemonaid Disputed Claims Reserve is fully funded inclusive of any Post-Petition Interest payable on account of any applicable Lemonaid Disputed Claims.

3.    Administrative / Priority Claims Reserve

If not established prior to the Effective Date, on the Effective Date, in consultation with the Debtors and the Committees, the Plan Administrator shall establish the Administrative / Priority Claims Reserve by depositing Cash in the amount of the Administrative / Priority Claims Reserve Amount into the Administrative / Priority Claims Reserve in accordance with the terms of this Agreement. The Administrative / Priority Claims Reserve Amount shall be used to pay the Holders of all Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims that shall be paid in the first instance from the Professional Fee Escrow), Allowed Priority Tax Claims, and Allowed Other Secured Claims in full in Cash.

If all or any portion of any Other Priority Claim, Administrative Claim, Priority Tax Claim, or Other Secured Claim becomes Disallowed, the amount on deposit in the Administrative / Priority Claims Reserve attributable to the disputed portion of such Disallowed Claim, including any interest that has accrued on the amount on deposit in the Administrative / Priority Claims Reserve for the disputed portion of such Disallowed Claim, shall remain in the Administrative / Priority Claims Reserve to the extent that the Plan Administrator reasonably determines necessary to ensure that the Cash remaining in the Administrative / Priority Claims Reserve is sufficient to ensure that all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, or other Allowed Other Secured Claims will be paid in accordance with the Plan without any further action or order of the Bankruptcy Court. Any amounts remaining in the Administrative / Priority Claims Reserve after payment of all Allowed Administrative Claims (including any Allowed Professional Fee Claim that is not paid in full from the Professional Fee Escrow), Allowed Other Priority Tax Claims, Allowed Other Priority Claims, or other Allowed Other Secured Claims shall be distributed by the Trust in accordance with the Waterfall Recovery, the Plan, and this Agreement.

4.      Data Breach Settlement Reserves

If not established prior to the Effective Date, on or after the Effective Date, the Plan Administrator shall establish the U.S. Data Breach Class Settlement Fund Reserve, the U.S. Data Breach Arbitration Settlement Reserve, the Canadian Data Breach Class Settlement Fund Reserve, and the Pixel Class Settlement Fund Reserve in accordance with the terms of this Agreement, the U.S. Data Breach Class Settlement Agreement, the Canadian Data Breach Class Settlement Agreement, the U.S. Data Breach Arbitration Settlement Agreement, and the Pixel Class Settlement Agreement, as applicable.

5.      Cyber Insurance Reserve

If not established prior to the Effective Date, on or after the Effective Date, the Plan Administrator shall establish the Cyber Insurance Reserve, subject to Article VIII of this Agreement.  Following the receipt of proceeds from the Cyber Insurance Policies, the Plan Administrator shall transfer such proceeds to the Cyber Insurance Reserve to be distributed in accordance with the Cyber Insurance Proceeds Allocation.

6.      GUC Subordinated Claims Reserve

On or after the Effective Date, the Plan Administrator may establish a GUC Subordinated Claims Reserve in an amount or amounts reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement, to provide for the payment of GUC Subordinated Claims pending their allowance, in the event that all Allowed General Unsecured Claims have been paid in full in accordance with the Plan, such that Holders of Allowed GUC Subordinated Claims shall be entitled to receive a distribution under the Plan.

D.      <u>Retained Causes of Action</u>

Subject to Article VIII of this Agreement, the Trust may prosecute, negotiate, settle or otherwise compromise, or abandon any Retained Causes of Action without further order of the Bankruptcy Court, except as otherwise provided in the Plan, the Confirmation Order, or this Agreement.  Except as otherwise expressly provided in the Plan or this Agreement, the Trust may, but is not required to, pursue any Retained Causes of Action by informal demand and/or by the commencement of litigation. For the avoidance of doubt, net proceeds from Retained Causes of Action are Plan Administration Trust Assets.

E.      <u>Abandonment</u>

If, in the Plan Administrator's reasonable judgment, any Plan Administration Trust Assets cannot be sold in a commercially reasonable manner or the Plan Administrator believes in good faith that such Plan Administration Trust Assets have inconsequential value to the Trust or the Plan Administration Trust Beneficiaries, the Trust shall have the right (subject to Article VIII of this Agreement) to abandon or otherwise dispose of such Plan Administration Trust Assets, including by donating such Plan Administration Trust Asset to a charitable organization.

16

F.    Distributions

    1.    Distributions Generally

The Trust shall make distributions from the Plan Administration Trust Assets of net Cash income and all other net Cash proceeds received by the Trust from the sale or liquidation of Plan Administration Trust Assets at least annually; provided, however, that the Trust may, to the extent consistent with Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by Revenue Procedure 94-45, 1994-2 C.B. 684, retain such amounts (a) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Plan Administration Trust Assets during the term of the Trust, (b) to pay reasonable Plan Administration Trust Expenses, and (c) to satisfy all other liabilities incurred or assumed by the Trust (or to which the Plan Administration Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Agreement, and retention of such amounts may preclude a distribution.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but such payment or performance shall be deemed to have been completed as of the required date.

Subject to Article VII of the Plan, distributions under the Plan on account of Allowed Claims or Allowed HoldCo Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Allowed HoldCo Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Plan Administrator, the Representatives, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct. Distributions to Holders of HoldCo Interests shall be made through the facilities of [DTC/Cede & Co.] and the Plan Administrator shall be authorized to deal with the Holders of HoldCo Interests and the making of distributions to such Holders through the customary practices and procedures of [DTC/Cede & Co.], subject to Article VIII of this Agreement. After the Trust has made its final distribution to Holders of HoldCo Interests, the Trust shall be authorized to cancel all HoldCo Interests and terminate their listing with [DTC/Cede & Co.], and take any other action reasonably necessary to effect a cancelation and discharge of such HoldCo Interests.

Payments to Professionals for all Allowed Professional Fee Claims shall be made from the Professional Fee Escrow Account until all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court in accordance with the Plan and any agreement governing the Professional Fee Escrow Account.  If funds in the Professional Fee Escrow Account are insufficient to pay all Allowed Professional Fee Claims in full, any unpaid amounts shall constitute a Trust Expense and shall be paid as such under the terms of the Plan and this Agreement.

Except as otherwise provided in the Plan, and subject to Article VIII of this Agreement, the Trust is not required to file any accounting or seek approval of any court with respect to the administration of the Trust, or as a condition for making any payment or distribution out of the Plan Administration Trust Assets.

2.      Powers of Distribution Agent

Each Distribution Agent, with respect to the Class or Classes of Claims or HoldCo Interests for which it serves, shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated by the Plan or this Agreement; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Distribution Agent by Order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to exercise any such powers.

3.      Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court and subject to the prior written consent of the Plan Administrator, the Trust shall pay the reasonable and documented compensation, fees and out-of-pocket expenses (including taxes) incurred by any Distribution Agent on or after the Effective Date (including taxes) as Plan Administration Trust Expenses in Cash upon presentment of written invoices in customary form.  If the Trust disputes any invoice presented by any Distribution Agent, the Trust shall pay any undisputed amounts while the parties attempt to resolve the disputed amounts consensually.  The Bankruptcy Court shall determine any dispute the parties are unable to resolve consensually.  For the avoidance of doubt, any reference to "taxes" in this paragraph shall not include income taxes imposed on the Distribution Agent.

4.      Distribution Record Date; Addresses

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date. The Distribution Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Claims or disputes over any Cure Claims, neither the Trust nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the Non-Debtor party to the applicable Executory Contract as of the Effective Date, even if such Non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim. The Distribution Record Date shall not apply to publicly held Securities, including HoldCo Interests, deposited with [DTC/Cede & Co.]. In connection with any distribution under the Plan to be effected through the facilities of [DTC/Cede & Co.] (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors or the Trust, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with Holders of any applicable HoldCo Interests to the extent consistent with the customary practices of [DTC/Cede & Co.].

Except as otherwise provided in the Plan or this Agreement, the Trust shall make Plan distributions to Holders of Allowed Claims in Classes 1, 2, 6 through 9, and 13 and to Holders of Allowed HoldCo Interests as of the Distribution Record Date (1) at the address set forth in the underlying Proof of Claim or Proof of Interest for any certificated HoldCo Interest, if Filed, (2) at the address set forth on the Debtors' Schedules or on any register of equity holders of certificated HoldCo Interests the Debtors may maintain, if no Proof of Claim or Proof of Interest is Filed, (3) pursuant to the book-entry system under which uncertificated HoldCo Interests are held or

18

(4) pursuant to any written change of address Filed with the Bankruptcy Court and delivered to the Trust.

Upon the final approval of the relevant settlement agreement, and the corresponding allowance of the settlement Claim, the Trust shall make Plan distributions to the Holders of Claims in Classes 3 through 5 and Class 14 by delivery of the required distribution(s) under the respective settlements and the Plan to the relevant settlement fund, benefits plan, or other designated agent under the applicable settlement agreement. Neither the Trust, the Plan Administrator, nor the Representatives shall have or incur any liability from or after making a distribution to the relevant settlement fund, benefits plan, or other designated agent with respect to any distribution(s) made under the Plan or this Agreement on account of Allowed Claims in Classes 3 through 5 or Class 14 of the Plan.

5.    Compliance with Tax Requirements

Tax matters with respect to Plan distributions shall be governed by Article V of this Agreement.

6.    Surrender of Instruments

As a condition precedent to receiving any distribution under the Plan, each Holder of a certificated instrument or note must surrender such instrument or note held by it to the Trust or its designee. Any holder of any such certificated instrument or note that fails to: (i) surrender the instrument or note; or (ii) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Trust and furnish a bond in form, substance, and amount reasonably satisfactory to the Trust within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights, claims, or interests and may not participate in any distribution under the Plan or this Agreement.

7.    No Fractional Units

No fractional units of Trust Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed HoldCo Interest otherwise would result in the issuance of Trust Interests that are not a whole number, such Trust Interests shall be rounded as follows: (a) fractions of greater than one-half shall be rounded to the next higher whole number and (b) fractions of one-half or less shall be rounded to the next lower whole number with no further payment on account thereof. The total number of authorized and/or issued Trust Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

8.    Foreign Currency Exchange Rate.

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value calculated by using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition* on the Petition Date.

9.    Setoffs and Recoupments

Except as otherwise provided in the DIP Orders, the Confirmation Order or the Plan, the Trust may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any payments or distributions to be made pursuant to the Plan on account of any Allowed Claim or Allowed HoldCo Interest, any and all claims, rights, and Causes of Action that the Trust may hold against the Holder of such Allowed Claim or Allowed HoldCo Interest; provided that neither the failure to effectuate a setoff or recoupment nor the Allowance of any Claim or Interest shall constitute a waiver or release by the Trust of any and all claims, rights, and Causes of Action that the Trust may possess against the applicable Holder.

Notwithstanding anything to the contrary in the Plan or this Agreement, but subject to the Bar Date Order (including the requirement that all Proofs of Claim state whether a Claim is subject to a right of setoff or recoupment) and the automatic stay, nothing shall modify the rights, if any, of any Holder of Allowed Claims, Allowed HoldCo Interests or any current or former party to an Executory Contract to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law with respect to undisputed amounts owing to or held by it, including the (1) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of any unexpired lease with the Debtors or any successors to the Debtors under the Plan; (2) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; (3) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or the Trust; or (4) assertion of rights of setoff and/or recoupment in connection with periodic reconciliations in accordance with the terms of assumed unexpired leases.

10.    Minimum Distribution

No payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the distribution shall reflect a rounding of such fraction to the nearest whole penny, rounded down to the next lower whole cent. Claimants whose aggregate distributions total less than $100 shall not be entitled to a distribution under the Plan, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII of the Plan and its Holder is forever barred pursuant to Article VIII of the Plan from asserting that Claim against the Debtors, the Wind-Down Debtors, the Trust, or their respective property; provided, however, that the foregoing shall not apply to distributions to Holders of Allowed Claims in Classes 3, 4, 5, and 14.

11.    Allocations

To the maximum extent permitted by Applicable Law, Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest (if any) provided for by this Plan, including Post-Petition Interest.

12.    Distributions Free and Clear

Except as otherwise provided in the Plan, any distribution or transfer made under the Plan, including distributions to any Holder of an Allowed Claim or Allowed HoldCo Interest, shall be

free and clear of any Liens, Claims, Interests, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

13.     Claims Paid by Third Parties

The Trust shall reduce a Claim, and such Claim (or portion thereof) shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor, the Trust, the Plan Administrator, or another Distribution Agent.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim under the Plan and also receives payment from a party that is not a Debtor, the Trust, the Plan Administrator, or another Distribution Agent on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Trust to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim (plus Post-Petition Interest, if applicable) as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

14.     Claims Payable by Third Parties

Except as provided otherwise in the Plan, including with respect to proceeds of the Cyber Insurance Policies, no distributions under the Plan need to be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies or the Wind-Down Debtors' insurance policies, as applicable, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim against any Debtor, then immediately upon such insurers' agreement, the applicable portion of such Claim may be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

15.     Inapplicability of Escheat, Abandoned or Unclaimed Property Laws.

Unclaimed or undeliverable property held by the Trust in accordance with Article VII.E.3 of the Plan shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, or any local governmental unit.  In connection with any unclaimed or undeliverable distribution, the Trust may, in its sole discretion, attempt to determine a Holder's current address or otherwise locate a Holder, but nothing in this Agreement or the Plan shall require the Trust to do so.

16.     Voided Checks; Request for Reissuance.

In accordance with Section VII.E.3. of the Plan, checks issued with respect to an Allowed Claim shall be null and void if not negotiated within 90 days after the date of issuance. Requests for reissuance of any voided check shall be made directly to the Trust by the Entity to whom such check was originally issued. Any claim in respect of a voided check shall be made within 30 days

after the date upon which such check was deemed void. If no request is made as provided in the preceding sentence, any Claims in respect of such voided check shall be discharged and forever barred.

G.   Compliance With Laws

Any and all distributions of the Plan Administration Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

H.   Fiscal Year

Except for the first and last years of the term of the Trust, the fiscal year of the Trust shall be the calendar year. For the first and last years of the term of the Trust, the fiscal year of the Trust shall be such portion of the calendar year that the Trust is in existence.

I.   Books and Records

On the date hereof, the Trust shall: (a) take possession of (i) all books, records, and files of the Debtors and the Estates that were not sold or otherwise transferred prior to the Effective Date and (ii) copies of all books, records, and files of the Debtors and the Estates that were sold or otherwise transferred prior to the Effective Date that were retained pursuant to the Purchase Agreements or other relevant agreements, in each case that relate to the operations of the Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Plan Administrator determines, in accordance with this Agreement (including, but not limited to, the restrictions set forth in Article VIII), that retention of same is no longer necessary or beneficial.

The Plan Administrator shall retain and preserve the Debtors' books, records, and files that have been delivered to or created by the Trust, in such detail and for such period of time as may be necessary to enable the Trust to make full and proper reports in respect thereof in accordance with the provisions of this Agreement and applicable law, including applicable tax, securities and other federal and state laws.  The Trust may, in in sole discretion and without the need for Bankruptcy Court approval (but and except as set forth in Article VIII of this Agreement) abandon or destroy any books and records that are not necessary for the administration of the Trust.

For the avoidance of doubt, the cost and expenses of maintaining books and records delivered to and maintained by the Trust shall constitute, and be paid as, Plan Administration Trust Expenses.

J.   No Bond Requirement

Notwithstanding any state or other applicable law to the contrary, the Trust, the Plan Administrator, the Representatives, and any other Distribution Agent (including any successor to any of those parties) shall be exempt from giving any bond or other security in any jurisdiction and the Plan Administrator, the Representatives and any other Distribution Agent shall serve without bond.

K.  Plan Administration Trust Insurance

Subject to Article VIII of this Agreement, the Plan Administrator is authorized, but not required, to obtain all reasonable insurance coverage for the Trust, itself and its respective employees or agents, if applicable, the Representatives and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the Trust, which insurance coverage may, in the Plan Administrator's discretion, be extended for a reasonable period after the termination of the Trust or this Agreement.

The costs of any such insurance coverage shall constitute Trust Expenses and be paid out of Plan Administration Trust Assets.

## V.  TAX MATTERS[4]

A.  Trust's Tax Power for the Debtors

For all taxable periods ended on or before the dissolution of the Debtors, the Trust shall have the same authority and responsibility in respect of all taxes of the Debtors (including as the common parent or other agent of any consolidated, combined, or unitary tax group of which the Debtors were the agent) and, to the same extent, as if the Trust was a Debtor.

In furtherance of the transfer of the Plan Administration Trust Assets to the Trust, the Trust shall be entitled to all tax refunds of the Debtors (and the Trust shall bear responsibility for all tax liabilities of the Debtors for taxable periods ended on or before the dissolution of the Debtors, to the extent not discharged by the Plan or provided for payment or otherwise satisfied in the Plan).

The Plan Administrator shall not have any personal liability whatsoever associated with the signing of the Debtors' tax returns or the payment of any tax, penalties or interests associated therewith.

B.  Treatment of Trust for Tax Purposes

Subject to any applicable law or definitive guidance from the IRS or a court of competent jurisdiction to the contrary and except to the extent the Debtors and the Committees determine otherwise in their reasonable discretion to treat all or any portion of the Trust as a "qualified settlement fund," a "disputed ownership fund" and/or otherwise, the Debtors intend that the Trust shall be a liquidating trust as that term is used under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the Plan Administrator will take a position on such Trust's tax return accordingly. For U.S. federal income tax purposes, the transfer of the Plan Administration Trust Assets to the Trust, will be deemed to occur as (a) a first-step transfer of the Plan Administration Trust Assets (other than such assets allocable to a DOF (defined below) or QSF (defined below)) to the Plan Administration Trust Beneficiaries, and (b) a second-step transfer by such Plan Administration Trust Beneficiaries to the Trust. As soon as possible after the transfer of the Plan Administration Trust Assets to the Trust, subject to Article VIII of this Agreement, the Plan Administrator shall make a good faith valuation of the Plan

---

[4]  [Note to Draft: Under discussion.]

Administration Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the Trust, and the Plan Administration Trust Beneficiaries shall take consistent positions with respect to the valuation of the Plan Administration Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax reporting purposes.

To the extent permitted by applicable law, all parties, including the Trust, the Plan Administrator, and any Plan Administration Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes. The Debtors will provide information to the Trust as to their valuation determinations with respect to the Plan Administration Trust Assets on the Effective Date to facilitate consistent tax reporting by the Trust.

So long as the Trust is treated as a liquidating trust, the Trust shall file any and all tax returns for the Trust and any DOF (defined below) (if a DOF election is made) or QSF (defined below), as applicable, including, but not limited to, the filing of a separate federal tax return for any DOF or QSF; provided, however, that the Plan Administrator shall have no personal liability for the signing or accuracy of the Trust's or any DOF's tax returns (as applicable) or for any tax liability related thereto.

Allocations of Trust taxable income among the Plan Administration Trust Beneficiaries (other than taxable income allocable to any DOF or QSF) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to any DOF or QSF) to the holders of the Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Trust. Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Plan Administration Trust Assets. The tax book value of the Plan Administration Trust Assets for purposes of this Section V.B. shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Trust shall be responsible for payment, out of the Plan Administration Trust Assets (other than those subject to the DOF election or QSF treatment described in Article IV.E.5 of the Plan), of any taxes imposed on the Trust, the Plan Administration Trust Assets (other than those subject to the DOF election or QSF treatment described in Article IV.E.5 of the Plan and Section V.D of this Agreement) or any DOF or QSF to the extent such payment is consistent with the Bankruptcy Code, the Plan, and any applicable order of the Bankruptcy Court including, but not limited to, the Bar Date Order; provided, however, that any taxes imposed on any DOF or its assets will be paid out of the assets subject to the DOF election and any taxes imposed on any QSF or its assets will be paid out of the assets subject to QSF treatment, and any subsequent distributions in respect of the allowance or disallowance of such claims will be reduced accordingly. In the event, and to the extent, that any Cash subject to the DOF election is insufficient to pay the portion of any taxes attributable to taxable income arising from assets subject to the DOF election and any

24

Cash subject to QSF treatment is insufficient to pay the portion of any taxes attributable to taxable income arising from assets subject to QSF treatment, such assets (including those otherwise distributable) may be sold to pay such taxes.

The Trust shall file tax returns as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), except to the extent of any portion of the Trust that is treated as a "qualified settlement fund" or a "disputed ownership fund".

The Trust shall issue tax-related notices to the applicable Plan Administration Trust Beneficiaries as the Trust determines are necessary or desirable.

C.    Tax Withholdings by the Plan Administration Trust

Distributions made under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Plan distributions shall be subject to any such withholding, payment, and reporting requirements. The Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator or the Distribution Agent, as applicable, shall have the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The applicable Distribution Agent may require any Holder of any Claim or any HoldCo Interest to complete the appropriate IRS Form W-8 or IRS Form W-9 as a prerequisite to receiving any distribution under the Plan. If a Holder of any Claim or HoldCo Interest does not provide to the applicable Distribution Agent, within 90 days of first written request, all documentation that, in the applicable Distribution Agent's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Claim or Interest, including the appropriate IRS Form W-8 or IRS Form W-9, the relevant Claim or HoldCo Interest shall be deemed Disallowed, forever barred in its entirety without further order of the Bankruptcy Court and the funds on account of any present or future distribution associated with such Claim or HoldCo Interest shall revert to the Trust for all purposes, including, but not limited to, redistribution to the other Holders of Claims or HoldCo Interests, as applicable, in accordance with the terms of the Plan (upon payment or reservation in full of all Plan Administration Trust Expenses).  For the avoidance of doubt, with respect to (i) Classes 3, 4, 5, and 14, upon the final approval of the settlement associated with each such Class, the Trust shall only be responsible to obtain the tax identification document(s) (e.g., form W-9) of the relevant settlement fund, benefits plan, or other designated agent under the applicable settlement agreement in the relevant Class and not any other individual or entity, and the designated agent under the applicable settlement agreement or benefits plan in the relevant Class shall make all necessary arrangements to prepare and file any and all required tax forms and/or tax returns in connection with payments to individual claimants; and (ii) HoldCo Interests held exclusively in book entry form at [DTC/Cede & Co.],

25

the Trust shall only be responsible to obtain the tax identification document(s) (e.g., form W-9) of [DTC/Cede & Co.]

Notwithstanding any other provision of the Plan to the contrary, each Holder of a Claim or Interest that is to receive a distribution under the Plan or this Agreement shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. Amounts properly withheld from distributions made under the Plan and this Agreement and paid over to the applicable taxing authority for the account of any Holder will be treated as amounts distributed to such Holder.

D.     DOF Election

The Trust may, in its sole discretion, determine the best way to report for United States tax purposes with respect to any of the various disputed Claims reserves, if applicable, including, but not limited to, filing a tax election to treat any or all of such disputed Claims reserves as a disputed ownership fund ("DOF") or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust (and, to the extent permitted by applicable law, report consistently with the foregoing for United States federal, state, and local income tax purposes) (the "DOF Election"). If a DOF Election is made with respect to one or more disputed Claims reserves, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of any DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for each DOF or other separate entity and the payment of federal and/or state income tax due.

E.     Qualified Settlement Fund

The Trust may, if it determines, in its sole discretion, that it is required to, report for United States tax purposes, a portion of the Trust's assets as one or more "qualified settlement funds" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Tax Code ("QSF"). The Trust shall comply with all federal and state tax reporting and tax compliance requirements associated with such assets constituting a QSF, including the filing of a separate federal tax return for each QSF or other separate entity and the payment of federal and/or state income tax due.

## VI.    POWERS AND LIMITATIONS OF THE TRUST AND THE PLAN ADMINISTRATOR

A.     Powers of the Trust

The Trust shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in the Bankruptcy Cases solely with respect to the purposes of the Trust set forth in the Plan and this Agreement or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, and is appointed as the representative of the Estates. The Trust may exercise all power and authority that may be exercised by any officer, director, or Holder of an Interest in the Debtors with like effect as if authorized, exercised, and taken by unanimous consent of such officers, directors, or Holders of HoldCo Interests.

B.     Responsibilities and Authority of the Trust

The Trust shall be the exclusive administrator of the Plan Administration Trust Assets for purposes of 31 U.S.C. § 3713(b), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the Trust's duties under this Agreement. The Trust shall hold and distribute plan distributions in accordance with the provisions of the Plan and this Agreement.

The Trust may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties and those of the Plan Administrator under the Plan and this Agreement, and may compensate and reimburse the reasonable fees and expenses of those professionals as Plan Administration Trust Expenses under this Agreement.

The powers of the Trust shall include any and all powers and authority to implement the Plan (except for administering the Professional Fee Escrow Account which is not a Trust responsibility), administer and make distributions in accordance with the Plan and this Agreement, including: (a) liquidating, receiving, holding, investing, supervising, and protecting the Plan Administration Trust Assets; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made from Plan Administration Trust Assets under the Plan; (c) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (d) paying all Plan Administration Trust Expenses as provided in this Agreement and the Plan; (e) except as otherwise provided in the Plan or this Agreement, investigating, commencing, pursuing, enforcing, prosecuting, abandoning, waiving, settling, compromising or releasing, as appropriate, claims, interests, rights, and Privileges under the Retained Causes of Action in accordance with Article IV.F of the Plan; (f) administering and paying taxes of the Wind-Down Debtors and the Trust, including filing tax returns; (g) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (h) discharging the Debtors' and the Wind-Down Debtors', as applicable, post-Effective Date obligations under the Purchase Agreements, if any; (i) administering, reconciling and objecting to Claims and Interests against the Debtors; and (j) subject to Article VIII, exercising such other powers as may be vested in the Trust pursuant to the Plan, the Confirmation Order, or any applicable orders of the Bankruptcy Court or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with this Agreement.

C.     Wind-Down

As soon as practicable after the Effective Date, the Plan Administrator shall: (a) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (b) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of one or more of the Debtors or the Wind-Down Debtors under the applicable laws of their state of incorporation or formation (as applicable); (c) perform the Wind-Down Transactions; and (d) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the Plan as it relates to the Wind-Down Debtors and the Wind-Down Transactions.   Any certificate of dissolution or

27

equivalent document may be executed by the Plan Administrator without the need for any action or approval by the shareholders or board of directors or managers of any Debtor. From and after the Effective Date, except with respect to Wind-Down Debtors as set forth in the Plan, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (y) shall be deemed to have canceled pursuant to the Plan all Interests (except to the extent necessary to facilitate the right of Holders of Allowed HoldCo Interests to receive distributions under the Plan), and (z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

  D. <u>Actions Taken by the Trust</u>

  Subject to Article VIII of this Agreement, without limiting the Trust's authority under the preceding subsection, the Trust, the Plan Administrator, and/or the Representatives, as applicable, may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and this Agreement, without the need for Bankruptcy Court approval (unless otherwise indicated) subject to and in accordance with the terms of the Plan and this Agreement, including, but not limited to:

  1. the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of the Plan and this Agreement and that satisfy the requirements of applicable law;

  2. the power to invest any monies held as Plan Administration Trust Assets and withdraw, make distributions, and pay taxes and other obligations owed by the Trust from such funds in accordance with the Plan and this Agreement;

  3. the ability to borrow funds or enter into an agreement to obtain litigation financing to the extent consistent with and in furtherance of the purposes of the Trust;

  4. the power to engage and compensate, without prior Bankruptcy Court order or approval, employees, independent contractors, professionals, and other representatives or agents to assist the Trust with respect to its responsibilities (including professionals previously retained by the Debtors or the Committees), which shall be paid as Plan Administration Trust Expenses out of the Plan Administration Trust Assets;

  5. the execution and delivery or any appropriate instruments or transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with the Plan and this Agreement;

  6. the power to act on behalf of the Debtors, the Debtors' Estates, or the Trust in commencing, prosecuting, compromising, settling, or defending any litigation or

rights (whether legal or equitable) pertaining to the Plan Administration Trust Assets, including the Retained Causes of Action, without notice to or approval from the Bankruptcy Court;

7.      the ability to appear and have standing in the Bankruptcy Court (or any other court having jurisdiction over the Plan Administration Trust Assets) to be heard with regard to objections to Claims or Interests, Retained Causes of Action, and other matters that may affect or relate to the Plan Administration Trust Assets;

8.      the Filing, prosecuting, compromising, or settlement of objections to Claims or Interests in accordance with the Plan without further approval of or application to the Bankruptcy Court;

9.      the filing of any appropriate documents with appropriate governmental authorities pursuant to applicable law;

10.     the ability to collect and liquidate all Plan Administration Trust Assets, including the sale of any Plan Administration Trust Assets, which may include, but is not limited to, the entry into litigation financing arrangements with respect to any Retained Causes of Action;

11.     the ability to protect and enforce the rights to the Plan Administration Trust Assets vested in the Trust by the Plan and this Agreement;

12.     the power to comply with the Trust's accounting, finance, and reporting obligations;

13.     the power to take any action necessary to administer the Chapter 11 Cases, which may include, but is not limited to, the power to seek to establish a bar date for filing proofs of HoldCo Interests;

14.     the power to pay any and all expenses and make all other payments in connection with administering the Trust without further order of the Bankruptcy Court as Plan Administration Trust Expenses out of the Plan Administration Trust Assets and to pay Wind-Down Expenses; provided, however, that in no event shall the Plan Administrator be liable in its individual capacity for payment of any Plan Administration Trust Expenses or Wind-Down Expenses;

15.     the ability to open and maintain bank accounts in the name of the Trust, draw checks and drafts thereon on the sole signature of the Plan Administrator, and terminate such accounts as the Trust deems appropriate;

16.     in the event that the Trust determines that the Plan Administration Trust Beneficiaries or the Trust may, will, or have become subject to adverse tax consequences, in the Trust's sole discretion, the power to take such actions that will, or are intended to, alleviate such adverse tax consequences;

29

17.   the ability to cause the Trust to abandon or donate to a charitable organization any Plan Administration Trust Assets that the Trust determines in its discretion to be too impracticable or of inconsequential value to the Trust and the Plan Administration Trust Beneficiaries;

18.   the ability to make distributions to Holders of Allowed Claims and Allowed HoldCo Interests and deliver distributions on account of the Trust Interests in accordance with the Plan and this Agreement;

19.   the ability to seek a final decree closing some or all of the Chapter 11 Cases; and

20.   any and all other actions that the Trust, determines is necessary or appropriate to effectuate the Plan and this Agreement, including, but not limited to, the right to conduct discovery and oral examination of any Person under Bankruptcy Rule 2004.

E.   <u>Limitations on the Trust</u>

The Trust shall hold the Trust out as a trust in the process of liquidation and not as an investment company. The authority of the Trust shall be restricted to the liquidation of the Plan Administration Trust Assets on behalf, and for the benefit, of the Plan Administration Trust Beneficiaries and the distribution and application of the Plan Administration Trust Assets for the purposes set forth in, and the conservation and protection of the Plan Administration Trust Assets and the administration thereof in accordance with, the provisions of this Agreement, the Plan and the Confirmation Order, and shall not take any action that would jeopardize (1) treatment of the Trust as a "liquidating trust" that is a grantor trust for U.S. federal income tax purposes (unless all or a portion of the Trust is treated as a qualified settlement fund) and (2) if the DOF Election is made, the treatment of any of the disputed Claims reserves as a DOF for U.S. federal income tax purposes. The Trust shall not at any time, on behalf of the Trust or the Plan Administration Trust Beneficiaries, (1) enter into or engage in any trade or business, or (2) take any actions that are not related, directly or indirectly, to the purposes of this Plan Administration Trust Agreement and the Trust or the administration or implementation of the terms this Agreement.

F.   <u>Term of the Plan Administrator</u>

The Plan Administrator will serve on and after the Effective Date in accordance with this Agreement and the Plan. The Plan Administrator shall serve until the earlier to occur of: (1) dissolution of the Trust in accordance with the terms of this Agreement and the Plan; or (2) the Plan Administrator's death, resignation, dissolution, incapacity, bankruptcy, liquidation, or removal pursuant to this Agreement.

The duties, responsibilities, and powers of the Plan Administrator shall terminate on the first date after which (i) the Trust is wound up and dissolved in accordance with the Plan, this Agreement, and applicable law, and (ii) the Wind-Down Transactions have been consummated.

G.     Plan Administrator Conflicts of Interest

If the Plan Administrator determines in its reasonable discretion that it has an actual or potential conflict of interest with respect to any matter, the Plan Administrator shall provide prompt notice to the Representatives and request that the Representatives designate a person to act on behalf of the Trust solely with respect to such matter (such designee a, "Conflicts Trustee"). If the Representatives cannot agree on a Conflicts Trustee to appoint to act on behalf of the Trust with respect to such matter, then each Representative will propose one candidate to the Plan Administrator, and the Plan Administrator shall select one of the candidates presented to act as Conflicts Trustee.

Either Representative may identify a potential conflict matter to the Plan Administrator by written notice.  If such conflict matter is not resolved within seven (7) days after the Plan Administrator's receipt of notice, the applicable Representative may request that the Bankruptcy Court appoint and approve a Conflicts Trustee.

Any Conflicts Trustee's authority to act on behalf of the Trust shall terminate automatically upon the conclusion of the matter giving rise to such actual or potential conflict of interest.

H.     Compensation and Expenses of the Plan Administrator

Subject to Article VIII, the Plan Administrator shall be entitled to receive reasonable compensation in connection with its performance of its duties plus reimbursement of its reasonable out-of-pocket expenses.  All reasonable and documented costs, expenses, and obligations, including filing fees, incurred by the Plan Administrator shall constitute Plan Administration Trust Expenses and be paid from the Plan Administration Trust Assets, prior to any distribution to the Plan Administration Trust Beneficiaries and without further Bankruptcy Court approval or order (subject to the limitations set forth in this Agreement, including, but not limited to, Article VIII, and the Plan).

I.     Employment, Indemnification, and Other Agreements

The Trust may (but is not required to) enter into employment, independent contractor, indemnification and other agreements with individuals who may be required to assist the Trust. Such agreements shall remain in place until such time as the Trust shall determine to either terminate or amend such agreements.

J.     Investment of Plan Administration Trust Monies

All monies and other assets received by the Trust shall be held in trust for the benefit of the Plan Administration Trust Beneficiaries, but need not be segregated from other Plan Administration Trust Assets, unless and to the extent required by the Plan and this Agreement. The Trust shall be permitted but not required to invest any such monies in the manner set forth in this Section VI.I, but shall not have any liability for interest or producing income on any monies received by the Trust and held for distribution or payment to the Plan Administration Trust Beneficiaries, except as such interest shall actually be received by the Trust, which interest or income shall be distributed as provided in the Plan and this Agreement.  Except as otherwise provided by the Plan or Confirmation Order, the right and power of the Trust to invest the Plan

Administration Trust Assets, the proceeds thereof, or any income earned by the Trust, other than those powers reasonably necessary to maintain the value of the Plan Administration Trust Assets and to further the Trust's purpose pursuant to the Plan, shall be limited to the right and power to (1) invest such Plan Administration Trust Assets (pending distributions in accordance with the Plan or this Agreement) in (i) short-term direct obligations of, or obligations guaranteed by, the United States of America; (ii) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof or (iii) a short-term money market fund; and (2) deposit such Plan Administration Trust Assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "Permissible Investments"); provided, that the scope of any such Permissible Investments shall be limited to include only those investments that a Trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. For the avoidance of doubt, the provisions of the Estates, Power and Trusts Law of New York shall not apply to the Trust or this Agreement. Notwithstanding the foregoing, the Plan Administrator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Plan Administrator's administration of the Trust.

## VII.    SUCCESSOR PLAN ADMINISTRATOR AND REPRESENTATIVES

### A.    Resignation

The Plan Administrator may resign by giving forty-five (45) days' written notice thereof to the Representatives, the U.S. Trustee, and Bankruptcy Court. Such resignation shall become effective on the effective date of the appointment of a successor Plan Administrator in accordance with Section VII.C and such successor's acceptance of such appointment in accordance with Section VII.E of this Agreement.

### B.    Removal

Either or both Representatives, on forty-five (45) days' notice, may file a motion seeking removal of the Plan Administrator for cause established by the moving party. If such motion is filed, until such time as such motion is ruled on by the Bankruptcy Court, any decisions by the Plan Administrator under this Agreement must either be (i) approved by both Representatives in writing, or (ii) approved by the Bankruptcy Court. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section VII.B. Any removal of the Plan Administrator shall become effective on such date as may be specified by the Representatives, or, in the event of removal by order of the Bankruptcy Court, upon such date ordered by the Bankruptcy Court.

### C.    Effect of Resignation or Removal

The death, resignation, removal, incapacity, dissolution, bankruptcy, or insolvency of the Plan Administrator shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement, the Plan, or the Confirmation Order or to invalidate any action theretofore taken by the Plan Administrator. All fees and expenses properly incurred by the

Plan Administrator prior to the resignation or removal of the Plan Administrator shall be paid as Plan Administration Trust Expenses from the Plan Administration Trust Assets pursuant to the Plan, the Confirmation Order, and this Agreement. In the event of the resignation or removal of the Plan Administrator, such Plan Administrator shall (a) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Plan Administrator or directed by the Bankruptcy Court to effect the termination of such Plan Administrator's capacity under this Agreement, (b) promptly deliver to the successor Plan Administrator all documents, instruments, records and other writings related to the Trust as may be in the possession of such Plan Administrator, (c) render to the Representatives a full and complete accounting of monies and assets received, disbursed, and held during the term of office of the resigning Plan Administrator and such other information as reasonably requested by the Representatives, and (d) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Plan Administrator.

D.    Appointment of Successor Plan Administrator

Upon the death, resignation, removal, incapacity, dissolution, bankruptcy, or insolvency of a Plan Administrator, the Representatives shall select a successor Plan Administrator and file a notice of the same with the Bankruptcy Court, *provided that* in the event of the resignation or removal of the Plan Administrator, the Representatives shall select a successor Plan Administrator no later than the effective date of such resignation or removal.

If the Representatives are unable to agree on the selection of a successor Plan Administrator as provided in this Section VII.D, then either or both Representatives shall file a motion requesting the Bankruptcy Court to appoint a successor Plan Administrator, *provided that*, in the event only one Representative files such motion, the other Representative's rights to file an objection to any such motion are preserved.

E.    Acceptance of Appointment by Successor Plan Administrator

Any successor Plan Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator. Upon acceptance in writing, such successor Plan Administrator shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges in the Trust of its predecessor under this Agreement, the Plan, and the Confirmation Order with like effect as if originally named Plan Administrator.

F.    Representatives

Each Representative may resign or be removed pursuant to the same terms and procedures provided above regarding the resignation or removal of the Plan Administrator, except that a notice of resignation of any Representative shall be delivered to the Plan Administrator, the remaining Representative and the U.S. Trustee.

## VIII.   REPRESENTATIVES AND TRUST GOVERNANCE

A.   <u>Generally</u>

The Representatives shall have the authority and responsibility to oversee, review, and consult with the Plan Administrator regarding activities and performance of the Trust as set forth in the Plan and this Article VIII, and shall have the authority to take and approve such other actions as are expressly set forth in this Agreement, including, but not limited to, the right to seek to remove the Plan Administrator pursuant to Section VII.B of this Agreement.

The authority of the Representatives will be effective as of the Effective Date, and, except as provided in Section III.B. of this Agreement with respect to the GUC Representative, will remain and continue in full force and effect until the Trust is dissolved in accordance with the terms of this Agreement or the Bankruptcy Court rules otherwise.

B.   <u>Meetings of the Trust Parties</u>

The Plan Administrator and the Representatives (collectively, the "<u>Trust Parties</u>") shall meet at least once per calendar month, unless the Trust Parties agree otherwise in writing to adjourn or cancel one or more monthly meetings.

Special meetings of the Trust Parties may be held whenever and wherever convened by the Plan Administrator; *provided, however,* that the Plan Administrator shall provide no less than two (2) days' written notice of any special meeting, unless both Representatives consent to shorter notice.

Any Trust Party proposing to discuss written materials at a meeting with the other Trust Parties must provide the other Trust Parties with copies of such written materials no less than two (2) days prior to such meeting, unless all other Trust Parties consent to shorter notice.

C.   <u>Disposition of Assets</u>

The Plan Administrator may, with notice to the Representatives, abandon, sell, transfer, or otherwise dispose of any Plan Administration Trust Assets in any commercially reasonable manner (including abandonment or donation to a charitable organization of its choice), that the Plan Administrator reasonably concludes is of inconsequential benefit to the Trust Beneficiaries; *provided that* the Plan Administrator shall provide the Representatives no less than seven (7) days' written negative notice of any proposed abandonment, sale, transfer or other disposition of any Plan Administration Trust Assets greater than $250,000 in value.  If both Representatives object in writing within such notice period, the Plan Administrator may not consummate the proposed abandonment, sale, transfer or other disposition of the Plan Administration Trust Assets.  If only one of the Representatives provides timely written notice of an objection to the proposed abandonment, sale, transfer or other disposition of Plan Administration Trust Assets, then the Plan Administrator may file a motion seeking Bankruptcy Court approval of the proposed disposition of such Plan Administration Trust Assets, *provided* that the Representatives' rights to file an objection to such motion are preserved.

34

For the avoidance of doubt, no notice to, or approval from the Bankruptcy Court shall be required for any abandonment, sale, transfer or other disposition of a Plan Administration Trust Asset, except as otherwise provided in this Section VIII.C. or in Section VIII.J.1 of this Agreement.

D.   Establishment and Maintenance of Reserves

1.   Reserves Initially Established in Consultation with the Debtors and the Committees

To the extent that the Plan Administrator determines, in its discretion, that the amount of Cash deposited in the Administrative / Priority Reserve on the Effective Date, or held in such reserve from time to time thereafter, is insufficient to pay all Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims that shall be paid in the first instance from the Professional Fee Escrow), Allowed Priority Tax Claims, and Allowed Other Secured Claims in full in Cash, based on Claims filed after the Effective Date or otherwise, the Plan Administrator shall consult with the Representatives with respect to any proposed modification of the Administrative / Priority Reserve and provide the Representatives a reasonably detailed analysis in support of the request, together with such other information and documentation that the Representatives may reasonably require.

2.   Reserves Established in Consultation with the Representatives

On or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall, in consultation with the Representatives, (a) establish and determine the initial amounts of the Chrome Disputed Claims Reserve, the Lemonaid Disputed Claims Reserve, and, if applicable, the Canadian Data Breach Class Settlement Fund Reserve, the Pixel Class Settlement Fund Reserve, the GUC Subordinated Claims Reserve, the U.S. Data Breach Arbitration Settlement Reserve, the U.S. Data Breach Class Settlement Fund Reserve and (b) if not established prior to the Effective Date, establish and determine the initial amounts of the Cyber Insurance Reserve.

To the extent that the Plan Administrator determines, in its discretion, that the amount of Cash deposited in any of the reserves set forth in this Section VIII.D.2, or held in any such reserve from time to time thereafter, is insufficient to satisfy the treatment specified in the Plan with respect to Claims in the corresponding Class or other material terms or conditions of the Plan, based on Claims filed after the Effective Date or otherwise, the Plan Administrator shall consult with the Representatives with respect to any proposed modification of the reserve to be supplemented and provide the Representative a reasonably detailed analysis in support of the request, together with such other information and documentation that the Representatives may reasonably require.

E.   Compensation

1.   Compensation of the GUC Representative

The GUC Representative shall be entitled to receive compensation equaling $150,000 per year, which will be pre-funded annually by the Plan Administrator, plus reasonable documented out-of-pocket expenses, which shall be subject to the GUC Professionals Budget and will be included in the monthly invoices to the Plan Administrator as set forth herein.

The GUC Representative shall provide to the Plan Administrator (a) monthly invoices detailing any out-of-pocket expenses, and (b) copies of invoices of any GUC Representative Professionals (defined below) that the GUC Representative seeks to pay. If the Plan Administrator does not object in writing within seven (7) days after receipt of any invoice(s), the GUC Representative shall promptly pay the invoice(s) out of the GUC Professionals Budget. If the Plan Administrator timely raises an objection, then (i) the GUC Representative shall promptly pay the undisputed portion of the invoice(s) provided by the GUC Representative out of the GUC Professionals Budget, and (ii) the Plan Administrator and the GUC Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s). If the parties are unable to resolve such dispute within thirty (30) days after the date on which the Plan Administrator first sent written notice of its objection, then the GUC Representative may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Plan Administrator and an objection period for the Plan Administrator of fourteen (14) days.

2.      Compensation of the Equity Representative

The Equity Representative shall be entitled to receive compensation equaling $150,000 per year (the "Equity Representative Compensation Cap"), which will be pre-funded annually by the Plan Administrator, plus reasonable documented out-of-pocket expenses, which shall be subject to the Equity Professionals Budget and will be included in the monthly invoices to the Plan Administrator as set forth herein. The Equity Representative may opt, in his or her discretion, to be compensated on an hourly basis. If the Equity Representative chooses to receive hourly compensation and such hourly fees exceed the Equity Representative Compensation Cap for a given year, the Equity Representative may compensate himself or herself for such excess fees from any amounts remaining in the Equity Professionals Budget; *provided* that such excess fees shall not exceed the total amount remaining in the Equity Professionals Budget.


The Equity Representative shall provide to the Plan Administrator (a) monthly invoices detailing any out-of-pocket expenses, and (b) copies of invoices of any Equity Representative Professionals (defined below) that the Equity Representative seeks to pay. If the Plan Administrator does not object in writing within seven (7) days after receipt of any invoice(s), the Equity Representative shall promptly pay the invoice(s) out of the Equity Professionals Budget. If the Plan Administrator timely raises an objection, then (i) the Equity Representative shall promptly pay the undisputed portion of the invoice(s) provided by the Equity Representative out of the Equity Professionals Budget, and (ii) the Plan Administrator and the Equity Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s). If the parties are unable to resolve such dispute within thirty (30) days after the date on which the Plan Administrator first sent written notice of its objection, then the Equity Representative may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Plan Administrator and an objection period for the Plan Administrator of fourteen (14) days.

3.      Compensation of Plan Administrator

The compensation of the Plan Administrator shall be as agreed to by the Debtors and the Committees and set forth in the Plan Supplement.

4.      Compensation Modifications

(a) The Plan Administrator may propose a modification to its compensation for cause by written request to the Representatives on seven (7) days' negative notice.  If (i) both Representatives timely object to a compensation modification proposed by the Plan Administrator, then the modification shall not be approved; and (ii) only one of the Representatives timely objects to a proposed modification to the Plan Administrator's compensation, then the Plan Administrator may file a motion with the Bankruptcy Court seeking its approval, *provided* that the Representatives' rights to file an objection with the Bankruptcy Court are preserved.

(b) Either of the Representatives may propose a modification to its compensation for cause by written request to the Plan Administrator and the other Representative on seven (7) days' negative notice.  If either the Plan Administrator or the other Representative timely objects to a proposed modification of any Representative's compensation, then the proposing Representative may file a motion with the Bankruptcy Court seeking its approval; *provided* that the other parties' rights to file an objection with the Bankruptcy Court are preserved.

F.      Trust Professionals

1.      Plan Administrator Professionals

The Plan Administrator, in consultation with the Representatives, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "Plan Administrator Professionals") to assist in carrying out its duties under the Plan and this Agreement.  The Trust may compensate and reimburse the reasonable expenses of Plan Administrator Professionals, which shall constitute Plan Administration Trust Expenses, without further order of the Bankruptcy Court from the Plan Administration Trust Assets in accordance with the Plan and this Agreement.

On a monthly basis, the Plan Administrator shall provide reasonably detailed invoices to the Representatives with respect to (a) its fees and out-of-pocket expenses and (b) the fees and expenses of Plan Administrator Professionals.  In the event that neither of the Representatives objects in writing within seven (7) days after receipt of such invoice(s), the Plan Administrator promptly shall pay the invoice(s) out of the Plan Administration Trust Assets as Plan Administration Trust Expenses.  If either of the Representatives timely objects in writing, then (i) the Plan Administrator shall promptly pay the undisputed portion of the invoice(s) at the end of such period out of the Plan Administration Trust Assets as Plan Administration Trust Expenses, and the Trust Parties shall work in good faith to resolve any dispute with respect to the invoice(s) provided by the Plan Administrator; and (ii) the Plan Administrator and the objecting Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s).  If the parties are unable to resolve such dispute within thirty (30) days after the date on which the objecting Representative first sent written notice of its objection, then the Plan Administrator may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Representatives and an objection period of fourteen (14) days for the Representatives.

2.      GUC Representative Professionals

The GUC Representative may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, including the "GUC Representative Professionals") to assist in carrying out its duties under the Plan and this Agreement, subject to an initial budget of $1.5 million for, among other things, compensation of GUC Representative Professionals in the aggregate (the "GUC Professionals Budget").  The Plan Administrator shall prefund the GUC Professionals Budget to the GUC Representative.  The GUC Representative may request an increase to the GUC Professionals Budget for cause by written request to the Plan Administrator and notice to the Equity Representative.  If the Plan Administrator approves the GUC Representative's proposed increase to the GUC Professionals Budget, the Equity Representative may file an objection with the Bankruptcy Court to such increase and/or file a motion with the Bankruptcy Court seeking to obtain a commensurate increase.  To the extent that the Plan Administrator denies a request for an increase in the GUC Professionals Budget, the GUC Representative may seek Bankruptcy Court approval of the request; *provided* that the Plan Administrator's and Equity Representative's right to file an objection with the Bankruptcy Court are preserved.

3.      Equity Representative Professionals

The Equity Representative may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "Equity Representative Professionals") to assist in carrying out its duties under the Plan and this Agreement, subject to an initial budget of $1.5 million for, among other things, compensation of Equity Representative Professionals in the aggregate (the "Equity Professionals Budget").  The Equity Representative may request an increase to the Equity Professionals Budget for cause by written request to the Plan Administrator and notice to the GUC Representative.  If the Plan Administrator approves the Equity Representative's proposed increase to the Equity Professionals Budget, the GUC Representative may file an objection with the Bankruptcy Court to such increase and/or file a motion with the Bankruptcy Court seeking to obtain a commensurate increase.  To the extent that the Plan Administrator denies a request for an increase in the Equity Professionals Budget, the Equity Representative may seek Bankruptcy Court approval of the request; *provided* that the Plan Administrator's and GUC Representative's right to file an objection with the Bankruptcy Court are preserved.

G.      Plan Administration Trust Expenses Reporting

The Plan Administrator shall pay all Plan Administration Trust Expenses out of Plan Administrator Trust Assets, and shall provide the Representatives with written monthly reports of such Plan Administration Trust Expenses no later than the last business day of each month.

H.      Claims Reconciliation

1.      Plan Administrator Claims Reconciliation

The Plan Administrator, in consultation with the Representatives, shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise all claims and interests (collectively, "PA Reconciled Claims").      The Plan

Administrator may delegate this authority with respect to any PA Reconciled Claim or Claims to either Representative, but only upon obtaining the consent of the other Representative for such delegation (which consent may be granted or withheld in such Representative's sole and absolute discretion). The Plan Administrator shall also have the authority, in consultation with the Representatives, to administer and adjust (or cause the adjustment of) the Claims Register or Trust Register to reflect any settlements or compromises of Disputed PA Reconciled Claims without any further notice to or action, order or approval of the Bankruptcy Court.

The Plan Administrator shall provide the Representatives at least seven (7) days' written negative notice of any proposed settlement, allowance, estimation, or objection to Claims in excess of $100,000 (on an individual basis or when taking similar claims together in the aggregate) (a "PA Claim Reconciliation Notice"); *provided* that to the extent the PA Claim Reconciliation Notice contemplates a Claims objection, a motion to estimate Claims or other pleading to be filed with the Bankruptcy Court, the Plan Administrator shall include the draft pleading with the PA Claim Reconciliation Notice in accordance with Section VIII.H.5 of this Agreement. If both Representatives timely object to the proposed settlement, allowance, estimation or objection of any Claim(s) set forth in a PA Claim Reconciliation Notice, then the Plan Administrator shall not take the action proposed by the PA Claim Reconciliation Notice with respect to such disputed Claim(s). If only one of the Representatives timely objects, then the Plan Administrator may file with the Bankruptcy Court such settlement, allowance, estimation, or objection seeking approval of the action proposed by the PA Claim Reconciliation Notice, *provided* that the Representatives' respective rights to file an objection to such motion with the Bankruptcy Court are preserved.

Beginning the first full calendar month following the Effective Date, the Plan Administrator shall provide the Representatives with a report on PA Reconciled Claims no later than the last business day of each month.

2.      Final Approval of Distributions to Qualified Settlement Funds

The Plan Administrator shall be responsible for (a) distributions to holders of Allowed Class 3 U.S. Data Breach Class Settlement Claims, Class 4 U.S. Data Breach Arbitration Claims, Class 5 Canadian Data Breach Class Settlement Claims and Class 14 Pixel Class Settlement Claims, including the initial payments disclosed in the Plan Supplement filed in the Chapter 11 Cases, and (b) in consultation with the Representatives, negotiating final settlement amounts with counsel to the Holders of the U.S. Data Breach Settlement Claims, and/or objecting to the applicable Claim of the Holders of the U.S. Data Breach Settlement Claims.

The Plan Administrator shall provide no less than seven (7) days' written negative notice of any proposed settlement with U.S. Data Breach Class Counsel. If at least one Representatives timely objects in writing to the proposed settlement, then the Trust Parties and U.S. Data Breach Class Counsel shall meet and confer on a schedule for briefing and discovery related to such settlement, and the rights of all parties to file an objection with the Bankruptcy Court in respect of the schedule for briefing, schedule for discovery, or the proposed settlement shall be preserved.

       3.      Claims Estimation Motions and Objections

The Plan Administrator and the Representatives shall have the authority to file objections and estimation motions as set forth in Section IV.B.2 of this Agreement, in accordance with the Plan and the Claims Reconciliation Procedures, with respect to the classes of Claims or Interests, as applicable, that such Trust Party has authority to reconcile under this Section VIII.H, subject to any consultation or objection rights herein. Prior to filing any pleading related to reconciliation of Claims or Interests, the filing Trust Party must provide the other Trust Parties with a draft copy of such pleading with no less than seven (7) days' notice prior to filing. The other Trust Parties' rights to file an objection with the Bankruptcy Court to such pleading are preserved.

       I.      <u>Plan Administrator's Authority to Pursue and Resolve Retained Causes of Action</u>

The Plan Administrator shall have the authority, in consultation with the Representatives, to pursue, abandon, prosecute, settle, compromise, withdraw or otherwise resolve any Retained Causes of Action, including Causes of Action against any Excluded Parties, as set forth in Section IV.D. of this Agreement and in the Plan. Prior to filing any pleading related to Retained Causes of Action, the Plan Administrator must provide the Representatives with a draft copy of such pleading with no less than seven (7) days' notice prior to filing. The Representatives' rights to file an objection with the Bankruptcy Court with respect to the Plan Administrator's filing of any such pleading are preserved.

Without limiting the generality of the foregoing, with respect to any Retained Causes of Action with an amount recoverable or sought to be recovered greater than $250,000, the Plan Administrator shall provide seven (7) days' written negative notice to the Representatives of any abandonment, commencement, prosecution, settlement, compromise, withdrawal, or other action that the Plan Administrator proposes. If both Representatives provide timely written notice of an objection to the Plan Administrator's proposed course of action (or inaction) with respect to any Retained Cause of Action, then the Plan Administrator may not take such proposed course of action (or inaction) as to that Retained Cause of Action. If only one of the Representatives provides timely written notice of an objection to the Plan Administrator's proposed course of action (or inaction) with respect to a Retained Cause of Action, then the Plan Administrator may file with the Bankruptcy Court a motion seeking approval of the proposed course of action (or in action); *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion are preserved.

The Plan Administrator shall provide the Representatives with quarterly reports on the status of the Retained Causes of Action vested in the Trust, which reports shall contain the analysis of applicable Plan Administrator Professionals assisting the Plan Administrator with respect to Causes of Action of anticipated recoveries, likelihood of success if litigation is pursued, and anticipated next steps with regard to the Retained Cause of Action.

       J.      <u>Other Consultation Rights of Representatives as to Actions Taken by the Trust</u>

       1.      Books and Records

If the Plan Administrator seeks to destroy or abandon any books, records, or files that have been delivered to or created by the Trust, the Plan Administrator must provide seven (7) days'

written negative notice to the Representatives.  If both Representatives timely object in writing to the proposed destruction or abandonment, then the Plan Administrator must retain such books, records, or files that it proposed to destroy or abandon.  If only one Representative timely objects, then the Plan Administrator may file a motion seeking Bankruptcy Court approval of the proposed destruction or abandonment, with the Representatives' rights to file an objection to any such motion of the Plan Administrator fully preserved.

If the Plan Administrator and the Representatives agree on the destruction or abandonment of any books, records, or files, then the Trust may, without the need for Bankruptcy Court approval, abandon or destroy any books, records, or files that are not necessary for the administration of the Trust.

2.      Insurance

To the extent that the Plan Administrator determines to obtain or extend insurance coverage for the Trust, the Plan Administrator or its respective employees or agents, the Plan Administrator shall provide no less than seven (7) days' written notice to the Representatives of the terms of any insurance coverage obtained and/or extended and the costs associated therewith.

3.      Litigation Financing and Borrowing

The Plan Administrator shall have the authority to solicit and incur litigation financing, if necessary.  The Plan Administrator shall provide seven (7) days' notice to the Representatives before incurring into any proposed litigation financing.  If, within the seven-day notice period, both Representatives provide written notice of their objection to the incurrence of the proposed litigation financing, then the Plan Administrator shall not incur such financing unless and until the Trust Parties otherwise determine it is appropriate to do so.  If only one of the Representatives provides written notice in the seven-day notice period of its objection to the proposed litigation financing, then the Plan Administrator may file with the Bankruptcy Court a motion seeking approval of the Trust's ability to incur the proposed litigation financing, *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion for are preserved.

4.      Closing of the Chapter 11 Cases

To the extent that the Plan Administrator determines to file a motion with the Bankruptcy Court seeking a final decree closing some or all of the Chapter 11 Cases, it shall provide no less seven (7) days' written negative notice to the Representatives.  If both Representatives object in writing to the closing of one or more of the Chapter 11 Cases within such notice period, then the Plan Administrator may not seek a final decree at that time with respect to the Chapter 11 Case implicated by the Representatives' objection.  If only one of the Representatives timely notice of an objection to closing any of the Chapter 11 Cases, then the Plan Administrator may file with the Bankruptcy Court a motion seeking a final decree, *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion for a final decree are preserved.

41

5.    Amendment of the Trust Agreement

Any Trust Party proposing a material amendment to this Agreement shall provide the other Trust Parties seven (7) days' written notice thereof, together with a draft amended Trust Agreement marked to show proposed changes.  If both receiving Trust Parties timely object in writing to the proposed amendment, the proposed changes to this Agreement shall not be made.  If only one of the Trust Parties receiving notice of a proposed amendment timely objects in writing, the Trust Party proposing the amendment to this Agreement may seek its approval by motion to the Bankruptcy Court, *provided* that all other Trust Parties' rights to file an objection to such motion with the Bankruptcy Court are preserved.  All proposed amendments to this Agreement remain subject to the terms and conditions specified in Section IX.J. of this Agreement.

## IX.    RELIANCE, LIABILITY, AND INDEMNIFICATION

A.    Reliance by the Plan Administrator and the Representatives

Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, (i) the Plan Administrator may rely and shall be protected in acting upon the advice of any Trust Professional, and/or upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Plan Administrator; and (ii) the Representatives may rely and shall be protected in acting upon the advice of their retained professionals, and/or upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by any Representative to be genuine and to have been signed or presented by the proper party or parties and shall have no liability in respect of such reliance.

B.    Limitation of Liability

Neither the Trust, Plan Administrator, the Representatives, nor their respective firms, companies, affiliates, partners, officers, directors, members, employees, independent contractors, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan or this Agreement, other than for specific actions or omissions resulting from their willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. The Plan Administrator shall enjoy all of the rights, powers, immunities, and privileges of a chapter 7 trustee. The Trust, the Plan Administrator, and the Representatives may, in connection with the performance of their functions, in their sole and absolute discretion, consult with any of the Trust Professionals or the Representatives' Professionals, as applicable, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing. Notwithstanding such authority, none of the Trust, the Plan Administrator, and the Representatives shall be under any obligation to consult with any attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Trust, the Plan Administrator, or the Representatives unless such determination is based on willful misconduct, gross negligence,

42

or fraud. Persons dealing with the Trust, the Plan Administrator or the Representatives shall look only to the Plan Administration Trust Assets to satisfy any liability incurred by the Trust, the Plan Administrator or any Representative, respectively, in carrying out the terms of the Plan or this Agreement, and neither the Trust, the Plan Administrator nor any Representative shall have any personal obligation to satisfy such liability, except to the extent any such liability is primarily caused by such party's willful misconduct, gross negligence, or fraud.

C.    No Liability for Acts Approved by the Bankruptcy Court

Subject to Article VIII of this Agreement, the Plan Administrator and the Representatives shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration of the Plan or the disposition of the Trust, the Plan Administration Trust Assets, and the Claims required to be administered by the Trust; provided that the Representatives shall only have such right to the extent they seek instruction on their own responsibilities as set forth in the Plan and in this Agreement. Neither the Plan Administrator nor the Representatives shall be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

D.    Nonliability for Acts of Others

Except as provided herein, nothing in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Trust, the Plan Administrator, the Representatives, the Trust Professionals, or the Representatives' Professionals of any of the liabilities, obligations, or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the Trust, the Plan Administrator, or the Representatives to assume or accept any such liability, obligation, or duty. Any successor Plan Administrator may accept and rely upon any accounting made by or on behalf of any predecessor Plan Administrator hereunder, and any statement or representation made as to the assets comprising the Plan Administration Trust Assets or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. None of the Plan Administrator or the Representatives shall be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Plan Administrator, any Representative, or any successor thereto shall not be liable for any act or omission of any predecessor Plan Administrator or Representative, as applicable. Other than as set forth in Section IX.B of this Agreement, no provision of this Agreement shall require the Plan Administrator or any Representative to expend or risk its personal funds or otherwise incur any financial liability in the performance of his, her or its rights or powers hereunder if the Plan Administrator has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided.

E.    Exculpation

The Trust, the Plan Administrator and the Representatives shall be exculpated consistent with the terms of the Plan and the Confirmation Order.

F.    Indemnity

The Trust shall indemnify the Trust, the Plan Administrator, the Representatives and its and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such, and any of such Person's successors and assigns (the "Trust Indemnified Parties" and each a "Trust Indemnified Party") for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence, or willful misconduct on the part of the Trust Indemnified Parties (which fraud, gross negligence, or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan, the Confirmation Order, or this Agreement, as applicable. In addition, the Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust or the implementation or administration of the Plan, if the Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Trust. To the extent the Trust indemnifies and holds harmless any Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall constitute and be paid as Trust Expenses. The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the Trust out of the Plan Administration Trust Assets. This provision shall survive the termination of the Trust or this Agreement, and the death, dissolution, liquidation, resignation, replacement, or removal of the Plan Administrator or any Representative, as applicable.

## X.    MISCELLANEOUS PROVISIONS

A.    Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law.

B.    Severability

In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

44

C.     Notices

Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email to which no undeliverable notice has been received by the sender, sent by nationally recognized overnight delivery service, or mailed by first-class mail, as follows:

1.     if to the Plan Administrator:
Thomas B. Walper
Attn: Thomas B. Walper
Email: thomas.b.walper@pm.me

with a copy to:
[●]

2.     if to the GUC Representative:
Matthew Dundon
Attn: Matthew Dundon
Email: md@dundon.com

with a copy to:
[●]

3.     if to the Equity Representative:
Alan D. Halperin
Attn: Alan D. Halperin
Email: ahalperin@halperinlaw.net

with a copy to:
[●]


4.     if to any Plan Administration Trust Beneficiary, in accordance with the terms and conditions of Section IV.F of this Agreement.

D.     Headings

The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision of this Agreement.

E.     Controlling Document

In the event of any inconsistency between the Plan, the Confirmation Order and this Agreement, the Confirmation Order shall control. In the event of an inconsistency between the Plan and this Agreement, this Agreement shall control.

F.     Entire Agreement

This Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Agreement.

G.     Cumulative Rights and Remedies

The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

H.     Division of Trust

Under no circumstances shall the Plan Administrator have the right or power to divide the Trust unless authorized to do so by the Bankruptcy Court.

I.     Cooperation

The Debtors, to the extent they continue to exist, and their professionals shall use commercially reasonable efforts to cooperate with the Trust, the Plan Administrator and the Trust Professionals to effect the transition from the Debtors to the Trust of administration of the Plan Administration Trust Assets, Claims and HoldCo Interests. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate access to (1) any reasonably available evidence and information the Plan Administrator reasonably requests in connection with the Trust's investigation, prosecution or other pursuit, or defense (as applicable) of Retained Causes of Action and objections to Disputed Claims [and Disputed Interests]; and (2) former employees or Professionals of the Debtors with knowledge (such knowledge being reasonably available) regarding any Retained Causes of Action. The Debtors shall promptly turn over or otherwise make available to the Trust at no cost to the Trust, any books and records of the Debtors held by such Professionals. The Debtors shall arrange for the Plan Administrator to receive an updated Claims Register from the Notice and Claims Agent within thirty (30) days after the Effective Date.  Any and all reasonable and documented out-of-pocket fees and expenses incurred by the Debtors or their professionals in connection with the cooperation obligations outlined herein shall constitute a Plan Administration Trust Expense and shall be paid pursuant to the terms of the Plan and this Agreement.

J.     Amendment and Waiver

This Agreement may from time to time be amended, supplemented or modified by the Debtors (to the extent they continue to exist) in a written agreement with the Plan Administrator, subject to Article VIII of this Agreement, or by order of the Bankruptcy Court. Notwithstanding this Section IX.J, any amendment to this Agreement shall not be inconsistent with the Plan and the Confirmation Order and shall be consistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Plan Administration Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and Section I.B of this Agreement.

K.     Meanings of Other Terms

Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. The words herein and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Plan Administration Trust Agreement. The term "including" shall mean "including, without limitation."

L.    Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

M.    Intention of Parties to Establish a Liquidating, Grantor Trust

This Agreement is intended to form a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, and thus, except as set forth in Article IV.E.5 of the Plan and Sections V.D and V.E. as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code, as contemplated by the Plan, and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended to comply with such U.S. federal income tax laws, which amendments may apply retroactively.

N.    Waiver

No failure by the Trust, the Plan Administrator, or the Representatives to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

O.    Waiver of Jury Trial

Each of the parties hereto hereby waives the right to trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement (but not, for the avoidance of doubt, with respect to any Retained Cause of Action).

P.    Retention of Jurisdiction

Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, the administration and activities of the Trust, the Plan Administrator, or the Representatives, this Agreement, or any entity's obligations incurred in connection herewith, including, without limitation, any action against the Trust, the Plan Administrator, any Representative or any [Plan Administration Trust Professional], in each case in its capacity as such. Each party to this Agreement hereby irrevocably consents to

the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Solely to the extent that the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Debtor's chapter 11 case, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.. Subject to the proviso below, each party further irrevocably agrees that: (1) any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; and (2) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to re-argument or reconsideration; provided, however, that notwithstanding the foregoing, the Plan Administrator shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any Retained Causes of Action assigned to the Trust.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**; the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**CHROME HOLDING CO., CHROMECO INC., CHROME PHARMACY HOLDINGS, INC., LEMONAID COMMUNITY PHARMACY, INC., LEMONAID HEALTH, INC., LEMONAID PHARMACY HOLDINGS INC., LPHARM CS LLC, LPHARM INS LLC, LPHARM RX LLC, LPRXONE LLC, LPRXTHREE LLC, AND LPRXTWO LLC**

By: _____
     Name: Joseph Selsavage
     Title: Interim Chief Executive Officer and Chief Financial Officer and Accounting Officer

**PLAN ADMINISTRATOR**
By:  Thomas B. Walper, not individually, but solely as trustee of the Trust

By: _____
     Name: Thomas B. Walper

## Exhibit C

**Redline**

~~Draft 11/25/2025~~BR Comments 11/28/2025

**PLAN ADMINISTRATION TRUST AGREEMENT OF THE**

**CHROME PLAN TRUST**

**DATED AS OF [●], 2025**

**BY AND AMONG**

~~THOMAS~~THOMAS B. ~~WALPER~~WALPER AS PLAN ADMINISTRATOR

and

**CHROME HOLDING CO. AND ITS AFFILIATES
THAT ARE SIGNATORIES HERETO**

## TABLE OF CONTENTS

I.    DECLARATION OF TRUST ........................................................................................ 2

  A.    Creation and Governance of the Plan Administration Trust ...................................... 2

  B.    Purpose of the Trust .................................................................................................. 3

  C.    Transfer of Plan Administration Trust Assets ........................................................... 3

  D.    Plan Administration Trust Assets .............................................................................. 4

  E.    Appointment and Acceptance of the Plan Administrator ......................................... 4

  F.    Liquidation of Plan Administration Trust Assets ...................................................... 5

  G.    Reversionary Interests .............................................................................................. 5

  H.    Incidents of Ownership ............................................................................................. 5

  I.    Privileges ................................................................................................................... 6

II.    PLAN ADMINISTRATION TRUST BENEFICIARIES ......................................... 6

  A.    Rights of Plan Administration Trust Beneficiaries ................................................... 6

  B.    Interest Beneficial Only ............................................................................................ 7

  C.    Evidence of Plan Administration Trust Interest ........................................................ 7

  D.    No Standing ............................................................................................................... 8

  E.    Requirement of Undertaking ..................................................................................... 8

  F.    Limitation on Transferability .................................................................................... 8

  G.    Exemption from Registration .................................................................................... 8

  H.    Conflicting Claims .................................................................................................... 9

III.    DURATION AND TERMINATION OF THE TRUST ........................................... 10

  A.    Dissolution of the Trust .......................................................................................... 10

  B.    Continuance of the Trust for Winding Up ............................................................... 10

IV.    ADMINISTRATION OF THE TRUST ................................................................... 11

  A.    Payment of Claims, Expenses, and Liabilities ....................................................... 11

  B.    Procedures for Resolving Unliquidated and Disputed Claims ................................ 11

  C.    Trust Reserve Accounts ........................................................................................... 14

      1.    Chrome Disputed Claims Reserve ................................................................ 14

      2.    Lemonaid Disputed Claims Reserve ............................................................ 14

      3.    Administrative / Priority Claims Reserve ..................................................... 15

      4.    Data Breach Settlement Reserves ................................................................. 16

      5.    Cyber Insurance Reserve .............................................................................. 16

i

6.     GUC Subordinated Claims Reserve ............................................. 16

D.    Retained Causes of Action .......................................................... 16

E.    Abandonment ............................................................................. 16

F.    Distributions ............................................................................... 17

1.     Distributions Generally .............................................................. 17

2.     Powers of Distribution Agent ..................................................... 18

3.     Expenses Incurred on or After the Effective Date ...................... 18

4.     Distribution Record Date; Addresses .......................................... 18

5.     Compliance with Tax Requirements ............................................ 19

6.     Surrender of Instruments ............................................................ 19

7.     No Fractional Units .................................................................... 19

8.     Foreign Currency Exchange Rate ............................................... 19

9.     Setoffs and Recoupments ........................................................... 20

10.    Minimum Distribution ................................................................ 20

11.    Allocations ................................................................................. 20

12.    Distributions Free and Clear ....................................................... 20

13.    Claims Paid by Third Parties ...................................................... 21

14.    Claims Payable by Third Parties ................................................. 21

15.    Inapplicability of Escheat, Abandoned or Unclaimed Property Laws. ....... 21

16.    Voided Checks; Request for Reissuance. ..................................... 21

G.    Compliance With Laws ............................................................... 22

H.    Fiscal Year ................................................................................. 22

I.     Books and Records ...................................................................... 22

J.     No Bond Requirement ................................................................ 22

K.    Plan Administration Trust Insurance ........................................... 23

V.    TAX MATTERS ......................................................................... 23

A.    Trust's Tax Power for the Debtors .............................................. 23

B.    Treatment of Trust for Tax Purposes ........................................... 23

C.    Tax Withholdings by the Plan Administration Trust ..................... 25

D.    DOF Election ............................................................................. 26

E.    Qualified Settlement Fund .......................................................... 26

VI.   POWERS AND LIMITATIONS OF THE TRUST AND THE PLAN
ADMINISTRATOR ...................................................................... 26

A.    Powers of the Trust ..................................................................... 26

B.  Responsibilities and Authority of the Trust .............................................. 27

C.  Wind-Down ............................................................................................. 27

D.  Actions Taken by the Trust ...................................................................... 28

E.  Limitations on the Trust ........................................................................... 30

F.  Term of the Plan Administrator ................................................................ 30

G.  Plan Administrator Conflicts of Interest ................................................... 31

H.  Compensation and Expenses of the Plan Administrator ............................ 31

I.  Employment, Indemnification, and Other Agreements .............................. 31

J.  Investment of Plan Administration Trust Monies ...................................... 31

VII.  SUCCESSOR PLAN ADMINISTRATOR AND REPRESENTATIVES .......... 32

A.  Resignation ............................................................................................. 32

B.  Removal .................................................................................................. 32

C.  Effect of Resignation or Removal ............................................................. 32

D.  Appointment of Successor Plan Administrator .......................................... 33

E.  Acceptance of Appointment by Successor Plan Administrator .................... 33

F.  Representatives ....................................................................................... 33

VIII.  REPRESENTATIVES AND TRUST GOVERNANCE ................................... 34

A.  Generally ................................................................................................. 34

B.  Meetings of the Trust Parties ................................................................... 34

C.  Disposition of Assets ............................................................................... 34

D.  Establishment and Maintenance of Reserves ............................................ 35

1.  Reserves Initially Established in Consultation with the Debtors and the Committees . 35

2.  Reserves Established in Consultation with the Representatives .............. 35

E.  Compensation .......................................................................................... 35

1.  Compensation of the GUC Representative ............................................ 35

2.  Compensation of the Equity Representative .......................................... 36

3.  Compensation of Plan Administrator .................................................... 36

4.  Compensation Modifications ............................................................... ~~36~~37

F.  Trust Professionals .................................................................................. 37

1.  Plan Administrator Professionals ......................................................... 37

2.  GUC Representative Professionals ....................................................... ~~37~~38

3.  Equity Representative Professionals ..................................................... 38

G.  Plan Administration Trust Expenses Reporting ......................................... 38

H.  Claims Reconciliation ............................................................................. 38

1.    Plan Administrator Claims Reconciliation ........................................... 38

2.    Final Approval of Distributions to Qualified Settlement Funds ............ 39

3.    ~~GUC Representative Claims Reconciliation~~ .......................................... ~~39~~

4.    ~~Equity Representative HoldCo Interest Reconciliation~~ .......................... ~~40~~

~~5~~3.    Claims Estimation Motions and Objections ........................................ ~~41~~40

I.    Plan Administrator's Authority to Pursue and Resolve Retained Causes of Action ... ~~41~~40

J.    Other Consultation Rights of Representatives as to Actions Taken by the Trust ......... ~~41~~40

1.    Books and Records ............................................................................ ~~41~~40

2.    Insurance .......................................................................................... ~~42~~41

3.    Litigation Financing and Borrowing ................................................... ~~42~~41

4.    Closing of the Chapter 11 Cases ....................................................... ~~42~~41

5.    Amendment of the Trust Agreement ................................................... ~~43~~42

IX.    RELIANCE, LIABILITY, AND INDEMNIFICATION ...................................... ~~43~~42

A.    Reliance by the Plan Administrator and the Representatives .................. ~~43~~42

B.    Limitation of Liability ............................................................................. ~~43~~42

C.    No Liability for Acts Approved by the Bankruptcy Court ....................... ~~44~~43

D.    Nonliability for Acts of Others ............................................................... ~~44~~43

E.    Exculpation ........................................................................................... ~~44~~43

F.    Indemnity .............................................................................................. ~~45~~44

X.    MISCELLANEOUS PROVISIONS ............................................................. ~~45~~44

A.    Governing Law ...................................................................................... ~~45~~44

B.    Severability ........................................................................................... ~~45~~44

C.    Notices .................................................................................................. ~~46~~45

D.    Headings ............................................................................................... ~~46~~45

E.    Controlling Document ........................................................................... ~~47~~45

F.    Entire Agreement .................................................................................. ~~47~~46

G.    Cumulative Rights and Remedies .......................................................... ~~47~~46

H.    Division of Trust ................................................................................... ~~47~~46

I.    Cooperation .......................................................................................... ~~47~~46

J.    Amendment and Waiver ........................................................................ ~~47~~46

K.    Meanings of Other Terms ..................................................................... ~~48~~46

L.    Counterparts ......................................................................................... ~~48~~47

M.    Intention of Parties to Establish a Liquidating, Grantor Trust ............... ~~48~~47

N.    Waiver ................................................................................................... ~~48~~47

iv

O.   Waiver of Jury Trial ..................................................................... 48**47**

P.   Retention of Jurisdiction ............................................................... 49**47**

## PLAN ADMINISTRATION TRUST AGREEMENT OF THE
## CHROME PLAN TRUST

This Plan Administration Trust Agreement (the "<u>Agreement</u>") of the Chrome Plan Trust (the "<u>Trust</u>"),[1] dated as [●], 2025, is entered into by and among (i) debtors and debtors-in-possession Chrome Holding Co., ChromeCo Inc., Chrome Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC (collectively, the "<u>Debtors</u>"), and (ii) Thomas B. Walper, as plan administrator and trustee (together with any successor or additional trustee appointed under the terms of this Agreement, the "<u>Plan Administrator</u>"), for the purpose of, *inter alia*, (i) winding down the Wind-Down Debtors, and (ii) forming a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Internal Revenue Code, as contemplated by the Plan.[2]

## RECITALS

A.     On March 23, 2025 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Eastern District of Missouri (the "<u>Bankruptcy Court</u>") initiating the chapter 11 cases jointly administered under Case No. 25-40976-357 in the Bankruptcy Court (collectively, the "<u>Chapter 11 Cases</u>");

B.     On June 27, 2025, the Bankruptcy Court entered the Sale Order, approving the sale of certain of the Debtors' assets to the Chrome Purchaser pursuant to section 363 of the Bankruptcy Code pursuant to the Chrome Purchase Agreement;

C.     On the Effective Date, the Lemonaid Interests will be sold to the Lemonaid Purchaser;

D.     On October 1, 2025, the Bankruptcy Court entered the Solicitation Order [Docket No. 1442], which, *inter alia*, approved the adequacy of the Disclosure Statement and authorized the Debtors to transmit solicitation materials to, among others, Holders of Claims and Holdco Interests entitled to vote to accept or reject the Plan;

E.     On [●], 2025, the Bankruptcy Court entered an order confirming the Plan [Docket No. [●]] (the "<u>Confirmation Order</u>"), and the Effective Date of the Plan occurred on [●], 2025;

---

[1]     For the purposes of this Agreement, the term "Trust" shall include the Trust acting by and through the Plan Administrator, the GUC Representative, and/or the Equity Representative, as applicable.

[2]     The "<u>Plan</u>" means the *Fifth Amended Joint Chapter 11 Plan of Liquidation of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, filed at Docket No. [____] in the Chapter 11 Cases, as may be altered, amended, modified, or supplemented from time to time, including all exhibits and schedules thereto. Capitalized terms used but not defined in this Agreement have the meanings ascribed to them in the Plan.

F.      The Plan provides for, *inter alia*, the creation of the Trust for the benefit of the Plan Administration Trust Beneficiaries on the Effective Date for the purpose of liquidating and administering the Plan Administration Trust Assets and making distributions from the proceeds thereof in accordance with the terms of the Plan and this Agreement.

G.      Pursuant to the Plan, the Trust shall be structured to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, as provided for under the Plan and this Agreement. The Trust is established and is effective for the benefit of the Plan Administration Trust Beneficiaries; and

H.      The duties and powers of the Plan Administrator shall include all powers necessary to perform the Wind-Down Transactions and to administer the Plan Administration Trust Assets, in accordance with the Plan, the Confirmation Order, and this Agreement.

**AGREEMENT**

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, the parties hereto agree as follows:

## I.      DECLARATION OF TRUST

A.      Creation and Governance of the Plan Administration Trust

The Debtors and the Plan Administrator, pursuant to the Plan and the Confirmation Order, and in accordance with the applicable provisions of the Bankruptcy Code, hereby create the Trust, which shall bear the name the "Chrome Plan Trust";

In connection with the exercise of the Plan Administrator's power hereunder, the Plan Administrator may use this name or such variation thereof as the Plan Administrator sees fit;

The Debtors and the Plan Administrator enter into this Agreement to, *inter alia*, effectuate the distribution of the Plan Administration Trust Assets to the Plan Administration Trust Beneficiaries pursuant to the Plan, the Confirmation Order, and this Agreement;

The Trust shall be governed by this Agreement and administered by the Plan Administrator and the Representatives, as provided herein, in the Plan, and the Confirmation Order;

Pursuant to Article IV.E.6 of the Plan and Section I.C of this Agreement, the Plan Administration Trust Assets shall automatically be transferred to and vest in the Trust on the Effective Date free and clear of any and all alleged or actual Claims, Interests, Liens, encumbrances, or other interests, subject only to the Trust Interests and the Plan Administration Trust Expenses, as provided for herein and in the Plan, and shall comprise Plan Administration Trust Assets for all purposes;

2

TO HAVE AND TO HOLD unto the Plan Administrator and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Plan Administration Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings (including interest) thereon are to be held by the Trust and applied on behalf of the Trust by the Plan Administrator on the terms and conditions set forth herein, solely to satisfy Plan Administration Trust Expenses and for the benefit of the Plan Administration Trust Beneficiaries and for no other party.

B.     Purpose of the Trust

The Trust shall be established as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d), for the purpose of pursuing or liquidating the Plan Administration Trust Assets, reconciling and objecting to Claims and HoldCo Interests, prosecuting Retained Causes of Action, and making distributions pursuant to the Plan to the Plan Administration Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, as provided for under the Plan and this Agreement. Subject to the election described in Article IV.E.5 of the Plan and Section V.D and V.E of this Agreement, the Trust is intended to qualify as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Plan Administration Trust Beneficiaries treated as grantors and owners of the Trust.

C.     Transfer of Plan Administration Trust Assets

Pursuant to the Plan and the Confirmation Order, as of the Effective Date, the Debtors irrevocably grant, release, assign, transfer, convey, and deliver and shall be deemed to have irrevocably transferred, granted, released, assigned, conveyed, and delivered to the Trust all rights, title, and interest in and to all of the Plan Administration Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, all of the Debtors' right, title, and interest in and to the Plan Administration Trust Assets are automatically vested in the Trust free and clear of all Claims, Interests, Liens, encumbrances, or other interests, subject only to the Trust Interests and the Plan Administration Trust Expenses, as provided for herein, and shall become Plan Administration Trust Assets for all purposes.

The Trust hereby accepts as of the Effective Date all Plan Administration Trust Assets free and clear of any and all Claims, Interests, Liens, encumbrances, and other interests, and agrees to hold and administer the Plan Administration Trust Assets for the benefit of the Plan Administration Trust Beneficiaries, subject to the terms and conditions of the Plan, Confirmation Order, and this Agreement.

For the avoidance of doubt, upon the transfer of the Plan Administration Trust Assets, the Trust shall succeed to all of the Debtors' right, title, and interest in and to the Plan Administration Trust Assets, and upon delivery of the Plan Administration Trust Assets to the Trust and their vesting in the Trust as Plan Administration Trust Assets, the Debtors and their predecessors, successors, and assigns shall be released from all liability with respect to the

3

delivery thereof and shall have no further interest in or with respect to the Plan Administration Trust Assets or the Trust. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Plan Administration Trust Assets to the Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer.

For all U.S. federal income tax purposes, and, to the extent permitted by applicable law, for state and local income tax purposes, and subject to the election described in Article IV.E.5 of the Plan and Sections V.D and V.E of this Agreement, all parties (including, without limitation, the Debtors, the Trust, the Plan Administrator, the Representatives, and the Plan Administration Trust Beneficiaries) shall treat the transfer of the Plan Administration Trust Assets to the Trust in accordance with the terms of this Agreement as a transfer to the Plan Administration Trust Beneficiaries, followed by a transfer by such Plan Administration Trust Beneficiaries to the Trust, and the Plan Administration Trust Beneficiaries will be treated as the grantors and owners thereof.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and this Agreement, including, without limitation, the transfer of the Plan Administration Trust Assets to the Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and pursuant to the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation all such instruments or other documents governing or evidencing such transfers without the payment of any such tax, recordation fee, or governmental assessment.

The Plan Administration Trust Assets shall be held and be applied by the Trust in accordance with the terms of this Agreement, the Plan, and the Confirmation Order for the benefit of the Plan Administration Trust Beneficiaries, and for no other party, subject to the further covenants, conditions and terms set forth in this Agreement, the Plan, and the Confirmation Order.

The Debtors, the Plan Administrator, and any party under the control of such parties, hereby agree to execute any documents or other instruments and shall take all other steps as necessary to cause title to the Plan Administration Trust Assets to be transferred to the Trust in accordance with this Agreement, the Plan, and the Confirmation Order.

D.    Plan Administration Trust Assets

The Trust, in accordance with section 1123(b)(3) of the Bankruptcy Code, shall be the representative of the Estates with respect to any and all Plan Administration Trust Assets including, but not limited to, the Retained Causes of Action, and shall retain and possess the right to commence, pursue, prosecute, enforce, abandon, waive, settle, compromise, release, or withdraw, as appropriate, any and all Retained Causes of Action in any court or other tribunal, except as otherwise provided in the Plan, the Confirmation Order, or this Agreement.

4

E.     Appointment and Acceptance of the Plan Administrator

The Trust shall be the exclusive trust of the Plan Administration Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3).

The Plan Administrator accepts: (1) the appointment to serve as trustee for the Trust created by this Agreement in accordance with the terms of the Plan, the Confirmation Order, and this Agreement; and (2) the grant, assignment, transfer, conveyance and delivery to the Trust, on behalf, and for the benefit, of the Plan Administration Trust Beneficiaries, by the Debtors of all of their respective rights, titles and interests in the Plan Administration Trust Assets, upon and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. The Plan Administrator's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purpose and the Trust and other responsibilities assigned to the Plan Administrator under the Plan and not otherwise. The Plan Administrator shall have the authority to bind the Trust in accordance with, and within the limitations set forth in this Agreement, but shall for all purposes hereunder be acting solely in the capacity as Plan Administrator, and not individually.

F.     Liquidation of Plan Administration Trust Assets

The Trust shall, in an expeditious but commercially reasonable manner and subject to the provisions of the Plan, the Confirmation Order, and the other provisions of this Agreement, and subject to Article VIII of this Agreement, liquidate and convert to Cash the Plan Administration Trust Assets, make timely distributions in accordance with the terms of this Agreement, the Plan, and the Confirmation Order and not unduly prolong the existence of the Trust. The Trust shall liquidate the Plan Administration Trust Assets in an effort to maximize net recoveries, and the Trust shall be entitled to take into consideration the risks, timing, and costs of potential actions in making determinations as to the maximization of recoveries; provided, that the determinations and actions of the Trust shall in all cases be subject to the limitations provided in the Plan, the Confirmation Order, and this Agreement, including, but not limited to, Article VIII of this Agreement.  Subject to the terms of this Agreement, such liquidations may be accomplished through the prosecution, compromise and settlement, abandonment or dismissal of any Claims or Retained Causes of Action, the pursuit of proceeds of the Cyber Insurance Policies (if not previously tendered), or through the sale or other disposition of the Plan Administration Trust Assets (in whole or in combination, and including the sale of the Retained Causes of Action or rights under the Insurance Policies, if not already liquidated). The Trust may incur Plan Administration Trust Expenses in connection with the liquidation and conversion of the Plan Administration Trust Assets into Cash or in connection with the administration of the Trust, subject to Article VIII of this Agreement.

G.     Reversionary Interests

In no event shall any part of the Plan Administration Trust Assets revert to or be distributed to the Debtors. The Trust shall have a reversionary interest in any Cash remaining in the Professional Fee Escrow after payment in full of all Allowed Professional Fee Claims without any further notice, action, or order of the Bankruptcy Court. For the avoidance of doubt, such reversionary interest of the Trust constitutes a Plan Administration Trust Asset that automatically vests in the Trust as of the Effective Date.

H.     Incidents of Ownership

The Plan Administration Trust Beneficiaries shall be the sole beneficiaries of the Trust and the owners of the Plan Administration Trust Assets, and the Trust shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Agreement, the Plan, and the Confirmation Order, including, without limitation, those powers set forth in Section V.E of this Agreement.

I.     Privileges

In connection with the vesting and transfer of the Plan Administration Trust Assets in and to the Trust, the Trust shall stand in the same position as the applicable Debtor with respect to any claim the applicable Debtor and/or its Estate may have as to an attorney-client privilege, work-product doctrine, or any other privilege or confidentiality protections attaching to any documents or communications (whether written or oral) relating to the Plan Administration Trust Assets (collectively, "Privileges and Protections"), and the Trust shall succeed to all rights of the applicable Debtor and/or its Estate to hold, preserve, assert, be the beneficiary of, or waive any such Privileges and Protections. As of the Effective Date, all Privileges and Protections of the Debtors relating to the Plan Administration Trust Assets shall be deemed transferred, assigned, and delivered by the applicable Debtor to the Trust, without waiver, forfeiture, or release, and shall vest in the Trust. No such Privilege and Protections shall be waived, forfeited, or released by disclosures to the Trust, the Plan Administrator, the Trust Professionals (defined below), or the Representatives (in their capacities as such) of the Debtors' documents, information, or communication subject to attorney-client privilege, work product protections, or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Privileges and Protections relating to the Plan Administration Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement; provided, that prior to waiving such Privilege and Protection, the Trust shall provide such third party with any written notice required by any joint defense or common interest agreements as of the Petition Date. Any and all work product created by or on behalf of the Trust, the Plan Administrator, the Trust Professionals (defined below), the Representatives (in their capacities as such), and each of their respective agents, representatives, employees, and independent contractors shall be deemed confidential to the extent that such work product is not protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege. For the avoidance of doubt, communications between or among the Plan Administrator and one or both Representatives shall be confidential and subject to the common interest privilege. In addition, any and all rights to

6

conduct investigations pursuant to Bankruptcy Rule 2004 or any other law, rule, or order held by the Debtors prior to the Effective Date with respect to the Plan Administration Trust Assets shall vest in the Trust automatically and without further action by any party as of the Effective Date through the date of dissolution of the Trust.

## II.    PLAN ADMINISTRATION TRUST BENEFICIARIES

A.    Rights of Plan Administration Trust Beneficiaries

"Trust Interests" means Class A-1 Plan Administration Trust Interests, Class A-2 Plan Administration Trust Interests, Class A-3 Plan Administration Trust Interests, Class A-4 Plan Administration Trust Interests, Class A-5 Plan Administration Trust Interests, Class A-6 Plan Administration Trust Interest, Class A-7 Plan Administration Trust Interest, Class A-8 Plan Administration Trust Interest, and Class B Plan Administration Trust Interests, each of which are non-certified, non-transferable [(except Class B Plan Administration Trust Interests, which are transferable solely to the extent provided in this Agreement)][3] beneficial interests in the Trust granted to (i) Holders of (a) Chrome Commercial Claims, (b) Chrome Other General Unsecured Claims, (c) Lemonaid Commercial Claims, (d) Lemonaid Other General Unsecured Claims, (e) the Canadian Data Breach Class Settlement Fund's claims, (f) the Pixel Class Settlement Fund's claims, (g) the U.S. Data Breach Class Settlement Fund's claims, (h) GUC Subordination Claims, and (i) HoldCo Interests (collectively, the "Trust Beneficiary Claims"), which shall entitle such Holders and entities to their applicable Pro Rata share of distributions from the Trust in accordance with the Plan (including, for the avoidance of doubt, according to the Waterfall Recovery), the Confirmation Order, and applicable law. Each Plan Administration Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Plan Administration Trust Beneficiary of its respective priority under this Agreement. The Trust Interests are hereby declared and shall be in all respects personal property.

B.    Interest Beneficial Only

The ownership of a Plan Administration Trust Interest shall not entitle any Plan Administration Trust Beneficiary or the Debtors to any title in or to the Plan Administration Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

C.    Evidence of Plan Administration Trust Interest

The Trust shall maintain at all times a register of the names and distribution addresses of the Plan Administration Trust Beneficiaries, including the amount of such Plan Administration Trust Beneficiaries' respective Trust Beneficiary Claims (Allowed as of the Effective Date, or as may be Allowed thereafter pursuant to the Plan and this Agreement) (the "Trust Register"); provided, that the Trust may rely initially on the Claims Register, which shall be delivered to the Trust by the Notice and Claims Agent within thirty (30) days after the Effective Date and shall be based on the list of Holders of Administrative Claims, Priority Tax Claims, Claims in Classes 3 through 9, and Classes 13 and 14 of the Plan and maintained by the Notice and Claims

---

[3]    [Note to Draft: Subject to ongoing discussion among the Debtors and the Committees.]

7

Agent as of the Effective Date and prepared in accordance with the provisions of the Plan and the Confirmation Order, provided further that (i) with respect to Classes 3, 4, 5, and 14, upon the final approval of the settlement associated with each such Class, the Trust Register need only reflect the name and address of the agent or representative of each such Class identified in the relevant settlement agreement and the settlement amount, and (ii) for HoldCo Interests held exclusively in book entry form at [DTC/Cede & Co.], the Trust shall be entitled to rely upon the register of HoldCo Interests maintained at [DTC/Cede & Co.].  All references in this Agreement to Plan Administration Trust Beneficiaries shall be read to mean holders of record as set forth in the Trust Register maintained by the Trust and shall include Holders of Trust Beneficiary Claims who hold their position through a broker, bank, or other nominee, if applicable. The Trust shall cause the Trust Register to be kept at its office or at such other place(s) as may be designated by the Trust from time to time. The Trust shall be under no obligation to quantify or summarize any Plan Administration Trust Beneficiary's holdings or position with respect to such Plan Administration Trust Beneficiary's Plan Administration Trust Interest; provided that the Trust shall, upon the written request of a Plan Administration Trust Beneficiary, provide reasonably adequate documentary evidence of the existence of such Plan Administration Trust Beneficiary's Plan Administration Trust Interest, as indicated in the Trust Register; provided further, however, that the Plan Administrator shall not be required to compile or deliver information regarding any HoldCo Interest held in book entry form that is not reasonably available to the Plan Administrator through the customary practices and facilities of [DTC/Cede & Co.]. For the avoidance of doubt, ownership of a Plan Administration Trust Interest will not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except the book entry system.

D.    No Standing

Except as expressly provided in this Agreement, a Plan Administration Trust Beneficiary shall not have standing to direct or to seek to direct the Trust, Plan Administrator or any Representative to do or not to do any act or to institute any action or proceeding at law or in equity against any Entity upon or with respect to the Plan Administration Trust Assets.

E.    Requirement of Undertaking

The Trust may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Plan Administrator or any Representative for any action taken or omitted by such entities as Plan Administrator or Representative, as applicable, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this section shall not apply to any suit by the Trust, Plan Administrator, or any Representative, each in their respective capacity as such.

F.    Limitation on Transferability

It is understood and agreed that the Trust Interests shall be non-transferable and non-assignable during the term of this Agreement except by operation of law; provided that Class B Plan Administration Trust Interests shall be transferable to the extent that the transferability thereof would not require the Trust to register the Interests under Section 12(g) of

the Exchange Act, or cause the Trust to incur expenses that (i) would materially exceed any benefit associated with facilitating the transferability of Class B Plan Administration Trust Interests, or (ii) otherwise threaten to diminish the recoveries available to Holders of Class A or Class B Trust Interests, and otherwise shall not be transferable except as provided in this Agreement; provided further that the Debtors' or Plan Administration Trust's Claims, rights, defenses or any other legal rights or entitlements with respect to any such transferred Class B Plan Administration Trust Interests shall be preserved and enforceable against the transferee of such transferred interest.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trust, and the Trust may continue to pay all amounts to or for the benefit of the assigning Plan Administration Trust Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trust may rely upon such proof without the requirement of any further investigation.

G.        Exemption from Registration

The Trust Interests have not been registered pursuant to the Securities Act of 1933, as amended (the "Securities Act"), or any state securities law, and, except as otherwise provided in the Plan or in this Agreement, shall not be listed for public trading on any securities exchange. The parties hereto intend that the rights of the holders of Trust Interests shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan. The Trust shall not be required to file reports with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), on account of any transfer. No transfer of a Plan Administration Trust Interest that causes the Trust to be required to file reports with the Securities and Exchange Commission pursuant to Sections 13 or 15(d) of the Exchange Act shall be permitted, and any such transfer shall be void *ab initio*. In order to prevent the Trust from becoming subject to such reporting requirements, the Trust may impose certain transfer restrictions designed to maintain the Trust as a non-reporting entity, and this Agreement may be amended pursuant to Section **Error! Reference source not found.** to make such changes as are deemed necessary or appropriate to ensure that the Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act of 1939, as amended, or the Investment Company Act of 1940, as amended.

H.        Conflicting Claims

If any conflicting claims or demands are made or asserted with respect to the Trust Interest of a Plan Administration Trust Beneficiary under this Agreement, or if there is any disagreement between the permitted assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trust shall be entitled, in its discretion, to refuse to comply with any such conflicting claims or demands.

The Trust may elect to make no payment or distribution with respect to the Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting

claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over the resolution of such conflicting claims or demands. Neither the Trust, the Plan Administrator, nor any Representative shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust, Plan Administrator, or any Representative be liable for interest on any funds which may be so withheld.

The Trust, the Plan Administrator, and each Representative shall be entitled to refuse to act until either: (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trust, which agreement shall include a complete release of the Trust, the Plan Administrator, and the Representatives. Until the Trust receives written notice that one of the conditions of the preceding sentence is met, the Trust may deem and treat as the absolute owner under this Agreement of the Trust Interest in the Trust the Plan Administration Trust Beneficiary identified as the owner of that interest in the Trust Register. The Trust may deem and treat such Plan Administration Trust Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

In acting or refraining from acting under and in accordance with this Section II.H, the Trust, the Plan Administrator, and the Representatives shall be fully protected and shall incur no liability to any purported claimant, interest holder or any other Person.

## III.   DURATION AND TERMINATION OF THE TRUST

A.     Dissolution of the Trust

The Plan Administrator and each Representative shall be discharged (if not discharged earlier in accordance with this Agreement) and shall have no further responsibilities except as provided in Section III.B of this Agreement, and the Trust shall be dissolved and thereafter terminate, at such time as: (a) subject to Article VIII of this Agreement, the Trust determines that the pursuit of additional Retained Causes of Action or proceeds of the Insurance Policies is not likely to yield sufficient additional proceeds to justify further pursuit of such Retained Causes of Action or proceeds of the Insurance Policies; (b) all objections to Disputed Claims and Disputed Interests are fully resolved; and (c) all Plan distributions required to be made by the Trust to the Plan Administration Trust Beneficiaries under the Plan and this Agreement have been made, provided, however that in no event shall the Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the 6-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension is necessary to facilitate or complete the recovery on, and liquidation and distribution of, the Plan Administration Trust Assets. Upon dissolution of the Trust, or at such earlier time as the Trust may determine (subject to Article VIII of this Agreement), the Trust may abandon any remaining Plan Administration Trust Assets in a manner consistent with Section IV.E of this Agreement.

B.    Continuance of the Trust for Winding Up

After the dissolution of the Trust and for the purpose of liquidation and winding up the affairs of the Trust, the Plan Administrator shall continue to act as such until its duties under this Agreement and the Plan have been fully performed, including such post-distribution tasks as necessary to wind up the affairs of the Trust, including, without limitation filing a final tax return for the Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust, the full winddown and dissolution of the Debtors, including the performance of all Wind Down Transactions, and the final distribution of the Plan Administration Trust Assets, the Plan Administrator shall have no further duties or obligations under this Agreement and this Agreement shall terminate other than the provisions that expressly survive termination.

Upon a motion by the Trust, which may be a motion for a final decree, the Bankruptcy Court may enter an order (a) relieving (i) the Plan Administrator, its employees, professionals, and agents, and (ii) the Representatives and their respective agents and professionals, of any further duties, (b) discharging and releasing (i) the Plan Administrator, its employees, professionals, and agents, and (ii) the Representatives and their respective agents and representatives, from all liability related to the Trust, and (c) releasing the Plan Administrator's bond, if any; provided, however, that the GUC Representative and its agents and professionals shall be fully discharged and released from all responsibilities under the Plan, the Confirmation Order and this Agreement at such time as all Allowed General Unsecured Claims have been fully paid in accordance with the Plan, in which case, any requirement under this Agreement of consultation with, or consent of, the GUC Representative for the Trust or Plan Administrator to act may be disregarded.

## IV.    ADMINISTRATION OF THE TRUST

A.    Payment of Claims, Expenses, and Liabilities

The Trust shall use the Plan Administration Trust Assets to pay Plan Administration Trust Expenses, which shall include all Wind Down Expenses and any Allowed Professional Fee Claims, solely to the extent such Claims are not satisfied in full from the Cash available in the Professional Fee Escrow Account, and which shall have a first right to payment from the proceeds of Plan Administration Trust Assets. The Plan Administrator shall maintain such segregated accounts or reserves that it is required to maintain under the Plan or this Agreement.

The Trust, in its discretion, may make Plan distributions to Holders of Allowed Trust Beneficiary Claims at any time following the Effective Date in accordance with the Waterfall Recovery, provided that such Plan distributions or use is otherwise permitted under, and not inconsistent with, the terms of the Plan, this Agreement, the Confirmation Order, and applicable law; provided further, that the Trust shall pay or reserve for all present and future Plan Administration Trust Expenses before making any Plan distribution to Holders of Allowed Claims or Allowed HoldCo Interests.

B._____Procedures for Resolving Unliquidated and Disputed Claims

1._____*Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and subject to Article VIII of this Agreement, the Trust shall have the sole authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise Disputed Claims and Disputed Interests; provided, however, that Proofs of Claim filed by Holders of Canadian Data Breach Class Settlement Claims, U.S. Data Breach Class Settlement Claims, Pixel Class Settlement Claims, and U.S. Data Breach Arbitration Settling Claims shall be automatically disallowed upon entry of final orders granting approval, as applicable, of the Canadian Data Breach Class Settlement Agreement, U.S. Data Breach Class Settlement Agreement, the Pixel Class Settlement Agreement, and the U.S. Data Breach Arbitration Settlement Order.  The Trust shall also have sole authority to administer and adjust (or direct the adjustment of) the Claims Register or Trust Register to reflect any settlements or compromises of Disputed Claims or Disputed Interests, including the settlement agreements set forth in this Section IV.B.1, without any further notice to or action, order or approval of the Bankruptcy Court.

2._____*Estimation of Claims*

The Trust may, but is not required to, and solely with respect to Lemonaid Commercial Claims, with notice to the Lemonaid Purchaser, at any time request (pursuant to the Claims Reconciliation Procedures or otherwise) that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise herein, a Claim that has been Disallowed but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero U.S. dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim; provided that such limitation shall not apply to Claims against any of the Debtors requested by the Debtors to be estimated for voting purposes only.

3._____*Adjustment to Claims and HoldCo Interests Without Objection*

Any duplicate Claim or HoldCo Interest, any Claim that has been paid or satisfied, or any Claim or HoldCo Interest that has been amended or superseded, cancelled or otherwise Disallowed (including pursuant to the Plan or the Confirmation Order), may be adjusted or Disallowed (including on the Claims Register and/or the Trust Register, to the extent applicable) by the Trust after providing notice and a period of at least 30 days for any party in interest (including the Representatives) to object, without any further notice to or action, Order, or approval of the Bankruptcy Court.

4.      *Time to File Objections to Claims or HoldCo Interests*

Except as otherwise provided herein, any objections to Claims shall be Filed on or before the Claims Objection Deadline (as such date may be extended by order of the Bankruptcy Court). A motion to extend the Claims Objection Deadline shall automatically extend the deadline until the Bankruptcy Court enters an order on such motion. For the avoidance of doubt, the Claims Objection Deadline shall not apply to objections to HoldCo Interests, and the Plan Administrator shall be entitled, but not required, to object to HoldCo Interests (on no less than 30 days' notice to each affected Holder thereof) at any time prior to the final distribution to be made on account of HoldCo Interests.

5.      *Disallowance of Claims or Interests*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, by that Entity have been turned over or paid to the Trust. All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee of the Debtors as of the Effective Date shall be deemed satisfied as of the Effective Date solely to the extent such indemnification obligation is assumed by the Trust, or honored or reaffirmed, as the case may be pursuant to the Plan, without any further notice to or action, Order, or approval of the Bankruptcy Court.

Except as provided in the Plan or otherwise agreed to by the Plan Administrator, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, Order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless (a) as to Claims Bar Dates established by the Plan or Confirmation Order, the Holder obtains leave of the Bankruptcy Court to file a late Claim, and (b) as to all other Claims Bar Dates, on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.

6.      *Disputed Claims and Disputed Interests Procedures*

Except as otherwise specifically provided in the Plan or the Confirmation Order and subject to Article VIII of this Agreement, from and after the Effective Date, the Trust shall have the sole authority (solely with respect to Lemonaid Commercial Claims, with notice to the Lemonaid Purchaser) to: (a) File and prosecute objections to Claims or HoldCo Interests; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all objections to Claims or HoldCo Interests; (c) settle or compromise any Disputed Claim or Disputed HoldCo Interest without any further notice to or action, Order, or approval by the Bankruptcy Court; and (d) direct the Notice and Claims Agent to administer and adjust the Claims Register to reflect

13

any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

For the avoidance of doubt, except as otherwise provided in the Plan, after the Effective Date, the Trust shall have the exclusive right to object to Claims and HoldCo Interests and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or HoldCo Interest immediately before the Effective Date, including the Retained Causes of Action.

Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim and no HoldCo Interest shall become an Allowed HoldCo Interest unless and until (i) such Claim or HoldCo Interest is deemed Allowed under the Plan or the Bankruptcy Code, (ii) the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or HoldCo Interest or (iii) the Trust, Plan Administrator or a Representative, as applicable, has, subject to Article VIII of this Agreement, entered into a binding stipulation or settlement agreement or other writing Allowing a Claim or HoldCo Interest. Subject to Article VIII of this Agreement, the Trust may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy law.

7.    *No Distribution Pending Allowance*

Except as otherwise provided in the Plan, notwithstanding any other provision of this Agreement, if any portion of a Claim is a Disputed Claim or Disputed Interest, as applicable, no payment or distribution provided hereunder or in the Plan shall be made on account of such Claim or HoldCo Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed HoldCo Interest.

8.    *Distributions After Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed HoldCo Interest, the Trust or the applicable Distribution Agent shall make a distribution (if any) to the Holder of such Allowed Claim or Allowed HoldCo Interest, in accordance with the Waterfall Recovery as set forth in Article IV.D of the Plan. As soon as reasonably practicable after the date that the Order or judgment of the Bankruptcy Court Allowing any Disputed Claim or Disputed HoldCo Interest, becomes a Final Order or a stipulation Allowing any Disputed Claim or Disputed HoldCo Interest becomes effective according to its terms, and solely to the extent the Distribution Agent for the applicable Class of Claims or HoldCo Interest has made a distribution to such Class as of such date, the Distribution Agent shall provide to the Holder of such Claim or HoldCo Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or HoldCo Interest unless such Holder is entitled to Post-Petition Interest under Article III of the Plan.

C.    Trust Reserve Accounts

    1.    Chrome Disputed Claims Reserve

On or after the Effective Date, the Plan Administrator may establish the Chrome Disputed Claims Reserve, in an amount or amounts as reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement. On or after the Effective Date, the Plan Administrator may deposit Cash into or withdraw Cash from the Chrome Disputed Claims Reserve if the Chrome Disputed Claims Reserve Amount changes in accordance with this Agreement.

The Trust will withhold the Chrome Disputed Claims Reserve from the property to be distributed under the Plan to Holders of Allowed Claims asserted against the Chrome Debtors and may request estimation of any Chrome Disputed Claim that is contingent or unliquidated. The Trust will withhold the Chrome Disputed Claims Reserve based upon the amount of the Chrome Disputed Claim asserted by the respective Holder of such Chrome Disputed Claim or, if applicable, the estimated amount of each such Chrome Disputed Claim as determined by the Bankruptcy Court. If a Chrome Disputed Claim is estimated or allowed in an amount less than the amount being held on account of such Claim in the Chrome Disputed Claims Reserve, the difference shall be released from the Chrome Disputed Claims Reserve.  For the avoidance of doubt, no monies may be allocated to the Equity Recovery Pool unless the Chrome Disputed Claims Reserve is fully funded inclusive of any Post-Petition Interest payable on account of any applicable Chrome Disputed Claims.

    2.    Lemonaid Disputed Claims Reserve

On or after the Effective Date, the Plan Administrator may establish the Lemonaid Disputed Claims Reserve, in an amount or amounts as reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement.  On or after the Effective Date, the Plan Administrator may deposit Cash into or withdraw Cash from the Lemonaid Disputed Claims Reserve if the Lemonaid Disputed Claims Amount changes at any time in accordance with this Agreement.

The Trust will withhold the Lemonaid Disputed Claims Reserve from the property to be distributed under the Plan to Holders of Allowed Claims asserted against the Lemonaid Debtors and may request estimation for any Lemonaid Disputed Claim that is contingent or unliquidated. The Trust will withhold the Lemonaid Disputed Claims Reserve based upon the amount of the Lemonaid Disputed Claim asserted by the respective Holder of such Lemonaid Disputed Claim or, if applicable, the estimated amount of each such Lemonaid Disputed Claim as determined by the Bankruptcy Court. If a Lemonaid Disputed Claim is estimated or allowed in an amount less than the amount being held in the Lemonaid Disputed Claims Reserve for such Claim, the difference shall be released from the Lemonaid Disputed Claims Reserve.  For the avoidance of doubt, no monies may be allocated to the Equity Recovery Pool unless the Lemonaid Disputed Claims Reserve is fully funded inclusive of any Post-Petition Interest payable on account of any applicable Lemonaid Disputed Claims.

3.      Administrative / Priority Claims Reserve

If not established prior to the Effective Date, on the Effective Date, in consultation with the Debtors and the Committees, the Plan Administrator shall establish the Administrative / Priority Claims Reserve by depositing Cash in the amount of the Administrative / Priority Claims Reserve Amount into the Administrative / Priority Claims Reserve in accordance with the terms of this Agreement. The Administrative / Priority Claims Reserve Amount shall be used to pay the Holders of all Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims that shall be paid in the first instance from the Professional Fee Escrow), Allowed Priority Tax Claims, and Allowed Other Secured Claims in full in Cash.

If all or any portion of any Other Priority Claim, Administrative Claim, Priority Tax Claim, or Other Secured Claim becomes Disallowed, the amount on deposit in the Administrative / Priority Claims Reserve attributable to the disputed portion of such Disallowed Claim, including any interest that has accrued on the amount on deposit in the Administrative / Priority Claims Reserve for the disputed portion of such Disallowed Claim, shall remain in the Administrative / Priority Claims Reserve to the extent that the Plan Administrator reasonably determines necessary to ensure that the Cash remaining in the Administrative / Priority Claims Reserve is sufficient to ensure that all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, or other Allowed Other Secured Claims will be paid in accordance with the Plan without any further action or order of the Bankruptcy Court. Any amounts remaining in the Administrative / Priority Claims Reserve after payment of all Allowed Administrative Claims (including any Allowed Professional Fee Claim that is not paid in full from the Professional Fee Escrow), Allowed Other Priority Tax Claims, Allowed Other Priority Claims, or other Allowed Other Secured Claims shall be distributed by the Trust in accordance with the Waterfall Recovery, the Plan, and this Agreement.

4.      Data Breach Settlement Reserves

If not established prior to the Effective Date, on or after the Effective Date, the Plan Administrator shall establish the U.S. Data Breach Class Settlement Fund Reserve, the U.S. Data Breach Arbitration Settlement Reserve, the Canadian Data Breach Class Settlement Fund Reserve, and the Pixel Class Settlement Fund Reserve in accordance with the terms of this Agreement, the U.S. Data Breach Class Settlement Agreement, the Canadian Data Breach Class Settlement Agreement, the U.S. Data Breach Arbitration Settlement Agreement, and the Pixel Class Settlement Agreement, as applicable.

5.      Cyber Insurance Reserve

If not established prior to the Effective Date, on or after the Effective Date, the Plan Administrator shall establish the Cyber Insurance Reserve, subject to Article VIII of this Agreement.  Following the receipt of proceeds from the Cyber Insurance Policies, the Plan Administrator shall transfer such proceeds to the Cyber Insurance Reserve to be distributed in accordance with the Cyber Insurance Proceeds Allocation.

6.       GUC Subordinated Claims Reserve

On or after the Effective Date, the Plan Administrator may establish a GUC Subordinated Claims Reserve in an amount or amounts reasonably determined by the Plan Administrator, subject to Article VIII of this Agreement, to provide for the payment of GUC Subordinated Claims pending their allowance, in the event that all Allowed General Unsecured Claims have been paid in full in accordance with the Plan, such that Holders of Allowed GUC Subordinated Claims shall be entitled to receive a distribution under the Plan.

D.     Retained Causes of Action

Subject to Article VIII of this Agreement, the Trust may prosecute, negotiate, settle or otherwise compromise, or abandon any Retained Causes of Action without further order of the Bankruptcy Court, except as otherwise provided in the Plan, the Confirmation Order, or this Agreement. Except as otherwise expressly provided in the Plan or this Agreement, the Trust may, but is not required to, pursue any Retained Causes of Action by informal demand and/or by the commencement of litigation. For the avoidance of doubt, net proceeds from Retained Causes of Action are Plan Administration Trust Assets.

E.     Abandonment

If, in the Plan Administrator's reasonable judgment, any Plan Administration Trust Assets cannot be sold in a commercially reasonable manner or the Plan Administrator believes in good faith that such Plan Administration Trust Assets have inconsequential value to the Trust or the Plan Administration Trust Beneficiaries, the Trust shall have the right (subject to Article VIII of this Agreement) to abandon or otherwise dispose of such Plan Administration Trust Assets, including by donating such Plan Administration Trust Asset to a charitable organization.

F.     Distributions

1.       Distributions Generally

The Trust shall make distributions from the Plan Administration Trust Assets of net Cash income and all other net Cash proceeds received by the Trust from the sale or liquidation of Plan Administration Trust Assets at least annually; provided, however, that the Trust may, to the extent consistent with Revenue Procedure 82-58, 1982-2 C.B. 847, as amplified by Revenue Procedure 94-45, 1994-2 C.B. 684, retain such amounts (a) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Plan Administration Trust Assets during the term of the Trust, (b) to pay reasonable Plan Administration Trust Expenses, and (c) to satisfy all other liabilities incurred or assumed by the Trust (or to which the Plan Administration Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Agreement, and retention of such amounts may preclude a distribution.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance

17

of such act may be completed on the next succeeding Business Day, but such payment or performance shall be deemed to have been completed as of the required date.

Subject to Article VII of the Plan, distributions under the Plan on account of Allowed Claims or Allowed HoldCo Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Allowed HoldCo Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Plan Administrator, the Representatives, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct. Distributions to Holders of HoldCo Interests shall be made through the facilities of [DTC/Cede & Co.] and the Plan Administrator shall be authorized to deal with the Holders of HoldCo Interests and the making of distributions to such Holders through the customary practices and procedures of [DTC/Cede & Co.], subject to Article VIII of this Agreement. After the Trust has made its final distribution to Holders of HoldCo Interests, the Trust shall be authorized to cancel all HoldCo Interests and terminate their listing with [DTC/Cede & Co.], and take any other action reasonably necessary to effect a cancelation and discharge of such HoldCo Interests.

Payments to Professionals for all Allowed Professional Fee Claims shall be made from the Professional Fee Escrow Account until all Allowed Professional Fee Claims have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court in accordance with the Plan and any agreement governing the Professional Fee Escrow Account. If funds in the Professional Fee Escrow Account are insufficient to pay all Allowed Professional Fee Claims in full, any unpaid amounts shall constitute a Trust Expense and shall be paid as such under the terms of the Plan and this Agreement.

Except as otherwise provided in the Plan, and subject to Article VIII of this Agreement, the Trust is not required to file any accounting or seek approval of any court with respect to the administration of the Trust, or as a condition for making any payment or distribution out of the Plan Administration Trust Assets.

2.    Powers of Distribution Agent

Each Distribution Agent, with respect to the Class or Classes of Claims or HoldCo Interests for which it serves, shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated by the Plan or this Agreement; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Distribution Agent by Order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to exercise any such powers.

3.    Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court and subject to the prior written consent of the Plan Administrator, the Trust shall pay the reasonable and documented compensation, fees and out-of-pocket expenses (including taxes) incurred by any Distribution

Agent on or after the Effective Date (including taxes) as Plan Administration Trust Expenses in Cash upon presentment of written invoices in customary form. If the Trust disputes any invoice presented by any Distribution Agent, the Trust shall pay any undisputed amounts while the parties attempt to resolve the disputed amounts consensually. The Bankruptcy Court shall determine any dispute the parties are unable to resolve consensually. For the avoidance of doubt, any reference to "taxes" in this paragraph shall not include income taxes imposed on the Distribution Agent.

4.      Distribution Record Date; Addresses

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date. The Distribution Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date. In addition, with respect to payment of any Cure Claims or disputes over any Cure Claims, neither the Trust nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the Non-Debtor party to the applicable Executory Contract as of the Effective Date, even if such Non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim. The Distribution Record Date shall not apply to publicly held Securities, including HoldCo Interests, deposited with [DTC/Cede & Co.]. In connection with any distribution under the Plan to be effected through the facilities of [DTC/Cede & Co.] (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors or the Trust, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with Holders of any applicable HoldCo Interests to the extent consistent with the customary practices of [DTC/Cede & Co.].

Except as otherwise provided in the Plan or this Agreement, the Trust shall make Plan distributions to Holders of Allowed Claims in Classes 1, 2, 6 through 9, and 13 and to Holders of Allowed HoldCo Interests as of the Distribution Record Date (1) at the address set forth in the underlying Proof of Claim or Proof of Interest for any certificated HoldCo Interest, if Filed, (2) at the address set forth on the Debtors' Schedules or on any register of equity holders of certificated HoldCo Interests the Debtors may maintain, if no Proof of Claim or Proof of Interest is Filed, (3) pursuant to the book-entry system under which uncertificated HoldCo Interests are held or (4) pursuant to any written change of address Filed with the Bankruptcy Court and delivered to the Trust.

Upon the final approval of the relevant settlement agreement, and the corresponding allowance of the settlement Claim, the Trust shall make Plan distributions to the Holders of Claims in Classes 3 through 5 and Class 14 by delivery of the required distribution(s) under the respective settlements and the Plan to the relevant settlement fund, benefits plan, or other designated agent under the applicable settlement agreement. Neither the Trust, the Plan Administrator, nor the Representatives shall have or incur any liability from or after making a distribution to the relevant settlement fund, benefits plan, or other designated agent with respect to any distribution(s) made under the Plan or this Agreement on account of Allowed Claims in Classes 3 through 5 or Class 14 of the Plan.

5.      Compliance with Tax Requirements

Tax matters with respect to Plan distributions shall be governed by Article V of this Agreement.

6.      Surrender of Instruments

As a condition precedent to receiving any distribution under the Plan, each Holder of a certificated instrument or note must surrender such instrument or note held by it to the Trust or its designee. Any holder of any such certificated instrument or note that fails to: (i) surrender the instrument or note; or (ii) execute and deliver an affidavit of loss or indemnity reasonably satisfactory to the Trust and furnish a bond in form, substance, and amount reasonably satisfactory to the Trust within six (6) months of being entitled to such distribution shall be deemed to have forfeited all rights, claims, or interests and may not participate in any distribution under the Plan or this Agreement.

7.      No Fractional Units

No fractional units of Trust Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed HoldCo Interest otherwise would result in the issuance of Trust Interests that are not a whole number, such Trust Interests shall be rounded as follows: (a) fractions of greater than one-half shall be rounded to the next higher whole number and (b) fractions of one-half or less shall be rounded to the next lower whole number with no further payment on account thereof. The total number of authorized and/or issued Trust Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

8.      Foreign Currency Exchange Rate.

Except as otherwise provided in a Final Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value calculated by using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition* on the Petition Date.

9.      Setoffs and Recoupments

Except as otherwise provided in the DIP Orders, the Confirmation Order or the Plan, the Trust may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any payments or distributions to be made pursuant to the Plan on account of any Allowed Claim or Allowed HoldCo Interest, any and all claims, rights, and Causes of Action that the Trust may hold against the Holder of such Allowed Claim or Allowed HoldCo Interest; <u>provided</u> that neither the failure to effectuate a setoff or recoupment nor the Allowance of any Claim or Interest shall constitute a waiver or release by the Trust of any and all claims, rights, and Causes of Action that the Trust may possess against the applicable Holder.

Notwithstanding anything to the contrary in the Plan or this Agreement, but subject to the Bar Date Order (including the requirement that all Proofs of Claim state whether a Claim is

20

subject to a right of setoff or recoupment) and the automatic stay, nothing shall modify the rights, if any, of any Holder of Allowed Claims, Allowed HoldCo Interests or any current or former party to an Executory Contract to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law with respect to undisputed amounts owing to or held by it, including the (1) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of any unexpired lease with the Debtors or any successors to the Debtors under the Plan; (2) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; (3) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or the Trust; or (4) assertion of rights of setoff and/or recoupment in connection with periodic reconciliations in accordance with the terms of assumed unexpired leases.

> 10.    Minimum Distribution

No payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the distribution shall reflect a rounding of such fraction to the nearest whole penny, rounded down to the next lower whole cent. Claimants whose aggregate distributions total less than $100 shall not be entitled to a distribution under the Plan, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII of the Plan and its Holder is forever barred pursuant to Article VIII of the Plan from asserting that Claim against the Debtors, the Wind-Down Debtors, the Trust, or their respective property; *provided,* however, that the foregoing shall not apply to distributions to Holders of Allowed Claims in Classes 3, 4, 5, and 14.

> 11.    Allocations

To the maximum extent permitted by Applicable Law, Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest (if any) provided for by this Plan, including Post-Petition Interest.

> 12.    Distributions Free and Clear

Except as otherwise provided in the Plan, any distribution or transfer made under the Plan, including distributions to any Holder of an Allowed Claim or Allowed HoldCo Interest, shall be free and clear of any Liens, Claims, Interests, encumbrances, charges, and other interests, and no other entity shall have any interest, whether legal, beneficial, or otherwise, in property distributed or transferred pursuant to the Plan.

> 13.    Claims Paid by Third Parties

The Trust shall reduce a Claim, and such Claim (or portion thereof) shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor, the Trust, the Plan Administrator, or another Distribution Agent.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim under the Plan

and also receives payment from a party that is not a Debtor, the Trust, the Plan Administrator, or another Distribution Agent on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the Trust to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim (plus Post-Petition Interest, if applicable) as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

14.     Claims Payable by Third Parties

Except as provided otherwise in the Plan, including with respect to proceeds of the Cyber Insurance Policies, no distributions under the Plan need to be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies or the Wind-Down Debtors' insurance policies, as applicable, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim against any Debtor, then immediately upon such insurers' agreement, the applicable portion of such Claim may be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

15.     Inapplicability of Escheat, Abandoned or Unclaimed Property Laws.

Unclaimed or undeliverable property held by the Trust in accordance with Article VII.E.3 of the Plan shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, or any local governmental unit.  In connection with any unclaimed or undeliverable distribution, the Trust may, in its sole discretion, attempt to determine a Holder's current address or otherwise locate a Holder, but nothing in this Agreement or the Plan shall require the Trust to do so.

16.     Voided Checks; Request for Reissuance.

In accordance with Section VII.E.3. of the Plan, checks issued with respect to an Allowed Claim shall be null and void if not negotiated within 90 days after the date of issuance. Requests for reissuance of any voided check shall be made directly to the Trust by the Entity to whom such check was originally issued. Any claim in respect of a voided check shall be made within 30 days after the date upon which such check was deemed void. If no request is made as provided in the preceding sentence, any Claims in respect of such voided check shall be discharged and forever barred.

G.     Compliance With Laws

Any and all distributions of the Plan Administration Trust Assets shall be in compliance with applicable laws, including applicable federal and state tax and securities laws.

H.     Fiscal Year

Except for the first and last years of the term of the Trust, the fiscal year of the Trust shall be the calendar year. For the first and last years of the term of the Trust, the fiscal year of the Trust shall be such portion of the calendar year that the Trust is in existence.

I.     Books and Records

On the date hereof, the Trust shall: (a) take possession of (i) all books, records, and files of the Debtors and the Estates that were not sold or otherwise transferred prior to the Effective Date and (ii) copies of all books, records, and files of the Debtors and the Estates that were sold or otherwise transferred prior to the Effective Date that were retained pursuant to the Purchase Agreements or other relevant agreements, in each case that relate to the operations of the Trust; and (b) provide for the retention and storage of such books, records, and files until such time as the Plan Administrator determines, in accordance with this Agreement (including, but not limited to, the restrictions set forth in Article VIII), that retention of same is no longer necessary or beneficial.

The Plan Administrator shall retain and preserve the Debtors' books, records, and files that have been delivered to or created by the Trust, in such detail and for such period of time as may be necessary to enable the Trust to make full and proper reports in respect thereof in accordance with the provisions of this Agreement and applicable law, including applicable tax, securities and other federal and state laws.  The Trust may, in in sole discretion and without the need for Bankruptcy Court approval (but and except as set forth in Article VIII of this Agreement) abandon or destroy any books and records that are not necessary for the administration of the Trust.

For the avoidance of doubt, the cost and expenses of maintaining books and records delivered to and maintained by the Trust shall constitute, and be paid as, Plan Administration Trust Expenses.

J.     No Bond Requirement

Notwithstanding any state or other applicable law to the contrary, the Trust, the Plan Administrator, the Representatives, and any other Distribution Agent (including any successor to any of those parties) shall be exempt from giving any bond or other security in any jurisdiction and the Plan Administrator, the Representatives and any other Distribution Agent shall serve without bond.

K.     Plan Administration Trust Insurance

Subject to Article VIII of this Agreement, the Plan Administrator is authorized, but not required, to obtain all reasonable insurance coverage for the Trust, itself and its respective employees or agents, if applicable, the Representatives and their respective agents, including coverage with respect to the liabilities, duties, and obligations of the Trust, which insurance coverage may, in the Plan Administrator's discretion, be extended for a reasonable period after the termination of the Trust or this Agreement.

23

The costs of any such insurance coverage shall constitute Trust Expenses and be paid out of Plan Administration Trust Assets.

## V. TAX MATTERS[4]

### A.    Trust's Tax Power for the Debtors

For all taxable periods ended on or before the dissolution of the Debtors, the Trust shall have the same authority and responsibility in respect of all taxes of the Debtors (including as the common parent or other agent of any consolidated, combined, or unitary tax group of which the Debtors were the agent) and, to the same extent, as if the Trust was a Debtor.

In furtherance of the transfer of the Plan Administration Trust Assets to the Trust, the Trust shall be entitled to all tax refunds of the Debtors (and the Trust shall bear responsibility for all tax liabilities of the Debtors for taxable periods ended on or before the dissolution of the Debtors, to the extent not discharged by the Plan or provided for payment or otherwise satisfied in the Plan).

The Plan Administrator shall not have any personal liability whatsoever associated with the signing of the Debtors' tax returns or the payment of any tax, penalties or interests associated therewith.

### B.    Treatment of Trust for Tax Purposes

Subject to any applicable law or definitive guidance from the IRS or a court of competent jurisdiction to the contrary and except to the extent the Debtors and the Committees determine otherwise in their reasonable discretion to treat all or any portion of the Trust as a "qualified settlement fund," a "disputed ownership fund" and/or otherwise, the Debtors intend that the Trust shall be a liquidating trust as that term is used under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the Plan Administrator will take a position on such Trust's tax return accordingly. For U.S. federal income tax purposes, the transfer of the Plan Administration Trust Assets to the Trust, will be deemed to occur as (a) a first-step transfer of the Plan Administration Trust Assets (other than such assets allocable to a DOF (defined below) or QSF (defined below)) to the Plan Administration Trust Beneficiaries, and (b) a second-step transfer by such Plan Administration Trust Beneficiaries to the Trust. As soon as possible after the transfer of the Plan Administration Trust Assets to the Trust, subject to Article VIII of this Agreement, the Plan Administrator shall make a good faith valuation of the Plan Administration Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the Trust, and the Plan Administration Trust Beneficiaries shall take consistent positions with respect to the valuation of the Plan Administration Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax reporting purposes.

---

[4]     [Note to Draft: Under discussion.]

24

To the extent permitted by applicable law, all parties, including the Trust, the Plan Administrator, and any Plan Administration Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes. The Debtors will provide information to the Trust as to their valuation determinations with respect to the Plan Administration Trust Assets on the Effective Date to facilitate consistent tax reporting by the Trust.

So long as the Trust is treated as a liquidating trust, the Trust shall file any and all tax returns for the Trust and any DOF (defined below) (if a DOF election is made) or QSF (defined below), as applicable, including, but not limited to, the filing of a separate federal tax return for any DOF or QSF; provided, however, that the Plan Administrator shall have no personal liability for the signing or accuracy of the Trust's or any DOF's tax returns (as applicable) or for any tax liability related thereto.

Allocations of Trust taxable income among the Plan Administration Trust Beneficiaries (other than taxable income allocable to any DOF or QSF) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to any DOF or QSF) to the holders of the Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Trust. Similarly, taxable loss of the Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Plan Administration Trust Assets. The tax book value of the Plan Administration Trust Assets for purposes of this Section V.B. shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Trust shall be responsible for payment, out of the Plan Administration Trust Assets (other than those subject to the DOF election or QSF treatment described in Article IV.E.5 of the Plan), of any taxes imposed on the Trust, the Plan Administration Trust Assets (other than those subject to the DOF election or QSF treatment described in Article IV.E.5 of the Plan and Section V.D of this Agreement) or any DOF or QSF to the extent such payment is consistent with the Bankruptcy Code, the Plan, and any applicable order of the Bankruptcy Court including, but not limited to, the Bar Date Order; provided, however, that any taxes imposed on any DOF or its assets will be paid out of the assets subject to the DOF election and any taxes imposed on any QSF or its assets will be paid out of the assets subject to QSF treatment, and any subsequent distributions in respect of the allowance or disallowance of such claims will be reduced accordingly. In the event, and to the extent, that any Cash subject to the DOF election is insufficient to pay the portion of any taxes attributable to taxable income arising from assets subject to the DOF election and any Cash subject to QSF treatment is insufficient to pay the portion of any taxes attributable to taxable income arising from assets subject to QSF treatment, such assets (including those otherwise distributable) may be sold to pay such taxes.

The Trust shall file tax returns as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), except to the extent of any portion of the Trust that is treated as a "qualified settlement fund" or a "disputed ownership fund".

The Trust shall issue tax-related notices to the applicable Plan Administration Trust Beneficiaries as the Trust determines are necessary or desirable.

C.      Tax Withholdings by the Plan Administration Trust

Distributions made under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Plan distributions shall be subject to any such withholding, payment, and reporting requirements. The Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including liquidating a portion of the distributions to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator or the Distribution Agent, as applicable, shall have the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The applicable Distribution Agent may require any Holder of any Claim or any HoldCo Interest to complete the appropriate IRS Form W-8 or IRS Form W-9 as a prerequisite to receiving any distribution under the Plan. If a Holder of any Claim or HoldCo Interest does not provide to the applicable Distribution Agent, within 90 days of first written request, all documentation that, in the applicable Distribution Agent's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Claim or Interest, including the appropriate IRS Form W-8 or IRS Form W-9, the relevant Claim or HoldCo Interest shall be deemed Disallowed, forever barred in its entirety without further order of the Bankruptcy Court and the funds on account of any present or future distribution associated with such Claim or HoldCo Interest shall revert to the Trust for all purposes, including, but not limited to, redistribution to the other Holders of Claims or HoldCo Interests, as applicable, in accordance with the terms of the Plan (upon payment or reservation in full of all Plan Administration Trust Expenses).  For the avoidance of doubt, with respect to (i) Classes 3, 4, 5, and 14, upon the final approval of the settlement associated with each such Class, the Trust shall only be responsible to obtain the tax identification document(s) (e.g., form W-9) of the relevant settlement fund, benefits plan, or other designated agent under the applicable settlement agreement in the relevant Class and not any other individual or entity, and the designated agent under the applicable settlement agreement or benefits plan in the relevant Class shall make all necessary arrangements to prepare and file any and all required tax forms and/or tax returns in connection with payments to individual claimants; and (ii) HoldCo Interests held exclusively in book entry form at [DTC/Cede & Co.], the Trust shall only be responsible to obtain the tax identification document(s) (e.g., form W-9) of [DTC/Cede & Co.]

Notwithstanding any other provision of the Plan to the contrary, each Holder of a Claim or Interest that is to receive a distribution under the Plan or this Agreement shall have the sole

and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. Amounts properly withheld from distributions made under the Plan and this Agreement and paid over to the applicable taxing authority for the account of any Holder will be treated as amounts distributed to such Holder.

D.      DOF Election

The Trust may, in its sole discretion, determine the best way to report for United States tax purposes with respect to any of the various disputed Claims reserves, if applicable, including, but not limited to, filing a tax election to treat any or all of such disputed Claims reserves as a disputed ownership fund ("DOF") or other separate entity within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust (and, to the extent permitted by applicable law, report consistently with the foregoing for United States federal, state, and local income tax purposes) (the "DOF Election"). If a DOF Election is made with respect to one or more disputed Claims reserves, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of any DOF or other separate entity, including, but not limited to, the filing of a separate federal tax return for each DOF or other separate entity and the payment of federal and/or state income tax due.

E.      Qualified Settlement Fund

The Trust may, if it determines, in its sole discretion, that it is required to, report for United States tax purposes, a portion of the Trust's assets as one or more "qualified settlement funds" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Tax Code ("QSF").  The Trust shall comply with all federal and state tax reporting and tax compliance requirements associated with such assets constituting a QSF, including the filing of a separate federal tax return for each QSF or other separate entity and the payment of federal and/or state income tax due.

## VI.    POWERS AND LIMITATIONS OF THE TRUST AND THE PLAN ADMINISTRATOR

A.      Powers of the Trust

The Trust shall be deemed to be a judicial substitute for each of the Debtors as the party-in-interest in the Bankruptcy Cases solely with respect to the purposes of the Trust set forth in the Plan and this Agreement or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, and is appointed as the representative of the Estates. The Trust may exercise all power and authority that may be exercised by any officer, director, or Holder of an Interest in the Debtors with like effect as if authorized, exercised, and taken by unanimous consent of such officers, directors, or Holders of HoldCo Interests.

B.      Responsibilities and Authority of the Trust

The Trust shall be the exclusive administrator of the Plan Administration Trust Assets for purposes of 31 U.S.C. § 3713(b), as well as the representatives of the Estate of each of the

27

Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the Trust's duties under this Agreement. The Trust shall hold and distribute plan distributions in accordance with the provisions of the Plan and this Agreement.

The Trust may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties and those of the Plan Administrator under the Plan and this Agreement, and may compensate and reimburse the reasonable fees and expenses of those professionals as Plan Administration Trust Expenses under this Agreement.

The powers of the Trust shall include any and all powers and authority to implement the Plan (except for administering the Professional Fee Escrow Account which is not a Trust responsibility), administer and make distributions in accordance with the Plan and this Agreement, including: (a) liquidating, receiving, holding, investing, supervising, and protecting the Plan Administration Trust Assets; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made from Plan Administration Trust Assets under the Plan; (c) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (d) paying all Plan Administration Trust Expenses as provided in this Agreement and the Plan; (e) except as otherwise provided in the Plan or this Agreement, investigating, commencing, pursuing, enforcing, prosecuting, abandoning, waiving, settling, compromising or releasing, as appropriate, claims, interests, rights, and Privileges under the Retained Causes of Action in accordance with Article IV.F of the Plan; (f) administering and paying taxes of the Wind-Down Debtors and the Trust, including filing tax returns; (g) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (h) discharging the Debtors' and the Wind-Down Debtors', as applicable, post-Effective Date obligations under the Purchase Agreements, if any; (i) administering, reconciling and objecting to Claims and Interests against the Debtors; and (j) subject to Article VIII, exercising such other powers as may be vested in the Trust pursuant to the Plan, the Confirmation Order, or any applicable orders of the Bankruptcy Court or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with this Agreement.

C.    Wind-Down

As soon as practicable after the Effective Date, the Plan Administrator shall: (a) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (b) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of one or more of the Debtors or the Wind-Down Debtors under the applicable laws of their state of incorporation or formation (as applicable); (c) perform the Wind-Down Transactions; and (d) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the Plan as it relates to the Wind-Down Debtors and the Wind-Down Transactions.   Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without the need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to Wind-Down Debtors as set forth in the Plan, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from

28

any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (y) shall be deemed to have canceled pursuant to the Plan all Interests (except to the extent necessary to facilitate the right of Holders of Allowed HoldCo Interests to receive distributions under the Plan), and (z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

D.     Actions Taken by the Trust

Subject to Article VIII of this Agreement, without limiting the Trust's authority under the preceding subsection, the Trust, the Plan Administrator, and/or the Representatives, as applicable, may take any and all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and this Agreement, without the need for Bankruptcy Court approval (unless otherwise indicated) subject to and in accordance with the terms of the Plan and this Agreement, including, but not limited to:

1.     the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of the Plan and this Agreement and that satisfy the requirements of applicable law;

2.     the power to invest any monies held as Plan Administration Trust Assets and withdraw, make distributions, and pay taxes and other obligations owed by the Trust from such funds in accordance with the Plan and this Agreement;

3.     the ability to borrow funds or enter into an agreement to obtain litigation financing to the extent consistent with and in furtherance of the purposes of the Trust;

4.     the power to engage and compensate, without prior Bankruptcy Court order or approval, employees, independent contractors, professionals, and other representatives or agents to assist the Trust with respect to its responsibilities (including professionals previously retained by the Debtors or the Committees), which shall be paid as Plan Administration Trust Expenses out of the Plan Administration Trust Assets;

5.     the execution and delivery or any appropriate instruments or transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with the Plan and this Agreement;

6.     the power to act on behalf of the Debtors, the Debtors' Estates, or the Trust in commencing, prosecuting, compromising, settling, or defending any litigation or rights (whether legal or equitable) pertaining to the Plan Administration Trust

29

Assets, including the Retained Causes of Action, without notice to or approval from the Bankruptcy Court;

7.  the ability to appear and have standing in the Bankruptcy Court (or any other court having jurisdiction over the Plan Administration Trust Assets) to be heard with regard to objections to Claims or Interests, Retained Causes of Action, and other matters that may affect or relate to the Plan Administration Trust Assets;

8.  the Filing, prosecuting, compromising, or settlement of objections to Claims or Interests in accordance with the Plan without further approval of or application to the Bankruptcy Court;

9.  the filing of any appropriate documents with appropriate governmental authorities pursuant to applicable law;

10.  the ability to collect and liquidate all Plan Administration Trust Assets, including the sale of any Plan Administration Trust Assets, which may include, but is not limited to, the entry into litigation financing arrangements with respect to any Retained Causes of Action;

11.  the ability to protect and enforce the rights to the Plan Administration Trust Assets vested in the Trust by the Plan and this Agreement;

12.  the power to comply with the Trust's accounting, finance, and reporting obligations;

13.  the power to take any action necessary to administer the Chapter 11 Cases, which may include, but is not limited to, the power to seek to establish a bar date for filing proofs of HoldCo Interests;

14.  the power to pay any and all expenses and make all other payments in connection with administering the Trust without further order of the Bankruptcy Court as Plan Administration Trust Expenses out of the Plan Administration Trust Assets and to pay Wind-Down Expenses; provided, however, that in no event shall the Plan Administrator be liable in its individual capacity for payment of any Plan Administration Trust Expenses or Wind-Down Expenses;

15.  the ability to open and maintain bank accounts in the name of the Trust, draw checks and drafts thereon on the sole signature of the Plan Administrator, and terminate such accounts as the Trust deems appropriate;

16.  in the event that the Trust determines that the Plan Administration Trust Beneficiaries or the Trust may, will, or have become subject to adverse tax consequences, in the Trust's sole discretion, the power to take such actions that will, or are intended to, alleviate such adverse tax consequences;

17.  the ability to cause the Trust to abandon or donate to a charitable organization any Plan Administration Trust Assets that the Trust determines in its discretion to be

30

too impracticable or of inconsequential value to the Trust and the Plan Administration Trust Beneficiaries;

18. the ability to make distributions to Holders of Allowed Claims and Allowed HoldCo Interests and deliver distributions on account of the Trust Interests in accordance with the Plan and this Agreement;

19. the ability to seek a final decree closing some or all of the Chapter 11 Cases; and

20. any and all other actions that the Trust, determines is necessary or appropriate to effectuate the Plan and this Agreement, including, but not limited to, the right to conduct discovery and oral examination of any Person under Bankruptcy Rule 2004.

E.     Limitations on the Trust

The Trust shall hold the Trust out as a trust in the process of liquidation and not as an investment company. The authority of the Trust shall be restricted to the liquidation of the Plan Administration Trust Assets on behalf, and for the benefit, of the Plan Administration Trust Beneficiaries and the distribution and application of the Plan Administration Trust Assets for the purposes set forth in, and the conservation and protection of the Plan Administration Trust Assets and the administration thereof in accordance with, the provisions of this Agreement, the Plan and the Confirmation Order, and shall not take any action that would jeopardize (1) treatment of the Trust as a "liquidating trust" that is a grantor trust for U.S. federal income tax purposes (unless all or a portion of the Trust is treated as a qualified settlement fund) and (2) if the DOF Election is made, the treatment of any of the disputed Claims reserves as a DOF for U.S. federal income tax purposes. The Trust shall not at any time, on behalf of the Trust or the Plan Administration Trust Beneficiaries, (1) enter into or engage in any trade or business, or (2) take any actions that are not related, directly or indirectly, to the purposes of this Plan Administration Trust Agreement and the Trust or the administration or implementation of the terms this Agreement.

F.     Term of the Plan Administrator

The Plan Administrator will serve on and after the Effective Date in accordance with this Agreement and the Plan. The Plan Administrator shall serve until the earlier to occur of: (1) dissolution of the Trust in accordance with the terms of this Agreement and the Plan; or (2) the Plan Administrator's death, resignation, dissolution, incapacity, bankruptcy, liquidation, or removal pursuant to this Agreement.

The duties, responsibilities, and powers of the Plan Administrator shall terminate on the first date after which (i) the Trust is wound up and dissolved in accordance with the Plan, this Agreement, and applicable law, and (ii) the Wind-Down Transactions have been consummated.

G.     Plan Administrator Conflicts of Interest

If the Plan Administrator determines in its reasonable discretion that it has an actual or potential conflict of interest with respect to any matter, the Plan Administrator shall provide

prompt notice to the Representatives and request that the Representatives designate a person to act on behalf of the Trust solely with respect to such matter (such designee a, "Conflicts Trustee"). If the Representatives cannot agree on a Conflicts Trustee to appoint to act on behalf of the Trust with respect to such matter, then each Representative will propose one candidate to the Plan Administrator, and the Plan Administrator shall select one of the candidates presented to act as Conflicts Trustee.

Either Representative may identify a potential conflict matter to the Plan Administrator by written notice. If such conflict matter is not resolved within seven (7) days after the Plan Administrator's receipt of notice, the applicable Representative may request that the Bankruptcy Court appoint and approve a Conflicts Trustee.

Any Conflicts Trustee's authority to act on behalf of the Trust shall terminate automatically upon the conclusion of the matter giving rise to such actual or potential conflict of interest.

H.    Compensation and Expenses of the Plan Administrator

Subject to Article VIII, the Plan Administrator shall be entitled to receive reasonable compensation in connection with its performance of its duties plus reimbursement of its reasonable out-of-pocket expenses. All reasonable and documented costs, expenses, and obligations, including filing fees, incurred by the Plan Administrator shall constitute Plan Administration Trust Expenses and be paid from the Plan Administration Trust Assets, prior to any distribution to the Plan Administration Trust Beneficiaries and without further Bankruptcy Court approval or order (subject to the limitations set forth in this Agreement, including, but not limited to, Article VIII, and the Plan).

I.    Employment, Indemnification, and Other Agreements

The Trust may (but is not required to) enter into employment, independent contractor, indemnification and other agreements with individuals who may be required to assist the Trust. Such agreements shall remain in place until such time as the Trust shall determine to either terminate or amend such agreements.

J.    Investment of Plan Administration Trust Monies

All monies and other assets received by the Trust shall be held in trust for the benefit of the Plan Administration Trust Beneficiaries, but need not be segregated from other Plan Administration Trust Assets, unless and to the extent required by the Plan and this Agreement. The Trust shall be permitted but not required to invest any such monies in the manner set forth in this Section VI.J, but shall not have any liability for interest or producing income on any monies received by the Trust and held for distribution or payment to the Plan Administration Trust Beneficiaries, except as such interest shall actually be received by the Trust, which interest or income shall be distributed as provided in the Plan and this Agreement. Except as otherwise provided by the Plan or Confirmation Order, the right and power of the Trust to invest the Plan Administration Trust Assets, the proceeds thereof, or any income earned by the Trust, other than those powers reasonably necessary to maintain the value of the Plan Administration Trust Assets and to further the Trust's purpose pursuant to the Plan, shall be limited to the right and power to

32

(1) invest such Plan Administration Trust Assets (pending distributions in accordance with the Plan or this Agreement) in (i) short-term direct obligations of, or obligations guaranteed by, the United States of America; (ii) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof or (iii) a short-term money market fund; and (2) deposit such Plan Administration Trust Assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "Permissible Investments"); provided, that the scope of any such Permissible Investments shall be limited to include only those investments that a Trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.  For the avoidance of doubt, the provisions of the Estates, Power and Trusts Law of New York shall not apply to the Trust or this Agreement.  Notwithstanding the foregoing, the Plan Administrator shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Plan Administrator's administration of the Trust.

## VII.   SUCCESSOR PLAN ADMINISTRATOR AND REPRESENTATIVES

### A.     Resignation

The Plan Administrator may resign by giving forty-five (45) days' written notice thereof to the Representatives, the U.S. Trustee, and Bankruptcy Court.  Such resignation shall become effective on the effective date of the appointment of a successor Plan Administrator in accordance with Section VII.C and such successor's acceptance of such appointment in accordance with Section VII.E of this Agreement.

### B.     Removal

Either or both Representatives, on forty-five (45) days' notice, may file a motion seeking removal of the Plan Administrator for cause established by the moving party. If such motion is filed, until such time as such motion is ruled on by the Bankruptcy Court, any decisions by the Plan Administrator under this Agreement must either be (i) approved by both Representatives in writing, or (ii) approved by the Bankruptcy Court.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section VII.B.  Any removal of the Plan Administrator shall become effective on such date as may be specified by the Representatives, or, in the event of removal by order of the Bankruptcy Court, upon such date ordered by the Bankruptcy Court.

### C.     Effect of Resignation or Removal

The death, resignation, removal, incapacity, dissolution, bankruptcy, or insolvency of the Plan Administrator shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement, the Plan, or the Confirmation Order or to invalidate any action theretofore taken by the Plan Administrator. All fees and expenses properly incurred by the Plan Administrator prior to the resignation or removal of the Plan Administrator shall be paid as Plan Administration Trust Expenses from the Plan Administration Trust Assets pursuant to the Plan, the Confirmation Order, and this Agreement. In the event of the resignation

33

or removal of the Plan Administrator, such Plan Administrator shall (a) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Plan Administrator or directed by the Bankruptcy Court to effect the termination of such Plan Administrator's capacity under this Agreement, (b) promptly deliver to the successor Plan Administrator all documents, instruments, records and other writings related to the Trust as may be in the possession of such Plan Administrator, (c) render to the Representatives a full and complete accounting of monies and assets received, disbursed, and held during the term of office of the resigning Plan Administrator and such other information as reasonably requested by the Representatives, and (d) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Plan Administrator.

D.  Appointment of Successor Plan Administrator

Upon the death, resignation, removal, incapacity, dissolution, bankruptcy, or insolvency of a Plan Administrator, the Representatives shall select a successor Plan Administrator and file a notice of the same with the Bankruptcy Court, *provided that* in the event of the resignation or removal of the Plan Administrator, the Representatives shall select a successor Plan Administrator no later than the effective date of such resignation or removal.

If the Representatives are unable to agree on the selection of a successor Plan Administrator as provided in this Section VII.D, then either or both Representatives shall file a motion requesting the Bankruptcy Court to appoint a successor Plan Administrator, *provided that*, in the event only one Representative files such motion, the other Representative's rights to file an objection to any such motion are preserved.

E.  Acceptance of Appointment by Successor Plan Administrator

Any successor Plan Administrator so appointed shall consent to and accept in writing the terms of this Agreement and agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Plan Administrator. Upon acceptance in writing, such successor Plan Administrator shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges in the Trust of its predecessor under this Agreement, the Plan, and the Confirmation Order with like effect as if originally named Plan Administrator.

F.  Representatives

Each Representative may resign or be removed pursuant to the same terms and procedures provided above regarding the resignation or removal of the Plan Administrator, except that a notice of resignation of any Representative shall be delivered to the Plan Administrator, the remaining Representative and the U.S. Trustee.

## VIII.    REPRESENTATIVES AND TRUST GOVERNANCE

### A.    Generally

The Representatives shall have the authority and responsibility to oversee, review, and consult with the Plan Administrator regarding activities and performance of the Trust as set forth in the Plan and this Article VIII, and shall have the authority to take and approve such other actions as are expressly set forth in this Agreement, including, but not limited to, the right to seek to remove the Plan Administrator pursuant to Section VII.B of this Agreement.

The authority of the Representatives will be effective as of the Effective Date, and, except as provided in Section III.B. of this Agreement with respect to the GUC Representative, will remain and continue in full force and effect until the Trust is dissolved in accordance with the terms of this Agreement or the Bankruptcy Court rules otherwise.

### B.    Meetings of the Trust Parties

The Plan Administrator and the Representatives (collectively, the "Trust Parties") shall meet at least once per calendar month, unless the Trust Parties agree otherwise in writing to adjourn or cancel one or more monthly meetings.

Special meetings of the Trust Parties may be held whenever and wherever convened by the Plan Administrator; *provided, however,* that the Plan Administrator shall provide no less than two (2) days' written notice of any special meeting, unless both Representatives consent to shorter notice.

Any Trust Party proposing to discuss written materials at a meeting with the other Trust Parties must provide the other Trust Parties with copies of such written materials no less than two (2) days prior to such meeting, unless all other Trust Parties consent to shorter notice.

### C.    Disposition of Assets

The Plan Administrator may, with notice to the Representatives, abandon, sell, transfer, or otherwise dispose of any Plan Administration Trust Assets in any commercially reasonable manner (including abandonment or donation to a charitable organization of its choice), that the Plan Administrator reasonably concludes is of inconsequential benefit to the Trust Beneficiaries; *provided that* the Plan Administrator shall provide the Representatives no less than seven (7) days' written negative notice of any proposed abandonment, sale, transfer or other disposition of any Plan Administration Trust Assets greater than $250,000 in value.  If both Representatives object in writing within such notice period, the Plan Administrator may not consummate the proposed abandonment, sale, transfer or other disposition of the Plan Administration Trust Assets.  If only one of the Representatives provides timely written notice of an objection to the proposed abandonment, sale, transfer or other disposition of Plan Administration Trust Assets, then the Plan Administrator may file a motion seeking Bankruptcy Court approval of the proposed disposition of such Plan Administration Trust Assets, *provided* that the Representatives' rights to file an objection to such motion are preserved.

For the avoidance of doubt, no notice to, or approval from the Bankruptcy Court shall be required for any abandonment, sale, transfer or other disposition of a Plan Administration Trust Asset, except as otherwise provided in this Section VIII.C. or in Section VIII.J.1 of this Agreement.

D.     Establishment and Maintenance of Reserves

1.    Reserves Initially Established in Consultation with the Debtors and the Committees

To the extent that the Plan Administrator determines, in its discretion, that the amount of Cash deposited in the Administrative / Priority Reserve on the Effective Date, or held in such reserve from time to time thereafter, is insufficient to pay all Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims that shall be paid in the first instance from the Professional Fee Escrow), Allowed Priority Tax Claims, and Allowed Other Secured Claims in full in Cash, based on Claims filed after the Effective Date or otherwise, the Plan Administrator shall consult with the Representatives with respect to any proposed modification of the Administrative / Priority Reserve and provide the Representatives a reasonably detailed analysis in support of the request, together with such other information and documentation that the Representatives may reasonably require.

2.    Reserves Established in Consultation with the Representatives

On or as soon as reasonably practicable after the Effective Date, the Plan Administrator shall, in consultation with the Representatives, (a) establish and determine the initial amounts of the Chrome Disputed Claims Reserve, the Lemonaid Disputed Claims Reserve, and, if applicable, the Canadian Data Breach Class Settlement Fund Reserve, the Pixel Class Settlement Fund Reserve, the GUC Subordinated Claims Reserve, the U.S. Data Breach Arbitration Settlement Reserve, the U.S. Data Breach Class Settlement Fund Reserve and (b) if not established prior to the Effective Date, establish and determine the initial amounts of the Cyber Insurance Reserve.

To the extent that the Plan Administrator determines, in its discretion, that the amount of Cash deposited in any of the reserves set forth in this Section VIII.D.2, or held in any such reserve from time to time thereafter, is insufficient to satisfy the treatment specified in the Plan with respect to Claims in the corresponding Class or other material terms or conditions of the Plan, based on Claims filed after the Effective Date or otherwise, the Plan Administrator shall consult with the Representatives with respect to any proposed modification of the reserve to be supplemented and provide the Representative a reasonably detailed analysis in support of the request, together with such other information and documentation that the Representatives may reasonably require.

E.     Compensation

1.    Compensation of the GUC Representative

The GUC Representative shall be entitled to receive compensation equaling $150,000 per year, which will be pre-funded annually by the Plan Administrator, plus reasonable documented

out-of-pocket expenses, which shall be subject to the GUC Professionals Budget and will be included in the monthly invoices to the Plan Administrator as set forth herein.

The GUC Representative shall provide to the Plan Administrator (a) monthly invoices detailing any out-of-pocket expenses, and (b) copies of invoices of any GUC Representative Professionals (defined below) that the GUC Representative seeks to pay.  If the Plan Administrator does not object in writing within seven (7) days after receipt of any invoice(s), the GUC Representative shall promptly pay the invoice(s) out of the GUC Professionals Budget.  If the Plan Administrator timely raises an objection, then (i) the GUC Representative shall promptly pay the undisputed portion of the invoice(s) provided by the GUC Representative out of the GUC Professionals Budget, and (ii) the Plan Administrator and the GUC Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s). If the parties are unable to resolve such dispute within thirty (30) days after the date on which the Plan Administrator first sent written notice of its objection, then the GUC Representative may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Plan Administrator and an objection period for the Plan Administrator of fourteen (14) days.

2.      Compensation of the Equity Representative

The Equity Representative shall be entitled to receive compensation equaling $150,000 per year **(the "Equity Representative Compensation Cap")**, which will be pre-funded annually by the Plan Administrator, plus reasonable documented out-of-pocket expenses, which shall be subject to the Equity Professionals Budget and will be included in the monthly invoices to the Plan Administrator as set forth herein.  **The Equity Representative may opt, in his or her discretion, to be compensated on an hourly basis.  If the Equity Representative chooses to receive hourly compensation and such hourly fees exceed the Equity Representative Compensation Cap for a given year, the Equity Representative may compensate himself or herself for such excess fees from any amounts remaining in the Equity Professionals Budget; _provided_ that such excess fees shall not exceed the total amount remaining in the Equity Professionals Budget.**

The Equity Representative shall provide to the Plan Administrator (a) monthly invoices detailing any out-of-pocket expenses, and (b) copies of invoices of any Equity Representative Professionals (defined below) that the Equity Representative seeks to pay.  If the Plan Administrator does not object in writing within seven (7) days after receipt of any invoice(s), the Equity Representative shall promptly pay the invoice(s) out of the Equity Professionals Budget. If the Plan Administrator timely raises an objection, then (i) the Equity Representative shall promptly pay the undisputed portion of the invoice(s) provided by the Equity Representative out of the Equity Professionals Budget, and (ii) the Plan Administrator and the Equity Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s). If the parties are unable to resolve such dispute within thirty (30) days after the date on which the Plan Administrator first sent written notice of its objection, then the Equity Representative may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with

notice to the Plan Administrator and an objection period for the Plan Administrator of fourteen (14) days.

### 3.    Compensation of Plan Administrator

The compensation of the Plan Administrator shall be as agreed to by the Debtors and the Committees and set forth in the Plan Supplement.

### 4.    Compensation Modifications

(a) The Plan Administrator may propose a modification to its compensation for cause by written request to the Representatives on seven (7) days' negative notice.  If (i) both Representatives timely object to a compensation modification proposed by the Plan Administrator, then the modification shall not be approved; and (ii) only one of the Representatives timely objects to a proposed modification to the Plan Administrator's compensation, then the Plan Administrator may file a motion with the Bankruptcy Court seeking its approval, *provided* that the Representatives' rights to file an objection with the Bankruptcy Court are preserved.

(b) Either of the Representatives may propose a modification to its compensation for cause by written request to the Plan Administrator and the other Representative on seven (7) days' negative notice.  If either the Plan Administrator or the other Representative timely objects to a proposed modification of any Representative's compensation, then the proposing Representative may file a motion with the Bankruptcy Court seeking its approval; *provided* that the other parties' rights to file an objection with the Bankruptcy Court are preserved.

### F.    Trust Professionals

### 1.    Plan Administrator Professionals

The Plan Administrator, in consultation with the Representatives, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "Plan Administrator Professionals") to assist in carrying out its duties under the Plan and this Agreement.  The Trust may compensate and reimburse the reasonable expenses of Plan Administrator Professionals, which shall constitute Plan Administration Trust Expenses, without further order of the Bankruptcy Court from the Plan Administration Trust Assets in accordance with the Plan and this Agreement.

On a monthly basis, the Plan Administrator shall provide reasonably detailed invoices to the Representatives with respect to (a) its fees and out-of-pocket expenses and (b) the fees and expenses of Plan Administrator Professionals.  In the event that neither of the Representatives objects in writing within seven (7) days after receipt of such invoice(s), the Plan Administrator promptly shall pay the invoice(s) out of the Plan Administration Trust Assets as Plan Administration Trust Expenses.  If either of the Representatives timely objects in writing, then (i) the Plan Administrator shall promptly pay the undisputed portion of the invoice(s) at the end of such period out of the Plan Administration Trust Assets as Plan Administration Trust Expenses, and the Trust Parties shall work in good faith to resolve any dispute with respect to the invoice(s) provided by the Plan Administrator; and (ii) the Plan Administrator and the objecting

Representative shall work in good faith to resolve any outstanding issues with respect to the disputed invoice(s). If the parties are unable to resolve such dispute within thirty (30) days after the date on which the objecting Representative first sent written notice of its objection, then the Plan Administrator may file a request for payment of the disputed fees and expenses with the Bankruptcy Court, with notice to the Representatives and an objection period of fourteen (14) days for the Representatives.

2.      GUC Representative Professionals

The GUC Representative may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "GUC Representative Professionals") to assist in carrying out its duties under the Plan and this Agreement, subject to an initial budget of $[1.875]1.5 million for, among other things, compensation of GUC Representative Professionals in the aggregate (the "GUC Professionals Budget"). The Plan Administrator shall prefund the GUC Professionals Budget to the GUC Representative. The GUC Representative may request an increase to the GUC Professionals Budget for cause by written request to the Plan Administrator and notice to the Equity Representative. If the Plan Administrator approves the GUC Representative's proposed increase to the GUC Professionals Budget, the Equity Representative may file an objection with the Bankruptcy Court to such increase and/or file a motion with the Bankruptcy Court seeking to obtain a commensurate increase. To the extent that the Plan Administrator denies a request for an increase in the GUC Professionals Budget, the GUC Representative may seek Bankruptcy Court approval of the request; *provided* that the Plan Administrator's and Equity Representative's right to file an objection with the Bankruptcy Court are preserved.

3.      Equity Representative Professionals

The Equity Representative may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committees) (such professionals, the "Equity Representative Professionals") to assist in carrying out its duties under the Plan and this Agreement, subject to an initial budget of $[1.875]1.5 million for, among other things, compensation of Equity Representative Professionals in the aggregate (the "Equity Professionals Budget"). The Equity Representative may request an increase to the Equity Professionals Budget for cause by written request to the Plan Administrator and notice to the GUC Representative. If the Plan Administrator approves the Equity Representative's proposed increase to the Equity Professionals Budget, the GUC Representative may file an objection with the Bankruptcy Court to such increase and/or file a motion with the Bankruptcy Court seeking to obtain a commensurate increase. To the extent that the Plan Administrator denies a request for an increase in the Equity Professionals Budget, the Equity Representative may seek Bankruptcy Court approval of the request; *provided* that the Plan Administrator's and GUC Representative's right to file an objection with the Bankruptcy Court are preserved.

G.    Plan Administration Trust Expenses Reporting

The Plan Administrator shall pay all Plan Administration Trust Expenses out of Plan Administrator Trust Assets, and shall provide the Representatives with written monthly reports of such Plan Administration Trust Expenses no later than the last business day of each month.

H.    Claims Reconciliation

1.    Plan Administrator Claims Reconciliation

The Plan Administrator, in consultation with the Representatives, shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise ~~Class 1 Other Secured Claims, Class 2 Other Priority Claims, Class 7 Chrome Other Secured Claims, Class 13 GUC Subordinated Claims (if any), any Claims filed by Converge Technology Solutions US LLC or KR Op Tech, LLC classified in Class 6 under the Plan, and any Remaining GUC Representative Reconciled Claims (if applicable)~~ **all claims and interests** (collectively, "PA Reconciled Claims"). The Plan **Administrator may delegate this authority with respect to any PA Reconciled Claim or Claims to either Representative, but only upon obtaining the consent of the other Representative for such delegation (which consent may be granted or withheld in such Representative's sole and absolute discretion). The Plan** Administrator shall also have the authority, in consultation with the Representatives, to administer and adjust (or cause the adjustment of) the Claims Register or Trust Register to reflect any settlements or compromises of Disputed PA Reconciled Claims without any further notice to or action, order or approval of the Bankruptcy Court.

The Plan Administrator shall provide the Representatives at least seven (7) days' written negative notice of any proposed settlement, allowance, estimation, or objection to Claims ~~(including, for the avoidance of doubt, any Remaining GUC Representative Reconciled Claims (if applicable))~~ in excess of $100,000 (on an individual basis or when taking similar claims together in the aggregate) (a "PA Claim Reconciliation Notice"); *provided* that to the extent the PA Claim Reconciliation Notice contemplates a Claims objection, a motion to estimate Claims or other pleading to be filed with the Bankruptcy Court, the Plan Administrator shall include the draft pleading with the PA Claim Reconciliation Notice in accordance with Section VIII.H.5 of this Agreement.  If both Representatives timely object to the proposed settlement, allowance, estimation or objection of any Claim(s) set forth in a PA Claim Reconciliation Notice, then the Plan Administrator shall not take the action proposed by the PA Claim Reconciliation Notice with respect to such disputed Claim(s).  If only one of the Representatives timely objects, then the Plan Administrator may file with the Bankruptcy Court such settlement, allowance, estimation, or objection seeking approval of the action proposed by the PA Claim Reconciliation Notice, *provided* that the Representatives' respective rights to file an objection to such motion with the Bankruptcy Court are preserved.

Beginning the first full calendar month following the Effective Date, the Plan Administrator shall provide the Representatives with a report on PA Reconciled Claims no later than the last business day of each month.

2. Final Approval of Distributions to Qualified Settlement Funds

The Plan Administrator shall be responsible for (a) distributions to holders of Allowed Class 3 U.S. Data Breach Class Settlement Claims, Class 4 U.S. Data Breach Arbitration Claims, Class 5 Canadian Data Breach Class Settlement Claims and Class 14 Pixel Class Settlement Claims, including the initial payments disclosed in the Plan Supplement filed in the Chapter 11 Cases, and (b) in consultation with the Representatives, negotiating final settlement amounts with counsel to the Holders of the U.S. Data Breach Settlement Claims, and/or objecting to the applicable Claim of the Holders of the U.S. Data Breach Settlement Claims.

The Plan Administrator shall provide no less than seven (7) days' written negative notice of any proposed settlement with U.S. Data Breach Class Counsel. If at least one Representatives timely objects in writing to the proposed settlement, then the Trust Parties and U.S. Data Breach Class Counsel shall meet and confer on a schedule for briefing and discovery related to such settlement, and the rights of all parties to file an objection with the Bankruptcy Court in respect of the schedule for briefing, schedule for discovery, or the proposed settlement shall be preserved.

3. ~~GUC Representative Claims Reconciliation~~

~~The GUC Representative, in consultation with the Plan Administrator and the Equity Representative, shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise Class 6 Chrome Commercial Claims (except for any Claims filed by Converge Technology Solutions US LLC and KR Op Tech, LLC), Class 8 Lemonaid Commercial Claims, and Class 9 Lemonaid Other General Unsecured Claims (collectively, "GUC Representative Reconciled Claims" and such process, the "GUC Reconciliation Process"); *provided* that upon the date that is [six (6)] months from the Effective Date (the "GUC Representative Reconciled Claims Deadline") any GUC Representative Reconciled Claims that the GUC Representative has not objected to, reconciled, allowed, prosecuted, negotiated, estimated, settled, or otherwise compromised in accordance with this Agreement as of the GUC Representative Reconciled Claims Deadline (if any) (the "Remaining GUC Representative Reconciled Claims") shall become the Plan Administrator's responsibility to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise in accordance with Section VIII.H.1 of this Agreement and on the same terms as the other PA Reconciled Claims, and the GUC Representative will no longer have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise such Remaining GUC Representative Reconciled Claims; *provided further* that if at any time between the Effective Date and the GUC Representative Reconciled Claims Deadline, the Plan Administrator determines in its reasonable discretion and after consultation with the GUC Representative, that the GUC Representative is not conducting the GUC Reconciliation Process in a reasonably timely manner, the Plan Administrator may file a motion with the Bankruptcy Court seeking approval to terminate the GUC Representative's authority over the GUC Reconciliation Process and for the Plan Administrator to take responsibility of the GUC Reconciliation Process.~~

~~The GUC Representative shall provide the Plan Administrator and the Equity Representative seven (7) days' written negative notice of any proposed settlement, allowance,~~

41

estimation, or objection to Claims in excess of $[50,000] (on an individual basis or when taking similar claims together in the aggregate) (a "GUC Claim Reconciliation Notice"); *provided* that to the extent the GUC Claim Reconciliation Notice contemplates a Claims objection, a motion to estimate Claims or other pleading to be filed with the Bankruptcy Court, the GUC Representative shall include the draft pleading with the GUC Claim Reconciliation Notice in accordance with Section VIII.H.5 of this Agreement.  If both the Plan Administrator and the Equity Representative timely object to the proposed settlement, allowance, estimation or objection of any Claim(s) set forth in a GUC Claim Reconciliation Notice, then the Plan Administrator shall not take the action proposed by the GUC Claim Reconciliation Notice with respect to such disputed Claim(s).  If only one of either the Plan Administrator or the Equity Representative timely objects, then the GUC Representative may file with the Bankruptcy Court such settlement, allowance, estimation or objection seeking approval of the action proposed by the GUC Claim Reconciliation Notice, *provided* that the Plan Administrator's and the Equity Representative's respective rights to file an objection to such motion with the Bankruptcy Court are preserved.

Beginning the first full calendar month following the Effective Date, the Plan Administrator shall provide the Representatives with a report on GUC Representative Reconciled Claims no later than the last business day of each month

4.    Equity Representative HoldCo Interest Reconciliation

The Equity Representative, in consultation with the Plan Administrator, shall have the authority to review, object to, reconcile, allow, prosecute, negotiate, estimate, settle, or otherwise compromise Class 12 HoldCo Interests.

Beginning the first full calendar month following the Effective Date, the Equity Representative shall provide the Plan Administrator with a report on the reconciliation of Class 12 HoldCo Interests by no later than the last business day of each month

53.    Claims Estimation Motions and Objections

The Plan Administrator and the Representatives shall have the authority to file objections and estimation motions as set forth in Section IV.B.2 of this Agreement, in accordance with the Plan and the Claims Reconciliation Procedures, with respect to the classes of Claims or Interests, as applicable, that such Trust Party has authority to reconcile under this Section VIII.H, subject to any consultation or objection rights herein.  Prior to filing any pleading related to reconciliation of Claims or Interests, the filing Trust Party must provide the other Trust Parties with a draft copy of such pleading with no less than seven (7) days' notice prior to filing.  The other Trust Parties' rights to file an objection with the Bankruptcy Court to such pleading are preserved.

I.    Plan Administrator's Authority to Pursue and Resolve Retained Causes of Action

The Plan Administrator shall have the authority, in consultation with the Representatives, to pursue, abandon, prosecute, settle, compromise, withdraw or otherwise resolve any Retained Causes of Action, including Causes of Action against any Excluded Parties, as set forth in Section IV.D. of this Agreement and in the Plan.  Prior to filing any pleading related to Retained

Causes of Action, the Plan Administrator must provide the Representatives with a draft copy of such pleading with no less than seven (7) days' notice prior to filing. The Representatives' rights to file an objection with the Bankruptcy Court with respect to the Plan Administrator's filing of any such pleading are preserved.

Without limiting the generality of the foregoing, with respect to any Retained Causes of Action with an amount recoverable or sought to be recovered greater than $250,000, the Plan Administrator shall provide seven (7) days' written negative notice to the Representatives of any abandonment, commencement, prosecution, settlement, compromise, withdrawal, or other action that the Plan Administrator proposes. If both Representatives provide timely written notice of an objection to the Plan Administrator's proposed course of action (or inaction) with respect to any Retained Cause of Action, then the Plan Administrator may not take such proposed course of action (or inaction) as to that Retained Cause of Action. If only one of the Representatives provides timely written notice of an objection to the Plan Administrator's proposed course of action (or inaction) with respect to a Retained Cause of Action, then the Plan Administrator may file with the Bankruptcy Court a motion seeking approval of the proposed course of action (or in action); *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion are preserved.

The Plan Administrator shall provide the Representatives with quarterly reports on the status of the Retained Causes of Action vested in the Trust, which reports shall contain the analysis of applicable Plan Administrator Professionals assisting the Plan Administrator with respect to Causes of Action of anticipated recoveries, likelihood of success if litigation is pursued, and anticipated next steps with regard to the Retained Cause of Action.

      J.      Other Consultation Rights of Representatives as to Actions Taken by the Trust

      1.      Books and Records

If the Plan Administrator seeks to destroy or abandon any books, records, or files that have been delivered to or created by the Trust, the Plan Administrator must provide seven (7) days' written negative notice to the Representatives. If both Representatives timely object in writing to the proposed destruction or abandonment, then the Plan Administrator must retain such books, records, or files that it proposed to destroy or abandon. If only one Representative timely objects, then the Plan Administrator may file a motion seeking Bankruptcy Court approval of the proposed destruction or abandonment, with the Representatives' rights to file an objection to any such motion of the Plan Administrator fully preserved.

If the Plan Administrator and the Representatives agree on the destruction or abandonment of any books, records, or files, then the Trust may, without the need for Bankruptcy Court approval, abandon or destroy any books, records, or files that are not necessary for the administration of the Trust.

      2.      Insurance

To the extent that the Plan Administrator determines to obtain or extend insurance coverage for the Trust, the Plan Administrator or its respective employees or agents, the Plan

Administrator shall provide no less than seven (7) days' written notice to the Representatives of the terms of any insurance coverage obtained and/or extended and the costs associated therewith.

3.      Litigation Financing and Borrowing

The Plan Administrator shall have the authority to solicit and incur litigation financing, if necessary.  The Plan Administrator shall provide seven (7) days' notice to the Representatives before incurring into any proposed litigation financing.  If, within the seven-day notice period, both Representatives provide written notice of their objection to the incurrence of the proposed litigation financing, then the Plan Administrator shall not incur such financing unless and until the Trust Parties otherwise determine it is appropriate to do so.  If only one of the Representatives provides written notice in the seven-day notice period of its objection to the proposed litigation financing, then the Plan Administrator may file with the Bankruptcy Court a motion seeking approval of the Trust's ability to incur the proposed litigation financing, *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion for are preserved.

4.      Closing of the Chapter 11 Cases

To the extent that the Plan Administrator determines to file a motion with the Bankruptcy Court seeking a final decree closing some or all of the Chapter 11 Cases, it shall provide no less seven (7) days' written negative notice to the Representatives.  If both Representatives object in writing to the closing of one or more of the Chapter 11 Cases within such notice period, then the Plan Administrator may not seek a final decree at that time with respect to the Chapter 11 Case implicated by the Representatives' objection.  If only one of the Representatives timely written notice of an objection to closing any of the Chapter 11 Cases, then the Plan Administrator may file with the Bankruptcy Court a motion seeking a final decree, *provided* that the Representatives' rights to file with the Bankruptcy Court an objection to such motion for a final decree are preserved.

5.      Amendment of the Trust Agreement

Any Trust Party proposing a material amendment to this Agreement shall provide the other Trust Parties seven (7) days' written notice thereof, together with a draft amended Trust Agreement marked to show proposed changes.  If both receiving Trust Parties timely object in writing to the proposed amendment, the proposed changes to this Agreement shall not be made. If only one of the Trust Parties receiving notice of a proposed amendment timely objects in writing, the Trust Party proposing the amendment to this Agreement may seek its approval by motion to the Bankruptcy Court, *provided* that all other Trust Parties' rights to file an objection to such motion with the Bankruptcy Court are preserved.  All proposed amendments to this Agreement remain subject to the terms and conditions specified in Section IX.J. of this Agreement.

## IX.    RELIANCE, LIABILITY, AND INDEMNIFICATION

###    A.    Reliance by the Plan Administrator and the Representatives

Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, (i) the Plan Administrator may rely and shall be protected in acting upon the advice of any Trust Professional, and/or upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Plan Administrator; and (ii) the Representatives may rely and shall be protected in acting upon the advice of their retained professionals, and/or upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by any Representative to be genuine and to have been signed or presented by the proper party or parties and shall have no liability in respect of such reliance.

###    B.    Limitation of Liability

Neither the Trust, Plan Administrator, the Representatives, nor their respective firms, companies, affiliates, partners, officers, directors, members, employees, independent contractors, designees, professionals, advisors, attorneys, representatives, disbursing agents or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with the Plan or this Agreement, other than for specific actions or omissions resulting from their willful misconduct, gross negligence or fraud found by a Final Order (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. The Plan Administrator shall enjoy all of the rights, powers, immunities, and privileges of a chapter 7 trustee. The Trust, the Plan Administrator, and the Representatives may, in connection with the performance of their functions, in their sole and absolute discretion, consult with any of the Trust Professionals or the Representatives' Professionals, as applicable, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are in writing. Notwithstanding such authority, none of the Trust, the Plan Administrator, and the Representatives shall be under any obligation to consult with any attorneys, accountants, advisors, or agents, and any determination not to do so shall not result in the imposition of liability on the Trust, the Plan Administrator, or the Representatives unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Trust, the Plan Administrator or the Representatives shall look only to the Plan Administration Trust Assets to satisfy any liability incurred by the Trust, the Plan Administrator or any Representative, respectively, in carrying out the terms of the Plan or this Agreement, and neither the Trust, the Plan Administrator nor any Representative shall have any personal obligation to satisfy such liability, except to the extent any such liability is primarily caused by such party's willful misconduct, gross negligence, or fraud.

###    C.    No Liability for Acts Approved by the Bankruptcy Court

Subject to Article VIII of this Agreement, the Plan Administrator and the Representatives shall have the right at any time to seek instructions from the Bankruptcy Court concerning the

administration of the Plan or the disposition of the Trust, the Plan Administration Trust Assets, and the Claims required to be administered by the Trust; provided that the Representatives shall only have such right to the extent they seek instruction on their own responsibilities as set forth in the Plan and in this Agreement. Neither the Plan Administrator nor the Representatives shall be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

D.　　Nonliability for Acts of Others

Except as provided herein, nothing in this Agreement, the Plan, or the Confirmation Order shall be deemed to be an assumption by the Trust, the Plan Administrator, the Representatives, the Trust Professionals, or the Representatives' Professionals of any of the liabilities, obligations, or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by the Trust, the Plan Administrator, or the Representatives to assume or accept any such liability, obligation, or duty. Any successor Plan Administrator may accept and rely upon any accounting made by or on behalf of any predecessor Plan Administrator hereunder, and any statement or representation made as to the assets comprising the Plan Administration Trust Assets or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so. None of the Plan Administrator or the Representatives shall be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue. The Plan Administrator, any Representative, or any successor thereto shall not be liable for any act or omission of any predecessor Plan Administrator or Representative, as applicable. Other than as set forth in Section IX.B of this Agreement, no provision of this Agreement shall require the Plan Administrator or any Representative to expend or risk its personal funds or otherwise incur any financial liability in the performance of his, her or its rights or powers hereunder if the Plan Administrator has reasonable grounds to believe that the payment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided.

E.　　Exculpation

The Trust, the Plan Administrator and the Representatives shall be exculpated consistent with the terms of the Plan and the Confirmation Order.

F.　　Indemnity

The Trust shall indemnify the Trust, the Plan Administrator, the Representatives and its and their respective consultants, agents, attorneys, accountants, financial advisors, estates, employees, officers, directors, principals, professionals, and other representatives, each in their respective capacity as such, and any of such Person's successors and assigns (the "Trust Indemnified Parties" and each a "Trust Indemnified Party") for, and shall hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without fraud, gross negligence, or willful misconduct on the part of the Trust Indemnified Parties (which fraud, gross negligence, or willful misconduct, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be

46

taken by the Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan, the Confirmation Order, or this Agreement, as applicable. In addition, the Trust shall, to the fullest extent permitted by law, indemnify and hold harmless the Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust or the implementation or administration of the Plan, if the Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Trust. To the extent the Trust indemnifies and holds harmless any Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Trust in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall constitute and be paid as Trust Expenses. The costs and expenses incurred in enforcing the right of indemnification in this Section shall be paid by the Trust out of the Plan Administration Trust Assets. This provision shall survive the termination of the Trust or this Agreement, and the death, dissolution, liquidation, resignation, replacement, or removal of the Plan Administrator or any Representative, as applicable.

## X.    MISCELLANEOUS PROVISIONS

### A.    Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to principles of conflicts of law.

### B.    Severability

In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by a final, non-appealable judgment or order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the full extent permitted by law.

### C.    Notices

Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally, by email to which no undeliverable notice has been received by the sender, sent by nationally recognized overnight delivery service, or mailed by first-class mail, as follows:

1.    if to the Plan Administrator:
Thomas B. Walper
Attn: Thomas B. Walper
Email: thomas.b.walper@pm.me

with a copy to:

[●]

2.      if to the GUC Representative:

Matthew Dundon

Attn: Matthew Dundon

Email: md@dundon.com

with a copy to:

[●]

3.      if to the Equity Representative:

Alan D. Halperin

Attn: Alan D. Halperin

Email: ahalperin@halperinlaw.net

with a copy to:

[●]

4.      if to any Plan Administration Trust Beneficiary, in accordance with the terms and conditions of Section IV.F of this Agreement.

D.     Headings

The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision of this Agreement.

E.     Controlling Document

In the event of any inconsistency between the Plan, the Confirmation Order and this Agreement, the Confirmation Order shall control. In the event of an inconsistency between the Plan and this Agreement, this Agreement shall control.

F.     Entire Agreement

This Agreement (including the recitals and annex hereto), the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and supersede all prior and contemporaneous agreements or understandings by and among the parties with respect to the subject matter of this Agreement.

G.     Cumulative Rights and Remedies

The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

H.＿＿＿＿Division of Trust

Under no circumstances shall the Plan Administrator have the right or power to divide the Trust unless authorized to do so by the Bankruptcy Court.

I.＿＿＿＿Cooperation

The Debtors, to the extent they continue to exist, and their professionals shall use commercially reasonable efforts to cooperate with the Trust, the Plan Administrator and the Trust Professionals to effect the transition from the Debtors to the Trust of administration of the Plan Administration Trust Assets, Claims and HoldCo Interests. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate access to (1) any reasonably available evidence and information the Plan Administrator reasonably requests in connection with the Trust's investigation, prosecution or other pursuit, or defense (as applicable) of Retained Causes of Action and objections to Disputed Claims [and Disputed Interests]; and (2) former employees or Professionals of the Debtors with knowledge (such knowledge being reasonably available) regarding any Retained Causes of Action. The Debtors shall promptly turn over or otherwise make available to the Trust at no cost to the Trust, any books and records of the Debtors held by such Professionals. The Debtors shall arrange for the Plan Administrator to receive an updated Claims Register from the Notice and Claims Agent within thirty (30) days after the Effective Date.  Any and all reasonable and documented out-of-pocket fees and expenses incurred by the Debtors or their professionals in connection with the cooperation obligations outlined herein shall constitute a Plan Administration Trust Expense and shall be paid pursuant to the terms of the Plan and this Agreement.

J.＿＿＿＿Amendment and Waiver

This Agreement may from time to time be amended, supplemented or modified by the Debtors (to the extent they continue to exist) in a written agreement with the Plan Administrator, subject to Article VIII of this Agreement, or by order of the Bankruptcy Court. Notwithstanding this Section IX.J, any amendment to this Agreement shall not be inconsistent with the Plan and the Confirmation Order and shall be consistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Plan Administration Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and Section I.B of this Agreement.

K.＿＿＿＿Meanings of Other Terms

Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities. The words herein and words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or subdivision of this Plan Administration Trust Agreement. The term "including" shall mean "including, without limitation."

49

L.      Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument. A portable document file (PDF) signature of any party shall be considered to have the same binding legal effect as an original signature.

M.      Intention of Parties to Establish a Liquidating, Grantor Trust

This Agreement is intended to form a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994 2 C.B. 684, and thus, except as set forth in Article IV.E.5 of the Plan and Sections V.D and V.E. as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code, as contemplated by the Plan, and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended to comply with such U.S. federal income tax laws, which amendments may apply retroactively.

N.      Waiver

No failure by the Trust, the Plan Administrator, or the Representatives to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

O.      Waiver of Jury Trial

Each of the parties hereto hereby waives the right to trial by jury with respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement (but not, for the avoidance of doubt, with respect to any Retained Cause of Action).

P.      Retention of Jurisdiction

Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits, and issues that may arise in connection therewith, including, without limitation, the administration and activities of the Trust, the Plan Administrator, or the Representatives, this Agreement, or any entity's obligations incurred in connection herewith, including, without limitation, any action against the Trust, the Plan Administrator, any Representative or any [Plan Administration Trust Professional], in each case in its capacity as such. Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens*, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Solely to the extent that the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Debtor's chapter 11 case, including the matters

set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction..  Subject to the proviso below, each party further irrevocably agrees that: (1) any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court; and (2) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to re-argument or reconsideration; provided, however, that notwithstanding the foregoing, the Plan Administrator shall have power and authority to bring any action in any court of competent jurisdiction (including the Bankruptcy Court) to prosecute any Retained Causes of Action assigned to the Trust.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**; the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

**CHROME HOLDING CO., CHROMECO INC., CHROME PHARMACY HOLDINGS, INC., LEMONAID COMMUNITY PHARMACY, INC., LEMONAID HEALTH, INC., LEMONAID PHARMACY HOLDINGS INC., LPHARM CS LLC, LPHARM INS LLC, LPHARM RX LLC, LPRXONE LLC, LPRXTHREE LLC, AND LPRXTWO LLC**

By: _____
Name: Joseph Selsavage
Title: Interim Chief Executive Officer and Chief Financial Officer and Accounting Officer


**PLAN ADMINISTRATOR**
By:  Thomas B. Walper, not individually, but solely as trustee of the Trust


By: _____
Name: Thomas B. Walper

52