**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| | : |
| | : Case No. 25-40976-357 |
| | : |
| In re: | : Chapter 11 |
| 23ANDME HOLDING CO., et al., | : Jointly Administered |
| | : |
| Debtors. | : Related to Docket No. 2096 |
| | : |
| | : |

**MOTION OF TERRENCE LAMONT WILLIAMS FOR LEAVE TO FILE LATE**
**PROOF OF CLAIM PURSUANT TO FEDERAL RULE OF BANKRUPTCY**
**PROCEDURE 9006(B)(1)**

Terrence Lamont Williams ("Movant" or "Claimant"), proceeding pro se, respectfully moves this Court pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) and Pioneer Investment Services Co. v. Brunswick Associates L.P., 507 U.S. 380 (1993), for leave to file a proof of claim out of time in the above-captioned Chapter 11 cases. In support of this Motion, Movant states as follows:

**PRELIMINARY STATEMENT**

This Motion is filed pursuant to Paragraph 5 of this Court's Order Enforcing Bar Date and Other Orders and Requiring Dismissal of ChromeCo, Inc. from Maryland Litigation, entered May 28, 2026 (Doc. 2207) (the "Enforcement Order"), which expressly provides: "Nothing in this Order precludes Williams from (a) requesting leave to file a proof of claim in this case out of time or (b) seeking to revoke his election to opt out of the U.S. Data Breach Settlement Class." Movant exercises the right expressly preserved by this Court.

Leave to file a late proof of claim should be granted because Movant's failure to file by the July 14, 2025 bar date was the direct result of excusable neglect. Movant received no constitutionally adequate notice of the bankruptcy proceedings, the bar date, or the sale of 23andMe's assets to TTAM Research Institute. The only bankruptcy-related communication he received before April 27, 2026 told him that no action was required. He cannot be charged with missing a deadline he was never told existed. Under the four-factor test of Pioneer

1

Investment Services Co. v. Brunswick Associates L.P., 507 U.S. 380 (1993), all relevant factors weigh in favor of granting leave.

## BACKGROUND

### I. Movant's Relationship With ChromeCo and the 2023 Data Breach

Movant Terrence Lamont Williams is an adult resident and citizen of the State of Maryland, residing at 1008 Beards Hill Rd, Aberdeen, MD 21001. In or about August 2018, Movant became a direct customer of 23andMe, Inc. -- now known as ChromeCo, Inc. -- purchasing DNA testing services and providing his biological material, genetic data, ancestral lineage, and personally identifiable information. ChromeCo maintained Movant's full name, mailing address, and email address livinmalife1983@yahoo.com in its customer database from August 2018 forward.

On or about October 6, 2023, ChromeCo announced a cyberattack and data breach in which Movant's DNA profile, ancestral records, genetic relationships, familial identifiers, lineage markers, predicted relatives, ethnic markers, and personally identifying information were compromised and exposed without authorization (the "Data Breach"). ChromeCo notified Movant of the Data Breach by email to his Maryland Yahoo email address. Movant's genetic identity -- something immutable and irreplaceable unlike a password or credit card number -- was exposed to unknown actors. Movant's genealogical research was not recreational. It was his effort to reconstruct ancestral identity deliberately erased through American slavery. The Data Breach compromised an irreplaceable biological record of his history and heritage.

Movant attempted to delete his account and genetic data from ChromeCo's systems following the Data Breach announcement. His attempts were unsuccessful -- ChromeCo's systems were down and overwhelmed, and Movant could not complete the deletion process.

### II. Movant Received No Notice of the Bankruptcy Proceedings or the Bar Date

On March 23, 2025, ChromeCo and eleven affiliated entities filed voluntary petitions for Chapter 11 bankruptcy protection in this Court. Movant received no notice of this filing. On April 30, 2025, this Court entered the Bar Date Order (Doc. 349), establishing July 14,

2025 as the deadline for filing proofs of claim. Movant received no notice of the Bar Date Order or the July 14, 2025 deadline.

The Plan Administration Trust claims that Kroll Restructuring Administration LLC emailed Movant a "Notice of Instruction" about bar dates on May 10, 2025. Movant has conducted a thorough search of his entire Yahoo Mail account -- including his inbox, spam folder, trash, and all archived folders going back to May 2025 -- and found no such email. It was never received. As established by Movant's sworn Declaration filed in these proceedings as Docket No. 2150-1 and attached hereto as **Exhibit C**, no email from Kroll or any related party containing bar date information arrived in Movant's email account at any time prior to April 27, 2026.

The only bankruptcy-related email Movant ever received before April 27, 2026 was sent on June 12, 2025 from 23andmebankruptcynoticing@noticing.ra.kroll.com, a true and correct copy of which is attached hereto as **Exhibit A**. That email expressly stated: "You are not required to take any action, and this notice is being sent for informational purposes only." It further stated that the notice did not apply to former customers who no longer had an account. No reasonable person receiving that email would have understood that they were required to file a proof of claim in a federal bankruptcy court by a specific deadline or permanently forfeit their legal rights

Movant also never received the bankruptcy solicitation materials distributed on October 9, 2025 or any Third-Party Release opt-out form. He received no notice of the sale hearing, no notice of the Confirmation Order entered December 5, 2025, and no notice of any event in these proceedings prior to April 27, 2026, when counsel for the Plan Administration Trust personally emailed him about a scheduled hearing.

Because Movant received no adequate notice of the bankruptcy proceedings or the bar date, he did not file a proof of claim by July 14, 2025. He had no knowledge that a bar date existed. He cannot be charged with missing a deadline that was never communicated to him.

3

### III. Movant's Good Faith Actions to Protect His Rights

Upon learning of the Data Breach in October 2023, Movant took immediate steps to protect himself, including attempting to delete his account and data, monitoring for potential misuse, and researching his legal options.

On December 5, 2025, Movant timely submitted the class action settlement opt-out form administered by Kroll Settlement Administration LLC -- twenty-four days before the December 29, 2025 deadline -- exercising his right to pursue independent claims rather than participate in the class settlement, a true and correct copy of which is attached hereto as **Exhibit B**. Kroll confirmed receipt of that opt-out on December 16, 2025, referencing Claim ID 83273A4YDVX14.

On December 12, 2025, Movant filed a civil complaint in the United States District Court for the District of Maryland, Case No. 1:25-cv-04120-JRR, asserting seventeen causes of action arising from the Data Breach and the transfer of his genetic identity to TTAM Research Institute. Movant filed this action in good faith, based on his reasonable belief that he had preserved his right to pursue independent claims by timely opting out of the class settlement. At the time of filing, Movant had no knowledge of any bankruptcy bar date, any bankruptcy gating provision, or any requirement to seek Bankruptcy Court authorization before filing a civil lawsuit.

On April 27, 2026, Movant first received notice of the Plan Administration Trust's Motion to Enforce (Doc. 2096) when counsel for the Trust personally emailed him less than 72 hours before a scheduled hearing. Movant immediately engaged with these proceedings, filed a detailed Objection (Doc. 2150) and sworn Declaration, filed a Motion for Leave and Sur-Reply (Doc. 2163), and appeared at the May 11, 2026 hearing. Movant has acted diligently and in good faith at every stage once he became aware of the proceedings.

### ARGUMENT

**I. The Legal Standard for Leave to File a Late Proof of Claim**

Bankruptcy Rule 9006(b)(1) provides that a court may extend the time for performing an act governed by the Bankruptcy Rules after the time has expired if the failure to act was the

4

result of excusable neglect. Fed. R. Bankr. P. 9006(b)(1). The Supreme Court established the governing standard for excusable neglect in Pioneer Investment Services Co. v. Brunswick Associates L.P., 507 U.S. 380 (1993).

Under Pioneer, the determination of what constitutes excusable neglect is an equitable inquiry that takes into account all relevant circumstances. 507 U.S. at 395. The Court identified four factors courts must consider: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. Id.

The Supreme Court in Pioneer emphasized that the concept of excusable neglect is a flexible one that may encompass delays caused by inadequate notice. Id. at 392. This Court has applied the Pioneer framework in Chapter 11 cases. In re Laclede Cab Co., 186 B.R. 688 (Bankr. E.D. Mo. 1995) (applying Pioneer and treating ineffective or unclear notice as a major factor favoring late filing; emphasizing poor quality of notice and limited prejudice to the case); In re Peabody Energy Corp., 579 B.R. 208 (Bankr. E.D. Mo. 2017) (creditors entitled to adequate notice of claims deadline; creditor who does not receive proper notice is not bound by deadline).

Rule 9006(b)(1) and the Pioneer excusable neglect framework apply in this Chapter 11 case. Courts in the Eighth Circuit have consistently applied Pioneer in Chapter 11 bar date disputes. In re Farmland Indus., Inc., 318 B.R. 159 (Bankr. W.D. Mo. 2004); In re Laclede Cab Co., 186 B.R. 688 (Bankr. E.D. Mo. 1995); In re Peabody Energy Corp., 579 B.R. 208 (Bankr. E.D. Mo. 2017). The more restrictive Rule 3002 framework that limits excusable neglect applies only in Chapter 12 and Chapter 13 cases -- not in Chapter 11. This case is Chapter 11.

Courts have consistently recognized that failure to receive notice of a bar date constitutes a compelling basis for finding excusable neglect. In re Enron Corp., 419 F.3d 115, 130 (2d Cir. 2005); Matter of Papp Int'l, Inc., 189 B.R. 939 (Bankr. D. Neb. 1995) (excusable neglect found where creditor received confusing signals about whether it needed to act and confusion was not fairly attributable to the creditor). Critically, where the notice failure was caused by the debtor -- not the creditor -- courts treat the reason for delay as outside the

5

creditor's reasonable control. Hairopoulos, In re, 118 F.3d 1240 (8th Cir. 1997) (focus is on debtor's duty to give notice of relevant dates, not on whether creditor could have discovered information independently).

This Court has expressly acknowledged Movant's ability to seek this relief and cited Pioneer as the governing standard. Enforcement Order (Doc. 2207) at 5. All four Pioneer factors weigh in favor of granting leave.

## II. All Four Pioneer Factors Favor Granting Leave

### A. Factor One: No Danger of Prejudice to the Debtor

The first Pioneer factor asks whether granting leave to file a late claim would prejudice the debtor or the estate. Pioneer, 507 U.S. at 395. This factor weighs strongly in Movant's favor.

First, this Court itself confirmed at the May 11, 2026 hearing that funds remain in the estate available for distribution. The existence of remaining estate funds means that allowing Movant to file a late proof of claim does not automatically prejudice existing creditors -- there are funds from which a legitimate claim could be paid.

Second, the Plan Administration Trust was aware of Movant's claims and his Maryland lawsuit from at least April 16, 2026, when it filed the Motion to Enforce specifically targeting that litigation. The Trust cannot claim surprise or prejudice from a claimant whose claims it has been actively litigating against for over a month.

Third, Movant's claim arises from the 2023 Data Breach -- an event that was central to the bankruptcy itself, that has been addressed extensively in these proceedings, and about which the Bankruptcy Court entered extensive findings. The claim is not a surprise to the estate or to the Trust.

Fourth, granting leave does not disturb the distribution scheme for other creditors who filed timely claims. It simply adds Movant to the pool of claimants whose claims will be evaluated on their merits. The danger of prejudice is minimal.

6

**B. Factor Two: The Length of Delay Is Reasonable Under the Circumstances**

The second Pioneer factor examines the length of the delay and its potential impact on judicial proceedings. Pioneer, 507 U.S. at 395. This factor also favors Movant.

Movant first learned of the bankruptcy proceedings on April 27, 2026 -- when counsel for the Trust personally emailed him less than 72 hours before a scheduled hearing. He filed his Objection promptly. He appeared at the May 11, 2026 hearing. He files this Motion within days of this Court's Enforcement Order expressly inviting it. From the moment Movant had any actual knowledge of these proceedings, he has acted with speed and diligence.

While the bar date of July 14, 2025 has long passed, the length of the delay is entirely attributable to the notice failure -- not to any indifference or neglect by Movant. The cases that deny late claims based on length of delay typically involve creditors who knew of the bankruptcy and simply failed to act. See In re Enron Corp., 419 F.3d at 130. Movant is in the opposite situation: he had no knowledge of the bankruptcy whatsoever.

The impact on judicial proceedings is also limited. This Court has already conducted extensive proceedings relating to the Data Breach claims. Movant's proof of claim raises no novel factual issues that have not already been addressed in these cases.

**C. Factor Three: The Reason for the Delay Was Entirely Outside Movant's Control**

The third Pioneer factor -- the reason for the delay, including whether it was within the movant's reasonable control -- is the most important factor and weighs most powerfully in Movant's favor. Pioneer, 507 U.S. at 395.

Movant missed the bar date for one reason and one reason only: he received no constitutionally adequate notice of the bar date. ChromeCo had Movant's full name, mailing address, and email address in its customer database since August 2018. Under controlling Eighth Circuit authority, ChromeCo was required to provide Movant -- as a known creditor -- with actual written notice of the bankruptcy and the bar date. Dahlin v. Lyondell Chem. Co., 881 F.3d 599 (8th Cir. 2018); Hairopoulos, In re, 118 F.3d 1240 (8th Cir. 1997). The debtor bears the burden of proving adequate notice. Id. A known creditor is entitled not merely to awareness that a bankruptcy exists but to the specific notices the rules require -- including the

bar date. In re Arch Wireless, Inc., 534 F.3d 76 (1st Cir. 2008); In re J.A. Jones, Inc., 492 F.3d 242 (4th Cir. 2007). General awareness of the bankruptcy is not enough.

The May 10, 2025 bar date email that the Trust claims to have sent was never received by Movant. His thorough sworn search of his complete Yahoo Mail account confirms this. But critically -- the only email Movant did receive affirmatively told him no action was required. This is not merely the absence of notice. It is misleading notice. Courts have found excusable neglect when a creditor received confusing signals about whether it needed to act, where the confusion was not fairly attributable to the creditor. Matter of Papp Int'l, Inc., 189 B.R. 939 (Bankr. D. Neb. 1995) (excusable neglect found despite substantial lateness where creditor received confusing signals and confusion was not the creditor's fault). An email from ChromeCo's own noticing agent stating that the recipient was not required to take any action -- when action was in fact required by July 14, 2025 -- is precisely the kind of confusing signal courts have recognized as a basis for excusable neglect. Movant reasonably relied on that statement.

Furthermore, Hairopoulos teaches that the focus of the notice inquiry is on the debtor's duty to give notice of relevant dates -- not on whether the creditor could have discovered information independently. 118 F.3d at 1244. Movant had no duty to investigate a bankruptcy he did not know existed. ChromeCo had a duty to notify him. It failed that duty. The debtor cannot satisfy its notice obligation by sending an email telling customers no action is required and then argue that customers who relied on that email are barred.

The reason for Movant's delay was entirely outside his reasonable control. Pioneer's excusable neglect standard was designed for exactly this situation -- where the failure to act was caused not by indifference or carelessness but by circumstances beyond the creditor's control. 507 U.S. at 388. Courts have repeatedly recognized that failure to receive adequate notice of a bar date constitutes excusable neglect. In re Enron Corp., 419 F.3d 115, 130 (2d Cir. 2005); In re Laclede Cab Co., 186 B.R. 688 (Bankr. E.D. Mo. 1995) (ineffective or unclear notice treated as major factor favoring late filing); In re Peabody Energy Corp., 579 B.R. 208 (Bankr. E.D. Mo. 2017) (creditor who does not receive proper notice is not bound by deadline). The third Pioneer factor strongly favors Movant.

8

**D. Factor Four: Movant Has Acted Consistently in Good Faith**

The fourth Pioneer factor asks whether the movant acted in good faith. Pioneer, 507 U.S. at 395. Movant's conduct throughout this entire matter reflects good faith at every stage.

Movant timely opted out of the class action settlement on December 5, 2025 -- exercising the precise right the settlement process preserved for individuals who wished to pursue independent claims. He filed his Maryland civil action on December 12, 2025, in good faith reliance on the belief that he had properly preserved his rights. He did not file his lawsuit to circumvent bankruptcy proceedings he was unaware of -- he filed it because he was unaware those proceedings existed.

When Movant learned of these proceedings on April 27, 2026, he did not ignore them or delay. He immediately engaged, filing a detailed Objection, a sworn Declaration, and a Motion for Leave and Sur-Reply. He appeared at the May 11, 2026 hearing. He files this Motion promptly after this Court expressly invited it in the Enforcement Order.

There is no evidence of bad faith, manipulation, or strategic delay at any point in Movant's conduct. He has been a responsible and diligent participant in every proceeding he has had notice of. The fourth Pioneer factor strongly favors Movant.

### III. Movant's Claims Are Substantial and Meritorious

The Court should also consider that Movant's claims are substantial, well-documented, and arise from one of the largest genetic data breaches in American history. Movant asserts claims including negligence, breach of contract, invasion of privacy, breach of fiduciary duty, unjust enrichment, conversion, fraudulent inducement, violation of the Maryland Consumer Protection Act, and genetic identity theft -- seventeen causes of action supported by documented evidence.

The nature of the harm Movant suffered is unlike ordinary financial claims. His DNA, ancestral records, genetic relationships, familial identifiers, lineage markers, and biological identity were exposed and then transferred to a third party without his knowledge or individual consent. This is immutable, irreplaceable information that cannot be recovered, replaced, or remedied. The genetic data breach caused harm of a nature and magnitude that this Court and the broader public have recognized as significant.

Allowing Movant to participate in the bankruptcy distribution through a proof of claim would serve the fundamental equitable purpose of the bankruptcy process -- ensuring that creditors with legitimate claims have a fair opportunity to recover. Pioneer's equitable framework exists precisely to prevent the inequity of permanently barring claims from creditors who had no meaningful opportunity to participate.

### IV. The Nature of Movant's Claim

Movant's proof of claim arises from the October 2023 Data Breach and ChromeCo's failure to adequately protect his genetic data. Movant asserts a general unsecured claim for damages including:

1. Compensatory damages for the compromise and unauthorized exposure of his immutable genetic identity, ancestral records, and biological information;

2. Damages for emotional distress arising from the permanent loss of control over irreplaceable personal information of singular personal, cultural, and genealogical significance;

3. Damages for time spent on post-breach mitigation efforts, including attempted account deletion, monitoring for misuse, and investigation of his rights;

4. Damages for ChromeCo's breach of its express contractual promises that privacy was its "number one priority" and that it employed industry-leading security measures; and

5. Such other and further damages as are proven at the time of claim allowance.

Movant reserves the right to submit a formal proof of claim on Official Form 410 once leave is granted, setting forth the full nature and amount of his claim.

### CONCLUSION

For the foregoing reasons, Movant Terrence Lamont Williams respectfully requests that this Court grant leave to file a proof of claim out of time in the above-captioned Chapter 11 cases. All four Pioneer factors favor granting leave: there is no danger of prejudice to the estate, the delay was reasonable under the circumstances, the reason for the delay -- complete non-receipt of bar date notice -- was entirely outside Movant's control, and Movant has acted in good faith throughout.

This Court expressly preserved Movant's right to seek this relief in Paragraph 5 of the Enforcement Order. Movant exercises that right now. The interests of justice, equity, and due process require that a creditor who received no adequate notice of a bar date be given the opportunity to participate in the proceedings that will permanently affect his rights.

Date: May 30, 2026.                                          Respectfully submitted,

Terrence Williams
1008 Beards Hill Rd
Aberdeen, MD 21001
Phone: (443) 206-5062
Email: livinmalife1983@yahoo.com
*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, I caused a true and correct copy of the foregoing "**Motion Of Terrence Lamont Williams For Leave To File Late Proof Of Claim Pursuant To Federal Rule Of Bankruptcy Procedure 9006(B)(1)**" to be served via electronic mail upon the following counsels of record for the Plan Administration Trust:

Terrence Williams
1008 Beards Hill Rd
Aberdeen, MD 21001
Phone: (443) 206-5062
Email: livinmalife1983@yahoo.com
*Plaintiff, Pro Se*