**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.),[1]<br><br>Wind-Down Debtor. | Case No. 25-40976-357<br>Chapter 11<br><br><br>Response Deadline:  June 24, 2026<br>Hearing Date:  July 1, 2026<br>Hearing Time:  10:00 a.m. (prevailing Central Time)<br>Hearing Location:  Courtroom 5 North |

**THE PLAN ADMINISTRATION TRUST'S MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT BY AND
AMONG THE PLAN ADMINISTRATION TRUST, THE WIND-DOWN
DEBTORS, AND U.S. DATA BREACH SETTLEMENT CLASS REPRESENTATIVES
AND (II) GRANTING RELATED RELIEF**

The Plan Administration Trust,[2] on behalf of the wind-down debtor in the above-captioned case (following the effective date of the Plan, the "<u>Wind-Down Debtor</u>" and, prior to the effective date of the Plan, the "<u>Debtor</u>" and, together with its affiliated debtors, the "<u>Debtors</u>"), respectfully states as follows in support of this motion (the "<u>Motion</u>"):

**<u>Relief Requested</u>**

1.      The Plan Administration Trust seeks entry of an order (the "<u>Proposed Order</u>")[3] (a) approving and authorizing the Plan Administration Trust to enter into and perform under the

---

[1]    The Wind-Down Debtor's service address for purposes of these chapter 11 cases is:  490 Post St., Suite 500 PMB 2065, San Francisco, CA 94102 United States.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Modified Fifth Amended Joint Plan of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1655] (the "<u>Plan</u>").

[3]    A copy of the Proposed Order will be made available on the website of the Wind-Down Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

settlement agreement attached hereto as **Exhibit A** (the "Settlement Agreement") by and among the Plan Administration Trust, the Wind-Down Debtors, and representatives of U.S. persons whose personal information was impacted by the Cyber Security Incident ("Settlement Class Representatives" and, together with the Plan Administration Trust and the Wind-Down Debtors, the "Parties") and (b) granting related relief.

2.      In support of this Motion, the Plan Administration Trust submits the *Declaration of Thomas B. Walper in Support of the Plan Administration Trust's Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement by and Among the Plan Administration Trust, the Wind-Down Debtors, and U.S. Data Breach Settlement Class Representatives* filed contemporaneously herewith.

### Preliminary Statement[4]

3.      Since the Effective Date, the Plan Administration Trust has made substantial progress in administering claims, including the successful resolution of more than 255,860 Claims. Notwithstanding these significant efforts, thousands of Claims remain unresolved, including the determination of the Allowed amount of the Cyber Class POC.  Given the magnitude of the recovery contemplated on account of the Cyber Class POC under the U.S. Data Breach Class Settlement Agreement, prompt resolution of the Cyber Class POC is essential for the Plan Administration Trust to bring the claims reconciliation process to an orderly conclusion and, in turn, to effectuate distributions to stakeholders without further delay.

4.      On January 30, 2026, the Court entered the Final Settlement Approval Order approving, on a final basis, the U.S. Data Breach Class Settlement, which caps the aggregate cash distributions on account of the Cyber Class POC at $50 million, while preserving the Plan

---

[4]   Capitalized terms used but not defined in this section shall have the meanings ascribed to them elsewhere in this Motion or the Plan.

Administration Trust's right to contest any Allowed amount in excess of $30 million.  With that framework in place, the Parties engaged in arm's length, good-faith discussions to fix the Allowed amount of the Cyber Class POC.  Those discussions culminated in the Parties' execution of the Settlement Agreement that, subject to Court approval, will (a) implement a consensual resolution of all outstanding issues related to the Cyber Class POC; (b) avoid the cost, delay, and uncertainty attendant to any litigation regarding the Cyber Class POC, and (c) expedite distributions to individual customers entitled to recoveries in the U.S. Data Breach Class Settlement.

5. Under the Settlement Agreement, the Plan Administration Trust will pay a total of $46,750,000 *less* amounts previously paid on account of the Cyber Class POC,[5] in full and final satisfaction and resolution of the Cyber Class POC.  This amount represents a $3.25 million reduction from the maximum recovery contemplated under the U.S. Data Breach Class Settlement.  In exchange for that reduction and to avoid the delay, risk, and uncertainty of litigation, the Plan Administration Trust has agreed to pay the remaining balance on the Cyber Class POC within five business days after entry of the Proposed Order in full and final satisfaction of the Cyber Class POC.  In discussions with U.S. Data Breach Class Counsel, payment of the remaining balance on the Cyber Class POC was a necessary condition to achieve a settlement and avoid litigation of this claim.[6]

6. In the Plan Administration Trust's business judgment, the resolution embodied in the Settlement Agreement is in the best interests of the Plan Administration Trust and its

---

[5]   Under the terms of the Settlement Agreement, the Plan Administration Trust will pay a total lump sum of $32,458,420.19, which amount reflects $46,750,000 *less* $14,291,579.81 of payments previously disbursed to Kroll on account of the Cyber Class POC (approximately $13 million of which was funded from proceeds of the Cyber Insurance Policies in accordance with the Plan).

[6]   Other than fixing the Allowed amount of the Cyber Class POC within the already-approved range in the U.S. Data Breach Class Settlement Agreement, the U.S. Data Breach Class Settlement remains in full effect pursuant to the Court's Final Settlement Approval Order

beneficiaries, and falls well within the range of reasonableness. The Cyber Class POC seeks approximately $48 billion in alleged damages arising from the Cyber Security Incident on behalf of the U.S. Data Breach Settlement Class. Efforts to litigate the Allowed amount of that Claim would expose the estates to protracted, high-stakes litigation lasting months, if not years, requiring extensive discovery and the expenditure of millions of dollars in professional fees and related costs—resources that would be far better preserved for the benefit of stakeholders than consumed in what is essentially a $20M dispute (*i.e.*, the delta between the U.S. Data Breach Class Settlement Cap and the U.S. Data Breach Class Minimum Allowed Claim). Settling the Cyber Class POC Issues for an aggregate payment of $46,750,000.00 also represents an equitable outcome for all Parties, particularly when considering the District Court's finding that the $30 million prepetition settlement amount reflected a modest recovery given the scope of the data breach, but was nevertheless reasonable given the Company's desperate financial condition. *See* MDL No. 3098, Docket No. 160, at 30 ("Given 23andMe's dire financial situation, settling the case sooner rather than later was a reasonable approach by [U.S. Data Breach] Class Counsel, and the amount of the settlement—***though a fraction of the maximum value of the case***—was also reasonable.") (emphasis added).

7.      The Settlement Agreement also satisfies the Eighth Circuit's standard for approval under Bankruptcy Rule 9019. *First,* the proposed settlement avoids the inherent uncertainty and cost of litigating the Cyber Class POC Issues. *Second*, it preserves estate resources and allows the Plan Administration Trust to direct its attention toward completing its claims reconciliation process and maximizing distributions to stakeholders. *Third*, the settlement achieves a recovery for the U.S. Data Breach Settlement Class within the parameters contemplated in the U.S. Data Breach Class Settlement while providing meaningful savings for

the estate.  In short, given the time, expense, and uncertainty of litigation relative to the potential incremental benefit, the Settlement Agreement is fair, equitable, and in the best interests of the Plan Administration Trust and its beneficiaries.

8.       For these reasons, and as set forth more fully below, the Plan Administration Trust respectfully requests that the Court approve the Settlement Agreement and enter the Proposed Order.

## Jurisdiction

9.       The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Plan Administration Trust consents to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.      The bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

### I.       The Chapter 11 Cases

12.      On March 23, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

13.      On December 9, 2025, the Wind-Down Debtor filed a notice [Docket No. 1709], disclosing that the effective date of the Plan occurred on December 5, 2025.

5

14.     On January 21, 2026, the Court entered an order [Docket No. 1843] closing the chapter 11 cases of all of the Wind-Down Debtor entities except for Wind-Down Debtor Chrome Holding Co., which order the Court amended on January 22, 2026 [Docket No. 1845].

## II.     Factual Background of the Settlement Agreement

15.     In October 2023, the Company identified and disclosed a data breach (the "Cyber Security Incident") that resulted in numerous actions being filed or otherwise threatened against the Debtors as well as the initiation of various governmental investigations.  After the Debtors' announcement of the Cyber Security Incident, over 40 putative class action lawsuits were filed against certain of the Debtors asserting claims for various common law torts and various statutory claims.  On December 21, 2023, the Company filed a Motion to Transfer Actions to the Northern District of California Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation (JPML), MDL No. 3098. On April 11, 2024, the JPML centralized the litigation before the Honorable Edward M. Chen of the Northern District of California (the "District Court"), where dozens of putative class action lawsuits were pending, as *In Re: 23andMe, Inc. Customer Data Security Breach Litigation*, No. 3:24-md-03098-EMC (N.D. Cal.) ("MDL").[7]

16.     The District Court considered applications for the appointment of interim co-lead counsel under Fed. R. Civ. P. 23(g) and held a hearing on the motions on June 3, 2024.  On June 5, 2024, the District Court appointed Norman E. Siegel of Stueve Siegel Hanson LLP, Gayle M. Blatt of Casey Gerry Francavilla Blatt LLP, and Cari Campen Laufenberg of Keller Rohrback L.L.P. as interim co-lead counsel (collectively, "U.S. Data Breach Class Counsel").  *See* MDL No. 3098, Docket No. 62.  Upon appointment, U.S. Data Breach Class Counsel filed a 186-page

---

[7]     On February 18, 2026, the District Court entered an order dismissing the MDL with prejudice.  *See* MDL No. 3098, Docket No. 189.

consolidated complaint (the "Complaint") on June 26, 2024, alleging 40 causes of action.  *See* MDL No. 3098, Docket No. 78.

17.     On April 30, 2025, the Court entered the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof, and (II) Granting Related Relief* [Docket No. 349] (the "Bar Date Order"), establishing certain dates and deadlines for filing Proofs of Claim in these chapter 11 cases, including July 14, 2025 as the deadline for submitting claims arising from or related to the Cyber Security Incident (the "Cyber Security Incident Bar Date").  The Bar Date Order contemplated U.S. Data Breach Class Counsel's ability to file a class proof of claim (the "Cyber Class POC") on behalf of the U.S. Data Breach Settlement Class, *provided* that the allowance and validity of such class proof of claim remain subject to certification of the U.S. Data Breach Settlement Class pursuant to rule 7023 of the Bankruptcy Rules.

18.     On August 4, 2025, the Debtors and the Settlement Class Representatives executed the U.S. Data Breach Class Settlement Agreement, which contemplated, among other things, authorization for U.S. Data Breach Class Counsel to file the Cyber Class POC on behalf of the U.S. Data Breach Settlement Class; *provided* that notwithstanding the filed amount of the Cyber Class POC that is Allowed following adjudication or administration of the claim in the Chapter 11 Cases, the aggregate cash distributions to be made on account of the Cyber Class POC shall not exceed $50 million (the "U.S. Data Breach Class Settlement Cap"); *provided further* that the Debtors' right to contest the Allowed amount of the Cyber Class POC is fully preserved but solely with respect to amounts in excess of $30 million (the "U.S. Data Breach Class Minimum Allowed Claim").

19.     On January 30, 2026, the Court entered an order approving the U.S. Data Breach Class Settlement on a final basis. *See Order Granting U.S. Data Breach Class Counsel's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, Expenses and Service Awards* [Docket No. 1875] (the "Final Settlement Approval Order"). After entry of the Final Settlement Approval Order, the Parties engaged in arm's length, good-faith discussions to resolve the Allowed amount of the Cyber Class POC (the "Cyber Class POC Issues"), which culminated in the Parties' execution of the Settlement Agreement.

## III.     The Proposed Settlement Agreement

20.     The material terms of the Settlement Agreement are set forth below:[8]

   a. **Settlement Terms:** Subject to the conditions set forth in the Settlement Agreement, the Parties agree as follows:

      i. The effectiveness of the Settlement Agreement is conditioned upon the Court entering a final, non-appealable order approving the Settlement Agreement in accordance with Federal Rule of Bankruptcy Procedure 9019 (the "Approval Order"). Following execution of the Settlement Agreement, the Plan Administration Trust shall promptly file a motion pursuant to Bankruptcy Rule 9019 with the Court requesting that the Court enter the Approval Order;

      ii. Within five business days following the Court's entry of the Approval Order, the Plan Administration Trust shall pay to Kroll Settlement Administration ("Kroll"), on behalf of the U.S. Data Breach Settlement Class, by wire transfer of immediately available funds to an account designated by Kroll, a total lump sum of $32,458,420.19 (the "Settlement Amount"), which represents a total settlement amount of $46,750,000.00 *less* amounts paid to Kroll in respect of the Cyber Class POC to date (*i.e.*, $14,291,579.81), in full and final satisfaction, compromise, settlement and release of, and in exchange for, the Cyber Class POC;

      iii. At U.S. Data Breach Class Counsel's direction, Kroll is further authorized to distribute the full $46,750,000.00 in accordance with the U.S. Data Breach Class Settlement and as permitted by the Final Settlement Approval Order upon entry of the Approval Order;

---

[8]     The summary set forth herein is qualified in its entirety by the terms of the Settlement Agreement, and the terms of the Settlement Agreement shall control in the event of a conflict.

8

iv. Following the Plan Administration Trust's payment in full of the Settlement Amount, the Claims and Noticing Agent will update the Claims Register to reflect the Cyber Class POC as satisfied in full; and

v. The Settlement Class Representatives shall have the right to terminate the Settlement Agreement upon written notice to the Plan Administration Trust if (a) the Approval Order is not entered by the Court within 60 days after the date of execution of the Settlement Agreement (*i.e.*, no later than August 8, 2026) or (b) the Court denies the Approval Order.  The Plan Administration Trust shall have the right to terminate the Settlement Agreement upon written notice to the Settlement Class Representatives if (x) the Court denies the Approval Order or (y) at any time prior to entry of the Approval Order, the Settlement Class Representatives take any action adverse to the Plan Administration Trust in the Chapter 11 Cases or otherwise.  Upon any such termination, or if the Settlement Agreement is not consummated in accordance with the terms outlined therein, the Settlement Agreement shall be null and void and of no further force or effect, and any and all obligations imposed on the Parties pursuant to the Settlement Agreement shall be terminated without prejudice to the Parties' respective rights, claims, and/or defenses.  However, the obligations of the Parties under the U.S. Data Breach Class Settlement shall remain in full force and effect.

b. **Mutual Releases**.

i. Upon Kroll's receipt of the Settlement Amount in full, U.S. Data Breach Class Counsel, the Settlement Class Representatives and members of the U.S. Data Breach Settlement Class who have not opted out of the U.S. Data Breach Class Settlement, shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge (a) the Debtors, the Wind-Down Debtors, their estates, any successors thereto, including the Plan Administration Trust, and each of their former or current members, shareholders, affiliates, related entities, officers, directors, managers, employees, principals, successors, predecessors, and representatives and (b) Various Underwriters at Lloyds subscribing to Cyber and Liability Policy UMR B1510CY2300014, Allied World Specialty Insurance Company, Houston Casualty Company and Landmark American Insurance Company that issued certain cyber insurance policies to the Debtor for the period from May 1, 2023 through May 1, 2024 (the "Debtor Released Parties") for any claims arising out of the Cyber Security Incident that the Cyber Class Released Parties (as defined below) can, shall, or may have against the Debtor Released Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future, that have not already been released under the terms of the Plan or the U.S. Data Breach Class Settlement.

ii. Upon Kroll's receipt of the Settlement Amount in full, the Plan Administration Trust, the Debtors, and the Wind-Down Debtors, as applicable, shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Settlement Class Representatives, U.S. Data Breach Class Counsel, and members of the U.S. Data Breach Settlement Class who have not opted out of the U.S. Data Breach Class Settlement, and each of their respective members, affiliates, officers, directors, managers, employees, principals, successors, predecessors, and representatives (the "Cyber Class Released Parties") from any and all claims arising out of the Cyber Security Incident that the Debtor Released Parties can, shall, or may have against the Cyber Class Released Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future, that have not already been released under the terms of the Plan or the U.S. Data Breach Class Settlement. The foregoing release includes a release of any right to seek disgorgement or avoidance of the transfers authorized and releases granted hereby, regardless of subsequent rulings of the Court in the Debtors' bankruptcy cases.

**Basis for Relief Requested**

**I.     The Court Should Approve the Settlement Agreement Pursuant to Bankruptcy Rule 9019**

21.     Bankruptcy Rule 9019 grants the Court authority to approve the settlement of claims and controversies after notice and a hearing. Specifically, Bankruptcy Rule 9019(a) provides the following:

On the [debtor's] motion and after notice and a hearing, the court may approve a compromise or settlement. Notice must be given to: all creditors; the United States trustee . . . and any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

22.     Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. In describing the standard for evaluating a settlement under Bankruptcy Rule 9019, the United States Court of Appeals for the Eighth Circuit has stated that a settlement need not be "the best result obtainable," but rather, the

10

standard for evaluation of a settlement is whether "the settlement is fair and equitable and in the best interests of the estate." *Tri-State Fin., LLC* v. *Lovald*, 525 F.3d 649, 654 (8th Cir. 2008) (citing *In re Martin*, 212 B.R. 316, 319 (8th Cir. BAP 1997)) (internal quotation marks omitted). The evaluating court "need only determine that [the] settlement does not fall below the lowest point in the range of reasonableness." *Id.*; *see also In re Martin*, 212 B.R. at 319 ("The court does not substitute its judgment for that of the trustee, but reviews the issues to see if the settlement falls below the lowest point of reasonableness.").

23. In determining the range of reasonableness, the Court need not decide the numerous issues of law and fact raised by the settlement. *See Cosoff* v. *Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman* v. *Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In other words, the Court does not need to conduct a "mini-trial" of the underlying facts and merits; it needs to only evaluate those facts that are necessary to allow it to assess the settlement and to make an independent judgment about the settlement. *In re Hancock-Nelson Mercantile Co., Inc.*, 95 B.R. 982, 995–96 (Bankr. D. Minn. 1989) ("However, *TMT Trailer Ferry* does not impose upon this Court the obligation to compel the full trial record, or the burden of reviewing that record—or even the duty to conduct a 'mini-trial.' . . . All that is necessary is . . . the production of sufficient facts which would permit a reasoned judgment that a controversy should be settled under the terms proposed."); *see also In re Martin*, 212 B.R. at 319 (B.A.P. 8th Cir. 1997) ("[I]t is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement."); 10 Collier on Bankruptcy ¶ 9019.02 (16th 2018) ("The *TMT* rule does not require a bankruptcy judge to hold a full evidentiary hearing or even a "mini-trial" before a compromise can be approved.

11

Otherwise, there would be no point in compromising; the parties might as well go ahead and try the case."). Ultimately, "[a] decision to approve or disapprove a settlement under [Bankruptcy] Rule 9019 is within the discretion of the bankruptcy judge." *In re Racing Servs., Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005).

24.     To arrive at the range of reasonableness, the evaluating court should consider the following four factors (the "*TMT* Factors") set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) to determine the reasonableness of a settlement, which were relied on by the Eighth Circuit in *Lovald*: "(A) the probability of success in the litigation; (B) the difficulties, if any to be encountered in the matter of collection; (C) the complexity of the litigation involved, a[n]d the expense, inconvenience and delay necessarily attending it; and (D) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."  525 F.3d at 654 (8th Cir. 2008) (internal quotation marks and citations omitted); *see also In re Brodkey Bros., Inc.*, No. 13-80203 (TLS), 2013 WL 5636484 at *7 (Bankr. D. Neb. Oct. 15, 2013) (considering the same factors).

25.     Further, it is well established that the Bankruptcy Code authorizes the debtor to use property of the estate outside the ordinary course of business with court approval and a valid business reason after notice and a hearing.  11 U.S.C. § 363(b)(1); *see, e.g., ASARCO, Inc.* v. *Elliott Mgmt.* (*In re ASARCO, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985)

12

(holding that the standard to assume a lease is the business judgment standard); *see also In re MF Global Inc.,* 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012).

**II.     The Settlement Agreement Satisfies the Eighth Circuit's Four-Factor Test and Should Be Approved**

26.     In the Plan Administration Trust's business judgment, the resolution embodied in the Settlement Agreement is in the best interests of the Plan Administration Trust and its beneficiaries, as applicable, and falls well within the range of reasonableness.  The Parties engaged in good-faith negotiations to reach a consensual agreement that allows the Plan Administration Trust to avoid the cost, delay, and risk of litigating the Allowed amount of the Cyber Class POC, to the detriment of the Plan Administration Trust and its stakeholders. Moreover, settling the Cyber Class POC Issues for an aggregate payment of $46,750,000.00 represents a fair and equitable outcome for all Parties.  The Cyber Class POC seeks approximately $48 billion in alleged damages on behalf of the U.S. Data Breach Settlement Class, making the settlement amount a fraction of the potential exposure.  The aggregate settlement amount is also reasonable in light of the District Court's finding that the $30 million prepetition settlement amount—although modest relative to the scale of the data breach—was nonetheless reasonable in light of the Company's dire financial condition.  *See* MDL No. 3098, Docket No. 160, at 30; *see also* MDL No. 3098, Docket No. 148, Oct. 29, 2024 Hearing Tr. 18:13-15 ("COURT: . . . we wouldn't be talking about a settlement like this if it weren't for the financial situation."); 83:7-23 ("COURT: . . . If the report is what it is, what it says, and that there has been consideration of sources of capital, that there's been, in my view, a sufficient thorough vetting of the financial situation, I'm certainly going to take that into account in determining whether this is a fair and adequate, reasonable settlement, even though it's not ideal.

I mean, given the vastness of the numbers here and the potential harm, there is -- you know, this is not a number that one would have expected in other circumstances.").

27.     The Settlement Agreement also satisfies the TMT Factors.[9]  ***First***, with respect to the probability of success in litigating the Allowed amount of the Cyber Class POC, while the Parties are confident in their respective positions, the Cyber Class POC issues are complex and there is an inherent risk of loss in any litigation.  By resolving the Cyber Class POC Issues through the settlement contemplated in the Settlement Agreement, the Plan Administration Trust is able to pay $3.25 million less than the maximum recovery contemplated under the U.S. Data Breach Class Settlement, in exchange for payment of the Settlement Amount shortly after entry of the Proposed Order.[10]  ***Second***, litigating the Cyber Class POC Issues instead of entering into the Settlement Agreement would require the Plan Administration Trust to divert resources from, among other things, completing its claims reconciliation process, which would delay stakeholder recoveries in this chapter 11 case.  In contrast, the Settlement Agreement allows the Plan Administration Trust to resolve the Cyber Class POC Issues now, in an amount that is less than the maximum recovery contemplated under the U.S. Data Breach Class Settlement Agreement, without expending significant resources or incurring unnecessary delay.  ***Third***, even if the Plan Administration Trust were to litigate the Cyber Class POC Issues to a favorable conclusion, it will have expended significant resources to achieve such an outcome—which the Plan

---

[9]  The second TMT Factor, which considers the difficulties, if any, to be encountered in the matter of collection, is neutral as the Plan Administration Trust is not aware of any inherent issues with collection associated with litigating the Cyber Class POC Issues.

[10]  The Court has approved other settlement agreements that contemplate payment of settlement amounts within a specified time frame after the Effective Date and/or entry of orders approving such settlements. *See, e.g.*, *Order (I) Authorizing and Approving the U.S. Data Breach Arbitration Settlement Agreement Under Rule 9019 of the Federal Rules of Bankruptcy Procedure and (II) Granting Related Relief* [Docket No. 1638] (requiring payment of the settlement amount within 10 days after the Effective Date of the Plan); *Order Granting the Plan Administration Trust's Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement by and Among the Plan Administration Trust, the Wind-Down Debtors, and KR OP TECH, LLC and (II) Granting Related Relief* [Docket No. 2092] (requiring payment of the settlement amount within five calendar days following the Court's entry of an order approving the settlement).

Administration Trust does not believe would be prudent because such costs would likely outweigh the incremental benefit achieved by such favorable outcome. *Finally*, the Settlement Agreement is in the paramount interest of the Plan Administration Trust's stakeholders. As discussed, above, the compromises set forth in the Settlement Agreement allow the Plan Administration Trust to pay less than the maximum recovery contemplated for the Cyber Class POC, and avoid unnecessary, costly litigation and resolve the Cyber Class POC Issues in a timely manner, which will inure to the benefit of the Plan Administration Trust's stakeholders.

28.     For the reasons stated herein, the Plan Administration Trust respectfully submits that the Settlement Agreement represents a fair and reasonable compromise under Bankruptcy Rule 9019(a) that is in the best interests of the Plan Administration Trust and its beneficiaries.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

29.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h).  The Plan Administration Trust respectfully submits that the waiver requested herein is warranted.  As discussed above, the Settlement Agreement is necessary to preserve value for the Plan Administration Trust's stakeholders and requires the Plan Administration Trust to pay the Settlement Amount to Kroll within five days of the Court's entry of the Proposed Order.  Accordingly, to the extent any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Plan Administration Trust requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Plan Administration Trust has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

30.     Except as expressly set forth herein, nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against the Wind-Down Debtor or a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Plan Administration Trust's, Wind-Down Debtor's, or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors or the Wind-Down Debtor; (g) a waiver or limitation of the Plan Administration Trust's, Wind-Down Debtor's, or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Plan Administration Trust, the Debtors, or the Wind-Down Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Plan Administration Trust's, Wind-Down Debtor's, or any other party in interest's rights to subsequently dispute such claim.

16

**Notice**

31.     The Plan Administration Trust will provide notice of this motion to the following parties: (a) the U.S. Trustee; (b) U.S. Data Breach Class Counsel; (c) the GUC Representative and the Equity Representative; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (e) any other person designated by the Court in any subsequent order as requiring notice (collectively, the "Notice Parties").  Notice of this motion and any order entered hereon will be served in accordance with Local Rule 9013-3(E)(1).  The Plan Administration Trust submits that, in light of the nature of the relief requested, no other or further notice need be given.

32.     A copy of this motion is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Notice and Claims Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

WHEREFORE, the Plan Administration Trust respectfully requests that the Court enter the Proposed Order and grant such other relief as the Court deems appropriate under the circumstances.

Dated: June 10, 2026
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
/s/ *Thomas H. Riske*

Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Samuel S. Brand #73638MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:   (314) 854-8600
Facsimile:   (314) 854-8660
Email:   thr@carmodymacdonald.com
   nrw@carmodymacdonald.com
   ssb@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:   (212) 373-3000
Facsimile:   (212) 757-3990
Email:   pbasta@paulweiss.com
   chopkins@paulweiss.com
   jchoi@paulweiss.com
   ghotz@paulweiss.com

*Counsel for Wind-Down Debtor*

## <u>Exhibit A</u>

**Settlement Agreement**

# SETTLEMENT AGREEMENT

This settlement agreement (this "Settlement Agreement") is made and entered into on June 9, 2026 (the "Execution Date") by and among (a) the Plan Administrator[1] as the Plan Administrator and trustee of the Plan Administration Trust, (b) the Wind-Down Debtors in the chapter 11 cases of *In re Chrome Holding Co., et al. (f/k/a 23andMe Holding Co.)*, Case No. 25-40976-357 (BCW) (prior to the effective date of the Plan, "23andMe" or the "Debtors"), by and through the Plan Administrator as the sole officer, director, and manager of the Wind-Down Debtors, and (c) the Settlement Class Representatives (as defined herein).  The Plan Administrator, the Wind-Down Debtors, and the Settlement Class Representatives may be referred to individually as a "Party" and together as "Parties".

# RECITALS

WHEREAS, in October 2023, the Company identified and disclosed a data breach (the "Cyber Security Incident") which resulted in numerous actions being filed or otherwise threatened against the Company, as well as the initiation of various governmental investigations;

WHEREAS, after the Company's announcement of the Cyber Security Incident, over 40 putative class action lawsuits were filed against 23andMe asserting claims for various common law torts and various statutory claims;

WHEREAS, on December 21, 2023, 23andMe filed a Motion to Transfer Actions to the Northern District of California pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation ("JPML"), MDL No. 3098 (the "Cyber Class Action");

WHEREAS, on April 11, 2024, the JPML centralized the multidistrict litigation before the Honorable Edward M. Chen of the Northern District of California (the "MDL Court");

WHEREAS, on June 5, 2024, the MDL Court appointed interim co-lead class counsel ("Cyber Class Action Counsel");

WHEREAS, on March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court");

WHEREAS, on August 4, 2025, the Debtors and representatives (the "Settlement Class Representatives") of U.S. persons whose personal information was impacted by the Cyber Security Incident (the "U.S. Data Breach Settlement Class"), entered into a settlement agreement (the "August 4th Settlement Agreement"), pursuant to which, among other things, Cyber Class Action Counsel was authorized to file a class proof of claim (the "Cyber Class POC") on behalf of the U.S. Data Breach Settlement Class; *provided* that notwithstanding the filed amount of the Cyber Class POC that is "allowed" following adjudication or administration of the claim in the Chapter

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Modified Fifth Amended Joint Plan of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1655] (the "Plan").

11 Cases, the aggregate cash distributions to be made on account of the Cyber Class POC shall not exceed $50 million; *provided further* that the Debtors' right to contest the Allowed amount of the Cyber Class POC is fully preserved but solely with respect to amounts in excess of $30 million;

WHEREAS, on October 2, 2025, the Court entered an order preliminarily approving the settlement contemplated in the August 4th Settlement Agreement (the "U.S. Data Breach Class Settlement") [Docket No. 1450];

WHEREAS, on December 1, 2025, the Court entered an order [Docket No. 1662], which the Court amended on December 5, 2025 [Docket No. 1696] (the "Confirmation Order"), confirming the Plan;

WHEREAS, on December 9, 2025, the Wind-Down Debtors filed a notice [Docket No. 1709] disclosing that the effective date of the Plan occurred on December 5, 2025;

WHEREAS, on January 30, 2026, the Court entered an order granting final approval of the U.S. Data Breach Class Settlement [Docket No. 1875] (the "Final Settlement Approval Order");

WHEREAS, the Parties have engaged in good-faith, arm's length discussions related to the resolution of the Allowed amount of the Cyber Class POC; and

WHEREAS, the Parties have reached an agreement in principle with respect to the resolution of the Cyber Class POC on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties represent, warrant, consent, and agree as follows:

I.    **Adoption of Recitals**.  The above recitals are true and correct, are incorporated herein by this reference, and constitute a part of this Settlement Agreement.

II.    **Settlement Terms**.  Subject to the conditions set forth in this Settlement Agreement, the Parties agree as follows:

    a.  The effectiveness of this Settlement Agreement is conditioned upon the Court entering a final, non-appealable order approving this Settlement Agreement in accordance with Federal Rule of Bankruptcy Procedure 9019 (the "Approval Order").

    b.  Following execution of this Settlement Agreement, the Plan Administration Trust shall promptly file a motion pursuant to Bankruptcy Rule 9019 (the "9019 Motion") with the Court requesting that the Court enter the Approval Order.

    c.  Within five business days following the Court's entry of the Approval Order, the Plan Administration Trust shall pay to Kroll Settlement Administration ("Kroll"), on behalf of the U.S. Data Breach Settlement Class, by wire transfer of immediately available funds to an account designated by Kroll, a total lump sum of

2

$32,458,420.19 (the "Settlement Amount"), which represents a total settlement amount of $46,750,000.00 *less* amounts paid to Kroll in respect of the Cyber Class POC to date (*i.e.*, $14,291,579.81), in full and final satisfaction, compromise, settlement and release of, and in exchange for, the Cyber Class POC; and at Cyber Class Action Counsel's direction, Kroll is further authorized to distribute the full $46,750,000.00 in accordance with U.S. Data Breach Class Settlement and as permitted by the Final Settlement Approval Order upon entry of the Approval Order.

d. Following the Plan Administration Trust's payment in full of the Settlement Amount, the Claims and Noticing Agent will update the Claims Register to reflect the Cyber Class POC as satisfied in full.

e. The Settlement Class Representatives shall have the right to terminate this Settlement Agreement upon written notice to the Plan Administration Trust if (i) the Approval Order is not entered by the Court within 60 days after the Execution Date; or (ii) the Court denies the Approval Order. The Plan Administration Trust shall have the right to terminate this Settlement Agreement upon written notice to the Settlement Class Representatives if (A) the Court denies the Approval Order; or (B) at any time prior to entry of the Approval Order, the Settlement Class Representatives take any action adverse to the Plan Administration Trust in the Chapter 11 Cases or otherwise. Upon any such termination, or if this Settlement Agreement is not consummated in accordance with the terms outlined herein, this Settlement Agreement shall be null and void and of no further force or effect, and any and all obligations imposed on the Parties pursuant to this Settlement Agreement shall be terminated without prejudice to the Parties' respective rights, claims, and/or defenses. However, the obligations of the Parties under the U.S. Data Breach Class Settlement shall remain in full force and effect.

**III.   Mutual Releases.**

a. Upon Kroll's receipt of the Settlement Amount in full, Cyber Class Action Counsel, the Settlement Class Representatives and members of the U.S. Data Breach Settlement Class who have not opted out of the U.S. Data Breach Class Settlement, shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge (i) the Debtors, the Wind-Down Debtors, their estates, any successors thereto, including the Plan Administration Trust, and each of their former or current members, shareholders, affiliates, related entities, officers, directors, managers, employees, principals, successors, predecessors, and representatives and (ii) Various Underwriters at Lloyds subscribing to Cyber and Liability Policy UMR B1510CY2300014, Allied World Specialty Insurance Company, Houston Casualty Company and Landmark American Insurance Company that issued certain cyber insurance policies to the Debtor for the period from May 1, 2023 through May 1, 2024 (the "Debtor Released Parties") for any claims arising out of the Cyber Security Incident that the Cyber Class Action Parties (as defined below) can, shall, or may have against the Debtor Released Parties, whether known or unknown,

3

accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future, that have not already been released under the terms of the Plan or the U.S. Data Breach Class Settlement.

b. Upon Kroll's receipt of the Settlement Amount in full, the Plan Administration Trust, the Debtors, and the Wind-Down Debtors, as applicable, shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Settlement Class Representatives, Cyber Class Action Counsel, and members of the U.S. Data Breach Settlement Class who have not opted out of the U.S. Data Breach Class Settlement, and each of their respective members, affiliates, officers, directors, managers, employees, principals, successors, predecessors, and representatives (the "Cyber Class Released Parties") from any and all claims arising out of the Cyber Security Incident that the Debtor Released Parties can, shall, or may have against the Cyber Class Action Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future, that have not already been released under the terms of the Plan or the U.S. Data Breach Class Settlement. The foregoing release includes a release of any right to seek disgorgement or avoidance of the transfers authorized and releases granted hereby, regardless of subsequent rulings of the Court in the Debtors' bankruptcy cases.

c. The Parties agree that the releases set forth herein shall be construed as broadly as possible, except that the obligations of the Parties as set forth in this Settlement Agreement shall not be released.

IV. **Further Assurances**. Each of the Parties shall execute and deliver to the other all such other documents as may reasonably be requested to accomplish whatever may be contemplated pursuant to this Settlement Agreement, and hereby agree to do and perform all reasonable acts, and to make, execute, and deliver all instruments and documents reasonably necessary to perform the obligations contemplated by this Settlement Agreement.

V. **Non-Waiver**. The failure of any Party to enforce any provision or provisions of this Settlement Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violations thereof, nor prevent that Party thereafter from enforcing each and every provision of this Settlement Agreement. The rights granted to the Parties herein are cumulative, and the waiver of any single remedy shall not constitute a waiver of such Party's right to assert all other legal remedies available to it under the circumstances.

VI. **Prevailing Party**. Except as otherwise provided herein, the Parties acknowledge and agree that each of them, as between them, will bear their own costs, expenses, and attorneys' fees arising out of the negotiation, preparation, and execution of this Settlement Agreement, and all matters arising out of or connected therewith.

4

VII.    **Entire Agreement**.  In addition to the terms set forth in the U.S. Data Breach Class Settlement Agreement, this Settlement Agreement constitutes the entire agreement and supersedes any and all understandings and agreements between the Parties with respect to the subject matter hereof and no representation, statement, or promise not contained herein shall be binding on any Party.  This Settlement Agreement may be modified, changed, amended, or otherwise altered only by a written amendment signed by each Party.

VIII.    **Execution in Counterparts**.  This Settlement Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original copy and all of which together shall constitute one Settlement Agreement.  Delivery of an executed counterpart of a signature page of this Settlement Agreement by photocopy, facsimile, electronic copy, email, or other similar mechanism shall have the same effect as an ink-signed original copy.

IX.    **Review by Counsel; Voluntary Agreement**.  The Parties confirm they have had the terms of this Settlement Agreement explained to them by their attorneys, and by executing this Settlement Agreement they represent that they are relying upon their own judgment and the advice of the counsel of their choice and are not relying upon any recommendations or representations of any opposing party, opposing counsel, or other representative, other than those representations expressly provided for in this Settlement Agreement.

X.    **Jointly Drafted**.  The Parties to this Settlement Agreement have cooperated in the drafting and preparation of this Settlement Agreement.  Accordingly, this Settlement Agreement shall not be construed against any Party on the basis that the Party was the drafter.

XI.    **Obligations Several, Not Joint**.  All obligations of the Parties under this Settlement Agreement shall be several, and not joint and several, and in no event shall any Party have any liability or obligation for any breach or failure by any other Party to comply with the terms of this Settlement Agreement.

XII.    **Cooperation and Best Efforts**.  The Parties agree to cooperate fully in the execution of any documents or performance in any way which may be reasonably necessary to carry out the purposes of this Settlement Agreement and to effectuate the intent of the Parties thereto, and the Parties shall use their reasonable efforts to obtain Court approval.

XIII.    **Authority**.  Subject to the approval of the Court, the individuals executing this Settlement Agreement on behalf of the Parties have the full power and lawful authority to execute and deliver this Settlement Agreement, as well as all of the other documents executed or delivered, or to be executed or delivered, by the Parties in connection herewith and to perform the obligations hereunder.  The execution and delivery of this Settlement Agreement by the Parties and the performance of the obligations hereunder have been duly and validly authorized by all necessary corporate action on the part of the Parties and no other corporate proceedings are necessary to authorize this

Settlement Agreement.  Subject to approval of the Court, each of the documents in connection herewith to which the Parties are, or will be, a party, has been, or will be, duly and validly executed and delivered by the Parties, and, assuming the due authorization, execution, and delivery of the documents by the other Parties are (or when executed and delivered will be) legal, valid, and binding obligations of the Parties.

XIV.   **Governing Law**.  The Court shall have exclusive jurisdiction to hear and adjudicate any dispute related to this Settlement Agreement, including the interpretation and enforcement thereof.

XV.   **Severability**.  The provisions of this Settlement Agreement are severable, and if any part of it is found to be unenforceable, all other parts shall remain fully valid and enforceable.

XVI.   **Court Approvals**.  The execution and delivery of this Settlement Agreement by the Parties and the performance of the obligations hereunder are all dependent on and subject to the entry of the Approval Order.  Absent entry of the Approval Order by the Court in the time required by this Settlement Agreement, this Settlement Agreement and all of the provisions hereunder shall be of no effect.

[*Remainder of page intentionally left blank.*]

*Execution Version*

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

ACCEPTED AND AGREED by each of the signing parties below, who each warrant and represent that they have read and understand the foregoing Settlement Agreement and are entering into the foregoing Settlement Agreement voluntarily and without any duress or undue influence, and that each had the opportunity to consult with legal counsel of their own choosing before signing:

**CHROME HOLDING CO.,**
**CHROMECO, INC.,**

By:  */s/ Thomas Walper*
Name: Thomas Walper
Title: Director

**PLAN ADMINISTRATOR**

By:  */s/ Thomas Walper*
Name: Thomas Walper, not individually, but solely as trustee of the Plan Administration Trust

[Signature Page to Settlement Agreement]

*Execution Version*

By: _____

Norman E. Siegel
**STUEVE SIEGEL  HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

Cari Campen Laufenberg
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Gayle M. Blatt
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com

*On behalf of the Settlement Class Representatives and U.S. Data Breach Settlement Class*

[Signature Page to Settlement Agreement]