**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.),**[1]<br><br>**Wind-Down Debtor.** | **Case No. 25-40976-357**<br>**Chapter 11**<br><br><br><br>**Related Doc. No. 2250** |

**ORDER GRANTING THE PLAN ADMINISTRATION TRUST'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG THE PLAN ADMINISTRATION TRUST, THE WIND-DOWN DEBTORS, AND U.S. DATA BREACH SETTLEMENT CLASS REPRESENTATIVES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Plan Administration Trust for entry of an order (this "Order") (i) approving and authorizing the Plan Administration Trust to enter into and perform under the settlement agreement attached hereto as **Exhibit A** (the "Settlement Agreement") by and among the Plan Administration Trust, the Wind-Down Debtors, and representatives of U.S. persons whose personal information was impacted by the Cyber Security Incident (the "Settlement Class Representatives" and together with the Plan Administration Trust and the Wind-Down Debtors, the "Parties") and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article

---

[1]   The Wind-Down Debtor's service address for purposes of these chapter 11 cases is:  490 Post St., Suite 500 PMB 2065, San Francisco, CA 94102, United States.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Plan (as defined in the Motion), as applicable.

III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Wind-Down Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Plan Administration Trust's notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion (Doc. 2250) is **GRANTED** as set forth herein.

2.      Pursuant to sections 105 and 363(b) of the Bankruptcy Code, Bankruptcy Rules 6004 and 9019, and all applicable law, the Settlement Agreement is hereby authorized and approved on the terms set forth therein.

3.      The Settlement Agreement was proposed, negotiated, and entered into by the Parties in good faith.

4.      The Settlement Agreement (a) satisfies the standards applied by bankruptcy courts for the approval of a compromise and settlement pursuant to Bankruptcy Rule 9019; and (b) is fair, equitable, and in the best interests of the Plan Administration Trust and its beneficiaries. Performance under the Settlement Agreement represents a sound exercise of the Plan Administration Trust's business judgment.

5. The Court additionally finds that the settlements and compromises embodied in the Settlement Agreement are within the reasonable range of litigation outcomes if the Plan Administration Trust were to litigate the matters resolved pursuant to the Settlement Agreement, represent fair and reasonable consideration, and are reasonable, fair, and equitable, and in the best interest of the Plan Administration Trust and its beneficiaries after consideration of (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (c) the paramount interest of creditors.

6. In furtherance of this Order, the Settlement Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by mutual agreement of the Parties without further order of the Court, provided such modification, amendment, or supplement is not material.

7. The failure to mention any provision of the Settlement Agreement in this Order shall not impair its efficacy, it being the intent and effect of this Order that the Settlement Agreement and the compromises and agreements contained therein are approved in all respects, and all relief contemplated by the Settlement Agreement is hereby granted.

8. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

9. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

10.     The Plan Administration Trust and the Wind-Down Debtor, as applicable, are authorized to perform the obligations under the Settlement Agreement in accordance with their terms and take all actions necessary to effectuate the relief granted in the Settlement Agreement and this Order.

11.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the Settlement Agreement.

12.     No later than two business days after the date of this Order, the Plan Administration Trust shall serve on the Notice Parties a copy of the Order and shall file a certificate of service no later than 24 hours after service.

Dated:  July 7, 2026
St. Louis, Missouri
cjs

_____
Brian C. Walsh
United States Bankruptcy Judge

**Order Prepared By:**

**Carmody MacDonald P.C.**
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:     (314) 854-8600
Facsimile:     (314) 854-8660
Email:

> thr@carmodymacdonald.com
> nrw@carmodymacdonald.com
> jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:     (212) 373-3000
Facsimile:     (212) 757-3990
Email:          pbasta@paulweiss.com
chopkins@paulweiss.com
jchoi@paulweiss.com
ghotz@paulweiss.com

*Counsel to the Wind-Down Debtor*

## Exhibit A

**Settlement Agreement**

*Execution Version*

## SETTLEMENT AGREEMENT

This settlement agreement (this "Settlement Agreement") is made and entered into on June 9, 2026 (the "Execution Date") by and among (a) the Plan Administrator[1] as the Plan Administrator and trustee of the Plan Administration Trust, (b) the Wind-Down Debtors in the chapter 11 cases of *In re Chrome Holding Co., et al. (f/k/a 23andMe Holding Co.)*, Case No. 25-40976-357 (BCW) (prior to the effective date of the Plan, "23andMe" or the "Debtors"), by and through the Plan Administrator as the sole officer, director, and manager of the Wind-Down Debtors, and (c) the Settlement Class Representatives (as defined herein).  The Plan Administrator, the Wind-Down Debtors, and the Settlement Class Representatives may be referred to individually as a "Party" and together as "Parties".

## RECITALS

WHEREAS, in October 2023, the Company identified and disclosed a data breach (the "Cyber Security Incident") which resulted in numerous actions being filed or otherwise threatened against the Company, as well as the initiation of various governmental investigations;

WHEREAS, after the Company's announcement of the Cyber Security Incident, over 40 putative class action lawsuits were filed against 23andMe asserting claims for various common law torts and various statutory claims;

WHEREAS, on December 21, 2023, 23andMe filed a Motion to Transfer Actions to the Northern District of California pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation ("JPML"), MDL No. 3098 (the "Cyber Class Action");

WHEREAS, on April 11, 2024, the JPML centralized the multidistrict litigation before the Honorable Edward M. Chen of the Northern District of California (the "MDL Court");

WHEREAS, on June 5, 2024, the MDL Court appointed interim co-lead class counsel ("Cyber Class Action Counsel");

WHEREAS, on March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court");

WHEREAS, on August 4, 2025, the Debtors and representatives (the "Settlement Class Representatives") of U.S. persons whose personal information was impacted by the Cyber Security Incident (the "U.S. Data Breach Settlement Class"), entered into a settlement agreement (the "August 4th Settlement Agreement"), pursuant to which, among other things, Cyber Class Action Counsel was authorized to file a class proof of claim (the "Cyber Class POC") on behalf of the U.S. Data Breach Settlement Class; *provided* that notwithstanding the filed amount of the Cyber Class POC that is "allowed" following adjudication or administration of the claim in the Chapter

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Modified Fifth Amended Joint Plan of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1655] (the "Plan").

11 Cases, the aggregate cash distributions to be made on account of the Cyber Class POC shall not exceed $50 million; *provided further* that the Debtors' right to contest the Allowed amount of the Cyber Class POC is fully preserved but solely with respect to amounts in excess of $30 million;

WHEREAS, on October 2, 2025, the Court entered an order preliminarily approving the settlement contemplated in the August 4th Settlement Agreement (the "U.S. Data Breach Class Settlement") [Docket No. 1450];

WHEREAS, on December 1, 2025, the Court entered an order [Docket No. 1662], which the Court amended on December 5, 2025 [Docket No. 1696] (the "Confirmation Order"), confirming the Plan;

WHEREAS, on December 9, 2025, the Wind-Down Debtors filed a notice [Docket No. 1709] disclosing that the effective date of the Plan occurred on December 5, 2025;

WHEREAS, on January 30, 2026, the Court entered an order granting final approval of the U.S. Data Breach Class Settlement [Docket No. 1875] (the "Final Settlement Approval Order");

WHEREAS, the Parties have engaged in good-faith, arm's length discussions related to the resolution of the Allowed amount of the Cyber Class POC; and

WHEREAS, the Parties have reached an agreement in principle with respect to the resolution of the Cyber Class POC on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties represent, warrant, consent, and agree as follows:

I. **Adoption of Recitals**. The above recitals are true and correct, are incorporated herein by this reference, and constitute a part of this Settlement Agreement.

II. **Settlement Terms**. Subject to the conditions set forth in this Settlement Agreement, the Parties agree as follows:

   a. The effectiveness of this Settlement Agreement is conditioned upon the Court entering a final, non-appealable order approving this Settlement Agreement in accordance with Federal Rule of Bankruptcy Procedure 9019 (the "Approval Order").

   b. Following execution of this Settlement Agreement, the Plan Administration Trust shall promptly file a motion pursuant to Bankruptcy Rule 9019 (the "9019 Motion") with the Court requesting that the Court enter the Approval Order.

   c. Within five business days following the Court's entry of the Approval Order, the Plan Administration Trust shall pay to Kroll Settlement Administration ("Kroll"), on behalf of the U.S. Data Breach Settlement Class, by wire transfer of immediately available funds to an account designated by Kroll, a total lump sum of

2

$32,458,420.19 (the "Settlement Amount"), which represents a total settlement amount of $46,750,000.00 *less* amounts paid to Kroll in respect of the Cyber Class POC to date (*i.e.*, $14,291,579.81), in full and final satisfaction, compromise, settlement and release of, and in exchange for, the Cyber Class POC; and at Cyber Class Action Counsel's direction, Kroll is further authorized to distribute the full $46,750,000.00 in accordance with U.S. Data Breach Class Settlement and as permitted by the Final Settlement Approval Order upon entry of the Approval Order.

d. Following the Plan Administration Trust's payment in full of the Settlement Amount, the Claims and Noticing Agent will update the Claims Register to reflect the Cyber Class POC as satisfied in full.

e. The Settlement Class Representatives shall have the right to terminate this Settlement Agreement upon written notice to the Plan Administration Trust if (i) the Approval Order is not entered by the Court within 60 days after the Execution Date; or (ii) the Court denies the Approval Order. The Plan Administration Trust shall have the right to terminate this Settlement Agreement upon written notice to the Settlement Class Representatives if (A) the Court denies the Approval Order; or (B) at any time prior to entry of the Approval Order, the Settlement Class Representatives take any action adverse to the Plan Administration Trust in the Chapter 11 Cases or otherwise. Upon any such termination, or if this Settlement Agreement is not consummated in accordance with the terms outlined herein, this Settlement Agreement shall be null and void and of no further force or effect, and any and all obligations imposed on the Parties pursuant to this Settlement Agreement shall be terminated without prejudice to the Parties' respective rights, claims, and/or defenses. However, the obligations of the Parties under the U.S. Data Breach Class Settlement shall remain in full force and effect.

**III.   Mutual Releases.**

a. Upon Kroll's receipt of the Settlement Amount in full, Cyber Class Action Counsel, the Settlement Class Representatives and members of the U.S. Data Breach Settlement Class who have not opted out of the U.S. Data Breach Class Settlement, shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge (i) the Debtors, the Wind-Down Debtors, their estates, any successors thereto, including the Plan Administration Trust, and each of their former or current members, shareholders, affiliates, related entities, officers, directors, managers, employees, principals, successors, predecessors, and representatives and (ii) Various Underwriters at Lloyds subscribing to Cyber and Liability Policy UMR B1510CY2300014, Allied World Specialty Insurance Company, Houston Casualty Company and Landmark American Insurance Company that issued certain cyber insurance policies to the Debtor for the period from May 1, 2023 through May 1, 2024 (the "Debtor Released Parties") for any claims arising out of the Cyber Security Incident that the Cyber Class Action Parties (as defined below) can, shall, or may have against the Debtor Released Parties, whether known or unknown,

3

accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future, that have not already been released under the terms of the Plan or the U.S. Data Breach Class Settlement.

b. Upon Kroll's receipt of the Settlement Amount in full, the Plan Administration Trust, the Debtors, and the Wind-Down Debtors, as applicable, shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Settlement Class Representatives, Cyber Class Action Counsel, and members of the U.S. Data Breach Settlement Class who have not opted out of the U.S. Data Breach Class Settlement, and each of their respective members, affiliates, officers, directors, managers, employees, principals, successors, predecessors, and representatives (the "Cyber Class Released Parties") from any and all claims arising out of the Cyber Security Incident that the Debtor Released Parties can, shall, or may have against the Cyber Class Action Parties, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future, that have not already been released under the terms of the Plan or the U.S. Data Breach Class Settlement. The foregoing release includes a release of any right to seek disgorgement or avoidance of the transfers authorized and releases granted hereby, regardless of subsequent rulings of the Court in the Debtors' bankruptcy cases.

c. The Parties agree that the releases set forth herein shall be construed as broadly as possible, except that the obligations of the Parties as set forth in this Settlement Agreement shall not be released.

IV. **Further Assurances**. Each of the Parties shall execute and deliver to the other all such other documents as may reasonably be requested to accomplish whatever may be contemplated pursuant to this Settlement Agreement, and hereby agree to do and perform all reasonable acts, and to make, execute, and deliver all instruments and documents reasonably necessary to perform the obligations contemplated by this Settlement Agreement.

V. **Non-Waiver**. The failure of any Party to enforce any provision or provisions of this Settlement Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violations thereof, nor prevent that Party thereafter from enforcing each and every provision of this Settlement Agreement. The rights granted to the Parties herein are cumulative, and the waiver of any single remedy shall not constitute a waiver of such Party's right to assert all other legal remedies available to it under the circumstances.

VI. **Prevailing Party**. Except as otherwise provided herein, the Parties acknowledge and agree that each of them, as between them, will bear their own costs, expenses, and attorneys' fees arising out of the negotiation, preparation, and execution of this Settlement Agreement, and all matters arising out of or connected therewith.

4

VII. **Entire Agreement**.  In addition to the terms set forth in the U.S. Data Breach Class Settlement Agreement, this Settlement Agreement constitutes the entire agreement and supersedes any and all understandings and agreements between the Parties with respect to the subject matter hereof and no representation, statement, or promise not contained herein shall be binding on any Party.  This Settlement Agreement may be modified, changed, amended, or otherwise altered only by a written amendment signed by each Party.

VIII. **Execution in Counterparts**.  This Settlement Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original copy and all of which together shall constitute one Settlement Agreement.  Delivery of an executed counterpart of a signature page of this Settlement Agreement by photocopy, facsimile, electronic copy, email, or other similar mechanism shall have the same effect as an ink-signed original copy.

IX. **Review by Counsel; Voluntary Agreement**.  The Parties confirm they have had the terms of this Settlement Agreement explained to them by their attorneys, and by executing this Settlement Agreement they represent that they are relying upon their own judgment and the advice of the counsel of their choice and are not relying upon any recommendations or representations of any opposing party, opposing counsel, or other representative, other than those representations expressly provided for in this Settlement Agreement.

X. **Jointly Drafted**.  The Parties to this Settlement Agreement have cooperated in the drafting and preparation of this Settlement Agreement.  Accordingly, this Settlement Agreement shall not be construed against any Party on the basis that the Party was the drafter.

XI. **Obligations Several, Not Joint**.  All obligations of the Parties under this Settlement Agreement shall be several, and not joint and several, and in no event shall any Party have any liability or obligation for any breach or failure by any other Party to comply with the terms of this Settlement Agreement.

XII. **Cooperation and Best Efforts**.  The Parties agree to cooperate fully in the execution of any documents or performance in any way which may be reasonably necessary to carry out the purposes of this Settlement Agreement and to effectuate the intent of the Parties thereto, and the Parties shall use their reasonable efforts to obtain Court approval.

XIII. **Authority**.  Subject to the approval of the Court, the individuals executing this Settlement Agreement on behalf of the Parties have the full power and lawful authority to execute and deliver this Settlement Agreement, as well as all of the other documents executed or delivered, or to be executed or delivered, by the Parties in connection herewith and to perform the obligations hereunder.  The execution and delivery of this Settlement Agreement by the Parties and the performance of the obligations hereunder have been duly and validly authorized by all necessary corporate action on the part of the Parties and no other corporate proceedings are necessary to authorize this

5

Settlement Agreement.  Subject to approval of the Court, each of the documents in connection herewith to which the Parties are, or will be, a party, has been, or will be, duly and validly executed and delivered by the Parties, and, assuming the due authorization, execution, and delivery of the documents by the other Parties are (or when executed and delivered will be) legal, valid, and binding obligations of the Parties.

XIV.   **Governing Law**.  The Court shall have exclusive jurisdiction to hear and adjudicate any dispute related to this Settlement Agreement, including the interpretation and enforcement thereof.

XV.   **Severability**.  The provisions of this Settlement Agreement are severable, and if any part of it is found to be unenforceable, all other parts shall remain fully valid and enforceable.

XVI.   **Court Approvals**.  The execution and delivery of this Settlement Agreement by the Parties and the performance of the obligations hereunder are all dependent on and subject to the entry of the Approval Order.  Absent entry of the Approval Order by the Court in the time required by this Settlement Agreement, this Settlement Agreement and all of the provisions hereunder shall be of no effect.

[*Remainder of page intentionally left blank.*]

6

*Execution Version*

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

ACCEPTED AND AGREED by each of the signing parties below, who each warrant and represent that they have read and understand the foregoing Settlement Agreement and are entering into the foregoing Settlement Agreement voluntarily and without any duress or undue influence, and that each had the opportunity to consult with legal counsel of their own choosing before signing:

**CHROME HOLDING CO.,**
**CHROMECO, INC.,**


By:  */s/ Thomas Walper*
Name: Thomas Walper
Title: Director


**PLAN ADMINISTRATOR**


By:  */s/ Thomas Walper*
Name: Thomas Walper, not individually, but solely as trustee of the Plan Administration Trust

[Signature Page to Settlement Agreement]

*Execution Version*

By: _____

Norman E. Siegel
**STUEVE SIEGEL  HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

Cari Campen Laufenberg
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel: (206) 623-1900
claufenberg@kellerrohrback.com

Gayle M. Blatt
**CASEY GERRY FRANCAVILLA BLATT LLP**
110 Laurel Street
San Diego, CA 92101
Tel: (619) 238-1811
gmb@cglaw.com


*On behalf of the Settlement Class Representatives and
U.S. Data Breach Settlement Class*

[Signature Page to Settlement Agreement]