**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| **In re:** | **Case No. 25-40976-357** |
| **CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.),** | **Chapter 11** |
|  | **Related to Doc. 2212** |
| **Wind-Down Debtor.** | |

**ORDER GRANTING IN PART AND DENYING IN PART
TRUST'S MOTION TO ENFORCE PLAN AND CONFIRMATION ORDER
AND DENYING CALIFORNIA'S REQUEST FOR PERMISSIVE ABSTENTION**

This case is before the Court in connection with The Plan Administration Trust's Emergency Motion to Enforce the Plan and the Confirmation Order Against the State of California, filed on May 31, 2026 (the "Motion to Enforce"). I also address California's request for permissive abstention, which is one of the arguments included in The People of the State of California's Response to the Trust's Objection to California's Claim (the "Abstention Request"). By agreement of the parties, the other issues addressed in the Trust's claim objection and in the State's response to the objection have been deferred for later consideration.

I held a hearing on the Motion to Enforce and the Abstention Request on June 8, 2026. William Clareman appeared for the Plan Administration Trust, and Bernard Eskandari appeared on behalf of the People of the State of California. The appearances of other parties are noted in the record. I took the matters under advisement at the conclusion of the hearing. California filed a supplemental brief on June 22, 2026 to address an argument that the Trust developed more fully during the hearing than it had done in its Motion to Enforce.

For the reasons discussed below, I will grant the Motion to Enforce in part and deny it in part, and I will deny the Abstention Request.

**I.        Jurisdiction**

The Court has subject-matter jurisdiction of the Debtor's case, the Motion to Enforce, and the Abstention Request under 28 U.S.C. § 1334(a)-(b). The Court also has jurisdiction to interpret and enforce its own orders. *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151 (2009). This is a core proceeding under several subsections of 28 U.S.C. § 157(b)(2). *See also In re*

*Williams*, 256 B.R. 885, 892 (B.A.P. 8th Cir. 2001) ("[T]he enforcement of orders resulting from core proceedings are themselves considered core proceedings.").

## II.   Background

Because the parties are familiar with the history of this case, I will not describe it extensively here.

The Motion to Enforce addresses a four-count civil complaint filed by California in the Superior Court for the City and County of San Francisco on May 27, 2026.  It names as defendants Chrome Holding Co. (f/k/a 23andMe Holding Co.) and ChromeCo, Inc. (f/k/a 23andMe, Inc.), both of which were Chapter 11 debtors in this Court,[1] along with fifty "Doe" defendants who are alleged to be in some manner responsible for the legal violations discussed in the complaint. All of the claims in the civil action arise under California state statutes, and they relate to a data breach that affected certain customers of the Debtors in 2023. The causes of action seeking monetary relief in the California litigation are essentially similar to those included in the State's proof of claim in these Chapter 11 cases, which it filed on September 4, 2025.

The Plan Administration Trust is the successor to the Debtors under their Modified Fifth Amended Joint Plan of Chrome Holding Co. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Doc. 1655) (the "Plan"). It contends that the State's litigation violates three distinct provisions of the Plan. California disagrees but, in the alternative, requests that I abstain under 28 U.S.C. § 1334(c)(1) from resolving the Trust's objection to the State's proof of claim and instead permit the relevant issues to be decided in the state-court proceedings.

## III.   Analysis

In support of the Motion to Enforce, the Trust points to three provisions of the Plan, along with related language in the order, dated December 5, 2025, confirming the Plan (Doc. 1696) (the "Confirmation Order"). I will discuss each in turn.

### A.   Exclusive Jurisdiction

Article XI of the Plan provides that "the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases, the Confirmation Order, and this Plan" (Plan at 89). It then recites 30 examples of matters over which the Court retains jurisdiction.

---

[1] Although there is currently only a single Wind-Down Debtor, I refer to these two companies as the Debtors in the interest of simplicity.

For the most part, the jurisdiction of a bankruptcy court is not exclusive. *See* 28 U.S.C. § 1334(b). The principal exceptions are jurisdiction of a bankruptcy case itself and jurisdiction of property of the debtor and of the bankruptcy estate, which are exclusive. *See id.* § 1334(a), (e)(1). Thus, when the Plan states that this Court will "retain" jurisdiction over a matter in which its jurisdiction is not exclusive, the Court's jurisdiction over that matter does not thereby become exclusive.

Below the list of 30 examples, however, is the following provision:

> Unless otherwise specifically provided herein or in a prior Order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date.

(Plan at 92) (the "Exclusive-Jurisdiction Provision"). Without more, this language would require the State to prosecute its litigation against the Debtors in this Court, not in state court, for there is no dispute that it involves a Claim, as defined in the Plan, or that it arose prior to the Effective Date of the Plan, also as defined in the Plan.

The State's initial response is that a bankruptcy court does not and cannot have exclusive jurisdiction over its claims, or at least not claims that implicate its police and regulatory powers. *See Board of Governors of Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 41 (1991) (§ 1334(b) "authorizes a district court to exercise concurrent jurisdiction over certain bankruptcy-related civil proceedings."). The Trust rejoins that the Exclusive-Jurisdiction Provision is *res judicata*, and California, which did not appeal the Confirmation Order, cannot challenge the provision now. *See Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004) ("Even subject-matter jurisdiction . . . may not be attacked collaterally.").

This is an interesting and complicated question, but I need not resolve it, because the Confirmation Order includes the following sentence: "Nothing in this Order, the Plan, or Plan Documents, divests any tribunal of any jurisdiction it may have under police or regulatory law" (Conf. Order ¶ 132).[2] If this language means what it says, then the Exclusive-Jurisdiction Provision does not apply to the State's litigation.

The Trust argues gamely that Paragraph 132 does not mean *exactly* what it says and that it restores other courts' jurisdiction only for four types of claims discussed specifically in Paragraph 131 of the Confirmation Order. In brief, those are as follows: (1) liability to a governmental unit that is not a "claim" under the Bankruptcy Code; (2) a claim of a

---

[2] This language is one of the changes that resolved objections by California and many other governmental units to confirmation of the Plan.

governmental unit arising after entry of the Confirmation Order; (3) police or regulatory liability to a governmental unit of an owner or operator of property that arises after the Effective Date of the Plan; and (4) liability to a governmental unit of a person or entity other than the Debtors (Conf. Order ¶ 131). Otherwise, the Trust says, the Exclusive-Jurisdiction Provision remains fully effective.

I disagree, for two primary reasons. First, the four types of claims set forth in Paragraph 131 do not fall within the Exclusive-Jurisdiction Provision in the first place, and they do not need Paragraph 132 to extract them from it. For example, item (3) concerns liability arising after the effective date of the plan, but the exclusive-jurisdiction language applies only to claims arising before the effective date.[3] Second, and more generally, Paragraph 132 is not necessary to allow the four categories of claims in Paragraph 131 to go forward in other courts, because  Paragraph 131 has its own language for that purpose: "Nor shall anything in this Confirmation Order, the Plan, or related documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside of this Court, any liability described in the preceding sentence" (Conf. Order ¶ 131).

In short, Paragraphs 131 and 132 may be harmonized. Paragraph 131 identifies four categories of proceedings—none of which are relevant to the California litigation—and overrides provisions of the Plan that might serve as obstacles to their prosecution. Meanwhile, Paragraph 132 applies to a broader category of police and regulatory actions, including the State's, and supersedes the Exclusive-Jurisdiction Provision as to them.

I therefore agree with California that the Exclusive-Jurisdiction Provision of the Plan does not support the Motion to Enforce.

### B.      Plan Injunction

Article VIII.E of the Plan includes an injunction, on which the Trust also relies here. The article begins with a statement that the automatic stay will remain in effect after confirmation of the Plan until it terminates under Section 362(c) of the Bankruptcy Code. California seizes on this language, because Section 362(b)(4) includes an exception to the stay that permits a governmental unit to enforce its police and regulatory power. This exception would have authorized the State to pursue its state-court litigation after the commencement of these cases

---

[3] In theory, there could be small windows of overlap. For example, a claim might fall within both item (2) and the Exclusive-Jurisdiction Provision because it arises after the Confirmation Order is entered but before the order becomes effective. The proposition that the parties negotiated Paragraph 132 to resolve situations as narrow as this is not plausible.

and before the effective date of the Plan. But it is not determinative here, because of the next sentence of Article VIII.E:

> In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan . . . shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by the Plan.

(Plan at 84) (the "Plan Injunction"). Although there is no real ambiguity here, the article goes on to specify that the things that creditors may not do include "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests" (Plan at 85).

### 1.      Application of the injunction

On its face, the Plan Injunction applies to the State and its litigation against the Debtors in the California courts. The State has a claim against ChromeCo, which it has asserted in a proof of claim, and that claim is fully satisfied under the terms of the Plan. In particular, holders of allowed claims in Class 7 under the Plan, which include the State, receive specified interests in the Trust "in full and final satisfaction" of their claims (Plan at 40).

California resists this conclusion on two grounds. First, it argues that a claim is "fully satisfied" only if has been paid in full already. The State does not explain why the Debtors would need an injunction to prevent creditors that have been fully paid from pursuing litigation to recover something more than full payment. But in any event, the text of the Plan Injunction makes clear that this is not the correct interpretation. The concluding phrase, "except for the receipt of the payments or Distributions that are contemplated by the Plan," would make no sense if the injunction affected only creditors that already had received all of their payments and distributions (Plan at 84).

California's second argument is that the Trust's objection to its claim means that it does not presently have an allowed claim, and thus it has not been given an interest in the Trust in full and final satisfaction of its claim. The State is correct that its claim is currently disputed, not allowed, but the injunction applies to creditors that "have held, hold, or *may hold*" claims that are fully satisfied under the Plan (Plan at 84) (emphasis added). This plainly includes creditors, such as California, that are pursuing but have not yet achieved allowance of their claims.

2.     Permissibility of the injunction

More broadly, California argues that a bankruptcy court cannot enjoin a governmental unit from exercising its police or regulatory powers, for that would create a "haven for wrongdoers." *In re Commonwealth Cos.*, 913 F.2d 518, 527 (8th Cir. 1990) (cleaned up). In support of its position, the State relies on the regulatory exception to the automatic stay in 11 U.S.C. § 362(b)(4) and on 28 U.S.C. § 1452(a), which precludes a party from removing a police-or-regulatory action to federal court. This point misses the mark for several reasons.

First, it is well-established that a bankruptcy court may enjoin a governmental unit from pursuing a police-or-regulatory action in some circumstances. *See, e.g.*, *Missouri v. U.S. Bankruptcy Court*, 647 F.2d 768, 777 (8th Cir. 1981) ("[E]ven if the automatic stay provisions did not apply to the Missouri proceedings, the bankruptcy court possesses power in its discretion to enjoin state courts, officials, and agencies from interfering with assets in custody of the bankruptcy court."); *N.L.R.B. v. Superior Forwarding, Inc.*, 762 F.2d 695, 698 (8th Cir. 1985) ("[T]he bankruptcy court has the discretion and authority to enjoin federal regulatory proceedings under § 105 when those proceedings would threaten the debtor's estate, and when the court has jurisdiction over a petition in bankruptcy."). This case is not particularly similar to *Missouri* or *Superior Forwarding*, but these cases establish that there are situations in which a debtor who is alleged to be a wrongdoer may find some degree of protection in bankruptcy court.

Second, although some debtors who have done wrong seek bankruptcy protection primarily to obtain the benefit of the automatic stay, others intend to reorganize their finances and to repay their creditors. A debtor who navigates the bankruptcy process in good faith and satisfies the requirements of the Code may receive a discharge of debts. A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). The discharge has no broad exemption for actions by governmental units enforcing their police or regulatory powers. Moreover, when the court grants a discharge to a debtor, the automatic stay of actions against the debtor—which has a broad exemption—terminates by operation of law. 11 U.S.C. § 362(c)(2)(C). Thus, many police-or-regulatory actions that may proceed during a bankruptcy case are not permitted after a debtor receives a discharge.

To be sure, certain types of governmental proceedings are not subject to the discharge injunction. For example, some regulatory actions seek prospective injunctive relief and are not efforts to collect a discharged debt. *See U.S. Commodity Futures Trading Commission v. NRG Energy, Inc.*, 457 F.3d 776, 780 (8th Cir. 2006) ("Because the injunction itself would only restrict NRG from committing future acts, this enforcement action is not a claim for purposes of § 101(5)."). If a debtor receives a discharge in Chapter 7, a governmental unit may pursue "a fine, penalty, or forfeiture [that] . . . is not compensation for actual pecuniary loss," except for certain tax

penalties. 11 U.S.C. § 523(a)(7). Those claims may be discharged in Chapter 13, but the government still may collect restitution ordered in a criminal case. 11 U.S.C. § 1328(a)(3). The exceptions for a corporate debtor in Chapter 11 are even narrower, but they include certain claims for defrauding a governmental unit or evading taxes. *See* 11 U.S.C. § 1141(a)(6). But unless a creditor fits within a discharge exception, it is prohibited *by an injunction* from collecting its debt outside of the bankruptcy process. And no discharge exception applies to the claims that California is pursuing in its state-court litigation. *Cf. In re Peabody Energy Corp.*, 958 F.3d 717, 723 (8th Cir. 2020) (interpreting Chapter 11 plan that expressly excluded from discharge any governmental claim brought under police or regulatory law).

These principles do not directly control here. As liquidating corporations in Chapter 11, the Debtors did not receive discharges. *See* 11 U.S.C. § 1141(d)(3). Nevertheless, that does not mean that it was impermissible for the Plan to include provisions establishing an orderly structure for the liquidation of claims and the distribution of funds to creditors. The Plan Injunction serves that purpose, and it is not objectionable merely because it bears a resemblance to a discharge. As I explained in an opinion overruling an objection to confirmation filed by ChromeCo's former landlord, the absence of a discharge does not mean that there must be an absence of order:

> For example, the Plan contemplates the sale of the stock of the Lemonaid Debtors to a third party for cash. There is no reason why the Landlord or any other creditor should be permitted to ignore the validity of the sale and pursue the stock in the hands of the purchaser, nor should the cash proceeds be distributed to whichever creditor obtains an execution warrant first. Even though [ChromeCo] is not receiving a discharge, the Plan provides for the orderly distribution of its assets, and creditors must comply with its requirements. *See In re AB Liquidation Corp.*, No. 06-1024, 2006 WL 6810956, at *6 (B.A.P. 9th Cir. Dec. 22, 2006) (lack of discharge "does not . . . allow [creditor] to pursue its claim against the plan proceeds").

(Doc. 1646 at 12).

The State's rejoinder that the Plan Injunction results in a "de facto discharge" is not accurate (Doc. 2279 at 8). The Plan and Confirmation Order state specifically that the Debtors are not receiving discharges (Plan at 86; Conf. Order ¶ 45). If the Debtors are re-animated, with assets or new lines of business or otherwise, the Plan does not preclude the State from regulating their operations or from collecting debts that they owe. *See In re Fairchild Aircraft Corp.*, 128 B.R. 976, 982 (Bankr. W.D. Tex. 1991) (stating that Congress denied discharges to liquidating companies "to discourage trading in corporate shells"). But unless that occurs—and the Trust correctly notes that the Plan prohibits it—the Plan Injunction ensures that all creditors pursue their recoveries under the Plan through an orderly claims-reconciliation process. A creditor

cannot prosecute a post-confirmation suit against the Debtors' empty shells in a forum of its choosing and then present the resulting judgment to the Trust as *res judicata*.[4]

Third, and most fundamentally, the Plan Injunction is included in the Plan; it was approved in the Confirmation Order; and it is now final and not subject to appeal. I disagree with California's argument that the Plan Injunction creates a haven for wrongdoers, but even if it does, it is a haven that is not subject to collateral attack, even based on arguments about subject-matter jurisdiction. *See Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152 (2009). Because the State was a party to the Chapter 11 case and was given "a fair chance to challenge" this Court's subject-matter jurisdiction, the State "cannot challenge it now by resisting enforcement" of the Plan Injunction. *Id.* at 153; *see also In re Sorrento Therapeutics, Inc.*, No. 23-90085, 2026 WL 1791033, at *16 (Bankr. S.D. Tex. June 22, 2026) (concluding that plan provision that was arguably impermissible under controlling precedent was enforceable because confirmation order was final).

### 3.     Exclusive jurisdiction and the injunction

Many of the arguments about the Plan Injunction in the State's supplemental brief are similar to those it has made about the Exclusive-Jurisdiction Provision. For example, California argues that the Plan Injunction "expressly yields to contrary language in the Confirmation Order," referring to Paragraph 132 (Doc. 2279 at 5). Although these arguments are persuasive with respect to the Exclusive-Jurisdiction Provision, the Plan Injunction presents different issues.

It is true, as the State argues, that Paragraph 132 preserves a non-bankruptcy court's jurisdiction to address claims under police and regulatory laws. And it is also true that the language of the Plan Injunction expressly provides that the scope or terms of the injunction may be modified by other terms in the Plan or by the Confirmation Order. This exception for the terms of the Confirmation Order incorporates the exception outlined in Paragraph 132. Under the State's reading of Paragraph 132, this exception to the Plan Injunction would essentially nullify the Plan Injunction as it applies to a governmental unit seeking to pursue a police-or-

---

[4] California argues that a bankruptcy court's jurisdiction narrows when a Chapter 11 plan is confirmed, citing *In re Resorts International, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004) (establishing the close-nexus test to evaluate jurisdiction of a bankruptcy court post-confirmation). The Eighth Circuit has not adopted the close-nexus test. And for the reasons just explained, it is possible to view a bankruptcy court's power as expanding—perhaps only slightly, and in a limited respect—upon confirmation, as some actions permitted by the automatic stay are prohibited by the discharge injunction. But in any event, few things have a closer nexus to a bankruptcy plan than the question whether a creditor must comply with the requirements of the plan to obtain payment of its claim.

regulatory claim in another court. However, this interpretation is not correct. For the reasons already discussed, the exception specified in Paragraph 132 merely clarifies that the Plan does not divest any "*tribunal* of any jurisdiction it may have under police or regulatory law." (Conf. Order ¶ 132) (emphasis added). But it does not answer the question whether a particular *governmental unit* has the right to pursue a particular police-or-regulatory claim in a particular non-bankruptcy court.

In some situations, a governmental unit is free to proceed. These include the circumstances set out in Paragraph 131, but there are others as well. For example, the Plan Injunction does not appear to preclude a person that has not filed a proof of claim and does not seek a distribution under the Plan from commencing litigation against the remnants of the Debtors.[5] But the State seeks a distribution under the Plan, and it wants to pursue that distribution by liquidating its claims in a new action filed in state court. The fact that the state court has subject-matter jurisdiction to entertain this action is irrelevant, because the Plan Injunction does not permit the State to pursue it.[6]

An appropriate recognition of the distinction between the state court's jurisdiction and California's ability to proceed in the state court resolves two more of the arguments in the State's supplemental brief:

- The Plan Injunction does not convert this Court's non-exclusive jurisdiction into exclusive jurisdiction. It does not alter any court's jurisdiction.

- The Plan Injunction does not amount to a "de facto removal" of the state-court litigation; it precludes the State from commencing the litigation after the effective date of the Plan.

---

[5] There may be other barriers, in the Plan or otherwise, to such a lawsuit. And, of course, there is little to be gained by pursuing litigation against an asset-less, defunct entity. The important point is that, just as Paragraph 132 does not authorize every action that a governmental unit might prefer to take, the Plan Injunction does not prohibit every action either.

[6] California also suggests that a literal reading of the Plan Injunction would preclude it from commencing an adversary proceeding in this Court, and that would be absurd. Assuming that the State's interpretation is correct—which I need not decide—I disagree that it would result in an absurd outcome. The Trust is responsible for addressing more than 250,000 claims in these cases. Within reason, it may decide when to negotiate with creditors, to object to their claims, or to seek estimation if their claims cannot be liquidated promptly. The Trust may stage these efforts in a manner that permits it to accomplish its goals with the resources available to it. It is not required to deal first with the most litigious creditors on their preferred timetables, even if they elect to litigate here.

And it requires the State to participate in the claims-reconciliation process, which already is underway in this Court, if it wishes to recover on its claim.

• • •

The "haven for wrongdoers" principle is an important one. But it is a principle that relates to the automatic stay, which is subject to abuse by a debtor who seeks a respite from litigation without any intent or ability to pursue confirmation of a reorganization plan and repayment of their creditors. *See Commonwealth*, 913 F.2d at 527 (noting that a haven would be "counter to a fundamental policy behind the police or regulatory power exception" to the stay). The Debtors have confirmed a plan, and thus the automatic stay and its police-power exception no longer determine the right of a governmental unit to pursue litigation. The Plan Injunction sets those boundaries in these cases, much as a discharge injunction would if the Debtors had reorganized.

For these reasons, I agree with the Trust that the Plan Injunction precludes the State from pursuing its claims for monetary relief against the Debtors in state court.

## C.  Gatekeeping Provision

The Trust also relies on another portion of Article VIII.E of the Plan, referred to as the "gatekeeping" provision. In relevant part, it requires a person wishing to pursue a claim "that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date . . . or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date" to first obtain an order of this Court determining that the proposed claim is colorable and specifically authorizing the claimant to proceed (Plan at 85).

At the confirmation hearing, an attorney representing several States—but not California—announced a resolution of those States' objections to confirmation, including that "the gatekeeping provisions do not apply to the states' police and regulatory powers" (Doc. 1633 at 35). The Debtors' counsel agreed but also mentioned the need to clarify language in the draft confirmation order (*Id.* at 36). As entered, the Confirmation Order clearly exempts the particular enforcement actions set forth in Paragraph 131, discussed above, from all of Article VIII.E, including the gatekeeping provision. It is not clear that any others are exempted, nor that the colloquy at the confirmation hearing was intended to refer to anything beyond Paragraph 131.

I need not decide exactly which governmental claims the gatekeeping provision prohibits or permits. Because the Plan Injunction clearly applies here, it is immaterial whether the gatekeeping provision does also.

### D.     Claims Against Non-Debtors and Claims for Non-Monetary Public-Law Relief

As noted above, California's complaint includes fifty "Doe" defendants in addition to the Debtors.[7] The Plan includes releases that might protect the Doe defendants from claims asserted by some creditors and other parties in interest (the "Third-Party Releases"). But California, together with other governmental units, opted out of the Third-Party Releases (Conf. Order ¶ 131).

The three Plan provisions discussed in the preceding subsections do not apply to the State's claims against the Doe defendants. And the Debtors have not identified any other reason why California may not proceed against them. Therefore, I have no basis to preclude the State from continuing its litigation against the Doe defendants.

The State also requests three forms of non-monetary relief against the Debtors in its state-court action. In brief, they are: (1) an injunction to prevent the Debtors from engaging in acts or practices that violate the California Consumer Privacy Act; (2) orders necessary to prevent the Debtors from engaging in unfair competition; and (3) orders necessary to prevent the Debtors from violating California's law prohibiting false advertising. These requests are almost certainly moot. *See Paul v. Milk Depots, Inc.*, 396 P.2d 924, 926-27 (Cal. 1964) (concluding that request for regulatory injunction was moot after defendant sold its assets in bankruptcy and ceased to do business). Nevertheless, they are not barred by the Plan or the Confirmation Order.

### E.     Permissive Abstention

The State requests that I abstain from liquidating its claims against the Debtors and instead allow them to be liquidated in state court. The statute governing discretionary abstention provides that

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

---

[7] It is clear from the context that the Does do not include the so-called Lemonaid Debtors, which operated a pharmacy business, received discharges, and are no longer subject to suit regarding pre-petition claims.

28 U.S.C. § 1334(c)(1). California does not rely on any other abstention doctrines. *Cf. In re Motors Liquidation Co.*, 674 B.R. 425, 448-53 (Bankr. S.D.N.Y. 2025) (discussing several abstention theories in connection with request to enjoin litigation commenced by state attorney general).[8]

The Bankruptcy Appellate Panel has stated that "federal courts should exercise their jurisdiction if it is properly conferred and that abstention is the exception rather than the rule." *In re Williams*, 256 B.R. 885, 894 (B.A.P. 8th Cir. 2001). And it has identified twelve factors for a court to consider in connection with a request for abstention, though no one factor is determinative:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

(2) the extent to which state law issues predominate over bankruptcy issues,

(3) the difficult or unsettled nature of the applicable law,

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) the substance rather than the form of an asserted 'core' proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden on the bankruptcy court's docket,

---

[8] The Trust argues that abstention is "not available under the Plan" because of the Exclusive-Jurisdiction Provision (Doc. 2272 at 42). But even if I agreed with the Trust's interpretation of that provision, it would not preclude me from abstaining in an appropriate situation. *See* 11 U.S.C. § 305 (authorizing court to abstain from bankruptcy case, over which federal courts have exclusive jurisdiction); *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483 (1940) (holding that court of bankruptcy should have submitted discrete question of state law to state court despite federal court's "exclusive and nondelegable control over the administration of an estate in its possession").

(10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties,

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of nondebtor parties.

*Id.* (cleaned up).

Several of the *Williams* factors favor the State's position. This dispute turns primarily on California law, which is unsettled in key respects, and it would be possible for the parties to litigate the State's claims in state court, with recovery only as provided in the Plan.

A few factors are neutral or entitled to minimal weight. There is a related proceeding in state court, but it was commenced only recently, and the parties have invested little effort or expense in it thus far. The burden on this Court's docket is not likely to be significantly different either way, for reasons that I will explain. Perhaps the State's commencement of its suit is driven by forum-shopping, but it is not the egregious sort of forum-shopping that might outweigh more important considerations. And the importance of the non-debtor defendants in state court is difficult to assess without knowing who they are or how aggressively California intends to pursue them.

On the other side of the scale are considerations that weigh strongly against abstention. The claim objection pending before me is a core proceeding in form and in substance. *See United States v. Gurley*, 434 F.3d 1064, 1067 (8th Cir. 2006) ("Adjudication of the filing of and objection to a proof of claim in a bankruptcy case is a core proceeding arising under Title 11."); *In re SCS Logistics, Inc.*, 671 B.R. 224, 241 (Bankr. S.D. Ohio 2025) ("The standard for abstention is heightened where the proceeding involves the allowance or disallowance of a claim.") (cleaned up).[9] The claim objection is closely related to the main bankruptcy case, and abstention is likely to negatively affect the efficient administration of the bankruptcy estates. The claims of the State and similarly situated governmental units represent some of the most significant unresolved claims in these cases, and it is unlikely that the Trust will be able to make material distributions to other creditors until the governmental claims are liquidated. Thus, the Trust argues credibly that if California is permitted to proceed in state court, the Trust will request that I estimate the State's claims under Section 502(c) of the Bankruptcy Code. If I were to grant that request, the

---

[9] The State argues that its litigation against the Debtors is a non-core proceeding. Although I do not follow the argument, I am not being asked to abstain from hearing the state-court litigation. The State's claims that are before me "would necessarily be resolved in the claims allowance process" because they are part of the claims allowance process. *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

result would be parallel proceedings in two courts—or more, if other States seek the same accommodation—with the additional expense that would accompany them. If I were to deny an estimation motion, these cases likely would grind to a halt until the state-court proceedings were litigated or settled. Neither of those options furthers the efficient administration of the estates.

California relies primarily on *Nathanson v. N.L.R.B.*, 344 U.S. 25 (1952), and *In re Titan Energy, Inc.*, 837 F.2d 325 (8th Cir. 1988), in support of its abstention argument, but neither is particularly relevant here. The Court in *Nathanson* commented favorably on the expertise of federal administrative agencies and suggested that a bankruptcy court "normally should stay its hand pending an administrative decision." 344 U.S. at 30. But *Nathanson* was not an abstention case; the issue was that the referee in bankruptcy disallowed a claim that the NLRB had adjudicated before the bankruptcy petition was filed. *See id.* at 26. And the *Titan* court concluded that abstention was appropriate because of the "attenuated" nexus between state-court litigation and the bankruptcy estate. *Titan*, 837 F.2d at 333. That litigation "was brought by one non-debtor against another non-debtor, and [would] have an effect on debtor's estate only if certain contingencies occur[red]." *Id.* at 332. For the reasons explained above, California's litigation is very different.

I thus conclude that permissive abstention is not warranted in the circumstances present here.

## IV.    Conclusion

For these reasons, IT IS HEREBY ORDERED AS FOLLOWS:

1.    The Trust's Motion to Enforce (Doc. 2212) is GRANTED IN PART AND DENIED IN PART.

2.    California's Abstention Request (included in Doc. 2218) is DENIED.

3.    Within fourteen (14) days after the entry of this Order, the People of the State of California must either dismiss the litigation styled *The People of the State of California v. Chrome Holding Co., et al.*, No. CGC-26-636891, in the Superior Court for the City and County of San Francisco, or amend the complaint in that litigation to eliminate claims for monetary relief against Chrome Holding Co. and ChromeCo, Inc.

4.    This Order does not preclude California from pursuing its claims against the Doe defendants or from seeking non-monetary public-law relief against Chrome Holding Co. or ChromeCo, Inc.

5.     The parties should meet and confer to discuss scheduling and other matters concerning The Plan Administration Trust's Objection to California's Claim (Doc. 2100) and should report any agreement to the assigned courtroom deputy clerk.


Dated:  July 10, 2026
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge


Serve:

**Thomas H Riske**
Carmody MacDonald P.C.
120 South Central Ave., Ste. 1800
St. Louis, MO 63105

**Christopher Hopkins**
1285 Avenue of the Americas
New York, NY 10019

**Bernard Ardavan Eskandari**
California Department of Justice
300 South Spring Street
Suite 1702
Los Angeles, CA 90013

**Daniel M Nadal**
Office of The Attorney General
600 W Broadway
Suite 1800
San Diego, CA 92101