**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.),[1]<br><br>Wind-Down Debtor. | Case No. 25-40976-357<br>Chapter 11<br><br><br>Response Deadline:  August 3, 2026 at 4:00 p.m. (prevailing Central Time)<br>Hearing Date:  August 10, 2026<br>Hearing Time:  9:00 a.m. (prevailing Central Time)<br>Hearing Location:  Courtroom 5 North |

**THE PLAN ADMINISTRATION TRUST'S MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE STIPULATION AND AGREED ORDER
BY AND AMONG THE PLAN ADMINISTRATION TRUST, THE WIND-DOWN
DEBTOR, AND THE SIGNATORY GOVERNMENTAL CLAIMANTS
AND (II) GRANTING RELATED RELIEF**

The Plan Administration Trust (the "Trust"),[2] on behalf of the wind-down debtor in the

above-captioned case[3] (following the effective date of the Plan, the "Wind-Down Debtor" and,

prior to the effective date of the Plan, the "Debtor" and, together with its affiliated debtors, the

"Debtors"), respectfully states as follows in support of this motion (the "Motion"):[4]

---

[1]   The Wind-Down Debtor's service address for purposes of the chapter 11 cases is:  490 Post St., Suite 500 PMB 2065, San Francisco, CA 94102 United States.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Modified Fifth Amended Joint Plan of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1655] (the "Plan").

[3]   Pursuant to the order closing the chapter 11 cases of all of the Wind-Down Debtor entities except Wind-Down Debtor Chrome Holding Co. [Docket No. 1843], the Trust is filing this Motion on behalf of itself and the Wind-Down Debtor but this Motion and the Stipulation may relate to Claims filed against any of the Debtors or the Wind-Down Debtors, as applicable.

[4]   Article VI of the Plan provides that "the Plan Administration Trust, and the Representatives, as applicable, shall have the sole authority to . . . (c) settle or compromise any Disputed Claim or Interest without any further notice to or action, Order, or approval by the Bankruptcy Court . . . ."  Accordingly, the Parties (as defined below) submit that pursuant to Article VI of the Plan, the Parties can enter into this Stipulation and settle the Signatory

**Relief Requested**

1.      The Trust seeks entry of an order (the "Proposed Order")[5] (a) approving and authorizing the Trust to enter into and perform under the Stipulation and Agreed Order attached hereto as **Exhibit A** (the "Stipulation") by and among the Trust, the Wind-Down Debtor, and the governmental entities set forth on Appendix A to the Stipulation that filed one or more proofs of claim in the chapter 11 cases arising from or related to the 2023 Cyber Security Incident (the "Signatory Governmental Claims") except for the State of California (collectively, the "Signatory Governmental Claimants" and, together with the Trust and the Wind-Down Debtor, the "Parties") and (b) granting related relief.

2.      In support of this Motion, the Trust submits the *Declaration of Thomas B. Walper in Support of the Plan Administration Trust's Motion for Entry of an Order (I) Authorizing and Approving the Stipulation and Agreed Order by and Among the Plan Administration Trust, the Wind-Down Debtor, and the Signatory Governmental Claimants and (II) Granting Related Relief* (the "Walper Declaration") filed contemporaneously herewith.

**Preliminary Statement**[6]

3.      The Stipulation seeks to consensually resolve claims asserted by the 42 Signatory Governmental Claimants against the Debtors arising from the 2023 Cyber Security Incident.[7] These claims purport to seek billions of dollars in alleged damages, and while the Trust maintains

---

Governmental Claims (as defined below) without Court (as defined below) approval but are filing this Motion with the Court to provide certainty to the Parties and notice to parties-in-interest.  The Trust reserves all rights under Article VI of the Plan, including the right to settle or compromise any Disputed Claim or Interest without any further notice to or action, Order, or approval by the Court.

[5]    A copy of the Proposed Order will be made available on the website of the Wind-Down Debtor's claims and noticing agent at https://restructuring.ra.kroll.com/23andMe.

[6]    Capitalized terms used but not defined in this section shall have the meanings ascribed to them elsewhere in this Motion or the Plan.

[7]    The Signatory Governmental Claimants include every state that filed claims against the Debtors related to the 2023 Cyber Security Incident except California.

that penalties will be unwarranted here, litigating these claims would be a protracted and costly process.  Through the Stipulation, the Trust is proposing to fully and finally resolve these claims for an immediate aggregate payment of $18 million to the Signatory Governmental Claimants.

4.      The Stipulation is the result of extensive arm's length negotiations among the Trust and the Signatory Governmental Claimants.  In the Trust's business judgment, the Stipulation resolves the Signatory Governmental Claims on reasonable terms given the risks, costs, and delay associated with litigating these claims, and satisfies the Eighth Circuit's standard for approval under Bankruptcy Rule 9019.

5.      For all these reasons and the reasons set forth below, the Trust respectfully requests that the Court enter the Proposed Order approving the Stipulation.

**Jurisdiction**

6.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Trust consents to a final order with respect to this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

7.      Venue is proper pursuant to 28 U.S.C. § § 1408 and 1409.

8.      The bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3

**Background**

I.  **The Chapter 11 Cases**

9.      In October 2023, the Company identified and disclosed a data breach (*i.e.*, the 2023 Cyber Security Incident) that resulted in numerous actions being filed or otherwise threatened against the Debtors as well as the initiation of various governmental investigations.

10.     On March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

11.     On April 30, 2025, the Court entered the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof, and (II) Granting Related Relief* [Docket No. 349], which established September 19, 2025 as the deadline by which a governmental unit, as defined in section 101(27) of the Bankruptcy Code, must file proofs of claim in the Chapter 11 Cases (the "Governmental Bar Date"). Prior to the Governmental Bar Date, the Signatory Governmental Claimants filed proofs of claim purporting to seek at least approximately $100 billion in alleged damages.

12.     On December 1, 2025, the Court entered an order [Docket No. 1662] confirming the Plan (the "Confirmation Order"). On December 5, 2025, the Court entered an amended version of the Confirmation Order [Docket No. 1696].

13.     On December 9, 2025, the Wind-Down Debtor filed a notice [Docket No. 1709], disclosing that the effective date of the Plan occurred on December 5, 2025.

II.  **Negotiations with the Signatory Governmental Claimants**

14.     Starting in early 2026, the Trust engaged in good-faith, arms'-length negotiations with a steering committee representing the Signatory Governmental Claimants to try and resolve the Signatory Governmental Claims in a consensual and value-maximizing manner.

15.     As a result of such negotiations, the Parties reached an agreement in principle on the terms of a settlement regarding the Signatory Governmental Claims and cooperated thereafter to finalize and document their agreement in the Stipulation.  On July 14, 2026, the Parties executed the Stipulation.

### III.     The Proposed Stipulation

16.     The material terms of the Stipulation are set forth below:[8]

a.   **Settlement Terms:** Subject to the conditions set forth in the Stipulation, the Parties agree as follows:

   i.   The effectiveness of the Stipulation is conditioned upon the Court entering a final order approving the Stipulation in accordance with Federal Rule of Bankruptcy Procedure 9019 (the "Approval Order").

   ii.  The Signatory Governmental Claims shall be deemed allowed in the total amount of $150 million (the "Allowed Signatory Governmental Claims"); *provided* that the total recovery the Signatory Governmental Claims may receive from the Wind-Down Debtor and the Trust is limited to cash payments totaling the Recovery Amount (as defined below).

   iii. Within ten business days following the Court's entry of the Approval Order, the Trust shall pay to each Signatory Governmental Claimant its allotted amount of $18 million (the "Recovery Amount") as detailed in Appendix A attached to the Stipulation, and in accordance with Appendix B attached to the Stipulation, in a manner and method provided by each Signatory Governmental Claimant, in full and complete satisfaction of the Signatory Governmental Claims;

   iv.  The amount of the Allowed Signatory Governmental Claims (a) will not have any evidentiary or precedential effect for any purpose in the chapter 11 cases or in any other bankruptcy case to which the Signatory Governmental Claimants may be a party; (b) may not be used (1) by any party other than the Signatory Governmental Claimants for any reason as a basis to assert any claim, cause of action, theory of liability or damages, or (2) by any party in any other manner adverse to the Debtors, the Wind-Down Debtors, or the Trust; and (3) will be automatically reduced to $18 million without any further action by any party or the Court if any party asserting any claim or cause of action to obtain an order or ruling from any court or judicial body relies in any manner whatsoever on the amount of the

---

[8]   The summary set forth herein is qualified in its entirety by the terms of the Stipulation, and the terms of the Stipulation shall control in the event of a conflict.

Allowed Signatory Governmental Claims as a basis for establishing any liability or damages against the Debtors, the Wind-Down Debtors, or the Trust; *provided* that the foregoing does not apply with respect to the Recovery Amount and any reduction pursuant to clause (3) will not affect the Recovery Amount;

v. Following the Trust's payment in full of the Recovery Amount, the Notice and Claims Agent may update the claims register in the Wind-Down Debtor's chapter 11 case to designate such claims as "satisfied in full"; and

vi. The Debtors and the Wind-Down Debtor shall be prohibited from engaging in (a) direct consumer sales of goods and services for five years and (b) collection of (or maintenance of) personally identifiable information for five years other than personally identifiable information that the Trust is required to retain under the Plan, the Confirmation Order, or the Plan Administration Trust Agreement to fulfill its obligations or perform its duties under those agreements.

b. **Mutual Releases**.

i. Upon the Signatory Governmental Claimants' receipt of the Recovery Amount, the Signatory Governmental Claimants shall be deemed to, and agree to, release, acquit, satisfy, and forever discharge the Debtors, the Wind-Down Debtors, their estates, any successors thereto, including the Trust, and each of their former or current members, shareholders, affiliates, related entities, officers, directors, managers, employees, principals, successors, predecessors, and representatives (the "Debtor Released Parties") for any claims arising out of or related to the 2023 Cyber Security Incident, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future. For the avoidance of doubt, the release described in the Stipulation does not release, acquit, satisfy, or forever discharge any regulatory liability that may have been or may be incurred by the Debtor Released Parties after the Effective Date of the Plan, whether presently existing or arising in the future, solely to the extent such liability does not arise from or relate to the 2023 Cyber Security Incident. For the avoidance of doubt, the release shall in no way apply to 23andMe Research Institute (f/k/a TTAM Research Institute).

ii. Upon the Signatory Governmental Claimants' receipt of the Recovery Amount, the Debtor Released Parties shall be deemed to, and agree to, release, acquit, satisfy, and forever discharge the Signatory Governmental Claimants and each of their representatives, predecessors, and successors for any claims arising out of or related to the 2023 Cyber Security Incident, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

6

## Basis for Relief Requested

### I.        The Court Should Approve the Stipulation Pursuant to Bankruptcy Rule 9019

17.        Bankruptcy Rule 9019 grants the Court authority to approve the settlement of claims and controversies after notice and a hearing. Specifically, Bankruptcy Rule 9019(a) provides the following:

> On the [debtor's] motion and after notice and a hearing, the court may approve a compromise or settlement. Notice must be given to: all creditors; the United States trustee . . . and any other entity as the court may direct.

> Fed. R. Bankr. P. 9019(a).

18.        Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. In describing the standard for evaluating a settlement under Bankruptcy Rule 9019, the United States Court of Appeals for the Eighth Circuit has stated that a settlement need not be "the best result obtainable," but rather, the standard for evaluation of a settlement is whether "the settlement is fair and equitable and in the best interests of the estate." *Tri-State Fin., LLC* v. *Lovald*, 525 F.3d 649, 654 (8th Cir. 2008) (citing *In re Martin*, 212 B.R. 316, 319 (8th Cir. BAP 1997)) (internal quotation marks omitted). The evaluating court "need only determine that [the] settlement does not fall below the lowest point in the range of reasonableness." *Id.*; *see also In re Martin*, 212 B.R. at 319 ("The court does not substitute its judgment for that of the trustee, but reviews the issues to see if the settlement falls below the lowest point of reasonableness.").

19.        In determining the range of reasonableness, the Court need not decide the numerous issues of law and fact raised by the settlement. *See Cosoff* v. *Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman* v. *Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In other words, the Court does not need to conduct a "mini-trial" of the underlying facts and merits; it needs

7

to only evaluate those facts that are necessary to allow it to assess the settlement and to make an independent judgment about the settlement. *In re Hancock-Nelson Mercantile Co., Inc.*, 95 B.R. 982, 995–96 (Bankr. D. Minn. 1989) ("However, *TMT Trailer Ferry* does not impose upon this Court the obligation to compel the full trial record, or the burden of reviewing that record—or even the duty to conduct a 'mini-trial.' . . . All that is necessary is . . . the production of sufficient facts which would permit a reasoned judgment that a controversy should be settled under the terms proposed."); *see also In re Martin*, 212 B.R. at 319 (B.A.P. 8th Cir. 1997) ("[I]t is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement."); 10 Collier on Bankruptcy ¶ 9019.02 (16th 2018) ("The *TMT* rule does not require a bankruptcy judge to hold a full evidentiary hearing or even a "mini-trial" before a compromise can be approved.  Otherwise, there would be no point in compromising; the parties might as well go ahead and try the case.").  Ultimately, "[a] decision to approve or disapprove a settlement under [Bankruptcy] Rule 9019 is within the discretion of the bankruptcy judge." *In re Racing Servs., Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005).

20.     To arrive at the range of reasonableness, the evaluating court should consider the following four factors (the "<u>*TMT* Factors</u>") set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968) to determine the reasonableness of a settlement, which were relied on by the Eighth Circuit in *Lovald*: "(A) the probability of success in the litigation; (B) the difficulties, if any to be encountered in the matter of collection; (C) the complexity of the litigation involved, a[n]d the expense, inconvenience and delay necessarily attending it; and (D) the paramount interest of the creditors and a proper deference to their reasonable views in the premises."  525 F.3d at 654 (8th Cir. 2008) (internal quotation marks

8

and citations omitted); *see also In re Brodkey Bros., Inc.*, No. 13-80203 (TLS), 2013 WL 5636484

at *7 (Bankr. D. Neb. Oct. 15, 2013) (considering the same factors).

21.      Further, it is well established that the Bankruptcy Code authorizes the debtor to use

property of the estate outside the ordinary course of business with court approval and a valid

business reason after notice and a hearing.  11 U.S.C. § 363(b)(1); *see, e.g., ASARCO, Inc.* v. *Elliott

Mgmt.* (*In re ASARCO, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession

or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be

some articulated business justification for using, selling, or leasing the property outside the

ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.

1986)); *Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985) (holding

that the standard to assume a lease is the business judgment standard); *see also In re MF Global

Inc.,* 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012).

## II.      The Stipulation Satisfies the Eighth Circuit's Four-Factor Test and Should Be Approved

22.      In the Trust's business judgment, the resolution embodied in the Stipulation is in

the best interests of the Trust and its beneficiaries, and falls well within the range of

reasonableness.  The Parties engaged in good-faith negotiations to reach a consensual agreement

that allows the Trust to avoid the cost, delay, and risk of litigating the Signatory Governmental

Claims, to the detriment of the Trust and its stakeholders.  Moreover, settling the Signatory

Governmental Claims for an aggregate payment of $18 million represents a fair and equitable

outcome for all Parties, affords the Trust finality with respect to the Signatory Governmental

Claims, and as discussed in the Walper declaration, is within the range of comparable settlements

with governmental units involving similar cyber incidents, particularly after factoring in the costs

9

and delay in making distributions to Trust beneficiaries that would result from litigation of the Signatory Governmental Claims. *See* Walper Declaration ¶¶ 9-14.

23.    The Stipulation also satisfies the *TMT* Factors. ***First***, with respect to the probability of success in litigating the Signatory Governmental Claims, while the Parties are confident in their respective positions, the Signatory Governmental Claims issues are complex and there is an inherent risk of loss in any litigation. By resolving the Signatory Governmental Claims through the settlement contemplated in the Stipulation, the Trust is able to pay an aggregate amount of $18 million, far less than the amounts contemplated in the Signatory Governmental Claimants' proofs of claim. ***Second***, litigating the Signatory Governmental Claims would require the Trust to divert resources from, among other things, completing its claims reconciliation process, which would delay stakeholder recoveries in this chapter 11 case. In contrast, the Stipulation allows the Trust to resolve the Signatory Governmental Claims now without expending significant resources or incurring unnecessary delay. ***Third***, even if the Trust were to litigate the Signatory Governmental Claims to a favorable conclusion, it will have expended significant resources to achieve such an outcome—which the Trust does not believe would be prudent because such costs and the length of time associated with litigating such claims to conclusion would likely outweigh the incremental benefit achieved by such favorable outcome. ***Finally***, the Stipulation is in the best interest of the Trust's stakeholders. As discussed above, the compromises set forth in the Stipulation allow the Trust to resolve the Signatory Governmental Claims at a fraction of the amounts asserted in the Signatory Governmental Claims' proofs of claim, avoid unnecessary, costly litigation and resolve the Signatory Governmental Claims in a timely manner, all of which will inure to the benefit of the Trust's stakeholders.

24.     For the reasons stated herein, the Trust respectfully submits that the Stipulation represents a fair and reasonable compromise under Bankruptcy Rule 9019(a) that is in the best interests of the Trust and its beneficiaries.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h).  The Trust respectfully submits that the waiver requested herein is warranted.  As discussed above, the Stipulation is necessary to preserve value for the Trust's stakeholders and requires the Trust to pay each Signatory Governmental Claimant its allotted amount of the Recovery Amount in a manner and method provided by each Signatory Governmental Claimant within 10 days of the Court's entry of the Proposed Order.  Accordingly, to the extent any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Trust requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Trust has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

26.     Except as expressly set forth herein, nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against the Wind-Down Debtor or a Debtor entity under the Bankruptcy Code or other applicable law; (b) a waiver of the Trust's, Wind-Down Debtor's, or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion

11

or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors or the Wind-Down Debtor; (g) a waiver or limitation of the Trust's, Wind-Down Debtor's, or any other party in interest's rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Trust, the Debtors, or the Wind-Down Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Trust's, Wind-Down Debtor's, or any other party in interest's rights to subsequently dispute such claim.

## Notice

27.     The Trust will provide notice of this motion to the following parties: (a) the U.S. Trustee; (b) the Signatory Governmental Claimants and their respective counsel (if any); (c) the GUC Representative and the Equity Representative; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (e) any other person designated by the Court as requiring notice (collectively, the "Notice Parties").  Notice of this motion and any order entered hereon will be served in accordance with Local Rule 9013-3(E)(1).  The Trust submits that, in light of the nature of the relief requested, no other or further notice need be given.

12

28.    A copy of this motion is available on (a) PACER at https://pacer.uscourts.gov/ and (b) the website maintained by the Notice and Claims Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/23andMe.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Trust respectfully requests that the Court enter the Proposed Order and

grant such other relief as the Court deems appropriate under the circumstances.

Dated: July 14, 2026
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
/s/ *Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Samuel S. Brand #73638MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:    (314) 854-8600
Facsimile:    (314) 854-8660
Email:        thr@carmodymacdonald.com
              nrw@carmodymacdonald.com
              ssb@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Jessica I. Choi (admitted *pro hac vice*)
Grace C. Hotz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990
Email:        pbasta@paulweiss.com
              chopkins@paulweiss.com
              jchoi@paulweiss.com
              ghotz@paulweiss.com

*Counsel for the Wind-Down Debtor*

**<u>Exhibit A</u>**

**Stipulation**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CHROME HOLDING CO.<br>(f/k/a 23ANDME HOLDING CO.),[1]<br><br>Wind-Down Debtor. | Case No. 25-40976-357<br>Chapter 11 |

**JOINT STIPULATION AND AGREED ORDER**
**AMONG THE PLAN ADMINISTRATION TRUST, THE WIND-DOWN DEBTOR, AND**
**THE SIGNATORY GOVERNMENTAL CLAIMANTS**

This stipulation and agreed order (this "Stipulation")[2] is made as of July 14, 2026 by and among the Plan Administration Trust, the wind-down debtor in the above-captioned case (the "Wind-Down Debtor" and, collectively with the Wind-Down Debtor's debtor subsidiaries prior to the Effective Date of the Plan, the "Debtors") as applicable, and the governmental entities set forth on Appendix A to this Stipulation that filed one or more proofs of claim in the Chapter 11 Cases arising from or related to the 2023 Cyber Security Incident (collectively, including any amendments thereto, the "Signatory Governmental Claims") except for the State of California (the "Signatory Governmental Claimants"[3] and, together with the Plan Administration Trust and

---

[1]   The Wind-Down Debtor's service address for purposes of these chapter 11 cases is:  490 Post St., Suite 500 PMB 2065, San Francisco, CA 94102 United States.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (as defined herein).

[3]   Appendix A to this Stipulation sets forth the Signatory Governmental Claimants and proofs of claim filed by the Signatory Governmental Claimants that are the subject of this Stipulation.  For the avoidance of doubt, (a) the Signatory Governmental Claimants include all governmental entities that filed one or more proofs of claim in the Chapter 11 Cases arising from or related to the 2023 Cyber Security Incident except for the State of California and (b) the Signatory Governmental Claims do not include proofs of claim related to taxes asserted by the Signatory Governmental Claimants.

the Wind-Down Debtor, the "Parties").[4]

## Recitals

WHEREAS, on March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court");

WHEREAS, on April 30, 2025, the Court entered an order [Docket No. 349], which, among other things, set September 19, 2025, as the deadline by which a governmental unit, as defined in section 101(27) of the Bankruptcy Code, must file proofs of claim in the Chapter 11 Cases (the "Governmental Bar Date");

WHEREAS, prior to the Governmental Bar Date, the Signatory Governmental Claimants filed proofs of claim totaling at least approximately $100,000,000,000.00, inclusive of unliquidated claims;

WHEREAS, the Debtors, the Wind-Down Debtor, and the Plan Administration Trust, as applicable, dispute the Signatory Governmental Claims (the "Dispute");

WHEREAS, the Parties desire to resolve the Dispute consensually by way of this Stipulation to avoid the cost, risk, burden, and delay of litigation while preserving all defenses and without admission of liability by any Party;

WHEREAS, on October 3, 2025, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures and Solicitation Package,*

---

[4]    On January 21, 2026, the Court entered an order [Docket No. 1843] (the "Case Closing Order"), which (a) closed all of the Debtors' and Wind-Down Debtors', as applicable, Chapter 11 Cases except for the Chapter 11 Case of Wind-Down Debtor Chrome Holding Co. and (b) directed that all Remaining Matters (as defined in the *Wind-Down Debtors' Application For Entry of an Order (I) Closing Certain Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 1778]) be administered and adjudicated at Wind-Down Debtor Chrome Holding Co. Accordingly, pursuant to the Case Closing Order, the Plan Administration Trust is filing this Stipulation on behalf of Wind-Down Debtor Chrome Holding Co. but this Stipulation relates to all Signatory Governmental Claims filed against any of the Debtors or the Wind-Down Debtors, as applicable.

*(III) Scheduling a Confirmation Hearing, (IV) Establishing Procedures for Objecting to the Plan, (V) Establishing the California Claims Determination Procedures, (VI) Approving the Form, Manner, and Sufficiency of Notice of the Confirmation Hearing, (VII) Scheduling Certain Dates Related Thereto, and (VIII) Granting Related Relief* [Docket No. 1442], which approved the Debtors' disclosure statement [Docket No. 1424] and approved certain solicitation and voting procedures with respect to the *Second Amended Joint Plan of Chrome Holding Co. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1427] (as modified, amended, or supplemented from time to time, the "Plan");

WHEREAS, on December 1, 2025, the Court entered an order [Docket No. 1662] confirming the Plan (the "Confirmation Order").  On December 5, 2025, the Court entered an amended version of the Confirmation Order [Docket No. 1696];

WHEREAS, on December 9, 2025, the Wind-Down Debtor filed a notice [Docket No. 1709] disclosing, among other things, that the Effective Date occurred on December 5, 2025;

WHEREAS, the Parties have determined that it is in their best interests to enter into this Stipulation agreeing to the allowance and treatment of the Allowed Signatory Governmental Claims (as defined below) on the terms set forth herein; and

WHEREAS, this Stipulation does not apply to any claims filed by governmental entities that are not specifically identified as Signatory Governmental Claims in footnote 3 (*i.e.* claims filed by the Signatory Governmental Claimants for taxes and claims filed by the State of California).

**NOW, IT IS THEREFORE STIPULATED AND AGREED, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION, IT IS SO ORDERED:**

1. The foregoing recitals are incorporated herein by reference.

2.      The Signatory Governmental Claims shall be deemed allowed in the total amount of $150,000,000.00 (the "Allowed Signatory Governmental Claims"); *provided* that the cash recovery the Signatory Governmental Claims shall receive from the Wind-Down Debtor and the Plan Administration Trust is an aggregate amount of $18,000,000.00 (the "Recovery Amount"), which amount, once paid in full, will constitute full and complete satisfaction of the Allowed Signatory Governmental Claims.

3.      The amount of the Allowed Signatory Governmental Claims (a) will not have any evidentiary or precedential effect for any purpose in the Chapter 11 Cases or in any other bankruptcy case to which the Signatory Governmental Claimants may be a party; (b) may not be used (i) by any party other than the Signatory Governmental Claimants for any reason as a basis to assert any claim, cause of action, theory of liability or damages, or (ii) by any party in any other manner adverse to the Debtors, the Wind-Down Debtors, or the Plan Administration Trust; and (c) will be automatically reduced to $18,000,000.00 without any further action by any party or the Court if any party asserting any claim or cause of action to obtain an order or ruling from any court or judicial body relies in any manner whatsoever on the amount of the Allowed Signatory Governmental Claims as a basis for establishing any liability or damages against the Debtors, the Wind-Down Debtors, or the Plan Administration Trust. The foregoing does not apply with respect to the Recovery Amount and any reduction pursuant to clause (c) will not affect the Recovery Amount.

4.      Allowed Signatory Governmental Claims are to be classified and treated as Allowed Chrome General Unsecured Claims.  This agreement is only applicable to the Allowed Signatory Governmental Claims.

5.      The Plan Administration Trust will pay the Recovery Amount to the Signatory Governmental Claimants within ten (10) business days of the Court's approval of this Stipulation.

6.      The Plan Administration Trust will pay each Signatory Governmental Claimant its allotted amount of the Recovery Amount as detailed in <u>Appendix A</u>, and in accordance with <u>Appendix B</u>, in a manner and method to be provided by each Signatory Governmental Claimant to the Plan Administration Trust, which manner and method shall be reasonably acceptable to the Plan Administration Trust. Each of the Parties acknowledges, agrees and understands that payments made under this Stipulation may be used at the sole discretion of each of the Signatory Governmental Claimants for any lawful purpose, and subject to any applicable laws of each of the Signatory Governmental Claimants and as further detailed in Appendix B.

7.      The Plan Administration Trust's payment of the Recovery Amount to the Signatory Governmental Claimants will constitute the full and complete satisfaction of the Signatory Governmental Claims and the Notice and Claims Agent may update the claims register in the Chapter 11 Case to designate such claims as "satisfied in full" immediately upon payment in full of the Recovery Amount.

8.      Notwithstanding anything to the contrary herein, this Stipulation shall become effective only if it is executed by the Plan Administration Trust, the Wind-Down Debtor, and all Signatory Governmental Claimants.  Unless and until all such parties have executed this Stipulation, this Stipulation shall be of no force or effect, and the Plan Administration Trust shall have no obligation to pay any portion of the Recovery Amount.

9.      The Plan Administration Trust agrees that the Debtors and the Wind-Down Debtor shall be prohibited from engaging in (a) direct consumer sales of goods and services for five (5) years and (b) collection of (or maintenance of) personally identifiable information for

five (5) years other than personally identifiable information that the Trust is required to retain under the Plan, the Confirmation Order, or the Plan Administration Trust Agreement to fulfill its obligations or perform its duties under those agreements.

10.     Upon the Signatory Governmental Claimants' receipt of the Recovery Amount, the Signatory Governmental Claimants shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Debtors, the Wind-Down Debtors, their estates, any successors thereto, including the Plan Administration Trust, and each of their former or current members, shareholders, affiliates, related entities, officers, directors, managers, employees, principals, successors, predecessors, and representatives (the "Debtor Released Parties") for any claims arising out of or related to the 2023 Cyber Security Incident, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.  For the avoidance of doubt, the release described herein does not release, acquit, satisfy, or forever discharge any regulatory liability that may have been or may be incurred by the Debtor Released Parties after the Effective Date of the Plan, whether presently existing or arising in the future, solely to the extent such liability does not arise from or relate to the 2023 Cyber Security Incident.  For the avoidance of doubt, this release shall in no way apply to 23andMe Research Institute (f/k/a TTAM Research Institute).

11.     Upon the Signatory Governmental Claimants' receipt of the Recovery Amount, the Debtor Released Parties shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Signatory Governmental Claimants and each of their representatives, predecessors, and successors for any claims arising out of or related to the 2023 Cyber Security Incident, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

12.     The Parties agree that the releases set forth herein shall be construed as broadly as possible, except that the obligations of the Parties as set forth in this Stipulation shall not be released.

13.     This Stipulation may be signed in counterparts and signatures may be delivered by fax or email, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Each Party who executes this Stipulation on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such Party.

14.     This Stipulation constitutes the entire agreement between the Parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without the prior written consent of all Parties hereto.

15.     Nothing in this Stipulation shall be construed as a waiver of the validity, in part or in whole, of any claim filed by the Signatory Governmental Claimants.

16.     Nothing in this Stipulation constitutes a waiver of any other rights under the Bankruptcy Code.

17.     This Stipulation shall be binding upon and inure to the benefit of the Wind-Down Debtor, its estate, the Plan Administration Trust, and the Signatory Governmental Claimants, as well as their respective heirs, representatives, predecessors, successors and assigns, as the case may be.

18.     Nothing in this Stipulation shall in any way be construed as or deemed to be evidence of or reflect an admission on behalf of any of the Parties to this Stipulation regarding any claim or right that such Party may have against any other Party to this Stipulation unless such claim or right is specifically addressed in this Stipulation.

19. Each Party agrees that this Stipulation shall not be used in any other proceeding for any purpose.

20. Each of the Parties represents and warrants to the other Parties that it has: (a) entered into this Stipulation freely and voluntarily and with full knowledge of its significance; and (b) been represented by counsel of its own choice in the negotiation, drafting, and execution of this Stipulation.

21. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Rules"), or otherwise, the terms and conditions of this Stipulation shall be immediately effective and enforceable upon its entry.

22. The Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation. Any request for relief brought before the Court to resolve a dispute arising from or related to this Stipulation, and the matters agreed to herein, shall be brought on proper notice and in accordance with the relevant Bankruptcy Rules and the Local Rules.

23. The Notice and Claims Agent and the Clerk of this Court are authorized to take any and all actions necessary and appropriate to give effect to this Stipulation.

*[Signature Pages On File With Paul, Weiss]*

## Appendix A[1]

| Appendix A: Signatory Governmental Claimants and Allotment of Allowed Recovery | | | |
|---|---|---|---|
| State | Name on Claim | Claim Numbers | Payment |
| .Alabama | The State of Alabama | 258750, 258751 | $ 260,817.00 |
| .Alaska | State of Alaska | 258738, 258739 | $ 165,447.00 |
| .Arizona | State of Arizona | 258902, 258903 | $ 612,269.00 |
| .Arkansas | State of Arkansas, *ex rel*. Tim Griffin, Attorney General | 258803, 258805 | $ 431,937.00 |
| .Colorado | State of Colorado | 258850, 258852 | $ 394,324.00 |
| .Connecticut | State of Connecticut, Office of the Attorney General | 258711, 258712 | $ 887,729.00 |
| .Delaware | State of Delaware | 258817, 258819 | $ 159,654.00 |
| .District of Columbia | DC Office of the Attorney General | 258767, 258768 | $ 161,919.00 |
| .Florida | Office of the Attorney General, State of Florida, Department of Legal Affairs | 258716, 258717 | $ 1,111,206.00 |
| .Georgia | The State of Georgia | 258905, 258906 | $ 452,232.00 |
| .Idaho | State of Idaho, Office of the Attorney General, Consumer Protection Division | 258895, 258897 | $ 201,386.00 |
| .Illinois | Office of the Illinois Attorney General | 258858, 258861, 258898 | $ 501,539.00 |
| .Indiana | Office of the Indiana Attorney General | 258773, 258793, 258795, 258796 | $ 979,424.00 |
| .Iowa | Iowa Department of Justice - Consumer Protection Division | 258761, 258762 | $ 429,767.00 |
| .Kansas | State of Kansas | 258728, 258729, 258899, 258900 | $ 225,814.00 |
| .Kentucky | Commonwealth of Kentucky, Office of the Attorney General | 258872, 258873 | $ 259,375.00 |
| .Louisiana | State of Louisiana Department of Justice | 258775, 258777 | $ 258,668.00 |
| .Maine | State of Maine | 258765, 258766 | $ 181,046.00 |
| .Maryland | Consumer Protection Division, Office of the Attorney General of Maryland | 258733, 258734 | $ 518,491.00 |
| .Massachusetts | Commonwealth of Massachusetts, Massachusetts Office of the Attorney General | 258797, 258798 | $ 387,218.00 |
| .Michigan | Michigan Attorney General | 258755, 258756 | $ 436,605.00 |
| .Minnesota | Minnesota Attorney General's Office | 258753, 258754 | $ 514,871.00 |
| .New Hampshire | State of New Hampshire | 258848, 258851 | $ 187,490.00 |
| .New Jersey | The New Jersey Division of Consumer Affairs | 258877, 258879, 258882 | $ 409,588.00 |
| .New Mexico | New Mexico Department of Justice | 258884, 258885 | $ 200,308.00 |
| .New York | Office of Attorney General | 258835, 258836, 258838 | $ 705,976.00 |
| .North Carolina | State of North Carolina, Department of Justice | 258774, 258776 | $ 666,242.00 |
| .North Dakota | State of North Dakota ex rel. Drew H. Wrigley, Attorney General | 258742, 258743 | $ 150,380.00 |
| .Ohio | Office of the Ohio Attorney General | 258731, 258732, 258875, 258876 | $ 473,828.00 |
| .Oklahoma | State of Oklahoma, Office of the Okahoma Attorney General | 258870, 258871 | $ 276,435.00 |
| .Oregon | State of Oregon, Department of Justice | 258853, 258854 | $ 576,707.00 |
| .Pennsylvania | Cmwth of Pennsylvania, Office of Attorney General | 258839, 258840 | $ 491,902.00 |
| .South Carolina | South Carolina Attorney General's Office | 258708, 258709 | $ 280,173.00 |
| .South Dakota | South Dakota Office of the Attorney General | 258887, 258890 | $ 149,339.00 |
| .Tennessee | Tennessee Attorney General - Consumer Division | 258859, 258860 | $ 348,687.00 |
| .Texas | State of Texas | 258891, 258892 | $ 1,266,860.00 |
| .Utah | State of Utah, Division of Consumer Protection and State of Utah, Office of Attorney General | 258779, 258802, 258804, 258807 | $ 461,688.00 |
| .Vermont | State of Vermont | 258763, 258764 | $ 154,065.00 |
| .Virginia | The Commonwealth of Virginia | 258881, 258883 | $ 662,649.00 |
| .Washington | State of WA c/o Washington State Attorney General's Office, Consumer Protection Division | 258823, 258824 | $ 547,350.00 |
| .West Virginia | State of West Virginia, ex rel John B. McCuskey, Attorney General | 258820, 258821 | $ 181,778.00 |
| .Wisconsin | State of Wisconsin | 258828, 258829 | $ 276,817.00 |
| | | | $ 18,000,000.00 |

---

[1] For the avoidance of doubt, this Stipulation applies to all of the claims filed by the Signatory Governmental Claimants arising out of or related to the 2023 Cyber Security Incident even if such claims are not listed in, or otherwise not included in, this Appendix A.

## Appendix B

### Signatory Governmental Claimants' Payment Language

For the cash received by each Signatory Governmental Claimant as detailed in Appendix A:

1. For the State of Alabama, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

2. For the State of Alaska, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

3. For the State of Arizona, the payment, consisting of civil penalties pursuant to A.R.S. § 44-1531(A) and recovery of attorneys' fees and costs pursuant to § 44-1534, shall be deposited into the Consumer Protection-Consumer Fraud Revolving Fund pursuant to § 44-1531.01, and used in accordance with state law for the purposes set forth therein at the State's sole discretion, including but not limited to future consumer protection enforcement, consumer education or litigation.

4. For the State of Arkansas, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

5. For the State of Colorado, all payments to the Colorado Attorney General under this paragraph are to be held, along with any interest thereon, in trust by the Attorney General to be used in the Attorney General's sole discretion for reimbursement of the State's actual costs and attorneys' fees, the payment of restitution, if any, and for future consumer fraud or antitrust enforcement, consumer education, or public welfare purposes.

6. For the State of Connecticut, Office of the Attorney General, the money received may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for other uses permitted by state law, at the sole discretion of the State of Connecticut, where applicable, or any purpose allowable by state law.

7. The amount apportioned to the Delaware Attorney General is to be paid directly to the Attorney General of the State of Delaware and in the amount designated herein for the

Consumer Protection Unit of the Delaware Department of Justice ("CPU").  The CPU shall place all funds received in the State of Delaware's Consumer Protection Fund and such funds may be utilized for any lawful purpose.

8. For the DC Office of the Attorney General, the District may use any portion of the funds that it receives for any lawful purposes, including, but not limited to, restitution, attorneys' fees, and other costs of investigation and litigation; placement of this payment in the District's restitution fund or litigation support fund; or for other uses permitted by District law, at the sole discretion of the Office of the Attorney General.

9. For the Office of the Attorney General, State of Florida, Department of Legal Affairs, the money received may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection enforcement or revolving fund, future consumer protection or privacy enforcement or litigation, consumer education, or for other uses permitted by state law, at the sole discretion of the Office of the Attorney General, State of Florida, Department of Legal Affairs.

10. For the State of Georgia, the money received shall be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by state law, at the sole discretion of the Attorney General.

11. For the State of Idaho, Office of the Attorney General, Consumer Protection Division, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

12. For the Office of the Illinois Attorney General, payment will be made pursuant to the wiring instructions provided.  This payment shall be deposited into the Attorney General Court Ordered and Voluntary Compliance Fund and shall be used by the Illinois Attorney General for any purpose authorized by Section 7(e) of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(e).  The payor shall not be entitled to further accounting regarding the money deposited into the Court Ordered Fund.

13. For the Office of the Indiana Attorney General, the payment received may be used for any purpose allowable under Indiana law.  $13,205.00 of the payment received reimburses costs of the Office of the Indiana Attorney General's investigation pursuant to Ind. Code § 24-5-0.5-4(c)(4). For purposes of IRS Form 1098-F, all payments shall be reported in Box 2 as "Amount to be paid for violation or potential violation."

14. For the Iowa Department of Justice - Consumer Protection Division, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

15. For the State of Kansas, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

16. For the Commonwealth of Kentucky, Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law. The amount payable to the Commonwealth of Kentucky pursuant to the Joint Stipulation and Agreed Order is $259,375.00 which includes $85,593.75 for the recovery of the Attorney General's reasonable costs of investigation per KRS 48.005.

17. For the State of Louisiana, the Attorney General has the sole discretion to use said payments for such purposes that may include, but are not limited to, attorney fees and other costs of investigation and/or litigation, or to be placed in, or applied to, the consumer protection law enforcement fund, including (i) future consumer protection enforcement, consumer education,  litigation, or local consumer aid fund, or revolving fund, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) for any other purpose permitted by state law.

18. For the State of Maine, Office of the Maine Attorney General, the payment received by the Maine Attorney General may be used for purposes that may include, but are not limited to, attorney fees and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by state law, at the sole discretion of the Maine Attorney General.

19. For the Consumer Protection Division, Office of the Attorney General of Maryland, the money received may be used, at the sole discretion of the Attorney General, for purposes that may include placement in any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education, or litigation, used to defray the costs of the inquiry leading hereto, or may be used for any other public purpose permitted by state law.

20. For the Commonwealth of Massachusetts, Massachusetts Office of the Attorney General, said payment may be used by the Attorney General for purposes that may include, but are not limited to, attorney's fees and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection law enforcement fund, including consumer protection or privacy enforcement, consumer education, litigation or local consumer aid fund, or for such other uses permitted by state law, at the sole discretion of the state's Attorney General.

21. For the Michigan Attorney General, the payment received by the Michigan Attorney General may be used for purposes that may include, but are not limited to, attorneys'

fees, and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by Michigan law, at the sole discretion of the Attorney General.

22. For the Minnesota Attorney General's Office, the payment received by the Minnesota Attorney General is not consumer enforcement public compensation and shall be deposited in accordance with Minnesota Statutes section 8.37.  The payment shall be made payable to the State of Minnesota and sent by wire transfer to the Attorney General pursuant to the wire-transfer instructions provided by the Attorney General's Office.

23. For the State of New Hampshire, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

24. For the New Jersey Division of Consumer Affairs, the Settlement Payment may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of inquiry leading hereto, and/or for other uses permitted by New Jersey law at the sole discretion of the Attorney General.

25. For the New Mexico Department of Justice, the payment shall be used in accordance with state law at the sole discretion of the New Mexico Attorney General (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

26. For the State of New York, Office of Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

27. For the State of North Carolina, Department of Justice. The payment to North Carolina shall be used by the State of North Carolina as and for attorneys' fees and other costs of investigation and litigation, or be placed in, or applied to, the consumer protection enforcement fund, including future consumer protection enforcement, consumer education, litigation, or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for other uses permitted by state law, at the sole discretion of the North Carolina Attorney General.

28. For the State of North Dakota ex rel. Drew H Wrigley, Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of

the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

29. For the Office of the Ohio Attorney General, the payment set forth above shall be placed in the Consumer Protection Enforcement Fund established by R.C. 1345.51.

30. For the State of Oklahoma, Office of the Oklahoma Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

31. For the State of Oregon, Department of Justice, the money received may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for any lawful purpose, at the sole discretion of the Department of Justice.

32. For the Commonwealth of Pennsylvania, Office of Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

33. For the South Carolina Attorney General's Office, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

34. For the South Dakota Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

35. For the Tennessee Attorney General - Consumer Division. The payment may be used for any purpose permitted by law, at the sole discretion of the Tennessee Attorney General.

36. For the State of Texas, Texas shall allocate its recovery in this case as follows: $950,145.00 for civil penalties as authorized by Texas Business & Commerce Code § 17.47(c) and § 521.151 with the remainder to attorneys' fees and costs in this matter pursuant to Texas Government Code § 402.006(c).

37. For the State of Utah, Division of Consumer Protection and State of Utah, Office of Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential

enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

38. For the State of Vermont, Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion for future consumer protection enforcement, consumer education or litigation; for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto; or for any other purpose permitted by state law and pursuant to the Constitution of the State of Vermont, Ch. II § 27 and 32 V.S.A. § 462.

39. For the Virginia Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

40. For the State of WA c/o Washington State Attorney General's Office, Consumer Protection Division, shall use the funds for recovery of its costs and attorneys' fees in investigating this matter, future monitoring and enforcement of this Consent Decree, future enforcement of RCW 19.86, or for any lawful purpose in the discharge of the Attorney General's duties at the sole discretion of the Attorney General.

41. For the State of West Virginia, *ex rel* John B. McCuskey, Attorney General, the payment received may be used by the Attorney General for any one or more of the following purposes: direct and indirect administrative, investigative, compliance, enforcement, or litigation costs and services incurred for consumer protection purposes; to be held for appropriation by the Legislature; and/or distribution to taxpayers and/or consumers, at the sole discretion of the state's Attorney General.

42. For the State of Wisconsin, the payment shall be used in accordance with state law at the Wisconsin Attorney General's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, including the payment of attorneys' fees, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.