**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.),[1]<br><br>Wind-Down Debtor. | Case No. 25-40976-357<br>Chapter 11 |

**DECLARATION OF THOMAS WALPER IN SUPPORT OF
THE PLAN ADMINISTRATION TRUST'S MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING AND APPROVING THE STIPULATION AND AGREED ORDER
BY AND AMONG THE PLAN ADMINISTRATION TRUST, THE WIND-DOWN
DEBTOR, AND THE SIGNATORY GOVERNMENTAL CLAIMANTS
AND (II) GRANTING RELATED RELIEF**

I, Thomas Walper, hereby declare under penalty of perjury:

1.      I am the Plan Administrator[2] of the Plan Administration Trust (the "Trust").  I submit this declaration (the "Declaration") in support of the *Plan Administration Trust's Motion for Entry of an Order (I) Authorizing and Approving the Stipulation and Agreed Order by and Among the Plan Administration Trust, the Wind-Down Debtor, and the Signatory Governmental Claimants and (II) Granting Related Relief* (the "Motion").

2.      Although I am being compensated for my role as the Plan Administrator, I am not being compensated separately for this Declaration or testimony.  Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, the information provided to me by professionals involved in

---

[1]    The Wind-Down Debtor's service address for purposes of the chapter 11 cases is:  490 Post St., Suite 500 PMB 2065, San Francisco, CA 94102 United States.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the *Modified Fifth Amended Joint Plan of Chrome Holding Co. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1655] (the "Plan") or the Motion, as applicable.

advising the Trust in this chapter 11 case, or information provided to me by the Debtors.  If called upon to testify, I could and would testify to the facts set forth herein on that basis.  I am over the age of 18 years, and I am authorized to submit this Declaration.

**Background and Professional Qualifications**

3.    Prior to the Effective Date, I served as a member of the board of Chrome Holding Co. (f/k/a 23andMe Holding Co.) (the "Board") and on the Board's special committee of independent and disinterested directors (the "Special Committee") during the pendency of the Chapter 11 Cases.  Until March 22, 2025, I was a partner at the law firm of Munger, Tolles & Olson LLP.  I have advised clients on restructuring and bankruptcy matters for more than 40 years. I graduated from the University of Southern California with a Bachelor of Science in 1977 and a Masters of Business Administration in 1977.  I graduated from Loyola Law School with a Juris Doctor in 1980.

**Background Relevant to the Stipulation**

4.    In October 2023, the Company identified and disclosed a data breach (the "Cyber Security Incident") that resulted in numerous actions being filed or otherwise threatened against the Debtors as well as the initiation of various governmental investigations.

5.    Prior to the Governmental Bar Date, the Signatory Governmental Claimants filed proofs of claim against the Debtors alleging liability arising out of or related to the 2023 Cyber Security Incident.

6.    On July 14, 2026, after months of arm's length, good-faith negotiations in which I was involved, the Parties executed the Stipulation.

7.    The Stipulation contemplates, in principal part, that following the Court's entry of the Approval Order, the Trust shall pay each Signatory Governmental Claimant its allotted amount

2

of the aggregate $18 million Recovery Amount, in full and final satisfaction, compromise, settlement and release of, and in exchange for, the Signatory Governmental Claims.

### Best Interests of the Trust and Its Beneficiaries

8. Based upon information provided by the Debtors and the Trust's advisors and my personal involvement, I believe that the resolution embodied in the Stipulation is fair, equitable, and in the best interests of the Trust and its beneficiaries. I believe that the Trust and the Wind-Down Debtor are acting within their reasonable business judgment in entering into the Stipulation with the Signatory Governmental Claimants.

9. *First*, the Parties engaged in good-faith negotiations to reach a consensual agreement that allows the Trust to avoid the cost, delay, and risk of litigating the Allowed amount of the Signatory Governmental Claims. Litigating the Signatory Governmental Claims would require the Trust to divert resources from, among other things, completing its claims reconciliation process, which would delay and deplete stakeholder recoveries in this Chapter 11 Case. In addition, even if the Trust were to successfully litigate the Signatory Governmental Claims to an Allowed amount lower than the Recovery Amount, it will have potentially expended millions of dollars in professional fees and related costs to achieve such an outcome.

10. *Second*, settling the Signatory Governmental Claims for an aggregate payment of $18 million represents a fair and equitable outcome for the Trust and its beneficiaries. Based on the information provided by the Trust's advisors and the underlying proofs of claim, I understand that the Signatory Governmental Claims purport to seek billions of dollars in the aggregate. Accordingly, both the Allowed Signatory Governmental Claims and Recovery Amount represent a fraction of the potential exposure associated with litigating such claims.

11.     The Recovery Amount is also reasonable when compared to other settlements with multiple State Attorneys General arising from similar cyber incidents identified by the Trust's advisors and the Signatory Governmental Claimants.

12.     *Third*, by resolving the Signatory Governmental Claims through the settlement contemplated in the Stipulation, the Trust is able to resolve substantially all of the largest claims filed in the Chapter 11 Cases, thereby avoiding unnecessary delay and increasing the likelihood that the Trust can make distributions to its beneficiaries than if the Trust sought to litigate the Allowed amount of the Signatory Governmental Claims.

13.     Accordingly, I believe the Stipulation is in the best interest of the Trust's beneficiaries.  As discussed, above, the compromises set forth in the Stipulation allow the Trust to avoid unnecessary, costly litigation and resolve the Signatory Governmental Claims in a timely manner, which will inure to the benefit of the Trust's stakeholders.

14.     For the reasons stated herein, I believe that the Trust's entry into and performance under the Stipulation is fair, equitable and in the best interests of the Trust and its beneficiaries.

/s/ *Thomas Walper*
Thomas Walper
Plan Administrator

4