**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CHROME HOLDING CO. (f/k/a 23ANDME HOLDING CO.),[1]<br><br>Wind-Down Debtor. | Case No. 25-40976-357<br>Chapter 11<br><br><br>Related Doc. No. 2342 |

**ORDER GRANTING THE PLAN ADMINISTRATION TRUST'S MOTION FOR
ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE STIPULATION
AND AGREED ORDER BY AND AMONG THE PLAN ADMINISTRATION TRUST,
THE WIND-DOWN DEBTOR, AND THE SIGNATORY GOVERNMENTAL
CLAIMANTS AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Trust for entry of an order (this "Order")

(i) approving and authorizing the Trust to enter into and perform under the Stipulation and Agreed

Order attached hereto as **Exhibit A** (the "Stipulation") by and among the Trust, the Wind-Down

Debtor, and the governmental entities set forth on **Exhibit B** of the Motion that filed one or more

proofs of claim in the chapter 11 cases arising from or related to the 2023 Cyber Security Incident

except for the State of California (the "Signatory Governmental Claimants" and together with the

Trust and the Wind-Down Debtor, the "Parties") and (ii) granting related relief, all as more fully

set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C.

§ 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b);

and this Court having found that it may enter a final order consistent with Article III of the United

---

[1]   The Wind-Down Debtor's service address for purposes of these chapter 11 cases is:  490 Post St., Suite 500 PMB 2065, San Francisco, CA 94102, United States.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Plan (as defined in the Motion), as applicable.

States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Wind-Down Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Trust's notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion (Doc. 2342) is granted as set forth herein.

2.    Pursuant to sections 105 and 363(b) of the Bankruptcy Code, Bankruptcy Rules 6004 and 9019, and all applicable law, the Stipulation is hereby authorized and approved on the terms set forth therein.

3.    The Stipulation was proposed, negotiated, and entered into by the Parties in good faith.

4.    The Stipulation (a) satisfies the standards applied by bankruptcy courts for the approval of a compromise and settlement pursuant to Bankruptcy Rule 9019, and (b) is fair, equitable, and in the best interests of the Trust and its beneficiaries.  Performance under the Stipulation represents a sound exercise of the Trust's business judgment.

5.    The Court additionally finds that the settlements and compromises embodied in the Stipulation are within the reasonable range of litigation outcomes if the Trust were to litigate the

matters resolved pursuant to the Stipulation, represent fair and reasonable consideration, and are reasonable, fair, and equitable, and in the best interest of the Trust and its beneficiaries after consideration of (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (b) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (c) the paramount interest of creditors.

6.      In furtherance of this Order, the Stipulation and any related agreements, documents, or other instruments may be modified, amended, or supplemented by mutual agreement of the Parties without further order of the Court, provided such modification, amendment, or supplement is not material.

7.      Upon entry of this Order, the *Plan Administration Trust's Objection to Texas's Claim* (Doc. 2101) (the "Objection") will be deemed withdrawn. The deadline by which the State of Texas must file a response to the Objection is hereby abated until the Objection is deemed withdrawn.  Nothing herein shall impair the Trust's rights to object to any Claims, other than the Signatory Governmental Claims, in the chapter 11 cases on any grounds whatsoever at a later date.

8.      The failure to mention any provision of the Stipulation in this Order shall not impair its efficacy, it being the intent and effect of this Order that the Stipulation and the compromises and agreements contained therein are approved in all respects and all relief contemplated by the Stipulation is hereby granted.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

10. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

11. The Trust and the Wind-Down Debtor, as applicable, are authorized to perform the obligations under the Stipulation in accordance with their terms and take all actions necessary to effectuate the relief granted in the Stipulation and this Order.

12. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order and the Stipulation.

13. No later than two business days after the date of this Order, the Trust shall serve on the Notice Parties a copy of the Order and shall file a certificate of service no later than 24 hours after service.

Dated:  August 7, 2026
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge

## **Exhibit A**

**Stipulation**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>CHROME HOLDING CO.<br>(f/k/a 23ANDME HOLDING CO.),[1]<br><br>Wind-Down Debtor. | Case No. 25-40976-357<br>Chapter 11 |

**JOINT STIPULATION AND AGREED ORDER
AMONG THE PLAN ADMINISTRATION TRUST, THE WIND-DOWN DEBTOR, AND
THE SIGNATORY GOVERNMENTAL CLAIMANTS**

This stipulation and agreed order (this "Stipulation")[2] is made as of July 14, 2026 by and among the Plan Administration Trust, the wind-down debtor in the above-captioned case (the "Wind-Down Debtor" and, collectively with the Wind-Down Debtor's debtor subsidiaries prior to the Effective Date of the Plan, the "Debtors") as applicable, and the governmental entities set forth on Appendix A to this Stipulation that filed one or more proofs of claim in the Chapter 11 Cases arising from or related to the 2023 Cyber Security Incident (collectively, including any amendments thereto, the "Signatory Governmental Claims") except for the State of California (the "Signatory Governmental Claimants"[3] and, together with the Plan Administration Trust and

---

[1]   The Wind-Down Debtor's service address for purposes of these chapter 11 cases is:  490 Post St., Suite 500 PMB 2065, San Francisco, CA 94102 United States.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan (as defined herein).

[3]   Appendix A to this Stipulation sets forth the Signatory Governmental Claimants and proofs of claim filed by the Signatory Governmental Claimants that are the subject of this Stipulation.  For the avoidance of doubt, (a) the Signatory Governmental Claimants include all governmental entities that filed one or more proofs of claim in the Chapter 11 Cases arising from or related to the 2023 Cyber Security Incident except for the State of California and (b) the Signatory Governmental Claims do not include proofs of claim related to taxes asserted by the Signatory Governmental Claimants.

the Wind-Down Debtor, the "Parties").[4]

### Recitals

WHEREAS, on March 23, 2025, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Missouri (the "Court");

WHEREAS, on April 30, 2025, the Court entered an order [Docket No. 349], which, among other things, set September 19, 2025, as the deadline by which a governmental unit, as defined in section 101(27) of the Bankruptcy Code, must file proofs of claim in the Chapter 11 Cases (the "Governmental Bar Date");

WHEREAS, prior to the Governmental Bar Date, the Signatory Governmental Claimants filed proofs of claim totaling at least approximately $100,000,000,000.00, inclusive of unliquidated claims;

WHEREAS, the Debtors, the Wind-Down Debtor, and the Plan Administration Trust, as applicable, dispute the Signatory Governmental Claims (the "Dispute");

WHEREAS, the Parties desire to resolve the Dispute consensually by way of this Stipulation to avoid the cost, risk, burden, and delay of litigation while preserving all defenses and without admission of liability by any Party;

WHEREAS, on October 3, 2025, the Court entered the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation Procedures and Solicitation Package,*

---

[4] On January 21, 2026, the Court entered an order [Docket No. 1843] (the "Case Closing Order"), which (a) closed all of the Debtors' and Wind-Down Debtors', as applicable, Chapter 11 Cases except for the Chapter 11 Case of Wind-Down Debtor Chrome Holding Co. and (b) directed that all Remaining Matters (as defined in the *Wind-Down Debtors' Application For Entry of an Order (I) Closing Certain Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 1778]) be administered and adjudicated at Wind-Down Debtor Chrome Holding Co. Accordingly, pursuant to the Case Closing Order, the Plan Administration Trust is filing this Stipulation on behalf of Wind-Down Debtor Chrome Holding Co. but this Stipulation relates to all Signatory Governmental Claims filed against any of the Debtors or the Wind-Down Debtors, as applicable.

*(III) Scheduling a Confirmation Hearing, (IV) Establishing Procedures for Objecting to the Plan, (V) Establishing the California Claims Determination Procedures, (VI) Approving the Form, Manner, and Sufficiency of Notice of the Confirmation Hearing, (VII) Scheduling Certain Dates Related Thereto, and (VIII) Granting Related Relief* [Docket No. 1442], which approved the Debtors' disclosure statement [Docket No. 1424] and approved certain solicitation and voting procedures with respect to the *Second Amended Joint Plan of Chrome Holding Co. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1427] (as modified, amended, or supplemented from time to time, the "Plan");

WHEREAS, on December 1, 2025, the Court entered an order [Docket No. 1662] confirming the Plan (the "Confirmation Order").  On December 5, 2025, the Court entered an amended version of the Confirmation Order [Docket No. 1696];

WHEREAS, on December 9, 2025, the Wind-Down Debtor filed a notice [Docket No. 1709] disclosing, among other things, that the Effective Date occurred on December 5, 2025;

WHEREAS, the Parties have determined that it is in their best interests to enter into this Stipulation agreeing to the allowance and treatment of the Allowed Signatory Governmental Claims (as defined below) on the terms set forth herein; and

WHEREAS, this Stipulation does not apply to any claims filed by governmental entities that are not specifically identified as Signatory Governmental Claims in footnote 3 (*i.e.* claims filed by the Signatory Governmental Claimants for taxes and claims filed by the State of California).

**NOW, IT IS THEREFORE STIPULATED AND AGREED, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION, IT IS SO ORDERED:**

1. The foregoing recitals are incorporated herein by reference.

2.      The Signatory Governmental Claims shall be deemed allowed in the total amount of $150,000,000.00 (the "Allowed Signatory Governmental Claims"); *provided* that the cash recovery the Signatory Governmental Claims shall receive from the Wind-Down Debtor and the Plan Administration Trust is an aggregate amount of $18,000,000.00 (the "Recovery Amount"), which amount, once paid in full, will constitute full and complete satisfaction of the Allowed Signatory Governmental Claims.

3.      The amount of the Allowed Signatory Governmental Claims (a) will not have any evidentiary or precedential effect for any purpose in the Chapter 11 Cases or in any other bankruptcy case to which the Signatory Governmental Claimants may be a party; (b) may not be used (i) by any party other than the Signatory Governmental Claimants for any reason as a basis to assert any claim, cause of action, theory of liability or damages, or (ii) by any party in any other manner adverse to the Debtors, the Wind-Down Debtors, or the Plan Administration Trust; and (c) will be automatically reduced to $18,000,000.00 without any further action by any party or the Court if any party asserting any claim or cause of action to obtain an order or ruling from any court or judicial body relies in any manner whatsoever on the amount of the Allowed Signatory Governmental Claims as a basis for establishing any liability or damages against the Debtors, the Wind-Down Debtors, or the Plan Administration Trust. The foregoing does not apply with respect to the Recovery Amount and any reduction pursuant to clause (c) will not affect the Recovery Amount.

4.      Allowed Signatory Governmental Claims are to be classified and treated as Allowed Chrome General Unsecured Claims.  This agreement is only applicable to the Allowed Signatory Governmental Claims.

5.　　The Plan Administration Trust will pay the Recovery Amount to the Signatory Governmental Claimants within ten (10) business days of the Court's approval of this Stipulation.

6.　　The Plan Administration Trust will pay each Signatory Governmental Claimant its allotted amount of the Recovery Amount as detailed in <u>Appendix A</u>, and in accordance with <u>Appendix B</u>, in a manner and method to be provided by each Signatory Governmental Claimant to the Plan Administration Trust, which manner and method shall be reasonably acceptable to the Plan Administration Trust. Each of the Parties acknowledges, agrees and understands that payments made under this Stipulation may be used at the sole discretion of each of the Signatory Governmental Claimants for any lawful purpose, and subject to any applicable laws of each of the Signatory Governmental Claimants and as further detailed in Appendix B.

7.　　The Plan Administration Trust's payment of the Recovery Amount to the Signatory Governmental Claimants will constitute the full and complete satisfaction of the Signatory Governmental Claims and the Notice and Claims Agent may update the claims register in the Chapter 11 Case to designate such claims as "satisfied in full" immediately upon payment in full of the Recovery Amount.

8.　　Notwithstanding anything to the contrary herein, this Stipulation shall become effective only if it is executed by the Plan Administration Trust, the Wind-Down Debtor, and all Signatory Governmental Claimants.  Unless and until all such parties have executed this Stipulation, this Stipulation shall be of no force or effect, and the Plan Administration Trust shall have no obligation to pay any portion of the Recovery Amount.

9.　　The Plan Administration Trust agrees that the Debtors and the Wind-Down Debtor shall be prohibited from engaging in (a) direct consumer sales of goods and services for five (5) years and (b) collection of (or maintenance of) personally identifiable information for

five (5) years other than personally identifiable information that the Trust is required to retain under the Plan, the Confirmation Order, or the Plan Administration Trust Agreement to fulfill its obligations or perform its duties under those agreements.

10.     Upon the Signatory Governmental Claimants' receipt of the Recovery Amount, the Signatory Governmental Claimants shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Debtors, the Wind-Down Debtors, their estates, any successors thereto, including the Plan Administration Trust, and each of their former or current members, shareholders, affiliates, related entities, officers, directors, managers, employees, principals, successors, predecessors, and representatives (the "Debtor Released Parties") for any claims arising out of or related to the 2023 Cyber Security Incident, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.  For the avoidance of doubt, the release described herein does not release, acquit, satisfy, or forever discharge any regulatory liability that may have been or may be incurred by the Debtor Released Parties after the Effective Date of the Plan, whether presently existing or arising in the future, solely to the extent such liability does not arise from or relate to the 2023 Cyber Security Incident.  For the avoidance of doubt, this release shall in no way apply to 23andMe Research Institute (f/k/a TTAM Research Institute).

11.     Upon the Signatory Governmental Claimants' receipt of the Recovery Amount, the Debtor Released Parties shall be deemed to, and hereby agree to, release, acquit, satisfy, and forever discharge the Signatory Governmental Claimants and each of their representatives, predecessors, and successors for any claims arising out of or related to the 2023 Cyber Security Incident, whether known or unknown, accrued or unaccrued, fixed or contingent, prepetition or postpetition, secured, unsecured or priority, which may presently exist or arise in the future.

12. The Parties agree that the releases set forth herein shall be construed as broadly as possible, except that the obligations of the Parties as set forth in this Stipulation shall not be released.

13. This Stipulation may be signed in counterparts and signatures may be delivered by fax or email, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Each Party who executes this Stipulation on behalf of a Party hereto represents that he or she is duly authorized to execute this Stipulation on behalf of such Party.

14. This Stipulation constitutes the entire agreement between the Parties in respect of the subject matter hereof and shall not be modified, altered, amended, or vacated without the prior written consent of all Parties hereto.

15. Nothing in this Stipulation shall be construed as a waiver of the validity, in part or in whole, of any claim filed by the Signatory Governmental Claimants.

16. Nothing in this Stipulation constitutes a waiver of any other rights under the Bankruptcy Code.

17. This Stipulation shall be binding upon and inure to the benefit of the Wind-Down Debtor, its estate, the Plan Administration Trust, and the Signatory Governmental Claimants, as well as their respective heirs, representatives, predecessors, successors and assigns, as the case may be.

18. Nothing in this Stipulation shall in any way be construed as or deemed to be evidence of or reflect an admission on behalf of any of the Parties to this Stipulation regarding any claim or right that such Party may have against any other Party to this Stipulation unless such claim or right is specifically addressed in this Stipulation.

19. Each Party agrees that this Stipulation shall not be used in any other proceeding for any purpose.

20. Each of the Parties represents and warrants to the other Parties that it has: (a) entered into this Stipulation freely and voluntarily and with full knowledge of its significance; and (b) been represented by counsel of its own choice in the negotiation, drafting, and execution of this Stipulation.

21. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Rules"), or otherwise, the terms and conditions of this Stipulation shall be immediately effective and enforceable upon its entry.

22. The Court shall retain exclusive jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.  Any request for relief brought before the Court to resolve a dispute arising from or related to this Stipulation, and the matters agreed to herein, shall be brought on proper notice and in accordance with the relevant Bankruptcy Rules and the Local Rules.

23. The Notice and Claims Agent and the Clerk of this Court are authorized to take any and all actions necessary and appropriate to give effect to this Stipulation.

*[Signature Pages On File With Paul, Weiss]*

# Appendix A[1]

| Appendix A: Signatory Governmental Claimants and Allotment of Allowed Recovery | | | |
|---|---|---|---|
| State | Name on Claim | Claim Numbers | Payment |
| .Alabama | The State of Alabama | 258750, 258751 | $   260,817.00 |
| .Alaska | State of Alaska | 258738, 258739 | $   165,447.00 |
| .Arizona | State of Arizona | 258902, 258903 | $   612,269.00 |
| .Arkansas | State of Arkansas, *ex rel*. Tim Griffin, Attorney General | 258803, 258805 | $   431,937.00 |
| .Colorado | State of Colorado | 258850, 258852 | $   394,324.00 |
| .Connecticut | State of Connecticut, Office of the Attorney General | 258711, 258712 | $   887,729.00 |
| .Delaware | State of Delaware | 258817, 258819 | $   159,654.00 |
| .District of Columbia | DC Office of the Attorney General | 258767, 258768 | $   161,919.00 |
| .Florida | Office of the Attorney General, State of Florida, Department of Legal Affairs | 258716, 258717 | $ 1,111,206.00 |
| .Georgia | The State of Georgia | 258905, 258906 | $   452,232.00 |
| .Idaho | State of Idaho, Office of the Attorney General, Consumer Protection Division | 258895, 258897 | $   201,386.00 |
| .Illinois | Office of the Illinois Attorney General | 258858, 258861, 258898 | $   501,539.00 |
| .Indiana | Office of the Indiana Attorney General | 258773, 258793, 258795, 258796 | $   979,424.00 |
| .Iowa | Iowa Department of Justice - Consumer Protection Division | 258761, 258762 | $   429,767.00 |
| .Kansas | State of Kansas | 258728, 258729, 258899, 258900 | $   225,814.00 |
| .Kentucky | Commonwealth of Kentucky, Office of the Attorney General | 258872, 258873 | $   259,375.00 |
| .Louisiana | State of Louisiana Department of Justice | 258775, 258777 | $   258,668.00 |
| .Maine | State of Maine | 258765, 258766 | $   181,046.00 |
| .Maryland | Consumer Protection Division, Office of the Attorney General of Maryland | 258733, 258734 | $   518,491.00 |
| .Massachusetts | Commonwealth of Massachusetts, Massachusetts Office of the Attorney General | 258797, 258798 | $   387,218.00 |
| .Michigan | Michigan Attorney General | 258755, 258756 | $   436,605.00 |
| .Minnesota | Minnesota Attorney General's Office | 258753, 258754 | $   514,871.00 |
| .New Hampshire | State of New Hampshire | 258848, 258851 | $   187,490.00 |
| .New Jersey | The New Jersey Division of Consumer Affairs | 258877, 258879, 258882 | $   409,588.00 |
| .New Mexico | New Mexico Department of Justice | 258884, 258885 | $   200,308.00 |
| .New York | Office of Attorney General | 258835, 258836, 258838 | $   705,976.00 |
| .North Carolina | State of North Carolina, Department of Justice | 258774, 258776 | $   666,242.00 |
| .North Dakota | State of North Dakota ex rel. Drew H. Wrigley, Attorney General | 258742, 258743 | $   150,380.00 |
| .Ohio | Office of the Ohio Attorney General | 258731, 258732, 258875, 258876 | $   473,828.00 |
| .Oklahoma | State of Oklahoma, Office of the Okahoma Attorney General | 258870, 258871 | $   276,435.00 |
| .Oregon | State of Oregon, Department of Justice | 258853, 258854 | $   576,707.00 |
| .Pennsylvania | Cmwth of Pennsylvania, Office of Attorney General | 258839, 258840 | $   491,902.00 |
| .South Carolina | South Carolina Attorney General's Office | 258708, 258709 | $   280,173.00 |
| .South Dakota | South Dakota Office of the Attorney General | 258887, 258890 | $   149,339.00 |
| .Tennessee | Tennessee Attorney General - Consumer Division | 258859, 258860 | $   348,687.00 |
| .Texas | State of Texas | 258891, 258892 | $ 1,266,860.00 |
| .Utah | State of Utah, Division of Consumer Protection and State of Utah, Office of Attorney General | 258779, 258802, 258804, 258807 | $   461,688.00 |
| .Vermont | State of Vermont | 258763, 258764 | $   154,065.00 |
| .Virginia | The Commonwealth of Virginia | 258881, 258883 | $   662,649.00 |
| .Washington | State of WA c/o Washington State Attorney General's Office, Consumer Protection Division | 258823, 258824 | $   547,350.00 |
| .West Virginia | State of West Virginia, ex rel John B. McCuskey, Attorney General | 258820, 258821 | $   181,778.00 |
| .Wisconsin | State of Wisconsin | 258828, 258829 | $   276,817.00 |
|  |  |  | $ 18,000,000.00 |

---

[1]   For the avoidance of doubt, this Stipulation applies to all of the claims filed by the Signatory Governmental Claimants arising out of or related to the 2023 Cyber Security Incident even if such claims are not listed in, or otherwise not included in, this Appendix A.

### Appendix B

### Signatory Governmental Claimants' Payment Language

For the cash received by each Signatory Governmental Claimant as detailed in Appendix A:

1. For the State of Alabama, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

2. For the State of Alaska, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

3. For the State of Arizona, the payment, consisting of civil penalties pursuant to A.R.S. § 44-1531(A) and recovery of attorneys' fees and costs pursuant to § 44-1534, shall be deposited into the Consumer Protection-Consumer Fraud Revolving Fund pursuant to § 44-1531.01, and used in accordance with state law for the purposes set forth therein at the State's sole discretion, including but not limited to future consumer protection enforcement, consumer education or litigation.

4. For the State of Arkansas, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

5. For the State of Colorado, all payments to the Colorado Attorney General under this paragraph are to be held, along with any interest thereon, in trust by the Attorney General to be used in the Attorney General's sole discretion for reimbursement of the State's actual costs and attorneys' fees, the payment of restitution, if any, and for future consumer fraud or antitrust enforcement, consumer education, or public welfare purposes.

6. For the State of Connecticut, Office of the Attorney General, the money received may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for other uses permitted by state law, at the sole discretion of the State of Connecticut, where applicable, or any purpose allowable by state law.

7. The amount apportioned to the Delaware Attorney General is to be paid directly to the Attorney General of the State of Delaware and in the amount designated herein for the

Consumer Protection Unit of the Delaware Department of Justice ("CPU"). The CPU shall place all funds received in the State of Delaware's Consumer Protection Fund and such funds may be utilized for any lawful purpose.

8. For the DC Office of the Attorney General, the District may use any portion of the funds that it receives for any lawful purposes, including, but not limited to, restitution, attorneys' fees, and other costs of investigation and litigation; placement of this payment in the District's restitution fund or litigation support fund; or for other uses permitted by District law, at the sole discretion of the Office of the Attorney General.

9. For the Office of the Attorney General, State of Florida, Department of Legal Affairs, the money received may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection enforcement or revolving fund, future consumer protection or privacy enforcement or litigation, consumer education, or for other uses permitted by state law, at the sole discretion of the Office of the Attorney General, State of Florida, Department of Legal Affairs.

10. For the State of Georgia, the money received shall be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by state law, at the sole discretion of the Attorney General.

11. For the State of Idaho, Office of the Attorney General, Consumer Protection Division, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

12. For the Office of the Illinois Attorney General, payment will be made pursuant to the wiring instructions provided. This payment shall be deposited into the Attorney General Court Ordered and Voluntary Compliance Fund and shall be used by the Illinois Attorney General for any purpose authorized by Section 7(e) of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/7(e). The payor shall not be entitled to further accounting regarding the money deposited into the Court Ordered Fund.

13. For the Office of the Indiana Attorney General, the payment received may be used for any purpose allowable under Indiana law. $13,205.00 of the payment received reimburses costs of the Office of the Indiana Attorney General's investigation pursuant to Ind. Code § 24-5-0.5-4(c)(4). For purposes of IRS Form 1098-F, all payments shall be reported in Box 2 as "Amount to be paid for violation or potential violation."

14. For the Iowa Department of Justice - Consumer Protection Division, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

15. For the State of Kansas, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

16. For the Commonwealth of Kentucky, Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law. The amount payable to the Commonwealth of Kentucky pursuant to the Joint Stipulation and Agreed Order is $259,375.00 which includes $85,593.75 for the recovery of the Attorney General's reasonable costs of investigation per KRS 48.005.

17. For the State of Louisiana, the Attorney General has the sole discretion to use said payments for such purposes that may include, but are not limited to, attorney fees and other costs of investigation and/or litigation, or to be placed in, or applied to, the consumer protection law enforcement fund, including (i) future consumer protection enforcement, consumer education,  litigation, or local consumer aid fund, or revolving fund, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) for any other purpose permitted by state law.

18. For the State of Maine, Office of the Maine Attorney General, the payment received by the Maine Attorney General may be used for purposes that may include, but are not limited to, attorney fees and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by state law, at the sole discretion of the Maine Attorney General.

19. For the Consumer Protection Division, Office of the Attorney General of Maryland, the money received may be used, at the sole discretion of the Attorney General, for purposes that may include placement in any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education, or litigation, used to defray the costs of the inquiry leading hereto, or may be used for any other public purpose permitted by state law.

20. For the Commonwealth of Massachusetts, Massachusetts Office of the Attorney General, said payment may be used by the Attorney General for purposes that may include, but are not limited to, attorney's fees and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection law enforcement fund, including consumer protection or privacy enforcement, consumer education, litigation or local consumer aid fund, or for such other uses permitted by state law, at the sole discretion of the state's Attorney General.

21. For the Michigan Attorney General, the payment received by the Michigan Attorney General may be used for purposes that may include, but are not limited to, attorneys'

fees, and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by Michigan law, at the sole discretion of the Attorney General.

22. For the Minnesota Attorney General's Office, the payment received by the Minnesota Attorney General is not consumer enforcement public compensation and shall be deposited in accordance with Minnesota Statutes section 8.37.  The payment shall be made payable to the State of Minnesota and sent by wire transfer to the Attorney General pursuant to the wire-transfer instructions provided by the Attorney General's Office.

23. For the State of New Hampshire, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

24. For the New Jersey Division of Consumer Affairs, the Settlement Payment may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of inquiry leading hereto, and/or for other uses permitted by New Jersey law at the sole discretion of the Attorney General.

25. For the New Mexico Department of Justice, the payment shall be used in accordance with state law at the sole discretion of the New Mexico Attorney General (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

26. For the State of New York, Office of Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

27. For the State of North Carolina, Department of Justice. The payment to North Carolina shall be used by the State of North Carolina as and for attorneys' fees and other costs of investigation and litigation, or be placed in, or applied to, the consumer protection enforcement fund, including future consumer protection enforcement, consumer education, litigation, or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for other uses permitted by state law, at the sole discretion of the North Carolina Attorney General.

28. For the State of North Dakota ex rel. Drew H Wrigley, Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of

the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

29. For the Office of the Ohio Attorney General, the payment set forth above shall be placed in the Consumer Protection Enforcement Fund established by R.C. 1345.51.

30. For the State of Oklahoma, Office of the Oklahoma Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

31. For the State of Oregon, Department of Justice, the money received may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, or for any lawful purpose, at the sole discretion of the Department of Justice.

32. For the Commonwealth of Pennsylvania, Office of Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

33. For the South Carolina Attorney General's Office, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

34. For the South Dakota Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

35. For the Tennessee Attorney General - Consumer Division. The payment may be used for any purpose permitted by law, at the sole discretion of the Tennessee Attorney General.

36. For the State of Texas, Texas shall allocate its recovery in this case as follows: $950,145.00 for civil penalties as authorized by Texas Business & Commerce Code § 17.47(c) and § 521.151 with the remainder to attorneys' fees and costs in this matter pursuant to Texas Government Code § 402.006(c).

37. For the State of Utah, Division of Consumer Protection and State of Utah, Office of Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential

enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

38. For the State of Vermont, Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion for future consumer protection enforcement, consumer education or litigation; for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto; or for any other purpose permitted by state law and pursuant to the Constitution of the State of Vermont, Ch. II § 27 and 32 V.S.A. § 462.

39. For the Virginia Office of the Attorney General, the payment shall be used in accordance with state law at the State's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.

40. For the State of WA c/o Washington State Attorney General's Office, Consumer Protection Division, shall use the funds for recovery of its costs and attorneys' fees in investigating this matter, future monitoring and enforcement of this Consent Decree, future enforcement of RCW 19.86, or for any lawful purpose in the discharge of the Attorney General's duties at the sole discretion of the Attorney General.

41. For the State of West Virginia, *ex rel* John B. McCuskey, Attorney General, the payment received may be used by the Attorney General for any one or more of the following purposes: direct and indirect administrative, investigative, compliance, enforcement, or litigation costs and services incurred for consumer protection purposes; to be held for appropriation by the Legislature; and/or distribution to taxpayers and/or consumers, at the sole discretion of the state's Attorney General.

42. For the State of Wisconsin, the payment shall be used in accordance with state law at the Wisconsin Attorney General's sole discretion (i) for future consumer protection enforcement, consumer education or litigation, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, including the payment of attorneys' fees, monitoring and potential enforcement of this settlement, and/or (iii) may be used for any other purpose permitted by state law.