**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, et al., | ) | |
| Appellants, | ) | |
| v. | ) | Case No. 4:25-CV-00999-CMS |
| 23ANDME HOLDING CO., *et al.*, | ) | |
| Appellees. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on the Notice of Appeal from Bankruptcy Court by Appellant the People of the State of California ("California").[1] (Doc. 1). California, CAVEAT, and Elizabeth Dreicer (collectively "Appellants") challenge the bankruptcy court's order approving the sale of substantially all of Debtor-Appellee 23andMe Holding Co.'s assets. The appeal is **DISMISSED** because Appellants have not established bankruptcy appellate standing. Independently, because the sale closed without a stay and the Bankruptcy Court's good-faith findings are not clearly erroneous, 11 U.S.C. § 363(m) renders this appeal statutorily moot and forecloses Appellants desired relief—partial unwinding of the sale—which would affect the validity of the completed sale.

[1] Interested Party the Center for Applied Values and Ethics in Advancing Technology ("CAVEAT") and Elizabeth Dreicer join California's arguments in full. (Doc. 102). Any arguments Dreicer or CAVEAT raised at oral argument that differ from or augment California's arguments will not be addressed as they were not briefed. *See Wirtz v. Specialized Loan Servicing, LLC*, 987 F.3d 1156, 1160 (8th Cir. 2021).

## BACKGROUND

### I. Factual Background

23andMe is a "direct to consumer genetic testing company." (ER 397, 399, 404, 422–23).[2] Anne Wojcicki founded it and was CEO and a board member until she resigned her position as CEO on the same day 23andMe filed for Bankruptcy. (ER 1453, 1455, 1356). 23andMe filed for Chapter 11 Bankruptcy on March 23, 2025. (ER 274).

Debtor 23andMe conducted a competitive sale process under 11 U.S.C. § 363, seeking to sell substantially all its assets. The bankruptcy court granted leave for it to do so. (ER 293, 471). Debtor, under the guidance of a newly formed special committee of independent directors, commenced a three-day bidding process. (ER 297–98, 539–40). The bidding started at approximately $50 million, and by the end of that process Regeneron Pharmaceuticals offered the highest bid at $256 million (ER 539–40, 1356). Intervenor-Appellee 23andMe Research Institute ("TTAM")[3] objected to the closing of bidding, and the bankruptcy court authorized a second round of bidding. (ER 749). The eventual result of this second round of bidding was that TTAM was the highest bidder with an adjusted bid of $302.5 million subject to approval of the sale by the bankruptcy court (ER 979; Doc. 93 at n. 5).

Prior to the bankruptcy court's approval of the sale, more than 30 states had raised objections to the sale on consumer-privacy and data-protection grounds. Most of those objections were resolved through the structure of the Asset Purchase Agreement's ("APA") "equity toggle." (ER 1129-30); (Supp. 2–20). Under the APA's equity toggle, Debtor would form a wholly owned

---

[2] For the sake of continuity with the Parties' briefs, the Court adopts the usage of "ER" to refer to the excerpted record found at (Doc. 80 Appx. to Br.), "DER" to refer to the excerpts found at (Doc. 92 Appx. to Br.), and "Supp." to refer to the supplemental record found at (Doc. 93 Supp. Excerpts on Appeal).

[3] Debtor, TTAM, and Interested Party-Appellee the Official Committee of Unsecured Creditors ("UCC") are collectively referred to as "Proponents."

subsidiary ("NewCo"), NewCo would acquire the genetic-data assets, and TTAM would acquire NewCo's equity. (ER 1129–30). The result of this two-step sale structure was that no genetic data would ever be transferred directly to TTAM. (ER 1505; DER 392). That structure resolved the concerns of 29 of the 34 objecting jurisdictions. Only five States continued to object at the sale hearing. (ER 1129–30, 1313, 1505, 2082, 2115; DER 392; Supp. 2–20). While the equity toggle was part of the sale from the first time TTAM bid on the assets (ER 2115), TTAM did not declare its intention to exercise the toggle until shortly before the sale hearing. (ER 1313).

## II. Procedural Background

Before approving the sale, the bankruptcy court held a two-day evidentiary sale hearing to consider TTAM's proposed APA. (ER 1465, 1685). At the hearing, California and several other states objected generally to the sale, and specifically to the two-step structure. (ER 2082, 2123). Debtor and TTAM presented multiple witnesses defending the sale. (ER 1579–657). UCC also participated in the hearing in favor of the sale.

The bankruptcy court overruled the objections to the sale. (ER 2082, 2123). The bankruptcy court held that the transfer did not violate state privacy laws and specifically found that NewCo and TTAM were good faith purchasers ("GFPs") within the meaning of 11 U.S.C. § 363(m). (ER 2111–13). The bankruptcy court also found that the first step of the two-step structure (selling the data to NewCo) was integral to the sale and, specifically, that the sale was not an attempt at fraud. (ER 2112–14). The bankruptcy court stayed the effectiveness of the sale approval to allow the objectors to seek a stay pending appeal. (ER 2116). Appellants sought a stay pending appeal, (ER 2300; Supp. 32), but the bankruptcy court, (Supp. 53), this Court, (Doc. 8), and the Eighth Circuit, (Docs. 49, 65), successively denied the requested stay.

The sale closed on July 14, 2025. (ER 208; Supp. 160). Now, only California, CAVEAT, and Elizabeth Dreicer appeal the sale order, seeking remand to the bankruptcy court for partial unwinding of the sale or other relief. *See generally* (Docs. 1; 101 at 3; ER 2300); (Tr. Oral Arg. 23:1–8).

**STANDARD OF REVIEW**

This Court reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*. *In re Popkin & Stern*, 223 F.3d 764, 765 (8th Cir. 2000). Both sides have reminded the Court of the distinctly descriptive standard of review: "'[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must… strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988)).

"Standing in a bankruptcy appeal is narrower than Article III standing" and whether a Plaintiff has standing is a question of law reviewed *de novo*. *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451, 457, 458 (8th Cir. 2016). To appeal, an appellant must show that it is a "person aggrieved," meaning that the order directly and adversely affects the appellant pecuniarily—by diminishing property, increasing burdens, or impairing rights. *In re Wigley*, 886 F.3d 681, 684 (8th Cir. 2018); *Opportunity Fin.*, 822 F.3d at 458. "Whether an appellant is a person aggrieved is generally a question of fact for the district court." *Opportunity Fin.*, 822 F.3d at 457–58.

Similarly, statutory mootness under § 363(m) is a question of law reviewed *de novo*. *In re Burgess*, 246 B.R. 352, 355 (B.A.P. 8th Cir. 2000). While § 363(m) is not jurisdictional, absent a stay, it prevents reversal or modification from affecting the validity of a sale to an entity that purchased in good faith. *MOAC Mall Holdings v. Transform Holdco*, 598 U.S. 288, 297 (2023).

The bankruptcy court's finding of good faith under § 363(m) is a question of fact and is reviewed for clear error.[4] *In re Polaroid Corp.*, 611 F.3d 438, 441 (8th Cir. 2010) (citing *Meeks v. Red River Entm't (In re Armstrong)*, 285 F.3d 1092, 1096 (8th Cir.2002)).

**DISCUSSION**

The Court addresses two threshold questions. First, Appellants must establish bankruptcy appellate standing. Second, assuming standing, the Court must determine the effect of § 363(m) after the completed, unstayed sale.

This Court concludes that Appellants lack standing and § 363(m) moots the desired relief. Standing requires the appellant to be a person aggrieved, meaning the party has suffered pecuniary harm. *Wigley*, 886 F.3d at 684. And mootness applies if the appellant failed to obtain a stay pending appeal and is unable to overcome the bankruptcy court's factual finding of good faith. *In re Roper*, 674 B.R. 649, 655 (B.A.P. 8th Cir. 2025).

Here, Appellants have not carried their burden to show that they are persons aggrieved because they have not shown that the sale order directly and adversely affected their pecuniary interests by impairing a cognizable right. California, specifically, is barred by Federal Rule of Bankruptcy Procedure 2018(b), which prohibits a state attorney general from appealing a bankruptcy order when intervening to represent citizens of his state. And because the bankruptcy court's findings of NewCo and TTAM's good faith are not clearly erroneous, § 363(m) prevents the requested relief. Therefore, this Court cannot reach the merits of Appellants' claims on appeal.

---

[4] Some caselaw indicates that the standard of review is a mixed question of law and fact. *Burgess*, 246 B.R. at 355. But even in *Burgess*, the Eighth Circuit seemed to apply only the clearly erroneous standard when it stated that "the bankruptcy court's finding is supported by the evidence and is not clearly erroneous. Consequently, the Debtor's assertion that [the purchaser] was not a GFP is unsupported…" *Id.* at 356. Appellants fail under either standard.

**I. Appellants lack standing to appeal this case.**

Appellants have not shown that they are persons aggrieved and California is barred by Rule 2018(b). Standing in a bankruptcy appeal requires the appellant to have been a "person aggrieved." *Wigley*, 886 F.3d at 684. The person-aggrieved standard is substantially narrower than Article III standing. *In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014). To qualify as a person aggrieved, an appellant must have been "directly and adversely affected pecuniarily" by an order of a bankruptcy court. *In re Levitt*, 632 B.R. 527, 529 (B.A.P. 8th Cir. 2021) (noting that "[t]he 'person aggrieved' standard is restrictive; a party permitted to participate in bankruptcy court proceedings will not necessarily have standing to appeal orders entered in those proceedings"). Even a party in interest in a bankruptcy proceeding does not necessarily meet this restrictive standard. *In re AFY*, 734 F.3d 810, 824 (8th Cir. 2013). While "all appellants may claim in some way to be aggrieved…" only those who suffered financial or property harm or other loss of rights are persons aggrieved. *Opportunity Fin.*, 822 F.3d at 458. The appellant has the burden of establishing standing by proving it is a person aggrieved. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *In re O & S Trucking, Inc.*, 811 F.3d 1020, 1023–24 (8th Cir. 2016).

Additionally, Federal Rule of Bankruptcy Procedure 2018(b) states that "the Attorney General may not appeal from any judgment, order or decree in the case" when the Attorney General intervenes to represent citizens of his state. Fed. R. Bankr. P. 2018(b).

**A. Appellants lack standing because they are not persons aggrieved.**

Appellants are not persons aggrieved because they have suffered no financial harm from the sale. As Appellants themselves point out, generally, creditors have standing to appeal bankruptcy court orders. *In re Gucci*, 126 F.3d 380, 388 (2d Cir. 1997); (Doc. 80 at 6). But any claim on appeal must have a sufficient nexus to the appellant's creditor status. *See*

Case: 4:25-cv-00999-CMS Doc. #: 126 Filed: 09/29/26 Page: 7 of 21 PageID #: 8866

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (noting that standing applies to claims, not parties, thus creditor standing would only apply to claims by creditors *as* creditors); *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 738 (S.D.N.Y. 1999) (no standing to appeal where "[t]here [was] no real nexus" between their alleged status as creditors and the funding agreement being challenged on appeal). While a sale order affects the creditor's ability to receive payment in the sense that it permits the creditor to be paid, the implication is that only a creditor who suffered financial harm in repayment would have standing. *In re Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir. 1990). A creditor's mere financial interest with no harm to the creditor from the bankruptcy order is insufficient to grant standing in this Circuit. *See O & S Trucking*, 811 F.3d at 1024.

Although Appellants invoke their status as creditors, they identify no way in which the sale order reduced the value of, delayed payment on, or otherwise harmed their claims. (Doc. 80 at 6; ER 536). Their requested relief focuses instead on consumer-consent and privacy concerns. (Doc. 80 at 6; ER 536). Appellants argue they have standing, and that all interested parties may appeal a sale order to which they objected, based on the Supreme Court's decision in *MOAC*. *See* 598 U.S. at 291 ("Interested parties may file an objection to such a sale . . . , and may appeal if the court authorizes a sale . . . over its objection."). But *MOAC* did not alter the person-aggrieved standard. In fact, the Eighth Circuit has applied the person-aggrieved standard since the Supreme Court decided *MOAC*, and standing still requires financial harm. *See, e.g., Humphrey v. Christopher*, 146 F.4th 682, 689 (8th Cir. 2025); *Mercy Health Network v. Mercy Hosp., Iowa City, IA*, 178 F.4th 449, 453 (8th Cir. 2026); *O & S Trucking*, 811 F.3d at 1024.

Other courts have pointed out that *MOAC* addressed nothing more than whether § 363(m) is a jurisdictional provision. Thus, *MOAC* should not be, and has not been, construed as an

expansion of standing contrary to Eighth Circuit precedent. *See, e.g.*, *In re Boy Scouts of Am.*, 137 F.4th 126, 160 (3d Cir. 2025).

Here, Appellants have failed to assert that they are persons aggrieved who have been "adversely affected pecuniarily." *In re Patriot Co.*, 303 B.R. at 815; *see Peoples*, 764 F.3d at 820. Instead, Appellants argue that they have standing because they have a financial interest in the outcome of the sale order regardless of whether they are adversely affected financially by the order. (Doc. 101 at 4–5).

Appellants rely on out-of-circuit precedent for the proposition that valuation is irrelevant to standing. *In re DBSD N. Am., Inc.*, 634 F.3d at 90. But Appellants rely on cases in which the creditors suffered losses to their assets and brought claims that directly related to financial harm they suffered as creditors. *See Gucci*, 126 F.3d at 383; *DBSD N. Am., Inc.*, 634 F.3d at 90; (Doc. 94 at 9) (distinguishing *Gucci*, 126 F.3d 380). These cases do not support Appellants' position given their failure to assert adverse pecuniary affect. As my learned brother, Judge Schelp, observed at a previous hearing in this case, Appellants have "failed to show that [they are] 'adversely affected pecuniarily by the order.'" (Doc. 57 at 43:23–25). In fact, as Proponents Debtor, TTAM, and UCC point out, the bankruptcy court noted that the sale generated enough funds to potentially pay off all the creditors, including Appellants. (ER 2119).

Instead of arguing that their finances have been harmed, Appellants argue that the transaction should be unwound because consumers have not given express consent to the sale and California's Genetic Information Privacy Act ("GIPA") has been violated. (Doc. 94 at 7). In fact, when asked at oral argument about their requested remedy, rather than argue that the sale should have been more advantageous to creditors, Appellants suggested that the sale price may have to

be reduced to meet their privacy demands.[5] (Tr. Oral Arg. 17:14). According to the bankruptcy court, this sale does not violate GIPA. (ER 2111). Appellants challenge the merits of the bankruptcy court's holding rather than presenting a standing argument in support of their position. Obviously, this Court cannot disturb the bankruptcy court's holding on the merits if Appellants cannot otherwise establish standing.

California also argues that the sale order impairs its sovereign enforcement authority. (Tr. Oral Arg. 12:1–15) (relying on the "loss of rights" prong *see, e.g., Opportunity Fin.*, 822 F.3d at 458). That contention does not establish standing on this record. The bankruptcy court held that the transaction did not violate the state-law provisions at issue; it did not enjoin California from enforcing state law in a separate appropriate proceeding. (ER 2106–07, 2111–13). California identifies no authority showing that an adverse merits determination, without an injunction or comparable restriction, independently constitutes the direct impairment required by the person-aggrieved test. But even if California were impaired, it cites no authority for the proposition that an enforcement right is the kind of property or financial right that the Eighth Circuit requires under the person aggrieved standard. *See AFY*, 734 F.3d at 824 (noting the restrictive nature of "person aggrieved" status). The "loss of rights" prong on which California relies was just another way in which the Eighth Circuit referred to the pecuniary-loss requirement, not an independent route to expand the person-aggrieved standard to include sovereign enforcement rights. *See, e.g., Mercy Health Network*, 178 F.4*th* at 453, 454 (quoting *In re Cap. Contracting Co.*, 924 F.3d 890, 898

[5] Consequently, this argument also weighs against Appellants on mootness because § 363(m) prevents objectors from challenging a provision "if the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange." *Trism*, 328 F.3d at 1007. Requiring consumer consent and reducing the purchase price would most certainly adversely alter the bargain here. *See also infra* Part II Section B.

(6th Cir. 2019) ("[A party] may not assert merely the '**vindication** of the rule of law' as its basis for harm without alleging an actual injury .... [because the] 'psychic satisfaction' that the bankruptcy 'laws are faithfully enforced' 'is not an acceptable Article III remedy[.]'"(citations omitted))); *see also Dir., Off. of Workers' Comp. Programs, Dep't of Lab. v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 126 (1995) (applying a rule similar to the person-aggrieved standard and using it to deny standing based on an enforcement-rights theory). Moreover, any argument by California that it has standing based on a future claim it may bring against TTAM would also fail because the results of future decisions not attributable to the bankruptcy court are "insufficient to establish standing." *See, e.g., In re Dunne*, 684 F. App'x. 85, 87 (2d Cir. 2017); *see also Matter of Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 367 (5th Cir. 2023) (noting that standing cannot be based on the possible results of a separate proceeding because it is too remote).

Contrary to Appellants' arguments, this Court is not the first to determine that merely being a creditor is not enough to establish standing. The Eighth Circuit has denied standing when, as here, the creditor's argument was unrelated to its financial harm. *See*, *e.g., Mercy Health Network*, 178 F.4th at 451–52; *Ashford Hotels*, 235 B.R. at 738 (holding that creditors do not always have standing and stating that the general rule assumes that the order "directly affects the funds available to meet their claims."); *contra* (Tr. Oral Arg. 38:11–13).

Put plainly, the Eighth Circuit is clear that the person-aggrieved standard is the only test for bankruptcy appellate standing, meaning Appellants must assert financial harm. *See, e.g., AFY*, 734 F.3d at 824; *Mercy Health Network*, 178 F.4th at 453 ("*only* a 'person aggrieved' has standing to bring a bankruptcy appeal.") (citation modified). Here, Appellants make no attempt to assert any financial harm. Therefore, Appellants lack standing.

**B. California also lacks standing because its appeal is barred under Rule 2018(b).**

Second, California lacks standing under Rule 2018(b) to the extent it seeks to bring claims on behalf of California consumers. As noted above, the Supreme Court has made clear that standing applies to claims, not parties, thus creditor standing would apply only to creditors *as* creditors and consumer privacy claims would need their own justification for standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). A state attorney general cannot circumvent the requirements of Rule 2018(b) for bringing claims on behalf of consumers simply because the attorney general is already in the case as a creditor. *See In re Pub. Serv. Co. of New Hampshire*, 88 B.R. 546, 552 (Bankr. D.N.H. 1988) ("'[t]he fact that the attorney general is a party in interest in the case or has intervened otherwise does not eliminate the need to intervene under Rule 2018(b) if the purpose is to be heard on behalf of consumer creditors.'") (quoting 8 *Collier on Bankruptcy* ¶ 2018.04 at 2018–9, 2018–10); *see also In re Manners*, No. 18CV778 (WWE), 2018 WL 3079470, at *2 (D. Conn. June 21, 2018) ("[being] heard in a bankruptcy hearing does not confer standing on appeal, without the party having intervened in accordance with the Bankruptcy Rules.") (citing *In re Thompson*, 965 F.2d 1136, 1142 (1st Cir. 1992.))

California points out that it has never invoked Rule 2018(b) and is not an intervenor. (Doc. 101 at 6). Therefore, it concludes that Rule 2018(b), by its own terms, "is categorically irrelevant." (Doc. 101 at 6). This argument has some merit as a textual matter. Yet, California has taken inconsistent positions on whether it represents only the state's interests or the interests of California consumers. For example, California has acknowledged that it at least indirectly represents the interests of California consumers in this action while also denying at oral argument that it represents California consumers. *Compare* (Docs. 8 at 21, 80 at 1; ER 759–61, 1317–18; Supp. 46); *with* (Tr. Oral Arg. 8:15–21, 14:3–21). The bankruptcy court noted that California does

Case 25-40976 Doc 2731 Filed 09/30/26 Entered 09/30/26 09:11:42 Main Document Pg 12 of 21

not really bring its own creditor claims: "the nature of [California's] objection… relates to the protection of consumers and not to the state's interest in collecting taxes or regulatory fines or the other matters that [the State] alluded to today." (Doc. 93 at 6) (quoting Supp. 129 at 76:19-23). These are exactly the kinds of claims that would normally require Rule 2018(b) intervention. *See* (ER 759–61, 1317–18; Supp. 46, 129).

California's attempt to shoehorn consumer protection arguments that should have been brought under Rule 2018—and are thus barred by Rule 2018(b)—into its own creditor claims is unavailing. California demonstrated at oral argument that it is here to advance consumer privacy goals, even at the expense of recovery as a creditor. (Tr. Oral Arg. 16:23–17:17).

Both the bankruptcy court and this Court previously noted without deciding that Rule 2018(b) was likely a bar to California's standing. (ER 2116; Supp. 204–05). Now, this Court decides that Rule 2018(b) is a bar to California's standing.

**II. This appeal is statutorily moot under 11 U.S.C. § 363(m).**

Even if Appellants had standing, § 363(m) independently limits the relief available. Section 363(m) "prevent[s] the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale." *In re Trism, Inc.*, 328 F.3d at 1006. When an appellant has failed to obtain a stay of a sale order prior to appeal, an appellate court may consider only the very narrow issue of whether the purchaser is a good-faith purchaser, or GFP. *See Roper*, 674 B.R. at 655. If the purchaser is a GFP, § 363(m) applies and the appeal is moot. *See id.* If not, then § 363(m) does not apply and the Court can reach the merits. *See id.* at 655–56.

Section 363(m) also protects a purchaser from challenges to provisions of the transaction when those provisions are integral to the sale. *Trism*, 328 F.3d at 1007. "'A provision is integral if the provision is so closely linked to the agreement governing the sale that modifying or reversing

the provision would adversely alter the parties' bargained-for exchange.' *Id.* at 1007; *See also In re AFY*, 734 F.3d 810, 817 (8th Cir. 2013)." (ER 2113).

There is no statutory definition of GFP. The Eighth Circuit applies its own test that, usually, a lack of good faith requires a showing of fraud, collusion, or unfair advantage. *Burgess*, 246 B.R. at 356.[6] Further, in determining good faith, a court will examine only the purchaser's conduct during the sale proceedings, not before or after. *Roper*, 674 B.R. at 655.

The purchaser bears the burden of establishing good faith, and the finding of GFP status is a question of fact reviewed for clear error. *Compare In re Grueneich*, 400 B.R. 688, 693 (B.A.P. 8th Cir. 2009) *with Armstrong*, 285 F.3d at 1096. This duality indicates that a bankruptcy court's finding of GFP status is *prima facie* evidence sufficient to establish that a purchaser acted in good faith. To rebut this evidence, the appellant must point to evidence indicating the purchaser's lack of good faith. *See Roper*, 674 B.R. at 655 (phrasing the burden as establishing a lack of good faith); *Burgess*, 246 B.R. at 356 (same); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996) (same); *Gucci*, 126 F.3d at 390 (same, and specifically noting that good faith status is something that must be lost).

Here, the sale closed after Appellants failed to obtain a stay. The bankruptcy court found that both NewCo and TTAM were GFPs. Appellants have not shown clear error in those findings,

---

[6] The Eighth Circuit has specifically noted the tension between this test and the Fourth Circuit definition proffered by Appellants, which includes a knowledge-of-adverse-claims element. *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *accord, e.g.*, *In re Agriprocessors, Inc.*, 465 B.R. 822, 835–36 (Bankr. N.D. Iowa 2012) (collecting cases). *But see Roper*, 674 B.R. at 660; *Burgess*, 246 B.R. at 356. When noting this tension, the Eighth Circuit expressed doubt that any conduct other than fraud, collusion, or unfair advantage could refute good faith. *Roper*, 674 B.R. at 660; *see also Burgess*, 246 B.R. at 356 (rejecting argument that purchaser lacked good faith when these three things were not specifically alleged).

nor have they even alleged fraud, collusion, or unfair advantage. Therefore, § 363(m) statutorily moots Appellants' arguments and this Court will not reach the merits.

**A. The bankruptcy court's factual findings that apply to both purchasers' status as GFPs were not clearly erroneous.**

The bankruptcy court's factual findings that both NewCo and TTAM were GFPs were not clearly erroneous; they certainly were not as wrong as a "five-week-old, unrefrigerated dead fish." *Papio Keno Club, Inc.*, 262 F.3d at 729.

The facts surrounding the sale do not appear to be contested. "[T]he Sale was the result of a competitive bidding process subject to careful procedures ordered by the Bankruptcy Court and the work of an independent Special Committee that generated a $302.5 million purchase price—$250.5 million higher than the opening auction bid of $52 million." (Doc. 92 at 9–10) (citing (ER 1411–12, 2290). Throughout the whole sale process, every step was carefully overseen and approved by the bankruptcy judge.

Still, Appellants contend that the bankruptcy court's listing of two different entities defined together as "the purchaser" means that there cannot be good faith because there is no single, identified purchaser. (Doc. 80 at 7–8); *In re R.B.B., Inc.*, 211 F.3d 475, 480 (9th Cir. 2000). Not so. In *R.B.B., Inc.*, the only case that Appellants rely on for this argument, the court dealt with fictitious companies and a purchase agreement that was so vague that the court could not determine who the purchaser was. *R.B.B., Inc.*, 211 F.3d at 480. Here, unlike in *R.B.B., Inc.*, the two-step sale procedure is clear about who the purchasers are, though NewCo was formed after the sale was approved. Appellants have failed to show that the bankruptcy court's determination of the purchaser or any related fact is clearly erroneous.

**B. NewCo, specifically, is a good faith purchaser.**

More specifically, Appellants have failed to show that the finding that NewCo was a GFP is clearly erroneous. Certainly, good faith cannot be assumed, inferred from a trial record that is silent, or found where no evidence is presented about the purchaser. *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 148–49 (3d Cir. 1986); *M Cap. Corp.*, 290 B.R. at 747; *In re Tamojira, Inc.*, 212 B.R. 824, 827 (Bankr. E.D. Va. 1997). Whether a bankruptcy court can find good faith for a purchaser who has not yet been formed seems to be a matter of first impression. Still, the plain text of § 363(m) protects any "entity" that purchases in good faith. 11 U.S.C. § 363(m). Clearly, the purchaser must exist to purchase at the time of sale, but nothing in the text requires that the purchaser has finished filing its LLC paperwork at the time of the sale hearing.

Appellants make no reference to the Eighth Circuit's standard for bad faith, which requires a showing of fraud, collusion, or unfair advantage. *Burgess*, 246 B.R. at 356. Instead, Appellants cast about for other grounds for bad faith, arguing that the bankruptcy court erroneously assumed and inferred good faith. Appellants' arguments are supported by neither the law nor the facts. (Doc. 92 at 10).

For example, Appellants challenge the bankruptcy court's finding that the transaction was negotiated at arm's-length because NewCo was a wholly owned subsidiary of Debtor and therefore Debtor completely controlled NewCo. (Doc. 80 at 8–9). A transaction not negotiated at arm's length, Appellants argue, cannot be a good faith purchase. (Doc. 80 at 9); (Tr. Oral Arg. 18:12–23).

But the bankruptcy court determined that NewCo was specifically created in good faith as part of the overall deal. (ER 2112–13). Further, the bankruptcy court found that the sale provision regarding NewCo was integral to the overall deal as it was a vital part of the two-step structure.

(ER 2112–13). This fact is contrary to Appellants' assertion that the bankruptcy court considered the GFP *status* integral. (Doc. 80 at 9–10). This integral finding matters because § 363(m), by mooting challenges that "affect the validity of a sale," also protects sale provisions that are integral to a sale. 11 U.S.C. § 363(m); *Trism*, 328 F.3d at 1007.

As part of finding the sale provision integral, the bankruptcy court specifically found that this sale was an arm's-length deal based on the independent committee and the extensive bidding process. (ER 2134). The arm's-length nature of the deal further bolsters both NewCo and TTAM's status as GFPs. Appellants' argument to the contrary flies in the face of settled corporate law that a special committee of independent directors can negotiate a transaction at arm's length. *See e.g. Jones v. Harris Assoc. L.P.*, 559 U.S. 335 (2010).

Appellants also argue that NewCo is not a GFP because GFPs must be third parties and Proponents contend that NewCo is not a third party.[7] (Doc. 80 at 8) (citing ER 1339–40, 1385–86). In support of this argument, Appellants cite Eighth Circuit caselaw for the proposition that § 363(m) protects third parties. *Trism,* 328 F.3d at 1006 ("Section 363(m) protects… good faith third-party purchasers . . . "); *In re Rodriquez*, 258 F.3d 757, 759 (8th Cir. 2001) (same). But the mere fact that third parties are protected does not mean that insiders like NewCo are not. (Doc. 92 at 11) (citing numerous cases of other circuits extending § 363(m) to cover insider purchasers). At no time has the Eighth Circuit held that a GFP must be a third party. And the Supreme Court has noted that corporate distinctions are irrelevant in § 363(m) cases. S*ee MOAC*, 598 U.S. at 293 n.1.

[7] Appellants' argument here is self-defeating. In arguing that TTAM is a third party, they imply that NewCo is also a third party. (Doc. 80 at 14). So, even if it were true that the Eighth Circuit required a purchaser to be a third party to be protected by § 363(m), Appellants would not be permitted to argue that NewCo, as a subsidiary, is not a third party for § 363(m) purposes, and then also say that, as a subsidiary of Debtor, NewCo is a third party.

Furthermore, the plain text of the statute requires only an "entity," not a third party. 11 U.S.C. § 363(m).

Appellants' strongest argument is that because NewCo did not yet exist, the bankruptcy court could not have examined NewCo's conduct during the sale proceedings as required in a good faith determination. (Doc. 80 at 8); *Gucci*, 126 F.3d at 390. Allegedly, because NewCo did not exist, the bankruptcy court must have imputed TTAM's good faith to NewCo. *See, e.g.*, *In re Jencks*, 671 B.R. 252, 259 (B.A.P. 8th Cir. 2025) ("[W]ith no evidence in the record supporting this finding, [it wa]s clearly erroneous.").

The Court rejects the assertion that NewCo's post-hearing formation precluded a good-faith finding. The transaction documents and sale record described NewCo's contemplated role before closing, and the Bankruptcy Court found the two-step structure integral to the sale. (Tr. Oral Arg. 18:24–19:13); (ER 471ff, 544ff, 2132–34). The question is whether that finding lacks record support or is clearly erroneous, not whether NewCo had completed its organizational formalities when the sale hearing began.

NewCo's only purpose for being created was to facilitate the two-step sale transaction. (Tr. Oral Arg. 18:24–19:13); (ER 2132–34). The equity toggle, which included the formation of a new subsidiary, was part of the proposed sale from its inception. (ER 2115). Also, NewCo was only permitted to perform actions explicitly authorized by the bankruptcy court. (Tr. Oral Arg 33:22–34:33); *see also generally, e.g.,* (ER 1466ff). Appellants do not argue that NewCo failed to comply with the bankruptcy court's order. Rather, Appellants concede that NewCo was created as an attempt to either comply with, or evade, state law, depending on one's point of view. (Tr. Oral Arg. 18:25–19:10) (noting that compliance and evasion are "two sides of the same coin").

Contrary to Appellants' arguments, the bankruptcy court did not assume Newco's good faith, the trial record is not silent regarding NewCo, and the court heard extensive evidence about NewCo's purpose in being established. (Doc. 92 at 11). Appellants' reliance on *Abbotts Dairies*, *M Cap. Corp.,* and *Tamojira*, is misplaced. Even though NewCo did not yet exist, it is a wholly owned subsidiary, and every party involved in its creation and conduct was part of the sale hearing. Furthermore, as the bankruptcy court pointed out, forming NewCo is ordinary business, and thus Debtor did not even need the court's leave to form NewCo. (ER 2114 n. 15). That Debtor nonetheless sought the bankruptcy court's approval is evidence of good faith.

The bankruptcy court's resolution of these novel issues regarding Newco's GFP status is not erroneous and certainly does not rise to the level of clearly erroneous.

**C. TTAM is a good faith purchaser.**

Likewise, the finding that TTAM was a GFP is not clearly erroneous. The Eighth Circuit has ruled that an appeal about GFP status is limited to examining the conduct within the sale proceedings. *Roper*, 674 B.R. at 655. While the Eighth Circuit does not seem to analyze GFP status appeals using the adverse-claims element, even the law regarding adverse claims requires a significant nexus between the sale conduct and the adverse claim to refute a GFP finding. *See supra* n.5; *Ashford Hotels,* 235 B.R. at 738; *Highland Cap. Mgmt., L.P.*, 74 F.4th at 367. As already explained, the Eighth Circuit has usually required fraud, collusion, or unfair advantage for a finding of bad faith. *Roper*, 674 B.R. at 660; *see also Burgess*, 246 B.R. at 356.

Appellants argue that TTAM had knowledge that possession of genetic data in violation of California's GIPA could expose them to liability under California law, which means that TTAM had knowledge of an adverse claim and therefore cannot be a GFP. (Doc. 80 at 10–11).

On the contrary, TTAM did not act in bad faith by participating in the purchase. The sale was structured intentionally to comply with all the objecting states' laws. (Doc. 92 at 12). Appellants' position that TTAM's potential exposure under GIPA—despite the bankruptcy court's specific finding to the contrary—makes TTAM a bad-faith purchaser would nullify the protection of § 363(m). (Doc. 92 at 12); (ER 2111). Moreover, even if TTAM knew of the potential liability under California law, "knowledge of an adverse claim requires something more" than "knowledge that there are objections to the transaction." *E.g.*, *In re TMT Procurement Corp.*, 764 F.3d 512, 522 (5th Cir. 2014). Regardless, this Court is limited to examining TTAM's conduct within the sale proceedings and a discussion of potential future liability under GIPA seems beyond that scope. *Roper*, 674 B.R. at 655.

Appellants' argument that TTAM's knowledge of a potential GIPA violation is knowledge of an adverse claim amounting to bad faith seems to be a thinly disguised merits argument. The bankruptcy court found that GIPA was not violated here. (ER 2111). This Court cannot review the merits of that decision unless it first determines that NewCo and TTAM were not GFPs. *See Roper*, 674 B.R. at 655. Even if TTAM were exposed to liability, the law regarding adverse claims requires a greater nexus between the sale conduct and the adverse claim to refute a GFP finding. *See Ashford Hotels,* 235 B.R. at 738; *Highland Cap. Mgmt., L.P.*, 74 F.4th at 367. Even if the issue is not potential future liability, but TTAM's present knowledge of future liability, the bankruptcy court specifically found that GIPA was not violated and TTAM's reasonable reliance on that finding removes any possibility of bad faith. (ER 2111–13).

Appellants alternatively argue that the equity toggle is an intentional "gambit" to evade state law. (Doc. 80 at 10). And that "[c]omplicity in such attempts is paradigmatic bad faith." (Doc. 80 at 10) (citing *In re White Crane Trading Co.*, 170 B.R. at 705 (no good faith where purchaser

failed to "unambiguously reveal" that sale would violate state consumer-protection law "absent judicial imprimatur"); *In re Reg'l Evangelical All. of Churches, Inc.*, 592 B.R. 375, 384 (Bankr. D. Kan. 2018) ("bad faith" where bankruptcy filed "for the purpose of defeating the creditor's state law remedies")).

This "gambit" argument is unconvincing. The argument is akin to saying that someone driving 54 in a 55 mile-per-hour zone is engaged in an intentional gambit to evade the speed limit and all but concedes that state law has not been violated. Appellants acknowledged at oral argument that a gambit to evade the law and compliance with the law are "two sides of the same coin." (Tr. Oral Arg. 18:25–19:10). In light of this concession, Appellants attempt to characterize TTAM's actions as "paradigmatic bad faith" are unpersuasive.[8]

Additionally, the cases cited by Appellants in support of their argument are inapposite. In *White Crane Trading Co.*, the buyer committed fraud against the court, which is not the case here. 170 B.R. at 705. And in *Reg'l Evangelical All. of Churches, Inc.*, the parties engaged in a bad faith sale to ensure that the creditors would *not* get paid, rather than, as here, a sale to ensure the creditors *would* get paid. 592 B.R. at 384.

For these reasons, Proponents' argument that Appellants' position would nullify § 363(m) is correct. The whole point of a mootness provision is to prevent re-litigating the merits. If Appellants were correct, § 363(m) would be swallowed by Appellants' arguments.

---

[8] This argument seems to be a gambit by appellants to wedge another merits argument—that contrary to the bankruptcy court's findings there was no compliance—into a discussion about mootness. But merits arguments are inappropriate at this stage. *See Opportunity Fin.*, 822 F.3d at 457–58; *Roper*, 674 B.R. at 655.

Lastly, Appellants nowhere argue fraud, collusion or unfair advantage by either NewCo or TTAM despite that the Eighth Circuit usually requires one of those for bad faith. *Roper*, 674 B.R. at 660; *see also Burgess*, 246 B.R. at 356.

On this appeal, Appellants have not shown that the bankruptcy court's findings of good faith were clearly erroneous. This Court will not revisit the merits to the extent § 363(m) forecloses relief affecting the completed sale.

**CONCLUSION**

Because Appellants have not established that they are persons aggrieved by the sale order, the appeal is **DISMISSED** for lack of standing. Alternatively, because California brings claims that would normally only be possible under Rule 2018(b), California's appeal is **DISMISSED** for lack of standing. And finally, the appeal is **DISMISSED** because the sale closed without a stay, the Bankruptcy Court's good-faith findings are not clearly erroneous, and 11 U.S.C. § 363(m) moots the requested relief.

A judgment shall accompany this Memorandum and Order.

So ordered this 29th day of 2026.



**CRISTIAN M. STEVENS**
**UNITED STATES DISTRICT JUDGE**